**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. 1:18-cr-00083-TSE |
| v. ) | |
| ) | Judge T. S. Ellis, III |
| PAUL J. MANAFORT, JR., ) | **ORAL ARGUMENT REQUESTED** |
| ) | |
| *Defendant.* ) | |

<u>**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS
MOTION TO DISMISS THE SUPERSEDING INDICTMENT**</u>

Kevin M. Downing (*pro hac vice*)
Law Office of Kevin M. Downing
601 New Jersey Avenue, N.W.
Suite 620
Washington, D.C.  20001
Telephone: (202) 754-1992
Email: kevindowning@kdowninglaw.com

Thomas E. Zehnle (VSB # 27755)
Law Office of Thomas E. Zehnle
601 New Jersey Avenue, N.W.
Suite 620
Washington, D.C.  20001
Telephone: (202) 368-4668
Email: tezehnle@gmail.com

*Counsel for Defendant Paul J. Manafort, Jr*

March 27, 2018

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 2

I.   Legal Background ....................................................................................................... 2

    A.   The Critical Role of Political Accountability .......................................................2

    B.   The Special Counsel Regulations .......................................................................3

    C.   The Appointment Order at Issue Here .................................................................5

II.  The Special Counsel's Investigation and Prosecutions ..................................................... 6

    A.   The Investigation of Mr. Manafort .....................................................................6

    B.   The Indictments in the U.S. District Court for the District of Columbia................7

    C.   The Threat of Additional Prosecutions and Mr. Manafort's Civil Suit .................8

    D.   The Indictment and Superseding Indictment in This Court....................................9

ARGUMENT ..................................................................................................................... 10

I.   The Superseding Indictment Must Be Dismissed Because the Special Counsel's Appointment Was *Ultra Vires* ........................................................................................ 10

    A.   The Acting Attorney General's Power To Grant Jurisdiction Is Limited to Specifically Identified Matters and Related Obstruction Efforts...........................10

    B.   The Appointment Order Exceeds the Acting Attorney General's Authority Under the Special Counsel Regulations................................................................13

    C.   The Superseding Indictment Must Be Dismissed for Want of Jurisdiction...........17

    D.   The Superseding Indictment Must Be Dismissed Under Rules 6(d) and 7(c) .....................................................................................................................21

II.  The Superseding Indictment Exceeds the Authority the Appointment Order Even Purports To Grant .......................................................................................................... 24

    A.   The Appointment Order Purports To Grant Authority Only Over Matters That "Arise Directly From" the Special Counsel's Investigation..........................24

B.	The Charges Against Mr. Manafort Do Not "Arise Directly From" the Special Counsel's Investigation .............................................................................27

C.	The Superseding Indictment Violated Rules 6(d) and 7(c) Because It Exceeds the Scope of the Appointment Order .......................................................28

D.	This Court Lacks Jurisdiction and Dismissal Is Otherwise Warranted ................29

CONCLUSION.................................................................................................................... 30

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Alden v. Maine*, 527 U.S. 706 (1999) .............................................................................2

*Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988)..............................23, 24, 29

*Dep't of Hous. & Urban Dev. v. Rucker*, 535 U.S. 125 (2002)....................................14

*Dolan v. U.S. Postal Serv.*, 546 U.S. 481 (2006)..........................................................25

*In re Espy*, 145 F.3d 1365 (D.C. Cir. 1998)................................................14, 26, 27, 28

*Fed. Ins. Co. v. Tri-State Ins. Co.*, 157 F.3d 800 (10th Cir. 1998)................................25

*Fed. Election Comm'n v. NRA Political Victory Fund*,
    513 U.S. 88 (1994)......................................................................................................18

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*,
    561 U.S. 477 (2010).....................................................................................................2

*Juluke v. Hodel*, 811 F.2d 1553 (D.C. Cir. 1987) ...........................................................9

*Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949)......................19

*In re Lehman Bros. Holdings, Inc.*, 855 F.3d 459 (2d Cir. 2017)..................................25

*Mehle v. Am. Mgmt. Sys., Inc.*, 172 F. Supp. 2d 203 (D.D.C. 2001) ...........................19

*Morrison v. Olson*, 487 U.S. 654 (1988) .................................................................3, 26

*Old Republic Ins. Co. v. Cont'l Motors, Inc.*,
    877 F.3d 895 (10th Cir. 2017) ...................................................................................25

*Pease v. Commonwealth*, 482 S.E.2d 851 (Va. Ct. App. 1997) ...................................24

*People v. Munson*, 150 N.E. 280 (Ill. 1925) ................................................................24

*Rehberg v. Paulk*, 566 U.S. 356 (2012) ........................................................................22

*Richter v. Analex Corp.*, 940 F. Supp. 353 (D.D.C. 1996) ...........................................28

*SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351 (6th Cir. 2014) ...........................28

*State v. Hardy*, 406 N.E.2d 313 (Ind. Ct. App. 1980)...................................................24

*U.S. Indus./Fed. Sheet Metal, Inc. v. Dir., Office of Workers' Comp. Programs,*
    *U.S. Dep't of Labor*, 455 U.S. 608 (1982)................................................................25

*In re United States*, 345 F.3d 450 (7th Cir. 2003) ................................................................17, 19

*United States v. Alcantar-Valenzuela*, 191 F.3d 461 (9th Cir. 1999) ....................................22, 29

*United States v. Bennett*, 464 F. App'x 183 (4th Cir. 2012)................................................................17

*United States v. Boruff*, 909 F.2d 111 (5th Cir. 1990)......................................................23, 29, 30

*United States v. Cohen*, 273 F. 620 (D. Mass. 1921)................................................................19

*United States v. Fernandez*, 887 F.2d 465 (4th Cir. 1989) ................................................................17

*United States v. Fowlie*, 24 F.3d 1059 (9th Cir. 1994) ......................................................21, 29, 30

*United States v. Garcia-Andrade*,
    No. 13-CR-993-IEG, 2013 WL 4027859 (S.D. Cal. Aug. 6, 2013) ........................................19

*United States v. Huston*, 28 F.2d 451 (N.D. Ohio 1928) ................................................................19

*United States v. Male Juvenile*, 148 F.3d 468 (5th Cir. 1998)..........................................19, 23, 29

*United States v. Mechanik*, 475 U.S. 66 (1986)......................................................................23, 24, 29

*United States v. Nixon*, 418 U.S. 683 (1974) ................................................................17

*United States v. Providence Journal Co.*, 485 U.S. 693 (1988) ................................10, 17, 18, 29

*United States v. R. Enters., Inc.*, 498 U.S. 292 (1991)................................................................22

*United States v. Rosenthal*, 121 F. 862 (C.C.S.D.N.Y. 1903) ................................................18, 19

*United States v. Schell*, 775 F.2d 559 (4th Cir. 1985) ................................................................21

*United States v. Sells Eng'g, Inc.*, 463 U.S. 418 (1983) ................................................................24

*United States v. Singleton*, 165 F.3d 1297 (10th Cir. 1999) ........................................................17

*United States v. Tucker*, 78 F.3d 1313 (8th Cir. 1996) ................................................................26

*United States v. Wilson*, 26 F.3d 142 (D.C. Cir. 1994)................................................................11

*United States v. Wooten*, 377 F.3d 1134 (10th Cir. 2004) ......................................................22, 29

*Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787 (1987)....................................................19

## Statutes And Rules

18 U.S.C. § 3332(a) ......................................................................................................22

28 U.S.C. § 2680(b) ......................................................................................................25

Ethics in Government Act of 1978, Pub. L. No. 95-521, 92 Stat. 1824 ............... *passim*

Fed. R. Crim. P. 1(b)(1) ...........................................................................................21, 23

Fed. R. Crim. P. 1(b)(1)(A) ............................................................................................21

Fed. R. Crim. P. 1(b)(1)(B) ............................................................................................21

Fed. R. Crim. P. 1(b)(1)(C) ............................................................................................21

Fed. R. Crim. P. 1(b)(1)(D) ............................................................................................21

Fed. R. Crim. P. 6 ...........................................................................................................22

Fed. R. Crim. P. 6(d) .........................................................................................21, 22, 23

Fed. R. Crim. P. 7(c) .........................................................................................22, 23, 29

Fed. R. Crim. P. 12(b)(2) ...............................................................................................10

Fed. R. Crim. P. 12(b)(3) ...............................................................................................10

Fed. R. Crim. P. 41(b) ....................................................................................................23

## Legislative Materials

*The Future of the Independent Counsel Act: Hearing Before the S. Comm. on Gov't Affairs*, 106th Cong. (1999) ..................................................................3, 4, 10

## Regulations

28 C.F.R. §§ 600.1-600.10 ...................................................................................... *passim*

28 C.F.R. § 600.1 .....................................................................................................4, 11

28 C.F.R. § 600.1(a) .......................................................................................................16

28 C.F.R. § 600.4(a) ............................................................................................... *passim*

28 C.F.R. § 600.4(b) ...........................................................................................4, 6, 12, 13

**Administrative Materials**

Office of the Deputy Att'y Gen., *Appointment of Special Counsel To Investigate Russian Interference with the 2016 Presidential Election and Related Matters* (May 17, 2017)............................................................................................ *passim*

*Office of Special Counsel*, 64 Fed. Reg. 37038 (July 9, 1999)...................................10, 11, 12, 13

Press Release, U.S. Dep't of Justice, *Attorney General Sessions Statement on Recusal* (Mar. 2, 2017).............................................................................................5

**Other Authorities**

Matt Apuzzo, Matthew Rosenberg & Emmarie Huetteman, *Comey Confirms Inquiry on Russia & Trump Allies*, N.Y. TIMES, Mar. 21, 2017.................................................5

Complaint, *Manafort v. Dep't of Justice*, No. 1:18-CV-00011-ABJ, Dkt. 1 (D.D.C. Jan. 3, 2018) ................................................................................................8

Michael Cooper, *Savior or Machiavelli, McCain's Top Aide Carries On*, N.Y. TIMES, Oct. 23, 2007 ...................................................................................23

Defs.' Mot. To Dismiss, *Manafort v. Dep't of Justice*, No. 1:18-CV-00011-ABJ, Dkt. 16 (D.D.C. Feb. 2, 2018) ..............................................................................8

Defs.' Mem. in Supp. of Mot. To Dismiss, *Manafort v. Dep't of Justice*, No. 1:18-CV-00011-ABJ, Dkt. 16-1 (D.D.C. Feb. 2, 2018) .........................................8, 9, 19

*The Federalist*, No. 70 (Hamilton) (C. Rossiter ed., 1961) .........................................3

Indictment, *United States v. Manafort*, No. 1:17-cr-00201-ABJ, Dkt. 13 (D.D.C. Oct. 30, 2017)............................................................................................7

Carol D. Leonnig, Tom Hamburger & Rosalind S. Helderman, *FBI Conducted Predawn Raid of Former Trump Campaign Chairman Manafort's Home*, WASH. POST, Aug. 9, 2017 ..........................................................................................6

Clifford J. Levy, *Toppled in Ukraine but Nearing a Comeback*, N.Y. TIMES, Jan. 15, 2010 .............................................................................................23

Clifford J. Levy, *Ukrainian Prime Minister, Once Seen as Archvillain, Reinvents Himself*, N.Y. TIMES, Sept. 30, 2007.................................................23

Gerard E. Lynch, *The Problem Isn't in the Starrs But in a Misguided Law*, WASH. POST Feb. 22, 1998 .............................................................................3

Barry Meier, *In McCain Campaign, a Lobbying Labyrinth*, N.Y. TIMES, May 25, 2008 ...............................................................................................23

Barry Meier, *Lawmakers Seek To Close Foreign Lobbyist Loopholes*, N.Y. TIMES, June 12, 2008 .................................................................................................23

Pl.'s Mem. of Law in Opp'n to Defs.' Mot. To Dismiss, *Manafort v. Dep't of Justice*, No. 1:18-CV-00011-ABJ, Dkt. 24 (D.D.C. Feb. 16, 2018) ..........................................9

Cass R. Sunstein, *Bad Incentives and Bad Institutions*, 86 GEO. L.J. 2267 (1998) ........................3

Superseding Indictment, *United States v. Manafort*, No. 1:17-cr-00201-ABJ, Dkt. 201 (D.D.C. Feb. 16, 2018) ...........................................................7, 8

Superseding Indictment, *United States v. Manafort*, No. 1:17-cr-00201-ABJ, Dkt. 202 (D.D.C. Feb. 23, 2018) ...........................................................7, 8

Matthew Rosenberg, Emmarie Huetteman & Michael S. Schmidt, *Comey Confirms F.B.I. Inquiry on Russia; Sees No Evidence of Wiretapping*, N.Y. TIMES, Mar. 20, 2017 ................................................................22

Dick Thornburgh, Mark H. Tuohey III & Michael Davidson, *Attorney General's Special Counsel Regulations*, BROOKINGS (Sept. 15, 1999) ...........................................3, 11, 16

Adrian Vermeule, Morrison v. Olson *Is Bad Law*, LAWFARE (June 9, 2017)..................................................................................3

## __INTRODUCTION__

This prosecution breaks sharply with a principle fundamental to this Nation's traditions—that the power to enforce criminal laws must be exercised by officers accountable to the people. The Nation briefly experimented with politically unaccountable "independent counsels" under the Ethics in Government Act of 1978, but that proved disastrous.  As a result, Congress—with bipartisan support—refused to renew that statute.   The Department of Justice concomitantly revamped its regulations to ensure fidelity to the principle of accountability.   The resulting regulations authorize the DOJ to appoint outside "special counsel" where conflicts of interest demand it.   But appointments can be made only by politically accountable officials (the Attorney General or Acting Attorney General).   Moreover, they can grant original jurisdiction only as to matters identified by a specific factual statement.   A politically accountable official must approve any further expansion of authority beyond that.

The order appointing the Special Counsel here exceeds those limits on the Attorney's General's and Acting Attorney General's authority.   The order authorizes the Special Counsel to investigate a specifically identified matter—alleged coordination between the Russian government and the Trump campaign during the 2016 election.   But it then goes further, authorizing investigation and prosecution of whatever matters may "arise" during that investigation, without consultation with or approval from the Acting Attorney General.   That additional power is tantamount to a blank check.   And it is one the Special Counsel has cashed, repeatedly.   The superseding indictment does not focus in the slightest on alleged coordination between the Russian government and the Trump campaign.   It focuses instead on Mr. Manafort's consulting work in Ukraine, which ended in 2014, years before the Trump campaign even launched, as well as Mr. Manafort's tax filings from 2006 to 2014 and his personal finances, which likewise have no connection to coordination between the Russian government and the Trump campaign.   The

regulations do not allow for such an expansive appointment.

The superseding indictment also goes beyond any authority that the appointment order even purports to grant.  The appointment order purports to empower the Special Counsel to investigate and prosecute matters that "arise directly from" the investigation.  But the charges in the superseding indictment go well beyond that scope, covering alleged acts that politically accountable prosecutors already knew about and had not prosecuted for years.  That old news could not have "arise[n] directly from" the Special Counsel's investigation.

Because the Acting Attorney General lacked power to grant the Special Counsel jurisdiction to bring the charges now before this Court, the Special Counsel lacks authority to bring them.  And the charges exceed any authority the appointment order purports to grant. Because the Special Counsel lacks authority, the Court lacks jurisdiction.  The superseding indictment must be dismissed.

## BACKGROUND

### I.    LEGAL BACKGROUND

#### A.    The Critical Role of Political Accountability

"[S]afety in the republican sense," the Framers understood, requires "a due dependence on the people, and a due responsibility."  *The Federalist No. 70*, at 422 (Hamilton) (C. Rossiter ed., 1961).  The "political accountability" of public officers is indispensable to that principle and "essential to our liberty and republican form of government."  *Alden v. Maine*, 527 U.S. 706, 751 (1999); *see Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 483 (2010) ("Since 1789, the Constitution has been understood to . . . keep [public] officers accountable.").

Congress briefly departed from the principle of public accountability in the Ethics in Government Act of 1978, Pub. L. No. 95-521, 92 Stat. 1824.  That now-infamous law allowed attorneys outside the Department of Justice ("DOJ") to devote nearly unbounded resources to

pursuing Executive Branch officials, but without political accountability.  The Act was a "disastrous failure."  Cass R. Sunstein, *Bad Incentives and Bad Institutions*, 86 GEO. L.J. 2267, 2281-83 (1998).  Kenneth Starr, arguably the most powerful independent counsel ever appointed, advised Congress that the statute was "structurally unsound" and "constitutionally dubious."  *The Future of the Independent Counsel Act: Hearings Before the S. Comm. on Gov't Affairs*, 106th Cong. 425 (1999).  Attorney General Janet Reno agreed:  The law "create[d] a prosecutor who is unlike any other"—one who had "no competing public duties" and was not "responsible to the people."  *Id.* at 244-46.  According to General Reno, "[i]t can't get any worse."  *Id.* at 261.

In 1999, Congress refused to reauthorize the Act, expressing a "bipartisan judgment . . . that the Independent Counsel was a kind of constitutional Frankenstein's monster, which ought to be shoved firmly back into the ice from which it was initially untombed."  Adrian Vermeule, Morrison v. Olson *Is Bad Law*, LAWFARE, June 9, 2017.  The Act had created "unaccountable prosecutors wielding infinite resources whenever there is a plausible allegation of a technical crime."  Gerard E. Lynch, *The Problem Isn't in the Starrs But in a Misguided Law*, WASH. POST, Feb. 22, 1998, at C3.  The statute was "utter[ly] incompatib[le] . . . with our constitutional traditions."  *Morrison v. Olson*, 487 U.S. 654, 709 (1988) (Scalia, J., dissenting).

### B.  The Special Counsel Regulations

As the independent counsel statute was set to lapse, Congress undertook a bipartisan project focused on preventing similar excesses.  *See generally* Dick Thornburgh, Mark H. Tuohey III & Michael Davidson, *Attorney General's Special Counsel Regulations*, BROOKINGS, Sept. 15, 1999.  The DOJ eventually promulgated regulations designed to accommodate the need to appoint outside "special counsel"—where prosecutors in the Executive Branch have conflicts of interest—with the need to maintain oversight by and responsibility for politically accountable officials.  *See* 28 C.F.R. §§ 600.1-600.10 (the "Special Counsel Regulations").

The Special Counsel Regulations achieve that goal by imposing careful limits on the authority to appoint special counsel. Only politically accountable federal officers—the Attorney General or Acting Attorney General—may make such appointments. 28 C.F.R. § 600.1. And the jurisdiction they can grant is strictly limited. Under § 600.4(a), the grant of "[o]riginal jurisdiction" to special counsel must provide "a *specific factual statement* of the matter to be investigated." *Id.* § 600.4(a) (emphasis added). Section 600.4(a) further provides that the grant of original jurisdiction "shall . . . include" authority to investigate and prosecute obstruction efforts—*i.e.*, "crimes committed in the course of, and with intent to interfere with, the Special Counsel's investigation." *Id.*

But the Special Counsel Regulations *do not* authorize the Attorney General or Acting Attorney General to grant further authority as part of the special counsel's "[o]riginal jurisdiction." *See* 28 C.F.R. § 600.4(a). They provide that, to obtain jurisdiction to investigate or prosecute any other matter, a special counsel must request "additional jurisdiction" from the Attorney General or Acting Attorney General. *Id.* § 600.4(b). "If in the course of his or her investigation the Special Counsel concludes that additional jurisdiction beyond that specified in his or her original jurisdiction is necessary . . . he or she shall consult with the Attorney General [or Acting Attorney General], who will determine whether to include the additional matters within the Special Counsel's jurisdiction." *Id.*

Those limits on the appointment authority were born of experience. The independent counsel statute had set "no practical limits" on independent counsel investigations. *The Future of the Independent Counsel Act*, *supra*, at 245 (statement of Att'y Gen. Janet Reno). As a result, an investigation undertaken for one reason often transmogrified into an in-depth probe of unrelated matters. Independent counsel faced pressure to "artificially . . . prosecute" *anything* that seemed prosecutable. *Id.* Such unbounded and unaccountable authority is incompatible with our

constitutional tradition.  The Special Counsel Regulations—and their careful limits on the scope of appointment authority—sought to restore accountability.

### C.    The Appointment Order at Issue Here

This case arises out of Acting Attorney General Rod Rosenstein's May 17, 2017 order naming Robert S. Mueller III as Special Counsel.  Office of the Deputy Att'y Gen., *Appointment of Special Counsel To Investigate Russian Interference with the 2016 Presidential Election and Related Matters* (May 17, 2017) ("Appointment Order").  In early 2017, the DOJ revealed that it was investigating allegations that Donald J. Trump's presidential campaign coordinated with the Russian government to influence the 2016 presidential election.  Matt Apuzzo, Matthew Rosenberg & Emmarie Huetteman, *Comey Confirms Inquiry on Russia & Trump Allies*, N.Y. TIMES, Mar. 21, 2017, at A1.  The Attorney General recused himself from those investigations in March 2017, appointing the Deputy Attorney General as Acting Attorney General with respect to the investigation.  Press Release, U.S. Dep't of Justice, *Attorney General Sessions Statement on Recusal* (Mar. 2, 2017).  The Acting Attorney General then issued the Appointment Order.

Paragraphs (b)(i) and (b)(iii) of the Appointment Order set out the Special Counsel's "[o]riginal jurisdiction."   28 C.F.R. § 600.4(a).   In particular, paragraph (b)(i) provides "a specific factual statement of the matter to be investigated," *id.*, empowering the Special Counsel to pursue "any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump," Appointment Order ¶(b)(i).  And paragraph (b)(iii) provides that the Special Counsel may also pursue "any other matters within the scope of 28 C.F.R. § 600.4(a)," *i.e.*, efforts to obstruct the authorized investigation.  *Id.* ¶(b)(iii).

Paragraph (b)(ii) of the Appointment Order, however, purports to grant the Special Counsel further authority.  It states that the Special Counsel may also investigate and prosecute

"*any matters that arose or may arise* directly from the investigation."   Appointment Order ¶(b)(ii) (emphasis added).  As explained below, the Acting Attorney General had no authority to grant that power as part of the Special Counsel's original jurisdiction.  *See* pp. 13-17, *infra*. Grants of "[o]riginal jurisdiction" are limited to the "specific factual statement of the matter to be investigated" and related obstruction efforts.  28 C.F.R. § 600.4(a).  To investigate any matter beyond that—including matters that may arise during the investigation—a grant of additional jurisdiction is required.  The Special Counsel must "consult with the [Acting] Attorney General" to obtain that "additional jurisdiction."  *See id.* § 600.4(b).  And the Acting Attorney General must "determine whether to include the additional matters within the Special Counsel's jurisdiction or assign them elsewhere."  *Id.*  Granting the Special Counsel *ex ante* jurisdiction to pursue anything that "may arise" from the investigation bypasses the required consultation; bypasses the Attorney General's issue-specific determination; and, with that, bypasses the political accountability the Special Counsel Regulations were designed to ensure.

## II.   THE SPECIAL COUNSEL'S INVESTIGATION AND PROSECUTIONS

### A.   The Investigation of Mr. Manafort

Once appointed, the Special Counsel immediately began investigating matters beyond alleged coordination between the Russian government and the Trump presidential campaign.  In particular, the Special Counsel focused on Mr. Manafort's consulting work in Ukraine, which had ended in 2014, and his bank accounts, tax filings, and personal expenditures from 2006 to 2014.  Dkt. 9 ("Superseding Indictment") ¶¶ 19-25.  All of that predates the Trump presidential campaign—and Mr. Manafort's brief involvement in it—by years.  And none of it has any connection to alleged coordination between the Trump campaign and the Russian government.

In July 2017, the Special Counsel applied for, obtained, and executed an invasive, early-morning search of Mr. Manafort's home in Alexandria, Virginia.  Carol D. Leonnig, Tom Ham-

burger & Rosalind S. Helderman, *FBI Conducted Predawn Raid of Former Trump Campaign Chairman Manafort's Home*, WASH. POST, Aug. 9, 2017.  According to the Special Counsel, the Appointment Order granted him jurisdiction to obtain materials regarding purported tax and white-collar crimes committed on or after January 1, 2006—nearly a decade before the Trump presidential campaign began.  Relying on the same authority, the Special Counsel issued over 100 subpoenas related to Mr. Manafort, requesting records from as far back as January 1, 2005.

### B.      The Indictments in the U.S. District Court for the District of Columbia

On October 27, 2017, the Special Counsel signed a nine-count indictment in the District of Columbia relating to Mr. Manafort's Ukrainian consulting work between 2006 and 2015.  Indictment, *United States v. Manafort*, No. 1:17-cr-00201-ABJ, Dkt. 13 ¶¶ 1-6 (D.D.C. Oct. 30, 2017).  The Special Counsel has since signed a series of superseding indictments, most recently on February 23, 2018.  *See, e.g.*, Superseding Indictments, *United States v. Manafort*, No. 1:17-cr-00201-ABJ, Dkts. 201 & 202 (D.D.C. Feb. 16 & 23, 2018).

The most recent District of Columbia superseding indictment charges Mr. Manafort with a conspiracy spanning from 2008 to 2014 in connection with Mr. Manafort's offshore political consulting.  Superseding Indictment, *United States v. Manafort*, No. 1:17-cr-00201-ABJ, Dkt. 202 ¶¶ 15-18 (D.D.C. Feb. 23, 2018).  It alleges that, from 2006 to 2014, Mr. Manafort did not register when performing international political consulting work that allegedly required registration, and it charges him with making false statements on two occasions to the DOJ's Foreign Agents Registration Unit.  *Id.* ¶ 20.  It also alleges that Mr. Manafort did not pay tax on all of his offshore income and failed to report an interest in certain foreign banks accounts from 2008 to 2014.  *Id.* ¶¶ 32-36.  None of the alleged conduct has any connection to coordination between the Trump presidential campaign and the Russian government.  All predates the Trump campaign and Mr. Manafort's brief involvement in it by years.

###### C.      The Threat of Additional Prosecutions and Mr. Manafort's Civil Suit

After the Special Counsel threatened Mr. Manafort with additional prosecutions, Mr. Manafort filed a civil action seeking to set aside the Appointment Order and all actions taken against Mr. Manafort pursuant to that Order.  Complaint, *Manafort v. Dep't of Justice*, No. 1:18-CV-00011-ABJ, Dkt. 1 (D.D.C. Jan. 3, 2018) ("Compl.").  Count I alleges that the Appointment Order—paragraph (b)(ii) in particular—exceeds the Acting Attorney General's appointment authority.  Compl. ¶¶ 50-59.  Count II further alleges that, even if the Acting Attorney General had authority to grant such expansive original jurisdiction, the Special Counsel's actions exceed any authority the Order purports to grant.  *Id.* ¶¶ 62-63.  The complaint requests that the district court enjoin the Special Counsel from investigating any matters other than those set forth in the specific factual description of the matter to be investigated.  *Id.* at 17.

The government moved to dismiss the complaint.  Defs.' Mot. To Dismiss, *Manafort v. Dep't of Justice*, No. 1:18-CV-00011-ABJ, Dkt. 16 (D.D.C. Feb. 2, 2018).  "First and most fundamentally," the government claimed, a motion to dismiss the indictment would provide Mr. Manafort an "adequate legal remedy."  Defs.' Mem. in Supp. of Mot. To Dismiss, *Manafort v. Dep't of Justice*, No. 1:18-CV-00011-ABJ, Dkt. 16-1, at 2 (D.D.C. Feb. 2, 2018).  "If Manafort believes the Special Counsel lacks authority to prosecute him," the government argued, "he is free to raise that objection in his criminal action by filing a motion to dismiss the indictment." *Id.*  Mr. Manafort responded that dismissing the superseding indictment would not prevent the Special Counsel from exercising *ultra vires* power in "multiple investigations, in multiple jurisdictions, on multiple matters," or from continuing to return indictments or filing multiple cases,

as the Special Counsel had threatened.  Pl.'s Mem. of Law in Opp'n to Defs.' Mot. To Dismiss, *Manafort v. Dep't of Justice*, No. 1:18-CV-00011-ABJ, Dkt. 24, at 16 (D.D.C. Feb. 16, 2018).[1]

### D.      The Indictment and Superseding Indictment in This Court

In February 2018, the Special Counsel made good on his threat, signing an indictment against Mr. Manafort in this District.  Dkt. 14.  That indictment had nothing to do with any alleged coordination between the Trump campaign and the Russian government.  *See id.*  Barely a week later, the Special Counsel obtained a superseding indictment based on allegations that— once again—had no connection to the Russian government or the Trump campaign.  Dkt. 9 ("Superseding Indictment").  The Superseding Indictment charges Mr. Manafort with substantive tax offenses for the 2010 to 2014 tax years, Superseding Indictment ¶¶45-46; failing to file reports of foreign bank and financial accounts from 2011 to 2014, *id.* ¶¶49-50; and bank-fraud-related charges in connection with five loans for properties in the United States, *id.* ¶¶57-74. None of the alleged conduct relates to alleged coordination between the Russian government and the Trump campaign; all of the tax and foreign bank account allegations predate the campaign by years.

Like the indictments in the District Court for the District of Columbia, the Superseding Indictment nowhere mentions any "Russian government[] efforts to interfere in the 2016 presi-dential election," Appointment Order; "any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump," *id.* ¶(b)(i); or any acts to interfere with an investigation into those two subjects, *id.* ¶(b)(iii).

---

[1] The government errs in asserting that dismissal of the indictment is an "adequate" remedy.  *See* Pl.'s Mem. of Law in Opp'n to Defs.' Mot. To Dismiss, *supra*, at 31-32; *see also Juluke v. Hodel*, 811 F.2d 1553, 1558-59 (D.C. Cir. 1987).   Nonetheless, Mr. Manafort accepts the government's invitation to file this motion—and a similar motion to dismiss the superseding indictment in the District of Columbia District Court—to obtain any relief they can provide.

## ARGUMENT

Having endured the excesses of prosecutorial authority without corresponding political accountability under the now-expired Ethics in Government Act, the DOJ promulgated new special counsel regulations that limit the Attorney General's—and the Acting Attorney General's—authority to appoint and accord jurisdiction to special counsel.  The Appointment Order here exceeds those limits:  It purports to afford the Special Counsel original jurisdiction that the Acting Attorney General has no authority to grant.  The Superseding Indictment before this Court, moreover, extends beyond even the scope of jurisdiction the Appointment Order purports to grant.

Under those circumstances, dismissal is warranted.  A defendant may move to dismiss on the ground "that the court lacks jurisdiction . . . at any time while the case is pending."  Fed. R. Crim. P. 12(b)(2).  It is well established that, when the attorney who initiated a criminal proceeding is "without authorization to appear on behalf of the United States," "jurisdiction is lacking."  *United States v. Providence Journal Co.*, 485 U.S. 693, 708 (1988).  For similar reasons, dismissal is also warranted based on "defect[s] in instituting the prosecution" and defects in "the indictment."  Fed. R. Crim. P. 12(b)(3).

## I.     THE SUPERSEDING INDICTMENT MUST BE DISMISSED BECAUSE THE SPECIAL COUNSEL'S APPOINTMENT WAS *ULTRA VIRES*

### A.     The Acting Attorney General's Power To Grant Jurisdiction Is Limited to Specifically Identified Matters and Related Obstruction Efforts

In 1999, the DOJ promulgated the Special Counsel Regulations, 28 C.F.R. §§ 600.1-600.10, "to replace the procedures set out in the Independent Counsel Reauthorization Act of 1994."  *Office of Special Counsel*, 64 Fed. Reg. 37038, 37038 (July 9, 1999).  The Special Counsel Regulations sought to redress "vexing problems under the Independent Counsel Act"— "the tendency of some investigations to sprawl beyond the reason for their initiation" and their

tendency "to do so without the discipline of limits on the public resources they consume." Thornburgh, *et al.*, *supra* (alteration and internal quotation marks omitted). To that end, they seek to preserve political accountability. Unlike the old independent counsel system, the Special Counsel Regulations do not permit a special counsel's jurisdiction to be "wide in perimeter and fuzzy at the borders." *United States v. Wilson*, 26 F.3d 142, 148 (D.C. Cir. 1994). Instead, the power to appoint special counsel is highly circumscribed.

From the outset, the Special Counsel Regulations accord only politically accountable federal officers—the Attorney General or Acting Attorney General—authority to appoint special counsel. *See* 28 C.F.R. § 600.1. Thus, "ultimate responsibility for the matter [assigned to a special counsel] and how it is handled will continue to rest with the Attorney General (or the Acting Attorney General if the Attorney General is personally recused . . . .)." *Office of Special Counsel*, 64 Fed. Reg. at 37038. The Special Counsel Regulations, moreover, limit the Attorney General's and Acting Attorney General's authority to grant original jurisdiction to special counsel, requiring such grants to be of limited and carefully delineated scope.

In particular, 28 C.F.R. § 600.4(a) empowers the Attorney General or Acting Attorney General to grant a special counsel "[o]riginal jurisdiction" ***only*** with respect to "***a specific factual statement of the matter to be investigated.***" *Id.* (emphasis added); *see Office of Special Counsel*, 64 Fed. Reg. at 37039 ("Special Counsel's jurisdiction will be stated as an investigation of ***specific facts***" (emphasis added)). Original jurisdiction may also include "authority to investigate and prosecute federal crimes committed in the course of, and with intent to interfere with, the Special Counsel's investigation, such as perjury, obstruction of justice, destruction of evidence, and intimidation of witnesses; and to conduct appeals arising out of the matter being investigated and/or prosecuted." 28 C.F.R. § 600.4(a). Beyond those categories, however, the Attorney General or Acting Attorney General has no authority to grant original jurisdiction.

11

The provision addressing "additional jurisdiction," 28 C.F.R. § 600.4(b), reinforces that limit.  It provides:  "If *in the course of his or her investigation* the Special Counsel concludes that *additional jurisdiction beyond that specified* in his or her original jurisdiction is necessary," he or she must seek "additional jurisdiction."  *Id.* (emphasis added).  That "additional jurisdiction" may be granted only after special counsel "consult[s] with the Attorney General [or Acting Attorney General]," and after the Attorney General or Acting Attorney General "determine[s] whether to include the additional matters within the Special Counsel's jurisdiction or assign them elsewhere."  *Id.*  Thus, when the special counsel "conclude[s] that investigating otherwise unrelated allegations against a central witness in the matter is necessary," or "come[s] across evidence of additional, unrelated crimes by targets of his or her investigation," the Special Counsel should "report such matters to the [Acting Attorney General]," who "w[ill] decide whether to grant the Special Counsel jurisdiction over the additional matters."  *Office of Special Counsel*, 64 Fed. Reg. at 37039.

The Special Counsel Regulations thus could not be clearer.  For "[o]riginal jurisdiction," the Attorney General's or Acting Attorney General's power to grant investigatory or prosecutorial authority is limited to a specific factual statement and associated obstruction efforts. Further authority cannot be granted to a special counsel in the first instance.  Instead, any "additional jurisdiction" may be granted only following a specific request from a special counsel, consultation with the Attorney General or Acting Attorney General, and the Attorney General's or Acting Attorney General's decision to grant additional jurisdiction.

That structure serves a critical role.  Under the former Ethics in Government Act, independent counsel investigations became roving commissions, uncontrolled by politically accountable officials or competing priorities.  *See* pp. 2-3, *supra*.  By restricting grants of original jurisdiction to specific factual statements, the Special Counsel Regulations prevent those

excesses, ensuring that a politically accountable officer is responsible for the investigation's scope.  And by requiring any further jurisdiction—to address any matter that arose during the course of the investigation, for example—to be approved by a politically accountable official, the Special Counsel Regulations ensure that any expansions remain the responsibility of that same politically accountable official.  Together, those provisions "strike" the "balance between independence and accountability."  *Office of Special Counsel*, 64 Fed. Reg. at 37038.

### B.   The Appointment Order Exceeds the Acting Attorney General's Authority Under the Special Counsel Regulations

The Appointment Order cannot be reconciled with those careful limits on the Acting Attorney General's appointment authority or the political accountability they seek to ensure.  The "[o]riginal jurisdiction" conveyed in the Appointment Order includes language that resembles a "specific factual statement of the matter to be investigated."  28 C.F.R. § 600.4(a).  Paragraph (b)(i) authorizes the Special Counsel to investigate "any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump."  Appointment Order ¶(b)(i).  But paragraph (b)(ii) goes beyond anything that might qualify as a specific factual statement.  It purports to grant the Special Counsel further jurisdiction over "***any matters* that *arose or may arise*** directly from the investigation."  *Id.* ¶(b)(ii) (emphasis added).

The Acting Attorney General cannot grant such authority at the outset.  "Original juris-diction" is limited to matters set forth in the specific factual statement and efforts to obstruct the investigation of those matters.  28 C.F.R. § 600.4(a); p. 4, *supra*.  Other matters that arise during the course of the investigation do not qualify.  To the contrary, if other matters arise during the investigation, and the Special Counsel wishes to pursue them, he must consult the Acting Attorney General and obtain "additional jurisdiction."  28 C.F.R. § 600.4(b); p. 4, *supra*.

Far from constituting a "specific factual statement of the matter to be investigated,"

paragraph (b)(ii) is a blank check.  The category "any matters that arose or may arise directly from the investigation" is expansive.  Appointment Order ¶(b)(ii); s*ee Dep't of Hous. & Urban Dev. v. Rucker*, 535 U.S. 125, 131 (2002) ("'[A]ny' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'").  The Regulations do not give the Acting Attorney General authority to grant expansive *ex ante* jurisdiction, beyond the specific factual statement, that includes anything that might be uncovered during the Special Counsel's investigation.  Yet the Appointment Order purports to do just that.  In doing so, it eliminates the requirement that a politically accountable officer approve expansions to the scope of the investigation—and with it the political accountability the Special Counsel Regulations were designed to ensure.

The Special Counsel Regulations, of course, provide the Special Counsel with original jurisdiction to investigate or prosecute **obstruction** and other efforts **to impede** the investigation unlawfully.  *See* 28 C.F.R. §600.4(a).  But the authorization to investigate "any" additional matters that "arose or may arise" during the investigation goes beyond that, encompassing matters without regard to whether they constitute obstruction.  *See, e.g.*, *In re Espy*, 145 F.3d 1365, 1368 (D.C. Cir. 1998) (per curiam) (authority to investigate "federal crimes . . . that may arise out of the above described matter"—such as "perjury" and "obstruction"—does not encompass the "power to investigate . . . otherwise unrelated allegations").

Perhaps recognizing that fatal defect, the government has elsewhere argued that the Acting Attorney General separately authorized an expansion of the Special Counsel's jurisdiction.  In particular, it cited the Acting Attorney General's February 2018 congressional testimony.  Defs.'Mem. in Supp. of Mot. To Dismiss, *supra*, at 34.  But the Acting Attorney General never testified that he "expand[ed] the scope of" the Special Counsel's jurisdiction, Ex. to Defs.' Mem. in Supp. of Mot. To Dismiss, *supra*, at 29, much less that he expanded it to encompass the matters in the Superseding Indictment.  Instead, with respect to the **District of**

*Columbia* indictment, he testified that he would have to "check and get back to you as to whether or not we considered particular issues *to be a clarification* or an expansion" of the Special Counsel's original jurisdiction.  *Id.* at 31 (emphasis added).  The Acting Attorney General thus conceded that he may merely have "clarifi[ed]" that the District of Columbia superseding indictment was within the purported grant of original jurisdiction.  Any such clarification simply underscores the defect here: that the Appointment Order's purported grant of original jurisdiction—on its face or as "clarifi[ied]—goes too far and exceeds the Acting Attorney General's authority.  Any claim that the Acting Attorney General was separately consulted and separately granted "additional jurisdiction" for the matters in the Superseding Indictment, moreover, is belied by the language the Acting Attorney General intentionally inserted in the Appointment Order—language that grants the Special Counsel authority to address any matter arising from the investigation and that rids the Acting Attorney General of responsibility to determine and manage the scope of the Special Counsel's investigation.

The government has also argued that the Appointment Order granted the Special Counsel jurisdiction "to conduct the investigation confirmed by then-FBI Director James B. Comey in testimony before the House Permanent Select Committee on Intelligence on March 20, 2017," Appointment Order ¶(b).  Defs.' Mem. in Supp. of Mot. To Dismiss, *supra*, at 33.  But that makes no sense:  The alleged offshore conduct giving rise to the tax charges and failure to report foreign bank accounts relate to tax years 2010 to 2014.  They thus predate the Comey investigation by years.  And they were already known to the government due to Mr. Manafort's own 2014 disclosures to the FBI and public reporting about his business activities beginning in 2007.  *See* pp. 23-24 & n.7, *infra*.  There is no construction under which pre-existing matters, known to the government, could possibly have arisen out of an investigation that started almost a decade later.  Indeed, there is no indication that Mr. Comey *ever* investigated Mr. Manafort for the specific

matters within the Special Counsel's original jurisdiction—alleged "coordination between the Russian government" and the Trump campaign.  Appointment Order ¶(b)(i).  The Special Counsel's actions against Mr. Manafort could not follow from an investigation that never took place.

Far from exercising the limited appointment powers provided by the Special Counsel Regulations, the Appointment Order purports to give the Special Counsel strikingly broad authority.  It does not confine him to a specific factual statement.  It purports to grant *carte blanche* to investigate and prosecute "any matters" that might arise as part of the investigation of alleged coordination between the Trump campaign and the Russian government.  Appointment Order ¶¶(b)(i)-(ii).  The Order thus permits the sort of unaccountable, "sprawl[ing]" investigation the Special Counsel Regulations were designed to prevent.  Thornburgh, *et al.*, *supra*.

In doing so, moreover, the Order purports to outsource matters that should not be outsourced.  Because prosecution ordinarily should be the domain of politically accountable officers within the DOJ, the Special Counsel Regulations permit appointment of special counsel only where a "conflict of interest" or some other "extraordinary circumstance" precludes the DOJ from conducting an investigation itself.  28 C.F.R. § 600.1(a).  But there is no such impediment to the DOJ's pursuit of the matters charged in the Superseding Indictment (such as Mr. Manafort's consulting or financial activities, or purported tax violations).  Indeed, the DOJ already investigated much of that conduct already and simply chose not to pursue it.  *See* pp. 23-24, *infra*.  The effort to hand such matters over to Special Counsel through an *ex ante* grant of jurisdiction thus eliminates political accountability without any corresponding justification.  The Special Counsel Regulations do not afford the Acting Attorney General that power.  He may confer "original jurisdiction" only for the matters set forth in a specific factual statement and for related efforts to obstruct the investigation.  28 C.F.R. § 600.4(a); *see* p. 4, *supra*.  The Regula-

tions do not authorize him to wash his hands of accountability by granting the Special Counsel *ex ante* jurisdiction over any additional matters the Special Counsel may wish to pursue.

### C.    The Superseding Indictment Must Be Dismissed for Want of Jurisdiction

Because the Acting Attorney General lacked authority to grant such broad prosecutorial powers in the Appointment Order, the Special Counsel lacks authority to wield them.  Where a "special prosecutor lacks . . . authority," the Court "must dismiss . . . for want of jurisdiction." *Providence Journal*, 485 U.S. at 699; *see, e.g.*, *United States v. Fernandez*, 887 F.2d 465, 471 (4th Cir. 1989) (dismissing appeal by Attorney General for lack of jurisdiction because independent counsel "ha[d] exclusive authority to bring th[e] appeal").[2]  Dismissal is warranted here.

1.    In case after case, courts have recognized that the scope of a putative prosecutor's authority is defined by the regulations governing his or her appointment.  For example, in *United States v. Nixon*, 418 U.S. 683 (1974), the Supreme Court rejected the President's challenge to a special prosecutor's subpoena, holding it authorized by regulation.  The Court noted that "[i]t is theoretically possible for the Attorney General to amend or revoke the regulation defining [a] Special Prosecutor's authority" so as to deprive him or her of subpoena power.  *Id.* at 696.  But where "he has not done so," and as "long as this regulation is extant," the regulation "has the force of law."  *Id.* at 695-96.   Because those Regulations "remain[ ] in force[,] the Executive Branch is bound by [them], and indeed the United States . . . is bound to respect and to enforce [them]."  *Id.* at 696.

---

[2] *See also United States v. Singleton*, 165 F.3d 1297, 1299-1300 (10th Cir. 1999) ("[A] federal court cannot even assert jurisdiction over a criminal case unless it is filed and prosecuted by . . . a properly appointed [attorney]."); *In re United States*, 345 F.3d 450, 454 (7th Cir. 2003) (issuing writ of mandamus when court appointed unauthorized prosecutor); *United States v. Bennett*, 464 F. App'x 183, 184-85 (4th Cir. 2012) ("A federal court is without jurisdiction in a criminal prosecution where the Government lacks an authorized representative.").

The same principle controls where the exercise of prosecutorial power is not authorized. In *Providence Journal*, the district court had appointed a private attorney to prosecute a contempt motion because the U.S. Attorney was conflicted.  485 U.S. at 696-97.  The special prosecutor filed a petition for a writ of certiorari.  *See id.* at 698.  By regulation, however, no person may represent the government in the Supreme Court except the Solicitor General or a designee.  *Id.* at 699-700.  And the Solicitor General had never authorized the certiorari petition.  *See id.* at 698. The Supreme Court dismissed the writ, holding that "[a]bsent a proper representative of the Government, . . . jurisdiction is lacking."  *Id.* at 708.  That the district court purported to appoint the special prosecutor was irrelevant; because the special prosecutor lacked actual authority under law, dismissal was required.

Similarly, in *Federal Election Commission v. NRA Political Victory Fund*, 513 U.S. 88 (1994), the Supreme Court dismissed a certiorari petition filed by the FEC "for want of jurisdiction" because that agency was "not authorized to petition for certiorari . . . on its own." *Id.* at 90, 99.  The Solicitor General had attempted "to authorize the FEC's petition after the time for filing it had expired," but that after-the-fact authorization "did not breathe life into [the petition]" because the 90-day deadline to file the petition had lapsed.  *Id.* at 90, 98-99.

Finally, over a century ago, in *United States v. Rosenthal*, 121 F. 862 (C.C.S.D.N.Y. 1903), the district court granted a motion to quash indictments because the prosecutor lacked authority to conduct proceedings before the grand jury.  *Id.* at 874.  The Attorney General had appointed a "Special Assistant to the Attorney General" to investigate certain offenses.  *Id.* at 863.  Acting under that purported grant of authority, the Special Assistant "pursued vigorously and fairly the investigation of the alleged offenses, and with the sanction and co-operation of the District Attorney appeared before the grand jury, and chiefly conducted the proceedings that resulted in the indictments."  *Id.* at 865.  But the Special Assistant lacked authority to do so, the

court concluded, because (at that time) the Attorney General and his officers lacked authority "to represent the United States in criminal prosecutions." *Id.* at 865-66.  The court held that "[t]he indictments are not faulty, save for the single reason that they are based upon proceedings in great part conducted without authority by the special assistant to the Attorney General." *Id.* at 874.  It thus quashed the indictments "on that sole ground." *Id.*

Even the government agrees that, when indictments are obtained by an unauthorized prosecutor, dismissal is appropriate.  In Mr. Manafort's civil suit, the government urged that his claim that that "the Special Counsel lacks authority" should be raised "by filing a motion to dismiss the indictment."  Defs.' Mem. in Supp. of Mot. To Dismiss, *supra*, at 2.[3]   Court after court agrees:  Where a prosecutor lacks authority, dismissal is warranted.[4]

---

[3] The government has elsewhere claimed that the Special Counsel Regulations do not "create any rights . . . enforceable at law or equity." Defs.' Mem. in Supp. of Mot. To Dismiss, *supra*, at 23 & n.7.  But Mr. Manafort does not claim that the Appointment Order ***violated*** any rights he can assert against the government.  Mr. Manafort raises the fact that the Acting Attorney General ***lacked authority*** to issue paragraph (b)(ii) of the Appointment Order.  Mr. Manafort is entitled to raise that lack of authority—and the Court's resulting want of jurisdiction—even if the regulations are not themselves actionable.  *See Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 690-91 (1949) (federal courts may enjoin government actions "in excess of . . . authority or under an authority not validly conferred"); *see id.* at 691-92 (distinguishing claims "based upon any lack of delegated power" from claims that agency action is "illegal").

[4] *See, e.g.*, *United States v. Garcia-Andrade*, No. 13-CR-993-IEG, 2013 WL 4027859, at *5 (S.D. Cal. Aug. 6, 2013) (dismissing indictment because "[a] court does not have jurisdiction over a criminal case unless 'a proper representative of the Government' participates in the action"); *Mehle v. Am. Mgmt. Sys., Inc.*, 172 F. Supp. 2d 203, 205 (D.D.C. 2001) (dismissing suit because prosecuting attorney was "not authorized"); *United States v. Huston*, 28 F.2d 451, 456 (N.D. Ohio 1928) (dismissing indictment because "the proceedings before the grand jury were vitiated by the unauthorized appearance therein by [the special prosecutor]"); *United States v. Cohen*, 273 F. 620, 621 (D. Mass. 1921) (dismissing indictment where the prosecutor "was not . . . authorized to bring these informations"); *see also Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 814 (1987) (reversing contempt conviction because court improperly appointed interested prosecutor); *In re United States*, 345 F.3d 450, 454 (7th Cir. 2003) ("vacat[ing] the appointment of the special prosecutor" to prosecute charge the United States had moved to dismiss); *United States v. Male Juvenile*, 148 F.3d 468, 472 (5th Cir. 1998) (information invalid because certification was not signed by United States Attorney as required).

2.     That result is compelled here.  The Acting Attorney General could authorize the Special Counsel to investigate a ***specifically defined*** matter concerning potential violations of federal criminal law.  But the Acting Attorney General could not grant the Special Counsel original jurisdiction to investigate and prosecute whatever else he comes across during the investigation.  Because the Acting Attorney General could not grant that power, the Special Counsel may not exercise it.

Yet that is precisely the authority the Special Counsel purports to exercise in this case. The Superseding Indictment's allegations have nothing to do with the specific matter to be investigated identified by the Appointment Order—alleged coordination between the 2016 Trump presidential campaign and the Russian government.  The Superseding Indictment instead alleges financial, tax, and reporting crimes in connection with Mr. Manafort's work in Ukraine; Mr. Manafort's tax returns; certain loans he obtained; and his alleged failures to report foreign bank accounts.  Superseding Indictment ¶¶ 2-6, 45-74.  But those matters have no connection to alleged coordination between the Russian government and the Trump campaign; and most of the conduct in question pre-dates the Trump campaign by years.  *See* p. 9, *supra*.  Lacking any connection to any coordination between the Russian government and the Trump campaign, those charges cannot fall within the grant of jurisdiction in paragraph (b)(i) of the Appointment Order. To the extent the Special Counsel asserts authority to pursue them, he must rely on his putative jurisdiction over "any matters that arose or may arise directly from the investigation" under paragraph (b)(ii).  But the Acting Attorney General lacked authority to grant that jurisdiction. *See* pp. 13-17, *supra*.  The Special Counsel thus has no authority to exercise it.  And this Court lacks jurisdiction as well.  *See* pp. 17-20, *supra*.

**D.      The Superseding Indictment Must Be Dismissed Under Rules 6(d) and 7(c)**

For similar reasons, the indictment must be dismissed for failure to comply with Federal Rules of Criminal Procedure 6(d) and 7(c).

1.      <u>Federal Rule of Criminal Procedure 6(d)</u>.  Rule 6(d) permits ***only*** "[t]he following persons" to be "present while the grand jury is in session: attorneys for the government, the witness being questioned, interpreters when needed, and a court reporter or an operator of a recording device."  Fed. R. Crim. P. 6(d); *see United States v. Schell*, 775 F.2d 559, 565 (4th Cir. 1985) ("The purpose of Rule 6(d) is to exclude from grand jury proceedings those individuals who have no authorized role in such proceedings.").  "Attorney[s] for the government," the only category the Special Counsel arguably fits into, includes ***only***: "(A) the Attorney General or an authorized assistant; (B) a United States attorney or an authorized assistant; (C) [in certain cases] the Guam Attorney General or other person [authorized under] Guam law . . . ; and (D) any other attorney authorized by law to conduct proceedings."  Fed. R. Crim. P. 1(b)(1).

For the reasons given above, the Special Counsel is none of those things.  He was not properly "authorized by law to conduct proceedings . . . as a prosecutor" for the matters in the Superseding Indictment, Fed. R. Crim. P. 1(b)(1)(D), because the Acting Attorney General could not grant him that authority.  *See* pp. 13-17, *supra*.  He plainly is not the Attorney General, a United States attorney, or one of their authorized assistants.  *See* Fed. R. Crim. P. 1(b)(1)(A), 1(b)(1)(B).  Nor is he the Guam Attorney General or other person authorized under Guam law. Fed. R. Crim. P. 1(b)(1)(C).  Thus, under the plain text of the Rules, the Special Counsel was not permitted to appear before the grand jury that indicted Mr. Manafort.  *See* Fed. R. Crim. P. 6(d).

The government has elsewhere "concede[d]" that the presence of a prosecutor who was "unauthorized to represent the government in criminal proceedings due to a technically ineffective appointment" "constitute[s] a violation of Fed. R. Crim. P. 6(d)."  *See, e.g., United States v.*

*Fowlie*, 24 F.3d 1059, 1065 (9th Cir. 1994).  Courts routinely reach the same conclusion.  *See, e.g.*, *United States v. Wooten*, 377 F.3d 1134, 1140 (10th Cir. 2004) (presence of improperly appointed Special Assistant United States Attorney before grand jury would violate Rule 6(d)(1)); *United States v. Alcantar-Valenzuela*, 191 F.3d 461, 461 (9th Cir. 1999) (memorandum disposition) ("[T]he appearance of . . . a Special Assistant United States Attorney before the grand jury was unauthorized because of technical deficiencies in her appointment and thus violated Federal Rule of Criminal Procedure 6.").  The same reasoning applies here:  Because the Special Counsel is not an authorized "attorney for the government," his appearance before the grand jury violated Federal Rule 6(d).[5]

2.    <u>Federal Rule of Criminal Procedure 7(c)</u>.  For similar reasons, the indictments violate the requirement that they "be signed by an attorney for the government."  Fed. R. Crim. P. 7(c).  "The federal courts have concluded uniformly that Rule 7(c) . . . precludes federal grand juries from issuing an indictment without the prosecutor's signature, signifying his or her approval."  *Rehberg v. Paulk*, 566 U.S. 356, 372 n.2 (2012).  Here, the Special Counsel was the only individual who signed the Superseding Indictment on behalf of the government.  Superseding Indictment at 37.  For the reasons given above, however, the Special Counsel is not an "[a]ttorney for the government."  *See* Fed. R. Crim. P. 1(b)(1); pp. 13-17, 21, *supra*.  The

---

[5] The Appointment Order also raises whether the grand jury has been misused to investigate counterintelligence matters.  That Order authorizes the Special Counsel to carry out the "investigation confirmed by then-FBI Director James B. Comey . . . on March 20, 2017," Appointment Order ¶(b)—an investigation Mr. Comey described as "part of our counterintelligence effort." Matthew Rosenberg, Emmarie Huetteman & Michael S. Schmidt, *Comey Confirms F.B.I. Inquiry on Russia; Sees No Evidence of Wiretapping*, N.Y. Times, Mar. 20, 2017, at A1.  But grand juries are not empowered to perform "counterintelligence" duties; their sole "task is . . . to determine whether or not there is probable cause to prosecute a particular defendant."  *United States v. R. Enters., Inc.*, 498 U.S. 292, 298 (1991); *see* 18 U.S.C. § 3332(a) ("duty of" special grand jury is "to inquire into offenses against the criminal laws of the United States").

indictments were thus issued in violation of Rule 7(c) as well.  *See, e.g.*, *United States v. Boruff*, 909 F.2d 111, 117-18 (5th Cir. 1990).  ("[I]t was error for the district court to proceed to trial . . . on the superseding indictment [when] no government attorney had signed it."); *see also United States v. Male Juvenile*, 148 F.3d 468, 472 (5th Cir. 1998) (similar).[6]

3.    The Resulting Prejudice.  Where grand jury proceedings are conducted in viola-tion of the Federal Rules, the indictment must be dismissed if "'the violation substantially influenced the grand jury's decision to indict,' or if there is "'grave doubt' that the decision to indict was free from the substantial influence of such violations."  *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988) (quoting *United States v. Mechanik*, 475 U.S. 66, 78 (1986)). The Special Counsel's participation before the grand jury and signing of the indictment here plainly meet that standard:  Mr. Manafort would not now be subject to this prosecution but for the Special Counsel's *ultra vires* assertion of jurisdiction.  By 2007, prominent news outlets had also reported that Mr. Manafort was performing that work.[7]  And, in July 2014—years before the Special Counsel's appointment, Mr. Manafort voluntarily met with DOJ prosecutors and FBI

---

[6] Similarly, because the Special Counsel is not an "attorney for the government," he lacked authority to investigate the conduct underlying the Superseding Indictment, including by filing search warrant applications and issuing grand jury subpoenas.  *See* Fed. R. Crim. P. 6(d); Fed. R. Crim. P. 41(b) (search warrant may be sought by only "a federal law enforcement officer or an attorney for the government").

[7] *See, e.g.*, Clifford J. Levy, *Ukrainian Prime Minister, Once Seen as Archvillain, Reinvents Himself*, N.Y. TIMES, Sept. 30, 2007, at A8 (A "seasoned American political strategist . . . has labored for months on a Yanukovich makeover.  Though the strategist, Paul J. Manafort, has sought to remain behind the scenes, his handiwork has been evident."); Clifford J. Levy, *Toppled in Ukraine but Nearing a Comeback*, N.Y. TIMES, Jan. 15, 2010, at A4 ("Mr. Yanukovich has been assisted by Paul J. Manafort . . . since 2005."); Michael Cooper, *Savior or Machiavelli, McCain's Top Aide Carries On*, N.Y. TIMES, Oct. 23, 2007, at A26 (similar).  Other reports around that time claimed that Mr. Manafort's company had not registered as a lobbying entity. *See, e.g.*, Barry Meier, *Lawmakers Seek To Close Foreign Lobbyist Loopholes*, N.Y. TIMES, June 12, 2008, at A23; Barry Meier, *In McCain Campaign, a Lobbying Labyrinth*, N.Y. TIMES, May 25, 2008, at A22.

agents to discuss his offshore consulting activities.  The DOJ had thus already investigated Mr.

Manafort's tax filings for the time period covered in the Superseding Indictment.  But the DOJ

did not prosecute Mr. Manafort for any of that conduct.

The Special Counsel was obviously the driving force behind the decision to charge Mr.

Manafort.  There can thus be no doubt that his involvement in the grand jury proceedings

"'substantially influenced the grand jury's decision to indict.'"  *Bank of Nova Scotia*, 487 U.S. at

256 (quoting *Mechanik*, 475 U.S. at 78).[8]

Courts regularly find prejudice warranting dismissal when an unauthorized prosecutor

appears before the grand jury.  *See, e.g.*, *Pease v. Commonwealth*, 482 S.E.2d 851, 852 (Va. Ct.

App. 1997) (quashing an indictment when unauthorized attorney "substantially influenced the

grand jury"); *State v. Hardy*, 406 N.E.2d 313, 316 (Ind. Ct. App. 1980) ("presence and active

participation of a prosecuting attorney" recused from case demonstrated "prejudice," warranting

dismissal of the indictment); *People v. Munson*, 150 N.E. 280, 283 (Ill. 1925) (dismissing an

indictment "procured directly through the assistance of [an unauthorized individual], acting as

state's attorney").  The same result is warranted here.

## II.     THE SUPERSEDING INDICTMENT EXCEEDS THE AUTHORITY THE APPOINTMENT ORDER EVEN PURPORTS TO GRANT

### A.     The Appointment Order Purports To Grant Authority Only Over Matters That "Arise Directly From" the Special Counsel's Investigation

Even if the Acting Attorney General could grant the Special Counsel original jurisdiction

over any "matters that arose or may arise directly from the investigation," Appointment Order

---

[8] If there is any doubt about the Special Counsel's involvement in the grand jury process, the Court should order production of the grand jury transcripts, including transcripts of the Special Counsel's or his staff's colloquies with the grand jury, and permit further briefing and argument. The Rules 6 and 7 violations apparent on the face of the indictment show the "particularized need" justifying their production. *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 443 (1983).

¶(b)(ii), the Special Counsel exceeded that limit.  The phrase "arose or may arise directly from" establishes a clear boundary:  Paragraph (b)(ii) permits the Special Counsel to pursue conduct unrelated to his original investigation only if, at a minimum, he learns of that conduct ***because of*** his original investigation.  And the conduct must be ***demonstrably related to*** the subject of his original jurisdiction.  The charges here are not.

1.      Courts routinely interpret the phrase "arising from" or "arising out of" to require at least a causal connection.  For example, in *Dolan v. United States Postal Service*, 546 U.S. 481 (2006), the Supreme Court considered a statute granting immunity from tort claims "***arising out of*** the loss, miscarriage, or negligent transmission of letters or postal matter."  *Id.* at 485 (quoting 28 U.S.C. § 2680(b) (emphasis added)).  The Court read the immunity grant to cover only "injuries arising, directly or consequentially, ***because*** mail either fails to arrive at all or arrives late, in damaged condition, or at the wrong address."  *Id.* at 489 (emphasis added).

There is a "general consensus that the phrase 'arising out of' . . . requires some causal connection."  *Fed. Ins. Co. v. Tri-State Ins. Co.*, 157 F.3d 800, 804 (10th Cir. 1998) (collecting cases); *see, e.g.*, *U.S. Indus./Fed. Sheet Metal, Inc. v. Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor*, 455 U.S. 608, 615 (1982) (phrase injury "'arising out of . . . the course of employment'" requires that "the injury have been caused by the employment"); *In re Lehman Bros. Holdings, Inc.*, 855 F.3d 459, 478 (2d Cir. 2017) (phrase claims "arising from" a securities transaction requires "causal link" between claim and securities transaction); *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 917 n.36 (10th Cir. 2017) ("'arising out of' requirement" in insurance contract "includes 'a true causal element'").  And here, the Appointment Order does not merely require that new matters "arise out of" the original investigation; they must "arise ***directly*** from" it.  Appointment Order ¶(b)(ii) (emphasis added).

2.      In this context, moreover, new matters cannot "arise out of" an initial

investigation unless they are "demonstrably ***related to*** the initial grant of jurisdiction." *In re Espy*, 145 F.3d 1365, 1367 (D.C. Cir. 1998) (per curiam) (emphasis added); *see also Morrison v. Olson*, 487 U.S. 654, 679 (1988) ("[T]he jurisdiction that the court decides upon must be demonstrably related to the factual circumstances that gave rise to . . . the appointment of the independent counsel in the particular case."); *United States v. Tucker*, 78 F.3d 1313, 1321 (8th Cir. 1996) ("[R]elatedness . . . depends upon the procedural and factual link between the [independent counsel's] original prosecutorial jurisdiction and the [new] matter.").

In *Espy*, 145 F.3d 1365, for example, an independent counsel was appointed under the Ethics in Government Act to investigate allegations that the Secretary of Agriculture had accepted gifts from persons with business before his department. *Id.* at 1366. The independent counsel was also granted "jurisdiction and authority to investigate" allegations "developed during the Independent Counsel's investigation referred to above and connected with or ***arising out of*** that investigation," or "related to that subject matter," as well as obstruction efforts "in connection with any investigation of the matters described above." *Id.* at 1366-67 (emphasis added).

The independent counsel then applied to the court of appeals to investigate an additional matter. *Espy*, 145 F.3d at 1367. Under the Ethics in Government Act, the court could merely "interpret, but not expand, the independent counsel's original prosecutorial jurisdiction." *Id.* at 1368 (alterations and internal quotation marks omitted). The counsel's application, however, alleged "conduct on the part of Secretary Espy and others in violation of ***other criminal statutes*** outlawing a ***different category of conduct*** and ***occurring on different occasions*** than those set forth in the grant of jurisdiction." *Id.* (emphasis added). Because the new allegations "d[id] not involve any alleged misuse of the office of Secretary of Agriculture by Espy, any acceptance of payments or gifts from persons having business with that Department, or any similar pattern of

conduct," the court denied the application.  *Id.* at 1368-69.  Given that the conduct was different, the time frames were different, and the applicable statutes were different, the new matters were "unrelated" to "the original grant of authority" and could not have "aris[en] out of" it.  *Id.* at 1368.  The court so held even though the original investigation and the proposed new one shared a "common prospective subject," a "common concern for misconduct by a high official[,] and the potential presence of eight unnamed common witnesses."  *Id.*

### B.   The Charges Against Mr. Manafort Do Not "Arise Directly From" the Special Counsel's Investigation

*Espy* makes this an *a fortiori* case.  The Appointment Order purportedly empowers the Special Counsel to investigate Russian involvement in the 2016 campaign and matters that "arise directly from" that investigation.  But the Superseding Indictment alleges "a different category of conduct" that "occurr[ed] on different occasions" than the subject of the original investigation. *Espy*, 145 F.3d at 1368; *see* p. 9, *supra*.  Under *Espy*, the Superseding Indictment does not "arise from" the original investigation the Special Counsel was empowered to pursue—much less arise from it "directly."

Review of the Superseding Indictment makes that especially clear.  The conduct alleged here was not discovered because of the Special Counsel's investigation into alleged coordination; nor was it "demonstrably related to" that investigation.  For example, the alleged tax violations occurred in tax years *2010* to *2015*, well before the start of the Trump campaign or Mr. Manafort's brief involvement with that campaign.   Superseding Indictment ¶¶45-48, 51-54. Likewise, the alleged failures to disclose foreign assets occurred in *2011* to *2014*.  *Id.* ¶¶49-50, 55-56.  And the DOJ well knew about both of those supposed crimes because it had *already investigated* Mr. Manafort about them.  *See* pp. 23-24, *supra*.  The Special Counsel thus cannot credibly claim that he discovered them *because of* his original investigation.  *See Espy*, 145 F.3d

at 1368.   All of the charges, moreover, relate to "a different category of conduct" that "occurr[ed] on different occasions."  *Id.*

*A fortiori*, the charges therefore cannot "arise out of" the original investigation.   And they certainly do not "arise from" it "directly."  *See* pp. 25-26, *supra*; *see, e.g.*, *SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351, 357 (6th Cir. 2014) (phone calls could not create specific personal jurisdiction because plaintiff's alleged "injury . . . preceded the phone calls" and thus "could not have arisen from the phone calls"); *Richter v. Analex Corp.*, 940 F. Supp. 353, 359 (D.D.C. 1996) (malpractice claim did not "arise[] out of" visit to a forum so as to allow exercise of long-arm jurisdiction when any alleged malpractice preceded the visit).[9]   The only connection is that the new charges share a "common prospective subject."   But a "common prospective subject" and "common witnesses" with the original investigation were insufficient in *Espy.*  145 F.3d at 1368.  They are likewise insufficient here.

Indeed, the Special Counsel has never suggested that Mr. Manafort had anything to do with alleged "coordination [with] the Russian government," or even that he is investigating Mr. Manafort on that subject.  Appointment Order ¶(b)(i).  The Superseding Indictment cannot have any causal connection to, let alone "arise directly from," an investigation into Mr. Manafort that never occurred.  That further confirms that the Special Counsel's acts exceed even the scope of authority the Appointment Order claims to grant.

### C.    The Superseding Indictment Violated Rules 6(d) and 7(c) Because It Exceeds the Scope of the Appointment Order

Because the Superseding Indictment exceeds the Appointment Order's putative scope, it

---

[9] Moreover, no conflict of interest or other extraordinary circumstance would preclude the DOJ from investigating the conduct charged here—as evidenced by the fact that the DOJ already investigated it and did not prosecute.  *See* pp. 23-24, *supra*.  For that reason, too, the Appointment Order cannot be read to encompass that conduct.

violated Rules 6(d) and 7(c) as well.  Only an authorized "attorney[ ] for the government" may appear before a grand jury or sign an indictment.  Fed. R. Crim. P. 6(d), 7(c).  For matters beyond the scope of the Appointment Order, the Special Counsel does not qualify.  Because he lacked authority to bring these charges, the Special Counsel violated Rule 6(d) by appearing before the grand jury.  *See Fowlie*, 24 F.3d at 1065; *Wooten*, 377 F.3d at 1140; *Alcantar-Valenzuela*, 191 F.3d at 461; *see also* pp. 21-22, *supra*.  Likewise, he violated Rule 7(c) too when he signed a Superseding Indictment lacking even a causal link to his original investigation. *See Boruff*, 909 F.2d at 117-18; *Male Juvenile*, 148 F.3d at 472; *see also* pp. 22-23, *supra*.

### D.    This Court Lacks Jurisdiction and Dismissal Is Otherwise Warranted

The Superseding Indictment must be dismissed because it is totally unmoored from the Appointment Order's grant of authority.  Where a "special prosecutor lacks . . . authority," the Court "must dismiss . . . for want of jurisdiction."  *Providence Journal Co.*, 485 U.S. at 699; *see* pp. 17-20, *supra*.  That is no less true when the Special Counsel exceeds his granted authority than when the grant of authority is *ultra vires* from the outset.

The Rules 6 and 7 violations also warrant dismissal.  As explained above, the Special Counsel's conduct " 'substantially influenced the grand jury's decision to indict.' " *Bank of Nova Scotia*, 487 U.S. at 256 (quoting *Mechanik*, 475 U.S. at 78); *see* pp. 23-24, *supra*.  Lawfully appointed prosecutors had long ago learned of the conduct charged here and decided ***not*** to indict Mr. Manafort for it.  *See* pp. 23-24 & n.7, *supra*.  Yet the Special Counsel led the grand jury to indict Mr. Manafort for the same conduct—conduct that does not fall within his purported authority.  The Special Counsel's Rules violations thus plainly prejudiced Mr. Manafort, requiring dismissal of the Superseding Indictment.  *See, e.g.*, *Fowlie*, 24 F.3d at 1066; *Boruff*, 909 F.2d at 117-18.

## **<u>CONCLUSION</u>**

The Superseding Indictment should be dismissed.

Dated:    March 27, 2018                              Respectfully submitted,


                                                     /s/ Kevin M. Downing
                                                     Kevin M. Downing (*pro hac vice*)
                                                     Law Office of Kevin M. Downing
                                                     601 New Jersey Avenue, N.W.
                                                     Suite 620
                                                     Washington, D.C.  20001
                                                     Telephone: (202) 754-1992
                                                     Email: kevindowning@kdowninglaw.com

                                                     /s/ Thomas E. Zehnle
                                                     Thomas E. Zehnle (VSB # 27755)
                                                     Law Office of Thomas E. Zehnle
                                                     601 New Jersey Avenue, N.W.
                                                     Suite 620
                                                     Washington, D.C.  20001
                                                     Telephone: (202) 368-4668
                                                     Email: tezehnle@gmail.com


                                                     *Counsel for Defendant Paul J. Manafort, Jr.*