**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

UNITED STATES OF AMERICA

v.

PAUL J. MANAFORT, JR.,

                Defendant.

Case No. 1:18-cr-83 (TSE)

## **GOVERNMENT'S RESPONSE IN OPPOSITION**
## **TO MOTION TO DISMISS**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................ ii

TABLE OF AUTHORITIES .......................................................................................... iii

INTRODUCTION ........................................................................................................ 1

BACKGROUND .......................................................................................................... 1

    A.    The FBI's Investigation And The Appointment Of The Special Counsel .............. 1

    B.    The Statutory Framework And Special Counsel Regulations ................................ 3

    C.    The Present Prosecution And The Motion To Dismiss .......................................... 6

LEGAL STANDARD .................................................................................................... 7

ARGUMENT ................................................................................................................ 7

    A.    The Acting Attorney General's Order Appointing The Special Counsel Is Valid And The Special Counsel Has Operated Within His Authorized Jurisdiction .......................................................................................................... 8

    B.    Manafort's Interpretation Of The Special Counsel Regulations And The Appointment Order Is Mistaken .......................................................................... 15

    C.    The Special Counsel Regulations Do Not Give Rise To Judicially Enforceable Rights ............................................................................................ 19

    D.    Manafort's Arguments Cannot Support The Remedy He Seeks .......................... 23

CONCLUSION ........................................................................................................... 30

# TABLE OF AUTHORITIES

**Cases**

*Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988) .................................................. 28, 29

*Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337 (1952) ...................................................... 7

*Caha v. United States*, 152 U.S. 211 (1894) ............................................................... 28

*Cyan, Inc. v. Beaver County Emps. Retirement Fund*, 138 S. Ct. 1061 (2018) ........................... 16

*Eberhart v. United States*, 546 U.S. 12 (2005) ...................................................... 24, 26

*FEC v. NRA Political Victory Fund*, 513 U.S. 88 (1994) .................................................... 25

*Fowler v. Butts*, 829 F.3d 788 (7th Cir. 2016) ............................................................. 24

*In re Espy*, 80 F.3d 501 (D.C. Cir., Spec. Div. 1996) ...................................................... 19

*In re Grand Jury Proceedings*, 42 F.3d 876 (4th Cir. 1994) ........................................... 21

*In re Grand Jury Subpoena (Miller)*, 438 F.3d 1141 (D.C. Cir. 2006) ........................................ 21

*In re Lane*, 135 U.S. 443 (1890) .................................................................. 25

*In re Persico*, 522 F.2d 41 (2d Cir. 1975) ................................................................. 24

*In re Sealed Case*, 829 F.2d 50 (D.C. Cir. 1987) ......................................................... 20

*In re Shain*, 978 F.2d 850 (4th Cir. 1992) .............................................................. 21, 22

*Infelice v. United States*, 528 F.2d 204 (7th Cir. 1975) ..................................................... 24, 26, 27

*Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949) ....................................... 23

*Little v. United States*, 524 F.2d 335 (8th Cir. 1976) .................................................... 27

*Mehle v. Am. Mgmt. Sys., Inc.*, 172 F. Supp. 2d 203 (D.D.C. 2001) ......................................... 26

*Morrison v. Olson*, 487 U.S. 654 (1988) .................................................................. 19

*United States v. Armstrong*, 517 U.S. 456 (1996) ................................................................. 10, 22

*United States v. Balistrieri*, 779 F.2d 1191 (7th Cir. 1986) ............................................... 24, 26, 27

*United States v. Bennett*, 464 F. App'x 183 (4th Cir. 2012) ...................................................... 26

*United States v. Blackley*, 167 F.3d 543 (D.C. Cir. 1999) ............................................................ 22

*United States v. Boruff*, 909 F.2d 111 (5th Cir. 1990) .................................................................. 28

*United States v. Caceres*, 440 U.S. 741 (1979) .................................................................... 20, 23

*United States v. Craveiro*, 907 F.2d 260 (1st Cir. 1990) ............................................................. 22

*United States v. Dionisio*, 410 U.S. 1 (1973) ............................................................................ 17

*United States v. Durham*, 941 F.2d 886 (9th Cir. 1991) .............................................................. 28

*United States v. Easton*, 937 F.2d 160 (5th Cir. 1991) ............................................................... 25

*United States v. Fahnbulleh*, 752 F.3d 470 (D.C. Cir. 2014) ....................................................... 25

*United States v. Fernandez*, 231 F.3d 1240 (9th Cir. 2000) ........................................................ 21

*United States v. Fernandez*, 887 F.2d 465 (4th Cir. 1989) .......................................................... 25

*United States v. Fowlie*, 24 F.3d 1059 (9th Cir. 1994) .......................................................... 27, 28

*United States v. Garcia-Andrade*, No. 13-cr-993, 2013 WL 4027859
  (S.D. Cal. Aug. 6, 2013) ............................................................................................ 26

*United States v. Hartwell*, 448 F.3d 707 (4th Cir. 1996) ....................................................... 24, 25

*United States v. Howard*, 590 F.2d 564 (4th Cir. 1979) .............................................................. 21

*United States v. Lee*, 274 F.3d 485 (8th Cir. 2001) ............................................................... 21, 22

*United States v. Libby*, 429 F. Supp. 2d 27 (D.D.C. 2006) ...................................................... 12, 20

*United States v. Male Juvenile*, 148 F.3d 468 (5th Cir. 1998) ..................................................... 26

*United States v. Morris*, 532 F.2d 436 (5th Cir. 1976) ............................................................... 24

*United States v. Nixon*, 418 U.S. 683 (1974) ...................................................................... 20, 21

*United States v. Piervinanzi*, 23 F.3d 670 (2d Cir. 1994) ............................................................ 22

*United States v. Plesinksi*, 912 F.2d 1033 (9th Cir. 1990) ...................................................... 27, 28

*United States v. Providence Journal Co.*, 485 U.S. 690 (1988) .................................................... 25

*United States v. Rosenthal*, 121 F. 862 (C.C.S.D.N.Y. 1903) ...................................................... 26

*United States v. Sells Eng'g, Inc.*, 463 U.S. 418 (1983) ................................................. 27

*United States v. Tucker*, 78 F.3d 1313 (8th Cir. 1996) ................................................. 22

*United States v. Wilson*, 413 F.3d 382 (3d Cir. 2005) ................................................. 21

*United States v. Wooten*, 377 F.3d 1134 (10th Cir. 2004) ........................................... 28

*United States v. Wrigley*, 520 F.2d 362 (8th Cir. 1975) ............................................... 27

*Wayte v. United States*, 470 U.S. 598 (1985) ........................................................... 22

**Statutes and Rules**

18 U.S.C. § 3231 .................................................................................... 24, 25

28 U.S.C. § 508 ......................................................................................... 2

28 U.S.C. § 509 ........................................................................................ 20

28 U.S.C. § 510 ..................................................................................... 3, 20

28 U.S.C. § 515 .................................................................. 3, 20, 23, 24, 26, 27

28 U.S.C. § 516 ........................................................................................ 23

28 U.S.C. § 518(a) .................................................................................... 25

28 U.S.C. § 519 ........................................................................................ 23

28 U.S.C. § 1254 ...................................................................................... 25

Fed. R. Crim. P. 1(b)(1)(A) ........................................................................ 27

Fed. R. Crim. P. 1(b)(1)(D) ........................................................................ 27

Fed. R. Crim. P. 6(d)(1) ............................................................................ 27

Fed. R. Crim. P. 6(e)(2)(B)(vi) .................................................................... 27

Fed. R. Crim. P. 6(e)(3)(A)(i) ..................................................................... 27

Fed. R. Crim. P. 6(e)(3)(B) ........................................................................ 27

Fed. R. Crim. P. 6(e)(3)(C) ........................................................................ 27

Fed. R. Crim. P. 6(e)(3)(D) .................................................................... 27

Fed. R. Crim. P. 7(c)(1) ........................................................................ 27

Fed. R. Crim. P. 12(b)(2) ........................................................................ 7

Fed. R. Crim. P. 12(b)(3)(A) .................................................................. 7

Fed. R. Crim. P. 52(a) ............................................................................ 28

**Regulations and Administrative Materials**

28 C.F.R. § 0.15(a) ................................................................................ 2

28 C.F.R. § 600.1 .................................................................................. 8

28 C.F.R. § 600.3(a) ............................................................................ 10

28 C.F.R. § 600.4(a) ..................................................................... *passim*

28 C.F.R. § 600.4(b) ..................................................................... *passim*

28 C.F.R. § 600.6 .......................................................................... 3, 7

28 C.F.R. § 600.7 ........................................................................ 12, 19

28 C.F.R. § 600.7(a) .................................................................... 10, 28

28 C.F.R. § 600.7(b) ............................................................. 3, 4, 10, 17

28 C.F.R. § 600.7(d) ................................................................... 4, 10

28 C.F.R. § 600.8 ................................................................................ 19

28 C.F.R. § 600.8(b) .......................................................... 4, 7, 9, 12

28 C.F.R. § 600.10 ...................................................................... 8, 20

28 C.F.R. §§ 600.1-600.10 ........................................................... 3, 20

*Office of Special Counsel*, 64 Fed. Reg. 37,038 (July 9, 1999) ............................................ *passim*

Office of the Deputy Att'y Gen., Order No. 3915-2017, *Appointment of Special Counsel to Investigate Russian Interference with the 2016 Presidential Election and Related Matters*, May 17, 2017 ........................................................................ *passim*

**Other Authorities**

Andrew Kramer, Mike McIntire, & Barry Meier, *Secret Ledger in Ukraine Lists Cash for Donald Trump's Campaign Chief,* N.Y. Times, Aug. 14, 2016, *availible at* https://www.nytimes.com/2016/08/15/us/politics/paul-manafort-ukraine-donald-trump.html ................................................................................................ 13

*Black's Law Dictionary* (10th ed. 2014) .................................................................................. 18

Complaint, *Manafort v. U.S. Dep't of Justice,* No. 18-cv-11 (D.D.C filed Jan, 3, 2018), Doc. 1 ......................................................................................... 7

Congressional Research Service, *Independent Counsel Law Expiration and the Appointment of "Special Counsels"* (Jan. 15, 2002) ................................................................ 3

Congressional Research Service, *Independent Counsels, Special Prosecutors, Special Counsels, and the Role of Congress* (June 20, 2013) .................................................... 3

Def.'s Mot. to Dismiss Superseding Indictment, *United States v. Manafort,* No. 17-cr-201 (D.D.C. filed March 14, 2018), Doc. 235 ......................................................... 7

Memorandum from Rod J. Rosenstein to Robert S. Mueller, III (Aug. 2, 2017) ................. *passim*

Press Release, U.S. Dep't of Justice, *Attorney General Sessions Statement on Recusal* (Mar. 2, 2017), *available at* https://www.justice.gov/opa/pr/attorney-general-sessions-statement-recusal ........................................................................................................ 2

Press Release, U.S. Dep't of Justice, *Press Release on Appointment of Special Counsel* (May 17, 2017), *available at* https://www.justice.gov/opa/pr/appointment-special-counsel .................................................................................................................... 21

Statement of FBI Director James B. Comey, H. Perm. Select Comm. on Intelligence, *Hearing on Russian Active Measures Investigation* (Mar. 20, 2017), *available at* https://www.fbi.gov/news/testimony/hpsci-hearing -titled-russian-active-measures-investigation ........................................................................... 2

Testimony of Deputy Attorney General Rod J. Rosenstein, H. Comm. on the Judic., *Hearing on the Justice Department's Investigation of Russia's Interference in the 2016 Presidential Election* (Dec. 13, 2017)............................................................. *passim*

Transcript of Motions Hearing, *Manafort v. U.S. Dep't of Justice,* No. 18-cv-11 (D.D.C. Apr. 4, 2018) ........................................................................................ 7

United States Attorneys' Manual, *available at* https://www.justice.gov/usam/ united-states-attorneys-manual ................................................................................... 4, 9, 28

## INTRODUCTION

The United States of America, by and through Special Counsel Robert S. Mueller, III, files this response to defendant Paul J. Manafort, Jr.'s motion to dismiss the superseding indictment (Doc. 9) ("Indictment"). Manafort attacks the validity of the Acting Attorney General's order appointing the Special Counsel and defining the Special Counsel's jurisdiction; further argues that the Indictment falls outside the scope of the Special Counsel's jurisdiction even if the order of appointment is valid; and finally requests dismissal of the Indictment as a remedy.

Manafort's contentions lack merit. The Acting Attorney General validly defined the Special Counsel's jurisdiction, and the Indictment falls well within the Special Counsel's authority. The Acting Attorney General has specifically confirmed that allegations that Manafort committed a "crime or crimes arising out of payments [Manafort] received from the Ukrainian government before and during the tenure of President Viktor Yanukovych * * * were within the scope of the [Special Counsel's] Investigation at the time of [his] Appointment and are within the scope of the [Appointment] Order." *See* pp. 5-6, *infra*. Given that confirmation, Manafort cannot show that the false-tax-return, foreign-bank-account-reporting, and bank-fraud allegations in the Indictment are unauthorized. These charges arose from Manafort's efforts to funnel millions of dollars in payments from Ukraine to the United States, and then enjoy the tax-free use of the money. That conduct falls within the scope of the Special Counsel's authority. Manafort's further effort to paint this as an unauthorized prosecution, with no political accountability, fails. His motion should be denied.

## BACKGROUND

### A.     The FBI's Investigation And The Appointment Of The Special Counsel

On March 20, 2017, then-FBI Director James B. Comey publicly confirmed that the FBI was investigating Russian interference in the 2016 presidential election and possible links or

coordination with the campaign of President Trump, making clear that he could not further describe "what [the FBI is] doing and whose conduct [it is] examining" because "it is an open, ongoing investigation, and is classified."[1]

On May 17, 2017, Acting Attorney General Rod J. Rosenstein appointed Robert S. Mueller, III, as Special Counsel "to investigate Russian interference with the 2016 presidential election and related matters." Order No. 3915-2017, *Appointment of Special Counsel to Investigate Russian Interference with the 2016 Presidential Election and Related Matters*, May 17, 2017) ("Appointment Order") (Attachment A) (capitalization omitted).[2] "The Special Counsel," the Order stated, "is authorized to conduct the investigation confirmed by then-FBI Director James B. Comey in testimony before the House Permanent Select Committee on Intelligence on March 20, 2017," including:

    (i)     any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump; and

    (ii)    any matters that arose or may arise directly from the investigation; and

    (iii)   any other matters within the scope of 28 C.F.R. § 600.4(a).

*Id.* ¶ (b). "If the Special Counsel believes it is necessary and appropriate," the Order provided, "the Special Counsel is authorized to prosecute federal crimes arising from the investigation of these matters." *Id.* ¶ (c). Finally, the Acting Attorney General made applicable "Sections 600.4

---

[1] Statement of FBI Director James B. Comey, H. Perm. Select Comm. on Intelligence, *Hearing on Russian Active Measures Investigation* (Mar. 20, 2017), *available at* https://www.fbi.gov/news/testimony/hpsci-hearing-titled-russian-active-measures-investigation.

[2] Deputy Attorney General Rosenstein was and is the Acting Attorney General for these purposes because, on March 2, 2017, the Attorney General recused himself "from any existing or future investigations of any matters related in any way to the campaigns for President of the United States." Press Release, U.S. Dep't of Justice, *Attorney General Sessions Statement on Recusal* (Mar. 2, 2017), *available at* https://www.justice.gov/opa/pr/attorney-general-sessions-statement-recusal. *See* 28 U.S.C. § 508; 28 C.F.R. § 0.15(a).

through 600.10 of Title 28 of the Code of Federal Regulations." *Id.* ¶ (d).

**B.     The Statutory Framework And Special Counsel Regulations**

1.  *Governing statutes and regulations*.  The Attorney General may authorize other officials of the Department of Justice (DOJ) to perform his functions (28 U.S.C. § 510) and may specially appoint attorneys who can "conduct any kind of legal proceeding, civil or criminal  * * *  which United States attorneys are authorized by law to conduct" (28 U.S.C. § 515).  In doing so, the Attorney General is not required to invoke the Special Counsel regulations (28 C.F.R. Part 600). And historically, Attorney Generals have often drawn on Section 515 to appoint such subordinate officers, without applying any internal regulations to govern their actions.[3]

The Attorney General's discretionary decision to apply the Special Counsel regulations when making a Section 515 appointment does not change the status of a Special Counsel as a subordinate officer within DOJ.  The regulations can provide a helpful framework that the Attorney General may use in establishing the Special Counsel's role.  28 C.F.R. §§ 600.1-600.10; *see also Office of Special Counsel*, 64 Fed. Reg. 37,038 (July 9, 1999).  A Special Counsel under the regulations is to have "day-to-day independence," but "ultimate responsibility for the matter and how it is handled will continue to rest with the Attorney General (or the Acting Attorney General if the Attorney General is personally recused in the matter)."  *Id.* at 37,038.

Once a Special Counsel is entrusted with particular jurisdiction, *see* 28 C.F.R. § 600.4(a), he has the full power of a United States Attorney to investigate and prosecute cases within that jurisdiction (28 C.F.R. § 600.6) and "shall not be subject to the day-to-day supervision of any official of the Department" (28 C.F.R. § 600.7(b)).  To ensure that a Special Counsel functions

---

[3] *See* Congressional Research Service (CRS), *Independent Counsels, Special Prosecutors, Special Counsels, and the Role of Congress* Summary (June 20, 2013); CRS, *Independent Counsel Law Expiration and the Appointment of "Special Counsels"* 3-4 (Jan. 15, 2002).

within the supervision of the Attorney General, the Special Counsel "will be provided with a specific factual statement of the matter to be investigated" (28 C.F.R. § 600.4(a)); is required to consult with the Attorney General when the Special Counsel concludes that additional jurisdiction is necessary, with the Attorney General "determin[ing] whether to include the additional matters within the Special Counsel's jurisdiction or assign them elsewhere" (28 C.F.R. § 600.4(b)); and "shall notify the Attorney General of events in the course of his or her investigation in conformity with the Departmental guidelines with respect to Urgent Reports" (28 C.F.R. § 600.8(b)).[4]  In addition, the Attorney General may ask for "an explanation for any investigative or prosecutorial step" (28 C.F.R. § 600.7(b)); may countermand the step if it is sufficiently "inappropriate or unwarranted under established Departmental practices" (*id.*); and may remove the Special Counsel for "misconduct, dereliction of duty, incapacity, conflict of interest, or for other good cause, including violation of Departmental policies" (28 C.F.R. § 600.7(d)).

2. *Definition of the Special Counsel's jurisdiction.*  In this case, the Acting Attorney General initially set forth the "scope of the [Special Counsel's] original jurisdiction" in the public order.  Testimony of Deputy Attorney General Rod J. Rosenstein, H. Comm. on the Judic., *Hearing on the Justice Department's Investigation of Russia's Interference in the 2016 Presidential Election*, at 29 (Dec. 13, 2017) ("*Rosenstein Testimony*") (Attachment B).  "[T]he specific matters" assigned to the Special Counsel, however, "are not identified in that order."  *Id.*  Recognizing the need for confidentiality about the investigation, *id.* at 30, the Acting Attorney General "discussed that with [the Special Counsel] when he started" and has continued to have "ongoing discussion about exactly what is within the scope of his investigation,*" id.* at 29.  To the extent that the Special

---

[4] *See also* United States Attorneys' Manual § 1-13.100 (requiring "Urgent Reports" to Department leadership on "major developments in significant investigations and litigation"), *available at* https://www.justice.gov/usam/usam-1-13000-urgent-reports.

Counsel has uncovered evidence of crimes beyond the original scope, the allocation of responsibility for further investigation has been "worked out with[in] the [D]epartment." *Id.* at 40. The Acting Attorney General has testified that he is "properly exercising [his] oversight responsibilities," with the resulting assurance "that the [S]pecial [C]ounsel is conducting himself consistently with [the Acting Attorney General's] understanding about the scope of his investigation." *Id.* at 28.

The process of defining the Special Counsel's jurisdiction has also included non-public dialogue between the Acting Attorney General and the Special Counsel. In particular, on August 2, 2017, the Acting Attorney General issued a memorandum about "[t]he Scope of Investigation and Definition of Authority" conferred on the Special Counsel. Memorandum from Rod J. Rosenstein to Robert S. Mueller, III (Aug. 2, 2017) ("*August 2 Scope Memorandum*") (Attachment C).[5] That memorandum noted that the Appointment Order "was worded categorically in order to permit its public release." *Id.* at 1. The memorandum "provide[d] a more specific description" of the Special Counsel's authority. *Id.* As relevant here, the memorandum specified that the following allegations against Manafort "were within the scope of [the Special Counsel's] investigation at the time of [his] appointment and are within the scope of the [Appointment] Order":

- Allegations that Paul Manafort:

  o Committed a crime or crimes by colluding with Russian government officials with respect to the Russian government's efforts to interfere with the 2016 election for President of the United States, in violation of United States law;

  o Committed a crime or crimes arising out of payments he received from the Ukrainian government before and during the tenure of President Viktor Yanukovych[.]

---

[5] The *August 2 Scope Memorandum* is classified and contains sensitive law enforcement information that cannot be publicly disclosed. The portions quoted here are unclassified. A copy of the memorandum, redacted to protect sensitive information, is contained in Attachment C.

*Id.* at 2.  The *August 2 Scope Memorandum* concluded by stating that the Special Counsel had "authority to continue and complete the investigation of those matters," and it directed that further consultation should occur about the scope of the Special Counsel's investigation with respect to matters that arose or may directly arise from the investigation.  *Id.* at 3.[6]

### C.    The Present Prosecution And The Motion To Dismiss

On February 22, 2018, the grand jury returned the Indictment alleging that Manafort and a co-defendant committed crimes in connection with the payments they received for work that they performed for Russia-backed political entities in Ukraine.[7]  The Indictment alleges that Manafort generated tens of millions of dollars from his Ukraine work and schemed to hide the funds from U.S. authorities while enjoying the use of the money.  Doc. 9 ¶¶ 1-7.   The Indictment charges Manafort with subscribing to false income tax returns, in violation of 26 U.S.C. § 7206(1) (Counts 1-5); failing to file reports of foreign bank accounts, in violation of 31 U.S.C. §§ 5314, 5322(a) (Counts 11-14); and bank fraud conspiracy and bank fraud, in violation of 18 U.S.C. §§ 1344, 1349 (Counts 24-32).  Manafort has moved to dismiss the Indictment, claiming that the Acting Attorney General exceeded his authority in appointing the Special Counsel to investigate matters that arose or may arise from the investigation and, if the Appointment Order is valid, the Special Counsel has exceeded his authority under it.  Doc. 30-1.[8]

---

[6]  Specifically, the *August 2 Scope Memorandum* stated (at 3):  "For additional matters that otherwise may have arisen or may arise directly from the Investigation, you should consult my office for a determination of whether such matters should be within the scope of your authority. If you determine that additional jurisdiction is necessary in order to fully investigate and resolve the matters assigned, or to investigate new matters that come to light in the course of your investigation, you should follow the procedures set forth in 28 C.F.R. § 600.4(b)."

[7]  On March 1, 2018, the Court granted the government's motion to dismiss the charges against Manafort's co-defendant without prejudice.  Doc. 21.

[8]  Manafort filed a substantially similar motion to dismiss the superseding indictment

## LEGAL STANDARD

A defendant can move to dismiss an indictment on the ground that "the court lacks jurisdiction" or based on "a defect in instituting the prosecution." Fed. R. Crim. P. 12(b)(2), (3)(A). In ruling on a motion to dismiss the indictment, the court assumes the truth of its factual allegations. *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 343 n.16 (1952).

## ARGUMENT

Manafort's objections to the Appointment Order and the Special Counsel's actions under it are unsound. The Special Counsel has acted within his authority in investigating and prosecuting Manafort for crimes arising from his Ukrainian payments. *See* Appointment Order; *August 2 Scope Memorandum.* And the Special Counsel regulations contain nothing that forbids the Acting Attorney General from authorizing the Special Counsel to investigate matters that "arose or may arise directly from the investigation." Appointment Order ¶ (b)(ii). That provision affords the Special Counsel limited flexibility, while preserving the Acting Attorney General's authority to clarify the Special Counsel's jurisdiction during regular consultation (*see* 28 C.F.R. §§ 600.6, 600.8(b)), which has occurred here, or to add additional jurisdiction where "necessary in order to fully investigate and resolve the matters assigned," 28 C.F.R. § 600.4(b).

Beyond his failure to show any error, Manafort has not shown that he has a right to enforce the Special Counsel regulations. The internal allocation of prosecutorial power within the Department of Justice provides no basis for a defendant to seek dismissal of an indictment. The

---

returned in the District of Columbia. *United States v. Manafort*, No. 17-cr-201, Doc. 235. Manafort also filed a civil suit in that district to challenge the Special Counsel's authority. *Manafort v. U.S. Dep't of Justice*, No. 18-cv-11 (D.D.C.). The civil suit initially alleged both that the Appointment Order is invalid and, in any event, that the Special Counsel has exceeded the authority conferred in that order. *See* Compl. ¶¶ 32-42, 52, 63. At an April 4, 2018, hearing on the government's motion to dismiss the civil case, however, Manafort's counsel withdrew the count alleging the latter theory. *See* Tr. 10 (Apr. 4, 2018).

regulations unequivocally state that they "are not intended to, do not, and may not be relied upon to create any [enforceable] rights" in any criminal proceeding. 28 C.F.R. § 600.10. That provision accords with many internal Department of Justice policies that provide a framework for internal departmental governance, but provide no basis for judicial review.

Finally, Manafort's remedial arguments lack merit. The Acting Attorney General had, and exercised, statutory authority to appoint a Special Counsel here, and the Special Counsel accordingly has authority to represent the United States in this prosecution. None of the authorities Manafort cites justifies dismissing an indictment signed by a duly appointed Department of Justice prosecutor based on an asserted regulatory violation.

## A.    The Acting Attorney General's Order Appointing The Special Counsel Is Valid And The Special Counsel Has Operated Within His Authorized Jurisdiction

1. The Special Counsel regulations provide procedures for structuring a Special Counsel's jurisdiction. After appointing a Special Counsel to investigate a person or matter, 28 C.F.R. § 600.1, the Attorney General "establishe[s]" the Special Counsel's "jurisdiction," 28 C.F.R. § 600.4(a). "The Special Counsel will be provided with a specific factual statement of the matter to be investigated." *Id.* The regulations do not provide that the factual statement must be made public. If the Special Counsel concludes that "additional jurisdiction beyond that specified in his or her original jurisdiction is necessary in order to fully investigate and resolve the matters assigned, or to investigate new matters that come to light in the course of his or her investigation, he or she shall consult with the Attorney General, who will determine whether to include the additional matters within the Special Counsel's jurisdiction or assign them elsewhere." 28 C.F.R.

§ 600.4(b). [9]

The Special Counsel has an explicit notification obligation to the Attorney General: he "shall notify the Attorney General of events in the course of his or her investigation in conformity with the Departmental guidelines with respect to Urgent Reports." 28 C.F.R. § 600.8(b). Those reports cover "[m]ajor developments in significant investigations and litigation," which may include commencing an investigation; filing criminal charges; executing a search warrant; interviewing an important witness; and arresting a defendant. United States Attorneys' Manual (USAM) § 1-13.100, *available at* https://www.justice.gov/usam/usam-1-13000-urgent-reports. That ensures a flow of information to the Attorney General, with a "resulting opportunity for consultation"—"a critical part of the mechanism through which the Attorney General can discharge his or her responsibilities with respect to the investigation." 64 Fed. Reg. at 37,040.

The reporting process thus allows the Attorney General to confer with the Special Counsel about whether investigative steps fall within or outside the original jurisdiction, and it provides the Attorney General with the opportunity to evaluate, if the matter is beyond the scope of the Special Counsel's existing jurisdiction, whether to include it as an additional matter. Here, the Acting Attorney General has further required consultation about "additional matters that otherwise may have arisen or may arise directly from the investigation" so that the Acting Attorney General can determine "whether such matters should be within the scope of [the Special Counsel's] authority." *See August 2 Scope Memorandum* at 3. That framework ensures that ongoing criminal investigations are not hampered by treating every pursuit of an investigative step as the occasion

_____

[9] The Special Counsel also has "the authority to investigate and prosecute federal crimes committed in the course of, and with intent to interfere with, the Special Counsel's investigation, such as perjury, obstruction of justice, destruction of evidence, and intimidation of witnesses" and has the authority "to conduct appeals arising out of the matter being investigated and/or prosecuted." 28 C.F.R. § 600.4(a). Those authorities are not at issue here.

for determining whether to grant the Special Counsel additional jurisdiction, while preserving the Special Counsel's accountability to the Acting Attorney General for his actions.

The Special Counsel regulations also provide numerous safeguards to keep the investigation within the Special Counsel's jurisdiction. Initially, the Special Counsel must "be a lawyer with a reputation for integrity and impartial decisionmaking, and with the appropriate experience to ensure both that the investigation will be conducted ably, expeditiously and thoroughly, and that investigative and prosecutorial decisions will be supported by an informed understanding of the criminal law and Department of Justice policies." 28 C.F.R. § 600.3(a). The Special Counsel must then "comply with the rules, regulations, procedures, practices and policies of the Department of Justice." 28 C.F.R. § 600.7(a). A Special Counsel selected under those circumstances and guided by Departmental regulations can be presumed to carry out his responsibilities and confer with the Attorney General if he encounters the need for "additional jurisdiction beyond that specified in his or her original jurisdiction." 28 C.F.R. § 600.4(b); *see United States v. Armstrong*, 517 U.S. 456, 464 (1996) (prosecutorial decisions are supported by a "presumption of regularity" and, "in the absence of clear evidence to the contrary, courts presume that [prosecutors] have properly discharged their official duties").

Furthermore, "the Attorney General may request that the Special Counsel provide an explanation for any investigative or prosecutorial step, and may after review conclude that the action is so inappropriate or unwarranted under established Departmental practices that it should not be pursued." 28 C.F.R. § 600.7(b). And the Attorney General may remove a Special Counsel "for misconduct, dereliction of duty, incapacity, conflict of interest, or for other good cause, including violation of Departmental policies." 28 C.F.R. § 600.7(d). Those provisions afford protections in the unlikely event that a Special Counsel oversteps his authorized jurisdiction.

All of this leads to the conclusion that the political-accountability concerns that Manafort raises have no relevance here. *See* Doc. 30-1 at 1-2, 16-17. The Special Counsel regulations lodge the jurisdiction-defining and supervision roles with the Acting Attorney General as the accountable official. Under this regime, a runaway Special Counsel is an impossibility.

2. The circumstances of this case underscore the flaw in Manafort's claims.

a. In public testimony, the Acting Attorney General explained that, while the Appointment Order describes the general contours of the investigation, "the specific matters are not identified in that order," *Rosenstein Testimony* at 29, consistent with the Department's general practice of maintaining confidentiality about the subjects of an investigation, *see id.* at 30. To provide the Special Counsel with a more detailed understanding of his jurisdiction, the Acting Attorney General "discussed [specific matters] with [the Special Counsel] when he started" and has continued to have "ongoing discussion about exactly what is within the scope of his investigation." *Id.* at 29. If the Special Counsel were to encounter unanticipated criminal activity, the Acting Attorney General has made clear that the decision on how to allocate responsibility for further investigation is "worked out with[in] the [D]epartment." *Id.* at 40.

The Acting Attorney General has affirmed that he is "accountable" and "responsible for" the scope of the Special Counsel's investigation, and "know[s] what [the Special Counsel] is investigating." *Id.* at 30-31. He testified that he is "properly exercising [his] oversight responsibilities" and could confirm that "the [S]pecial [C]ounsel is conducting himself consistently with [the Department's] understanding about the scope of his investigation." *Id.* at 28.

b. The oversight that the Acting Attorney General described necessarily includes non-public dialogue with the Special Counsel on the scope and subjects of the investigation. Manafort has been a subject of that dialogue. In the *August 2 Scope Memorandum* issued to the Special

Counsel, the Acting Attorney General specifically confirmed that certain "allegations were within the scope of the Investigation at the time of [the Special Counsel's] Appointment—including any "crimes arising out of payments [Manafort] received from the Ukrainian government before and during the tenure of President Viktor Yanukovych." *Id.* at 1-2.[10]

Manafort's charged conduct is included within the Special Counsel's jurisdiction, as the Acting Attorney General has defined it. As Manafort acknowledges, the conduct charged in the Indictment relates to "consulting work in Ukraine." Doc. 30-1 at 1, 6. The Indictment alleges that the payments that Manafort received from the Ukrainian government for his consulting work were hidden and exploited by several means. Manafort placed the funds in offshore bank accounts nominally owned by foreign corporations; brought the funds into the United States through sham loans, payments to U.S. vendors, and transfers to purchase and improve U.S. real estate—without reporting the transfers as income; and then extracted money from the real estate through a series of fraudulently obtained loans. Indictment ¶¶ 1-7, 14, 17, 27. His crimes of failing to report foreign accounts, filing false tax returns, bank fraud conspiracy, and bank fraud all arose out of payments Manafort received from the Ukrainian government.

Given the Acting Attorney General's specific direction and supervision, no serious question can arise that the Special Counsel has been "provided with a specific factual statement of the matter to be investigated," 28 C.F.R. § 600.4(a), and that the investigation's scope has been addressed through consultation with the Acting Attorney General, as required by the regulations, *see* 28 C.F.R. §§ 600.4(b), 600.7, 600.8(b).

3. Nor can any serious dispute exist that the charges in the Indictment were within the

---

[10] The *August 2 Scope Memorandum* is precisely the type of material that has been considered in evaluating a Special Counsel's jurisdiction. *See, e.g., United States v. Libby*, 429 F. Supp. 2d 27, 28-29, 31-32, 39 (D.D.C. 2006).

areas of investigation assigned to the Special Counsel. The Appointment Order readily encompasses Manafort's charged conduct. First, his conduct falls within the scope of paragraph (b)(i) of the Appointment Order, which authorizes investigation of "any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump." Manafort joined the Trump campaign as convention manager in March 2016 and served as campaign chairman from May 2016 until his forced resignation in August 2016, after reports surfaced of his financial activities in Ukraine. He thus constituted an "individual associated with the campaign of President Donald Trump." Appointment Order ¶ (b) and (b)(i). He was, in addition, an individual with long ties to Russia-backed Ukrainian politics. *See* Indictment ¶¶ 1-7, 10-11 (noting that between 2006 and 2015, Manafort was paid millions of dollars by Ukraine, its former President, Victor Yanukovych—who fled to Russia after popular protests—and Yanukovych's pro-Russia political party). Open-source reporting also has described business arrangements between Manafort and "a Russian oligarch, Oleg Deripaska, a close ally of President Vladimir V. Putin."[11]

An investigation of possible "links and/or coordination" between the Russian government's efforts to interfere in the presidential election and "individuals associated with the campaign of President Donald Trump" would naturally cover ties that a former Trump campaign manager had to Russian-associated political operatives, Russian-backed politicians, and Russian oligarchs. It would also naturally look into millions of dollars of payments received from these persons to plumb motives and opportunities to coordinate. And it would naturally follow that money trail to see how the funds moved from Russia-backed persons to offshore shell corporations,

---

[11] Andrew Kramer, Mike McIntire, & Barry Meier, *Secret Ledger in Ukraine Lists Cash for Donald Trump's Campaign Chief,* N.Y. Times, Aug. 14, 2016, *available at* https://www.nytimes.com/2016/08/15/us/politics/paul-manafort-ukraine-donald-trump.html.

and then to the United States; how Manafort used the money; and if the money moved anywhere further. Because investigation of those matters was authorized, so was prosecution. The Appointment Order authorized the Special Counsel, if he "believes it is necessary and appropriate, * * * to prosecute federal crimes arising from the investigation of these matters." Appointment Order ¶ (c).

Second, even assuming that paragraph (b)(i) does not cover all of the conduct charged in the Indictment—and, in the government's view, it does—the conduct would fall within the scope of a matter that "arose or may arise directly from the investigation." Appointment Order ¶ (b)(ii). When a Special Counsel is investigating particular criminal activity by an individual, assigning to the same prosecutor the investigation of related crimes that grow out of and are factually linked to the initial investigation ensures that the investigation is thorough, complete, and effective. Dividing responsibilities among different prosecutors for factually related investigations of a single individual can impede a full and thorough investigation. For example, it can lead different prosecutors to miss the significance of interrelated evidence because of each prosecutor's partial understanding of the facts. Crimes can therefore "arise directly" from an investigation when the original investigation leads naturally to the discovery of factually related conduct that should be explored to develop a full picture of the individual's activities.

Manafort's reliance on cases decided in far-removed settings to construe the phrase "arises directly from" in the Appointment Order is misplaced. *See* Doc. 30-1 at 25 (citing Federal Tort Claims Act authority). The Appointment Order is not a statute, but an instrument for providing public notice of the general nature of a Special Counsel's investigation and a framework for consultation between the Acting Attorney General and the Special Counsel. Given that Manafort's receipt of payments from the Ukrainian government has factual links to Russian persons and

Russian-associated political actors, and that exploration of those activities furthers a complete and thorough investigation of the Russian government's efforts to interfere in the 2016 election and any links and/or coordination with the President's campaign, the conduct charged in the Indictment comes within the Special Counsel's authority to investigate "any matter that arose or may arise directly from the investigation." Appointment Order ¶ (b)(ii).

**B.      Manafort's Interpretation Of The Special Counsel Regulations And The Appointment Order Is Mistaken**

Manafort relies on two provisions of the Special Counsel regulations to assert that Appointment Order ¶ (b)(ii) is impermissible. First, he focuses on the provision stating that "[t]he Special Counsel will be provided with a specific factual statement of the matter to be investigated." 28 C.F.R. § 600.4(a). Second, he points to the provision for granting "additional jurisdiction" to the Special Counsel for matters that go beyond the original jurisdiction only after consultation with and approval by the Attorney General. 28 C.F.R. § 600.4(b). From these provisions, he infers that any authority beyond that enumerated in the factual statement (which he assumes is contained in the Appointment Order)—requires the "additional jurisdiction" procedures, and that paragraph (b)(ii) has the effect of so extending his authority. Manafort's interpretation of the regulations and the language and effect of the Appointment Order is unsound. The regulations place no express limitation on the Attorney General's grant of authority to the Special Counsel. And the procedural requirements on which Manafort relies, especially in conjunction with the additional requirements of ongoing consultation, are fully consistent with the limited grant of authority at issue here.

1. In arguing that his charged conduct falls outside of the Appointment Order, Manafort assumes that the Order contains the full and complete "factual statement" provided to the Special Counsel upon his appointment. *See* Doc. 30-1 at 13. But nothing in the regulations requires that the "specific factual statement" be provided publicly, or in the order appointing the Special

Counsel.  *Cf. Cyan, Inc. v. Beaver County Emps. Retirement Fund*, 138 S. Ct. 1061, 1069 (2018) ("The [regulation] says what it says—or perhaps better put here, does not say what it does not say.").  And the Acting Attorney General has explained that he transmitted the facts to the Special Counsel non-publicly here.  *Rosenstein Testimony* at 29-30; *August 2 Scope Memorandum* at 1.  Sound reasons support that approach:  investigations can be compromised by disclosure of the persons and crimes under investigation.  Fairness to people under investigation (who may never be charged) counsels against naming them or their suspected crimes publically.  And the classified matters at issue here made full public disclosure impossible.

Nor can Manafort base any challenge to the Special Counsel's authority on the theory that his Ukraine-based crimes could not have "aris[en]" from the investigation because his Ukraine activities preceded the 2016 election, do not relate to the Trump campaign, and do not involve coordination between that campaign and the Russian government in its effort to interfere in the election.  As discussed above, a matter can "arise directly" from an investigation when the original investigation leads naturally to the discovery of factually related conduct that should be explored to develop a full picture of the individual's activities.  The Acting Attorney General's assignment of such matters to the Special Counsel in order for the Special Counsel to achieve the core investigatory mission is logical and confined in scope.

2.  Manafort's effort to draw inferences from the "additional jurisdiction" provision is also unsound.  That provision regulates the situation in which a Special Counsel concludes that he needs additional jurisdiction, beyond that originally conferred, "to fully investigate and resolve the matters assigned," or to address "new matters that come to light in the course of his or her investigation."  28 C.F.R. § 600.4(b).  But nothing in the regulations compels drawing a boundary line between original jurisdiction and additional jurisdiction as if it were a plat line on a map.  An

effective investigation must have some latitude to extend beyond the known facts at the time of a Special Counsel's appointment or the Special Counsel would not be free of "day-to-day"—or indeed minute-to-minute—"supervision [by] any official of the Department." 28 C.F.R. § 600.7(b). Although a criminal investigation may start with a specific set of facts, the point of investigation is to explore those facts, develop new ones, and continually reassess the direction of the inquiry. *See United States v. Dionisio*, 410 U.S. 1, 13 n.12 (1973) (in grand jury proceedings, "the identity of the offender, and the precise nature of the offense, if there be one, normally are developed at the conclusion of the grand jury's labors, not at the beginning"). While a Special Counsel's jurisdiction is defined at the outset, not every incremental action constitutes an expansion. And rigid constraints on the zone of inquiry would defeat the objective of leaving the Special Counsel "free to structure the investigation as he or she wishes." 64 Fed. Reg. at 37,038.

Paragraph (b)(ii) of the Appointment Order provides a permissible way of implementing those considerations. It does not confer unlimited and unreviewable discretion on the Special Counsel to investigate and prosecute any matters. Coverage of matters that "arose" from the investigation is necessarily retrospective: it refers to matters already identified as sufficiently connected to the pre-existing investigation as to come within the Order's scope. The paragraph's coverage of matters that "may directly arise from the investigation" addresses matters that are determined, as the investigation proceeds, to be so logically or practically connected to it as to follow naturally from the original grant. Looking to the structure of the regulations, the forward-looking aspect of (b)(ii) occupies space between the generalized understanding of the scope of an investigation that exists at the outset—and whose specific contours will inevitably become clearer over time—and the "additional jurisdiction" that must form the basis for consultation with the Attorney General, and his determination about assignment, provided for in 28 C.F.R. § 600.4(b).

-17-

And here, the Acting Attorney General has required that the Special Counsel consult about matters that "may arise directly from the investigation for a determination of whether such matters should be within the scope of [the Special Counsel's] authority." *August 2 Scope Memorandum* at 3.

Contrary to Manafort's contention, "[a]rising directly from" jurisdiction does not amount to a "blank check" or "*carte blanche*" for the Special Counsel to investigate whatever he may uncover in the course of the investigation. Doc. 30-1 at 14, 16. Initially, Manafort ignores the requirement that the matter must arise "directly" from the investigation—a clear signal that the Special Counsel's discovery of criminal conduct that is incidental to or disconnected from the core mandate will not be automatically covered. *Black's Law Dictionary* 557 (10th ed. 2014) (directly means "[i]n a straightforward manner," "[i]n a straight line or course," "[i]mmediately"). But more fundamentally, Manafort overlooks the procedural framework that governs the actions of the Special Counsel and his relationship to the Attorney General. As described above, the reporting requirements and supervisory powers guarantee that the Attorney General will know the course of the Special Counsel's investigation and be in a position to limit it—or expressly add to it, if appropriate. In light of that framework, any ambiguity over a Special Counsel's jurisdiction over matters that "may arise directly from the investigation" will be addressed and resolved through ongoing reporting and consultation. And experience has borne out that the Special Counsel and Acting Attorney General have had no difficulty operating in that environment. *See Rosenstein Testimony* at 31 ("I'm responsible for and I know what [the Special Counsel] is investigating.").

3. The rigid approach that Manafort would take to the Appointment Order and Special Counsel regulations stems from his fundamental misunderstanding of the way in which this regime differs from the former Independent Counsel Act. Under that statute, on application of the Attorney General, a Special Division of the D.C. Circuit would appoint an independent counsel

and "define that independent counsel's prosecutorial jurisdiction." *Morrison v. Olson*, 487 U.S. 654, 661 (1988). The Supreme Court held that allowing a court to appoint an Independent Counsel was consistent with the Constitution's Appointments Clause, *id*. at 670-677, but that the power to define the Independent Counsel's jurisdiction was valid only insofar as it was "incidental" to the appointment authority, *id*. at 679. To ensure that the court's jurisdiction-defining power remained "truly 'incidental,'" the assigned jurisdiction had to be "*demonstrably related* to the factual circumstances that gave rise to the Attorney General's investigation and request." *Id*. (emphasis added); *see id.* at 679 n.17 (same "to expand the jurisdiction"). Consistent with that analysis, the Special Division held that "[i]n referring a related matter," it "is interpreting, but not expanding," the original jurisdiction. *In re Espy*, 80 F.3d 501, 507 (1996). The court contrasted that limitation with the Attorney General's "broader" authority to make referrals to the independent counsel, which was "not similarly subject to the 'demonstrably related' limitation" because it was "not constrained by separation of powers concerns." *Id.*

The Special Counsel regulations were adopted to replace, not replicate, the lapsed Independent Counsel scheme. 64 Fed Reg. at 37,038. By providing a process that remains wholly within DOJ, the Special Counsel could have "free[dom] to structure the investigation" while remaining accountable to the Attorney General. *Id*. In stark contrast to the absence of active supervision of an independent counsel, *see Morrison*, 487 U.S. at 695, 696, the Special Counsel regulations provide an array of DOJ supervisory mechanisms. *See, e.g.*, 28 C.F.R. §§ 600.7, 600.8. These "[r]eview and approval procedures" ensure that a Special Counsel operates under "relevant controls" and "Departmental guidance in the most sensitive situations." 64 Fed. Reg. at 37,039.

**C.      The Special Counsel Regulations Do Not Give Rise To Judicially Enforceable Rights**

In any event, no basis exists for the Court to adjudicate Manafort's regulation-based objection. The Special Counsel regulations were not intended to be, and are not, enforceable by

individual defendants in criminal cases.  The Special Counsel regulations are explicit on that point:

> The regulations in this part are not intended to, do not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law or equity, by any person or entity, in any matter, civil, criminal, or administrative.

28 C.F.R. § 600.10.  Manafort therefore cannot challenge the Indictment based on a claimed regulatory violation.

1.  Section 600.10 accords with the precept that internal agency rules, when not required by the Constitution or a statute, are generally not enforceable in a criminal case.  *Cf. United States v. Caceres*, 440 U.S. 741, 749-754 (1979) (declining to apply the exclusionary rule to suppress evidence for violations of agency procedures on consensual monitoring).  Here, DOJ was not required by any constitutional or statutory provision to adopt rules or procedures before the Attorney General appointed a Special Counsel and defined his jurisdiction.  On prior occasions, including after the promulgation of the Special Counsel regulations, the Attorney General or Acting Attorney General has appointed Special Counsels or other specially appointed attorneys to conduct investigations, without invoking a regulation like 28 C.F.R. Part 600.[12]  The statutory authority to authorize the investigation here rests on the same footing as those investigations.  *See* Appointment Order (citing 28 U.S.C. §§ 509, 510, 515).  And the Acting Attorney General's decision to apply 28 C.F.R. §§ 600.4 through 600.10 to the Special Counsel (Appointment Order ¶ (d)) had no effect on Manafort—except to confirm that the regulations are not "enforceable" by him in any civil or criminal case.  28 C.F.R. § 600.10.

The regulations do have an internal effect on the Department of Justice.  *See* 64 Fed. Reg. at 37,041 (characterizing the regulations as "matters of agency management or personnel" and "a

---

[12]  *See* note 3 *supra*; *In re Sealed Case*, 829 F.2d 50, 52-53, 55 (D.C. Cir. 1987) (Iran-Contra); *Libby*, 429 F. Supp. 2d at 28-29 (leak of Valerie Plame's affiliation with the CIA); *see also United States v. Nixon*, 418 U.S. 683, 694 & n.8 (1974) (Watergate Special Prosecutor).

rule of agency organization, procedure, or practice"). "So long as [the Special Counsel regulation] is extant, it has the force of law" in governing the Attorney General's actions in cases where he has seen fit to invoke it. *United States v. Nixon*, 418 U.S. 683, 695 (1974). But the regulation does not create individual rights or exist for the benefit of individuals. Instead, it allocates prosecutorial authority within the Department of Justice to promote public confidence in an investigation concerning a foreign power's efforts to influence the 2016 presidential election "and related matters."[13]

2. The Special Counsel regulations are on par with many other internal guidance documents that regulate DOJ procedures. The Fourth Circuit has held that that such internal DOJ guidelines do not confer any rights on criminal defendants and are therefore not enforceable. *See In re Grand Jury Proceedings*, 42 F.3d 876, 880 (4th Cir. 1994) (policy governing attorney subpoenas); *In re Shain*, 978 F.2d 850, 853 (4th Cir. 1992) (regulations governing journalist subpoenas); *United States v. Howard*, 590 F.2d 564, 567-568 (4th Cir. 1979) (*Petite* policy limiting dual prosecution). Other courts of appeals have consistently reached the same conclusion with respect to a variety of DOJ policies. *See, e.g., In re Grand Jury Subpoena (Miller)*, 438 F.3d 1141, 1152-1153 (D.C. Cir.) (press subpoena regulations and related USAM provision), *cert. denied*, 545 U.S. 1150 (2005); *United States v. Wilson*, 413 F.3d 382, 389 (3d Cir. 2005) (*Petite* policy limiting dual prosecution); *United States v. Lee*, 274 F.3d 485, 492-493 (8th Cir.) (death penalty protocol), *cert. denied*, 537 U.S. 1000 (2002).[14] Like those policies, the Special Counsel regulations disclaim

---

[13] Press Release, U.S. Dep't of Justice, *Press Release on Appointment of Special Counsel* (May 17, 2017) (Acting Attorney General noting his determination that "a Special Counsel is necessary in order for the American people to have full confidence in the outcome" of the investigation), *available at* https://www.justice.gov/opa/pr/appointment-special-counsel.

[14] *See also, e.g., United States v. Fernandez*, 231 F.3d 1240, 1246 (9th Cir. 2000) (USAM);

the creation of individual rights in language that "[f]ederal courts have held * * * to be effective." *Lee*, 274 F.3d at 493; *Shain*, 978 F.2d at 854 (same). Such disclaimers should have particular force in barring judicial review of prosecutorial policies, given that enforcement of criminal laws is "a special province of the Executive," and the government's exercise of prosecutorial discretion is generally not subject to judicial review. *Armstrong*, 517 U.S. at 464 (internal quotation marks omitted).

Several of the reasons supporting the general rule against judicial review of the exercise of prosecutorial discretion have salience here. *See Wayte v. United States*, 470 U.S. 598, 607 (1985) (noting concerns about exposing prosecutorial decisionmaking and undermining effectiveness by revealing enforcement policy). Judicial review could expose DOJ's decisionmaking on the scope and direction of the Special Counsel's investigation and, in some cases, undermine the investigation's effectiveness by revealing the specific policy or practical considerations that underlie allocation decisions—including sensitive intelligence leads and classified information. Even under the former Independent Counsel Act, the Attorney General's decision to refer a matter as "related" to an independent counsel's existing jurisdiction was unreviewable. *United States v. Tucker*, 78 F.3d 1313, 1318 (8th Cir.) (referral was "an exercise of a discretion that only the prosecutor and the Attorney General command, because of their intimate knowledge of the course of the investigation"), *cert. denied*, 519 U.S. 820 (1996). An Attorney General's referral of matters to a Special Counsel he appointed is an even less likely candidate for judicial review.

3. Manafort resists this conclusion by declaring that he is not asserting his "rights" but

---

*United States v. Blackley*, 167 F.3d 543, 548-549 (D.C. Cir.) (USAM), *cert. denied*, 528 U.S. 868 (1999); *United States v. Piervinanzi*, 23 F.3d 670, 682 (2d Cir.) (policy memorandum requiring consultation before bringing certain charges), *cert. denied*, 513 U.S. 904 (1994); *United States v. Craveiro*, 907 F.2d 260, 263-264 (1st Cir.) (required pre-trial notice of intent to seek sentence enhancement), *cert. denied*, 498 U.S. 1015 (1990).

claiming only that "the Acting Attorney General lacked authority to issue paragraph (b)(ii) of the Appointment Order." Doc. 30-1 at 19 n.3. Manafort's purported distinction is misguided. If Manafort's view prevailed, the line of cases precluding review of asserted violations of internal DOJ policies could be easily circumvented by changing the label on the claim. Manafort provides no reason to think that courts should permit such gamesmanship. And the sound reasons for declining to impose sanctions on the government for failing to adhere to regulations that it adopted as a matter of discretion cut strongly against allowing it. *See Caceres*, 440 U.S. at 755-756 (noting that enforcing violations of internal policies through the exclusionary rule could discourage the use of internal standards to govern prosecutorial procedures).[15]

**D.     Manafort's Arguments Cannot Support The Remedy He Seeks**

Finally, Manafort's arguments would not justify dismissal of the Indictment even if they had merit (which they do not). The Special Counsel is a properly appointed officer under 28 U.S.C. § 515, and Manafort's regulatory claims do not implicate this Court's jurisdiction or establish a violation of the rules of procedure, let alone a prejudicial one.

1. Federal criminal proceedings are conducted by "officers of the Department of Justice, under the direction of the Attorney General." 28 U.S.C. § 516; *see* 28 U.S.C. § 519. The Special Counsel is such an officer. He was appointed under 28 U.S.C. § 515, which allows the Acting Attorney General to "specially retain[]" attorneys, "commissioned as special assistant to the

---

[15] Manafort's reliance (Doc. 30-1 at 19 n.3) on *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949), is equally flawed. *Larson* involved a civil action to enjoin officials from completing a contract to sell coal. *Id.* at 684. In applying sovereign immunity, the Court distinguished cases in which "the officer's powers are limited by statute, [and] his actions beyond those limitations are considered individual and not sovereign." *Id.* at 689. Such actions, the Court indicated, are "*ultra vires*" and thus may support a claim for "specific relief." *Id.* That statement cannot assist Manafort, who has alleged a violation of implicit limitations imposed by internal *regulations*—not a clear lack of *statutory* authority—and who is seeking dismissal of an indictment, not specific relief in a civil action.

Attorney General or special attorney," and expressly authorizes those attorneys to "conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings." 28 U.S.C. § 515; *see* Appointment Order (invoking, *inter alia*, 28 U.S.C. § 515).

Manafort has not disputed that the Special Counsel has statutory authority under 28 U.S.C. § 515 as a Department of Justice attorney. To confer statutory authority, officers need not be given specific authorization to appear in particular criminal cases; "the failure to specify the names of the persons to be investigated or prosecuted [in the appointment is] of no consequence." *United States v. Balistrieri*, 779 F.2d 1191, 1208-1210 (7th Cir.), *cert. denied*, 475 U.S. 1095 (1986), overruled on other grounds, *Fowler v. Butts*, 829 F.3d 788 (7th Cir. 2016); *see also United States v. Morris*, 532 F.2d 436, 439-441 (5th Cir. 1976); *Infelice v. United States*, 528 F.2d 204, 205-208 (7th Cir. 1975); *In re Persico*, 522 F.2d 41, 45-46, 56-66 (2d Cir. 1975). No written authorization is even required. Direction "may be implied" from "writings, guidelines, practices, and oral directions," including those "transmitted through a chain of command." *Persico*, 522 F.2d at 66. Accordingly, even if some error under the regulation occurred in assigning this area of investigation to the Special Counsel, the Special Counsel is still a Department of Justice attorney with statutory authority to represent the government.

2. Manafort asserts (Doc. 30-1 at 17-20, 29) that any error in assigning these matters to the Special Counsel deprives this Court of jurisdiction. But the errors that Manafort alleges do not call into question the "jurisdiction" of this Court, which, as the Supreme Court has clarified, refers to the limits of "a court's adjudicatory authority." *Eberhart v. United States*, 546 U.S. 12, 16 (2005) (per curiam). District courts are vested with "original jurisdiction * * * of all offenses against the laws of the United States," 18 U.S.C. § 3231; the Indictment unquestionably meets that test. *See United States v. Hartwell*, 448 F.3d 707, 717 (4th Cir. 1996) ("The district court's

jurisdiction is conferred by 18 U.S.C. § 3231 and may not be affected by the litigation conduct of the parties."); *see, e.g.*, *United States v. Fahnbulleh*, 752 F.3d 470, 476 (D.C. Cir. 2014) ("[I]f an indictment or information alleges the violation of a crime set out in Title 18 or in one of the other statutes defining federal crimes, that is the end of the jurisdictional inquiry."). And the requirements of the Federal Rules of Criminal Procedure invoked by Manafort do not concern "jurisdiction." *See Hartwell*, 448 F.3d at 717 (Rule 7); *United States v. Easton*, 937 F.2d 160, 162 (5th Cir. 1991) (same); *see also In re Lane*, 135 U.S. 443, 449 (1890) (required indictment signature not jurisdictional).

Manafort primarily relies on *United States v. Providence Journal Co.*, 485 U.S. 693 (1988), and a series of cases citing that decision. In *Providence Journal*, the question was whether, as a statutory matter, a court-appointed contempt prosecutor could invoke the jurisdiction of the Supreme Court. The Supreme Court initially took jurisdiction over the case "[b]y writ of certiorari granted upon the petition of any party." 28 U.S.C. § 1254; *see* 485 U.S. at 699. But the Court concluded that by statute, only "the Attorney General and the Solicitor General," and persons delegated authority by the Attorney General, may conduct Supreme Court litigation in cases where the government is a party. *Id.* at 699-707 (quoting 28 U.S.C. § 518(a)). Because "a federal statute deprive[d] the special prosecutor of the authority to pursue the litigation in th[e] [Supreme] Court," that prosecutor was "not a party entitled to petition for certiorari under 28 U.S.C. § 1254(1)," and the Supreme Court therefore lacked jurisdiction. *Id.* at 699 & n.5; *see also FEC v. NRA Political Victory Fund*, 513 U.S. 88, 90-91, 98 (1994) (because agency lacked "statutory authority," it could not "petition for certiorari," and authorization by Solicitor General after jurisdictional deadline did not cure the lack of jurisdiction); *United States v. Fernandez*, 887 F.2d 465, 467-471 (4th Cir. 1989) (Independent Counsel rather than Attorney General had statutory authority to bring interlocutory

appeal).  This Court's jurisdiction does not depend on a formal step, such as invoking jurisdiction through a writ of certiorari.  But, regardless, the Special Counsel has statutory authority to represent the United States under 28 U.S.C. § 515.  And alleged technical deficiencies in how a case was assigned to DOJ officials do not deprive courts of jurisdiction.

The other cases cited by Manafort almost uniformly use the term "jurisdiction" to address an attorney's lack of statutory authority to represent the government.[16]  *E.g.*, *United States v. Rosenthal*, 121 F. 862, 873 (C.C.S.D.N.Y. 1903) (addressing departure from the *statutory* allotment of prosecutorial power").  In response to *Rosenthal*, Congress passed what is now codified at 28 U.S.C. § 515, to ensure that the Attorney General and appointed assistants had "the same rights, powers and authority" to conduct grand jury proceedings and represent the United States "which the United States Attorneys possessed."  *Infelice*, 528 F.2d at 206; *accord*, *e.g.*, *Balistrieri*, 779 F.2d at 1208.  That statute makes Manafort's regulatory arguments irrelevant here.

3.  Manafort argues (Doc. 30-1 at 21-23, 28-29) that if his merits arguments are justiciable and correct, the Special Counsel would not be authorized to act as an "attorney for the government" under the Federal Criminal Rules of Procedure and therefore violated Rule 6 and Rule 7.  That argument fails in light of the Special Counsel's statutory authority under Section 515.

As relevant here, an "attorney for the government" may be present while the grand jury is

---

[16] The cases are not consistent in their characterization of errors as going to "jurisdiction." *Cf. Eberhart*, 546 U.S. at 18 (courts have been "less than meticulous" in use of the word "jurisdictional").  Some of the cited cases appear to have concerned the court's authority to adjudicate the case.  *See, e.g., Mehle v. Am. Mgmt. Sys., Inc.*, 172 F. Supp. 2d 203, 205 (D.D.C. 2001); *United States v. Male Juvenile*, 148 F.3d 468, 469-470, 472 (5th Cir. 1998).  Others appear merely to have concerned whether the attorney representing the government had statutory authority to act, using the term "jurisdictional" without analyzing why that concept applied.  *See, e.g., United States v. Garcia-Andrade*, No. 13-cr-993, 2013 WL 4027859, at *2, *5-6 & n.2 (S.D. Cal. Aug. 6, 2013).  One case concerned an AUSA who signed an indictment when his bar license was suspended, but the court found the error harmless because the U.S. Attorney also signed the indictment.  *United States v. Bennett*, 464 F. App'x 183, 184-185 (4th Cir. 2012) (unpub.).

in session, Fed. R. Crim. P. 6(d)(1); may not disclose a matter occurring before the grand jury, Fed. R. Crim. P. 6(e)(2)(B)(vi); may receive grand jury information for performing the attorney's duty, Fed. R. Crim. P. 6(e)(3)(A)(i), (B); may disclose grand jury matter to another grand jury and intelligence-related matter to appropriate officials, Fed. R. Crim. P. 6(e)(3)(C), (D); and may sign an indictment, Fed. R. Crim. P. 7(c)(1).

The term "[a]ttorney for the government" is defined in the Federal Rules "in such broad terms as potentially to include virtually every attorney in the Department of Justice." *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 426 (1983) (discussing predecessor definitions). This includes "the Attorney General or an authorized assistant," Fed. R. Crim. P. 1(b)(1)(A), and "any other attorney authorized by law to conduct proceedings under these rules as a prosecutor," Fed. R. Crim. P. 1(b)(1)(D). Because the Special Counsel was appointed under Section 515 "as special assistant to the Attorney General" and is authorized by that statute to "conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings," 28 U.S.C. § 515, the Special Counsel satisfies both definitions. *See Balistrieri*, 779 F.2d at 1207-1210; *Infelice*, 528 F.2d at 205-208; *Little v. United States*, 524 F.2d 335, 335 (8th Cir.), *cert. denied*, 424 U.S. 920 (1976); *United States v. Wrigley*, 520 F.2d 362, 363-370 (8th Cir. 1975). Manafort's contrary arguments disregard the significance of the Special Counsel's statutory authority under Section 515 and the Acting Attorney General's specific authorization to conduct these proceedings.

The cases that Manafort cites only underscore the significance of statutory authority to represent the Department of Justice. *See United States v. Fowlie*, 24 F.3d 1059, 1065 (9th Cir. 1994) (state official who lacked a proper statutory appointment conducted a federal prosecution); *United States v. Plesinski*, 912 F.2d 1033, 1034-1035, 1037-1038 (9th Cir. 1990) (history of the

same prosecutor).[17]  Here, by contrast, no dispute exists that the Acting Attorney General was fully authorized to appoint the Special Counsel under Section 515 and did so.

4.  Finally, even if there were any error here, it would be harmless:  Manafort suffered no prejudice.  *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988); Fed. R. Crim. P. 52(a).  When an attorney who lacks authority under statute or rule conducts grand jury proceedings or signs an indictment, the supervision and involvement of other DOJ career attorneys renders the mistake harmless.  *See, e.g.*, *Plesinski*, 912 F.2d at 1038 (state official made a SAUSA by person without legal authority to so, but error harmless where an AUSA supervised his conduct); *United States v. Durham*, 941 F.2d 886, 891-892 (9th Cir. 1991) ("direction and supervision of the United States Attorney"); *cf. Caha v. United States*, 152 U.S. 211, 221 (1894) (indictment signed by wrong official).  Many of the cases that Manafort relies on and that assertedly concern "jurisdiction" support that principle.  *See, e.g., Fowlie*, 24 F.3d at 1066 (supervision by Assistant U.S. Attorneys rendered SAUSA's error harmless); *United States v. Boruff*, 909 F.2d 111, 117-118 (5th Cir. 1990).

As explained above, every key step in this case has been authorized by the Acting Attorney General through ongoing consultation.  Additionally, under the applicable rules, the Tax Division approved the tax-related charges.  *See* 28 C.F.R. § 600.7(a) (Special Counsel must comply with DOJ rules, regulations, procedures, and policies); USAM § 6-4.200 (Tax Division must approve all criminal tax charges).  And the Senior Assistant Special Counsel in charge of this prosecution is a long-time, career prosecutor with the internal authority to conduct this prosecution, separate and aside from his role in the Special Counsel's Office.  In light of the ongoing supervision by the

---

[17] *See also, e.g., United States v. Wooten*, 377 F.3d 1134, 1139-1141 (10th Cir. 2004) (declining to address whether the Posse Comitatus Act barred an Army lawyer from being appointed and acting as a SAUSA, because even if his "appointment and participation in th[e] case violated the [Act]" the court still had jurisdiction and any error was harmless).

Acting Attorney General and involvement by other career DOJ attorneys, any error claimed by Manafort would be harmless.

Manafort suggests (Doc. 30-1 at 23-24) that, if the Special Counsel had never been appointed, he would not have been prosecuted, and therefore the alleged errors prejudiced him. That speculation is unsupported as a factual matter. And in any event, the question is not what would have happened if no Special Counsel had been appointed. The legal test is whether the "errors in grand jury proceedings" were harmful. *Bank of Nova Scotia*, 487 U.S. at 254. The very existence of the Special Counsel is not the asserted "error." Rather, Manafort has argued that the Acting Attorney General did not take the correct steps in authorizing the Special Counsel to investigate the conduct charged here, and the Special Counsel therefore was not technically authorized to act. The claimed "error," therefore, is the assertedly unauthorized participation of the Special Counsel in these matters. Any such error is harmless because, among other things, the Special Counsel's decision to seek an indictment was supervised and approved by the Acting Attorney General, who is plainly authorized to authorize that action, even if a technical error occurred in executing that authorization.

Manafort's invitation to speculate about what may have transpired if the Special Counsel never pursued these matters is untenable. This form of review threatens an invasive inquiry, as Manafort apparently recognizes, into grand jury operations normally shielded from judicial scrutiny. *See* Doc. 30-1 at 24 n.8 (suggesting that, to dispel "any doubt about the Special Counsel's involvement in the grand jury process, the Court should order production of the grand jury transcripts, including transcripts of the Special Counsel's or his staff's colloquies with the grand jury, and permit further briefing and argument"). It would also require a court not only to review the record of this case and the factual approval of the DOJ chain of command, but also to look

backwards at what facts were already known to agents and attorneys and what steps were already underway, and then to imagine how quickly other attorneys and other offices would have pursued the investigations, how they would have prioritized cases competing for their attention, and what evidence they would have uncovered. And Manafort would apparently have courts ignore that the Acting Attorney General and other components within the Department of Justice have manifested their actual interest in pursuing those matters. A showing of prejudice cannot be founded on such intrusive speculation.

## CONCLUSION

For the foregoing reasons, Manafort's motion to dismiss should be denied.


Dated: April 10, 2018                                      Respectfully submitted,

                                                          ROBERT S. MUELLER, III
                                                          Special Counsel

                                                          */s/ Andrew Weissmann*
                                                          Michael R. Dreeben
                                                          Andrew Weissmann
                                                          Greg D. Andres
                                                          Adam C. Jed
                                                          United States Department of Justice
                                                          Special Counsel's Office
                                                          950 Pennsylvania Avenue NW
                                                          Washington, DC 20530
                                                          Telephone: (202) 616-0800

                                                          *Attorneys for the United States of America*