**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. 1:18-cr-00083-TSE |
| v. ) | |
| ) | Judge T.S. Ellis, III |
| PAUL J. MANAFORT, JR., ) | **ORAL ARGUMENT REQUESTED** |
| ) | |
| *Defendant.* ) | |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF HIS
MOTION TO DISMISS THE SUPERSEDING INDICTMENT**

Kevin M. Downing (*pro hac vice*)
Law Office of Kevin M. Downing
601 New Jersey Avenue, N.W.
Suite 620
Washington, D.C.  20001
Telephone: (202) 754-1992
Email: kevindowning@kdowninglaw.com

Thomas E. Zehnle (VSB # 27755)
Law Office of Thomas E. Zehnle
601 New Jersey Avenue, N.W.
Suite 620
Washington, D.C.  20001
Telephone: (202) 368-4668
Email: tezehnle@gmail.com

*Counsel for Defendant Paul J. Manafort, Jr.*

April 16, 2018

## <u>TABLE OF CONTENTS</u>

Page

INTRODUCTION .................................................................................................... 1

I.  The Appointment Order Exceeds the Acting Attorney General's Authority Under
the Special Counsel Regulations............................................................................ 1

    A.  The After-the-Fact Memorandum Confirms That Paragraph (b)(ii) of the
Appointment Order Exceeds the Acting Attorney General's Authority.................. 2

    B.  Assurances of "Oversight" Are Insufficient ......................................................... 4

    C.  The Special Counsel's Textual Arguments Fail ..................................................... 6

II. The Special Counsel Regulations Impose Binding Limits on the Acting Attorney
General's Authority ................................................................................................ 8

    A.  The Acting Attorney General's Appointment Authority Is Limited by
28 U.S.C. § 515 and the Special Counsel Regulations Implementing That
Statute ...................................................................................................................... 8

    B.  The "Individual Rights" Disclaimer Does Not Preclude This Court from
Assessing Prosecutorial Authority and Its Own Jurisdiction............................... 11

III. The Special Counsel's Investigation Exceeds the Appointment Order's Purported
Grants of Jurisdiction ........................................................................................... 13

    A.  The Charges Exceed the Authority Paragraph (b)(ii) Purports To Grant
Because They Cannot Have "Directly Arisen" from Investigations of Al-
leged Coordination Between the Trump Campaign and Russian Officials .......... 13

    B.  The Prosecution Is Unrelated to Any Alleged Coordination Between the
Trump Campaign and the Russian Government Covered by Paragraph
(b)(i) ....................................................................................................................... 15

IV. Dismissal Is Required .......................................................................................... 16

    A.  This Court Lacks Jurisdiction Because the Special Counsel Was
Appointed in Excess of Authority......................................................................... 16

    B.  The Special Counsel's Participation in the Grand Jury Proceedings Was
Impermissible as Well............................................................................................ 18

    C.  The Special Counsel's Participation in the Grand Jury Proceedings
Prejudiced Mr. Manafort....................................................................................... 18

CONCLUSION....................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

Page(s)

### CASES

*Allentown Mack Sales & Serv., Inc. v. NLRB*,
　　522 U.S. 359 (1998)...................................................................................9

*Angelex Ltd. v. United States*,
　　723 F.3d 500 (4th Cir. 2013) ....................................................................9

*Bank of Nova Scotia v. United States*,
　　487 U.S. 250 (1988)......................................................................18, 19, 20

*Barrick Goldstrike Mines Inc. v. Browner*,
　　215 F.3d 45 (D.C. Cir. 2000) ...................................................................10

*Brock v. Cathedral Bluffs Shale Oil Co.*,
　　796 F.2d 533 (D.C. Cir. 1986) .................................................................10

*Caha v. United States*, 152 U.S. 211 (1894) ...............................................20

*Dolan v. U.S. Postal Serv.*, 546 U.S. 481 (2006) .......................................13

*In re Espy*, 80 F.3d 501 (D.C. Cir. 1996).....................................................14

*In re Espy*, 145 F.3d 1365 (D.C. Cir. 1998)................................................11

*Guillot v. Garrett*, 970 F.2d 1320 (4th Cir. 1992) .......................................9

*Gustafson v. Alloyd Co.*, 513 U.S. 561 (1995)..............................................5

*Larson v. Domestic & Foreign Commerce Corp.*,
　　337 U.S. 682 (1949)...........................................................................8, 11, 12

*Mehle v. Am. Mgmt. Sys., Inc.*,
　　172 F. Supp. 2d 203 (D.D.C. 2001) ........................................................17

*Morrison v. Olson*, 487 U.S. 654 (1988) ..................................................4, 14

*Orquera v. Ashcroft*, 357 F.3d 413 (4th Cir. 2003) ...................................13

*People v. Munson*, 150 N.E. 280 (Ill. 1925) ...............................................20

*In re Sealed Case*, 829 F.2d 50 (D.C. Cir. 1987).........................................9

*State v. Hardy*, 406 N.E.2d 313 (Ind. Ct. App. 1980)................................20

*United States v. Armstrong*, 517 U.S. 456 (1996) ...................................6, 13

*United States v. Bennett*, 464 F. App'x 183
    (4th Cir. 2012) ...................................................................................17

*United States v. Boruff*, 909 F.2d 111 (5th Cir. 1990) ...................................20

*United States v. Briggs*, 514 F.2d 794 (5th Cir. 1975) ...................................12

*United States v. Fowlie*, 24 F.3d 1059 (9th Cir. 1994) ...................................20

*United States v. Groos*, 616 F. Supp. 2d 777
    (N.D. Ill. 2008) ...................................................................................12

*United States v. Libby*, 429 F. Supp. 2d 27
    (D.D.C. 2006) ......................................................................................9

*United States v. Male Juvenile*, 148 F.3d 468
    (5th Cir. 1998) ...................................................................................17

*United States v. Nixon*, 418 U.S. 683 (1974) ...................................9, 10, 17

*United States v. Plesinski*, 912 F.2d 1033
    (9th Cir. 1990) ...................................................................................20

*United States v. Providence Journal Co.*,
    485 U.S. 693 (1988) ................................................................... *passim*

*United States v. Romans*, 823 F.3d 299 (5th Cir. 2016) ...............................17

*United States v. Rosenthal*, 121 F. 862
    (C.C.S.D.N.Y. 1903) ......................................................................12, 18

*United States v. Sells Eng'g, Inc.*, 463 U.S. 418 (1983) ...............................20

*United States v. Tucker*, 78 F.3d 1313 (8th Cir. 1996) ...............................13

*Wilderness Soc'y v. Norton*, 434 F.3d 584
    (D.C. Cir. 2006) .................................................................................10

## STATUTES AND RULES

18 U.S.C. § 3231 ...............................................................................................17

28 U.S.C. § 515 .......................................................................................... *passim*

28 U.S.C. § 515(a) .....................................................................................8, 16, 17

28 U.S.C. § 516 ...............................................................................................18

44 U.S.C. § 1510(a) ...................................................................................................................10

Fed. R. Crim. P. 1(b)(1) ..........................................................................................................18

Fed. R. Crim. P. 1(b)(1)(A) ....................................................................................................18

Fed. R. Crim. P. 1(b)(1)(D) ....................................................................................................18

Fed. R. Crim. P. 6 ....................................................................................................................18

Fed. R. Crim. P. 7 ....................................................................................................................18

## REGULATIONS

28 C.F.R. §§ 600.1-600.10 ......................................................................................................16

28 C.F.R. § 600.3 ......................................................................................................................9

28 C.F.R. § 600.4 ...............................................................................................................3, 4, 10

28 C.F.R. § 600.4(a) ......................................................................................................... passim

28 C.F.R. § 600.4(b) ..........................................................................................................1, 6, 8

28 C.F.R. § 600.6 ......................................................................................................................3

28 C.F.R. § 600.8 ......................................................................................................................3

28 C.F.R. § 600.8(b) ..................................................................................................................3

28 C.F.R. § 600.10 .............................................................................................................11, 12

## ADMINISTRATIVE MATERIALS

Office of the Deputy Att'y Gen., *Appointment of Special Counsel To Investigate
    Russian Interference with the 2016 Presidential Election and Related Matters*
    (May 17, 2017) ................................................................................................... *passim*

*Office of Special Counsel*, 64 Fed. Reg. 37038 (July 9, 1999) ................................................3, 6, 8

## OTHER AUTHORITIES

Michael S. Schmidt & Adam Goldman, *Manafort's Home Searched
    as Part of Mueller Inquiry*, N.Y. TIMES, Aug. 9, 2017 ............................................................3

## INTRODUCTION

Defendant Paul J. Manafort, Jr. respectfully submits this reply in support of his motion to dismiss the Superseding Indictment.  Far from demonstrating that the Special Counsel has authority to bring these charges, the Special Counsel's opposition confirms the opposite.  As a result, this Court lacks jurisdiction, and the Superseding Indictment must be dismissed.

## I.   THE APPOINTMENT ORDER EXCEEDS THE ACTING ATTORNEY GENERAL'S AUTHORITY UNDER THE SPECIAL COUNSEL REGULATIONS

The text of the Special Counsel Regulations is clear:  The Acting Attorney General has authority to grant the Special Counsel "[o]riginal jurisdiction" to investigate "a specific factual . . . matter."  28 C.F.R. § 600.4(a).  Paragraphs (b)(i) and (b)(iii) of the Appointment Order identify such "original jurisdiction."  They authorize the Special Counsel to investigate "any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump," as well as efforts to obstruct that investigation.  Appointment Order ¶¶(b)(i), (b)(iii).  But paragraph (b)(ii) of the Appointment Order goes further, purporting to issue broad jurisdiction to investigate and prosecute "*any matters that arose or may arise* directly from the investigation."  *Id.* ¶(b)(ii) (emphasis added).

The Special Counsel does not claim that paragraph (b)(ii) is a "specific factual statement of the matter to be investigated."  Nor does he assert that the Acting Attorney General granted him "additional jurisdiction," under 28 C.F.R. § 600.4(b), to pursue these charges.  That is fatal to his case.  The Superseding Indictment is not covered by a specific factual statement that can confer "original jurisdiction."  The Special Counsel insists that the charges fall within paragraph (b)(ii).  But the Acting Attorney General had no authority to grant the jurisdiction set out in paragraph (b)(ii), and the Special Counsel thus has no authority to exercise it.  None of the Special Counsel's remaining arguments shows authority to bring the Superseding Indictment.

A. **The After-the-Fact Memorandum Confirms That Paragraph (b)(ii) of the Appointment Order Exceeds the Acting Attorney General's Authority**

The Special Counsel's primary argument is that, ***months after*** the Appointment Order issued, the Acting Attorney General "clarif[ied]" the scope of the Special Counsel's jurisdiction in an August 2, 2017 Memorandum.  According to the Special Counsel, that Memorandum confirms that the "charged conduct is included within [his] jurisdiction." Opp. 12; *see also id.* at 5-6, 9, 11-12, 16, 18; *id.* Attach. C ("Mem.").  But the Memorandum confirms only that paragraph (b)(ii) of the Appointment Order exceeds the Acting Attorney General's authority—that, far from being a specific statement, it is a blank check.

The Memorandum asserts that paragraph (b)(ii) "was worded categorically in order to permit its public release" and "provides a more specific description of [the Special Counsel's] authority" under the Order.  Mem. 1.  The Memorandum then lists "***matters that arose or may arise*** directly from that investigation," including: (i) "crimes arising out of payments" Mr. Manafort "received from the Ukrainian government before and during the tenure of President Viktor Yanukovych," and (ii) other matters contained in redacted paragraphs.  *Id.* at 1-2 (emphasis added).  Those matters, the Memorandum says, "***were*** within the scope of the Investigation at the time of . . . [the] appointment and are within the scope of the Order." *Id.* at 1 (emphasis added).

The Memorandum illustrates precisely why paragraph (b)(ii) is a catch-all grant of jurisdiction that went beyond the Acting Attorney General's authority.  The vague phrase "matters that arose or may arise directly" came to include, months after the fact, a potpourri of purported misdeeds that have nothing to do with alleged coordination between the Trump campaign and the Russian government.  If the Acting Attorney General did not want to include certain information in the Appointment Order itself, he could have contemporaneously issued a confidential grant of "original" jurisdiction with the requisite specific factual statement; or he

Case 1:18-cr-00083-TSE   Document 40   Filed 04/16/18   Page 8 of 26 PageID# 693

could have later issued a confidential order granting "additional" jurisdiction over specified matters. *See* 28 C.F.R. § 600.4. But nothing in the Special Counsel Regulations authorizes vague grants of "and anything else" authority as part of original jurisdiction, followed by a "clarif[ication]," Opp. 7, of supposedly included matters nearly *three months* into the Special Counsel's investigation. Here, moreover, that "clarif[ication]" came *after* the Special Counsel executed search warrants on Mr. Manafort's home in July 2017. *See* Michael S. Schmidt & Adam Goldman, *Manafort's Home Searched as Part of Mueller Inquiry*, N.Y. TIMES, Aug. 9, 2017, at A1. The Regulations require a specific factual statement; they do not authorize unbounded grants of jurisdiction followed by after-the-fact clarification. 28 C.F.R. § 600.4(a); *see Office of Special Counsel*, 64 Fed. Reg. 37038, 37038 (July 9, 1999).[1]

The Special Counsel's position also defies the Regulations' purpose—to prevent the abuses experienced during the disastrous independent counsel regime. *See* Mot. 3-5. By requiring the Acting Attorney General to limit original jurisdiction to a "specific factual statement" of the matters to be investigated, and to approve expansions by granting "additional jurisdiction," the Special Counsel Regulations ensure political accountability. The Special Counsel's position, however, would permit the Acting Attorney General to grant the Special Counsel *carte blanche*

---

[1] The Special Counsel suggests (at 7) that the Acting Attorney General had "authority to clarify [his] jurisdiction during regular consultation." But the Memorandum did not "clarify" any purported ambiguity; it attempted to insert content that simply was not there. Moreover, the regulations the Special Counsel cites, 28 C.F.R. §§ 600.6, 600.8(b), do not authorize supposed "clarif[ication]." Section 600.6 provides that the Special Counsel "shall exercise, within the scope of his or her jurisdiction, the full power and independent authority . . . of any United States Attorney," and "shall determine whether and to what extent to inform or consult with the Attorney General or others within the [DOJ]." *Id.* § 600.6. And the only arguably relevant provision of § 600.8 provides that "[t]he Special Counsel shall notify the Attorney General of events in the course of his or her investigation in conformity with the [DOJ] guidelines with respect to Urgent Reports." *Id.* § 600.8(b). None of those provisions authorizes the Acting Attorney General to "clarify" the scope of the Special Counsel's original jurisdiction mid-stream.

at the outset; fail to communicate purported limits on that jurisdiction to anyone; and then later decide what is actually within the grant of original jurisdiction. In the Special Counsel's view, no one can be sure what *else* might retroactively be deemed part of the original grant because the Acting Attorney General can always issue a later "clarif[ication]," Opp. 7, allowing virtually anything to be stuffed within the language of paragraph (b)(ii). *See* pp. 1-3, *supra*.

The Special Counsel Regulations have a specific structure: The Acting Attorney General can grant specific, limited original jurisdiction; and he can add further matters only through specific grants of additional jurisdiction. *See* 28 C.F.R. § 600.4. As a result, the Acting Attorney General—a politically accountable officer—is responsible for each grant of jurisdiction *before* it is exercised. In the Special Counsel's words, "a Special Counsel's jurisdiction is defined at the outset." Opp. 17. But the Special Counsel's position would turn that on its head, allowing the Acting Attorney General to deputize the Special Counsel's office as a fourth branch of government with broad, independent authority, subject to after-the-fact approval (or plausible de-niability if the need arises). The creation of that sort of "mini-Executive"—"operating in an area where so little is law and so much is discretion, . . . intentionally cut off from the unifying influence of the Justice Department, and . . . the perspective that multiple responsibilities provide"—is precisely what the Special Counsel Regulations were designed to prevent. *Morrison v. Olson*, 487 U.S. 654, 732 (1988) (Scalia, J., dissenting).

### B.     Assurances of "Oversight" Are Insufficient

Invoking the Acting Attorney General's testimony before Congress, the Special Counsel asserts that he is subject to politically accountable "oversight." Opp. 11.

The Special Counsel's assurances are legally irrelevant. The Special Counsel Regu-lations do not say that the Acting Attorney General can exceed his appointment authority so long as he offers mid-prosecution assurances of oversight. Rather, they permit the Acting Attorney

General to grant special counsel "original jurisdiction" *only* for the "specific factual . . . matter" identified.  28 C.F.R. §600.4(a); *see* Mot. 4, 6.  The notification and consultation requirements the Special Counsel identifies (at 9-10) impose obligations *in addition to* that limit on authority. The Special Counsel cannot choose the provisions of the Regulations he likes and ignore the others.  *See, e.g.*, *Gustafson v. Alloyd Co.*, 513 U.S. 561, 569 (1995).

The supposed assurances of oversight also fall short factually.  To the extent the testimony is relevant, it demonstrates that the Appointment Order's grant of original jurisdiction exceeded the Acting Attorney General's authority:  The Acting Attorney General testified that "the specific matters [to be investigated] are not identified in the order."  Opp. Attach. B ("AAG Test.") at 29.  That is exactly the opposite of what the Special Counsel Regulations require: "a specific factual statement of the matter to be investigated."  28 C.F.R. §600.4(a).  And the Acting Attorney General testified that he did not know whether he ever "expand[ed] the scope of the . . . original jurisdiction" set out in the Appointment Order.  AAG Test. 30, 32.  The Special Counsel's opposition confirms that he never did.  *See* p. 1, *supra*.

Tellingly, the Special Counsel has produced *no* evidence, aside from the August Memorandum, of *any* communications between the Special Counsel and the Acting Attorney General.  The Special Counsel cannot rely on unsupported representations about "dialogue between the Acting Attorney General and the Special Counsel" to prove "oversight" by the Acting Attorney General instead of actually producing that evidence.  Opp. 5.  At the very least, Mr. Manafort is entitled to discovery about those other communications.

The Special Counsel insists that he "can be presumed to carry out his responsibilities and confer with the Attorney General" if "need[ed]."  Opp. 10.  But the promise of presumptive "confer[ring]," if there is a "need," cannot overcome absence of authority.  Further, the presumption of regularity applies only "in the absence of clear evidence . . . that [prosecutors] have

[im]properly discharged their official duties." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quotation marks omitted). This case begins and is replete with irregularity. The Acting Attorney General admitted that "the specific matters [to be investigated] are not identified in the [Appointment] [O]rder." AAG Test. 29. He identified no other contemporaneous document that does so. But a special counsel's jurisdiction must be "defined at the outset." Opp. 17. The Acting Attorney General thus exceeded his appointment authority: Rather than grant original jurisdiction limited by a "specific factual statement of the matter to be investigated," he purported to grant jurisdiction over anything that might arise. Regularity this is not.

### C.    The Special Counsel's Textual Arguments Fail

Defending the Appointment Order, the Special Counsel insists that the Regulations "do not provide that the factual statement must be made public." Opp. 8. But the Regulations are clear that the specific factual statement of original jurisdiction is ***mandatory***. Here, ***neither*** the Appointment Order, ***nor*** any other contemporaneous document, provided a specific factual statement that encompasses the Superseding Indictment. The Appointment Order itself instead included an impermissible catch-all that cannot qualify as a specific factual statement—precisely the sort of *carte blanche* the Regulations proscribe. *See* 28 C.F.R. § 600.4(a)-(b). The August Memorandum simply confirms the expansive scope of that grant. *See* pp. 2-3, *supra*.

The Special Counsel Regulations, moreover, distinguish between "additional" and "original jurisdiction." The Regulations authorize the Acting Attorney General to grant "[o]riginal jurisdiction" that encompasses "a specific factual statement of the matter to be investigated." 28 C.F.R. § 600.4(a). If the Acting Attorney General wishes to authorize the investigation of "***unrelated crimes*** by targets of [the Special Counsel's] investigation," *Office of Special Counsel*, 64 Fed. Reg. at 37039 (emphasis added), he must later grant the Special Counsel "additional jurisdiction," 28 C.F.R. § 600.4(b). The Special Counsel's view—that a delimited grant of

"original jurisdiction" can be filled in through "clarif[ication]" later, Opp. 7—renders the provision for grants of "additional jurisdiction" meaningless.

Regardless, the Acting Attorney General must "establish" the Special Counsel's original jurisdiction by "provid[ing]" a "specific factual statement of the matter to be investigated," 28 C.F.R. § 600.4(a), "at the outset," Opp. 17.  Here, the Special Counsel offers no evidence that the specific matters identified in the August Memorandum were "provided" to the Special Counsel until months *after* the Appointment Order.  The Special Counsel studiously avoids making any such representation.  *See, e.g.*, *id.* at 9 ("[T]he Acting Attorney General has . . . required consultation about 'additional [unspecified] matters.'"); *id.* at 11 ("[T]he Acting Attorney General 'discussed [unidentified specific matters] with [the Special Counsel].'" (second alteration in original)).  Even if "[t]he regulations do not provide that the factual statement must be made public," *id.* at 8, the specific statement "establish[ing]" original jurisdiction has not been "provided" if it was not communicated to the Special Counsel before he began his investigation.

The August Memorandum, moreover, is dated after the issuance and execution of *four* search warrants addressed to Mr. Manafort's property.  The later Memorandum cannot retroactively provide the "specific factual statement of the matter to be investigated" to authorize the warrants; jurisdiction must be established at the outset.  28 C.F.R. § 600.4(a); Opp. 4.  At a minimum, the fruits of those warrants must be suppressed.

The Special Counsel attempts to justify uncabined original jurisdiction as necessary to an "effective investigation."  Opp. 17.  "Although a criminal investigation may start with a specific set of facts," he urges, "the point of investigation is to explore those facts, develop new ones, and continually reassess the direction of the inquiry."  *Id.*  Whatever the process for *ordinary* criminal investigations, led by politically accountable employees, the Regulations provide careful jurisdictional limits for special counsel—limits designed to prevent the investigatory sprawl that

results when one office has virtually unlimited resources and no competing priorities.   In particular, if a special counsel wants to investigate a matter "beyond that *specified* in his or her *original jurisdiction*," he or she must obtain "*additional* jurisdiction."   28 C.F.R. § 600.4(b) (emphasis added).   The Special Counsel seeks to read that out of the Regulations.

## II.   THE SPECIAL COUNSEL REGULATIONS IMPOSE BINDING LIMITS ON THE ACTING ATTORNEY GENERAL'S AUTHORITY

The Special Counsel asserts that the Special Counsel Regulations are merely a "helpful framework" that is "not[ ] enforceable by individual defendants."   Opp. 3, 19-20.   But the Regulations are not friendly advice; they are *regulations* that implement a statutory directive by setting limits on appointment authority.   *See* Mot. 17.   Because the Acting Attorney General lacked power to grant the authority in paragraph (b)(ii), the Special Counsel lacked authority to exercise it.   Mr. Manafort is entitled to challenge the Special Counsel's lack of authority, whether or not the Regulations create actionable "private rights."   *See Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 690-91 (1949); *see also* Mot. 19 n.3.

### A.   The Acting Attorney General's Appointment Authority Is Limited by 28 U.S.C. § 515 and the Special Counsel Regulations Implementing That Statute

1.   The Special Counsel Regulations implement 28 U.S.C. § 515(a), which permits "any attorney specially appointed by the Attorney General . . . when *specifically directed* by the Attorney General, [to] conduct any kind of legal proceeding . . . , which United States attorneys are authorized by law to conduct."   *Id.* (emphasis added); *see generally Office of Special Counsel*, 64 Fed. Reg. 37038 (identifying 28 U.S.C. § 515 as authority for Special Counsel Regulations).   In the Special Counsel Regulations, the DOJ established specific limits to implement § 515(a)'s requirement that special counsel be "specifically directed."

The Special Counsel thus misses the point by observing that § 515(a) does not *require* the Attorney General to "adopt rules or procedures."   Opp. 20.   The DOJ *did adopt* specific limits by

promulgating the Special Counsel Regulations.  Once adopted, those Regulations have "the force of law," binding the DOJ and its officers.  *United States v. Nixon*, 418 U.S. 683, 695 (1974); *see Guillot v. Garrett*, 970 F.2d 1320, 1327 (4th Cir. 1992) ("[G]overnment agencies and departments must abide by their own regulations."); *see also* Opp. 21 (quoting *Nixon*).  That is so even if § 515 did not require their promulgation in the first instance.  *See Angelex Ltd. v. United States*, 723 F.3d 500, 508 (4th Cir. 2013) (" '[E]ven where action is committed to absolute agency discretion by law, courts . . . review allegations that an agency exceeded its legal authority . . . or failed to follow its own regulations.' " (first alteration in original)).

The Special Counsel suggests that, "[o]n prior occasions," "the Attorney General or Acting Attorney General . . . appointed Special Counsels or other specially appointed attorneys . . . without invoking a regulation like 28 C.F.R. Part 600."  Opp. 20.  Two of the Special Counsel's three cited examples—the Iran-Contra and Watergate special prosecutors—were appointed decades **before** the Special Counsel Regulations were promulgated in 1999.  *See Nixon*, 418 U.S. at 694-95 (Watergate); *In re Sealed Case*, 829 F.2d 50, 51-53 (D.C. Cir. 1987) (Iran-Contra). The third example—the appointment of a United States Attorney to investigate the Valerie Plame leak—did not involve the Special Counsel Regulations because no **outside** special counsel was appointed.  *United States v. Libby*, 429 F. Supp. 2d 27, 29 (D.D.C. 2006); *see* 28 C.F.R. § 600.3 (special counsel must be "selected from outside the United States Government.").  The "conferral . . . of the title 'Special Counsel' " on an already duly appointed United States Attorney did not suggest that his authority was "limited by 28 C.F.R Part 600."  *Libby*, 429 F. Supp. 2d at 29.  Besides, prior *ultra vires* conduct, unreviewed by the courts, does not authorize later *ultra vires* acts.  *See Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374 (1998) ("[C]onsistent repetition of [a] breach can hardly mend it.").

2.    The Special Counsel compares the Special Counsel Regulations to nonbinding

"internal guidance documents"—such as the United States Attorneys' Manual and various DOJ guidelines. Opp. 21. But the Special Counsel overlooks critical differences. The Special Counsel Regulations are *regulations*, published in the Code of Federal Regulations. Only documents "'having general applicability *and legal effect*'" are published in the Code of Federal Regulations; that is "'the real dividing point between regulations and general statements of policy.'" *Wilderness Soc'y v. Norton*, 434 F.3d 584, 596 (D.C. Cir. 2006) (quoting *Brock v. Cathedral Bluffs Shale Oil Co.*, 796 F.2d 533, 538-39 (D.C. Cir. 1986)); *see* 44 U.S.C. § 1510(a) (C.F.R. contains government "documents . . . having general applicability and legal effect"). If the DOJ had intended for the Regulations to be nothing more than "a helpful framework," Opp. 3, it could have issued them in a policy document or manual. But the DOJ instead chose to promulgate them as jurisdiction-limiting regulations that "ha[ve] the force of law." *Id.* at 21 (quoting *Nixon*, 418 U.S. at 695). The DOJ is bound by that law—and by the limitations on appointment authority the law imposes.

Indeed, the Regulations themselves purport to regulate the Special Counsel's "jurisdiction." 28 C.F.R. § 600.4. They do not purport to be "internal guidance" that can be ignored. *See Norton*, 434 F.3d at 595.

3. The Special Counsel's theory contravenes the history of the Special Counsel Regulations. The Regulations were promulgated to reassure Congress that the lack of political accountability experienced under the independent counsel regime would not recur. *See* p. 3, *supra*; *see also* Mot. 3-5. Having promulgated binding regulations to reassure Congress, the Special Counsel cannot now downgrade the Regulations to "helpful" advice. Opp. 3. An agency may not use self-serving statements to strip legal effect from an otherwise binding rule. *See Barrick Goldstrike Mines Inc. v. Browner*, 215 F.3d 45, 48 (D.C. Cir. 2000) (rule cannot "escape judicial review" merely because agency "labels its action an 'informal' guideline").

The Special Counsel's view would render the Special Counsel Regulations a step *backwards* in accountability from the independent counsel statute.  The Regulations were designed "to replace the procedures set out in the Independent Counsel [statute]" and to address "the tendency of [independent counsel] investigations to sprawl beyond the reason for their initiation" without proper political accountability.  Mot. 10 (quotation marks omitted).  At least under the independent counsel statute, expansions of independent counsels' jurisdiction were *reviewable*.  *See* Mot. 26 (citing *In re Espy*, 145 F.3d 1365, 1367 (D.C. Cir. 1998) (per curiam)).  In the Special Counsel's view, courts are now powerless to address whether a special counsel even has jurisdiction.  That moves us from too little accountability to even less.

### B.   The "Individual Rights" Disclaimer Does Not Preclude This Court from Assessing Prosecutorial Authority and Its Own Jurisdiction

The Special Counsel's insistence that the Special Counsel Regulations "disclaim the creation of individual rights," Opp. 21-22, fares no better.  *See* 28 C.F.R. §600.10.  Mr. Manafort is not asserting the violation of any *individual right*; he is raising the Acting Attorney General's and Special Counsel's *lack of authority*.  *See* pp. 12-13, *infra*; *see also* Mot. 19 n.3.  This Court is empowered—indeed, obligated—to determine whether the Acting Attorney General validly conferred jurisdiction on the Special Counsel to pursue the Superseding Indictment.  If he did not, and the Special Counsel lacked jurisdiction, this Court lacks jurisdiction as well.  *See United States v. Providence Journal Co.*, 485 U.S. 693, 708 (1988).

1.   The Supreme Court has long distinguished between a federal official's "lack of delegated power," and arguments that a federal officer's conduct is illegal, "whether or not [the conduct] be within" the official's "delegated powers."  *Larson*, 337 U.S. at 691-92.  Under *Larson*, the former can be raised, even when the latter cannot.  *Id.*  The Special Counsel claims that *Larson* addressed a lack of "*statutory* authority," not authority under *regulations*.  Opp. 23

n.15.  That is a distinction without a difference.  The key point in *Larson* is that individuals can challenge an officer's lack of authority to take action against them, whether the lack of authority derives from a statute or a regulation with the force and effect of law.  The Special Counsel Regulations, moreover, reflect the DOJ's interpretation of 28 U.S.C. § 515, a statutory provision. *See* pp. 8-11, *supra*.

The Special Counsel also points out that *Larson* was a civil case.  Opp. 23 n.15.  But nothing in *Larson* suggests that unauthorized civil conduct is reviewable but unauthorized criminal actions are not.  *Larson* is often applied in the criminal context.  *See, e.g.*, *United States v. Briggs*, 514 F.2d 794, 808 n.25 (5th Cir. 1975) (invoking *Larson* on motion to strike language from indictment); *United States v. Groos*, 616 F. Supp. 2d 777, 785 n.6 (N.D. Ill. 2008) (similar). That makes sense:  Where the prosecuting official lacks authority, the court lacks jurisdiction as well.  *Providence Journal*, 485 U.S. at 708.

2.     Section 600.10 is limited.  It says that the Special Counsel Regulations do not create individual rights.  It does not say that the Regulations impose no limits on the authority to appoint special counsel or the scope of jurisdiction special counsel can exercise.  The federal courts have a long history of determining whether a properly appointed prosecutor is before them.  When one is not, jurisdiction is wanting.  *See, e.g.*, *United States v. Rosenthal*, 121 F. 862, 874 (C.C.S.D.N.Y. 1903); Mot. 19 n.4 (collecting cases).  To contravene that tradition, the DOJ at the very least had to include language in § 600.10 that would disclaim such challenges.  That it did not, disclaiming only rights-creation instead, speaks volumes.

In Mr. Manafort's civil action, the Special Counsel urged that the Special Counsel's lack of authority should be raised on a motion to dismiss the Superseding Indictment.  Now that such a motion has been filed, the Special Counsel insists that the Court cannot consider the challenge at all.  But the Special Counsel cites no case holding that the very court in which a prosecutor

purports to wield unchecked power is powerless to question his legal authority.  There is a strong presumption that Congress intends judicial review.  *Orquera v. Ashcroft*, 357 F.3d 413, 422 (4th Cir. 2003).  There is no "clear and convincing evidence" of intent to preclude review here.  *Id.*[2]

Finally, the Special Counsel declares that "reasons supporting the general rule against judicial review of the exercise of prosecutorial discretion have salience here."  Opp. 22.  But the issue is not an exercise of *discretion*.  It is whether the Special Counsel has *authority* to pursue the Superseding Indictment *at all*.  *See Armstrong*, 517 U.S. at 464.

## III. THE SPECIAL COUNSEL'S INVESTIGATION EXCEEDS THE APPOINT-MENT ORDER'S PURPORTED GRANTS OF JURISDICTION

### A. The Charges Exceed the Authority Paragraph (b)(ii) Purports To Grant Because They Cannot Have "Directly Arisen" from Investigations of Alleged Coordination Between the Trump Campaign and Russian Officials

Even if the Acting Attorney General could grant the Special Counsel original jurisdiction that includes matters that "arose or may arise directly from the investigation," Appointment Order ¶(b)(ii)—and he cannot—the Superseding Indictment does not even fall within that expansive grant of authority.

The Superseding Indictment's allegations do not "arise directly from" the Special Counsel's investigation.  The phrase "arise from" requires, at a minimum, that any new charges cover conduct discovered as a result of his original investigation.  *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 489 (2006); *see* Mot. 25-26.  Here, lawfully appointed DOJ prosecutors *knew about* the alleged conduct years ago—and chose not to pursue it.  *See* p. 18, *infra*; *see also* Mot. 23-24.

---

[2] For that reason, *United States v. Tucker*, 78 F.3d 1313 (8th Cir. 1996), has no relevance.  *See* Opp. 22.  *Tucker* found referrals under the independent counsel statute unreviewable due to "irrefutable" legislative history weighing against judicial review.  78 F.3d at 1318.  Consequently, *Tucker* in no way shows that an *ultra vires* appointment of special counsel is beyond judicial purview in the very court where the Special Counsel purports to exercise unauthorized power.

Because that conduct was known to the DOJ before the Special Counsel's appointment, the charges cannot have "arise[n] directly from" his investigation.  *See* Mot. 24-28.[3]  The Special Counsel does not suggest otherwise.

Moreover, under *In re Espy*, 80 F.3d 501 (D.C. Cir. 1996), a matter does not "arise directly from" an earlier investigation unless the new charges are "***demonstrably related to***" that investigation.  *Id.* at 508 (emphasis added); *see* Mot. 26.  The stale accusations here—with no connection to Russian coordination—are not.  *See* Mot. 25-27.  While the Special Counsel attempts to downplay *Espy* as implicating "'separation of powers concerns,'" Opp. 19, that effort falls short.  This case involves the scope of jurisdiction under the Special Counsel Regulations and the Appointment Order.  Under *Espy*, the "aris[ing] directly from" language used in defining the Special Counsel's putative jurisdiction limits the Special Counsel to matters that causally resulted from, and are demonstrably related to, the specifically authorized investigation.  And important separation-of-powers principles are involved here as well.  The Regulations seek to ensure that a politically accountable official retains control, issue by issue, of the investigation.  Granting the Special Counsel a blank check—and construing it more broadly than *Espy* would allow—threatens to create the unaccountable fourth branch Justice Scalia warned of in *Morrison*.  *See* p. 4, *supra*.

The Special Counsel objects to "constru[ing] the phrase 'arises directly from'" in light of ***precedent*** because the Order "is not a statute, but an instrument for providing public notice."  Opp. 14.  But the Special Counsel Regulations say nothing about giving "public notice."  They impose ***limits on authority***—on the scope of original jurisdiction—to ensure accountability and prevent free-wheeling investigations by individuals without such accountability.  *See* p. 3, *supra*;

---

[3] The charges thus could not have arisen from the FBI's investigation either.  *See* Opp. 1-2.

Mot. 3-5.  There is no reason to disregard settled judicial usage when determining the meaning of the terms the DOJ itself—fully aware of those terms' history—chose to use.

### B.    The Prosecution Is Unrelated to Any Alleged Coordination Between the Trump Campaign and the Russian Government Covered by Paragraph (b)(i)

Apparently recognizing the vulnerability of paragraph (b)(ii), the Special Counsel argues (at 13-14) that the Superseding Indictment's allegations fall "within the scope of paragraph (b)(i)," which extends to " 'coordination between the Russian government and individuals associated with the campaign of President Donald Trump.' "  But that defies the August Memorandum, which purports to "clarif[y]," Opp. 7, that the conduct covered by the Superseding Indictment is authorized by the "categorically" worded paragraph (b)(ii), Mem. 1.  In any event, the charges cannot fall within paragraph (b)(i), because they have nothing to do with alleged coordination between the Russian government and the Trump campaign.

The Special Counsel insists that the charges here concern supposed "ties" between Mr. Manafort and "Russian-associated" or "Russian-backed" persons.  Opp. 13-14.  But the charges stem from consulting work in Ukraine that began nearly a decade before the Trump campaign launched.  They address years-old allegations from *2010 to 2014*, long before Mr. Manafort's brief involvement in the campaign.  *See* Mot. 9.  They cover work in *Ukraine*, not Russia.  *See id.*  And they say nothing about any supposed coordination between the Russian government and the Trump campaign.  *See id.*  That Mr. Manafort was at one point "associated with the [Trump] campaign," Opp. 13, is not enough.  The charges have no connection to the campaign or his involvement, and the Superseding Indictment nowhere alleges that he had anything to do with alleged "coordination [with] the Russian government" while associated with the Trump campaign. Indeed, the Special Counsel has not even suggested that he is investigating Mr. Manafort on that subject.  The Superseding Indictment thus cannot plausibly fall within paragraph (b)(i).

15

Nor does paragraph (c) of the Appointment Order, which empowers the Special Counsel to ***prosecute*** crimes "arising from the investigation," Opp. 14, authorize the charges.  Paragraphs (b)(i)-(iii) limit the Special Counsel's investigative authority.  The authority to prosecute under paragraph (c) is no broader.  Appointment Order ¶(c).  And "follow[ing] th[e] money trail" from Mr. Manafort's consulting work in Ukraine is not within the Special Counsel's original jurisdiction either, because it does not relate to the specific factual matter of alleged coordination between the Trump campaign and the Russian government.  Opp. 13; *see* p. 15, *supra*.

## IV.    DISMISSAL IS REQUIRED

### A.    This Court Lacks Jurisdiction Because the Special Counsel Was Appointed in Excess of Authority

Courts have long agreed that, absent a properly appointed prosecutor, they lack jurisdiction.  *See* Mot. 17-20.  The Special Counsel insists that "any error in assigning these matters" does not "deprive[] this Court of jurisdiction."  Opp. 24.  That assertion defies precedent.  The Special Counsel lacks authority to conduct legal proceedings unless "specifically directed by the Attorney General" or Acting Attorney General.  28 U.S.C § 515(a).  Here, the Acting Attorney General did not have authority to grant the jurisdiction set forth in paragraph (b)(ii) to an outside lawyer.  *See* pp. 1-8, *supra*.  Because the Acting Attorney General lacked power to grant that jurisdiction, the Special Counsel lacks authority to exercise it.  *See* 28 U.S.C. § 515(a).  Without "a proper representative of the Government as a [party] in this criminal prosecution, jurisdiction is lacking."  *Providence Journal*, 485 U.S. at 708.

The Special Counsel attempts to distinguish *Providence Journal* as resting on a statute (not a regulation) that denied the special prosecutor authority to petition for a writ of certiorari.  Opp. 25.  But this case involves a similar absence of authority.  The Acting Attorney General did not have power to grant blank-check jurisdiction.  By statute (28 U.S.C. § 515) and regulation

(28 C.F.R. §§ 600.1-600.10), he had authority only to make appointments with "specific[]
direct[ions]." Without a "proper representative of the Government" before it, this Court lacks
jurisdiction. *See Providence Journal*, 485 U.S. at 708.

The Special Counsel also insists that, in *Providence Journal*, the Supreme Court's juris-
diction required "a formal step"—a petition for a writ of certiorari. Opp. 26. But this Court's
jurisdiction requires such a step as well: The criminal jurisdiction of federal courts "is invoked
by an indictment." *United States v. Romans*, 823 F.3d 299, 315 (5th Cir. 2016). If a prosecutor
lacks authority to bring that indictment, the "formal step" needed to invoke jurisdiction is
missing. *Providence Journal*, 485 U.S. at 708; *see* Mot. 17-20.[4]

Relying on cases that predate the 1999 Special Counsel Regulations, the Special Counsel
argues that, under § 515(a), "officers need not be given specific authorization to appear in
particular criminal cases." Opp. 24. But the Regulations created specific limits on appointment
authority to ensure that special counsel are "specifically directed" within the meaning of
§ 515(a). Unless those Regulations are revoked, they have the force of law and cannot be
disregarded. *See Nixon*, 418 U.S. at 696; *see also* pp. 8-13, *supra*.

Nor does 18 U.S.C. § 3231, which provides jurisdiction over "'offenses against the laws

---

[4] The Special Counsel claims that, although the cases cited in the motion to dismiss refer to the
court's "jurisdiction," some of the cases really meant an attorney's "statutory authority to act" or
"the court's authority to adjudicate the case." Opp. 26 & n.16. But those too are other ways of
saying the courts lacked jurisdiction. In *Mehle v. American Management Systems, Inc.*, 172 F.
Supp. 2d 203 (D.D.C. 2001), and *United States v. Male Juvenile*, 148 F.3d 468 (5th Cir. 1998),
for example, the courts ***dismissed*** cases because they were brought by unauthorized prosecutors,
depriving the courts of jurisdiction. That is the case here too: Because the Special Counsel lacks
authority to represent the United States, this Court lacks jurisdiction. *See* pp. 16-17, *supra*. The
Special Counsel also points out (at 26 n.16) that, in *United States v. Bennett*, 464 F. App'x 183
(4th Cir. 2012), the signature of an unauthorized prosecutor on an indictment was harmless error.
But there, too, the court confirmed that "[a] federal court is without jurisdiction in a criminal
prosecution where the Government lacks an authorized representative." *Id.* at 184-85. Besides,
there can be no claim of harmlessness here. *See* pp. 18-20, *infra*.

of the United States,'" cure the defect.  Opp. 24-25.  As the Special Counsel admits, only "'officers of the [DOJ], under the direction of the Attorney General,'" may conduct federal criminal proceedings.  *Id.* at 23 (quoting 28 U.S.C. §516).  The Special Counsel cannot be such an officer because his appointment exceeded the Acting Attorney General's authority.  *See* pp. 1-8, *supra.* An invalidly appointed prosecutor cannot be an "officer of the United States."  *See, e.g.*, *Rosenthal*, 121 F. at 866, 874.  Dismissal is required.  *See Providence Journal*, 485 U.S. at 708.

## B.    The Special Counsel's Participation in the Grand Jury Proceedings Was Impermissible as Well

Because the Special Counsel lacks authority to bring these charges, he is also not a lawfully appointed "attorney for the government" entitled to appear before the grand jury, or sign the indictment, under Federal Rules of Criminal Procedure 6 and 7.  *See* Fed. R. Crim. P. 1(b)(1) (defining "Attorney for the government").  The assertion that the Special Counsel has "statutory authority under Section 515," Opp. 26, again misses the mark:  The Acting Attorney General's appointment authority is limited by §515 and the implementing Special Counsel Regulations. *See* pp. 8-13, *supra.*  Because the Appointment Order exceeded the Acting Attorney General's authority, the Special Counsel is neither an "authorized assistant" of the Attorney General, nor an "attorney authorized by law to conduct proceedings under these rules as a prosecutor."  Fed. R. Crim. P. 1(b)(1)(A), 1(b)(1)(D); *see also* Mot. 21-24.

## C.    The Special Counsel's Participation in the Grand Jury Proceedings Prejudiced Mr. Manafort

Finally, the Special Counsel argues that any violation of Rules 6 and 7 was "harmless," dismissing the contrary evidence as "speculation."  Opp. 29.  But the Special Counsel does not deny that Mr. Manafort ***already disclosed*** his consulting activities in 2014 to DOJ prosecutors, who did ***not*** charge him.  *Id.*  It is thus simple history, not "speculation," that demonstrates the Special Counsel's "substantial influence" on the charges here, warranting dismissal.  *Bank of*

*Nova Scotia v. United States*, 487 U.S. 250, 256 (1988); *see also* Mot. 23-24.

The Special Counsel insists that "the supervision and involvement of other DOJ career attorneys" renders his participation "harmless." Opp. 28. But the Special Counsel's participation was undoubtedly a "substantial influence" in this matter. *Bank of Nova Scotia*, 487 U.S. at 256. Indeed, the Special Counsel is the ***controlling force***. The Special Counsel does not contend otherwise. And that only the Special Counsel signed the Superseding Indictment on behalf of the government makes that clearer still.

The Special Counsel asserts that his "decision to seek an indictment was supervised and approved by the Acting Attorney General." Opp. 29. But the Acting Attorney General testified only that he believed the Special Counsel had been "'conducting himself consistently with [the Department's] understanding about the scope of [the] investigation.'" *Id.* at 11 (quoting AAG Test. 28). Those remarks do not establish that the Superseding Indictment is within the scope of permissible original jurisdiction. The Superseding Indictment is dated February 22, 2018, more than ***two months after*** the Acting Attorney General's December 13, 2017 testimony. And the remarks surely do not show that, ***absent*** the Special Counsel's impermissible participation, the Acting Attorney General would have chosen the same course himself. The prior decisions by long-time prosecutors not to pursue these charges prove the opposite. The requisite "substantial influence" undeniably exists.

Moreover, the Special Counsel nowhere explains what supposed "supervision and involvement" other "DOJ career attorneys" offered him. Opp. 28. He declares that "the Senior Assistant Special Counsel in charge of this prosecution is a long-time career prosecutor with the internal authority to conduct this prosecution," *id.*, but fails to explain how that person—his ***subordinate***—could have "supervised" his decisions. Those unelaborated assertions do not dispel his "substantial influence" on this case. *Bank of Nova Scotia*, 487 U.S. at 256. Besides, if

19

the Special Counsel does not have jurisdiction, the subordinates in his office do not either, regardless of where they were drawn from.[5]

The cases the Special Counsel cites (at 27-28) offer no support.  In *United States v. Plesinski*, 912 F.2d 1033 (9th Cir. 1990), the improperly appointed prosecutor "did not say or do anything nor did anyone make any reference to him in front of the grand jury."  *Id.* at 1038-39 & n.9.  Similarly, in *United States v. Fowlie*, 24 F.3d 1059 (9th Cir. 1994), the court found no pre-judice where an unauthorized prosecutor played a "minimal" role.  *Id.* at 1066.  Here, by contrast, the Special Counsel was the leader and driving force behind the charges.  *See* p. 19, *supra*.[6]

Courts regularly find prejudice where, as here, an unauthorized prosecutor's involvement in grand jury proceedings is more than trivial.  *See, e.g.*, *State v. Hardy*, 406 N.E.2d 313, 316 (Ind. Ct. App. 1980) (unauthorized prosecutor "active[ly] participat[ed]" in grand jury pro-ceedings); *People v. Munson*, 150 N.E. 280, 283 (Ill. 1925) (indictment "procured directly through the assistance of" unauthorized prosecutor).  No "speculation," Opp. 29, is needed to conclude that the Special Counsel's extensive, unauthorized involvement was, at the least, a "substantial influence."  *Bank of Nova Scotia*, 487 U.S. at 256.[7]  Dismissal is warranted.

## CONCLUSION

The Superseding Indictment should be dismissed.

---

[5] While the Special Counsel claims that "applicable rules" required him to obtain "approv[al]" from the Tax Division, Opp. 28, he offers no evidence the Tax Division **in fact** approved charges, or that the Tax Division would have brought those charges absent his urging.

[6] The remaining cases cited by the Special Counsel (at 28) do not aid him either.  For instance, in *Caha v. United States*, 152 U.S. 211 (1894), and *United States v. Boruff*, 909 F.2d 111 (5th Cir. 1990), errors in signing the indictment were harmless because it was undisputed that the prosecuting attorneys had authority to prosecute.  Here, by contrast, the person who sought the Superseding Indictment in the first place, and signed it, lacked authority.

[7] To the extent there is any doubt about the level of the Special Counsel's participation in the grand jury process, the Court should order production of the grand jury transcripts.  *See* Mot. 24 n.8 (citing *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 443 (1983)).

Dated:   April 16, 2018
          Washington, D.C.

                                      Respectfully submitted,

                                      /s/ Kevin M. Downing
                                      Kevin M. Downing (*pro hac vice*)
                                      601 New Jersey Avenue, N.W.
                                      Suite 620
                                      Washington, D.C.  20001
                                      Telephone: (202) 754-1992
                                      Email: kevindowning@kdowninglaw.com

                                      /s/ Thomas E. Zehnle
                                      Thomas E. Zehnle (VSB # 27755)
                                      601 New Jersey Avenue, N.W.
                                      Suite 620
                                      Washington, D.C.  20001
                                      Telephone: (202) 368-4668
                                      Email: tezehnle@gmail.com

                                      *Counsel for Defendant Paul J. Manafort, Jr.*