**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal No. 1:18-cr-00083-TSE |
| v. | ) | |
| | ) | Judge T. S. Ellis, III |
| PAUL J. MANAFORT, JR., | ) | |
| | ) | ORAL ARGUMENT REQUESTED |
| Defendant. | ) | May 25, 2018 @ 9:00 a.m. |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT PAUL J. MANAFORT, JR.'S MOTION TO SUPPRESS EVIDENCE AND ALL FRUITS THEREOF RELATING TO THE GOVERNMENT'S SEARCH OF THE STORAGE UNIT LOCATED IN ALEXANDRIA, VIRGINIA

Defendant Paul J. Manafort, Jr., by and through counsel, hereby moves the Court pursuant

to Rules 12(b)(3)(C) and 41(h) of the Federal Rules of Criminal Procedure to suppress evidence

and all fruits thereof obtained by the government pursuant to a search warrant issued on May 27,

2017, for the storage unit located in Alexandria, Virginia (the "Search Warrant," attached hereto

as Exhibit A)[1] because: (1) the warrantless initial search of the storage unit for information that

the FBI then used to obtain the Search Warrant violated the Fourth Amendment; (2) the Search

---

[1] The Special Counsel has provided discovery in this matter, including access to search warrants and supporting affidavits, jointly with discovery provided in Criminal No. 17-201-1 (ABJ) pending in the U.S. District Court for the District of Columbia ("the D.C. Case"). As the Court is aware, discovery in the D.C. Case has been produced under a protective order that protects discovery materials from dissemination. Accordingly, in order to provide this Court with access to the documents referenced in this motion, while not running afoul of the protective order in the D.C. Case, defendant is attaching redacted versions of the search warrant, the search warrant affidavit, and a lease agreement to this motion that are identical to the versions filed in connection with a similar motion to suppress in the D.C. Case. Because the relevant search warrant was issued by the U.S. District Court for the Eastern District Virginia, defendant presumes that the Court has access to an unredacted copy of the warrant and affidavit in support. If this is not the case, defendant will seek leave of Court to file a copy of the warrant and affidavit as produced by the Special Counsel into the record in this proceeding under seal.

Warrant itself was unconstitutionally overbroad and allowed federal agents to seize property contained within the storage unit in violation of Mr. Manafort's Fourth Amendment rights; and (3) the agents who executed the search exceeded the warrant's search parameters in violation of the Fourth Amendment.[2]   Accordingly, the evidence obtained from the government's search of the storage unit should be suppressed.  Moreover, because other search warrants later obtained by the government incorporated the fruits of the illegal search of the storage unit, all evidence obtained from those warrants must also be suppressed.[3]

## I.   FACTS

On May 27, 2017, the FBI executed the Search Warrant for the storage unit and seized nine categories of documents and binders.   It was not, however, the first time that the FBI had searched the storage unit.   The day before, May 26, 2017, an FBI Special Agent (the "FBI Agent") conducted a warrantless search of the storage unit after obtaining "consent" from a former low-level employee of Davis Manafort Partners, Inc. ("DMP").   During the time that he was employed by DMP, the employee's responsibilities involved carrying out low-level administrative functions on behalf of that company at the sole direction of Mr. Manafort.   The employee had no actual

---

[2] The warrant is also invalid because the FBI agents who sought and executed the warrant acted pursuant to Acting Attorney General Rosenstein's invalid grant of authority to the Special Counsel, as set forth in his Motion to Dismiss (Dkt. No. 30). As the Supreme Court has recognized,

> where the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions. The officer is not doing the business which the sovereign has empowered him to do or he is doing it in a way which the sovereign has forbidden. His actions are ultra vires his authority and therefore may be made the object of specific relief.

*Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689 (1949).

[3] For example, the search warrant affidavit submitted with the government's application for a warrant to search Mr. Manafort's residence incorporated evidence obtained from the FBI Agent's warrantless initial search of the storage unit.

authority to allow the FBI Agent into the premises, as an experienced law enforcement officer must have known.  The FBI Agent clearly recognized this deficiency, because he did not open any of the containers stored within the premises at that time.  Instead, the FBI Agent entered and observed a number of boxes and a filing cabinet inside the premises, as well as some writing on the sides of some boxes.  He then left the storage facility.  The next day, the FBI Agent prepared and signed an Affidavit in Support of an Application for a Search Warrant (the "FBI Affidavit," attached hereto as Exhibit B).  In his affidavit, the FBI Agent used the information he had obtained during his warrantless search to argue in support of probable cause for a warrant to search the storage unit and seize documents from it.  When the magistrate judge issued the Search Warrant the following day, the FBI Agent's end-run around the Fourth Amendment was complete.  The Search Warrant was executed less than an hour after it was issued, and the FBI seized numerous records contained within the storage unit.

## II.    DISCUSSION

### A.  The FBI's warrantless search of the storage unit violated the Fourth Amendment

#### 1.  Neither Mr. Manafort nor any other authorized person consented to the warrantless initial search of the storage unit

As the FBI Affidavit makes plain, the storage unit contained business records belonging to Mr. Manafort or his business.  (*See* FBI Aff.  ¶¶ 28, 30 (describing "office files of Manafort's business" and "more recent office files of Manafort's business").)  Mr. Manafort maintained a reasonable expectation of privacy in the storage unit, which had been locked (*see id.* ¶ 30), and the FBI Agent's intrusion into the premises prior to obtaining a valid search warrant constituted a search within the meaning of the Fourth Amendment.  *See, e.g.*, *Garcia v. Dykstra*, 260 Fed. App'x 887, 897 (6th Cir. 2008).  In *Garcia*, the court determined that law enforcement intrusion into a locked storage unit constituted a search, reasoning:

> [a]lthough an individual may not maintain a legitimate expectation of privacy in the lock on a door on the theory that a lock exposed to a public hallway is available to testing by anyone, he may reasonably expect that the contents of a closed, locked storage unit within a gated storage complex will remain free from public inspection.

*Id.* As the Fourth Circuit articulated in *United States v. Block*, 590 F.2d 535 (4th Cir. 1978):

> [c]ommon experience of life, clearly a factor in assessing the existence and the reasonableness of privacy expectations, surely teaches all of us that the law's 'enclosed spaces' mankind's valises, suitcases, footlockers, strong boxes, etc. are frequently the objects of his highest privacy expectations[.]

*Id.* at 541.

Of course, a warrantless search is "presumptively unreasonable." *United States v. Patiutka*, 804 F.3d 684, 688 (4th Cir. 2015). "A search conducted without a warrant issued by a judge or magistrate upon a showing of probable cause is 'per se unreasonable' unless it falls within one of the 'specifically established and well-delineated exceptions' to the warrant requirement." *United States v. Simons*, 206 F.3d 392, 399–400 (4th Cir. 2000) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). Accordingly, unless an exception to the presumptive rule applies, the initial search conducted by the FBI Agent – prior to seeking judicial authorization to search the storage unit – was unlawful.

In this case, the sole applicable exception to the rule stated above would be third-party consent. *See generally United States v. Matlock*, 415 U.S. 164 (1974); *United States v. Buckner*, 473 F.3d 551, 554 (4th Cir. 2007). In an effort to use the evidence ultimately seized from the storage unit against Mr. Manafort at trial – *after* the FBI Agent had used information gleaned from his warrantless search to obtain the Search Warrant – the Special Counsel must rebut the presumption of unreasonableness by arguing that the former employee had legal authority to permit the FBI Agent to enter the storage unit and that he consented to the search. But the former

employee had no such authority, and the FBI Agent's purported belief that the former employee could consent to a search was unreasonable.

The Search Warrant was fundamentally flawed from the outset because the FBI Agent knew when he conducted the warrantless search of the storage unit that he had not obtained valid consent to do so. The *former DMP employee* had no authority to consent to a search of DMP's property without Mr. Manafort's direction, and Mr. Manafort was not in fact contacted for permission to do so. And any reliance by the government on rental company paperwork is misplaced; this document establishes that when the storage unit was leased, it was on done on behalf of DMP, with the former employee's *DMP email address* clearly identified.[4] Because the initial warrantless search violated the Fourth Amendment and formed the basis for the government's subsequent application for a warrant to search that storage unit and seize its contents, the Search Warrant should have never been issued, and all evidence that the government obtained from the FBI's second search of the premises, and the fruits thereof, should be suppressed. *See generally Wong Son v. United States*, 371 U.S. 471 (1963); *United States v. Najjar*, 300 F.3d 466, 477 (4th Cir. 2002).

### 2. The former employee had no authority to consent to the initial search

#### a) *The former employee did not have common authority*

Absent actual authority, only persons with "common authority over … the premises" may consent to a search of that premises. *Matlock*, 415 U.S. at 171. Common authority is narrowly defined as:

> mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize

---

[4] A copy of the lease agreement for the storage unit is annexed hereto as Exhibit C.

> that any of the co-inhabitants has the right to permit the inspection
> in his own right and that the others have assumed the risk that one
> of their number might permit the common area to be searched.

*Id.* at 171 n.7. The burden of establishing common authority with regard to third-party consent to search property rests with the government. *See Illinois v. Rodriguez*, 497 U.S. 177, 181-82 (1990). As the Fourth Circuit has explained,

> third person consent, no matter how voluntarily and unambiguously
> given, cannot validate a warrantless search when the circumstances
> provided no basis for a reasonable belief that shared or exclusive
> authority to permit inspection exists in the third person from any
> source, nor even more certainly, when the circumstances manifest
> to the contrary that the absent target of the search retains an
> expectation of privacy in the place or object notwithstanding some
> appearance or claim of authority by the third person[.]

*Block*, 590 F.2d at 540 (internal citations omitted). In *Block*, the court suppressed the fruits of a police search of the defendant's footlocker despite the fact that his mother, with whom he resided, had consented to the search. *Id.* at 542. Critically, "'[c]ommon authority' in this context is not merely a question of property interest. Rather, it requires evidence of 'mutual use' by one generally having 'joint access or control for most purposes.'" *Buckner*, 473 F.3d at 554 (quoting *Matlock*, 415 U.S. at 171 n.7). Mutual use *and* joint access are *both* required to validate a search based on the common authority of a third party consenter. *See, e.g.*, *United States v. Whitfield*, 939 F.2d 1071, 1074 (D.C. Cir. 1991) (suppressing fruits of search and finding that even if the government bore its burden of proving joint access, it failed to prove mutual use). Importantly, third party authority to consent to a search "does not exist *where it is uncertain* that the property is in fact subject to mutual use." *United States v. Peyton*, 745 F.3d 546, 554 (D.C. Cir. 2014) (footnote omitted; emphasis added).

Based on his sworn affidavit, the FBI Agent could not have proceeded with a reasonable belief that the former employee and Mr. Manafort mutually used the storage unit after he learned

that he was no longer an employee of DMP. Nothing that the former employee purportedly stated to the FBI Agent can be construed as an indication that he ever shared use of the storage unit with Mr. Manafort. Rather, the FBI Affidavit makes it abundantly clear that the storage unit was used exclusively for the storage of Mr. Manafort's business records and that it did not contain any property that belonged to the former employee. Indeed, the FBI Affidavit states that the former employee described the contents of the premises as the "office files of Manafort's business" (FBI Aff. ¶ 28), as well as "additional, more recent office files of Manafort's business[.]" (FBI Aff. ¶ 30.) In fact, the former employee was unable to provide the FBI Agent with a description of the contents of the filing cabinet stored in the premises but only stated that he would put "brown, legal-sized files" into the cabinet at Mr. Manafort's direction. (*Id.*) He also explained to the FBI Agent that the filing cabinet stored inside the premises had come from Mr. Manafort's former residence. (*Id.*) Not once in his affidavit does the FBI Agent identify a single item of property that belonged to the former employee and that was contained, or might have been contained, within the storage unit. In short, *nothing* that the former employee stated to the FBI Agent when he described the contents of the storage unit could have caused the FBI Agent to reasonably believe that the unit was a space that Mr. Manafort and the former employee mutually shared. Thus, the FBI Agent had no legitimate basis to reasonably believe that the former employee had common authority to consent to the warrantless initial search of the storage unit.

Indeed, the fact that the FBI Agent knew that the former DMP employee had no common authority to consent to a search of the storage unit is revealed by the steps the FBI Agent took once he gained initial access to the unit. Rather than conducting a search and seizure based on a belief that the former DMP employee had actual authority to consent to such a search – which the law would have clearly permitted in the case of a valid and voluntary consent – the FBI Agent took

care not to open any of the boxes or the filing cabinet that he observed inside the unit. (*See id.* ¶ 31.) Instead, the FBI Agent completed his initial search, left the storage facility, returned to his office, and drafted the search warrant affidavit to establish probable cause using the information he gathered during the warrantless entry to justify the second search of the premises. Had the FBI Agent truly believed that the informant had the authority to consent to the initial search, there would have been no reason for the FBI Agent to apply for a search warrant to allow him to search the storage unit a second time.

### b) *The former employee did not have apparent authority*

Absent actual common authority, a person with apparent authority may authorize a search, provided that law enforcement reasonably believes that the person is authorized to do so. *See Buckner*, 473 F.3d at 555. However, "[a]pparent authority ends when it is no longer reasonable for the third party with whom an agent deals to believe that the agent continues to act with actual authority." Restatement (Third) of Agency: Termination of Apparent Authority § 3.11(2) (2006). As the Fourth Circuit has explained "[a]pparent authority results from a *principal's manifestation of an agent's authority to a third party*, regardless of the actual understanding between the principal and agent." *Auvil v. Grafton Homes, Inc.*, 92 F.3d 226, 230 (4th Cir. 1996) (emphasis added).

Here, Mr. Manafort never expressed anything to the FBI Agent with regard to what the former DMP employee was authorized to do (or not do) on behalf of DMP, or any other business. Mr. Manafort and the FBI Agent have never communicated with each other. Moreover, the FBI Agent stated in his affidavit that he accompanied the former DMP employee to the storage facility and that, after they arrived, he reviewed a copy of the lease agreement that identified the informant as the storage unit's occupant. (*See* FBI Aff. ¶ 29.) But the FBI Agent also acknowledges that

he knew that that the informant was no longer employed by DMP. (*See id.* ¶ 28 ("your Affiant met with [him], a *former employee* of [DMP.]") (emphasis added).) It was entirely unreasonable for the FBI Agent to have believed at the time he visited the storage facility that the *former* DMP employee had the authority to consent to a search of the storage unit for DMP records. Indeed, there is nothing in the FBI Affidavit to suggest that the FBI Agent undertook to learn the nature of the former DMP employee's new position at Steam Mountain, LLC, or whether the former DMP employee's current duties for that entity had any connection to his prior duties for DMP, or even whether Steam Mountain, LLC itself had any meaningful connection to DMP. Lastly, the FBI Agent knew that the premises contained Mr. Manafort's – *not* the former employee's – business records, (*see id.*), rendering any belief by the FBI Agent that the former employee had authority to consent to a search of the storage unit unreasonable.

Once the FBI Agent knew that the former employee could not legally enter the storage unit without Mr. Manafort's direction and consent, the FBI Agent could not have reasonably believed that the former employee had apparent authority to do so. This is so because "the facts available to the officer" at the time of a consent search must "warrant a person of reasonable caution in the belief that the consenting party had authority[.]" *Buckner*, 473 F.3d at 555 (citation, internal quotation marks, and internal brackets omitted). Here, the government cannot carry its burden by referring to the facts as the FBI Agent understood them unless the agent had sufficient facts at his disposal to draw a reasonably well-informed judgment as to the third party's authority to consent. As the court in *Whitfield* explained:

> [t]he burden cannot be met if agents, faced with an ambiguous situation, nevertheless proceed without making further inquiry. If the agents do not learn enough, if the circumstances make it unclear whether the property about to be searched is subject to mutual use by the person giving consent, then warrantless entry is unlawful *without further inquiry*. . . .

*Whitfield*, 939 F.2d at 1075 (internal quotation marks omitted) (emphasis in original). In other words, if the FBI Agent did not adequately investigate the nature of the third party's authority, then he cannot be justified in concluding that the third party had authority.

Again, there cannot be apparent authority for a third party's consent to a search unless the searching officer is certain that the premises to be searched is subject to mutual use by the third party and the target of the search. *Peyton*, 745 F.3d 554. The "facts available to the officer at the moment," *Rodriguez*, 497 U.S. at 178 (quoting *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968)), include facts that the FBI Agent should have uncovered. Here, the facts that the FBI Agent knew amply demonstrated that the third party acted only "as directed by Manafort" (*see* FBI Aff. ¶ 28), and that he entered the storage unit only "at Manafort's direction" (*id*. at 30); therefore, the informant lacked authority to consent, and the FBI Agent had a duty to take reasonable investigative steps to confirm his authority. This, he did not do before engaging in a warrantless search.

Indeed, the Special Counsel has presented no evidence, whether in the FBI Affidavit or elsewhere, that the FBI Agent took any steps to investigate the nature of the former DMP employee's authority. This would not have required any unusual sleuthing and undercuts any after-the-fact claim of "good faith" justifying an exception to the exclusionary rule. For example, an agent who was truly interested in learning whether he could validly solicit consent from the third party would, *at a minimum*, have asked the third party whether he was allowed to enter the storage unit without permission from Mr. Manafort; whether he was authorized to store his own property in the unit; whether he was authorized to let others into the unit; whether he and Mr. Manafort had ever discussed the nature of the third party's authority; why his name and not Mr. Manafort's was on the lease; whether his duties changed when he left DMP; among other things. In *Whitfield*, the court disapproved of an agent's failure to ask just such questions:

> As a factual matter, the agents could not reasonably have believed Mrs. Whitfield had authority to consent to this search. The agents simply did not have enough information to make that judgment. . . . Whether she had "mutual use" of the room or the closet containing the defendant's clothing could not be determined from anything the agents asked . . . . The agents never asked Mrs. Whitfield whether she cleaned her son's room, visited with him there, stored any of her possessions in the room, watched television there, or made use of the room at any time for any purpose . . . . The agents' superficial and cursory questioning of Mrs. Whitfield did not disclose sufficient information to support a reasonable belief that she had the authority to permit this search. The agents could not infer such authority merely from her ownership of the house.

939 F.2d at 1074-75.

In *United States v. Corral*, 339 F. Supp.2d 781 (W.D. Tex. 2004), the court suppressed evidence seized from a home where the purported consent to a warrantless search came from a part-time domestic housekeeper. *Id.* at 799. Prior to the search, the housekeeper told federal agents that she was in charge of the homeowner's child when the homeowner was absent and that the homeowner allowed her to clean (and thereby access) the entire premises on a regular basis. *Id.* at 785-86. The court reasoned that these "minimal facts" had been insufficient to provide a basis for the agents to reasonably believe that the housekeeper had apparent authority to consent to a search of the home. *Id.* at 796. In *Boyer v. Peterson*, 221 F. Supp.3d 943 (W.D. Mich. 2016), the court concluded that a spouse did not have apparent authority to consent to a search of a home despite being a co-owner of the property where the spouse was no longer a co-occupant of the home, a fact known to the police at the time of the search. *Id.* at 957. The court noted that the searching officer's reliance on the spouse "as the 'owner' and 'deed-holder' was not sufficient to conclude that the spouse had 'actual' or 'apparent' authority over the residence" because "[a] third-party's 'common authority' is not synonymous with a technical property interest." *Id.* (quoting *Georgia v. Randolph*, 547 U.S. 103, 110 (2006)). In *United States v. Toan Phuong Nghe*, 925 F.

Supp. 2d 1142 (W.D. Wash. 2013), the court held that it was unreasonable for police officers to conduct a warrantless search of a hotel room despite the fact that the hotel manager had consented to the search, because the manager did not have apparent authority to consent to the search even though he had given the officers a key to the hotel room. *Id.* at 1147.

In this case, the FBI Agent overstepped the confines of the Fourth Amendment in his warrantless search, and any reliance by the government on the concept of apparent authority is not supported based on the agent's own affidavit. Although the former DMP employee retained a key to a storage unit that contained DMP's property and papers, he was no longer a DMP employee per the FBI Affidavit. Indeed, the mere fact that the former DMP employee still appeared on the lease agreement did not confer on him the apparent authority to consent to a search of the unit when the FBI Agent was specifically told that the informant was permitted to enter the premises only *at Mr. Manafort's direction*. (*See* FBI Aff. ¶ 30.) The fact that the FBI Agent did not ask the former DMP employee reasonable follow-up questions and include that information for the magistrate judge to review in the subsequent application for a search warrant, speaks volumes. Just as in *Boyer*, *supra*, a technical property interest is not the same as having actual or apparent authority over the premises to be searched. For these reasons, the Court should conclude that the informant did not have apparent authority to allow the FBI Agent to conduct the warrantless initial search of the storage unit.

### 3. Suppression is the appropriate remedy for the warrantless initial search

The appropriate remedy is suppression of all evidence seized by the government from the premises and the fruits thereof. *See United States v. Gaines*, 668 F.3d 170, 173 (4th Cir. 2012) (citing *United States v. Andrews*, 577 F.3d 231, 235 (4th Cir. 2009)). Suppression is required

where "a causal relationship exists between [the Fourth Amendment] violation and the discovery of evidence sought to be excluded." *United States v. Clark*, 891 F.2d 501, 505 (4th Cir. 1989).

Here, the causal connection between the government's violation of the Fourth Amendment and the evidence it obtained from the initial search is clear. But for the impermissible warrantless initial search of the storage unit, the FBI Agent would have had scant knowledge of its specific contents and could not have satisfied the particularity requirement to keep this from being an unconstitutional general search and seizure warrant. Because the FBI Agent would not have been in a position to swear out an affidavit to establish probable cause for a warrant to search the storage unit, the Search Warrant would have never been issued and the materials would have never been seized. There is no basis alleged here for the government to argue the concepts of inevitable discovery, or discovery by independent means, nor is there a factual basis to argue that any subsequent action purged the taint of the unconstitutional warrantless search. Accordingly, all evidence that the government seized from the storage unit, and the fruits thereof, must be suppressed.

### B. The Search Warrant was unconstitutionally overbroad

#### 1. The Search Warrant was an impermissible "all documents" warrant

Even if the Search Warrant was not invalid in light of the FBI's warrantless search, it was fatally overbroad in scope because it allowed the searching agents to indiscriminately seize items and evidence from the storage unit. The Fourth Amendment simply does not permit the warrant that was issued in this case, which was essentially a general warrant for "any and all" documents without any temporal limitation. The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or

affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. The purpose of the Fourth Amendment's warrant clause is to ensure that "those searches deemed necessary should be as limited as possible." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). "[T]he specific evil" in this case "is the 'general warrant' abhorred by the colonists, and the problem is not the intrusion per se, but of a general, exploratory rummaging in a person's belongings." *Coolidge*, 403 U.S. at 467; *see also Arizona v. Grant*, 556 U.S. 332, 345 (2009) ("[T]he central concern underlying the Fourth Amendment [is] the concern about giving police officers unbridled discretion to rummage at will among a person's private effects."); *United States v. Young*, 260 F. Supp. 3d 530, 546 (E.D. Va. 2017) ("The Framers included the particularity requirement to end the practice of issuing general warrants[.]"). The Constitution limits law enforcement's rights to search only "the specific areas and things for which there is probable cause to search," and requires "that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). Thus, the Fourth Amendment requires that warrants "identif[y] the items to be seized by their relation to the designated crimes" such that "the description of the items leaves nothing to the discretion of the officer executing the warrant." *United States v. Williams*, 592 F.3d 511, 519 (4th Cir. 2010).

The Search Warrant in the case at bar fell short of the constitutional requirements set out above. The Search Warrant directed the seizure of, *inter alia*, "*[a]ny and all* financial records" related to Mr. Manafort or any companies associated with him, (*see* Search Warrant, Attachment B, ¶ 1a. (emphasis added)), "*[a]ny and all* federal and state tax documentation, including but not limited to personal and business tax returns and all associated schedules" (*id.* ¶ 1b. (emphasis

added)), all communications related to "*any* foreign financial institution," (*id.* ¶ 1b[5]. (emphasis added)), "*[a]ny and all* correspondence, communication, memorandum or record of *any kind* relating to*" Mr. Manafort's work, (*id.* ¶ 1c. (emphases added)), "*any and all* daily planners, logs, calendars, schedule books", (*id.* ¶ 1g. (emphasis added)), and "[c]omputers or storage media" that the executing agents were somehow able to recognize during their search as having been used in connection with the offenses under investigation, (*id.* ¶ 2.).

As set out above, the Search Warrant functioned as a general warrant that authorized an unfettered search and seizure of documents contained within the storage unit. It violated the core purpose of the particularity requirement which "protects against general warrants that authorize exploratory rummaging … by requiring a particular description of the things to be seized." *Williams*, 592 F.3d at 519 (citing *Andresen v. Maryland*, 427 U.S. 463, 480 (1976)). As one appellate court recently observed, this is especially true where law enforcement agents are not seeking illegal contraband but are instead searching for and seizing purely innocuous items such as documents or electronic devices. *See United States v. Griffith*, 867 F.3d 1265, 1276 (D.C. Cir. 2017) (finding warrant that permitted seizure of "all electronic devices" unconstitutionally overbroad); *see also United States v. Gray*, 78 F. Supp. 2d 524, 528-29 (E.D. Va. 1999) (observing that "documents, unlike illegal drugs or contraband, may not appear incriminating on their face" and that "care must be taken to minimize the intrusion[.]").

**2. The Search Warrant for the storage unit bore no temporal limitation**

For a search warrant to be valid, it must provide the executing agents with guidance as to the time frame for which the agents are to seize evidence. In other words, if the Special Counsel is investigating potential offenses for the years 2006 through 2017, then the search warrant must

---

[5] Attachment B to the Search Warrant contains two sections labeled "1b.".

limit agents to searching for and seizing evidence that relates to offenses for those years. This Search Warrant lacked any temporal limitation at all, making it impermissibly broad and leaving the decision of what to seize to the discretion of the agents.

The Fourth Amendment requires that "those searches deemed necessary should be as limited as possible." *Coolidge*, 403 U.S. at 467. "Failure to limit broad descriptive terms by relevant dates, when such dates are available to the police, will render a warrant overbroad." *United States v. Ford*, 184 F.3d 566, 576 (6th Cir. 1999). The relevant dates were manifestly available to the agents in this case. Indeed, in the affidavit the FBI Agent states that the investigation of Mr. Manafort had begun in 2014 (*see* FBI Aff. ¶ 5.); it is inconceivable that the government was unable to specify a time frame for the search given that its agents had allegedly been examining the defendant's actions for almost *three years* prior to the search. Moreover, the other warrants that the government executed in this case do provide a temporal limitation, implicitly acknowledging the fatal flaw in this search warrant application. As noted above, the warrant's descriptive terms were impermissibly broad by their own right, authorizing the seizure of "[a]ny and all financial records for Paul Manafort, Richard Gates or companies associated with Paul Manafort or Richard Gates." (Search Warrant, Attachment B ¶ 1a.) Unbound by any time frame, a warrant that authorizes the seizure of any and all financial records of the targets of the investigation for any and all years is a general warrant that is repugnant to and violative of the Fourth Amendment.

Federal courts have repeatedly pointed to the absence of a temporal limitation as an indicator of a warrant's unconstitutional overbreadth. *See, e.g.*, *United States v. Blake*, 868 F.3d 960, 974 (11th Cir. 2017) ("[T]he warrants should have requested data only from the period of time during which Moore was suspected of taking part in the prostitution conspiracy."); *In re 650*

*Fifth Ave. & Related Props.*, 830 F.3d 66, 84 (2d Cir. 2016) ("Nor does the warrant place any temporal limit on the property to be seized."); *United States v. Yusuf*, 461 F.3d 374, 395 (3d Cir. 2006) (finding a search warrant valid in part because it was restricted to a fixed time period); *United States v. Abboud*, 438 F.3d 554, 576 (6th Cir. 2006) (invalidating a warrant that was limited to a six-year period on the ground that probable cause only supported the seizure of evidence pertaining to a three-month period); *United States v. Kow*, 58 F.3d 423, 427 (9th Cir. 1995) (finding one factor in the overbreadth analysis to be the government's failure to "limit the scope of the seizure to a time frame within which the suspected criminal activity took place, even though [the] affidavit indicates that the alleged criminal activity began relatively late in [the business's] existence."); *United States v. Leary*, 846 F.2d 592, 604 (10th Cir. 1988) (warrant impermissibly failed to limit itself to the "specific period of time coincident to the suspect transaction"); *United States v. Abrams*, 615 F.2d 541, 543 (1st Cir. 1980) (finding warrant overbroad in part because it contained "no limitation as to time").

According to his affidavit, during the warrantless initial search the FBI Agent observed file boxes bearing dates going back 30 years, (*see* FBI Aff. ¶ 36), demonstrating that the government knew that the storage unit contained materials predating the years identified as being under investigation by *more than two decades*. Despite this, nothing in the Search Warrant limited the agents' seizure of materials based on their temporal relevance to the Special Counsel's investigation. With this temporally-unbound warrant in hand, the agents did not need to spend any time determining which materials were relevant to the years under investigation, which is evident from the relative swiftness in which this search and seizure was accomplished

Moreover, the FBI Affidavit cannot save this defective warrant. The Supreme Court has made clear that the Fourth Amendment's particularity requirements must be satisfied "in the

warrant, *not in the supporting documents*." *Groh v. Ramirez*, 540 U.S. 551, 557 (2004) (emphasis added).   A court may only "construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant." *Id*. at 557–58.   In the Fourth Circuit, a supporting affidavit must either be incorporated into a search warrant by reference or "be attached to the warrant itself."   *United States v. Hurwitz*, 459 F.3d 463, 471 (4th Cir. 2006).   Here, the Search Warrant did not incorporate the FBI Affidavit, nor was the FBI Affidavit attached to the Search Warrant, rendering it a general warrant for all financial documents covering any time period.

**C.   The executing agents improperly seized materials beyond the warrant's scope and returned a search inventory so general as to violate the requirement of an inventory**

Even where the particularity requirement is satisfied – and here it was not – "[i]t is axiomatic that a 'search conducted pursuant to a warrant is limited in scope by the terms of the warrant's authorization.'"   *United States v. Kimble*, 855 F.3d 604, 610 (4th Cir. 2017) (quoting *United States v. Phillips*, 588 F.3d 218, 223 (4th Cir. 2009)).   The Constitution requires "that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit."   *Maryland v. Garrison*, 480 U.S. 79, 84 (1987).   As this Court has observed, a search warrant "must enable the executing officer to ascertain and identify with reasonable certainty those items that the magistrate has authorized him to seize, and thus prevent the seizure of one thing under a warrant describing another."   *United States v. Hoang Anh Thi Duong*, 156 F. Supp. 2d 564, 571 (E.D. Va. 2001) (citations and quotation marks omitted).   This requirement prevents law enforcement officials from disregarding the limits set forth in a warrant by conducting a "fishing expedition or a general, exploratory rummaging in a person's belongings once the police have gained access to the home."   *Id.* at 572 (citation and quotation marks omitted).   As the Fourth Circuit has explained, "the seizure of items not described

in the warrant violates the Fourth Amendment – and the items should be suppressed – unless an exception to the warrant requirement applies." *United States v. Legg*, 18 F.3d 240, 242 (4th Cir. 1994).

The agents that executed the Search Warrant in this case ran afoul of the above principle and seized far beyond what the Search Warrant allowed. This is clear from the Search Warrant Return inventory, which simply lists nine categories of unidentified "documents" seized by the agent (with the exception of line item #1, which lists a category of unidentified "documents and binders"). (*See* Search Warrant Return.) Accordingly, the searching agents improperly seized far in excess of what they were authorized to seize, without regard for which "documents" and "binders" they were authorized, or not authorized, to take.

In addition, Rule 41 of Federal Rules of Criminal Procedure sets forth procedures that the government must follow when seeking and executing search and seizure warrants. After executing a search warrant, "[a]n officer present during the execution of the warrant must prepare and verify an inventory of any property seized." Fed. R. Crim. P. 41(f). As noted above, after searching the premises, the agents prepared a document that purported to be an inventory but which was instead a perfunctory statement that the FBI seized "documents" and "documents and binders." This description fails entirely to inform either "the person from whom, or from whose premises, the property was taken," or the Court what the agents seized. *Id.*

Courts analyze alleged violations of Rule 41 by first considering if the Rule was in fact violated and, if it was, determining whether the violation rose to a violation of the Fourth Amendment. *See United States v. Krueger*, 809 F.3d 1109, 1113 (10th Cir. 2015). Here, the purported inventory was so devoid of description as to be a violation of Rule 41.

A search and seizure that leaves the subject without a reasonable description of what was seized is an unreasonable search and seizure in violation of the Fourth Amendment and requires suppression of the fruits of the seizure. In the alternative, if a court

> determine[s] that the Rule 41 violation is not of constitutional import, [it] then consider[s] whether the defendant can establish that, as a result of the Rule violation, (1) there was prejudice in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule.

*Id.* at 1114. Here, the inventory is so bare as to rise to the level of an intentional and deliberate disregard of Rule 41, and thus suppression is warranted.

### D. All evidence seized from the storage unit should be suppressed

Evidence seized in violation of the Fourth Amendment, as well as the fruits thereof, is subject to suppression. *See Herring v. United States*, 555 U.S. 135, 139 (2009) (holding that the exclusionary rule forbids use of improperly obtained evidence at trial). The primary purpose of the exclusionary rule "is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures." *United States v. Calandra*, 414 U.S. 338, 347 (1974). *See also United States v. Oscar-Torres*, 507 F.3d 224, 227 (4th Cir. 2007) (exclusionary rule precludes "evidence obtained during illegal police conduct" and "evidence that is the indirect product of the illegal activity.") (citations omitted).

In this case, without the FBI Agent's illegal and warrantless initial search, the Search Warrant in this case would have never been issued, and the evidence from the storage unit would have never been seized. When the Search Warrant was issued, it was impermissibly overbroad; and even if it was sufficiently particularized, the agents ignored its scope and improperly seized virtually everything from the premises. Accordingly, the exclusionary rule should be applied, and the evidence from the storage unit suppressed, because the Search Warrant was fundamentally

flawed from the outset, it was insufficiently particularized and, even it did not suffer these infirmities, it was executed in an impermissibly overbroad fashion.

## III.  CONCLUSION

Wherefore, Mr. Manafort respectfully moves the Court to suppress the evidence seized and all fruits of the government's search of the storage unit on the grounds stated herein.

Dated: April 30, 2018

Respectfully submitted,

s/ Kevin M. Downing
Kevin M. Downing (*pro hac vice*)
Law Office of Kevin M. Downing
601 New Jersey Avenue NW
Suite 620
Washington, DC 20001
(202) 754-1992
kevindowning@kdowninglaw.com


s/ Thomas E. Zehnle
Thomas E. Zehnle (VSB No. 27755)
Law Office of Thomas E. Zehnle
601 New Jersey Avenue NW
Suite 620
Washington, DC 20001
(202) 368-4668
tezehnle@gmail.com

*Counsel for Defendant Paul J. Manafort, Jr.*