# EXHIBIT C

## LEASE/RENTAL AGREEMENT

THIS LEASE/RENTAL AGREEMENT is executed this __3/26/2015__, by and between Public Storage (as owner or agent for owner "Owner") of the self storage facility, Tax ID# ▓▓▓▓▓▓ , at ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (as "Occupant"), whose address and alternate contact address are as follows:

| | |
|---|---|
| ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ | Richard Gates |
| Occupant Address | Alternate Contact Name |
| | ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ |
| | Alternate Address |
| Alexandria, VA, 22309-3218 | Richmond, VA, 23226-1733 |
| Occupant City/State/Zip Code | Alternate City/State/Zip Code |
| ▓▓▓▓▓▓▓▓  ▓▓▓▓▓▓▓▓ | ▓▓▓▓▓▓▓▓ |
| Occupant Telephone    ID/Driver's License | Alternate Telephone |
| ▓▓▓@dmpint.com | Paul Manafort |
| Occupant Email Address for Electronic Communication | Occupant's Authorized Access Persons |

Premises: Enclosed/Parking Space No. __3013__  (**approximately** __10x25__ )  Account# __20342949__   **Facility#** __08385__   **Lease#** __12744989__

FEES AND CHARGES:

__$332.00__  Monthly Rent (Due on or before 1st of Month)         __$66.40__  Late Charge after __6__ th of the Month
__$22.00__   New Account Administration Fee (Non-Refundable)      __$62.50__  Lien Fee after ( 31 ) Days (Whether or not Sale Occurs)
__$25.00__   Dishonored Check Charge                               __$130.00__ Lien Sale Fee

By **INITIALING HERE** ▓▓▓ Occupant acknowledges that the above information is correct, that unless Occupant is identified above as a business Occupant is a consumer, that all payments are due before the close of business on the day indicated to be applied to the oldest delinquency first, including late charges and other fees which have become due, that Occupant understands and agrees to pay the charges, fees and Rent as noted above and that Owner reserves the right to require that Rent, fees and charges be paid in cash, certified check or money order.

It is agreed by and between Owner and Occupant:

1. PURPOSE AND DESCRIPTION OF PREMISES. For the consideration stated above, the Owner agrees to let the Occupant use and occupy a space in the self-service storage facility known as Public Storage, located in the City identified above, State of Virginia, and more particularly described as the Enclosed/Parking Space Number indicated, along with its approximated size, above and as further described below (hereinafter the "Premises" or "Space") which, as used in this Lease/Rental Agreement, means that part of the self-service storage facility described above containing similar rented spaces and common areas for the use of Occupant and other occupants (the entire self service storage facility is hereinafter referred to as the "Property") and with the express understanding and agreement that **no bailment or deposit of goods for safekeeping is intended or created hereunder. Occupant shall examine the Premises and the Property and, by INITIALING HERE** ▓▓▓ **acknowledges that space size is estimated per Building Office Management Association standards and does not refer to usable space, that the size of the Premises and any referenced sizes are approximate, given for illustration only and may vary materially, that Occupant has had the opportunity to measure the Premises prior to moving in, and that the Premises and the common areas of the Property are satisfactory for all purposes for which Occupant shall use the Premises and the Property including the size and capacity of the Premises.** Occupant shall have access to the Premises and the common areas of the Property only during the Property's posted hours and days of operation. This access is conditioned on the Owner's ability to maintain the business, rentability, safety, or security of the Premises and the Property, and if such ability is compromised, the Owner may take reasonable preventative or corrective measures such as, but not limited to, restricting access hours and requiring verification of Occupant's identity. The person(s) listed above as "Authorized Access Persons" is/are solely agents of the Occupant and is/are not parties to this Lease/Rental Agreement, has/have no rights of tenancy or standing to bring any claim, or to file suit from occurrences arising from the use of the storage space.

2. RENT; TERM. The term of this Lease/Rental Agreement shall commence as of the date written above and shall continue from the first day of the month immediately following on a month-to-month basis until terminated. Occupant shall pay Owner as a monthly Rent, without deduction, prior notice, demand or billing statement, the sum noted above (plus any applicable tax imposed by any taxing authority) in advance on the first day of each month. If the term of this Lease/Rental Agreement shall commence other than on the first day of the month, Occupant shall pay a full month's Rent for the first month and shall owe a pro rata portion of the second month's Rent. Occupant understands and agrees that under no circumstances will Occupant be entitled to a refund of the first month's Rent paid upon execution of the Lease/Rental Agreement. Also, Occupant shall not be entitled to a refund of a pro rata portion of the Rent for the month in which the termination occurs. If any monthly installment is not paid by the fifteenth (15th) of the month due, or if any check given in payment is dishonored, Occupant shall be deemed to be in default. The monthly Rent, amounts and type of other Fees and/or Charges, as well as any other term of this Lease/Rental Agreement, may be adjusted by Owner effective the month following written notice by Owner to Occupant specifying the adjustment, which such notice shall be given not less than thirty (30) days prior to the first day on which the adjustment shall be effective. Any such adjustment shall not otherwise affect other terms of this Lease/Rental Agreement and all other terms of this Lease/Rental Agreement shall remain in full force and effect.

VA11202013

3(a). OWNER'S LIEN; DEFAULT. **Pursuant to Va. Code Ann. §§ 55-416** *et seq.* **and any contractual liens, Owner has a lien on all personal property stored within the Premises for rent, labor, and other charges, and for expenses reasonably incurred in the sale or other disposition of the personal property. If Occupant defaults in the payment or Rent or any other obligation in this Lease/Rental Agreement, Owner may deny Occupant the right to enter the Premises and the right to have access to the personal property stored therein. The Owner may then enforce the lien and the personal property stored in the Premises may be sold or otherwise disposed of to satisfy the lien. Prior to the lien sale, Owner will mail Occupant lien notices and advertise the lien sale in a local newspaper and/or on www.publicstorageauctions.com. By INITIALING HERE** ▇▇▇ , Occupant acknowledges that he has read and understands Owner's lien.

3(b). ABANDONMENT. Any personal property of Occupant which shall remain in or on the Premises or at the Property after the expiration or termination of this Lease/Rental Agreement (other than the termination of this Lease/Rental Agreement while a default by Occupant exists) shall be considered abandoned at the option of Owner and, if abandoned, Owner may sell, destroy or otherwise dispose of Occupant's property.

4. APPLICABLE LAW; JURISDICTION; VENUE; TIME TO BRING CLAIMS. This Lease/Rental Agreement shall be governed and construed in accordance with the laws of the state in which the Premises are located. If any provision of this Lease/Rental Agreement shall be invalid or prohibited under such law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of the Lease/Rental Agreement. **The parties agree that in view of the limitations of value of the stored goods as provided in paragraph 5 below and the limitations as to Owner's liability as provided in paragraph 7 below, the value of any claim hereunder is limited to $5,000 and, accordingly, any action for adjudication of a claim shall be heard in a court of limited jurisdiction such as a small claims court.** Any claim, demand, or right of Occupant, and any defense to a suit against Occupant, that arises out of this Lease/Rental Agreement, or the storage of property hereunder (including, without limitation, claims for loss or damage to stored property) shall be barred unless Occupant commences an action (or, in the case of a defense, interposes such defense in a legal proceeding) within twelve (12) months after the date of the act, omission, inaction or other event that gave rise to such claim, demand, right or defense. By **INITIALING HERE** ▇▇▇ , Occupant acknowledges that he understands the provisions of this paragraph and agrees to these provisions

5. USE OF PREMISES AND PROPERTY AND COMPLIANCE WITH LAW. The space named in the agreement is to be used by the Occupant solely for the purpose of storing any personal property belonging to the Occupant. Because the value of the personal property may be difficult or impossible to ascertain, **Occupant agrees that under no circumstances will the total value of all personal property stored in the Premises exceed, or be deemed to exceed, $5,000. Occupant acknowledges and agrees that the Premises and the Property are not suitable for the storage of heirlooms or precious, invaluable or irreplaceable property such as, but not limited to, books, records, writings, contracts, documents, personalized or other DVDs or videos, works of art, objects for which no immediate resale market exists, objects which are claimed to have special or emotional value and records or receipts relating to the stored goods. Occupant agrees that the value of any such items shall not exceed for any purpose the salvage value of the raw materials of which the item is constituted.** Occupant agrees not to store any explosives or any highly inflammable goods or any other Hazardous Materials (as defined below) which would cause danger to the space, Premises, or Property or to store any improperly packaged food or perishable goods and other inherently dangerous material in the Premises or the Property and shall not store any personal property on the Premises which would result in the violation of any law or regulation of any governmental authority, including without limitation, all laws and regulations relating to Hazardous Materials, waste disposal and other environmental matters, and Occupant shall comply with all laws, rules, regulations and ordinances of any and all governmental authorities concerning the Premises and its use. For purposes of this Lease/Rental Agreement, "Hazardous Materials" shall include, but not be limited to, any hazardous or toxic chemical, gas, liquid, substance, material or waste (including, in some jurisdictions, vehicle tires) that is or becomes regulated under any applicable local, state or federal law or regulation. Occupant shall not use the Premises in any manner that will constitute a hazard, waste, nuisance or unreasonable annoyance to Owner, Owner's Agents or employees, or other occupants in the Property. Occupant acknowledges that the Premises may be used for storage only, and that use of the Premises for the conduct of a business or for human or animal habitation is specifically prohibited. The occupant agrees that the property will not be used for any unlawful purposes and the occupant agrees not to commit waste, nor alter, nor affix signs on the space and will keep the space in good condition during the term of this agreement. Upon termination of this Lease/Rental Agreement, Occupant shall promptly remove all Occupant's personal property from the Premises unless there are unpaid charges secured by Owner's lien rights as referenced in paragraph 3 (including any subparts) and shall immediately deliver possession of the Premises to Owner in the same condition as delivered to Occupant on the commencement date of this Lease/Rental Agreement, reasonable wear and tear excepted. By **INITIALING HERE** ▇▇▇ , Occupant acknowledges that he has read and understands the provisions of this paragraph and agrees to comply with its requirements.

6. INSURANCE; RELEASE OF LIABILITY. **ALL PERSONAL PROPERTY IS STORED BY OCCUPANT AT OCCUPANT'S SOLE RISK. OCCUPANT IS OBLIGATED UNDER THE TERMS OF THIS LEASE/RENTAL AGREEMENT TO INSURE HIS OWN GOODS AND UNDERSTANDS THAT OWNER DOES NOT PROVIDE ANY TYPE OF INSURANCE WHICH WOULD PROTECT THE OCCUPANT'S PERSONAL PROPERTY FROM LOSS BY FIRE, THEFT, OR ANY OTHER TYPE CASUALTY LOSS. IT IS THE OCCUPANT'S RESPONSIBILITY TO PROVIDE SUCH INSURANCE.** To the extent Occupant's insurance lapses or Occupant does not obtain insurance coverage for the full value of Occupant's personal property stored in the Premises, Occupant agrees Occupant will personally assume all risk of loss. **Owner and Owner's agents, affiliates, authorized representatives and employees ("Owner's Agents") will not be responsible for, and Occupant hereby releases Owner and Owner's Agents from any responsibility for, any loss, liability, claim, expense or damage to property that could have been insured (including without limitation any Loss arising from the active or passive acts, omission or negligence of Owner or Owner's Agents) (the "Released Claims").** Occupant waives any rights of recovery against Owner or Owner's Agents for the Released Claims, and Occupant expressly agrees that the carrier of any insurance obtained by Occupant shall not be subrogated to any claim of Occupant against Owner or Owner's Agents. The provisions of this paragraph will not limit the rights of Owner and Owner's Agents under paragraph 7. Occupant understands that if Occupant elects to obtain the insurance available at the Property, the additional amount for such insurance coverage must be included with the monthly payments as noted above. Further, all payments received will be applied as noted above. By **INITIALING HERE** ▇▇▇ , Occupant acknowledges that he understands the provisions of this paragraph and agrees to these provisions and that insurance is Occupant's sole responsibility.

7. LIMITATION OF OWNER'S LIABILITY; INDEMNITY. **Owner and Owner's Agents will have no responsibility to Occupant or to any other person for any loss, liability, claim, expense, damage to property or injury to persons ("Loss") from any cause, including without limitation, Owner's and Owner's Agents active or passive acts, omissions, negligence or conversion, unless the Loss is directly caused by Owner's fraud, willful injury or willful violation of law. Occupant shall indemnify and hold Owner and Owner's Agents harmless from any loss incurred by Owner and Owner's Agents in any way arising out of Occupant's use of the Premises or the Property including, but not limited to, claims of injury or loss by Occupant's visitors or invitees. Occupant agrees that Owner's and** Owner's Agents' total responsibility for any Loss from any cause whatsoever will **not exceed a total of $5,000. By INITIALING HERE**████, Occupant acknowledges that he understands and agrees to the provisions of this paragraph.

8. REPRESENTATION AS TO MILITARY SERVICE: (a) Occupant (check one) is ___ or is not [X] **in the military.** (b) If in the military, Occupant is, at the time of signing this Lease/Rental Agreement (check one or both if applicable) ___ **in the reserves or National Guard** and/or ___ **on active duty.** In addition to the provisions of paragraph 13 (including any subparts) below, Occupant **agrees to immediately notify Owner of changes in Occupant's military status or assignment resulting in changes to any information provided above.**

9. RIGHT TO ENTER, INSPECT AND REPAIR PREMISES. Occupant shall grant Owner or Owner's Agents access to the Premises upon three (3) days written notice to Occupant. If Occupant does not grant access as required, or in the event of suspected criminal activity, an emergency, or upon default of any of Occupant's obligations under this Lease/Rental Agreement, Owner, Owner's Agents, or a governmental authority shall have the right, but not the obligation, to remove Occupant's locks and enter the Premises for the purpose of examining the Premises or the contents or to make repairs or alterations and taking such other action as may be necessary or appropriate to preserve the Premises or to comply with applicable law including any applicable local, state or federal law or regulation governing hazardous or toxic substance, material or waste, or to enforce any of Owner's rights. If in an emergency, Owner must relocate Occupant's personal property to another space at the Property, the relocated space shall be deemed the "Space" for purposes of this Lease/Rental Agreement. In the event of any damage or injury to the Premises or the Property arising from the negligent or deliberate act or omissions of the Occupant, or for which Occupant is otherwise responsible, or if Occupant fails to remove all personal property from the Premises or the Property upon termination of this Lease/Rental Agreement, all expenses reasonably incurred by Owner to repair or restore the Premises or the Property including any expense incurred in connection with any investigation of site conditions, or any clean-up, removal or restoration work required by any applicable local, state or federal law or regulation or agency regulating any hazardous or toxic substance, material or waste, shall be paid by the Occupant and shall be due upon demand by the Owner.

10. RELEASE OF INFORMATION; NEGATIVE CREDIT INFORMATION. By executing this Lease/Rental Agreement, Occupant grants Owner, or Owner's service provider acting on Owner's behalf, full authorization for obtaining information regarding Occupant's employment, savings, and checking accounts and/or any previous or present credit, including real estate loans, whether on a closed or open status. Owner or its service provider is also authorized to request from a company or companies of Owner's choice a full credit report on the previous and present credit history of Occupant including updated credit information. This Authorization is valid for the purpose of extending credit, reviewing credit or in the collection of amounts owed to Owner in connection with this Lease/Rental Agreement. Owner, or its service provider acting on Owner's behalf, may report information about Occupant's account to credit bureaus. Late payments, missed payments, or other defaults on Occupant's account may be reflected in Occupant's credit report.

11. PRIVACY POLICY. Occupant acknowledges that Occupant has received a copy of Owner's Privacy Policy and has reviewed and agrees with its terms and provisions. Owner's Privacy Policy is incorporated in full herein by this reference.

12. TERMINATION AND DEFAULT. Owner may terminate this Lease/Rental Agreement (i) if Occupant is not in default of this Lease/Rental Agreement, by giving written notice to Occupant by first class mail or electronic mail at the last known physical address or email address provided to Owner in writing by Occupant not less than seven (7) days before expiration of the term or, (ii) if Occupant is in default of this Lease/Rental Agreement, by notice two (2) days in advance at any time during the term. Occupant may terminate this Lease/Rental Agreement at any time by giving two (2) days oral or written notice to Owner. If Occupant defaults under any of the obligations under this Lease/Rental Agreement, Owner may pursue any remedies available to Owner under applicable law or this Lease/Rental Agreement. Owner's decision to pursue one remedy shall not prevent Owner from pursuing other available remedies. Also, if Owner or Owner's Agents reasonably determine that Occupant has vacated the Premises, Owner may terminate this Lease/Rental Agreement.

13(a). CHANGE OF PHYSICAL ADDRESS OR EMAIL ADDRESS. In the event Occupant shall change Occupant's physical address or email address or alternate name and address as set forth on this Lease/Rental Agreement, Occupant shall give Owner written notice of such change signed by Occupant and specifying Occupant's current physical address or email address and alternate name, address and telephone number, within ten (10) days of the change; such notice to be mailed to Owner by first class mail with proof of mailing. Changes of addresses or telephone numbers cannot be effected telephonically or through the listing of such information on return envelopes or checks.

13(b). NOTICES; CONSENT TO ELECTRONIC COMMUNICATIONS. Except as otherwise expressly provided in this Lease/Rental Agreement or by law, any written notices or demands required or permitted under the terms of this Lease/Rental Agreement may be personally served or served by first class mail deposited in the United States mail with postage thereon fully prepaid and addressed to the party at the address provided for in this Lease/Rental Agreement or may be delivered electronically to the most current email address on record for Occupant. Service of any such notice or demand shall be deemed complete on the date of deposit with postage thereon in the United States mail or upon delivery, if personally delivered, or upon the date and time sent by Owner, in the case of an electronic notice. Further, Occupant consents to and expressly agrees that to the extent permitted by law, any notices, writings, or other communications required by or made in connection with this Lease/Rental Agreement by Owner may be made electronically to the most current email address provided by Occupant to Owner (consistent with the provisions of paragraph 13a), and that all such notices, writings and communications shall be deemed made by Owner as of the date and time the email is sent by Owner to Occupant. Occupant further agrees that all such notices, writings and communications made in electronic form by Owner shall have the same legal force, effect and enforceability as if they were made in non-electronic form. Occupant agrees that any reference in this Lease/Rental Agreement to a writing or written form may be fulfilled through an electronic record, including an electronic signature, which shall have the same legal force, effect and enforceability as if it was made in a non-electronic form.

*VA11202013*

14. **RULES AND REGULATIONS.** The rules and regulations posted in a conspicuous place at the Property are made a part of this Lease/Rental Agreement and Occupant shall comply at all times with such rules and regulations. Owner shall have the right from time to time to change the rules and regulations and upon the posting of any such changes at the Property, they shall become a part of this Lease/Rental Agreement.

15. **MISCELLANEOUS.**

   (a) Occupant shall provide, at Occupant's own expense, a lock for the Premises which Occupant deems sufficient to secure the Premises. Occupant shall not provide a key and/or combination to Occupant's lock to Owner or Owner's Agents.

   (b) Electricity which may be supplied to the Premises is to light the Premises for Occupant's convenience in accessing stored goods only.

   (c) Occupant shall not make or allow any alterations without the prior written consent of Owner.

   (d) Occupant hereby authorizes Owner to release any information regarding Occupant as may be required by law or requested by governmental authorities or agencies, law enforcement agencies, or courts, or to others for marketing and similar purposes in accordance with the Owner's Privacy Policy.

   (e) Occupant shall not assign or sublease the Premises. Owner may assign or transfer this Lease/Rental Agreement without the consent of Occupant and, after such assignment or transfer, Owner shall be released from all obligations under this Lease/Rental Agreement occurring after such assignment or transfer. All of the provisions of this Lease/Rental Agreement shall apply to, and be obligatory upon, the heirs, executors, administrators, representatives, successors and assigns of all the parties hereto.

   (f) Time is of the essence.

16. **NO WARRANTIES; ENTIRE AGREEMENT. Owner hereby disclaims any implied or express warranties, guarantees or representations of the nature, condition, safety or security of the Premises and the Property and Occupant hereby acknowledges that Occupant has inspected the Premises and the Property and hereby acknowledges and agrees that Owner does not represent or guarantee the safety or security of the Premises or the Property or of any personal property stored therein, and this Lease/Rental Agreement does not create any contractual obligation for Owner to increase or maintain such safety or security. This Lease/Rental Agreement and any written amendments or addenda executed at the same time as this Lease/Rental Agreement, and any notices provided under this Agreement by Owner, set forth the entire agreement of the parties with respect to the subject matter hereof and supersedes all prior agreements or understandings with respect thereto. With the exception of posted rules and regulations as noted in paragraph 14, there are no representations, warranties, or agreements by or between the parties which are not fully set forth herein and no representative of Owner or Owner's Agents is authorized to make any representations, warranties, or agreements other than as expressly set forth herein and, further, with the exception of any subsequent notice from Owner to Occupant of adjustments as provided in paragraph 2 above, this Lease/Rental Agreement may only be amended by a writing signed by the parties.**

IN WITNESS WHEREOF, the parties hereto have executed this Lease/Rental Agreement the day and year first above written.

PUBLIC STORAGE _____  OCCUPANT _____
Property Manager

Make checks payable to: PUBLIC STORAGE

*VA11202013*

# INSURANCE ADDENDUM TO LEASE/RENTAL AGREEMENT
## THIS ADDENDUM TO BE ATTACHED TO AND MADE PART OF THE LEASE/RENTAL AGREEMENT

Lease/Rental Agreement # 1714499.9   Storage Unit # 3013   Facility # 08385

As more fully set forth in the Lease/Rental Agreement, all personal property is stored by Occupant at occupant's sole risk. Occupant is solely responsible for insuring his own goods and understands that Owner will not insure Occupant's personal property and that Occupant is obligated under the terms of this lease/rental agreement to insure his own goods.

### INSURANCE CERTIFICATION AND DISCLOSURES

I acknowledge that I understand and agree to the provisions of the above paragraph and that I understand I am solely responsible to insure my stored property. I acknowledge that the Lease/Rental Agreement requires me to maintain insurance that covers loss or damage for the personal property that I intend to store at this facility. Purchase of the self-storage insurance below, or having other applicable insurance, may satisfy this requirement. I understand that if I do not have insurance, or if my insurance lapses, I am personally responsible for any loss or damage to my goods. I personally assume all risk of loss and Owner is not responsible no matter how the loss or damage occurred.

This facility and its employees are not qualified or authorized to evaluate the adequacy of any insurance you may have. The insurance policy offered by this self-storage agent may provide a duplication of coverage already provided by your homeowners' insurance policy or by another source of coverage. Questions regarding the Storage Insurance Program should be directed to PSCC, Inc. dba in CA as PSCC Insurance Services Processing (PSCC, Inc.). I understand this insurance is not required in order to store my goods at this facility.

**I ACKNOWLEDGE I HAVE REVIEWED THE ABOVE INSURANCE CERTIFICATION AND DISCLOSURES**

Date Signed 03/24/15   Tenant Signature _____   Print Name _____



**APPLICATION FOR INSURANCE**
**New Hampshire Insurance Company**
175 Water Street, New York, NY 10038

I elect to obtain the insurance coverage available through PSCC, Inc., in the amount indicated below.

| $5,000 Coverage $15.00 per Month Initial _____ | $4,000 Coverage $13.00 per Month Initial _____ | $3,000 Coverage $11.00 per Month Initial _____ |
|---|---|---|

Date Signed 03/24/15   Tenant Signature _____   Print Name _____

ACKNOWLEDGEMENT: I understand the amount noted is the Premium I must pay monthly for the Amount of Insurance I have selected. I authorize Owner to conduct the administrative function of receiving the premium to send to the insurance company on my behalf. I have elected to satisfy my obligation to have insurance for the stored goods by purchasing the insurance protection available through PSCC, Inc.. I have read and completed this Insurance Election Addendum to apply for the coverage. I have read the insurance literature provided and understand that the insurance I am applying for underwritten by New Hampshire Insurance Company has EXCLUSIONS and CONDITIONS.

COVERAGE EFFECTIVE: The insurance coverage will be effective immediately upon completion of your application and payment of Premium. You will become insured effective as of that time, for the Amount of Insurance you selected and initialed above.

ELIGIBILITY: I understand that insurance on personal property in the enclosed storage space described in the Rental Agreement is available to all Tenants who have entered into a Rental Agreement with the Owner for such enclosed storage space.

PREMIUM: I have elected the Premium above. I understand that I will receive one month's notice of changes in the Premium, or such notice as otherwise may be required by applicable law, if any, and the new Premium shall be effective on the first (1st) day of the month following the month in which advance notice of such change is mailed to me. I understand my insurance will continue on a month-to-month basis in accordance with the terms of this insurance. I understand that I may cancel the insurance at any time and cancellations after the first of each month may be subject to a minimum premium. I may receive a refund of unearned premium.

INSURANCE INFORMATION: **I have received a copy of the literature provided and the Certificate of Storage Insurance. I understand that I may have a copy of the complete specimen policy for review by simply calling PSCC, Inc. at 1-877-878-6730 or writing to the address below.**

NOTICE TO VIRGINIA APPLICANTS: IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES INCLUDE IMPRISONMENT, FINES AND DENIAL OF INSURANCE BENEFITS.

**PSCC, Inc.**
dba in CA as PSCC Insurance Services Processing   (CA License # 0E14626)
PO Box 25097
Glendale, CA 91221-5097
www.perfectsolutionsstorageinsurance.com   Or by calling (877) 878-6730

Producer Signature _____

Date Signed 03/24/15   Tenant Signature _____   Print Name _____

VA – 01/15   WHITE – Property Copy   YELLOW – Customer Copy
(A1531)