# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No. 1:18-cr-00083-TSE |
| | ) | |
| v. | ) | Judge T. S. Ellis, III |
| | ) | |
| PAUL J. MANAFORT, JR., | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT PAUL J. MANAFORT, JR.'S REPLY TO THE SPECIAL COUNSEL'S MEMORANDUM IN OPPOSITION TO HIS MOTION TO SUPPRESS EVIDENCE AND ALL FRUITS THEREOF RELATING TO THE SEARCH OF THE STORAGE UNIT LOCATED IN ALEXANDRIA, VIRGINIA

Defendant Paul J. Manafort, Jr., by and through counsel, hereby submits this reply to the Special Counsel's memorandum in opposition to his motion to suppress evidence and all fruits thereof relating to the search of the storage unit located in Alexandria, Virginia. (Dkt. # 67).

## I. The Special Counsel Misapplies the Concept of Common Authority

The parties agree that: (1) common authority is a potential basis upon which to ground a third party's consent to a warrantless search; and (2) *United States v. Matlock*, 415 U.S. 164 (1974), authoritatively defines common authority. The defendant and the Office of Special Counsel part ways, however, regarding how *Matlock* is construed. The Special Counsel would have this Court follow Ninth Circuit precedent that no other federal appellate court has adopted, whereas the defendant rests on controlling legal precedent from the Fourth Circuit.

1

**A.      Mutual Use *and* Joint Access or Control Required in the Fourth Circuit**

Common authority requires evidence of mutual use by one generally having joint access or control for most purposes." *United States v. Buckner*, 473 F.3d 551, 554 (4th Cir. 2007) (quoting *Matlock*, 415 U.S. at 171, n.7). In its opposition, however, the Special Counsel argues that in the Fourth Circuit common authority does not require mutual use. Dkt. # 67 at 13. Of course, *Buckner* explicitly holds that common authority "requires evidence of mutual use" by a person who has "joint access or control." *Buckner*, 473 F.3d at 554. *See also United States v. Toyer*, 414 F. App'x 584, 588 (4th Cir. 2011) (unpublished) (same). The District of Columbia Circuit is still more explicit. In *United States v. Whitfield*, 939 F.2d 1071 (D.C. Cir. 1991), the D.C. Circuit reversed the District Court's denial of a motion to suppress the fruits of a search, holding that even if the government bore its burden of proving joint access, it failed to prove mutual use. 939 F.2d at 1074. Critically, *Whitfield* held that even if the third party's ability (or legal right) to access the property established the joint access or control element of common authority, it did not establish the mutual use element. *Id.*[1]

After asserting that common authority does not require mutual use, notwithstanding the Supreme Court's and the Fourth Circuit's plain language, the Special Counsel argues that mutual use is satisfied by a showing that an "employee is authorized to enter a location to

---

[1] In arguing that common authority does not require mutual use, the Special Counsel fails to cite *Buckner* and asserts that the requirement of mutual use is "difficult to square with" the language used in two earlier Fourth Circuit cases: *United States v. Kinney*, 953 F.2d 863 (4th Cir. 1992) and *United States v. Block*, 590 F.2d 535 (4th Cir. 1978). For reasons that are unclear from the opinion, the court in *Kinney* failed to cite *Matlock* and referred to "mutual use, general access or common authority," as if they were each sufficient standing alone to validate a third party's consent to search. 953 F.2d at 866. Although the court in *Block* cited *Matlock*, it inexplicably referred to a requirement of "common authority over, general access to, or mutual use of the place or object." 590 F.2d at 539. Nonetheless, the Fourth Circuit has clarified this confusion with its 2007 opinion in *Buckner*.

perform his [job] duties and in fact performs those duties there." Dkt. # 67 at 14. An employee's authority to enter a location to do his job does not constitute mutual use, and none of the Special Counsel's cited cases hold otherwise.[2]

The Special Counsel cites *United States v. Buettner-Janusch*, 646 F.2d 759 (2d Cir. 1981) in support of its formulation of mutual use, but the opinion neither mentions mutual access nor even cites *Matlock*'s definition of common authority. The Special Counsel also cites *United States v. Murphy*, 506 F.2d 529 (9th Cir. 1974), to bolster its proffered definition of mutual use. Upon inspection, though, it becomes apparent that *Murphy* is not a common authority case at all and does not cite *Matlock*, which was only nine months old at the time. In that case, the target of the search "himself put the premises under the immediate and complete control of [the third party]." 506 F.2d at 530. The defendant bestowed no such authority on the former employee in this case. Finally, the Special Counsel cites *United States v. Jenkins*, 46 F.3d 447 (5th Cir. 1995), in support of its notion of mutual use. Once again, *Jenkins* contains no discussion of mutual use or even of common authority. Instead, the court held that the third party had authority to consent to a search because he "had unlimited access . . ., absolute dominion and control . . . and no direct supervision, or indeed any fellow employees in the geographic vicinity." 46 F.3d at 456. The third party at issue in this case had limited access, tightly constrained dominion and control, direct supervision, and a supervisor who lived a short distance from the storage unit.

---

[2] The Special Counsel relies heavily on the fact that the third party's name was on the lease agreement for the storage unit. As the Supreme Court very recently explained, in the context of rental cars, the "mere fact" that an individual does not appear as a renter on a rental agreement does not mean that individual may not still have a reasonable expectation of privacy when operating the vehicle that is the subject of the rental agreement. *Byrd v. United States*, No. 16-1371, slip op. at 15, 2018 WL 2186175, at *11 (U.S. May 14, 2018).

## B.    Ninth Circuit's Assumption of Risk Formulation Is Inapposite

The Special Counsel also attempts to ground common authority on its argument that Mr. Manafort "assumed the risk that [the Employee] would use the key he possessed to permit outsiders (including the police) into the unit." (Dkt. # 67 at 8) (internal quotation marks omitted).   In relying on "assumption of risk" as sufficient to establish common authority, the government expressly aligns itself with the Ninth Circuit's decision in *United States v. Kim*, 105 F.3d 1579 (9th Cir. 1997).   *Kim* is uncontroversial insofar as it points out that the Supreme Court in *Matlock* referred to assumption of risk in its definition of common authority:

> The authority which justifies the third-party consent . . . rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*United States v. Matlock*, 415 U.S. 164, 171 n.7 (1974).

In *Kim*, however, the Ninth Circuit departs from the D.C. Circuit and every other federal appellate court[3] by applying assumption of risk as an independent and sufficient condition for a finding of common authority, instead of interpreting the language as merely

---

[3] The Special Counsel points out that the Tenth Circuit followed the Ninth Circuit's assumption-of-risk analysis in *United States v. Trotter*, 483 F.3d 694 (10th Cir. 2007).  (Dkt. # 283 at 10).  Only four months later, however, that appellate court disavowed *Trotter's* adoption of assumption of risk as sufficient to establish common authority.  In *United States v. Cos*, the Tenth Circuit dismissed the government's assumption-of-risk argument as merely "invoking a phrase from *Matlock*" and "not supported by the law of this circuit."  498 F.3d 1115, 1126 (10th Cir. 2007).  The Tenth Circuit Court of Appeals further explained that "when determining whether a third party has actual [common] authority to consent to the search of a residence, we do not apply an independent "assumption of the risk" or "sufficient relationship to the premises" test.  *Id*.

4

modifying or explaining the Supreme Court's requirement of "mutual use of the property by persons generally having joint access or control for most purposes." *Id.*[4]

Apart from its anomalous reliance on assumption of risk, the Ninth Circuit's decision in *Kim*—a case involving contraband and not business records—is distinctly unfavorable to the Government's position. Indeed, the Ninth Circuit affirms that

> [c]ases subsequent to *Matlock* have emphasized that a consent-giver with *limited* access to the searched property lacks actual authority to consent to a search. . . . [A] consent-giver whose right of access is "narrowly prescribed" would lack sufficient authority to consent to a search. The cases upholding searches generally rely on the consent-giver's *unlimited* access to property to sustain the search.

*Kim,* 105 F.3d at 1582 (emphasis added). More importantly, the Ninth Circuit holds that the third party's lack of "unlimited access" to the storage unit "put[s] the case outside the 'joint access or control for most purposes' test" established in *Matlock. Id.*

The Special Counsel, however, asserts that the former DMP employee "had the right and capability to gain access to the unit at any time without [Manafort's] knowledge or permission." (Dkt. # 67 at 10) (internal quotation marks omitted). Legally, this is incorrect because it conflates the *right* to enter the storage unit with the informant's *physical capability* to do so. The former DMP employee's possession of a key to the

---

[4] In a footnote, the Special Counsel asserts that the Supreme Court and various circuit courts "continue to analyze consent in terms of 'assumption of risk.'" Dkt. # 67 at ll, n. 3. This is true only to the extent that they use the phrase "assumption of risk" precisely as *Matlock* does. This only highlights how anomalous the Ninth Circuit's analysis was in *Kim* when it applied assumption of risk as an independent and sufficient condition for a finding of common authority. In a recent unpublished decision, the Fourth Circuit put an even finer point on the issue:

> In *Lenz*, the Eleventh Circuit viewed the right of a co-occupant to consent to the search of a shared space solely through the lens of "assumption of risk." Yet, in myopically focusing on assumption risk, the court ignored the second and equally significant rationale underlying the *Matlock* decision. *Matlock* emphasized that the authority of the co-occupant must be such that he or she has may permit the entry of a visitor in his own right.

*United States v. Belt*, 609 F. App'x 745, 759 (4th Cir. 2015) (internal quotation marks omitted).

storage unit gave him only the physical ability to enter the storage unit (unauthorized) without Mr. Manafort's permission—just as a hotel manager's access key would give him/her the ability to enter a guest's room without permission.  That is, the informant's possession of the key did not also confer upon him the *right* to enter without permission, just as the hotel manager's possession of a guest room key does not confer upon him or her the right and authority to consent to a search of a guest's room.  *See, e.g., United States v. Toan Phuong Nghe*, 925 F. Supp. 2d 1142, 1147 (W.D. Wash. 2013) (holding that it was unreasonable for police officers to conduct a warrantless search of a hotel room despite the fact that the hotel manager had consented to the search, because the manager did not have apparent authority to consent to the search even though he had given the officers a key to the hotel room). This distinction is why the Special Counsel must rely on *Kim*'s assumption of risk formulation because the FBI Affidavit makes clear that the informant advised the FBI Agent that he acted only with Mr. Manafort's permission and direction.  (*See* FBI Aff. ¶ 28, Dkt. # 46, Exhibit B at 11.).  Further, there are no sworn allegations in the FBI Affidavit that the former DMP employee ever had "mutual use" of the storage unit. Accordingly, the informant lacked common authority over the storage unit and was incapable of providing actual consent for its search.

## II.      The Third-Party Lacked Apparent Authority to Consent to the Search

The Fourth Circuit has held, "[a]s long as the facts available to the officer at the moment . . . warrant a [person] of reasonable caution in the belief that the consenting party had authority, apparent authority to consent exists, and evidence seized or searched pursuant to that consent need not be suppressed." *Buckner*, 473 F.3d at 555.  Perhaps

recognizing the fatal flaw in establishing common authority, the Special Counsel turns next to apparent authority; however, there is no help to be found.[5]

It is essential to point out that "[i]n responding to a defendant's motion to suppress, the Government bears the burden of establishing, by a preponderance of the evidence, that it obtained valid consent to search. *Buckner*, 473 F.3d at 554. And the government cannot carry its burden by referring to the facts as the agent understood them unless that agent had sufficient facts at his disposal to draw a reasonably well-informed judgment as to the third party's authority to consent. As the D.C. Circuit has held,

> [t]he burden cannot be met if agents, faced with an ambiguous situation, nevertheless proceed without making further inquiry. If the agents do not learn enough, if the circumstances make it unclear whether the property about to be searched is subject to mutual use by the person giving consent, then warrantless entry is unlawful *without further inquiry*. . . .

*United States v. Whitfield*, 939 F.2d 1071, 1075 (D.C. Cir. 1991) (internal quotation marks omitted) (emphasis in original). *See also Peyton*, 745 F.3d at 554 and n. 2 ("Apparent authority does not exist where it is uncertain that the property is in fact subject to mutual use. It is this principle that makes *Whitfield* so important . . . . [A]mbiguity is enough to defeat apparent authority . . . .").

---

[5] The Special Counsel cites only one apparent authority case in support of its position that the former employee had apparent authority to consent to the search. The Special Counsel cites *Buckner* for the proposition that "officers reasonably believed that wife had authority to consent to search of her husband's password-protected files in part because the computer 'was leased solely in [her] name.'" Dkt. # 67 at ll, n. 3. This characterization strongly suggests that the Fourth Circuit found that the officers correctly relied on apparent authority to breach and search files that they knew were password-protected. In fact, the Fourth Circuit held in *Buckner* that "Michelle Buckner did not have actual authority to consent to a search of her husband's password-protected files because she did not share mutual use, general access or common authority over those files . . . ." 473 F.3d at 554. The only reason that apparent authority saved the fruits of the search of her husband's password-protected files was that "the officers did not have any indication from Michelle, or any of the attendant circumstances, that any files were password-protected. Even during the mirroring and forensic analysis processes, nothing the officers saw indicated that any computer files were encrypted or password-protected." *Id.* at 555 (internal citation omitted). In other words, if the officers had known that the files were password-protected, they would not have been justified in relying on Ms. Buckner's consent.

In other words, if the agent does not adequately investigate the nature of the third party's authority, the agent cannot be justified in concluding that the third party had authority. The "facts available to the officer at the moment," *Rodriguez*, 497 U.S. at 178 (quoting *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968)), include facts that the agent should have uncovered. Here, the FBI Agent *knew* that the third party acted only "as directed by Manafort" (*See* FBI Aff. ¶ 28, Dkt. # 46, Exhibit B at 11). Accordingly, the FBI Agent had a duty to take reasonable investigative steps to avoid any misunderstanding regarding the former DMP employee's authority to consent to the search. The Special Counsel has presented no evidence, however, in the FBI Affidavit or elsewhere that the FBI Agent took reasonable steps to investigate the nature of the third party's authority.

This would not have required any unusual sleuthing. To determine whether the informant could validly consent to the search of the storage unit, the agent should have asked, among other things: whether the third party was allowed to enter the storage unit *without* permission from Mr. Manafort; whether he was authorized to store his own property in the unit and whether he ever did so (*i.e.*, whether he had mutual use of the facility); whether he was authorized to let others into the storage unit; whether he and Mr. Manafort ever discussed the nature of the third party's authority with respect to the storage unit; why the informant's name, and not Mr. Manafort's, was on the lease; who paid the monthly lease fees for the storage unit; whether his duties regarding the storage unit changed after he became an employee of Steam Mountain, LLC[6]; whether his employment duties, including moving files to the storage unit, changed when he left DMP; and why the informant's DMP email address as a contact point was still on the lease.

[6] The FBI Affidavit avers only that the duties that it describes pertained to 2015 when he worked for DMP. (*See* FBI Aff. ¶ 28, Dkt. # 46, Exhibit B at 11).

In *Whitfield*, the D.C. Circuit disapproved of the agents' failure to ask just such questions:

> As a factual matter, the agents could not reasonably have believed Mrs. Whitfield had authority to consent to this search. The agents simply did not have enough information to make that judgment.
>
>       ***
>
> Whether she had "mutual use" of the room or the closet containing the defendant's clothing could not be determined from anything the agents asked.
>
>       ***
>
> The agents never asked Mrs. Whitfield whether she cleaned her son's room, visited with him there, stored any of her possessions in the room, watched television there, or made use of the room at any time for any purpose.
>
>       ***
>
> The government has not carried its burden in this case. The agents' superficial and cursory questioning of Mrs. Whitfield did not disclose sufficient information to support a reasonable belief that she had the authority to permit this search. The agents could not infer such authority merely from her ownership of the house.

939 F.2d at 1074-75 (citations omitted).

In this case, the agent overstepped the confines of the Fourth Amendment in his initial warrantless search, and any reliance by the government on the concept of apparent authority is not supported by the FBI Affidavit. Although the former DMP employee retained a key to a storage unit that contained DMP's property and business papers, he was no longer a DMP employee, per the government's own FBI Affidavit. Again, the FBI Agent was specifically told by the informant that he was permitted to enter the premises only *at Mr. Manafort's direction*. (*See* FBI Aff. ¶ 28, Dkt. # 46, Exhibit B at 11). The fact that the FBI Agent did not ask the former DMP employee reasonable follow-up questions and include that information for the magistrate judge to review in the subsequent

application for a search warrant, speaks volumes. For these reasons, the Court should conclude that the informant did not have apparent authority to allow the FBI Agent to conduct the warrantless initial search of the storage unit, which formed the basis for the subsequent search warrant issued by the magistrate judge. All evidence, and the fruits thereof, should therefore be suppressed.

## III. The Warrant Lacked Sufficient Particularity

Attachment B to the Search Warrant authorizes the seizure of, among other items, "*[a]ny and all* financial records" related to Mr. Manafort or any companies associated with him. (*See* Search Warrant, Attachment B, ¶ 1a., Dkt. # 46, Exhibit A (emphasis added)). The Special Counsel's Office argues in its opposition to the motion to suppress that this language is sufficiently particularized, but upon a closer reading of the authorities cited by the government, these cases provide no support because they are all readily distinguishable from the case at bar.

Concerning *United States v. Young*, 260 F. Supp. 3d 530 (E.D. Va. 2017), the Special Counsel contends (in a parenthetical) that this is an example of a district court approving a search warrant that sought "all records and documents" falling into eight enumerated categories. (Dkt. # 67 at 20). In fact, the court in *Young* explained that the categories restricted the phrase "all records and documents" and chastised the defendant for characterizing the warrant as seeking all records and documents when it did not: "Defendant makes similar claims regarding lack of particularity for the categories of evidence which he *misleadingly* describes as a search for 'all records and documents.' Contrary to how defendant describes what the warrants authorized, the categories of documents and records were carefully limited. . . ." *Young*, 260 F. Supp.3d at 549

(emphasis added). The *Young* court identified the limitations on the broader language which, among other things, focused on particular individuals, terrorist groups, etc. *Id.* Here, the search warrant actually contained a capacious category without restricting categories: "[a]ny and all financial records" related to Mr. Manafort or any companies associated with him.

IV.     **No Good Faith Reliance on the Warrant**

As discussed above, a person with apparent authority may authorize a search, provided that the law enforcement officer reasonably believes that the third party is authorized to do so. Once the FBI Agent learned that the former DMP employee had no right to enter the storage unit without Mr. Manafort's direction, however, the FBI Agent could not have reasonably believed that the informant had authority to consent to the warrantless search. Because the FBI Agent's purported belief in the validity of the former DMP employee's consent was unreasonable, he cannot have reasonably relied on a subsequently obtained search warrant that he knew was based on an earlier warrantless search founded on invalid consent.

To avoid suppression of the fruits of an unlawful and invalid search, the Government must prove that "an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope," even though the search warrant might later be found invalid. *United States v. Leon*, 468 U.S. 897, 920 (1984). Apparently concerned about the validity of the FBI Agent's warrantless search, the Special Counsel takes pains to discuss *Leon* and its exceptions. (Dkt. # 283 at 25-28). *Leon* does not provide the protection that the Special Counsel seeks, however. The FBI Agent cannot have acted in objective good faith in securing consent from a person who

lacked actual or apparent authority. "*Leon*'s good-faith exception applies only narrowly, and ordinarily only where an officer relies, in an objectively reasonable manner, on a mistake made by someone *other than the officer*." *United States v. Herrera*, 444 F.3d 1238, 1249 (10th Cir. 2006) (emphasis added). "[B]ecause *Leon* rests upon the notion that the exclusionary rule is not implicated where there is no police misconduct to deter, that case does not allow law enforcement authorities to rely on an error of their own making." Wayne R. LaFave, 1 Search & Seizure § 1.3(f) (5th ed.). It naturally follows that when an agent acts on consent in the absence of even *apparent* authority, *Leon* is inapplicable:

> Here, as the district court recognized, the officers' initial entry into Mr. Cos's apartment was based neither on a facially valid warrant nor on a mistake made by someone other than the officers. Instead, the officers proceeded into the apartment because of their mistaken belief that Ms. Ricker had the authority to consent. In such circumstances, the good faith exception to the exclusionary rule is inapplicable.

*United States v. Cos*, 498 F.3d 1115, 1132 (10th Cir. 2007).

The Special Counsel argues that even if the warrantless search was illegal, it did not taint the later search warrant to justify the suppression of evidence. This is demonstrably false. Without the government's warrantless entry into the storage unit and recordation of the materials observed by the FBI Agent which was subsequently described in the FBI affidavit, the magistrate judge would have been left with bare assertions from an informant whose reliability and current basis for knowledge (as a former DMP employee) had not been established, as required. *See Illinois v. Gates*, 462 U.S. 213, 230 (1983). Suppression, therefore, is the appropriate remedy.

## V.    Severance is Unavailable to Save the Warrant

Finally, in the portion of its opposition discussing the search warrant's lack of temporal limitation, the government contends that "any suppression remedy would be

limited to evidence seized under the portion of the warrant that is overbroad, which would at most be records that predate 2005." (Dkt. # 67 at 26). The Special Counsel generously posits that the defendant's redress "is simply to excise the years for which there was no probable cause." *Id.* at 27. The flaw with this purported "cure" is that the absence of a temporal limitation is not a probable cause problem; it is a particularity problem, and the suggested severance does not remedy it.[7]

Dated: May 21, 2018

Respectfully submitted,

s/ Kevin M. Downing
Kevin M. Downing (*pro hac vice*)
Law Office of Kevin M. Downing
601 New Jersey Avenue NW
Suite 620
Washington, DC 20001
(202) 754-1992
kevindowning@kdowninglaw.com

s/ Thomas E. Zehnle
Thomas E. Zehnle (VSB No. 27755)
Law Office of Thomas E. Zehnle
601 New Jersey Avenue NW
Suite 620
Washington, DC 20001
(202) 368-4668
tezehnle@gmail.com

---

[7] The Special Counsel makes the same error when it cites *United States v. Cohan*, 628 F. Supp. 2d 355, 364 n. 4 (E.D.N.Y. 2009), for the proposition that, in determining whether an affidavit established probable cause, the trial court may consult the affidavit even if it was not incorporated into the warrant. This is a *non sequitur*. Of course, the trial court *must* consult the affidavit to decide whether that affidavit established probable cause. The affidavit is of no moment, however, when a court is reviewing the *warrant* for *particularity*. The one exception is when the affidavit is made a part of the warrant. *See United States v. Griffith*, 867 F.3d 1265 (D.C. Cir. 2017). The Government does not dispute that the search warrant failed to incorporate the affidavit.

s/ Jay R. Nanavati
Jay R. Nanavati (VSB No. 44391)
Kostelanetz & Fink LLP
601 New Jersey Avenue NW
Suite 620
Washington, DC 20001
(202) 875-8000
jnanavati@kflaw.com

*Counsel for Defendant Paul J. Manafort, Jr.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of May, 2018, I will electronically file the foregoing

with the Clerk of Court using the CM/ECF system, which will then send a notification of

such filing (NEF) to the following:

Andrew A. Weissman
Greg D. Andres
U.S. Department of Justice
Special Counsel's Office
950 Pennsylvania Avenue NW
Washington, DC 20530
Telephone: (202) 616-0800
Email: AAW@usdoj.gov
         GDA@usdoj.gov

s/ Jay R. Nanavati
Jay R. Nanavati (VSB No. 44391)
Kostelanetz & Fink LLP
601 New Jersey Avenue NW
Suite 620
Washington, DC 20001
(202) 875-8000
jnanavati@kflaw.com

*Counsel for Defendant Paul J. Manafort, Jr.*