**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No. 1:18-cr-00083-TSE |
| | ) | |
| v. | ) | Judge T. S. Ellis, III |
| | ) | |
| PAUL J. MANAFORT, JR., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT PAUL J. MANAFORT, JR.'S REPLY TO THE SPECIAL
COUNSEL'S MEMORANDUM IN OPPOSITION TO HIS MOTION TO
SUPPRESS EVIDENCE AND ALL FRUITS THEREOF RELATING TO THE
SEARCH OF THE STORAGE UNIT LOCATED IN ALEXANDRIA, VIRGINIA**

Defendant Paul J. Manafort, Jr., by and through counsel, hereby submits this reply

to the Special Counsel's memorandum in opposition to his motion to suppress evidence

and all fruits thereof relating to the search of the storage unit located in Alexandria,

Virginia. (Dkt. # 67).

## I.       The Special Counsel Misapplies the Concept of Common Authority

The parties agree that: (1) common authority is a potential basis upon which to

ground a third party's consent to a warrantless search; and (2) *United States v. Matlock*,

415 U.S. 164 (1974), authoritatively defines common authority.  The defendant and the

Office of Special Counsel part ways, however, regarding how *Matlock* is construed. The

Special Counsel would have this Court follow Ninth Circuit Court of Appeals precedent

that no other federal appellate court has adopted, whereas the defendant rests his position

on controlling legal precedent from the Fourth Circuit.

### A.     Mutual Use *and* Joint Access or Control Required in Fourth Circuit

Common authority requires evidence of "mutual use" by one generally having "joint access or control for most purposes."  *United States v. Buckner*, 473 F.3d 551, 554 (4th Cir. 2007) (quoting *Matlock*, 415 U.S. at 171, n.7).  In his opposition, however, the Special Counsel seemingly argues that in the Fourth Circuit common authority does *not* require mutual use.[1]  (Dkt. # 67 at 13).  But this position flies in the face of *Buckner's* explicit holding that common authority requires evidence of mutual use by a person who has joint access or control.  *Buckner*, 473 F.3d at 554; *see also United States v. Toyer*, 414 F. App'x 584, 588 (4th Cir. 2011) (unpublished) (same).

The Fourth Circuit, of course, is not alone in this view of the Supreme Court's holding in *Matlock*.  In the neighboring circuit for the District of Columbia, for example, the appellate court reversed the district court's denial of a motion to suppress the fruits of a search, holding that even if the government bore its burden of proving joint access, it failed to prove mutual use.  *United States v. Whitfield*, 939 F.2d 1071, 1074 (D.C. Cir. 1991).  Of critical importance, *Whitfield* held that even if the third party's ability (or legal right) to access the property established the joint access or control element of common authority, it did not establish the mutual use element.  *Id.*

---

[1] In this regard, the Special Counsel ignores *Buckner, supra*, and asserts that the requirement of mutual use is "difficult to square with" the language used in two (much earlier) Fourth Circuit decisions: *United States v. Kinney*, 953 F.2d 863 (4th Cir. 1992) and *United States v. Block*, 590 F.2d 535 (4th Cir. 1978).  Neither case supports this proposition, however.  *Kinney* turned on the consent-giver's *apparent* (not actual or common) authority to consent to a search—a search that the third party, an inhabitant of the apartment, invited the police to undertake.  *Kinney*, 953 F.2d at 866-67.  In *Block*, the appellate court held that the district court judge actually erred in allowing evidence from the government's search of a sealed storage footlocker over which the third party had no common authority to consent.  *Block*, 590 F.2d at 541.

After asserting that common authority does not require mutual use, the Special Counsel next contends that mutual use is nevertheless satisfied where an "employee is authorized to enter a location to perform his [job] duties and in fact performs those duties there." (Dkt. # 67 at 14). The Special Counsel refers this Court to *United States v. Buettner-Janusch*, 646 F.2d 759 (2d Cir. 1981), in support of his interpretation, but a careful reading of *Buettner-Janusch* in fact confirms the defendant's position that the former DMP employee did not have common authority to consent to the FBI agent's warrantless search.

More specifically, in *Buettner-Janusch*, the defendant (a distinguished professor and leading authority in the field of physical anthropology) hired an NYU undergraduate student to be a laboratory assistant and provided him with keys to the laboratory. *Id*. at 762. The Second Circuit specifically noted that although the defendant attempted to portray the lab assistant "as a mere errand boy," the district court found that the undergraduate student had full use of all the chemicals in the defendant's laboratory and performed experiments there. *Id*. Indeed, the Special Counsel summarizes the appellate court's holding in a parenthetical: "research assistant with keys to university laboratory *and permission to enter* had common authority[.]" (Dkt. # 67 at 14) (emphasis supplied). As pointed out in the defendant's moving papers, the former DMP employee here did *not* have permission to enter the storage unit without Mr. Manafort's direction and approval, and the FBI agent was certainly aware of this fact prior to engaging in the warrantless

search of the storage unit based on the third party's purported valid consent.[2]  (*See* FBI

Aff. ¶ 28, Dkt. # 46, Exhibit B at 11).

### B.       Assumption of Risk Formulation Is Inapposite

Recognizing the inherent flaws in his arguments above, the Special Counsel also

attempts to ground common authority on his contention that the defendant "assumed the

risk that [the Employee] would use the key he possessed to permit outsiders (including the

police) into the unit."  (Dkt. # 67 at 8) (citations and internal quotation marks omitted).  In

relying on "assumption of risk" as sufficient to establish common authority, the Special

Counsel expressly aligns himself with the Ninth Circuit's anomalous decision in *United*

*States v. Kim*, 105 F.3d 1579 (9th Cir. 1997).  *Kim* is uncontroversial insofar as it points

out that the Supreme Court referred to an assumption of risk in discussing common

authority:

> The authority which justifies the third-party consent . . . rests rather on
> mutual use of the property by persons generally having joint access or
> control for most purposes, so that it is reasonable to recognize that any of
> the co-inhabitants has the right to permit the inspection in his own right and
> that the others have assumed the risk that one of their number might permit
> the common area to be searched.

*United States v. Matlock*, 415 U.S. 164, 171 n.7 (1974).

---

[2] The Special Counsel also cites *United States v. Murphy*, 506 F.2d 529 (9th Cir. 1974), to bolster his
proffered and preferred interpretation of mutual use, but to no avail.  *Murphy,* a three-paragraph *per curiam*
opinion with minimal analysis, does not address common authority or mutual use and does not discuss the
Supreme Court's decision in *Matlock,* which occurred nine months earlier.  *Id.* at 530.  Similarly, *United
States v. Jenkins*, 46 F.3d 447 (5th Cir. 1995), contains no discussion of the concept of mutual use; instead,
the court held that the third party in that case had authority to consent to a search because he "had unlimited
access," "absolute dominion and control," "no direct supervision," and no "fellow employees in the
geographic vicinity."  *Id.* at 456.  Here, the former DMP employee had tight constraints over his dominion
and control of the items in the storage unit—requiring Mr. Manafort's specific permission and direction to
access the unit, as the FBI agent well knew.  Indeed, the third party was not even able to identify exactly
what was contained in the storage unit.  Moreover, unlike *Jenkins*, his employer's residence was located only
minutes from the premises.  Once again, the Special Counsel's citations are factually and legally inapplicable.

In *Kim*, however, the Ninth Circuit departs from the Fourth Circuit, the D.C. Circuit, and other federal appellate courts[3] by applying assumption of risk as an independent and sufficient condition for a finding of common authority.  Instead of interpreting the language as explanatory of the Supreme Court's requirement of "mutual use of the property by persons generally having joint access or control for most purposes," the Special Counsel "invokes a phrase from *Matlock*" and seeks to use it as a sword to attack Mr. Manafort's reasonable expectation of privacy.[4]

Putting aside its atypical reliance on assumption of the risk, the Ninth Circuit's decision in *Kim*—a case involving contraband and not business records—is in fact distinctly unfavorable to the Special Counsel's position, affirming that

> [c]ases subsequent to *Matlock* have emphasized that a consent-giver with *limited* access to the searched property lacks actual authority to consent to a search. . . . [A] consent-giver whose right of access is "narrowly prescribed" would lack sufficient authority to consent to a search.  The cases

---

[3] The Special Counsel contends that the Tenth Circuit followed the Ninth Circuit's assumption-of-risk analysis in *United States v. Trotter*, 483 F.3d 694 (10th Cir. 2007).  (Dkt. # 67 at 9).  While true, only four months later that appellate court expressly disavowed *Trotter*'s adoption of assumption of risk as sufficient to establish common authority.  In *United States v. Cos*, 498 F.3d 1115 (10th Cir. 2007), the Tenth Circuit dismissed the assumption-of-risk argument as merely "invoking a phrase from *Matlock*" and "not supported by the law of this circuit."  *Id.* at 1126.  The Court of Appeals further explained that "when determining whether a third party has actual [common] authority to consent to the search of a residence, we do not apply an independent "assumption of the risk" or "sufficient relationship to the premises" test.  *Id.*

[4] The Special Counsel attempts to persuade that other courts "continue to analyze consent in terms of 'assumption of risk.'"  (Dkt. # 67 at ll, n.3).  But discussing the concept of assumption of the risk while analyzing common authority (*i.e.*, mutual use *and* joint access or control) is what *Matlock* did itself (and presumably what the high court understood that other courts might do themselves).  To be clear, in this jurisdiction, when other courts have wandered and attempted to make assumption of the risk as *the* rationale for finding common authority, the Fourth Circuit has specifically disagreed:

> In *Lenz*, the Eleventh Circuit viewed the right of a co-occupant to consent to the search of a shared space solely through the lens of "assumption of risk." Yet, in myopically focusing on assumption risk, the court ignored the second and equally significant rationale underlying the *Matlock* decision.  *Matlock* emphasized that the authority of the co-occupant must be such that he or she has may permit the entry of a visitor in his own right.

*United States v. Belt*, 609 F. App'x 745, 759 (4th Cir. 2015) (unpublished) (citation and internal quotation marks omitted).

upholding searches generally rely on the consent-giver's *unlimited* access
to property to sustain the search.

*Kim*, 105 F.3d at 1582 (emphasis added).  The Ninth Circuit held that the third party's lack

of "unlimited access" to the storage unit "put[s] the case outside the 'joint access or control

for most purposes' test" established in *Matlock*.  *Id.*

Here, the Special Counsel asserts that the former DMP employee "had the right and

capability to gain access to the unit at any time without [Manafort's] knowledge or

permission." (Dkt. # 67 at 10 (internal quotation marks omitted)).  This argument conflates

the authority of the consent-giver to permit the entry "in his own right," *see Matlock*, 415

U.S. at 171, n.7, with his *physical ability* to grant access.  The former DMP employee's

possession of a key only gave him the ability of entering the defendant's storage unit

unauthorized (*i.e.*, without Mr. Manafort's permission)—just as a hotel manager's access

key would give him/her the ability (but not the right) to allow the FBI to enter a guest's

room without permission and search through the guest's belongings.  *See United States v.*

*Toan Phuong Nghe*, 925 F. Supp. 2d 1142, 1147 (W.D. Wash. 2013) (holding that it was

unreasonable for the police to conduct a warrantless search of a hotel room where the

manager had consented to the search because the manager did not have apparent authority

to consent to the search even though he had given the officers a key to the hotel room).

This distinction is why the Special Counsel relies heavily on *Kim*'s assumption of risk

formulation; the FBI Affidavit makes clear that the former DMP employee specifically

advised the FBI Agent that he acted only with Mr. Manafort's permission and direction.

(*See* FBI Aff. ¶ 28, Dkt. # 46, Exhibit B at 11).  There are no allegations in the sworn FBI

Affidavit that evidence the third party ever having "mutual use" of the storage unit;

accordingly, the third party lacked common authority over the storage unit and was incapable of providing actual consent for its search.

## II.      The Third-Party Lacked Apparent Authority to Consent to the Search

The Fourth Circuit has held, "[a]s long as the facts available to the officer at the moment . . . warrant a [person] of reasonable caution in the belief that the consenting party had authority, apparent authority to consent exists, and evidence seized or searched pursuant to that consent need not be suppressed." *Buckner*, 473 F.3d 551, 555 (4th Cir. 2007). Perhaps recognizing the enormous difficulty of establishing common authority under the facts of this case, the Special Counsel turns next to apparent authority.

First, it is essential to point out that "[i]n responding to a defendant's motion to suppress, the Government bears the burden of establishing, by a preponderance of the evidence, that it obtained valid consent to search." *Buckner*, 473 F.3d at 554. The Office of Special Counsel cannot carry its burden by referring to facts as the agent understood them *unless* that agent had sufficient facts at his disposal to draw a reasonably well-informed judgment as to the third party's authority to consent. In this regard,

> [t]he burden cannot be met if agents, faced with an ambiguous situation, nevertheless proceed without making further inquiry. If the agents do not learn enough, if the circumstances make it unclear whether the property about to be searched is subject to mutual use by the person giving consent, then warrantless entry is unlawful *without further inquiry*. . . .

*Whitfield*, 939 F.2d at 1075 (internal quotation marks omitted; emphasis in original); *see also United States v. Peyton*, 745 F.3d 546, 554 n.2 (D.C. Cir. 2014) ("Apparent authority does not exist where it is uncertain that the property is in fact subject to mutual use. It is this principle that makes *Whitfield* so important. . . . [A]mbiguity is enough to defeat apparent authority. . . .").

7

If the government agent does not adequately investigate the nature of the third party's authority, the agent cannot be justified in concluding that the third party had authority. The "facts available to the officer at the moment," *Illinois v. Rodriguez*, 497 U.S. 177, 178 (1990) (quoting *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968)), include facts that the agent should have uncovered. Here, the FBI Agent *knew* that the purported consent-giver acted only "as directed by Manafort" (*See* FBI Aff. ¶ 28, Dkt. # 46, Exhibit B at 11). The FBI Agent therefore had a duty to take reasonable investigative steps to avoid any misunderstanding regarding the third party's authority to consent to the search of the storage unit. The Special Counsel has presented no evidence, however – in the FBI Affidavit or elsewhere – that the FBI Agent took the necessary and reasonable steps to investigate the nature of the third party's authority in this case.

This would not have required any unusual sleuthing, despite the Special Counsel's attempt to make this appear a Sisyphean task. (Dkt. # 67 at 15). To determine whether the third party could validly consent to the search of the storage unit, the agent should have asked basic and reasonable questions, such as: whether the third party was allowed to enter the storage unit *without* permission from Mr. Manafort; whether he was authorized to store his own property in the unit, and whether he ever did so (*i.e.*, whether he had mutual use of the facility); whether he was authorized to let others into the storage unit; whether he and Mr. Manafort ever discussed the nature of the third party's authority with respect to the storage unit; why the third party's name, and not Mr. Manafort's name, was on the lease as the lessor; who paid the monthly fees for the storage unit; whether his duties regarding the storage unit changed after he became an employee of Steam Mountain, LLC[5];

---

[5] The FBI Affidavit avers only that the employee's duties pertained to 2015, when the employee worked for DMP. (*See* FBI Aff. ¶ 28, Dkt. # 46, Exhibit B at 11).

whether his employment duties, including moving files to the storage unit, changed when he left DMP; and why the informant's DMP email address as a contact point was still on the lease even though he now worked for Steam Mountain.

This information should have determined by the FBI agent and been presented to the federal magistrate judge before seeking the formal warrant (after the warrantless search) to avoid the ambiguity that was clearly present in this case.  In *Whitfield*, *supra,* the Court of Appeals sitting across the river disapproved of the agents' failure to ask just such questions:

> As a factual matter, the agents could not reasonably have believed Mrs. Whitfield had authority to consent to this search.  The agents simply did not have enough information to make that judgment.
>
> ***
>
> Whether she had "mutual use" of the room or the closet containing the defendant's clothing could not be determined from anything the agents asked.
> ***
>
> The agents never asked Mrs. Whitfield whether she cleaned her son's room, visited with him there, stored any of her possessions in the room, watched television there, or made use of the room at any time for any purpose.
>
> ***
>
> The government has not carried its burden in this case.  The agents' superficial and cursory questioning of Mrs. Whitfield did not disclose sufficient information to support a reasonable belief that she had the authority to permit this search.  The agents could not infer such authority merely from her ownership of the house.

*Whitfield,* 939 F.2d at 1074-75 (citations omitted).

Here, the agent overstepped the confines of the Fourth Amendment in his initial warrantless search, and any reliance by the Special Counsel on the concept of apparent authority is not supported by the FBI Affidavit.  Although the former DMP employee

retained a key to a storage unit that contained DMP's property and business papers, he was no longer a DMP employee, per the government's own FBI Affidavit.  The FBI was specifically told by the third party that he was permitted to enter the premises only *at Mr. Manafort's direction*.  (*See* FBI Aff. ¶ 28, Dkt. # 46, Exhibit B at 11).  The fact that the FBI Agent did not ask the former DMP employee any reasonable follow-up questions and include that information for the magistrate judge to review in the subsequent application for a search warrant speaks volumes.  For these above reasons, the Court should conclude that the third party did not have apparent authority to consent to the warrantless search of the storage unit, which formed the basis for the subsequent search warrant issued by the magistrate judge.  All evidence, and the fruits thereof, should therefore be suppressed to protect the defendant's reasonable expectation of privacy guaranteed by the Fourth Amendment.[6]

## III.   The Warrant Lacked Sufficient Particularity and Was Overbroad

In addition to the improper warrantless search discussed *supra*, Attachment B to the Search Warrant authorizes the seizure of, among other items, "*[a]ny and all* financial records" related to Mr. Manafort or any companies associated with him.  (*See* Search Warrant, Attachment B, ¶ 1a., Dkt. # 46, Exhibit A (emphasis added)).  The Special Counsel's Office argues in its opposition to the motion to suppress that this language is sufficiently particularized but, upon a closer inspection of the authorities cited, the

---

[6] The Supreme Court recently reaffirmed this core constitutional principle in the context of a car rental agreement, holding that the focus under the Fourth Amendment must be on the individual's reasonable expectation of privacy regardless of whom is named on the lease itself.  *Byrd v. United States*, No. 16-1371, slip op. at 15, 2018 WL 2186175, at *11 (U.S. May 14, 2018).

referenced cases are factually and legally distinguishable and do not provide the support the special prosecutors assert.

Concerning *United States v. Young*, 260 F. Supp.3d 530 (E.D. Va. 2017), the Special Counsel contends (in a parenthetical) that this is an example of a district court approving a search warrant that sought "all records and documents" falling into eight enumerated categories.  (Dkt. # 67 at 20).  In fact, the court in *Young* chastised the defendant for characterizing the warrant as seeking "all records and documents" when it did not:  "Defendant makes similar claims regarding lack of particularity for the categories of evidence which he *misleadingly* describes as a search for 'all records and documents.'  Contrary to how defendant describes what the warrants authorized, the categories of documents and records were carefully limited. . . ."  *Young*, 260 F. Supp.3d at 549 (emphasis added).  The *Young* court identified the limitations on the broader language which, among other things, focused on particular individuals, terrorist groups, etc.  *Id.*  Here, the search warrant contained a capacious category without restricting categories:  "[a]ny and all financial records" related to Mr. Manafort or any companies associated with him.  The fact that there was no temporal limitation on this category of documents only exacerbates the problem.

## IV.  No Good Faith Reliance on the Warrant

As discussed above, a person with apparent authority may authorize a search, provided that the law enforcement officer reasonably believes that the third party is authorized to do so.  Once the FBI Agent learned that the former DMP employee had no right to enter the storage unit without Mr. Manafort's specific permission and direction, however, the FBI Agent could not have reasonably believed that the informant had

authority to consent to the warrantless search.  Because the FBI Agent's purported belief in the validity of the former DMP employee's consent was unreasonable, he cannot have reasonably relied on a subsequently obtained search warrant that he knew to be based on an earlier warrantless search founded on invalid consent.

To avoid suppression of the fruits of an unlawful and invalid search, the Government must prove that "an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope," even though the search warrant might later be found invalid.  *United States v. Leon*, 468 U.S. 897, 920 (1984).  Apparently concerned about the validity of the FBI Agent's warrantless search, the Special Counsel takes pains to discuss *Leon* and its exceptions.  (Dkt. # 67 at 24-26). *Leon* does not provide the protection that the Special Counsel seeks in this case, however. The FBI Agent cannot have acted in objective good faith in securing consent from a person who lacked actual or apparent authority.  "*Leon*'s good-faith exception applies only narrowly, and ordinarily only where an officer relies, in an objectively reasonable manner, on a mistake made by someone *other than the officer*."  *United States v. Herrera*, 444 F.3d 1238, 1249 (10th Cir. 2006) (emphasis added).  "[B]ecause *Leon* rests upon the notion that the exclusionary rule is not implicated where there is no police misconduct to deter, that case does not allow law enforcement authorities to rely on an error of their own making." Wayne R. LaFave, 1 Search & Seizure § 1.3(f) (5th ed.).

It naturally follows that when an agent acts on consent in the absence of even *apparent* authority, *Leon* is inapplicable:

> Here, as the district court recognized, the officers' initial entry into Mr. Cos's apartment was based neither on a facially valid warrant nor on a mistake made by someone other than the officers. Instead, the officers proceeded into the apartment because of their mistaken belief that Ms.

> Ricker had the authority to consent. In such circumstances, the good faith exception to the exclusionary rule is inapplicable.

*United States v. Cos*, 498 F.3d 1115, 1132 (10th Cir. 2007).

The Special Counsel argues that, even if the warrantless search was illegal, it did not taint the later search warrant to justify the suppression of evidence. This is demonstrably false. Without the government's warrantless entry into the storage unit and recordation of the materials observed by the FBI Agent which was subsequently described and used in the FBI affidavit, the magistrate judge would have been left with bare assertions from an informant whose reliability and current basis for knowledge (as a former DMP employee) had not been established as required. *See Illinois v. Gates*, 462 U.S. 213, 230 (1983). Suppression, under these circumstances, is the appropriate remedy.

## V.    Severance is Unavailable to Save the Warrant

Finally, in the portion of its opposition discussing the search warrant's lack of temporal limitation, the government contends that "any suppression remedy would be limited to evidence seized under the portion of the warrant that is overbroad, which would at most be records that predate 2005." (Dkt. # 67 at 26). The Special Counsel posits that the defendant's redress "is simply to excise the years for which there was no probable cause." *Id.* at 27. The flaw with this purported "cure" is that the absence of a temporal limitation is not a probable cause problem; it is a particularity problem, and the suggested severance does not remedy it.[7]

---

[7] The Special Counsel cites *United States v. Cohan*, 628 F. Supp. 2d 355, 364 n.4 (E.D.N.Y. 2009), for the proposition that, in determining whether an affidavit established probable cause, the trial court may consult the affidavit even if it was not incorporated into the warrant. Of course, the trial court *must* consult the affidavit to decide whether that affidavit established probable cause. But the affidavit is of no moment when a court is reviewing the *warrant* for *particularity*. The one exception is when the affidavit is made a part of the warrant. *See, e.g., United States v. Griffith*,

Dated: May 20, 2018                              Respectfully submitted,

                                                 s/ Kevin M. Downing
                                                 Kevin M. Downing (*pro hac vice*)
                                                 Law Office of Kevin M. Downing
                                                 601 New Jersey Avenue NW
                                                 Suite 620
                                                 Washington, DC 20001
                                                 (202) 754-1992
                                                 kevindowning@kdowninglaw.com


                                                 s/ Thomas E. Zehnle
                                                 Thomas E. Zehnle (VSB No. 27755)
                                                 Law Office of Thomas E. Zehnle
                                                 601 New Jersey Avenue NW
                                                 Suite 620
                                                 Washington, DC 20001
                                                 (202) 368-4668
                                                 tezehnle@gmail.com


                                                 s/ Jay R. Nanavati
                                                 Jay R. Nanavati (VSB No. 44391)
                                                 Kostelanetz & Fink LLP
                                                 601 New Jersey Avenue NW
                                                 Suite 620
                                                 Washington, DC 20001
                                                 (202) 875-8000
                                                 jnanavati@kflaw.com

                                                 *Counsel for Defendant Paul J. Manafort, Jr.*

---

867 F.3d 1265 (D.C. Cir. 2017).  Here, the Special Counsel does not dispute that the search warrant
failed to incorporate the affidavit.

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of May, 2018, I will electronically file the

foregoing with the Clerk of Court using the CM/ECF system, which will then send a

notification of such filing (NEF) to the following:

Andrew A. Weissman
Greg D. Andres
U.S. Department of Justice
Special Counsel's Office
950 Pennsylvania Avenue NW
Washington, DC 20530
Telephone: (202) 616-0800
Email: AAW@usdoj.gov
         GDA@usdoj.gov


                                              s/ Jay R. Nanavati
                                              Jay R. Nanavati (VSB No. 44391)
                                              Kostelanetz & Fink LLP
                                              601 New Jersey Avenue NW
                                              Suite 620
                                              Washington, DC 20001
                                              (202) 875-8000
                                              jnanavati@kflaw.com

                                              *Counsel for Defendant Paul J. Manafort, Jr.*