# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA
## Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PAUL J. MANAFORT, JR.,<br><br>Defendant. | Crim. No. 1:18-CR-83 (TSE) |

## GOVERNMENT'S MOTION FOR USE OF JUROR QUESTIONNAIRE

Pursuant to Rule 24 of the Federal Rules of Criminal Procedure, the United States of America, by and through Special Counsel Robert S. Mueller, III, respectfully moves the Court to authorize the use of a written questionnaire to be completed by prospective jurors in this case as a supplement to oral voir dire. A proposed questionnaire is attached to this filing as Exhibit 1.

## INTRODUCTION

Both the defendant and the government are entitled to an impartial jury untainted by prejudicial pretrial publicity. Where there has been significant media attention to a prosecution, courts often employ jury selection procedures to help identify prejudice that may exist. Both the Special Counsel's investigation and this case in particular have received significant public attention. Potential jurors may have biases or pre-formed opinions as a result of exposure of the widespread media attention. In light of these circumstances, the government submits that a jury questionnaire in addition to standard voir dire procedures will assist the Court in assuring that this case is tried before an impartial jury.

**ARGUMENT**

A. **Pretrial Publicity About This Case Has Been Extensive**

Paul J. Manafort, Jr. ("Manafort") has been indicted in neighboring districts on two sets of federal charges. Initially, in October 2017, a grand jury in the District of Columbia returned an indictment that, as since superseded, charges Manafort with conspiring to defraud and commit offenses against the United States, money laundering conspiracy, violating the Foreign Agents Registration Act, making false statements to the government, and witness tampering. Superseding Indictment, *United States v. Manafort*, No. 17-cr-201 (D.D.C. June 8, 2018) (Doc. 318). In February 2018, a grand jury in this district returned an indictment that, as since superseded, charges Manafort with five counts of subscribing false tax returns, four counts of failing to file reports of foreign bank and financial accounts, bank fraud conspiracy, and multiple counts of bank fraud. *See* Doc. 9. Trial in this Court is scheduled to begin July 25, 2018; trial in the District of Columbia case is scheduled to begin September 17, 2018.

The Manafort investigation resulting in the above charges has been the subject of extensive media coverage. A Westlaw search of major newspapers for the terms "Manafort" near "trial" or "investigation" yielded over 3,500 results. Similarly, the same search of transcripts of television and radio broadcasts returned over 1,300 hits, including in major news outlets, such as all major television networks and newspapers, but exclusive of social media like Twitter feeds. The reporting, at times inaccurately, comments on the nature of the evidence collected in the case or

activities of the parties.[1] Furthermore, the amount of publicity about this case is only likely to grow as the trial date approaches, and such publicity increases the possibility that jurors will form biases or pre-formed opinions that may prejudice one or both parties.

In addition to the media attention to these criminal cases, there has been extensive publicity relating to the Special Counsel's investigation generally. Some of the media accounts question the legitimacy of the Special Counsel's investigation, tending to advance the opinion that the investigation is "tainted" and therefore its results are suspect.[2] Other media accounts, by contrast, include disparaging descriptions of the defendant.[3]

Adverse pretrial publicity can be a significant source of potential prejudice. "In an era of rapid and widespread communications, trial courts must be vigilant to ensure that jurors are not biased and trials are not compromised by media attention surrounding a case." *United States v. Bakker*, 925 F.2d 728, 734 (4th Cir. 1991). The nature and scope of the publicity surrounding this matter raises a substantial danger that potential jurors may already have formed opinions about the

---

[1] *See, e.g.*, 6/15/2018 Tr. 9:3-21, *United States v. Manafort*, 17-Cr-201 (D.D.C.) (THE COURT: "But, I do question the publication of the completely unsupported speculation that this revelation was an intentional leak by the Office of Special Counsel. No reporter had any facts to base that on, so I'm not sure why anyone printed it. It's not responsible."); *see also* Sharon LaFraniere et al., *With a Picked Lock and a Threatened Indictment, Mueller's Inquiry Sets a Tone*, N.Y. Times, Sept. 18, 2017, https://www.nytimes.com/2017/09/18/us/politics/mueller-russia-investigation.html; Radley Balko, *No-knock Raids Like The One Against Paul Manafort Are More Common Than You Think*, Wash. Post, Aug. 10, 2017, available at https://www.washingtonpost.com/news/the-watch/wp/2017/08/10/no-knock-raids-like-the-one-against-paul-manafort-are-more-common-than-you-think/?noredirect=on&utm_term=.98e81b5c1cf9 (incorrectly reporting that federal agents who executed search warrant at Manafort's residence did not knock on the front door and picked the lock to enter).

[2] *See, e.g.*, Adriana Cohen, *Dirty Robert Mueller Inquiry Must Be Suspended*, Boston Herald, Feb. 3, 2018, at 6.

[3] *See, e.g.*, Virginia Heffernan, *Paul Manafort is in the klink. It's OK to be pleased*, L.A. Times, June 16, 2018, available at http://www.latimes.com/opinion/op-ed/la-oe-heffernan-manafort-jailed-20180616-story.html.

3

defendant's guilt or innocence, may have developed views about the Special Counsel's investigation, or may otherwise be affected in their ability to consider the case impartially.

> **B.     Use of a Written Juror Questionnaire Will Help Ensure Any Prejudice Will Be Uncovered**

Voir dire "enable[s] the court to select an impartial jury and assist[s] counsel in exercising peremptory challenges." *Mu'Min v. Virginia*, 500 U.S. 415, 431 (1991). The conduct of voir dire is generally committed to the discretion of the trial court. *See United States v. Lancaster*, 96 F.3d 734, 738 (4th Cir. 1996); *see also United States v. LaRouche*, 896 F.2d 815, 829 (4th Cir. 1990). But "[a] district court abuses its discretion . . . if the voir dire does not provide "'a reasonable assurance that prejudice would be discovered if present.'" *Lancaster*, 96 F.3d at 740 (citations omitted). Juror questionnaires used in conjunction with follow-up voir dire are well suited to address pretrial publicity, and experience shows the efficacy of these procedures. *See Skilling v. United States*, 561 U.S. 358, 388 (2010) (citing "comprehensive" juror questionnaire and individual juror questioning to support finding that voir dire was adequate to select impartial jury in case involving widespread pretrial publicity.)

Although the Supreme Court has noted that a trial court's discretion as to how it conducts voir dire regarding pretrial publicity is "wide," *see Mu'Min v. Virginia*, 500 U.S. at 427, and the Fourth Circuit and this Court have held that written juror questionnaires are not always required where prejudicial publicity is alleged, *see Bakker*, 925 F.2d at 733-34 (it was not error for trial court to decline to allow written questionnaire); *United States v. Rivera*, 292 F. Supp. 2d 823, 826 n.3 (E.D. Va. 2003) (motion for juror questionnaire was properly denied), this Court has used

written questionnaires in similar circumstances where pretrial publicity was particularly broad.[4]
Written questionnaires assist both the parties and the court, and have important advantages over oral voir dire alone both in exposing bias and in serving the interests of judicial efficiency and economy. The advantages of written questionnaires include the following:

- Written questionnaires are more private, and encourage honesty, particularly about sensitive issues involving bias and prejudice that are critical in this case.

- Written questionnaires reduce the influence of "evaluation anxiety," which causes potential jurors to temper their answers because they know they are being evaluated by the court and the attorneys as they speak.

- Written responses are not influenced by answers given by other members of the venire.

- Written responses revealing prejudicial information seen or heard by one potential juror will not taint the entire jury pool as an oral response might.

- Written responses are not influenced by the characteristics or qualities of the interviewer.

- Written questionnaires provide more information about each potential juror than would be obtained in oral questioning, particularly when open-ended questions are used, and in less time.

- Written questionnaires streamline the jury selection process by allowing the court and counsel to focus more quickly on areas of concern during voir dire.

*See generally* Lilley, "Let Jurors Speak the Truth, in Writing," 41 JUL *Trial* 64 (2005); American Bar Association, Principles for Juries and Jury Trials, Principle 11(A)(1) (2005) (suggesting use, in appropriate cases, of a "specialized questionnaire addressing particular issues that may arise"); Vidmar, "Case Studies of Pre- and Midtrial Prejudice in Criminal and Civil Litigation," 26 *Law*

---

[4] *United States v. Anthony Burfoot*, No. 2:16CR6; *United States v. Robert McDonnell*, No. 3:14CR12; *United States v. William Jefferson*, No. 1:07CR209; *United States v. Zacarias Moussaoui*, No. 1:01CR455; *United States v. Ahmed Omar Abu Ali*, No. 1:05CR53; *United States v. Ali Al-Timimi*, No. 1:04CR385; *United States v. Denis Rivera, et al.*, No. 1:04CR283; *United States v. Seifullah Chapman, et al.*, No. 1:03CR296 (jury waived); *United States v. Jay Lentz*, No. 1:01CR150; *United States v. Christopher Andaryl Wills*, No. 1:99CR396; *United States v. Brian Regan*, No. 1:01CR405; *United States v. Jean Claude Oscar et al.*, No. 2:93CR131.

*and Human Behavior*, No. 1 (Feb. 2002); Seltzer, Venuti & Lopes, "Juror Honesty During the Voir Dire," 19 *Journal of Criminal Justice*, 451-62 (1991).

In addition to this Court, other federal courts have recognized the value of using written questionnaires to supplement oral voir dire, particularly in high profile cases. *See Skilling*, 561 U.S. at 388-89. In *United States v. Rahman et al.*, 189 F.3d 88, 121 (2d Cir. 1999), in which the defendants appealed convictions in connection with bombing the World Trade Center, the Second Circuit approved the trial court's use of a juror questionnaire that covered, among other things, pretrial publicity and was followed by individual oral voir dire. As in *Skilling*, the Second Circuit noted that combining the written questionnaire with oral voir dire resulted in an improved voir dire: "[The district court's] voir dire skillfully balanced the difficult task of questioning such a large jury pool with the defendants' right to inquire into the sensitive issues that might arise in the case." *Id*. at 122; *see also United States v. Bobbitt*, 203 F.3d 822, 2000 WL 102925, at *4 (4th Cir. 2000) (noting trial court's use of juror questionnaire as part of an appropriate voir dire procedure exploring pretrial publicity in bank robbery and murder case); *United States v. Blom*, 242 F.3d 799, 804 (8th Cir. 2001) (noting that precautions taken by trial court to assure selection of an unbiased jury included mailing written questionnaires to prospective jurors asking about exposure to pretrial publicity).

The government submits with this motion a proposed juror questionnaire designed to inform the Court and the parties of issues that could reveal impermissible bias and partiality. *See* Exhibit 1. The United States respectfully submits that use of this questionnaire in addition to oral voir dire will assist both the Court and the parties in selecting an impartial jury in this case. The proposed questionnaire also includes background questions to assist in streamlining voir dire and

is targeted to probe the critical issues in this case.[5] The government provided the proposed jury questionnaire to defense counsel and solicited input but did not receive a response.

## **CONCLUSION**

For the reasons set forth above, the United States respectfully submits that the Court should grant the motion and permit the use of the proposed written jury questionnaire as a supplement to oral voir dire in this case.

                                                   Respectfully submitted,

                                                  ROBERT S. MUELLER, III
                                                  Special Counsel

Dated: June 21, 2018                                       /s/
                                                          Andrew Weissmann
Uzo Asonye                                                         Greg D. Andres
Assistant United States Attorney                Special Assistant United States Attorneys
Eastern District of Virginia                          Special Counsel's Office

                                                  U.S. Department of Justice
                                                  950 Pennsylvania Avenue NW
                                                  Washington, D.C. 20530
                                                  Telephone: (202) 616-0800

                                                  *Attorneys for the United States of America*

---

[5] If the Court denies the instant motion, the government respectfully requests that the Court use the jury questionnaire during oral voir dire.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 21st day of June, 2018, I will cause to be filed electronically the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Thomas E. Zehnle (VA Bar No. 27755)
Law Office of Thomas E. Zehnle
601 New Jersey Avenue, N.W., Suite 620
Washington, D.C. 20001
tezehnle@gmail.com

Jay R. Nanavati (VA Bar No. 44391)
Kostelanetz & Fink LLP
601 New Jersey Avenue, N.W., Suite 620
Washington, D.C. 20001
jnanavati@kflaw.com

                                                /s/
                                                Uzo Asonye
                                                Assistant United States Attorney
                                                U.S. Attorney's Office
                                                Eastern District of Virginia
                                                2100 Jamieson Avenue
                                                Alexandria, VA 22314
                                                uzo.asonye@usdoj.gov
                                                Phone: (703) 299-3700
                                                Fax: (703) 299-3981

                                                *Attorney for the United States of America*