No. 18-3037

IN THE

# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

UNITED STATES OF AMERICA,

*Appellee,*

V.

PAUL J. MANAFORT, JR.,

*Appellant.*

## MEMORANDUM OF LAW AND FACT FOR APPELLANT PAUL J. MANAFORT, JR.

Kevin M. Downing
Law Office of Kevin M. Downing
601 New Jersey Avenue, N.W.,
  Suite 620
Washington, D.C.  20001
Telephone:  (202) 754-1992
kevindowning@kdowninglaw.com


Thomas E. Zehnle
Law Office of Thomas E. Zehnle
601 New Jersey Avenue, N.W.,
  Suite 620
Washington, D.C.  20001
Telephone:  (202) 368-4668
tezehnle@gmail.com

Frank P. Cihlar
  *Counsel of Record*
Law Office of Frank Cihlar
601 New Jersey Avenue, N.W.,
  Suite 620
Washington, D.C.  20001
Telephone:  (703) 635-8147
fcihlar@erols.com


Richard W. Westling
Epstein Becker & Green, P.C.
1227 25th Street, N.W.,
  Suite 700
Washington, D.C.  20037
Telephone:  (202) 861-1868
rwestling@ebglaw.com

*Counsel for Paul J. Manafort, Jr.*

## CERTIFICATE OF PARTIES, RULINGS, AND RELATED CASES

### I.  PARTIES

The parties to this proceeding are as follows:

#### A.  Appellant

Paul J. Manafort, Jr.

#### B.  Respondent

The United States of America

### II.  RULING UNDER REVIEW

Appellant seeks review of the order:

> *Detention Order*, No. 1:17-cr-00201-ABJ-1, Dkt. 328
> (D.D.C. June 15, 2018)

### III.  RELATED CASES

The challenged order has not previously been reviewed by a court.  The case

from which this appeal is taken remains active in the district court (*United States v.*

*Paul J. Manafort, Jr.*, No. 1:17-cr-00201-ABJ-1 (D.D.C.)).

Mr. Manafort is also facing criminal charges filed by the same Special

Counsel in the Eastern District of Virginia (*United States v. Paul J. Manafort, Jr.*,

No. 1:18-cr-00083 (E.D. Va.)).

Mr. Manafort filed an action in the United States District Court for the

District of Columbia challenging the appointment of the Special Counsel and the

Special Counsel's authority to bring the charges against him (*Paul J. Manafort, Jr.*

*v. U.S. Dep't of Justice*, No. 1:18-cv-00011 (D.D.C.)).  The order dismissing the

Complaint in that case is on appeal to this Court (No. 18-5193).


July 5, 2018                          Respectfully submitted,

                                      ___/s/ Frank P. Cihlar_____
                                      Frank P. Cihlar
                                         *Counsel of Record*
                                      Law Office of Frank Cihlar
                                      601 New Jersey Avenue N.W.,
                                         Suite 620
                                      Washington, D.C.  20001
                                      Telephone:  (703) 635-8147
                                      fcihlar@erols.com

                                      *Counsel for Paul J. Manafort, Jr.*

# **TABLE OF CONTENTS**

Page

CERTIFICATE OF PARTIES, RULINGS, AND RELATED CASES ................... i

TABLE OF CONTENTS ................................................................................. iii

TABLE OF AUTHORITIES ............................................................................ v

GLOSSARY ................................................................................................. viii

INTRODUCTION .......................................................................................... 1

JURISDICTIONAL STATEMENT ................................................................ 2

ISSUES PRESENTED .................................................................................... 2

STATUTES ..................................................................................................... 2

STATEMENT OF THE CASE ....................................................................... 2

    I.    The Appointment of the Special Counsel ...................................... 2

    II.   The Charges Against Mr. Manafort in the Court Below ............................. 4

        A.   The Indictments and Mr. Manafort's Release ............................ 4

        B.   The Gag Order ............................................................................ 5

    III. The Charges Against Mr. Manafort in the District Court for the Eastern
        District of Virginia .................................................................... 6

        A.   The Indictment and Superseding Indictment in the Eastern District ........ 6

        B.   The Eastern District's Order Not To Communicate with Witnesses ......... 7

    IV.   The Bail-Revocation Proceedings ................................................ 7

        A.   The New Obstruction Charges and Associated Motion
           To Revoke Bail .......................................................................... 7

        B.   The Hearing and Detention Order ............................................. 9

STANDARD OF REVIEW ............................................................................ 9

ARGUMENT ............................................................................................... 10

    I. The District Court Committed Legal and Clear Factual Error in
    Concluding That No Combination of Conditions Would Assure the
    Safety of the Community ................................................................. 10

        A.   The District Court Failed To Assess the Strength of the Evidence
           Against Mr. Manafort as Required by Statute ......................... 10

        B.   The Evidence Against Mr. Manafort Is Weak ........................ 15

II. The District Court's Conclusion That Mr. Manafort Is Unlikely
To Abide by Conditions of Release Rests on Error.........................................18

    A.   The District Court's Reliance on the June Superseding Indictment
Was Erroneous .........................................................................................18

    B.   The District Court's Reliance on the Eastern District of Virginia's
Pretrial Release Order Was Erroneous....................................................19

    C.   The District Court Likewise Erred in Relying on the Gag Order............20

CONCLUSION....................................................................................................22

CERTIFICATE OF COMPLIANCE....................................................................24

STATUTORY ADDENDUM ..............................................................................25

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### CASES

*Florida v. Harris*, 568 U.S. 237 (2013) ....................................................................18

*In re Halkin*, 598 F.2d 176 (D.C. Cir. 1979), *rev'd on other grounds*,
    *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984).............................................21

*United States v. Aron*, 904 F.2d 221 (5th Cir. 1990)..............................................18

*United States v. Bazuaye*, 82 F. App'x 734 (2d Cir. 2003) .......................................9

*United States v. Cook*, 880 F.2d 1158 (10th Cir. 1989) (per curiam).....................12

*United States v. Coumaris*, 399 F.3d 343 (D.C. Cir. 2005)....................................15

*United States v. Davis*, 845 F.2d 412 (2d Cir. 1988)..............................................16

*United States v. Ford*, 830 F.2d 596 (6th Cir. 1987)..............................................21

*United States v. Gotti*, 794 F.2d 773 (2d Cir. 1986)..........................................10, 18

*United States v. Gurr*, 471 F.3d 144 (D.C. Cir. 2006)...........................................15

*United States v. LaFontaine*, 210 F.3d 125 (2d Cir. 2000) ................................9, 10

*United States v. Morrison*, 98 F.3d 619 (D.C. Cir. 1996) ......................................15

*United States v. Nwokoro*, 651 F.3d 108 (D.C. Cir. 2011) (per curiam)................12

*United States v. Portes*, 786 F.2d 758 (7th Cir. 1985)............................................13

*United States v. Rodriguez*, 950 F.2d 85 (2d Cir. 1991).........................................13

*United States v. Simpkins*, 826 F.2d 94 (D.C. Cir. 1987) .......................................12

*United States v. Singleton*, 182 F.3d 7 (D.C. Cir. 1999) ........................................12

*United States v. Wingo*, 490 F. App'x 189 (11th Cir. 2012) ...................................11

## STATUTES AND RULES

18 U.S.C. § 1512(b)(1) ..............................................................................8, 15, 17

18 U.S.C. § 3142 ..........................................................................................11, 12

18 U.S.C. § 3142(f) .............................................................................................12

\* 18 U.S.C. § 3142(g) ....................................................................................*passim*

18 U.S.C. § 3142(g)(2) ...........................................................................10, 11, 14

18 U.S.C. § 3145(c) ...............................................................................................2

\* 18 U.S.C. § 3148 .........................................................................................12, 16

18 U.S.C. § 3148(b) .....................................................................................9, 10, 13

\* 18 U.S.C. § 3148(b)(2)(A) .........................................................................*passim*

18 U.S.C. § 3148(b)(2)(B) ..................................................................................21

18 U.S.C. § 3231 ...................................................................................................2

28 U.S.C. § 1291 ...................................................................................................2

D.C. Cir. R. 47.2(a) ..............................................................................................4

## OTHER AUTHORITIES

Matt Apuzzo, *et al.*, *Comey Confirms Inquiry on Russia and Trump
    Allies*, N.Y. TIMES, Mar. 21, 2017 ......................................................2

Indictment (Sealed), *United States v. Manafort*,
    No. 1:18-cr-00083, Dkt. 1 (E.D. Va. Feb. 13, 2018) ...........................6

Carol D. Leonnig, *et al.*, *FBI Conducted Predawn Raid of Former
    Trump Campaign Chairman Manafort's Home*, WASH. POST,
    Aug. 9, 2017 ..........................................................................................3

Office of the Deputy Att'y Gen., *Appointment of Special Counsel To
    Investigate Russian Interference with the 2016 Presidential
    Election and Related Matters* (May 17, 2017),
    https://www.justice.gov/opa/press-release/file/967231/download .......3

Order, *United States v. Manafort*, No. 1:18-cr-00083, Dkt. 25
(E.D. Va. Mar. 9, 2018) ............................................................................7, 19, 20

Order, *United States v. Manafort*,
No. 1:18-cr-00083, Dkt. 84 (E.D. Va. June 11, 2018) .........................................7

Press Release, U.S. Dep't of Justice, *Attorney General Sessions
Statement on Recusal* (Mar. 2, 2017)......................................................................3

Redacted Indictment, *United States v. Manafort*,
No. 1:18-cr-00083, Dkt. 14 (E.D. Va. Feb. 13, 2018)..........................................6

Superseding Indictment, *United States v. Manafort*,
No. 1:18-cr-00083, Dkt. 9 (E.D. Va. Feb. 22, 2018)..................................6, 7, 19

# <u>GLOSSARY</u>

| | |
|---|---|
| *Appointment Order* | Office of the Deputy Att'y Gen., *Appointment of Special Counsel To Investigate Russian Interference with the 2016 Presidential Election and Related Matters* (May 17, 2017), https://www.justice.gov/opa/press-release/file/967231/download. |
| *Bail Revocation Mot.* | Government's Motion To Revoke or Revise Defendant Paul J. Manafort, Jr.'s Current Order of Pretrial Release, *United States v. Manafort*, Dkt. 315 (D.D.C. June 4, 2018).[1] |
| *Bond Hr'g Tr.* | Bond Review Hearing Transcript, *United States v. Manafort*, Dkt. 37 (D.D.C. Nov. 6, 2017). |
| *D.D.C. Pretrial Release Order* | Release to PSA's High Intensity Supervision Program, *United States v. Manafort*, Dkt. 9 (D.D.C. Oct. 30, 2017). |
| *Detention Order* | Detention Order, *United States v. Manafort*, Dkt. 328 (D.D.C. June 15, 2018). |
| *E.D. Va. Pretrial Release Order* | Order, *United States v. Manafort*, No. 1:18-cr-00083, Dkt. 25 (E.D. Va. Mar. 9, 2018). |
| *E.D. Va. Superseding Indictment* | Superseding Indictment, *United States v. Manafort*, No. 1:18-cr-00083, Dkt. 9 (E.D. Va. Feb. 22, 2018). |
| *Feb. Superseding Indictment* | Superseding Indictment, *United States v. Manafort*, Dkt. 202 (D.D.C. Feb. 23, 2018). |
| *Gag Order* | Order, *United States v. Manafort*, Dkt. 38 (D.D.C. Nov. 8, 2017). |

---

[1] Unless otherwise noted, all references to "Dkt." are to the district court's docket in the case below, No. 1:17-cr-00201 (D.D.C.).

| *Hr'g Tr.* | Transcript of Proceedings, *United States v. Manafort*, Dkt. 329 (D.D.C. June 15, 2018).[2] |
| --- | --- |
| *June Superseding Indictment* | Superseding Indictment, *United States v. Manafort*, Dkt. 318 (D.D.C. June 8, 2018). |
| *Reply Mem.* | Defendant Paul J. Manafort, Jr.'s Reply Memorandum to the Government's Opposition to Motion To Modify Conditions of Release and Response to Minute Order Dated December 5, 2017, *United States v. Manafort*, Dkt. 79 (D.D.C. Dec, 7, 2017). |
| *Status Conf. Tr.* | Transcript of Status Conference, *United States v. Manafort*, Dkt. 112 (D.D.C. Dec. 11, 2017). |

---

[2] The transcript of the hearing on the government's motion to revoke or revise release is not yet publicly available.  On June 25, Mr. Manafort's counsel requested that the district court clerk transmit the transcript to this Court as required by this Court's Rule 47.2(a).

## INTRODUCTION

Defendant Paul J. Manafort, Jr. is currently facing two federal criminal trials in separate districts:  One is set to begin on July 25, the other on September 17. The decision under review, revoking Mr. Manafort's bail less than 45 days before the first of those impending trials, makes it effectively impossible for Mr. Manafort to prepare for them.  Mr. Manafort, moreover, is now housed in solitary confinement because the facility cannot otherwise guarantee his safety.  He is locked in his cell for at least 23 hours per day (excluding visits from his attorneys), at a facility approximately two hours from his legal team.[1]

The detention order—which has already prejudiced Mr. Manafort's trial preparation profoundly—is fatally flawed.  The district court did not assess the weight of the evidence against Mr. Manafort, which was weak, despite a statutory requirement to do so.  That legal error alone warrants reversal.

The court also asserted that Mr. Manafort was unlikely to abide by any conditions of release.  But that ruling rested on a superseding indictment that is insufficient to support that assertion, a clearly and legally erroneous determination that Mr. Manafort had violated a release order from another judicial district, and a clear *non*-violation of a gag order imposed by the court below.  Because the

---

[1] The facility and U.S. Marshals have acted with professionalism and respect in their efforts to ensure Mr. Manafort's safety.  They have simply determined that, if Mr. Manafort is to be detained, solitary confinement is the only way to ensure his security.

alleged conduct could not have violated any of those orders, they cannot support the conclusion that Mr. Manafort is unlikely to abide by any conditions of release. The district court's June 15, 2018 detention order should be vacated.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 18 U.S.C. §3231.  This Court has jurisdiction under 28 U.S.C. §1291 and 18 U.S.C. §3145(c).

## ISSUES PRESENTED

1.      Whether the district court departed from statutory requirements, or otherwise clearly erred, in concluding that no combination of conditions will assure that Mr. Manafort will not pose a danger to the safety of the community.

2.      Whether the district court erred by invoking wholly permissible, non-violations of prior orders to support its conclusion that Mr. Manafort is unlikely to abide by any conditions of release.

## STATUTES

Pertinent statutes are set forth in the Addendum.

## STATEMENT OF THE CASE

### I.    THE APPOINTMENT OF THE SPECIAL COUNSEL

In early 2017, the Department of Justice revealed that it was investigating allegations that Donald J. Trump's presidential campaign had coordinated with the Russian government to influence the 2016 presidential election.  *See* Matt Apuzzo, *et al.*, *Comey Confirms Inquiry on Russia and Trump Allies*, N.Y. TIMES, Mar. 21,

2017, at A1.  The Attorney General recused himself from any investigation into that subject, appointing the Deputy Attorney General as Acting Attorney General with respect to those matters.  Press Release, U.S. Dep't of Justice, *Attorney General Sessions Statement on Recusal* (Mar. 2, 2017).  The Deputy Attorney General then issued an Appointment Order naming Robert S. Mueller III as Special Counsel for the investigation.  *Appointment Order*, https://www.justice.gov/opa/press-release/file/967231/download, ¶(a).

The Appointment Order purports to authorize the Special Counsel to investigate "(i) any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump; [and] (ii) any matters that arose or may arise directly from the investigation."  *Appointment Order* ¶¶(b)(i)-(ii).  The Order further purports to authorize the Special Counsel "to prosecute federal crimes arising from [his] investigation."  *Id.* ¶(c).  At least as early as July 2017, the Special Counsel began investigating Mr. Manafort.  *See* Carol D. Leonnig, *et al.*, *FBI Conducted Predawn Raid of Former Trump Campaign Chairman Manafort's Home*, WASH. POST, Aug. 9, 2017.[2]

---

[2] In a separate civil proceeding, Mr. Manafort challenged the Appointment Order and the Special Counsel's actions pursuant thereto as in excess of the Acting Attorney General's authority.  *See Manafort v. U.S. Dep't of Justice*, No. 1:18-cv-00011 (D.D.C.).  The district court dismissed the Complaint, and that ruling is currently on appeal to this Court (No. 18-5193).

## II.    THE CHARGES AGAINST MR. MANAFORT IN THE COURT BELOW

### A.    The Indictments and Mr. Manafort's Release

On October 27, 2017, the Special Counsel signed a nine-count indictment against Mr. Manafort relating to Mr. Manafort's 2006-to-2014 consulting work for the Ukrainian government, a Ukrainian political party, and a Ukrainian politician. *See* Dkt. 13 ¶¶ 1-6.[3]  Three days later, Mr. Manafort was released on a $10 million personal surety bond with home confinement and pretrial supervision, including GPS monitoring. *See D.D.C. Pretrial Release Order*, Dkt. 9.

In ordering release pending trial, the court found that Mr. Manafort was not a danger to any person or the community. *See Bond Hr'g Tr.*, Dkt. 37, at 9 ("[D]angerousness [is] . . . not an issue.").  The conditions of release included the standard condition that Mr. Manafort not "commit any criminal offense" while released. *D.D.C. Pretrial Release Order* 2.  The conditions did not include any provision prohibiting contact with potential witnesses. *See id.*

The Special Counsel has since signed a series of superseding indictments against Mr. Manafort.  One was unsealed on February 23, 2018, also relating to Mr. Manafort's consulting work in Ukraine.  Among the new allegations was the

---

[3] Unless otherwise noted, "Dkt." references are to the district court's docket in the case below, No. 1:17-cr-00201 (D.D.C.).  On June 25, counsel for Mr. Manafort requested that the district court clerk transmit a certified copy of the docket entries to this Court as required by this Court's Rule 47.2(a).  The Glossary identifies the docket entries primarily relied upon.

claim that Mr. Manafort had hired a "group of former senior European politicians to take positions favorable to Ukraine." *Feb. Superseding Indictment*, Dkt. 202 ¶30. That indictment also charged Mr. Manafort with Foreign Asset Registration Act ("FARA") and Financial Bank Account Reporting ("FBAR") violations. *See id.* ¶¶32-50.

**B.      The Gag Order**

On November 8, 2017, the district court entered an order prohibiting "the parties . . . and counsel . . . from making statements to the media or in public settings that ***pose a substantial likelihood of material prejudice*** to this case." *Gag Order*, Dkt. 38, at 2 (emphasis added). On December 4, the Special Counsel filed a memorandum alleging that Mr. Manafort had "taken actions that reflect an intention to violate or circumvent" the gag order, by helping to "ghostwrit[e]" an article "regarding his political work for Ukraine." Dkt. 73, at 2-3.

In response to the district court's show-cause order, Dec. 5, 2017 Minute Entry, Mr. Manafort explained that the article had been authored by a Ukrainian national for publication in *Kyiv Post*, a Ukrainian newspaper. *See Reply Mem.*, Dkt. 79, at 2. Mr. Manafort's role had been limited to providing edits "to ensure [the article's] accuracy" and "to correct the public record ***in Ukraine*** concerning his consulting activities ***in Ukraine***." *Id.* But for the ***Special Counsel's*** filing, the article likely would never have been seen by anyone in the U.S. or publicly

attributed to Mr. Manafort.  *See id.* at 2-3.  Mr. Manafort underscored that there was no tension between his actions and the order, which covers only statements that "pose a substantial likelihood of material prejudice to this case," *Gag Order* 2. *See Reply Mem.* 3.

The court took no action against Mr. Manafort, acknowledging that the *Kyiv Post*'s website was "probably not the most popular."  *Status Conf. Tr.*, Dkt. 112, at 11-12.  Nevertheless, the court found that it may not have been clear to Mr. Manafort that his involvement with the opinion piece may have violated the gag order.  *See id.* at 10-11.  The court therefore cautioned that it was "likely to view similar conduct in the future to be an effort to circumvent and evade" the order.  *Id.* at 12.  The district court dismissed the show-cause order.  Dec. 5, 2017 Minute Entry.

### III.   THE CHARGES AGAINST MR. MANAFORT IN THE DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA

#### A.   The Indictment and Superseding Indictment in the Eastern District

In February 2018, the Special Counsel signed a sealed indictment against Mr. Manafort in the Eastern District of Virginia.  Indictment, *United States v. Manafort*, No. 1:18-cr-00083, Dkts. 1, 14 (E.D. Va. Feb. 13, 2018).  About a week later, the Special Counsel obtained a superseding indictment charging Mr. Manafort with *tax* offenses, *FBAR* violations, and *bank fraud*.  *See E.D. Va.*

6

*Superseding Indictment*, Dkt. 9.   Unlike the District of Columbia indictments, the Eastern District of Virginia superseding indictment does ***not*** include FARA charges.  *See id.*

Mr. Manafort is currently scheduled to begin trial in the Eastern District of Virginia on July 25, 2018.  *See* Order, *United States v. Manafort*, No. 1:18-cr-00083, Dkt. 84 (E.D. Va. June 11, 2018).

## B.   The Eastern District's Order Not To Communicate with Witnesses

The district court allowed Mr. Manafort to remain on release subject to conditions substantially similar to those imposed by the D.C. district court.  *See E.D. Va. Pretrial Release Order*, Dkt. 25, at 2.  It, however, added the condition that Mr. Manafort "avoid all contact, directly or indirectly, with any person who is a victim or witness in the investigation or prosecution of the defendant."  *Id.* at 3. That condition is not contained in the D.D.C. Pretrial Release Order or any other order of that court.  *See D.D.C. Pretrial Release Order*.

## IV.   THE BAIL-REVOCATION PROCEEDINGS

## A.   The New Obstruction Charges and Associated Motion To Revoke Bail

On June 4, 2018, the Special Counsel filed a motion to revoke Mr. Manafort's pretrial release, arguing that he had allegedly "'commit[ted] a[] criminal offense'" while released, in violation of the pretrial release order.  *Bail Revocation Mot.*, Dkt. 315, at 2 (quoting *D.D.C. Pretrial Release Order*).  The

Special Counsel asserted that Mr. Manafort had violated the federal witness-tampering statute, 18 U.S.C. § 1512(b)(1), directly and through an intermediary.

In particular, the Special Counsel alleged Mr. Manafort had contacted and attempted to contact two individuals associated with a European public-relations firm to discuss the "Hapsburg Group," which was allegedly involved with "the secret retention of a group of former senior European politicians." *Bail Revocation Mot.* 1, 3; *see* pp. 4-5, *supra*. The Special Counsel claimed those individuals were "potential witnesses" against Mr. Manafort in the D.D.C. prosecution, although neither had been identified or referenced in the then-operative (February 2018) superseding indictment. *Bail Revocation Mot.* 1. Aside from sending a link to a news article, the entirety of the alleged contact by Mr. Manafort were the statements, undisputedly true, that "this is paul" and that "[w]e should talk. I have made clear that they worked in Europe." *Id.* at 5-6.

Shortly after filing its motion, the government filed another superseding indictment against Mr. Manafort and a new defendant, Konstantin Kilimnik. *See June Superseding Indictment*, Dkt. 318. That Indictment added obstruction of justice charges based on the alleged contacts and attempted contacts with the two individuals associated with a European public-relations firm, as discussed above. *See id.* ¶¶31, 48-51.

**B.      The Hearing and Detention Order**

On June 15, 2018, the district court held a hearing and issued a detention order.   The court determined that the June Superseding Indictment created "a rebuttable presumption . . . that no . . . combination of conditions w[ould] assure that the [defendant] will not pose a danger to the safety of any other person or the community," 18 U.S.C. § 3148(b).  *See Hr'g Tr.*, Dkt. 329, at 11.

The court found that Mr. Manafort had presented enough evidence to carry his burden of production toward rebutting the presumption.  *See Hr'g Tr.* 22-23. But, without evaluating the weight of the evidence underlying the charges, or any of the factors listed in 18 U.S.C. § 3142(g), the court asserted that "the presumption ha[d] not been overcome," and ordered Mr. Manafort remanded to custody. *Detention Order*, Dkt. 328, at 19.  Mr. Manafort timely appealed.  *See* Dkt. 335.[4]

## STANDARD OF REVIEW

"[C]onclusions of law" supporting a pretrial detention order are reviewed "*de novo*."  *United States v. Bazuaye*, 82 F. App'x 734, 734 (2d Cir. 2003).  An appellate court will not "affirm the district court's order of detention" if "the district judge . . . committed an error of law."  *United States v. LaFontaine*, 210 F.3d 125, 130 (2d Cir. 2000) (quotation marks omitted).  Whether "a package of bail conditions will prevent danger to the community" is reviewed for clear error.

---

[4] The district court denied release pending appeal.  *See Detention Order* 1.

*Id.* Whether a person is "unlikely to abide by any conditions of release" is also reviewed for clear error. *United States v. Gotti*, 794 F.2d 773, 779 (2d Cir. 1986).

## ARGUMENT

### I. THE DISTRICT COURT COMMITTED LEGAL AND CLEAR FACTUAL ERROR IN CONCLUDING THAT NO COMBINATION OF CONDITIONS WOULD ASSURE THE SAFETY OF THE COMMUNITY

#### A. The District Court Failed To Assess the Strength of the Evidence Against Mr. Manafort as Required by Statute

1.   The bail-revocation statute requires a finding that "no condition or combination of conditions of release . . . will assure that [Mr. Manafort] will not flee or pose a danger to the safety of any other person or the community." 18 U.S.C. §3148(b)(2)(A). The district court made that finding. But the district court never considered the strength of the charges against Mr. Manafort in doing so. That violated the statute and amounts to an "error of law." *LaFontaine*, 210 F.3d at 130.

Section 3148(b), which governs revocation of pretrial release, is clear. A finding that "no condition or combination of conditions of release . . . will assure that the [defendant] will not flee or pose a danger to the safety of any other person or the community" must be "***based on*** the factors set forth in section 3142(g)." 18 U.S.C. §3148(b)(2)(A) (emphasis added). Section 3142(g) provides that, in ordering pretrial detention, a court must consider, among three other factors, "the weight of the evidence against the person." *Id.* §3142(g)(2).

10

The district court failed to do that.  The court recognized that Mr. Manafort had "c[o]me forward with some evidence" that was "largely directed towards the question of whether [he] [had] committed the charged offense," but found that irrelevant because it did not address "whether he posed a danger to the community or [whether] he could be trusted to abide by the Court's orders."  *Detention Order* 15; *see Hr'g Tr.* 28.[5]  That conclusion was wrong:  The defendant's submissions regarding whether he "committed the charged offense" is a mandatory consideration under §§ 3142 and 3148(b)(2)(A).  The statute by its terms says that any determination of whether a "condition[] of release . . . will assure . . . the safety of . . . the community" must be "***based on*** the factors set forth in section 3142(g)."  *See* 18 U.S.C. § 3148(b)(2)(A) (emphasis added); *United States v. Wingo*, 490 F. App'x 189, 191 (11th Cir. 2012) ("To determine whether a condition or combination of conditions of release will assure that the person will not flee or pose a danger to another person or the community, the court must consider[] [the § 3142(g) factors].").  Those factors expressly include "the weight of the evidence against the person."  18 U.S.C. § 3142(g)(2).

That makes sense:  Weak charges, less likely to show guilt, are far less pro-bative of potential danger to the community than strong ones.  This Court's cases

---

[5] The Court may consider the district court's oral findings at the detention hearing and its written Detention Order because the court incorporated its oral findings in its written order.  *See Detention Order* 19.

on initial bail proceedings under §3142—which are not analytically distinct from §3148 revocation proceedings—make that clear. *See United States v. Cook*, 880 F.2d 1158, 1162 (10th Cir. 1989) (per curiam) ("[C]ases interpreting the rebuttable presumption provision in §3142 are analytically apposite" to §3148 analysis.). This Court has made clear that, under §3142, a "judicial officer ***must*** consider several enumerated factors to determine whether conditions short of detention will 'reasonably assure the appearance of the person . . . and the safety of . . . the community.'" *United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999) (emphasis added); *see, e.g.*, *United States v. Simpkins*, 826 F.2d 94, 97 (D.C. Cir. 1987) (court "unable to determine whether [detention] determination [was] supported" because magistrate judge "fail[ed] to address a number of counterbalancing factors enumerated in the [Bail Reform] Act"); *see also United States v. Nwokoro*, 651 F.3d 108, 110 (D.C. Cir. 2011) (per curiam) (similar).

The requirement under §3142 to consider all of the §3142(g) factors applies *a fortiori* to §3148(b)(2)(A). For one thing, §3148(b)(2)(A) requires the ***same*** determination as §3142. *Compare* 18 U.S.C. §3148(b)(2)(A) ("there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community"), *with id.* §3142(f) ("whether any condition or combination of conditions . . . will reasonably assure the appearance of such person as required and the safety of any

12

other person and the community").  For another, §3148(b)(2)(A) *expressly states*
that the determination must be "*based on* the factors set forth in section 3142(g)."
*Id.* §3148(b)(2)(A) (emphasis added).   Section 3148(b)(2)(A)'s command to
consider the §3142(g) factors, including the strength of the evidence, could not be
clearer.  The failure to consider those factors was legal error.

2.  Section 3148 also provides that, "[i]f there is probable cause to believe"
"the person committed a . . . felony" while on release, there is a "rebuttable pre-
sumption" that "no condition or combination of conditions will assure that the per-
son will not pose a danger to the safety of any other person or the community."  18
U.S.C. §3148(b).  The district court asserted that, "[i]n light of the [June] super-
seding indictment," the court did "not need to engage in an independent assessment
of the weight of the evidence," because the existence "of probable cause" itself
"gives rise to a rebuttable presumption [that Mr. Manafort poses a danger to the
community]."  *Detention Order* 11.  That misreads §3148(b).

The §3148(b) presumption that no condition "will assure that the person will
not pose a danger," 18 U.S.C. §3148(b), is "'rebutted' when the defendant meets a
'burden of production' by coming forward with some evidence that he will not flee
or endanger the community if released."  *United States v. Portes*, 786 F.2d 758,
764 (7th Cir. 1985); *see also United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir.
1991) ("[D]efendant must introduce some evidence contrary to the presumed fact

in order to rebut the presumption."). Here, the district court concluded that Mr. Manafort had met his burden of production—and had therefore rebutted the presumption. *See Detention Order* 15 (defendant "came forward with some evidence to rebut the presumption"); *Hr'g Tr.* 23 (similar).[6] In light of that conclusion, § 3148(b)(2)(A) required the district court to determine whether, "***based on the factors set forth in section 3142(g)*** . . . there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community." 18 U.S.C. § 3148(b)(2)(A) (emphasis added). Those factors include "the weight of the evidence" against the person, *id.* § 3142(g)(2), which the district court never considered.

The district court's contrary ruling does not merely defy statutory text. It also makes hash of the statutory purpose. As noted above, the strength of the evidence clearly bears on the likelihood that the defendant poses a danger. Thus, where the charges are not uncontested—because the defendant meets his burden of production—courts should consider whether the evidence is powerful or borderline. The district court failed to do that here.

---

[6] The district court's later statement "that the presumption has not been overcome," *Detention Order* 19, is not inconsistent with its conclusion that Mr. Manafort had rebutted the presumption. The court explained that, even when the defendant successfully rebuts the presumption, the presumption does not go away altogether; rather, it becomes a factor in the § 3148(b)(2)(A) determination of whether he poses a danger to the community. *See id.* at 14-15 (collecting cases).

## B.   The Evidence Against Mr. Manafort Is Weak

The district court's errors were deeply prejudicial.[7]   Consideration of the §3142(g) factors is the linchpin of a §3148(b)(2)(A) bail-revocation determination. Yet the evidence, which the district court ignored, was weak.  Indeed, the evidence of Mr. Manafort's alleged obstruction was so thin as to border on non-existent.

1.     The witness-tampering statute prohibits persons from "knowingly" and "corruptly persuad[ing] another person, or attempt[ing] to do so, . . . with intent to[] influence, delay, or prevent the testimony of any person."   18 U.S.C. §1512(b)(1).  This Court's §1512(b)(1) cases generally involve direct and explicit requests to represent falsehoods to others.  *See, e.g.*, *United States v. Gurr*, 471 F.3d 144, 154 (D.C. Cir. 2006) (defendant "attempted to corruptly persuade a witness . . . to sign an affidavit falsely stating that she had authorized money to be transferred from her account"); *United States v. Morrison*, 98 F.3d 619, 629 (D.C. Cir. 1996) (defendant asked witness to lie if " 'anybody ask[ed]' "); *see also Bail Revocation Mot.* 10-11 (collecting cases).

The evidence here nowhere approaches that.   Mr. Manafort's alleged communications were extremely limited.  They took place only with D1—a person who was not and still is not known to be a witness in the D.D.C. case.  Indeed, that person was not identified in the indictment pending against Mr. Manafort at the

---

[7] The claim of error was preserved.  *See Hr'g Tr.* 36 (urging court to consider §3142(g) factors); *United States v. Coumaris*, 399 F.3d 343, 347 (D.C. Cir. 2005).

time the government filed the bail-revocation motion. *See Feb. Superseding In-dictment.* And the full extent of the alleged communications consisted of one phone call lasting less than 85 seconds, the contents of which were not alleged in the superseding indictment; three attempted phone calls; and three brief unanswered text messages, *see Detention Order* 6 ("'This is paul.'"); *id.* ("'http://www.businessinsider.com/former-european-leaders-manafort-hapsburg group-2018-2?r=UK&IR=T'"); *id.* ("'We should talk. I have made clear that they worked in Europe.'").[8]

Likewise, Person A, who allegedly served as Mr. Manafort's intermediary, had only limited communications with D1 and D2. Almost all of them were messages to D2—who was not and still is not known to be a witness—expressing a general desire to get in touch with D1. *See Detention Order* 6-8 (Mr. Manafort is a "friend" of D1 who was hoping to "brief [D1] on what's going on"; it "would be

_____

[8] At the revocation hearing, the government represented that D1's counsel had provided a proffer of what was said on the phone call. *Hr'g Tr.* 24-25. But that proffer was not included in the motion to revoke Mr. Manafort's pretrial release; Mr. Manafort thus had no opportunity to submit rebuttal evidence, rendering consideration of the call's alleged contents improper. *See Detention Order* 5 n.5; *United States v. Davis*, 845 F.2d 412, 415 (2d Cir. 1988) ("[I]n providing that a rebuttable presumption arises upon a finding of probable cause, §3148 assumes that the defendant will be given an opportunity to present evidence against that presumption."). Moreover, the statements the government represented Mr. Manafort made to D1 were nonsubstantive: Mr. Manafort merely identified himself and stated that he wanted to talk to D1 about the Hapsburg Group to provide an update and give him a "heads-up." *Detention Order* 5 n.5; *see Hr'g Tr.* 25.

great" if D2 "ha[d] a chance to mention this [to D1]"; it "would be good" to connect Mr. Manafort and D1).

None of those contacts come anywhere close to an "attempt[] . . . to[] influence, delay, or prevent the testimony of any person."  18 U.S.C. § 1512(b)(1); *see* p. 15, *supra* (collecting cases).  Neither Mr. Manafort nor Person A asked D1 or D2 to do anything; they did not allude to potential questioning; nor did they state any false information.  The only substantive statement by Mr. Manafort in the record is that he "made clear that they worked in Europe"—which he undeniably has.  *See also* p. 16 n.8, *supra*.  The alleged communications provide the flimsiest evidence of alleged obstruction.

The district court never analyzed whether those statements would support an obstruction charge, much less whether the evidence was weighty.  Instead, it erroneously deemed the issue irrelevant.  *See Detention Order* 15; *Hr'g Tr.* 28. That error of law warrants reversal.  *See* pp. 10-14, *supra*.

Independently, the alleged evidence of obstruction is so thin that it cannot reasonably support the determination that no set of conditions could ensure Mr. Manafort's appearance and the safety of the community.  Whatever else might be said of the solitary phrase he communicated, it is not witness tampering.

## II. THE DISTRICT COURT'S CONCLUSION THAT MR. MANAFORT IS UNLIKELY TO ABIDE BY CONDITIONS OF RELEASE RESTS ON ERROR

### A. The District Court's Reliance on the June Superseding Indictment Was Erroneous

"[A] district court's finding that a defendant will not abide by any conditions of release may be established by a preponderance of the evidence." *United States v. Aron*, 904 F.2d 221, 224 (5th Cir. 1990); *see Gotti*, 794 F.2d at 778 (similar). The court never found that standard met. It instead relied solely on the rebuttable presumption created by the grand jury's probable-cause finding. *See Detention Order* 11.

But an indictment is not issued on a preponderance of the evidence. Indeed, "'[f]inely tuned standards such as proof[, including] . . . by a preponderance of the evidence[,] . . . have no place in the [probable-cause] decision.'" *Florida v. Harris*, 568 U.S. 237, 243-44 (2013) (last two alterations in original). The grand jury thus never found the preponderance of the evidence standard satisfied. *See id.* The district court's determination that Mr. Manafort was unlikely to abide by any conditions of release simply because a grand jury found probable cause to believe he had "committed a felony offense while he was on pretrial release," *Detention Order* 11 (footnote omitted), was thus error. Probable cause cannot substitute for the preponderance of the evidence that is required.

**B.    The District Court's Reliance on the Eastern District of Virginia's Pretrial Release Order Was Erroneous**

In revoking Mr. Manafort's pretrial release, the district court claimed that Mr. Manafort had violated a condition of his release in the Eastern District of Virginia proceedings. *See Detention Order* 18; *Hr'g Tr.* 50. That condition instructed Mr. Manafort to "avoid all contact, directly or indirectly, with any person who is a victim or witness in the investigation or prosecution of the defendant." *E.D. Va. Pretrial Release Order* 3.

That conclusion was clear error. The Eastern District of Virginia Pretrial Release Order does not and cannot encompass any of the alleged communications identified in the government's motion to revoke. According to the government, the alleged communications pertain to the ***FARA charges*** against Mr. Manafort. *See Bail Revocation Mot.* 3-7, 12-13. But the operative Eastern District of Virginia indictment has ***no FARA charges***—or any other allegations that might implicate D1 and D2. *See E.D. Va. Superseding Indictment*. Mr. Manafort could not have run afoul of the Eastern District of Virginia Pretrial Release Order by allegedly communicating with individuals who were ***in no way connected*** to the personal financial charges against him in the Eastern District of Virginia. The judge presiding over the Eastern District of Virginia proceedings never suggested otherwise.

Moreover, all of Mr. Manafort's own alleged communications occurred on February 24 and 26, 2018—***before*** the Eastern District of Virginia Pretrial Release

19

Order issued on March 9, 2018, *E.D. Va. Pretrial Release Order* 4.  *See Detention Order* 5-8 (chart of alleged communications).  The few alleged communications that occurred after the Eastern District of Virginia Pretrial Release Order issued were four unanswered messages sent by **Person A**, not Mr. Manafort.  *See id.* at 8. Those messages at most expressed a general desire to talk to D1 and D2.  And, given that they were sent more than a month after any of the other alleged communications identified by the government, *see id.* at 7-8, any inference as to what Person A intended to discuss is highly tenuous at best.

### C.    The District Court Likewise Erred in Relying on the Gag Order

The district court likewise erred in suggesting that Mr. Manafort had somehow violated its own November 2017 order prohibiting the "parties" and "counsel for the parties" "from making statements to the media or in public settings that pose a substantial likelihood of material prejudice to this case." *Gag Order* 2.  In the Detention Order, the court noted that Mr. Manafort had edited an opinion piece written by a Ukrainian that was ultimately published in Ukraine in December 2017, and that, after that, the court had warned Mr. Manafort that it was "likely to view similar conduct in the future to be an effort to circumvent and evade" the gag order, *Status Conf. Tr.* 11-12.  *See Detention Order* 2-3.

Those findings cannot possibly support the conclusion that no combination of conditions could ensure his presence and the safety of the community.  For one

thing, the gag order was not a "condition[] of release," 18 U.S.C. § 3148(b)(2)(B); *see D.D.C. Pretrial Release Order*, but a separately imposed requirement nowhere connected to release, *see Gag Order*. More important, the district court **never** found that Mr. Manafort's limited involvement with the Ukrainian article constituted a violation of the order. To the contrary, it **dismissed** the show-cause order. *See* Dec. 5, 2017 Minute Entry.

Mr. Manafort's anonymous revisions to material for an obscure Ukrainian website could not possibly have created a "substantial likelihood of material prejudice" so as to violate the gag order, *Gag Order* 2, much less create a sufficient threat to warrant such an intrusion on a defendant's First Amendment rights, *see United States v. Ford*, 830 F.2d 596, 599-600 (6th Cir. 1987) ("[B]roadly based restrictions on speech in connection with litigation are seldom, if ever, justified."); *In re Halkin*, 598 F.2d 176, 187 (D.C. Cir. 1979) (similar), *rev'd on other grounds*, *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984). At the time, the district court all but admitted as much. *See Status Conf. Tr.* 11-12; p. 6, *supra*. Indeed, at the show-cause hearing, the court instructed Mr. Manafort that, if he did something similar "in the future," the court would likely view the conduct as "an effort to circumvent and evade" the gag order. *Status Conf. Tr.* 12. But the court then went back on its word, invoking Mr. Manafort's non-violation of the gag order through involvement in a Ukrainian opinion piece, more than **six months prior** to the

government's bail-revocation motion, as supporting his detention.[9]   The district court's evidentiary basis for withdrawing Mr. Manafort's release is thus fundamentally flawed.   And it certainly cannot support his detention—in solitary confinement, without access to electronic communication, hours from his lawyers, in the run-up to two federal criminal trials—to the deep prejudice of his defense.

## **CONCLUSION**

For the foregoing reasons, Mr. Manafort respectfully requests that the order of detention be vacated and that he be released under the conditions of release in place before the June 15 revocation.

---

[9] Nor could the communications with D1 have violated the gag order because those communications were not "to the media" or "in public settings."   *Gag Order* 2.

22

Dated:  July 5, 2018                    Respectfully submitted,
Washington, D.C.


                                        By:   /s/ Frank P. Cihlar
Kevin M. Downing                        Frank P. Cihlar
Law Office of Kevin M. Downing            *Counsel of Record*
601 New Jersey Avenue, N.W.,            Law Office of Frank Cihlar
  Suite 620                             601 New Jersey Avenue, N.W.,
Washington, D.C.  20001                   Suite 620
Telephone:  (202) 754-1992              Washington, D.C.  20001
kevindowning@kdowninglaw.com            Telephone:  (703) 635-8147
                                        fcihlar@erols.com


Thomas E. Zehnle                        Richard W. Westling
Law Office of Thomas E. Zehnle          Epstein Becker & Green, P.C.
601 New Jersey Avenue, N.W.,            1227 25th Street, N.W.,
  Suite 620                               Suite 700
Washington, D.C.  20001                 Washington, D.C.  20037
Telephone:  (202) 368-4668              Telephone:  (202) 861-1868
tezehnle@gmail.com                      rwestling@ebglaw.com


                   *Counsel for Paul J. Manafort, Jr.*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rule of Appellate Procedure 32(g) and this Court's Rule 32(e), I hereby certify that this memorandum complies with the applicable type-volume limitations. This memorandum was prepared using a proportionally spaced type (Times New Roman, 14 point). Exclusive of the portions exempted by Federal Rule of Appellate Procedure 32(f) and this Court's Rule 32(e)(1), this brief contains 5,149 words. This certificate was prepared in reliance on the word-count function of the word-processing system (Microsoft Word 2010) used to prepare this memorandum.

July 5, 2018                                      /s/ Frank P. Cihlar
                                                 Frank P. Cihlar

## <u>STATUTORY ADDENDUM</u>

18 U.S.C. § 1512 ................................................................................... Add.-1

18 U.S.C. § 3142 ................................................................................... Add.-2

18 U.S.C. § 3148 ................................................................................... Add.-6

Title 18 of the United States Code, Crimes and Criminal Procedure, provides in relevant part as follows:

## §1512.  Tampering with a witness, victim, or an informant

\*     \*     \*

  (b)  Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—

　　(1)    influence, delay, or prevent the testimony of any person in an official proceeding;

　　(2)    cause or induce any person to—

　　　　(A)    withhold testimony, or withhold a record, document, or other object, from an official proceeding;

　　　　(B)    alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding;

　　　　(C)    evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or

　　　　(D)    be absent from an official proceeding to which such person has been summoned by legal process; or

　　(3)    hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation[,] supervised release,[] parole, or release pending judicial proceedings;

shall be fined under this title or imprisoned not more than 20 years, or both.

\*     \*     \*

## §3142.  Release or detention of a defendant pending trial

(a)  IN GENERAL.—Upon the appearance before a judicial officer of a person charged with an offense, the judicial officer shall issue an order that, pending trial, the person be—

(1)    released on personal recognizance or upon execution of an unsecured appearance bond, under subsection (b) of this section;

(2)    released on a condition or combination of conditions under subsection (c) of this section;

(3)    temporarily detained to permit revocation of conditional release, deportation, or exclusion under subsection (d) of this section; or

(4)    detained under subsection (e) of this section.

\*      \*      \*

(f)  DETENTION HEARING.—The judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community—

(1)    upon motion of the attorney for the Government, in a case that involves—

(A)    a crime of violence, a violation of section 1591, or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;

(B)    an offense for which the maximum sentence is life imprisonment or death;

(C)    an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46;

(D)   any felony if such person has been convicted of two or more offenses described in subparagraphs (A) through (C) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (A) through (C) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; or

(E)   any felony that is not otherwise a crime of violence that involves a minor victim or that involves the possession or use of a firearm or destructive device (as those terms are defined in section 921), or any other dangerous weapon, or involves a failure to register under section 2250 of title 18, United States Code; or

(2)   upon motion of the attorney for the Government or upon the judicial officer's own motion in a case, that involves—

(A)   a serious risk that such person will flee; or

(B)   a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror.

The hearing shall be held immediately upon the person's first appearance before the judicial officer unless that person, or the attorney for the Government, seeks a continuance.  Except for good cause, a continuance on motion of such person may not exceed five days (not including any intermediate Saturday, Sunday, or legal holiday), and a continuance on motion of the attorney for the Government may not exceed three days (not including any intermediate Saturday, Sunday, or legal holiday).  During a continuance, such person shall be detained, and the judicial officer, on motion of the attorney for the Government or sua sponte, may order that, while in custody, a person who appears to be a narcotics addict receive a medical examination to determine whether such person is an addict.   At the hearing, such person has the right to be represented by counsel, and, if financially unable to obtain adequate representation, to have counsel appointed.  The person shall be afforded an opportunity to testify, to present witnesses, to cross-examine witnesses who appear at the hearing, and to present information by proffer or otherwise.  The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing.  The facts the judicial officer uses to support a finding pursuant to subsection (e) that no condition or combination of conditions will reasonably assure the safety of any

other person and the community shall be supported by clear and convincing evidence.  The person may be detained pending completion of the hearing.  The hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

  (g)  FACTORS TO BE CONSIDERED.—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—

    (1)   the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

    (2)   the weight of the evidence against the person;

    (3)   the history and characteristics of the person, including—

       (A)   the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

       (B)   whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

    (4)   the nature and seriousness of the danger to any person or the community that would be posed by the person's release.  In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond,

and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

*     *     *

## §3148.  Sanctions for violation of a release condition

(a)  AVAILABLE SANCTIONS.—A person who has been released under section 3142 of this title, and who has violated a condition of his release, is subject to a revocation of release, an order of detention, and a prosecution for contempt of court.

(b)  REVOCATION OF RELEASE.—The attorney for the Government may initiate a proceeding for revocation of an order of release by filing a motion with the district court.  A judicial officer may issue a warrant for the arrest of a person charged with violating a condition of release, and the person shall be brought before a judicial officer in the district in which such person's arrest was ordered for a proceeding in accordance with this section.  To the extent practicable, a person charged with violating the condition of release that such person not commit a Federal, State, or local crime during the period of release, shall be brought before the judicial officer who ordered the release and whose order is alleged to have been violated.  The judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer—

(1)    finds that there is—

(A)    probable cause to believe that the person has committed a Federal, State, or local crime while on release; or

(B)    clear and convincing evidence that the person has violated any other condition of release; and

(2)    finds that—

(A)    based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or

(B)    the person is unlikely to abide by any condition or combination of conditions of release.

If there is probable cause to believe that, while on release, the person committed a Federal, State, or local felony, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the

safety of any other person or the community.  If the judicial officer finds that there are conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community, and that the person will abide by such conditions, the judicial officer shall treat the person in accordance with the provisions of section 3142 of this title and may amend the conditions of release accordingly.

  (c)  PROSECUTION FOR CONTEMPT.—The judicial officer may commence a prosecution for contempt, under section 401 of this title, if the person has violated a condition of release.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 5, 2018, I electronically filed the foregoing memorandum with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the appellate CM/ECF system and caused four hard-copies of this memorandum to be hand-delivered to the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

July 5, 2018

   /s/ Frank P. Cihlar
Frank P. Cihlar