**THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Criminal Action No. 1:18-cr-83** |
| | ) | |
| **PAUL J. MANAFORT,** | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

At issue in this multi-count bank and tax fraud prosecution is defendant's motion to suppress evidence recovered from a search of his residence in Alexandria, Virginia. Specifically, defendant contends that the warrant authorizing the search failed to satisfy the Fourth Amendment's requirements (i) because the warrant did not clearly describe the evidence to be seized and (ii) because the scope of the warrant was not limited by the probable cause on which the warrant was based. Defendant also argues that the execution of the search violated his Fourth Amendment rights because the executing agents exceeded the scope of the warrant and unlawfully retained defendant's personal items.

The government opposes defendant's motion, contending that the warrant was sufficiently particularized and limited by the probable cause established in the affidavit. The government further argues that even assuming the warrant was overbroad, the executing agents' good-faith reliance on the warrant renders suppression inappropriate.

The issues raised in defendant's motion have been fully briefed and argued and are now ripe for disposition.

1

## I.[1]

On July 25, 2017, Federal Bureau of Investigation ("FBI") Special Agent Pfeiffer submitted an application for a warrant to search defendant's condominium in Alexandria, Virginia. The application was based on a 41-page affidavit, which began by describing Special Agent Pfeiffer's basis for believing that defendant committed several crimes, including failure to file a report of foreign bank and financial accounts, in violation of 31 U.S.C. §§ 5314, 5322(a), filing a false tax return, in violation of 26 U.S.C. § 7206(1), bank fraud in connection with an extension of credit, in violation of 18 U.S.C. § 1014, mail fraud and wire fraud, in violation of 18 U.S.C. §§ 1341, 1343, and 1349, and money laundering, in violation of 18 U.S.C. §§ 1956 and 1957 (collectively referred to hereafter as the "Subject Offenses"). The affidavit then described Special Agent Pfeiffer's belief that pertinent evidence of these crimes, including financial records, business records, and other materials, would be located at defendant's condominium. Aff. ¶¶ 60-80. Specifically, the affidavit described how Special Agent Pfeiffer had interviewed Alex Trusko ("Trusko"), a current employee of one of defendant's companies, who revealed that he had recently visited defendant's residence, and while there, observed (i) that defendant had a home office, (ii) that the home office housed a MacBook desktop computer, and (iii) that defendant stored some records related to his businesses in that home office. *See id.* ¶¶ 65-71. Trusko also described defendant's "widespread use of electronic media in the course of his business activity" *id.* ¶ 76, and explained that in defendant's previous residence, defendant had retained a drawer of old cellular phones and other electronic equipment. *Id.* ¶¶ 71, 76.

---

[1] The facts recited here are derived from the testimony of Special Agent Jeffrey Pfeiffer ("Special Agent Pfeiffer") at the June 29, 2018 hearing on defendant's motion to suppress as well as the warrant, the attached affidavit, and the inventory of items seized from the search of defendant's residence. Importantly, defense counsel did not seek to present or elicit any further testimony. *See* June 29, 2018 Hr'g Tr. at 8:3-6.

Based on this interview, Special Agent Pfeiffer requested authorization to search defendant's residence pursuant to Rule 41, Fed. R. Crim. P.  Specifically, the affiant, Special Agent Pfeiffer, requested authorization to seize electronic devices that may have been used to commit the Subject Offenses but also any "storage media that reasonably appear to contain some or all of the evidence described in the warrant."  Aff. ¶ 80.

That same day, on July 25, 2017, a magistrate judge issued a warrant authorizing the search of defendant's residence, including "any locked drawers, containers, cabinets, safes, computers, electronic devices, and storage media (such as hard disks or other media that can store data) found therein."  Warrant Attach. A.  With respect to seizure, Attachment B to the warrant authorized executing agents to seize "[r]ecords relating to" the Subject Offenses, "occurring on or after January 1, 2006, including but not limited to:

> a. Any and all financial records for Paul Manafort, Jr., [Manafort's wife], Richard Gates, or companies associated with [those individuals], including but not limited to records relating to any foreign financial accounts and records relating to payments by or on behalf of any foreign government, foreign officials, foreign entities, foreign persons, or foreign principals;
>
> b. Any and all federal and state tax documentation, including but not limited to personal and business tax returns and all associated schedules for Paul Manafort, Jr., Richard Gates, or companies associated with Manafort or Gates;
>
> c. Letters, correspondence, emails, or other forms of communications with any foreign financial institution, or any individual acting as the signatory or controlling any foreign bank account;
>
> d. Records relating to efforts by Manafort, Gates, or their affiliated entities to conduct activities on behalf of, for the benefit of, or at the direction of any foreign government, foreign officials, foreign entities, foreign persons, or foreign principals, including but not limited to the Party of Regions and Viktor Yanukovych;
>
> . . .
>
> h. Communications, records, documents, and other files involving any of the attendees of the June 9, 2016 meeting at Trump tower, as well as Aras and Amin Agalorov;

3

      i. Evidence indicating Manafort's state of mind as it relates to the crimes under investigation[.]

Warrant Attach. B ¶ 1.

Attachment B to the warrant further authorized executing agents to seize (i) "[c]omputers or storage media used as a means to commit the Subject Offenses," *id.* ¶ 2, and (ii) specific categories of information on "any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant[,]" *id.* ¶ 3.

On July 26, 2017, the day after the warrant issued, the government executed the warrant and searched defendant's residence.  As a result of the search, the executing agents seized financial and other records as well as several electronic devices and storage media, including: memory cards from several cameras, iPods, iPads, a Macbook Air computer, and an external hard drives.  *See* Warrant Return Attach. A.  The government also imaged, or made digital copies of, several devices during the search, thereby allowing defendant to retain the original devices.[2] Also during the search, the government flagged and separated materials as being potentially subject to attorney-client privilege.  *See id.* Attach. C.   Since the search, the government has conducted ongoing privilege and relevance reviews, making efforts to separate and to remove irrelevant materials and offering defendant and counsel the opportunity to gain insight into the review process and to examine any identified irrelevant material.  *See* Letter from Robert S. Mueller, III, Special Counsel, to Kevin M. Downing, Law Offices of Kevin Downing (Dec. 1, 2017); Letter from Robert S. Mueller, III, Special Counsel, to Kevin M. Downing, Law Offices of Kevin Downing 3, 11 (Nov. 17, 2017).

---

[2] For example, the executing agents imaged an iMac, iPod Touch devices, iPads, iPhones, and flash drives.  *See id.* Attach. B.

On April 30, 2018, defendant filed the motion to suppress the evidence recovered from the July 25, 2017 search of defendant's residence on grounds that (i) the warrant did not clearly describe the evidence to be seized, (ii) the scope of the warrant was not limited by the probable cause on which the warrant was based, and (iii) the executing agents exceeded the scope of the warrant and unlawfully retained defendant's personal items. The government opposes defendant's motion, contending that the warrant was adequately particularized and limited by the probable cause established in the affidavit. The government further argues that even assuming the warrant was overbroad, the executing agents' good-faith reliance on the warrant renders suppression inappropriate.

## II.

Analysis of defendant's motion to suppress evidence seized during the search of defendant's residence first requires a determination whether the search warrant at issue was valid under the Fourth Amendment. The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. As the Supreme Court has recognized, "[b]y limiting the authorization to search to the specific areas and things for which there is probable cause to search," the Fourth Amendment "ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). In this regard, courts have interpreted the Fourth Amendment's requirements to encompass two related but

distinct concepts: particularity and breadth. *United States v. Ulbricht*, 858 F.3d 71,102 (2d Cir. 2017); *United States v. Hill*, 459 F.3d 966, 973 (9th Cir. 2006).

With respect to particularity, the Fourth Circuit has made clear that a warrant generally satisfies the Fourth Amendment's particularity requirement where "the warrant identifies the items to be seized by their relation to designated crimes and when the description of the items leaves nothing to the discretion of the officer executing the warrant." *United States v. Dargan*, 738 F.3d 643, 647 (4th Cir. 2013) (quoting *United States v. Williams*, 592 F.3d 511, 519 (4th Cir. 2010)). At the same time, Fourth Circuit precedent requires that courts "refrain from interpreting warrant terms in a 'hypertechnical' manner, and . . . instead employ a 'common sense and realistic' approach." *Id.* (quoting *Williams*, 592 F.3d at 519). In this regard, "[t]he degree of specificity required when describing the goods to be seized may necessarily vary according to the circumstances and type of items involved." *In re Grand Jury Subpoena*, 920 F.2d 235, 239 (4th Cir. 1990) (quoting *United States v. Torch*, 609 F.2d 1088, 1090 (4th Cir. 1979)).

The related concept of breadth requires that the scope of the warrant "be limited by the probable cause on which the warrant is based." *Hill*, 459 F.3d at 973 (internal citation and quotation marks omitted). In this respect, the Supreme Court has made clear that probable cause exists where there is a "fair probability that contraband or evidence of a crime will be found" in the premises to be searched. *Illinois v. Gates*, 426 U.S. 213, 238 (1983). This fair probability is the kind of probability "on which reasonable and prudent people, not legal technicians, act." *Florida v. Harris*, 568 U.S. 237, 244 (2013) (internal quotation marks and brackets omitted). And importantly, "[a] magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'" *Gates*, 462 U.S. at 236 (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)).

These principles, applied here, point persuasively to the conclusion that the warrant satisfied the Fourth Amendment's particularity and breadth requirements, and as such, suppression of the evidence recovered from the search of defendant's residence is not warranted.

### A.

To begin with, the warrant's description of the items subject to seizure was adequately particularized because the warrant identified the items to be seized by their relation to designated crimes and in so doing adequately limited the executing agents' discretion.   Specifically, Attachment B to the warrant authorized agents to seize "[r]ecords relating to" any of the Subject Offenses, including

> violations of 31 U.S.C. §§ 5314, 5322(a) (failure to file a report of foreign bank and financial accounts); 22 U.S.C. § 611, *et seq.* (foreign agents registration act); 26 U.S.C. § 7206(1) (filing a false tax return); 18 U.S.C. § 1014 (fraud in connection with the extension of credit); 18 U.S.C. §§ 1341, 1343, 1349 (mail fraud, wire fraud, and conspiracy to commit these offenses); 18 U.S.C. §§ 1956 and 1957 (money laundering and money laundering conspiracy); 52 U.S.C. §§ 30121(a)(1)(A) and (a)(2) (foreign national contributions); and 18 U.S.C. §§ 371 and 2 (conspiracy, aiding and abetting, and attempt to commit such offenses) … .

Warrant Attach. B ¶ 1.   In this regard, the executing agents were authorized "to seize only evidence of a particular crime" and could not engage in exploratory searches for general evidence of criminality.   *United States v. Fawole*, 785 F.2d 1141, 1144 (4th Cir. 1986).[3]   In addition to requiring that the evidence seized be related to specific crimes, the warrant also identified an illustrative list of the records at issue, including, for example, financial records, tax statements, and communications associated with foreign clients.   *See* Warrant Attach. B ¶¶ 1(a)-(g).   Notably, courts have held that a warrant meets Fourth Amendment particularity requirement where, as here, the warrant contains a description of the items to be seized that is "delineated in

---

[3] *Compare United States v. Hoang Anh Thi Duong*, 156 F. Supp. 2d 564, 571 (E.D. Va. 2001) (holding warrant was excessively broad under the Fourth Amendment where the warrant failed to "identif[y] the crime for evidence of the commission of which the agents were supposed to search defendants' residence").

part by an illustrative list of seizable items[.]"  *United States v. Riley*, 906 F.2d 841, 844–45 (2d

Cir. 1990).   In reaching this conclusion, courts have recognized that where, as here, a warrant

contains an illustrative list of records, that list further limits the discretion of the executing agents

by requiring executing agents to construe the warrant in light of the illustrative list and to seize

only records similar to those records listed in the warrant.  *Id.*

In an effort to avoid this conclusion, defendant argues that some of the enumerated

categories of evidence, namely paragraphs 1(a), 1(i), and 2,[4] were phrased so broadly as to

provide no meaningful guidance to an executing officer.  This argument is unpersuasive because,

as noted *supra*, Fourth Circuit precedent recognizes that "[t]he degree of specificity required

when describing the goods to be seized may necessarily vary according to the circumstances and

type of items involved."  *In re Grand Jury Subpoena*, 920 F.2d at 239 (quoting *Torch*, 609 F.2d

at 1090).  In this regard, "a warrant that describes the items subject to seizure in broad, generic

terms can be valid if the description is as specific as the circumstances and the nature of the

activity under investigation permit."  *United States v. Young*, 260 F. Supp. 3d 530, 548 (E.D. Va.

2017) (quoting *Godbey v. Simmons*, 2014 WL 345648, at *6-7 (E.D. Va. Jan. 30, 2014), *aff'd*,

577 F. App'x 239 (4th Cir. 2014)).

The circumstances and nature of the activity here permit the use of the broad categories at

issue in the warrant.  For example, where, as here, a defendant is alleged to have committed

complex tax and banking crimes, the Fourth Circuit has recognized that all "the financial records

of a suspect may well be highly probative of violations of a federal fraud statute" even where the

probative value of a particular document may not be readily apparent.  *United States v.*

---

[4] These paragraphs authorize the executing agents to seize "any and all financial records for [defendant], [defendant's wife], Richard Gates, or companies associated with [those individuals][,]" "[e]vidence indicating [defendant's] state of mind as it relates to the crimes under investigation[,]" and "[c]omputers or storage media used as a means to commit the Subject Offenses[.]"  Warrant Attach. B ¶¶ 1(a), 1(i), 2.

*Srivastrava*, 540 F.3d 277, 292 (4th Cir. 2008) (citation omitted).  Accordingly, the warrant's authorization of seizure of "all financial documents" was sufficiently specific given the nature of offense at issue here.  *See, e.g.*, *United States v. Fattah*, 858 F.3d 801, 819-20 (3d Cir. 2017) (rejecting, in prosecution alleging bank fraud and other offenses, challenge to a warrant that "authorized the seizure of a number of document types, including '[a]ll financial records'").

Similarly, evidence relevant to establishing a defendant's state of mind at the time he allegedly committed fraud-related crimes, such as the Subject Offenses at issue here, can often come from records and evidence separate from, and unrelated to, the allegedly criminal transactions themselves.  *See, e.g.*, *Andresen v. Maryland*, 427 U.S. 463, 483-84 (1976) (finding that documents relating to one transaction were relevant evidence of the defendant's state of mind when he engaged in a different allegedly fraudulent transaction).  For this reason, courts have rejected challenges to warrants that, as in the warrant here, broadly authorize seizure of evidence related to a defendant's state of mind.  *See, e.g.*, *United States v. Tsarnaev*, 53 F. Supp. 3d 450, 455-57 (D. Mass. 2014) (rejecting challenge to warrant that authorized seizure of "[p]roperty, records, or information related to the state of mind and/or motive").

Finally, where, as here, the government does not know which specific electronic devices or media were used to perpetrate an alleged offense or to conceal evidence thereof, courts have upheld warrants authorizing the seizure of any "electronic media that could have been used as a means to commit the offenses described in the warrant."  *United States v. Loera*, 59 F. Supp. 3d 1089, 1151-52 (D.N.M. 2014).  Accordingly, the warrant here was adequately particularized insofar as it authorized executing agents to seize "[c]omputers or storage media used as a means to commit the Subject Offenses[.]"  Warrant Attach. B ¶ 2.

Defendant relies on *United States v. Griffith*, 867 F.3d 1265 (D.C. Cir. 2017) to argue that the warrant could not validly authorize seizure of defendant's computers and storage media. Defendant's reliance on *Griffith* is misplaced.  In *Griffith*, the D.C. Circuit held that the warrant there in issue violated the Fourth Amendment in part because the warrant failed to limit "the scope of permissible seizure to [electronic] devices . . . linked to the [crime.]"  *Id.* at 1276.  Here, by contrast, the terms of the warrant limited the permissible search and seizure to electronic devices used as means to commit, or containing evidence of, the Subject Offenses.  Warrant Attach. B ¶¶ 1-3.  The *Griffith* court also faulted the warrant there in issue for failing to limit "the scope of permissible seizures to [electronic] devices owned by [the defendant]" given that the affidavit in that case provided no factual basis on which to seize electronic devices of the defendant's family members.  *Griffith*, 867 F.3d at 1276.  But that limitation is not appropriate here because the affidavit in this case clearly established the relevance of records associated with not just defendant but also with defendant's family.  For example, the affidavit reflected that several of defendant's allegedly criminal transactions included transfers from offshore accounts into accounts defendant jointly held with his wife.  Aff. ¶¶ 12, 21.  The affidavit also described a bank-fraud scheme that involved a multi-million dollar loan to a limited liability company owned by defendant's wife.  *Id.* ¶¶ 27, 34.  As such, unlike in *Griffith*, the agents here had reason to believe that electronic devices belonging not just to defendant, but also to defendant's wife, would contain evidence of the Subject Offenses.  Accordingly, the warrant's description of the electronic devices to be seized was adequately particularized given the facts and circumstances of this case.

In sum, the warrant here (i) identified the items to be seized in relation to specific Subject Offenses, (ii) included an illustrative list of records to limit the discretion of executing agents,

and (iii) provided a sufficient description of the categories of items to be seized given the nature and circumstances of the crimes at issue. Accordingly, the warrant was adequately particularized and suppression on this ground is inappropriate.

### B.

The warrant also satisfied the Fourth Amendment's breadth requirement inasmuch as the warrant and the attached affidavit established probable cause to believe that evidence of the Subject Offenses would be found at defendant's residence. Specifically, the affidavit reflected that Trusko, defendant's employee, told Special Agent Pfeiffer that defendant "used his home to do business and maintained records of his businesses at his home." Aff. ¶ 65, 66. Indeed, Trusko informed Special Agent Pfeiffer that Trusko had personally observed business records in defendant's home office as recently as May 2017. *Id.* ¶ 66, 67. The affidavit also established probable cause to believe that evidence of the Subject Offenses would be found on electronic devices in defendant's home. Specifically, the affidavit explained that Trusko told Special Agent Pfeiffer that defendant had a Mac Desktop computer in the designated office space of his residence. *See id.* ¶ 76. The affidavit also disclosed that Trusko had told Special Agent Pfeiffer that defendant made widespread use of electronic media in his business activity. *Id.* And Trusko knew this fact because Trusko noted that he had, on several occasions, wiped defendant's old computers and cellular phones before giving the devices to charity and had observed a drawer of old electronic devices in defendant's former[5] residence. *Id.* Finally, Special Agent Pfeiffer, in his affidavit, noted generally that electronic devices often contain not only substantive evidence of a criminal offense—*e.g.*, emails or bank records—but also records revealing how the devices have been used—*e.g.*, usernames, and computer account session times and durations—evidence

---

[5] The fact that Trusko observed the drawer in a previous residence does not undermine the conclusion that the affidavit established probable cause to believe that the defendant used electronic devices in his current residence.

which might aid in establishing the "who, what, why, when, where, and how" of the criminal conduct under investigation.  *Id.* ¶ 78(b).

These facts, taken together, lend ample support to the common-sense conclusion reached by the magistrate judge here, namely that probable cause existed to believe (i) that defendant's electronic devices would contain evidence relevant to the Subject Offenses and (ii) that the devices in question would be located at defendant's residence.

In an attempt to avoid this conclusion, defendant again relies chiefly on *United States v. Griffith*, 867 F.3d 1265 (D.C. Cir. 2017).  But here again, *Griffith* is of no aid to defendant; it is inapposite in this context, as well.  In *Griffith*, the D.C. Circuit determined that the warrant and the attached affidavit there did not establish probable cause to believe the defendant had a cell phone because the affidavit did not contain any information specific to the defendant; instead, the affidavit relied only on the general assumption that individuals in modern society often use cell phones.  Here, by contrast, in addition to stating the general, common-sense proposition that individuals often use electronic media for storage purposes, Special Agent Pfeiffer's affidavit also provided information specific to defendant.  For example, the affidavit explained specifically that Special Agent Pfeiffer's interview of Trusko revealed that defendant "has made widespread use of electronic media in the course of his business activity."  Aff. ¶ 76.  And Special Agent's interview with Trusko further confirmed that defendant had an office in his home which contained a desktop computer.  Thus, unlike in *Griffith*, there was ample individualized and specific support in Special Agent Pfeiffer's affidavit for the magistrate judge's conclusion, namely that defendant used electronic media in his business and that defendant at times conducted that business in his residence.

12

In sum, the warrant here also satisfied the breadth requirement of the Fourth Amendment by adequately limiting the scope of the warrant by the probable cause on which the warrant was based. Accordingly, suppression on this ground is unwarranted.

## C.

Even assuming, *arguendo*, that the search warrant for defendant's residence was fatally overbroad and lacking in the requisite particularity, suppression would not be warranted given that the searching agents acted in good-faith reliance on the warrant. As the Supreme Court explained in *United States v. Leon*, 468 U.S. 897 (1984), the question whether evidence should be excluded "is 'an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct.'" *Id.* at 907. This is so because the exclusionary rule is neither "a personal constitutional right" nor is it "designed to redress the injury occasioned by an unconstitutional search[.]" Instead, as the Supreme Court has made clear, the exclusionary rule "is a prudential doctrine, created by [the Supreme Court] to compel respect for the constitutional guaranty" and to deter future Fourth Amendment violations by law enforcement. *Davis v. United States*, 564 U.S. 229, 236-37 (2011) (internal quotations and citations omitted). Given these principles, the Supreme Court has sensibly declined to apply the exclusionary rule "when the police conduct a search in 'objectively reasonable reliance' on a warrant later held invalid" because in those cases, exclusion produces very few deterrent benefits when compared to the "'substantial social costs' generated by the rule." *Id.* (quoting *Leon*, 468 U.S. at 922).

Examination of the warrant and the affidavit in this case compels the conclusion that the executing agents acted in objectively reasonable reliance on the warrant and as such, suppression of the evidence recovered from the search of defendant's residence is unwarranted. Special

Agent Pfeiffer prepared a 41-page affidavit which set forth factual allegations establishing (i) probable cause to believe defendant committed the Subject Offenses, and (ii) probable cause to believe evidence of these Subject Offenses would be located in defendant's residence. Special Agent Pfeiffer then submitted the warrant application for review and approval by prosecutors. Once the warrant application was approved internally, Special Agent Pfeiffer submitted the application to a neutral and detached magistrate judge, who found the requisite probable cause and issued the warrant.

Defendant argues the good-faith exception to the exclusionary rule should not apply here because the affidavit at issue here (i) was "facially deficient" in its failure to particularize the place to be searched and the things to be seized and (ii) was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923 (internal quotation marks omitted). This argument fails to persuade as it is based on defendant's mischaracterization of the warrant and the affidavit in this case. Clearly the warrant at issue here was not so facially deficient that "the executing officers [could] not reasonably presume it to be valid." *Id.* Indeed, as described *supra* Section II.A, courts have routinely rejected particularity challenges to warrants using the same broad categories contained in this warrant—*i.e.*, any and all financial records, evidence of state of mind, and electronic devices and storage media. Given that courts have approved warrants containing the same language as the warrant at issue here,[6] it is inconceivable that "a reasonably well trained officer would have known that" the warrant was invalid "despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n.23.

---

[6] *See, e.g.*, *Fattah*, 858 F.3d at 819-20 (rejecting, in prosecution alleging bank fraud and other offenses, challenge to a warrant that "authorized the seizure of a number of document types, including '[a]ll financial records'"); *Tsarnaev*, 53 F. Supp. 3d at 455-57 (rejecting challenge to warrant that authorized seizure of "[p]roperty, records, or information related to the state of mind and/or motive"); *Loera*, 59 F. Supp. 3d at 1151-52 (rejecting challenge to warrant that authorized the seizure of any "electronic media that could have been used as a means to commit the offenses described in the warrant").

Nor was the affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923.  To the contrary, the affidavit pointed to specific evidence gleaned from an interview with defendant's self-described "personal assistant" who explained that he had recently been in defendant's residence, that he had observed a home office and a computer in defendant's residence, and that he knew defendant conducted business and stored business records at home.  These facts, far from bare bones allegations, were sufficiently detailed and specific to defendant for a reasonable officer to believe in the existence of probable cause and to rely on the magistrate judge's finding in that regard.

In sum, even assuming that the warrant at issue here was fatally overbroad and lacking in the requisite particularity, the warrant was not so facially deficient or lacking in probable cause that a reasonably well-trained officer would have known not to rely on the warrant in executing the search.  Accordingly, this case falls squarely within the good-faith exception to the exclusionary rule, and suppression is inappropriate.

### III.

The next step in the suppression analysis is to consider whether the search was executed in a constitutionally permissible manner.  It is well-settled that "a search conducted pursuant to a warrant is limited in scope by the terms of the warrant's authorization." *United States v. Kimble*, 855 F.3d 604, 610 (4th Cir. 2017) (quoting *United States v. Phillips*, 588 F.3d 218, 223 (4th Cir. 2009)).  In this regard, the Fourth Circuit has made clear that "the seizure of items not described in the warrant violates the Fourth Amendment—and the items should be suppressed—unless an exception to the warrant requirement applies." *United States v. Legg*, 18 F.3d 240, 242 (4th Cir. 1994).

Defendant contends that the agents executing the search warrant on defendant's residence violated these principles when the agents seized and imaged nearly every electronic and media device in defendant's home, including an Apple iPod, Apple iPod Touch devices, and several personal devices, such as a camera and camcorder.  Specifically, defendant contends that no reasonable agent could have believed that these personal electronic devices were used to commit the tax and bank fraud crimes alleged in the affidavit and the warrant application.  But this argument fails because it misunderstands the scope of the warrant.  The warrant not only authorized the search and seizure of electronic devices used to commit the Subject Offenses, but the warrant also authorized the search of "computers, electronic devices, and storage media" that could be used to store the categories of records described in paragraph 1 of the warrant.  Warrant Attach. B ¶ 3.  Although a reasonable officer might not believe that a defendant used an iPod, an iPod Touch, or a camcorder to commit bank fraud, courts have routinely recognized that these same devices can be used to store evidence of fraud-related crimes.  *See, e.g.*, *United States v. Ballard*, 551 F. App'x 33, 36 (3d Cir. 2014); *United States v. Schesso*, 730 F.3d 1040, 1047 (9th Cir. 2013).  Accordingly, because officers seized only items within the scope of the warrant and acted reasonably in doing so, the warrant was executed in a constitutionally permissible manner.

Even assuming that the executing agents exceeded the scope of the search warrant by imaging and seizing defendant's personal electronic devices, suppression of all the evidence recovered from the search of the residence would nonetheless be unwarranted.  This is so as the Fourth Circuit has held that "[a]s a general rule, if officers executing a search warrant exceed the scope of the warrant, only the improperly-seized evidence will be suppressed; the properly-seized evidence remains admissible."  *United States v. Squillacote*, 221 F.3d 542, 556 (4th Cir. 2000).  Blanket suppression is only justified in extraordinary circumstances where "the officers

executing the warrant exhibit a flagrant disregard for its terms" by, for example, seizing "large quantities of evidence clearly not within the scope of the warrant." *Id.*

No such extraordinary circumstances exist here, and as such, blanket suppression is not warranted even assuming the executing agents exceeded the scope of the warrant.  Far from large quantities of evidence, defendant identifies approximately 15 of the more than 70 items seized as allegedly exceeding the scope of the warrant, including Apple iPods, Apple iPod Touch devices, and memory cards from Nikon cameras, a Casio camera, Sony cameras, and a Go Pro Hero camera.  These devices are clearly covered by the terms of the warrant, which, as described above, authorized the executing agents to search and seize both electronic devices potentially used in the commission of the Subject Offenses and electronic devices or storage media containing the categories of records described in the warrant.  Warrant Attach. B ¶ 3. Because the record reflects that the executing agents did not flagrantly disregard the terms of the warrant by seizing large quantities of evidence not described therein, blanket suppression of the evidence recovered from the search of the residence is plainly not appropriate here.  *Compare United States v. Foster*, 100 F.3d 846, 850 (10th Cir. 1996) (finding law enforcement officers flagrantly disregarded terms of warrant where the warrant listed four firearms and marijuana as the items to be seized but officers seized "anything of value," including a "BB gun, drill, TVs, lawnmower, coveralls, socket set, clock radio, coins, knives, jewelry, etc." ).

Given that blanket suppression is not justified, the general rule in the Fourth Circuit would require suppression only of those approximately 15 items defendant identified as exceeding the scope of the warrant.  Because the government has indicated that it does not intend to use these items at trial, *see* Gov't Opp at 19, even this more circumscribed suppression is not necessary.

17

Defendant further argues that the agents' execution of the search was constitutionally flawed because the government retained the items seized from the search of defendant's residence for more than a year without making an effort to segregate irrelevant or privileged items.   Contrary to defendant's assertions, the record makes clear that the government has conducted a timely and reasonable review of the documents seized from the search of the residence.   During the search itself, the government imaged many of the electronic devices, allowing defendant to retain the original electronic device and seizing only the imaged copy of the devices.   Furthermore, the executing agents, aware of potential privilege issues, flagged and separated potentially privileged materials while executing the search.   Since the search, the government has conducted ongoing privilege and relevance reviews, making efforts to separate and to remove irrelevant and privileged materials and offering defendant and his counsel the opportunity to gain insight into the review process and to examine any identified irrelevant material.   *See, e.g.*, Letter from Robert S. Mueller, III, Special Counsel, to Kevin M. Downing, Law Offices of Kevin Downing 3, 11 (Nov. 17, 2017).

Nor does defendant succeed in equating the government's seizure and retention of items here to the government's seizure and retention of items that warranted suppression in *United States v. Metter*, 860 F. Supp. 2d 205 (E.D.N.Y. 2012), *United States v. Debbi*, 244 F. Supp. 2d 235 (S.D.N.Y. 2003), and *United States v. Comprehensive Drug Testing*, 621 F.3d 1162, 1171 (9th Cir. 2016).   These cases are inapposite.   In *Metter*, the court granted a motion to suppress where the government had retained "*all* imaged electronic documents . . . without any review" to determine either relevance or the applicability of privileges for fifteen months. 860 F. Supp. 2d at 215.   Similarly, in *Debbi*, the government failed to conduct any privilege or relevance review in the eight months following its seizure of defendant's documents and returned only "a limited

portion of improperly seized materials" despite repeated requests from defense counsel. 244 F. Supp. 2d at 237-38. Finally, in *Comprehensive Drug Testing*, the government retained documents not described in the warrant for at least six months even after locating the relevant subset of documents within those seized. 621 F.3d at 1171. Here, by contrast, privilege review began during the search, and the government has conducted ongoing privilege and relevance review since then, regularly updating defendant on its progress. Moreover, the government has offered defendant the opportunity to review irrelevant materials segregated through the government's review process, but defendant to date has declined to do so.

Thus, the record reveals that the government seized items within the scope of the terms of the warrant and that the government has made reasonable efforts since the search to separate out irrelevant and privileged materials, to make arrangements to discuss the segregation process with defendant, and to return evidence when possible. Accordingly, the execution of the search was reasonable and there is no basis for suppression on this ground.

## IV.

In sum, the record reflects that the warrant authorizing the search of defendant's residence was not constitutionally infirm. Specifically, the warrant was adequately particularized given the nature and circumstances of the crimes allegedly at issue, and the warrant was limited in scope by the probable cause established in the affidavit. Even assuming the warrant was overbroad and insufficiently particularized, the searching officers' good-faith reliance on the warrant was reasonable as the warrant was neither so facially deficient nor so lacking in indicia of probable cause as to render an officer's reliance on the warrant unreasonable. Finally, when conducting the search, the executing agents searched and seized only items within the scope of the warrant and made reasonable efforts to segregate and to return

any privileged or non-responsive items recovered from the search. For these reasons, there are no grounds for suppression of the evidence recovered from the search of defendant's home, and defendant's motion must be denied.

Alexandria, Virginia
July 10, 2018

/s/

T. S. Ellis, III
United States District Judge