**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **UNITED STATES OF AMERICA** <br><br> v. <br><br> **PAUL J. MANAFORT, JR.,** <br><br> **Defendant** | Crim. No. 1:18-cr-83 (TSE) |

**GOVERNMENT'S MEMORANDUM IN RESPONSE TO
DEFENDANT PAUL J. MANAFORT, JR.'S MOTION FOR A CHANGE OF VENUE
AND FOR OTHER RELIEF RELATING TO JURY SELECTION**

The United States of America, by and through Special Counsel Robert S. Mueller, III, files this memorandum in response to defendant Paul J. Manafort, Jr.'s motion (*see* Docs. 106 and 107) for a change of venue and for other relief relating to jury selection. Manafort's request for a change of venue should be denied. Manafort has not shown that pre-trial publicity is so likely to have prejudiced the jury pool that the venire must be presumed to be tainted, or that the nationwide publicity he identifies would be materially less prejudicial in another district.

**BACKGROUND**

Manafort has been indicted in neighboring districts on federal charges arising from his Ukraine work and witness tampering related to such charges. In October 2017, a grand jury in the District of Columbia returned an indictment that, as since superseded, charges Manafort with conspiring to defraud and commit offenses against the United States, money laundering conspiracy, violating the Foreign Agents Registration Act, making false statements to the government, and attempting to tamper with witnesses and conspiring to do the same. Superseding Indictment, *United States v. Manafort*, No. 17-cr-201 (D.D.C. June 8, 2018) (Doc. 318). In

February 2018, a grand jury in this district returned an indictment that, as since superseded, charges Manafort with five counts of subscribing false tax returns, four counts of failing to file reports of foreign bank and financial accounts, and multiple counts of bank fraud and bank fraud conspiracy. *See* Doc. 9. Trial in this Court is scheduled for July 25, 2018, while trial in the District of Columbia case is scheduled for September 17, 2018.

Given Manafort's role as the former chairman of the Trump campaign and the appointment of a Special Counsel to investigate (among other things) the Russian government's efforts to interfere with the 2016 presidential election and links or coordination with individuals associated with the Trump campaign, the investigation and the above charges have been the subject of extensive media coverage.[1] *Cf. Skilling v. United States*, 561 U.S. 358, 379 (2010) ("[M]ost cases of consequence garner at least some pretrial publicity."). This Court has explained that in light of the "public interest" in this case, the Court will carefully "explore" with "every juror" whether they have read or seen related media coverage, what they have viewed, whether they have formed opinions, and if they can be "fair and impartial." June 29, 2018 Hrg. Tr. 59-60. The Court has made clear that it will consider questions submitted by the parties—both in advance of and during voir dire. *Id.* at 61-62; *see* Docs. 102, 103 (voir dire requests). And the Court will have prospective jurors complete a detailed questionnaire before jury selection proceeds. July 21, 2018 Order, Doc. 122.

---

[1] In March 2016, Manafort joined the Trump campaign as convention manager and served as campaign chairman from May 2016 until his forced resignation in August 2016, after reports surfaced of his financial activities in Ukraine. Doc. 32 at 13; *see United States v. Manafort*, No. 18-cr-83, 2018 WL 3126380, at *7-*8 (E.D. Va. June 26, 2018).

**ARGUMENT**

**MANAFORT CANNOT MEET THE HIGH STANDARD FOR A TRANSFER**

Manafort contends (Doc. 107 at 4-8) that because this case and Manafort's political work have attracted substantial pre-trial publicity, the trial should be transferred to Roanoke, Virginia, where Manafort suggests that jurors are less likely to have followed the media coverage and to hold and be influenced by political views that Manafort views as unfavorable to him. That claim lacks merit. The common phenomenon of extensive media coverage in high-profile cases does not mean that the prospective jury pool must be presumed to be tainted. Nor does it mean that cases garnering nationwide attention can only be tried far from metropolitan areas. The Court should instead address the publicity that inevitably accompanies a case of this nature as it has done in the past, through a thorough jury-selection process that includes careful voir dire.

A. **A Transfer Based On Pre-Trial Publicity Requires An Extraordinary Showing**

Crimes must ordinarily be prosecuted "in a district where the offense was committed." Fed. R. Crim. P. 18; U.S. Const. Art. III, § 2, cl. 3 ("trial shall be held in the state where the said crimes shall have been committed"); *see also* U.S. Const. Amend. VI ("the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed."). Transfer to another district is warranted "if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." Fed. R. Crim. P. 21(a).

As this Court has observed, high profile cases often generate considerable media coverage. *United States v. Lentz*, 352 F. Supp. 2d 718, 722 (E.D. Va. 2005). "Yet, the mere fact that a case has drawn media attention does not, by itself, warrant a change in venue." *Id.* Rather, "it is well-settled that 'transfers of venue based on pre-trial publicity are not often granted, as the effects of

pre-trial publicity on the pool from which jurors are drawn is [generally] determined by a careful and searching voir dire examination.'" *Id.* (quoting *United States v. Lindh*, 212 F. Supp. 2d 541, 548 (E.D. Va. 2002) (internal quotation marks omitted)).

"Motions for a change of venue call for a two-step analysis." *United States v. Bakker*, 925 F.2d 728, 732 (4th Cir. 1991). As a first step, transfer is warranted before jury selection only if "the publicity is so inherently prejudicial that trial proceedings must be presumed to be tainted." *United States v. Higgs*, 353 F.3d 281, 307 (4th Cir. 2003). This is a "stringent standard." *Lentz*, 352 F. Supp. 2d at 722. "[O]nly in extreme circumstances may prejudice to a defendant's right to a fair trial be presumed from the existence of pretrial publicity itself." *Higgs*, 353 F.3d at 307-308. "Ordinarily," a court should proceed to the second step by conducting "voir dire of prospective jurors to determine if actual prejudice exists" and transfer the case only if "an impartial jury cannot be impaneled." *Id.* at 308 (internal quotation marks omitted). The question is not whether prospective jurors "knew about the case" or have "formed an opinion," but whether the court can find jurors who can "lay aside" any "pre-trial opinion" and "render a verdict based on the evidence presented in court." *Id.* (internal quotation marks omitted); *see Lentz*, 352 F. Supp. 2d at 722; *Lindh*, 212 S. Supp. 2d at 548.

### B. The Media Coverage At Issue Does Not Warrant Transfer

Manafort's showing falls short because the coverage relating to him does not rise to the extreme level warranting a presumption of prejudice, and national coverage, which reaches every district, cannot justify a change of venue to the district sought by Manafort.

#### 1. Coverage related to Manafort does not warrant transfer

"Prominence does not necessarily produce prejudice." *Skilling*, 561 U.S. at 381. While this case has received extensive media coverage, "[s]heer volume of publicity alone does not deny

4

a defendant a fair trial." *Bakker*, 925 F.2d at 732; *see Dobbert v. Florida*, 432 U.S. 282, 303 (1977); *cf. United States v. Bailey*, 112 F.3d 758, 769 (4th Cir. 1997) ("the case was given no more, and indeed in some instances less, attention and exposure in the media than other high profile federal cases."). In *Lindh*, this Court presided over a case that "understandably occasioned considerable nationwide publicity," and it was "likely that few, if any, citizens here in this district, or indeed in any district," would not have heard about it. 212 F. Supp. 2d at 549. But that circumstance, the Court explained, provided "by itself, no reason" to transfer. *Id.* Instead, "what ultimately matters is not simply whether a potential juror has heard or read about a case, but whether a prospective 'juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.'" *Id.* (quoting *Irvin v. Dowd*, 366 U.S. 717, 722-723 (1961)).

The media coverage surrounding this case and Manafort does not warrant such a conclusion. As an initial matter, the coverage that has been "more factual than inflammatory" does not warrant a change of venue. *See Higgs*, 353 F.3d at 308; *see, e.g.*, *Lentz*, 352 F. Supp. 2d at 723 ("Despite some references to prejudicial or inadmissible evidence, the majority of the news coverage consisted of straightforward factual reports of the legal proceedings"); *Lindh*, 212 F. Supp. 2d at 549 ("[T]he bulk of the publicity is factual, rather than inflammatory," and while it included "expressions of opinions," some even "designed to inflame or persuade," it did not mean the proceedings "must be presumed to be tainted."). And even "publication of prejudicial or inadmissible information is not, by itself, sufficient to warrant a transfer." *Lentz*, 352 F. Supp. 2d at 723. The sorts of cases where prejudice has been presumed involved "inherently prejudicial publicity," such as broadcasts of confessions. *Lentz*, 352 F. Supp. 2d at 724 & n.12 (citing *Rideau v. Louisiana*, 373 U.S. 723 (1963), and *Irvin v. Dowd*, 366 U.S. 717 (1961)); *see Skilling*, 561 U.S. at 562 (although news stories "were not kind, they contained no confession or other blatantly

5

prejudicial information" and "[n]o evidence of the smoking-gun variety invited prejudgment of his culpability."). To the extent that Manafort is relying on news coverage wholly unrelated to this particular case, it is all the more implausible that the Court cannot seat a jury capable of setting aside views on unrelated matters to evaluate the actual charges before them.

Transfer is additionally inappropriate given the size of the jury pool. Those rare cases where courts presume prejudice have not only involved highly prejudicial information, such as confessions, but have typically involved "the saturation of smaller jury pools." *Lentz*, 352 F. Supp. 2d at 724 & n.12. Given the large population and broad geographic area from which jurors are drawn in this Court, "it is unlikely that unbiased jurors cannot be found." *Id.* at 724; *see Mu'Min v. Virginia*, 500 U.S. 415, 429 (1991) (Prince William County, Virginia).

As this Court has explained, "the proof of this pudding will be the voir dire results." *Lindh*, 212 F. Supp. 2d. at 549. Voir dire "can serve in almost all cases as a reliable protection against juror bias" and "nationally publicized trials of widely publicized individuals serves to validate the efficacy of the voir dire for this purpose." *In re Charlotte Observer*, 882 F.2d 850, 856 (4th Cir. 1989) (citing as examples "the Watergate defendants" and "the Abscam defendants"). Courts have long held that a trial judge's vigilance in voir dire is fully capable of ferreting out bias and can be modulated to "the depth and extent of news stories that might influence a juror." *Mu'Min*, 500 U.S. at 427; *see Skilling*, 561 U.S. at 385; *id.* at 426 (Alito, J., concurring in part and concurring in the judgment); *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 602 (1976) (Brennan, J., concurring). Voir dire will also provide further information about whether any "publicity may have biased the prospective jurors." *Lentz*, 352 F. Supp. 2d at 723. Manafort has presented no reliable evidence that the jury pool holds such entrenched antipathy toward one side or the other that proceeding with voir dire in this venue is inappropriate.

The Court should address the publicity that inevitably accompanies a case of this nature as it has done in the past—*i.e.*, through a thorough jury-selection process that includes "careful" voir dire. *See Lindh*, 212 F. Supp. 2d at 549-550 (explaining that "only those prospective jurors found to be capable of fair and impartial jury service after careful voir dire will be declared eligible to serve as jurors," and that the Court's "[p]ast experience provide[d] reasonable assurance that more than a sufficient number of qualified, impartial jurors [would] be identified" even in a terrorism case that "ha[d] understandably occasioned considerable nationwide publicity"). The Court's decision to employ a juror questionnaire will assist that process. *See Skilling*, 561 U.S. at 388 & n.22. No reason exists to conclude that voir dire will not succeed in resulting in an impartial jury.[2]

### 2. National media coverage does not warrant transfer

Manafort's motion fails for the additional reason that any prejudice arising from pre-trial publicity in this case is not unique to this courthouse. Before deciding that a change in venue is appropriate, a court "must determine whether a jury substantially less subject to the publicity can be impaneled in another location." *Bakker*, 925 F.2d at 733. This case has no "unique and extraordinary local impact." *Lindh*, 212 F. Supp. at 552 n.15 (comparing to *United States v. McVeigh*, 918 F. Supp. 1467, 1474 (W.D. Okla. 1996)). And as the Court recognized in *Lindh*, pre-trial publicity provides no basis for transferring a case where significant differences do not exist between this district and the rest of the country. *Id.* at 550-551.

---

[2] To the extent the Court believes it appropriate, the Court has discretion to employ additional procedures for voir dire, as Manafort suggests (Doc. 107 at 8). None of them is constitutionally required, however. *See United States v. McDonnell*, 792 F.3d 478, 496 (4th Cir. 2015) ("*Skilling*, however, does not purport to hand down commandments for the proper conduct of voir dire proceedings."), *vacated and remand on other grounds*, 136 S. Ct. 2355 (2016); *Skilling*, 561 U.S. at 386 ("No hard-and-fast formula dictates the necessary depth or breadth of voir dire.").

7

Manafort correctly acknowledges (Doc. 107 at 2-4, 6) that media coverage of this case and of Manafort more generally is national. Court after court has recognized that the fact of nationwide publicity "weighs heavily against a change of venue based on a presumption of prejudice." *Bakker*, 925 F.2d at 733. Where publicity "is not merely local, but national, change of venue would serve no purpose." *United States v. Hill*, 893 F. Supp. 1039, 1041 (N.D. Fla. 1994); *see, e.g. Lentz*, 352 F. Supp. 2d at 724; *Levine v. United States Dist. Court for Cent. Dist. of Cal.*, 764 F.2d 590, 600 (9th Cir. 1985); *United States v. Herring*, 568 F.2d 1099, 1100 n.4 (5th Cir. 1978); *see also United States v. Awadallah*, 457 F. Supp. 2d 246, 253 (S.D.N.Y. 2006) (perjury relating to September 11 attacks would elicit response nationwide).

Manafort's heavy reliance (Doc. 107 at 6-7) on the internet as a source of pre-trial publicity only underscores the conclusion. As a federal judge in Roanoke—Manafort's preferred venue—explained, "[b]ecause the internet is available in every judicial district," any "risk that prospective jurors will encounter [such] stories cannot be cured by a change of venue." *United States v. Cassell*, No. 06-cr-98, 2007 WL 419574 at *1 (W.D. Va. 2007); *see, e.g., United States v. Campa*, 459 F.3d 1121, 1148 n.243 (11th Cir. 2006) (the "high-tech age" counsels against transfer where prejudice "spread through multiple forms of media * * * would not stop at district lines"); *United States v. Jacques*, No. 08-cr-117, 2011 WL 1706770 at *7 (D. Vt. May 4, 2011) (similar).

Manafort nonetheless asserts (Doc. 107 at 5-7) that because the Court is "in the Washington, D.C. metropolitan area," prospective jurors are likely "to have closely followed the developments and news coverage in [his] case" and to allow their views of the 2016 presidential candidates to cloud their judgment of this tax and bank fraud case. Manafort states (*id.* at 7) that "[i]n comparison," Roanoke is a smaller "media outlet," and fewer people in Roanoke have broadband internet connections.

Manafort's assertions about news and internet consumption are open to doubt, and his speculation about the likely propensities of jurors in this district is unfounded.[3] But more to the point, as the Supreme Court has noted, quoting observations about D.C. jurors' trying a Watergate case, "[t]his may come as a surprise to lawyers and judges, but it is simply a fact of life that matters which interest them may be less fascinating to the public generally." *Skilling*, 561 U.S. at 391 n.28 (quoting *United States v. Haldeman*, 559 F.2d 31, 62-63, n.37 (D.C. Cir. 1976)); *see United States v. Mitchell*, 551 F.2d 1252, 1262 n.46 (D.C. Cir. 1976) ("10 of the 12 jurors selected in that case claimed to have followed Watergate casually, if at all"), *rev'd on other grounds sub nom.*, *Nixon v. Warner Communications*, 435 U.S. 589 (1978). And even if prospective jurors have followed the media coverage, "mere knowledge of a case is insufficient to support a finding of actual prejudice." *Higgs*, 353 F.3d at 309. A defendant "is not entitled to a 'favorable' jury" or to "a jury that has not been privy to any media reports regarding the instant prosecution, favorable or unfavorable." *Lindh*, 212 F. Supp. 2d at 551. Rather, a defendant is entitled to "a fair and impartial jury." *Id.*

---

[3] For example, the size of a "media market" (Doc. 107 at 6-7) strongly reflects the area's population rather than its "preoccupation" with any type of news; the number of media companies based around Washington, D.C. (*id.* at 7) says little about where the media is consumed; the percentage of homes without broadband internet (*id.*) does not describe internet use; and the claim that the jury pool has a "close connection with the nation's capital" (*id.* at 5) and is "preoccup[ied] with all things political" (*id.* at 6) rests not just on bare assertion but also a misunderstanding of the broad geographic area from which jurors here are drawn, *see Lentz*, 352 F. Supp. 2d at 724 ("[T]he jurors in this division are drawn from a population of more than two million people dispersed across Northern Virginia, from Loudoun County in the North to Stafford County in the South and from Alexandria in the East to Fauquier County in the West.").

9

## CONCLUSION

For the foregoing reasons, Manafort's motion for a change of venue should be denied.

                                          Respectfully submitted,

                                          ROBERT S. MUELLER, III
                                          Special Counsel

Dated: July 13, 2018                         */s/ Andrew Weissmann*
                                          Andrew Weissmann
Uzo Asonye                                    Greg D. Andres
Assistant United States Attorney      Brandon Van Grack
Eastern District of Virginia             Adam C. Jed
                                          Special Assistant United States Attorneys

                                          U.S. Department of Justice
                                          950 Pennsylvania Avenue NW
                                          Washington, D.C. 20530
                                          Telephone: (202) 616-0800

                                          *Attorneys for the United States of America*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of July, 2018, I will cause to be filed electronically the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Thomas E. Zehnle (VA Bar No. 27755)
Law Office of Thomas E. Zehnle
601 New Jersey Avenue, N.W., Suite 620
Washington, D.C. 20001
tezehnle@gmail.com

Jay R. Nanavati (VA Bar No. 44391)
Kostelanetz & Fink LLP
601 New Jersey Avenue, N.W., Suite 620
Washington, D.C. 20001
jnanavati@kflaw.com

/s/ Andrew Weissmann
Andrew Weissmann
Special Assistant United States Attorney
Senior Assistant Special Counsel
U.S. Department of Justice
Special Counsel's Office
950 Pennsylvania Avenue N.W.
Washington, D.C. 20530
Telephone: (202) 616-0800
Fax: None
E-mail: AAW@usdoj.gov

*Attorney for the United States of America*