IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 1:18-cr-83 |
| PAUL J. MANAFORT, JR., | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## ORDER

A seventeen-count Superseding Indictment charges defendant with five counts of subscribing to false income tax returns, four counts of failing to report foreign bank accounts, four counts of conspiracy to commit bank fraud, and four counts of bank fraud. A typical tax and bank fraud case would ordinarily not provide much grist for the media mill. This case is different; it is brought by the special counsel tasked with investigating allegations of Russian tampering with the 2016 Presidential election and defendant was associated, for a brief period with the President's campaign for the presidency in 2016. Thus, this case has understandably attracted substantial media attention.

In light of the media attention this case has received, defendant has moved to transfer his trial from the Alexandria Division of the Eastern District of Virginia to the Roanoke Division of the Western District of Virginia. In support of his motion, defendant cites Alexandria's close proximity to Washington D.C. and the saturation of the D.C. media market with coverage of the special counsel's investigation and the level

of education and political leanings of the jury pool as the main bases for requesting a change of venue.

The applicable law governing the resolution of defendant's motion is well settled. The Constitution requires that a criminal defendant be tried by an impartial jury. *See* U.S. Const. amend. VI, and that defendant's trial will occur "in the State where the ... Crimes ... have been committed." Art. III, § 2, cl. 3. Importantly, though, Article III's place-of-trial requirement does not preclude transferring a trial to another jurisdiction if extraordinary local prejudice will prevent a fair trial, in violation of the Sixth Amendment, and the defendant requests a change of venue to protect his due process rights. *See Skilling v. United States*, 561 U.S. 358, 377–78 (2010); *In re Murchison*, 349 U.S. 133, 136 (1955). Here, defendant has requested a change of venue and asserts that trying this matter in the Alexandria Division will deprive him of his Sixth Amendment right to a fair trial.

Under the Federal Rules, a criminal case must be transferred to another district "if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." Fed. R. Crim. P. 21(a). Rule 21 recognizes that in extraordinary circumstances a defendant's fundamental right to trial "by an impartial jury" may be compromised by the presence of pervasive and inflammatory pre-trial publicity. *See, e.g., Rideau v. Louisiana*, 373 U.S. 723, 726–27 (1963). However, the mere fact that a case has drawn substantial media attention does not, by itself, warrant a change in venue. *See Chandler v. Florida*, 449 U.S. 560, 574 (1981).

2

In this regard, a motion for change of venue based on pretrial publicity is analyzed using a two-step process. The first step requires the trial court to determine whether "the publicity is so inherently prejudicial that trial proceedings [are] presumed to be tainted." *United States v. Bakker*, 925 F.2d 728, 732 (4th Cir. 1991). This is an exacting standard which presumes juror impartiality only in the most extreme cases. *Id.* (citing Wells v. Murray, 831 F.2d 468, 472 (4th Cir. 1987)). Notably, the Supreme Court has previously reversed a trial court for failing to transfer venue in three instances: *Rideau*, 373 U.S. at 723; *Estes v. Texas*, 381 U.S. 532 (1965); *Sheppard v. Maxwell*, 384 U.S. 333 (1966).

In *Rideau*, the Supreme Court held that the defendant could not receive a fair trial in the district where the offense had been committed because local authorities had filmed the defendant's confession and broadcast that confession on several local cable stations. 373 U.S. at 724–27. The *Rideau* Court concluded that in a small community of 150,000 residents, prejudice to the defendant could be presumed from the broadcast of defendant's confession to approximately 50,000 local homes. *Id.* at 727. Specifically, the Supreme Court noted:

> [I]n this case the people of Calcasieu Parish saw and heard, not once but three times, a 'trial' of Rideau in a jail, presided over by a sheriff, where there was no lawyer to advise Rideau of his right to stand mute. . . . But we do not hesitate to hold . . . that due process of law in this case required a trial before a jury drawn from a community of people who had not seen and heard Rideau's televised 'interview.'").

*Id.*

*Rideau* is plainly inapposite because unlike the facts in *Rideau* there is no confession here; to the contrary, the defendant in this case has consistently maintained his innocence. Moreover, a jury once impaneled in this case will be instructed on more than one occasion that the defendant is entitled to a presumption of innocence.

*Estes* and *Sheppard* are also inapposite; in both *Estes* and *Sheppard*, two decisions that followed closely on the heels of *Rideau*, the Supreme Court reversed the lower courts for denying the defendants' motions to transfer venue because the local press showered the local community with pretrial press coverage and turned the pretrial hearings and trial proceedings in those cases into a "carnival" or "circus." The decisions in *Estes* and *Sheppard* stand for a simple proposition: extensive press intrusion into the courtroom can convert legal proceedings into a media spectacle and, in turn, can violate a defendant's Sixth Amendment rights. No such circumstances have occurred here; although defendant's pretrial hearings have been extensively covered by the press, that coverage has not resulted in anything like the carnival or circus atmosphere that existed in *Estes* and *Sheppard*. Thus, although there has been extensive press coverage of defendant's pretrial proceedings, that coverage has not disrupted the "judicial serenity and calm" to which the defendant is entitled.[1] *Estes, supra* at 538.

---

[1] Also worth noting is the Supreme Court's decision in *Murphy v. Florida*, 421 U.S. 794 (1975), where the Court affirmed the trial court's decision denying a defendant's motion to transfer venue despite intense, local media coverage leading up to trial. In reaching this decision, the Supreme Court noted that "this Court overturned a state-court conviction obtained in a trial atmosphere that had been utterly corrupted by press coverage." *Id.* at 798–799

In addition to *Rideau*, *Estes* and *Sheppard*, the Supreme Court has given more recent guidance about pretrial publicity in *Skilling*, 561 U.S. at 358. In *Skilling*, the defendant, the former CEO of Enron – which was one of Houston's largest employers before its collapse – was charged with wire and securities fraud. Skilling argued that "hostility toward him in Houston, coupled with extensive pretrial publicity, had poisoned potential jurors." *Id.* In reviewing Skilling's arguments regarding change of venue, the Supreme Court considered four factors: (i) the size and characteristics of the community in which the defendant was supposed to be tried; (ii) the nature and extent of the pretrial publicity; (iii) the proximity of the pretrial publicity to the commencement of trial; and (iv) any evidence of jury partiality. After considering these factors, the *Skilling* Court affirmed the trial court's decision denying that defendant's request to move that trial from Houston, noting that "pretrial publicity—even pervasive, adverse publicity—does not inevitably lead to an unfair trial." *Id.* at 385 (quoting *Nebraska Press Assn. v. Stuart*, 427 U.S. 539, 554 (1976)).

Based on Supreme Court precedent and careful consideration of the *Skilling* factors, it is clear that defendant is not entitled to a presumption of jury partiality in this case. As previously stated, *Rideau*, *Estes* and *Sheppard* are inapposite and do not compel the conclusion that defendant's trial must be moved to another jurisdiction to protect is Sixth Amendment right to an impartial jury. Moreover, careful application of the *Skilling* factors to the circumstances of this case points persuasively to the conclusion that defendant is not entitled to a presumption that an Alexandria jury cannot be impartial. First, the Eastern District of Virginia jury pool is selected from cities and counties

throughout Northern Virginia, a large geographic area that has a population of approximately 3,000,000 people.    Although this population is not as large as the population of Houston,[2] the size of the Alexandria jury pool certainly increases the probability that impartial jurors can be selected.  Second, although the press coverage in defendant's case has been extensive, the reporting has been national in nature and is not unique to this geographic area.  Even assuming *arguendo* defendant's point that jurors residing inside "the Beltway" are more informed than jurors in other parts of the country and may therefore be more likely to have prejudged this case, nothing about the jury pool in this Division suggests that impartial jurors cannot be found through an exacting *voir dire* process.    The third *Skilling* factor is neutral at best because nationwide press coverage of defendant's trial will persist from now until the end of trial and perhaps beyond.  Therefore, the proximity of defendant's pretrial publicity to the start of his trial will be the same in Alexandria as it would be in Roanoke or Kansas City or Dallas. Finally, the fourth *Skilling* factor does not point to a need to transfer venue because there is no evidence at this time that jurors in this Division are biased.  Defendant cites several polls that suggest that Alexandria voters are more closely aligned with the Democratic Party than the Republican Party.  Importantly, however, these polls do not account for potential jurors residing in areas within this Division that include higher concentrations of conservative or Republican voters.    Moreover, jurors' political leanings are not, by themselves, evidence that those jurors cannot fairly and impartially consider the evidence

---

[2] *See Skilling*, 561 U.S. at 381

presented and apply the law as instructed by the Court.   It would be inappropriate for courts to move trials around the country in cases of this sort until a district could be found where a defendant's political views were shared by at least as many persons in the district as those with contrary views.   The Constitution does not require a search for this type of district; instead, the Constitution requires only that a defendant be tried by fair and impartial jurors.   And on the basis of the record presented thus far, there is no reason to believe that fair and impartial jurors cannot be found in the Eastern District of Virginia.

For all these reasons, defendant is not entitled to a presumption that the publicity surrounding his trial "is so inherently prejudicial that [the] trial proceedings [are] . . . tainted."  *Bakker*, 925 F.2d at 732.   Accordingly, it is appropriate to deny defendant's motion for a change of venue at this time and proceed to "conduct[] a *voir dire* of prospective jurors to determine if *actual* prejudice exists."[3] *Bakker*, 925 F.2d at 732 (citing Wansley v. Slayton, 487 F.2d 90, 92–93 (4th Cir.1973)) (emphasis added); *United States v. Higgs*, 353 F.3d 281, 307 (4th Cir. 2003).   This result is fully consistent with the Constitution, settled precedent and the record established to date in this case.

It is worth noting that in the course of conducting *voir dire* it is not necessary that prospective jurors demonstrate complete ignorance of the facts of this case; rather, "[i]t is sufficient if the juror can lay aside his impression or opinion and render a verdict based

---

[3] It is well-settled that "transfers of venue based on pre-trial publicity are not often granted, as 'the effects of pre-trial publicity on the pool from which jurors are drawn is [generally] determined by a careful and searching voir dire examination.'"   *United States v. Lindh*, 212 F.Supp.2d 541, 548 (E.D. Va. 2002) (citing *United States v. McVeigh*, 918 F.Supp. 1467, 1470 (W.D. Okla. 1996).

on the evidence presented in court." *United States v. Lindh*, 212 F.Supp.2d 541, 548 (E.D. Va. 2002) (citing *Bakker*, 925 F.2d at 734); *Irvin v. Dowd*, 366 U.S. 717, 722–23 (1961)). At *voir dire*, the question is not whether prospective jurors "know about the case" or have "formed an opinion," but whether the court can select jurors who can "lay aside" any "pre-trial opinion" and "render a verdict based on the evidence presented in court." *Higgs*, 353 F.3d at 307 (internal quotation marks omitted); *see also United States v. Lentz*, 352 F. Supp. 2d 718, 722 (E.D. Va. 2005); *Lindh*, 212 S. Supp. 2d at 548. Given the extensive jury questionnaire that will be filled out by all prospective jurors in advance of the Court's oral *voir dire*, there is at this time reasonable assurance that fair and impartial jurors can be impaneled. If this turns out not to be the case, defendant's motion to transfer venue will warrant reconsideration.

Accordingly,

It is hereby **ORDERED** that defendant's motion to change venue (Doc. 106) is **DENIED** at this time.

The Clerk is directed to provide a copy of this Order to all counsel of record.

Alexandria, Virginia
July 17, 2018

/s/

T. S. Ellis, III
United States District Judge

8