Residential Contract of Sale 11-2000

Jointly prepared by the Real Property Section of the New York State Bar Association, the New York State Land Title Association, the Committee on Real Property Law of the Association of the Bar of the City of New York and the Committee on Real Property Law of the New York County Lawyers' Association

WARNING: NO REPRESENTATION IS MADE THAT THIS FORM OF CONTRACT FOR THE SALE AND PURCHASE OF REAL ESTATE COMPLIES WITH SECTION 5-702 OF THE GENERAL OBLIGATIONS LAW ("PLAIN LANGUAGE").

CONSULT YOUR LAWYER BEFORE SIGNING THIS AGREEMENT

NOTE: FIRE AND CASUALTY LOSSES AND CONDEMNATION
This contract form does not provide for what happens in the event of fire, or other casualty loss or condemnation before the title closing. Unless different provision is made in this contract, Section 5-1311 of the General Obligations Law will apply. One part of that law makes a Purchaser responsible for fire and casualty loss upon taking possession of the Premises before the title closing.

## Residential Contract of Sale

**Contract of Sale** made as of November **BETWEEN**
14, 2012
Pamela Peterson
Address: 377 Union Street, Brooklyn, N.Y. 11231
Social Security Number/Fed. I.D. No.(s):
                                                                                        hereinafter called "Seller" and
MC Brooklyn Holding, LLC
Address: 174 Jobs Lane
Bridgehampton, NY 11932
     Social Security Number/Fed. I.D. No.(s):
                                                                                        hereinafter called "Purchaser"

## The parties hereby agree as follows:

**1. Premises.** Seller shall sell and convey and Purchaser shall purchase the property, together with all buildings and improvements thereon (collectively the "Premises"), more fully described on a separate page marked "Schedule A", annexed hereto and made a part hereof and also known as:
Street Address: 377 Union Street, Brooklyn, N.Y.
Tax Map Designation: Block:L 429 Lot:65

Together with Seller's ownership and rights, if any, to land lying in the bed of any street or highway, opened or proposed, adjoining the Premises to the center line thereof, including any right of Seller to any unpaid award by reason of any taking by condemnation and/or for any damage to the Premises by reason of change of grade of any street or highway. Seller shall deliver at no additional cost to Purchaser, at Closing (as hereinafter defined), or thereafter, on demand, any documents that Purchaser may reasonably require for the conveyance of such title and the assignment and collection of such award or damages.

**2. Personal Property.** This sale also includes all fixtures and articles of personal property now attached or appurtenant to the Premises, unless specifically excluded below. Seller represents and warrants that at Closing they will be paid for and owned by Seller, free and clear of all liens and encumbrances, except any existing mortgage to which this sale may be subject. They include, but are not limited to, plumbing, heating, lighting and cooking fixtures, chandeliers, bathroom and kitchen cabinets and counters, mantels, door mirrors, switch plates and door hardware, venetian blinds, window treatments, shades, screens, awnings, storm windows, storm doors, window boxes, mail box, TV aerials, weather vane, flagpole, pumps, shrubbery, fencing, outdoor statuary, tool shed, dishwasher, washing machine, clothes dryer, garbage disposal unit, range, oven, built-in-microwave oven, refrigerator, freezer, air conditioning equipment and installations, wall to wall carpeting and built-ins not excluded below (*strike out inapplicable items*).
all as currently exists including mirror above mantel in living room.

Excluded from this sale are furniture and household furnishings and mirror above mantel in dining room

**3. Purchase Price.** The purchase price is $2,995,000.00 payable as follows:

(a) On the signing of this contract, by Purchaser's good check payable to the Escrowee (as hereinafter defined), subject to collection, the receipt of which is hereby acknowledged, to be held in escrow pursuant to paragraph 6 of this contract (the "Downpayment"):
$299,500.00

(b) By allowance for the principal amount unpaid on the existing mortgage on the date hereof, payment of which Purchaser shall assume by joinder in the deed: $0

(c) By a purchase money note and mortgage from Purchaser to Seller: $0

(d) Balance at Closing in accordance with paragraph 7:
$2,695,500.00

**4. Existing Mortgage.** (*Delete if inapplicable*) If this sale is subject to an existing mortgage as indicated in paragraph 3(b) above:
(a) The Premises shall be conveyed subject to the continuing lien of the existing mortgage, which is presently payable, with interest at the rate of n/a percent per annum, in monthly installments of $ n/a which include principal, interest and escrow amounts, if any, and with any balance of principal being due and payable on na

(b) To the extent that any required payments are made on the existing mortgage between the date hereof and Closing which reduce the unpaid principal amount thereof below the amount shown in paragraph 3(b), then the balance of the price payable at Closing under paragraph 3(d) shall be increased by the amount of the

payments of principal. Seller represents and warrants that the amount shown in paragraph 3(b) is substantially correct and agrees that only payments required by the existing mortgage will be made between the date hereof and Closing.

(c) If there is a mortgagee escrow account, Seller shall assign it to Purchaser, if it can be assigned, and in that case Purchaser shall pay the amount in the escrow account to Seller at Closing.

(d) Seller shall deliver to Purchaser at Closing a certificate dated not more that 30 days before Closing signed by the holder of the existing mortgage, in form for recording, certifying the amount of the unpaid principal, the date to which interest has been paid and the amounts, if any, claimed to be unpaid for principal and interest, itemizing the same. Seller shall pay the fees for recording such certificate. If the holder of the existing mortgage is a bank or other institution as defined in Section 274-a of the Real Property Law it may, instead of the certificate, furnish a letter signed by a duly authorized officer, employee or agent, dated not more then 30 days before Closing, containing the same information.

(e) Seller represents and warrants that (i) Seller has delivered to Purchaser true and complete copies of the existing mortgage, the note secured thereby and any extensions and modifications thereof, (ii) the existing mortgage is not now, and at the time of Closing will not be, in default, and (iii) the existing mortgage does not contain any provision that permits the holder of the mortgage to require its immediate payment in full or to change any other term thereof by reason of the sale or conveyance of the Premises.

**5. Purchase Money Mortgage.** *(Delete if inapplicable)* If there is to be a purchase money mortgage as indicated in paragraph 3(c) above:

(a) The purchase money note and mortgage shall be drawn by the attorney for Seller in the form attached or, if not, in the standard form adopted by the New York State Land Title Association. Purchaser shall pay at Closing the mortgage recording tax, recording fees and the attorney's fees in the amount of $ for its preparation.

(b) The purchase money note and mortgage shall also provide that it is subject and subordinate to the lien of the existing mortgage and any extensions, modifications, replacements or consolidations of the existing mortgage, provided that (i) the interest rate thereof shall not be greater than 0 percent per annum and the total debt service thereunder shall not be greater than $ 0 per annum, and (ii) if the principal amount thereof shall exceed the amount of principal owing and unpaid on the existing mortgage at the time of placing such new mortgage or consolidated mortgage, the excess is to be paid to the holder of such purchase money mortgage in reduction of the principal thereof. The purchase money mortgage shall also provide that such payment to the holder thereof shall not alter or affect the regular installments, if any, of principal payable thereunder and that the holder thereof will, on demand and without charge therefore, execute, acknowledge and deliver any agreement or agreements further to effectuate such subordination.

**6. Downpayment in Escrow.**

(a) Seller's attorney ("Escrowee") shall hold the Downpayment in escrow in a segregated bank account at: Chase Bank address 80 Broadway, NY, NY

until Closing or sooner termination of this contract shall pay over or apply the Downpayment in accordance with the terms of this paragraph. Escrowee shall hold the Downpayment in a(n) non interest-bearing account for the benefit of the parties. If interest is held for the benefit of the parties, it shall be paid to the party entitled to the Downpayment and the party receiving the interest shall pay any income taxes thereon. If interest is not held for the benefit of the parties, the Downpayment shall be placed in an IOLA account or as otherwise permitted or required by law. The Social Security or Federal Identification numbers of the parties shall be furnished to Escrowee upon request. At Closing, the Downpayment shall be paid by Escrowee to Seller. If for any reason Closing does not occur and either party gives Notice (as defined in paragraph 25) to Escrowee demanding payment of the Downpayment, Escrowee shall give prompt Notice to the other party of such demand. If Escrowee does not receive Notice of objection from such other party to the proposed payment within 10 business days after the giving of such Notice, Escrowee is hereby authorized and directed to make such payment. If Escrowee does receive such Notice of objection within such 10 day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by Notice from the parties to this contract or a final, non-appealable judgment, order or decree of a court. However, Escrowee shall have the right at any time to deposit the Downpayment and the interest thereon with the clerk of a court in the county in which the Premises are located and shall give Notice of such deposit to Seller and Purchaser. Upon such deposit or other disbursement in accordance with the terms of this paragraph, Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience and that Escrowee shall not be liable to either party for any act or omission on its part unless taken or suffered in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee. Seller and Purchaser jointly and severally (with right of contribution) agree to defend (by attorneys selected by Escrowee), indemnify and hold Escrowee harmless from and against all costs, claims and expenses (including reasonable attorneys' fees) incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee.

(c) Escrowee may act or refrain from acting in respect of any matter referred to herein in full reliance upon and with the advice of counsel which may be selected by it (including any member of its firm) and shall be fully protected in so acting or refraining from action upon the advise of such counsel.

(d) Escrowee acknowledges receipt of the Downpayment by check subject to collection and Escrowee's agreement to the provisions of this paragraph by signing in the place indicated on the signature page of this contract.

(e) Escrowee or any member of its firm shall be permitted to act as counsel for Seller in any dispute as to the disbursement of the Downpayment or any other dispute between the parties whether or not Escrowee is in possession of the Downpayment and continues to act as Escrowee.

(f) The party whose attorney is Escrowee shall be liable for loss of the Downpayment.

**7. Acceptable Funds.** All money payable under this contract unless otherwise specified, shall be paid by:

(a) Cash, but not over $1,000.00

(b) Good certified check of Purchaser drawn on or official check issued by any bank, savings bank, trust company or savings and loan association having a banking office in the State of New York unendorsed and payable to the order of Seller, or as Seller may otherwise direct upon reasonable prior notice (by telephone or otherwise) to Purchaser.

(c) As to money other than the purchase price payable to Seller at Closing, uncertified check of Purchaser up to the amount of $ 1000.00 ; and

(d) As otherwise agreed to in writing by Seller or Seller's attorney.

**8. Mortgage Commitment Contingency.** *(Delete paragraph if inapplicable. For explanation, see:* **NOTES ON MORTGAGE COMMITMENT CONTINGENCY CLAUSE.***)*

(a) The obligation of Purchaser to purchase under this contract is conditioned upon issuance, on or before NA days after a fully executed copy of this contract is given to Purchaser or Purchaser's attorney in the manner set forth in paragraph 25 or subparagraph 8(j) (the "Commitment Date"), of a written commitment from an Institutional Lender pursuant to which such Institutional Lender agrees to make a first mortgage loan, other than a VA, FHA or other governmentally insured loan, to Purchaser, at Purchaser's sole cost and expense, of

$ NONE for a term of at least 0 years (or such lesser sum or shorter term as Purchaser shall be willing to accept) at the prevailing fixed or adjustable rate of interest and on other customary commitment terms (the "Commitment"). To the extent a Commitment is conditioned on the sale of Purchaser's current home, payment of any outstanding debt, no material adverse change in Purchaser's financial condition or any other customary conditions, Purchaser accepts the risk that such conditions may not be met; however, a commitment conditioned on the Institutional Lender's approval of an appraisal shall not be deemed a "Commitment" hereunder until an appraisal is approved (and if that does not occur before the Commitment Date Purchaser may cancel under subparagraph 8(e) unless the Commitment Date is extended). Purchaser's obligations hereunder are conditioned only on issuance of a Commitment. Once a Commitment is issued, Purchaser is bound under this contract even if the lender fails or refuses to fund the loan for any reason.

(b) Purchaser shall (i) make prompt application to one or, at Purchaser's election, more than one Institutional Lender for such mortgage loan, (ii) furnish accurate and complete information regarding Purchaser and members of Purchaser's family, as required, (iii) pay all fees, points and charges required in connection with such application and loan, (iv) pursue such application with diligence, and (v) cooperate in good faith with such Institutional Lender(s) to obtain a Commitment. Purchaser shall accept a Commitment meeting the terms set forth in subparagraph 8(a) and shall comply with all requirements of such Commitment (or any other commitment accepted by Purchaser). Purchaser shall furnish Seller with a copy of the Commitment promptly after receipt thereof.

(c) *(Delete this subparagraph if inapplicable)* Prompt submission by Purchaser of an application to a mortgage broker registered pursuant to Article 12-D of the New York Banking Law ("Mortgage Broker") shall constitute full compliance with the terms and conditions set forth in subparagraph 8(b)(i), provided that such Mortgage Broker promptly submits such application to such Institutional Lender(s). Purchaser shall cooperate in good faith with such Mortgage Broker to obtain a Commitment from such Institutional Lender(s).

(d) If all Institutional Lenders to whom applications were made deny such applications in writing prior to the Commitment Date, Purchaser may cancel this contract by giving Notice thereof to Seller, with a copy of such denials, provided that Purchaser has complied with all its obligations under this paragraph 8.

(e) If no Commitment is issued by an Institutional Lender on or before the Commitment Date, then, unless Purchaser has accepted a written commitment from an Institutional Lender that does not conform to the terms set forth in subparagraph 8(a), Purchaser may cancel this contract by giving Notice to Seller within 5 business days after the Commitment Date, provided that such Notice includes the name and address of the Institutional Lender(s) to whom application was made and that Purchaser has complied with all its obligations under this paragraph 8.

(f) If this contract is canceled by Purchaser pursuant to subparagraphs 8(d) or (e), neither party shall thereafter have any further rights against, or obligations or liabilities to, the other by reason of this contract, except that the Downpayment shall be promptly refunded to Purchaser and except as set forth in paragraph 27.

(g) If Purchaser fails to give timely Notice of cancellation or if Purchaser accepts a written commitment from an Institutional Lender that does not conform to the terms set forth in subparagraph 8(a), then Purchaser shall be deemed to have waived Purchaser's right to cancel this contract and to receive a refund of the Downpayment by reason of the contingency contained in this paragraph 8.

(h) If Seller has not received a copy of a commitment from an Institutional Lender accepted by Purchaser by the Commitment Date, Seller may cancel this contract by giving Notice to Purchaser within 5 business days after the Commitment Date, which cancellation shall become effective unless Purchaser delivers a copy of such commitment to Seller within 10 business days after the Commitment Date. After such cancellation neither party shall have any further rights against, or obligations or liabilities to, the other by reason of this contract, except that the Downpayment shall be promptly refunded to Purchaser (provided Purchaser has complied with all its obligations under this paragraph 8) and except as set forth in paragraph 27.

(i) For purposes of this contract, the term "Institutional Lender" shall mean any bank, savings bank, private banker, trust company, savings and loan association, credit union or similar banking institution whether organized under the laws of this state, the United States or any other state, foreign banking corporation licensed by the Superintendent of Banks of New York or regulated by the Comptroller of the Currency to transact business in New York State; insurance company duly organized or licensed to do business in New York State; mortgage banker licensed pursuant to Article 12-D of the Banking Law; and any instrumentality created by the United States or any state with the power to make mortgage loans.

(j) For purposes of subparagraph 8(a), Purchaser shall be deemed to have been given a fully executed copy of this contract on the third business day following the date of ordinary or regular mailing, postage prepaid.

**9. Permitted Exceptions.** The Premises are sold and shall be conveyed subject to:

(a) Zoning and subdivision laws and regulations, and landmark, historic or wetlands designation, provided that they are not violated by the existing buildings and improvements erected on the property or their use;

(b) Consents for the erection of any structures on, under or above any streets on which the Premises abut;

(c) Encroachments of stoops, areas, cellar steps, trim and cornices, if any, upon any street or highway;

(d) Real estate taxes that are a lien, but are not yet due and payable; and

(e) The other matters, if any, including a survey exception, set forth in a Rider attached.

**10. Governmental Violations and Orders.**
(a) Seller shall comply with all notes or notices of violations of law or municipal ordinances, orders or requirements noted or issued as of the date hereof by any governmental department having authority as to lands, housing, buildings, fire, health, environmental and labor conditions affecting the Premises. The Premises shall be conveyed free of them at Closing. Seller shall furnish Purchaser with any authorizations necessary to make the searches that could disclose these matters.
(b) *(Delete if inapplicable)* All obligations affecting the Premises pursuant to the Administrative Code of the City of New York incurred prior to Closing and payable in money shall be discharged by Seller at or prior to Closing.

**11. Seller's Representations.**
(a) Seller represents and warrants to Purchaser that:
   I. The Premises abut or have a right of access to a public road;
   II. Seller is the sole owner of the Premises and has the full right, power and authority to sell, convey and transfer the same in accordance with the terms of this contract;
   III. Seller is not a "foreign person", as that term is defined for purposes of the Foreign Investment in Real Property Tax Act, Internal Revenue Code ("IRC") Section 1445, as amended, and the regulations promulgated thereunder (collectively "FIRPTA");
   IV. The Premises are not affected by any exemptions or abatements of taxes; and
   V. Seller has been known by no other name for the past ten years, except: none

(b) Seller covenants and warrants that all of the representations and warranties set forth in this contract shall be true and correct at Closing.
(c) Except as otherwise expressly set forth in this contract, none of Seller's covenants, representations, warranties or other obligations contained in this contract shall survive Closing.

**12. Condition of Property.** Purchaser acknowledges and represents that Purchaser is fully aware of the physical condition and state of repair of the Premises and of all other property included in this sale, based on Purchaser's own inspection and investigation thereof, and that Purchaser is entering into this contract based solely upon such inspection and investigation and not upon any information, data, statements or representations, written or oral, as to the physical conditions, state of repair, use, cost of operation or any other matter related to the Premises or the other property included in the sale, given or made by Seller or its representatives, and shall accept the same "as is" in their present condition and state of repair, subject to reasonable use, wear, tear and natural deterioration between the date hereof and the date of Closing (except as otherwise set forth in paragraph 16(e), without any reduction in the purchase price or claim of any kind for any change in such condition by reason thereof subsequent to the date of this contract. Purchaser and its authorized representatives shall have the right, at reasonable times and upon reasonable notice (by telephone or otherwise) to Seller, to inspect the Premises before Closing.

**13. Insurable Title.** Seller shall give and Purchaser shall accept such title as any reputable New York title insurance company shall be willing to approve and insure in accordance with its standard form of title policy approved by the New York State Insurance Department, subject only to the matters provided for this contract.

**14. Closing, Deed and Title.**
(a) "Closing" means the settlement of the obligations of Seller and Purchaser to each other under this contract, including the payment of the purchase price to Seller, and the delivery to Purchaser of a Bargain & Sale Deed w/Covenants deed in proper statutory short form for record, duly executed and acknowledged, so as to convey to Purchaser fee simple title to the Premises, free of all encumbrances, except as otherwise herein stated. The deed shall contain a covenant by Seller as required by subd. 5 of Section 13 of the Lien Law.
(b) If Seller is a corporation, it shall deliver to Purchaser at the time of Closing (i) a resolution of its Board of Directors authorizing the sale and delivery of the deed, and (ii) a certificate by the Secretary or Assistant Secretary of the corporation certifying such resolution and setting forth facts showing that the transfer is in conformity with the requirements of Section 909 of the Business Corporation Law. The deed in such case shall contain a recital sufficient to establish compliance with that Section.

**15. Closing Date and Place.** Closing shall take place at the office of Seller's attorney at 2:00pm o'clock on or about December 1, 2012 but not later than Dec.31, 2012 or upon reasonable notice (by telephone or otherwise) by Purchaser, at the office of Lending Institution

**16. Conditions to Closing.** This contract and Purchaser's obligation to purchase the Premises are also subject to and conditioned upon the fulfillment of the following conditions precedent:
(a) The accuracy, as of the date of Closing, of the representations and warranties of Seller made in this contract.
(b) The delivery by Seller to Purchaser of a valid and subsisting Certificate of Occupancy or other required certificate of compliance, or evidence that none was required, covering the building(s) and all of the other improvements located on the property authorizing their use as a three(3) family dwelling at the date of Closing.
(c) The delivery by Seller to Purchaser of a certificate stating that Seller is not a foreign person, which certificate shall be in the form then required by FIRPTA or a withholding certificate from I.R.S. If Seller fails to deliver the aforesaid certificate or if Purchaser is not entitled under FIRPTA to rely on such certificate, Purchaser shall deduct and withhold from the purchase price a sum equal to 10% thereof (or any lesser amount permitted by law) and shall at Closing remit the withheld amount with the required forms to the Internal Revenue Service.
(d) The delivery of the Premises and all building(s) and improvements comprising a part thereof in broom clean condition, vacant and free of leases or tenancies, together with keys to the Premises.
(e) All plumbing (including water supply and septic systems, if any), heating and air conditioning, if any, electrical and mechanical systems, equipment, and machinery in the building(s) located on the property and all appliances which are included in this sale being in working order as of the date of Closing.
(f) If the Premises are a one or two family house, delivery by the parties at Closing of affidavits in compliance with state and local law requirements to the effect that there is installed in the Premises a smoke detecting alarm device or devices.
(g) The delivery by the parties of any other affidavits required as a condition of recording the deed.

17. **Deed Transfer and Recording Taxes.** At Closing, certified or official bank checks payable to the order of the appropriate State, City or County officer in the amount of any applicable transfer and/or recording tax payable by reason of the delivery or recording of the deed or mortgage, if any, shall be delivered by the party required by law or by this contract to pay such transfer and/or recording tax, together with any required tax returns duly executed and sworn to, and such party shall cause any such checks and returns to be delivered to the appropriate officer promptly after Closing. The obligation to pay any additional tax or deficiency and any interest or penalties thereon shall survive Closing.

18. **Apportionments and Other Adjustments; Water Meter and Installment Assessments.**
    (a) To the extent applicable, the following shall be apportioned as of midnight of the day before the day of Closing:
    (i) taxes, water charges and sewer rents, on the basis of the fiscal period for which assessed; (ii) fuel; (iii) interest on the existing mortgage; (iv) premiums on existing transferable insurance policies and renewals of those expiring prior to Closing; (v) vault charges; (vi) rents as and when collected.
    (b) If Closing shall occur before a new tax rate is fixed, the apportionment of taxes shall be upon the basis of the tax rate for the immediately preceding fiscal period applied to the latest assessed valuation.
    (c) If there is a water meter on the Premises, Seller shall furnish a reading to a date not more than 30 days before Closing and the unfixed meter charge and sewer rent, if any, shall be apportioned on the basis of such last reading.
    (d) If at the date of Closing the Premises are affected by an assessment which is or may become payable in annual installments, and the first installment is then a lien, or has been paid, then for the purposes of this contract all the unpaid installments shall be considered due and shall be paid by Seller at or prior to Closing.
    (e) Any errors or omissions in computing apportionments or other adjustments at Closing shall be corrected within a reasonable time following Closing. This subparagraph shall survive Closing.

19. **Allowance for Unpaid Taxes, etc.** Seller has the option to credit Purchaser as an adjustment to the purchase price with the amount of any unpaid taxes, assessments, water charges and sewer rents, together with any interest and penalties thereon to a date not less that five business dates after Closing, provided the official bills therefor computed to said date are produced at Closing.

20. **Use of Purchase Price to Remove Encumbrances.** If at Closing there are other liens or encumbrances that Seller is obligated to pay or discharge, Seller may use any portion of the cash balance of the purchase price to pay or discharge them, provided Seller shall simultaneously deliver to Purchaser at Closing instruments in recordable form and sufficient to satisfy such liens or encumbrances of record, together with the cost of recording or filing said instruments. As an alternative Seller may deposit sufficient monies with the title insurance company employed by Purchaser acceptable to and required by it to assure their discharge, but only if the title insurance company will insure Purchaser's title clear of the matters or insure against their enforcement out of the Premises and will insure Purchaser's Institutional Lender clear of such matters. Upon reasonable prior notice (by telephone or otherwise), Purchaser shall provide separate certified or official bank checks as requested to assist in clearing up these matters.

21. **Title Examination; Seller's Inability to Convey; Limitations of Liability.**
    (a) Purchaser shall order an examination of title in respect of the Premises from a title company licensed or authorized to issue title insurance by the New York State Insurance Department or any agent for such title company promptly after the execution of this contract or, if this contract is subject to the mortgage contingency set forth in paragraph 8, after a mortgage commitment has been accepted by Purchaser. Purchaser shall cause a copy of the title report and of any additions thereto to be delivered to the attorney(s) for Seller promptly after receipt thereof.
    (b) (i) If at the date of Closing, Seller is unable to transfer title to Purchaser in accordance with this contract, or Purchaser has other valid grounds for refusing to close, whether by reason of liens, encumbrances or other objections to title or otherwise (herein collectively called "Defects"), other than those subject to which Purchaser is obligated to accept title hereunder or which Purchaser may have waived and other than those which Seller has herein expressly agreed to remove, remedy or discharge and if Purchaser shall be unwilling to waive the same and to close title without abatement of the purchase price, then, except as hereinafter set forth, Seller shall have the right, at Seller's sole election, either to take such action as Seller may deem advisable to remove, remedy, discharge or comply with such Defects or to cancel this contract; (ii) if Seller elects to take action to remove, remedy or comply with such Defects, Seller shall be entitled from time to time, upon Notice to Purchaser, to adjourn the date for Closing hereunder for a period or periods not exceeding 60 days in the aggregate (but not extending beyond the date upon which Purchaser's mortgage commitment, if any, shall expire), and the date for Closing shall be adjourned to a date specified by Seller not beyond such period. If for any reason whatsoever, Seller shall not have succeeded in removing, remedying or complying with such Defects at the expiration of such adjournment(s), and if Purchaser shall still be unwilling to waive the same and to close title without abatement of the purchase price, then either party may cancel this contract by Notice to the other given within 10 days after such adjourned date; (iii) notwithstanding the foregoing, the existing mortgage (unless this sale is subject to the same) and any matter created by Seller after the date hereof shall be released, discharged or otherwise cured by Seller at or prior to Closing.
    (c) If this contract is cancelled pursuant to its terms, other than as a result of Purchaser's default, this contract shall terminate and come to an end, and neither party shall have any further rights, obligations or liabilities against or to the other hereunder or otherwise, except that: (i) Seller shall promptly refund or cause the Escrowee to refund the Downpayment to Purchaser and, unless cancelled as a result of Purchaser's default or pursuant to paragraph 8, to reimburse Purchaser for the net cost of examination of title, including any appropriate additional charges related thereto, and the net cost, if actually paid or incurred by Purchaser for updating the existing survey of the Premises or of a new survey, and (ii) the obligations under paragraph 27 shall survive the termination of this contract.

22. **Affidavit as to Judgments, Bankruptcies, etc.** If a title examination discloses judgments, bankruptcies or other returns against persons having names the same as or similar to that of Seller, Seller shall deliver an affidavit at Closing showing that they are not against Seller.

23. **Defaults and Remedies.**
    (a) If Purchaser defaults hereunder, Seller's sole remedy shall be to receive and retain the Downpayment as liquidated damages, it being agreed that Seller's damages in case of Purchaser's default might be

impossible to ascertain and the Downpayment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.

(b) If Seller defaults hereunder, Purchaser shall have such remedies as Purchaser shall be entitled to at law or in equity, including but not limited to, specific performance.

**24. Purchaser's Lien.** All money paid on account of this contract, and the reasonable expenses of examination of title to the Premises and of any survey and survey inspection charges are hereby made liens on the Premises, but such liens shall not continue after default by Purchaser under this contract.

**25. Notices.** Any notice or other communication ("Notice") shall be in writing and either:

(a) sent by either of the parties hereto or by their respective attorneys who are hereby authorized to do so on their behalf or by the Escrowee, by registered or certified mail, postage prepaid, or

(b) delivered in person or by overnight courier, with receipt acknowledged, to the respective addresses given in this contract for the party and the Escrowee, to whom the Notice is to be given, or to such other address as such party or Escrowee shall hereafter designate by Notice given to the other party or parties and the Escrowee pursuant in this paragraph. Each Notice mailed shall be deemed given on the third business day following the date of mailing the same, except that any Notice to Escrowee shall be deemed given only upon receipt by Escrowee and each Notice delivered in person or by overnight courier shall be deemed given when delivered, or

(c) with respect to paragraph 7(b) or paragraph 20, sent by fax to the party's attorney. Each Notice by fax shall be deemed given when transmission is confirmed by the sender's fax machine. A copy of each Notice sent to a party shall also be sent to the party's attorney. The attorneys for the parties are hereby authorized to give and receive on behalf of their clients all Notices and deliveries. This contract may be delivered as provided above or by ordinary mail.

**26. No Assignment.** This contract may not be assigned by Purchaser without the prior written consent of Seller in each instance and any purported assignment(s) made without such consent shall be void.

**27. Broker.** Seller and Purchaser each represents and warrants to the other that it has not dealt with any broker in connection with this sale other than The Corcoran Group (Lindsay Barton Barrett) and Oxford Property Group (Jeffreey Yohai) ("Broker") and Seller shall pay Broker any commission earned pursuant to a separate agreement between Seller and Broker.  Seller and Purchaser shall indemnify and defend each other against any costs, claims and expenses, including reasonable attorney's fees arising out of the breach on their respective parts of any representation or agreement contained in this paragraph. The provisions of this paragraph shall survive Closing or, if Closing does not occur the termination of this contract.

**28. Miscellaneous.**

(a) All prior understanding, agreements, representations and warranties, oral or written, between Seller and Purchaser are merged in this contract; it completely expresses their full agreement and has been entered into after full investigation, neither party relying upon any statement made by anyone else that is not set forth in this contract.

(b) Neither this contract nor any provision thereof may be waived, changed or cancelled except in writing. This contract shall also apply to and bind the heirs, distributees, legal representatives, successors and permitted assigns of the respective parties.  The parties hereby authorize their respective attorneys to agree in writing to any changes in dates and time periods provided for in this contract.

(c) Any singular word or term herein shall also be read as in the plural and the neuter shall include the masculine and feminine gender, whenever the sense of this contract may require it.

(d) The captions in this contract are for convenience of reference only and in no way define, limit or describe the scope of this contract and shall not be considered in the interpretation of this or any provisions hereof.

(e) This contract shall not be binding or effective until duly executed and delivered by Seller and Purchaser.

(f) Seller and Purchaser shall comply with IRC reporting requirements, if applicable. This subparagraph shall survive Closing.

(g) Each party shall, at any time and from time to time, execute, acknowledge where appropriate and deliver such further instruments and documents and take such other action as may be reasonably requested by the other in order to carry out the intent and purpose of this contract. This subparagraph shall survive Closing.

(h) This contract is intended for the exclusive benefit of the parties hereto and except as otherwise expressly provided herein, shall not be for the benefit of, and shall not create any rights in, or be enforceable by any other person or entity.

(i) If applicable, the complete and fully executed disclosure of information on lead-based paint and/or lead-based paint hazards is attached hereto and made a part hereof.

Continued on Rider attached hereto. *(Delete if inapplicable)*

**In Witness Whereof,** this contract has been duly executed by the parties hereto.

_____  
Pamela Peterson  
*Seller*

_____  
*Purchaser*

_____  
*Seller*

_____  
*Purchaser*

Attorney for Seller: Michele F. Scotto  
Address: ▓ Battery Place ▓ New York, NY 10004  
Tel: ▓   Fax: 212-422-5171

Attorney for Purchaser: Bruce Baldinger  
Address: ▓ South Street, Morristown, NJ 07960  
Tel: ▓   Fax:

Receipt of the Downpayment is acknowledged and the undersigned agrees to act in accordance with the provisions of paragraph 6 above.

Michele F. Scotto  
*Escrowee*

# Contract of Sale

TITLE NO.

TO

**PREMISES**

Sheet  
Section  
Block          429  
Lot            65  
Plate  
County or Town    KINGS  
Street Number     377 Union Street, Bklyn

## NOTES ON MORTGAGE COMMITMENT CONTINGENCY CLAUSE
### for
### RESIDENTIAL CONTRACT OF SALE

1. **WARNING:** The mortgage Commitment contingency clause for the Residential Contract of Sale is a bar association form that attempts to provide a mechanism that makes the rights and obligations of the parties clear in sale of residences in ordinary circumstances. It should be reviewed carefully by Seller and Purchaser and their attorneys in each and every transaction to make sure that all the provisions are appropriate for that transaction. Negotiated modifications should be made whenever necessary.

2. Under the clause, the obligation of Purchaser to purchase under the contract of sale is contingent on Purchaser's obtaining a mortgage Commitment letter from an Institutional Lender within the number of days specified for the amount specified. This refers to calendar days. Seller's attorney should state his/her calculation of the Commitment Date in the letter delivering the executed contract to Purchaser's attorney, to prevent confusion later. Purchaser should promptly confirm or correct that date. In applying for a loan, Purchaser should inform its lender of the scheduled date of Closing in the contract and request that the expiration date of the Commitment occur after the scheduled dated of Closing. Purchaser must comply with deadlines and pursue the application in good faith. The Commitment contingency is satisfied by issuance of a Commitment in the amount specified on or before the Commitment Date, unless the Commitment is conditioned on approval of an appraisal. If the Commitment is conditioned on approval of an appraisal and such approval does not occur prior to the Commitment Date, Purchaser should either cancel the contract or obtain an extension of the Commitment Date. If the Commitment is later withdrawn or not honored, Purchaser runs the risk of being in default under the contract of sale with Seller.

3. If there are loan terms and conditions that are required or would not be acceptable to Purchaser, such as the interest rate, term of the loan, points, fees or a condition requiring sale of the current home, those terms and conditions should be specified in a rider.

4. This clause assumes that initial review and approval of Purchaser's credit will occur before the Commitment letter is issued. Purchaser should confirm with the lender that this is the case before applying for the Commitment.

5. If, as has been common, the Commitment letter itself is conditioned on sale of Purchaser's home or payment of any outstanding debt or no material adverse change in Purchaser's financial condition, such a Commitment will satisfy the contract contingency nonetheless, and Purchaser will take the risk of fulfilling those Commitment conditions, including forfeiture of the Downpayment if Purchaser defaults on its obligation to close. Under New York case law, a defaulting Purchaser may not recover any part of the Downpayment, and Seller does not have to prove any damages. If Purchaser is not willing to take that risk, the clause must be modified accordingly.

6. Purchaser may submit an application to registered Mortgage Broker instead of applying directly to an Institutional Lender.

7. This clause allows Seller to cancel if a Commitment is not accepted by Purchaser by the Commitment Date, unless Purchaser timely supplies a copy of the Commitment, to allow Seller the option to avoid having to wait until the scheduled date of Closing to see if Purchaser will be able to close. Seller may prefer to cancel rather than to wait and settle for forfeiture of the Downpayment if Purchaser defaults. Because of Seller's right to cancel, Purchaser may not waive this contingency clause. This clause means that Purchaser is subject to cancellation by Seller even if Purchaser is willing to risk that he/she will obtain the Commitment after the Commitment Date. Some Purchasers may not want to be subject to such cancellation by Seller.

8. Purchaser may want to add to paragraph 21(e) that Purchaser's reimbursement should include non-refundable financing and inspection expenses of Purchaser, which should be refunded by Seller if Seller willfully defaults under the contract of sale (alternative: If Seller is unable to transfer title under the contract of sale).

9-25-00  
Joint Committee on the Mortgage Contingency Clause:  
Real Property Section of the New York State Bar Association  
Real Property Law Committee of the Association of the Bar of the City of New York  
Real Property Committee of the New York County Lawyers Association

**RIDER TO AND FORMING A PART OF THE CONTRACT OF SALE**

**DATED**       :       *November  14, 2012*

**BETWEEN**   :       *Pamela Peterson, Seller &*
                              *MC Brooklyn Holding LLC, Purchasers*


**PREMISES**  :       *377 Union Street, Brooklyn, NY*

***IT IS FURTHER UNDERSTOOD AND AGREED BETWEEN THE SELLER AND PURCHASER AS FOLLOWS:***


      In the event of any conflict between the printed form contract and this rider, the terms of this rider shall control.

1.    This Contract is subject to any state of facts an accurate survey may show provided same would not render title unmarketable. This contract is subject to covenants, agreements, zoning ordinances, reservations, restrictions and easements of record, if any, provided that same are not now violated by the structure or by the present use and occupancy.

2.    Purchaser may have the premises inspected by a licensed exterminator for the purpose of determining the existence of active wood destroying insect infestation and damage. The cost of such inspection shall be borne by Purchaser. In the event that wood destroying insect infestation and damage is found, a copy of the report issued by the exterminator shall be served upon Seller's attorney within seven (7) days after the date of purchasers' receipt of a fully executed copy of this Contract. Upon receipt of this report by Seller's attorney, Seller shall have the option at her own cost and expense: (i) to remove said infestation and repair any damage caused thereby and provide Purchaser with a written guarantee from a termite inspection company or exterminator that said work has been done, or (ii) to cancel said Contract and return the Contract deposit to Purchaser. Notice of Seller's intent to exercise either option shall be served upon Purchaser's attorney within five (5) business days after receipt of the termite inspection report by Seller's attorney. In the event that Purchaser shall fail to have the premises inspected or shall fail to serve written notice of infestation and damage upon Seller's attorney within the time provided above, Purchaser shall be deemed to have waived the provisions of this paragraph and the balance of this Contract shall remain in full force and effect.
Notwithstanding the above, Purchasers shall have the option to accept the premises with the existing condition.

3.    In the event that there should be any violation(s) of record required to be removed by Seller hereunder at a total estimated cost which exceeds $10,000.00, Seller shall have the option to remove the violation(s) or cancel this Contract and return to Purchaser her deposit hereunder, plus charges made for: (i) examining the title, (ii) any appropriate additional searches made in accordance with this Contract, and (iii) survey and survey inspection charges.

1

Upon such refund and payment, this Contract shall be considered void, and neither Seller nor Purchaser shall have any further rights against the other.

4. Purchasers agree to accept the premises in its present "as is" condition subject to reasonable wear and tear to the date of closing. Seller makes no representations or warranties as to the condition of the subject premises, except that plumbing, heating, and electrical systems and appliances will be in working order and the roof will be free of leaks.

5. All adjustments and apportionments shall be made on the basis of a thirty (30) day month regardless of the number of days actually in the month of closing. Water meter charges shall be apportioned based on the last actual title meter reading received at normal billing intervals. In the event that the Seller remains in possession after the closing then all adjustments shall be made as of the date of possession and shall include an adjustment for Purchaser's mortgage interest.

6. The premises shall be conveyed subject to the following tenancies:None; however,seller shall be entitled to remain in the premises for a period of up to two(2) weeks after closing in accordance with the post closing occupancy agreement attached hereto.

7. Purchaser agrees to notify the attorney for the Seller, in writing, not less than twenty (20) days before title closing date, of any objections there may then be to their title of said premises, and Seller shall have a reasonable time to remove such objections. Receipt by seller's attorney of a title report shall be deemed compliance herewith.

8. If the Seller is unable to close pursuant to the terms of this Agreement, Purchaser's sole remedy shall be, and the remedies of Purchaser shall be limited to, the cancellation of this Agreement by written notice to Seller and Escrow Agent and to receive a return of the deposit from Escrow Agent along with a reimbursement of Purchaser's out of pocket expenses for title, survey and reasonable attorney's fees which reimbursement shall not exceed, in the aggregate, Two Thousand ($2,000.00) Dollars and thereafter, neither party shall have any liability or obligation to the other pursuant to this Agreement except for those obligations specifically stated to survive cancellation or termination. Notwithstanding, the foregoing, in the event of an intentional breach of this Agreement by Seller, Purchaser shall be entitled to seek enforcement of Seller's obligations under this Agreement by the remedy of specific performance.

9. If Purchaser is in default under Agreement, Seller shall receive, as Seller's sole remedy, the deposit as liquidated damages and not as a penalty and this Agreement shall terminate and neither party shall have any further liability to the other except for those obligations specifically stated to survive cancellation or termination. The parties agree that the damages which Seller will sustain will be difficult, if not impossible, to prove and that the deposit is a reasonable estimate thereof.

In addition, in the event that Seller or Escrow Agent is unable to receive payment in the normal course of collection on any check delivered by Purchaser to Seller or Escrow Agent,

0.7.4249.1375839

DOJSCO-402192918

then, at Seller's option, upon notice to Purchaser and Escrow Agent, this Agreement may be terminated immediately.

10. This contract may not be assigned by Purchaser without the prior written consent of Seller except that purchasers may assign this contract to an limited liability company whose members are the individual purchasers named herein.

11. Purchasers hereby acknowledge that Purchasers have been advised that the Building which is the subject of this Contract of Sale was constructed prior to 1978 and that such Building and the premises may contain lead based paint (inact lead based paint that is in good condition is not necessarily a hazard). Annexed hereto as Exhibit "B" and made a part hereof is a disclosure form regarding lead paint hazards. Simultaneously with the execution and delivery of this Contract, Purchasers shall execute and deliver to Seller, four copies of Exhibit B. Purchasers further acknowledge that Purchasers have received the E.P.A. pamphlet *Protect Your Family from Lead in Your Home* and have waived the opportunity to conduct a risk assessment or inspection for the presence of lead based paint or lead based paint hazards.

12. It is understood and agreed that Sellers shall be under no obligation to expend any sums or undergo any repair which might be required by Purchasers' lender in accordance with Purchasers' loan commitment.

13. **Payment of Taxes**

If the property being sold is subject to any liens, such as transfer, inheritance, estate, license or other similar taxes, the amount of which has not been fully fixed, the same shall not be deemed an objection to title, provided that Purchaser's title company will, at the time of closing, issue or bind itself to issue its policy which will insure the Purchaser against collection of said taxes from said premises, and provided further, that Purchaser's lending institution, if applicable, will close the mortgage loan with Purchaser.

14. **Payment of Franchise Taxes**

Unpaid franchise taxes and general New York City corporate taxes of Seller, or any corporation in the chain of title, shall not be an objection to title, provided Seller shall leave a reasonable deposit, in escrow, with Purchaser's title company to secure the payment of any unpaid franchise tax within sixty (60) days from date of closing of title and provided further, Purchaser's lending institution, if applicable, will close the mortgage loan with the Purchaser.

15. Intentionally Deleted

16. The parties enter into this Contract with the express understanding that this contract is not contingent upon the ability of the Purchaser to sell and/or close title to the present residence or other properties. Therefore, any conditions in a mortgage commitment issued to the Purchaser requiring the sale and/or closing of title to Purchaser's property before the lender will close to this loan and release the loan proceeds to the Purchaser shall be deemed non-existent insofar as the parties hereto are concerned, and said mortgage commitment shall be considered as firm and unconditional notwithstanding such condition. Purchaser understands that the

3

inclusion of this provision is of material importance to the Seller and absent same the Seller would not have entered into this contract.

17.  Purchasers represent that none of the said mortgage applicants has been a party to any bankruptcy proceedings with the past ten (10) years, they know of no reason why their credit should not now be approved, that they have no known outstanding judgments, liens, and that they have sufficient funds to cover the balance of the purchase price plus closing costs. Purchasers agree to comply with all reasonable requirements imposed by the lending institution and to pay off any outstanding personal loans prior to closing, if same is required by the lending institution. Seller has informed the purchaser that the lending institution may, after the issuance of the mortgage commitment and prior to the institution may, *after the issuance of the mortgage commitment and prior to the closing*, require an updated credit search to determine the current status of the Purchaser's credit. Purchaser represents that all installment payments and other obligations are presently current and will continue to remain so until title closes. The parties agree that the Seller has relied on this ***MATERIAL REPRESENTATION*** as an inducement to the execution of this contract.

18.  ***Description of the Premises/Land***

In the event there is a ***MATERIAL DISCREPANCY/DIFFERENCE*** with the description of the property as provided with this contract of sale and the actual dimensions; then, in that event the Purchaser shall only be entitled to either accept premises as it presently and actually exists or to declare this contract null and void and after receiving the return of the ***DOWNPAYMENT*** neither Party will have any rights or obligations against the other.

19.  ***Legal Occupancy***

Seller represents that the property being sold is a legal _three ( 3 ) family dwelling and that all buildings on the premises are covered by an existing Certificate of Occupancy, or Municipal Approval and/or Certificate of Compliance or Completion unless none is required. Seller shall not be required to spend in excess of $10,000.00 total to obtain any Certificate, Permit or Approval. If the cost to obtain any Certificate, Permit or Approval exceeds $10,000.00, Seller shall have the option of canceling the Contract of Sale and returning the contract deposit hereunder. Within five (5) days of Seller's election to cancel, Purchaser may elect to take title subject to any noncompliance in which event Seller shall credit Purchaser $10,000.00 at closing. Notwithstanding anything to the contrary, Seller shall not be required to obtain any Certificates, Permits or Approvals for above ground pools, decks, sheds, porches, stairs, basement kitchens and/or bathrooms, if any exits, which Purchaser is accepting "as is".

20.  ***Waiver of Article 14***

Purchasers waive all their rights under Article 14 of the Real Property Law, except their right to a credit of $500.00 for Sellers failure to execute and deliver a Property Condition Disclosure Statement and/or a Revised Property Condition Disclosure Statement. However, nothing contained herein shall limit Purchasers rights pursuant to this contract or as New York Law existed prior to the implementation of said Article 14.

4

21. This contract may be executed in counterparts, each of which shall be deemed an original. Delivery of a fully executed facsimile or electronically scanned counterpart of this Contract to Purchasers' attorney shall be deemed delivery to Purchasers.

_____
Seller

_____
Purchaser

_____
Purchaser

[REAL ESTATE FORMS/REKR.FORM]
10/9/03

## SECOND RIDER

This Rider made this 14th day of November, 2012 by and between MC Brooklyn oldings, LLC as Purchaser and Pamela Peterson as Seller which Rider shall serve to amend the Contract of Sale and First Rider.

### As To Contract

1. Purchaser is MC Brooklyn Holdings, LLC

2. Strike 6(e).

3. As to 9, within 7 days of the date of execution of this agreement, Purchaser shall also have the right to conduct due diligence into off- site conditions inclusive of but not limited to Megan's Law and environmentally hazardous sites and Purchaser shall have 7a days from the date of the execution of the Agreement to terminate the Agreement should such conditions be discovered.

4. As to 13, add "at standard rates."

5. 16(b), add that any Certificate of Occupancy or other authorization shall be in a form which permits the Purchaser to continue the use as a three family residence. Moreover, any reference to the term current use" in contract First Rider shall be deemed to be interpreted as a three family dwelling. This clause shall service closing.

6. Add, 16 (h) the execution of any other documents customarily provided or reasonably required by Purchaser's lender or title company for a residential title and mortgage closing.

### As to Rider

1. As to 1, add, "or which would unreasonably limit the full use of the premises by Purchaser as described above.

2. The parties agree that prior to closing, Seller shall remediate and remove all asbestos located on the premises or property and, in doing so, Seller shall utilize licensed professionals who shall provide all permits final authorizations and certificates as are required by law.

3. As to 7, strike and add, "Purchaser represents that it has commenced the ordering of title searches as is demonstrated by copy to Seller's counsel. Upon

receipt thereof, Purchaser shall provide said searches and any addendum of Seller's counsel. Seller's counsel is hereby provided with approval to speak with Purchaser's title company regarding any title issue or to otherwise expedite closing which both parties have expressed interest in achieving."

4. As to 19, strike last sentence.

5. Risk of any loss shall be on Seller prior to closing and for any possession thereafter. In the event the premises is damaged as the result of any hazard, casualty, act of God or otherwise, and the repair or remediation of such damages costs greater than $100,000.00, Purchaser, at Purchaser's sole option, shall have the right to cancel this agreement and receive a full refund of its deposit. Alternatively, Purchaser may also elect to accept an assignment of insurance proceeds, if any, and proceed promptly to closing.

6. Seller agrees to give access to purchaser for a maximum of three additional visits by purchaser or agent of Purchaser at the property for the purpose of measuring, decorating and similar functions. Such visits shall only be conducted with at least 24 hours notice and conducted in a manner not disruptive to Seller or her family.

By: _____
Jessica Manafort, Managing Member
MC Holding, LLC
Purchaser

_____
Pamela Peterson
Seller

_____
Michele Scotto
Escrow Agent

## POSSESSION AGREEMENT

AGREEMENT, made as of the 14 day of November, 2012, by and among Pamela Peterson, residing at 377 Union St., Bklyn., NY (the "**Seller**"), and MC Brooklyn Holding, LLC, having an address at 29 Howard St., NY, NY10013(the "**Purchaser**"), and Michele F. Scotto, having an office at ▮ Battery Place,NY, NY10004 (the "**Escrowee**").

### WITNESSETH:

WHEREAS, Seller and Purchaser executed a certain contract of sale, dated November 14, 2012 (the "**Contract**") pursuant to which Seller agreed to sell and Purchaser agreed to purchase the premises located at 377 Union St, Brooklyn, N.Y. (the "**Premises**");

WHEREAS, Seller conveyed to Purchaser, on the date hereof (the "**Closing Date**"), title to the Premises in accordance with the terms and conditions of the Contract;

WHEREAS, pursuant to the Contract, Escrowee is holding the sum of **$299,500.00** Dollars in escrow as and for the Purchaser's contract deposit (the "**Deposit**");

WHEREAS, Seller desires to remain in possession of the Premises during the period of time (the "**Possession Period**") commencing on the Closing Date and expiring on **TBD(2 weeks from closing)**, 2012 (the "**Expiration Date**").

WHEREAS, Purchaser has agreed to grant Seller a limited license to use and occupancy the Premises during the Possession Period on the terms and conditions set forth herein.

NOW THEREFORE, in consideration of the mutual covenants herein contained, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto acknowledge and agree as follows:

1. Purchaser hereby grants Seller a limited right to use and occupy the Premises during the Possession Period. During the Possession Period, Seller shall pay a monthly fee equal to **$15,000.00** Dollars (the "**Monthly License Fee**") to Purchaser. Seller shall deliver to Purchaser on the Closing Date a sum equal to a prorated Monthly License Fee of **$500.00** per day in the ratio of the number of days that such portion bears to the actual number of days in the month that the Closing Date occurs. Thereafter, Seller shall deliver consecutive Monthly License Fees to Purchaser on or before the first (1st) day of each month after the first full month following the Closing Date. If Seller does not stay a full month for which a Monthly License Fee is paid, Purchaser shall pro-rate the Monthly License Fee according to the formula above and Purchaser shall return the unused portion of the Monthly License Fee simultaneously with vacating the Premises.

2. Escrowee will continue to hold **$30,000.00** Dollars of the Deposit in escrow (the

"**Escrow Funds**") during the Possession Period to ensure Seller's compliance with the terms of this Agreement. Escrowee will hold the Deposit funds in accordance with section 27 of the Contract. If Seller fails to vacate the Premises on or before the Expiration Date, Escrowee will pay directly to Purchaser from the Escrow Funds the sum of **$500.00** Dollars per day for each and every day Seller remains in possession after the Expiration Date. All adjustments pursuant to section 18 of the Contract will be calculated as of midnight of the date before the Closing Date.

In addition, Purchaser may withhold the further sum of $25,000.00 as security against damages arising out of the cost and expense of (1) enforcing timely removal; and/or (2) repair of damage, if any, cause by Seller and occurring subsequent to closing of title; and/or (3) to apply to rental at the increased rate of $1,000.00 per day, which shall be the accrual of rental subsequent to the last date limited herein for holdover.

3.  The parties hereto acknowledge and agree that this Agreement is not a lease and that no landlord-tenant relationship is intended to be or is created hereby, and the parties expressly waive their respective rights in any action or proceeding to assert that this Agreement is a lease.

4.  In the event the Seller does not vacate the Premises by the Expiration Date, Seller represents that Purchaser will have the right to institute summary proceedings to remove Seller from possession of the Premises and Seller agrees that she will not file any answer or interpose any defense in such proceeding instituted by Purchaser. Seller further agrees that all reasonable costs, expenses and disbursements incurred by Purchaser in so instituting such proceedings will be reimbursed to Purchaser by Seller, including reasonable attorney's fees from the Escrow Funds. Further in such event, Seller also waives service of a ten (10) day Notice to Quit as may be otherwise by required by Real Property Actions and Proceedings Law Section 713.

5.  On or before the Expiration Date, Seller will deliver the Premises to Purchaser vacant and broom clean and in the condition as required by the Contract, reasonable wear and tear and damage from the elements excepted. Escrowee may release the Escrow Funds to Seller upon confirmation from Purchaser that the Premises were delivered to Purchaser in accordance with the terms of this Agreement and the Contract. Purchaser shall notify Escrowee in writing, within four (4) days from the date Seller delivers the Premises to Purchaser in accordance with the terms of the Contact and this Agreement or within four (4) days from the date Escrowee notifies Purchaser that Seller has vacated the Premises in accordance with the terms of this Agreement or that there are objections as to the condition of the Premises. If Purchaser fails to notify Escrowee within the time set forth herein, Escrowee shall be relieved from any liability of releasing the balance of the Escrow Funds to Seller pursuant to the terms of this Agreement.

The Seller will be responsible for the payment of, and shall pay for, all utilities used subsequent to the date of closing and to the date of delivery of possession. Neither party shall take any action in regard to changing the name on any utilities accounts until the date of delivery of possession.

Risk of casualty loss shall be in Seller to the date of closing of title and in Purchaser thereafter. The parties will maintain and keep in force and effect fire or homeowner's insurance accordingly, but neither party shall have, and each hereby expressly disclaims, any interest in any policy of the other.

Seller will, either by change endorsement of former homeowner's policy or by new issuance, obtain and keep in effect a tenant liability policy for the period of holdover possession with minimum limits of $1,000,000.00 /$3,000,000.00 for personal injury and $2,000,000.00 for property damage.

The Seller will indemnify and hold the Purchaser harmless during the holdover period from claims arising out of his/her said use and occupancy during that period in favor of himself/herself, members of his/her family and household and all lawful guests, licensees and invitees.

After the first two weeks of possession under this Agreement, Seller agrees that during the term of this Agreement, Seller shall permit Purchaser to show the property to perspective tenants and accommodate any realtor or other agents' of Purchaser.

6.  If Seller is in default hereunder, or if Purchaser is required to commence any proceeding or take action to remove or otherwise evict Seller from the Premises, Seller will reimburse Purchaser from the Escrow Funds for all costs and expenses (including without limitation reasonable attorneys' fees and disbursements) incurred by Purchaser in connection with any action or proceeding arising out of such default.

7.  During the Possession Period, Seller, at Seller's sole cost and expense, will care for, protect and maintain the Premises and will exercise reasonable care in protecting the Premises from theft or damage. If Seller fails to maintain the Premises in the condition required by the Contract, Purchaser may cause the Premises to be put in such condition and all costs and expenses incurred by Purchaser with respect threeto will be paid from the unused Monthly License Fees, if any, and/or the Escrow Funds or, if the unused Monthly License Fees and/or Escrow Funds are insufficient to pay these expenses, such costs and expenses will be paid by Seller immediately upon presentment of invoices therefor. Purchaser shall present to Seller and Escrowee all invoices for costs incurred under this paragraph, even if such costs are covered under the unused Monthly License Fee or Escrow Funds. Seller will also maintain her liability insurance policy in full force and effect until the Expiration Date or the date that possession of the Premises is delivered to Purchaser and will list Purchaser as an additional insured party on such insurance policy.

8.  All representations in the Contract will survive through the Expiration Date. The parties acknowledge that the Escrow Funds are not a limitation of Seller's liability pursuant to this Agreement.

9.  Except as expressly provided herein, any notice required to be given in connection with this Agreement must comply with paragraph 17 of the Contract.

10. This Agreement will not be binding upon or enforceable against Seller or Purchaser unless and until Seller and Purchaser have executed and unconditionally delivered an executed counterpart of this Agreement to the other. Seller and Purchaser agree that this Agreement may be executed in counterparts.

11. This Agreement may not be modified, amended or terminated nor may any of its provisions be waived, except by an agreement in writing signed by the party against whom enforcement of any modification, amendment, termination or waiver is sought.

12. The covenants, agreements, terms, provisions and conditions contained in this Agreement will be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

13. This Agreement will be governed by and construed and enforced in accordance with the laws of the State of New York. The parties hereby expressly waive their right to trial by jury in any action or proceeding arising out of this Agreement.

14. If there is any conflict between the terms of this Agreement and the terms of the Contract, the terms of this Agreement will control.

15. During the Possession Period, Seller shall give access to Purchasers' architects and contractors to draft renovation plans for the Premises. All said appointments shall be a reasonable hours with prior notice to Seller.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

SELLER:                                              PURCHASER:

_____                            _____
Pamela Peterson                                      Jessica Manafort
                                                     MC Brooklyn Holdings, LLC

ESCROWEE:

_____
Michele Scotto



3142—Lead paint disclosure, sale of dwelling,
24 CFR Part 35, 40 CFR Part 745, 9-6-96.

Blumberg Excelsior, Publisher, NYC 10013

# Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards
## SALES

**Lead Warning Statement**

Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.

**Seller's Disclosure**

(a) Presence of lead-based paint and/or lead-based paint hazards *(Check (i) or (ii) below):*
  (i) ☐ Known lead-based paint and/or lead-based paint hazards are present in the housing *(explain)*.
  _____
  _____
  _____
  _____
  (ii) ☐ Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

(b) Records and reports available to the seller *(Check (i) or (ii) below):*
  (i) ☐ Seller has provided the purchaser with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing *(list documents below)*.
  _____
  _____
  (ii) ☐ Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Purchaser's Acknowledgment** *(initial)*
(c) _____ Purchaser has received copies of all information listed above.
(d) _____ Purchaser has received the pamphlet ***Protect Your Family from Lead in Your Home.***
(e) _____ Purchaser has *(check (i) or (ii) below):*
  (i) ☐ received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards; or
  (ii) ☐ waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

**Agent's Acknowledgment** *(initial)*
(f) _____ Agent has informed the seller of the seller's obligations under 42 U.S.C. 4852d and is aware of his/her responsibility to ensure compliance.

**Certification of Accuracy**

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

| SELLER | DATE | SELLER | DATE |
|---|---|---|---|
| PURCHASER | DATE | PURCHASER | DATE |
| AGENT | DATE | AGENT | DATE |