```
PR 27, 2012  LEASE REVIEW                    LAND ROVER F & I (fa  PORT 5161  4790
-----------------------------------------------------------------------------------
LANDROVER ALEXANDRIA                         F&I MGR: PORTENE PUGH
BUYER:                                                LEASE#:     33614
STOCK#: 12036L    2012 LAND ROVER     RANGE ROVER

GRS CAP COST    92725.74    MONTHLY TAX        0.00    1ST PAYMENT      1378.81
SALES TAX        2885.25    MO PROP TAX        0.00    CAP RED         14233.19
LAH PREMIUM         0.00    ------------------------    SLS TAX UPFNT       0.00
CAP REDUCTN     14233.19                                1ST YR FEES        34.00
                            TOT MO PYMT     1378.81    SEC DEPOSIT         0.00
NET CAP COST    81377.80    TOT OF PYMTS   49637.16    OTHER UPFNT       379.00

ADJ RESIDUAL    44220.05    EST FEES/TERM    372.50    TOT INIT PMT    16025.00
TOT TERM DEP    37157.75    TOT TAXES       9576.67
MONTHLY DEP      1032.16                                DUE ON DELIV    12525.00
MO LEASE CHG      346.65
-------------------------    LIFE PREMIUM       0.00    TERM                 36
BASE PAYMENT     1378.81    LEV PREMIUM        0.00    DEAL DATE     04/25/2012
                            A&H PREMIUM        0.00    2ND PYMT DTE  05/25/2012
                            IUI PREMIUM        0.00    LOAN END DTE  04/25/2015

                            JPMORGAN CHASE BANK NA (PRIME)

PRINTER OUTPUT (Y/N) N
```

LAND ROVER FINANCIAL GROUP

## MOTOR VEHICLE LEASE AGREEMENT

**1. PARTIES:**

| Lessor - Dealer Name | Address |
|---|---|
| LANDROVER ALEXANDRIA | ███ DUKE STREET, ALEXANDRIA VA 22314 |
| Lessee - Name | Address |
| KATHLEEN B. HANAFORT | ███ MOUNT VERNON CIRCLE, ALEXANDRIA VA 22309 |
| Lessee - Name | Address |
| PAUL J. MANAFORT | ███ MOUNT VERNON CIRCLE, ALEXANDRIA VA 22309 |

You (meaning each lessee signing this Lease) agree to lease from us (meaning the Lessor) the vehicle described in item 2 of this Lease. The Lease terms and obligations begin when the Lease is signed by you and by us. The Consumer Lease disclosures in this Lease are also made on behalf of the assignee, JPMorgan Chase Bank, N.A. (Chase).

Chase will administer this Lease unless we notify you otherwise.

**2. DESCRIPTION OF VEHICLE:**

| MODEL YEAR | MAKE | MODEL | BODY STYLE | COLOR | VEHICLE IDENT. NO. | [illegible] |
|---|---|---|---|---|---|---|
| 2012 | LAND R RANGE ROVER H 4DR 4WD HSE LU | | | TONTHA SAND | ███████ | 4g |

Unless this box is checked [ ], the Lease is primarily for personal, family or household purposes.

**3. DESCRIPTION OF TRADE-IN (if applicable):**

| MODEL YEAR | MAKE | MODEL | GROSS ALLOWANCE | AMOUNT OWED | NET TRADE-IN |
|---|---|---|---|---|---|
| 2010 | LAND R RANGE ROVER S | $34,922.00 | $16,928.24 | $-2005.24 |

An "e" in this Lease indicates an estimate.

| 4. Amount Due at Lease Signing or Delivery | 5. Monthly Payments | 6. Other Charges (not part of your monthly payment) | 7. Total of Payments (The amount you will have paid by the end of the Lease) |
|---|---|---|---|
| (Itemized below) $16825.00 | Your first monthly payment of $1322.25 is due on 06/25/2012, followed by 35 payments of $1322.25, due on the 25th of each month. The total of your monthly payments is $47681.00 | (a) Disposition fee (if you do not purchase the vehicle) $300.00  (b) Other N/A  (c) Other N/A  (d) Total $300.00 | $62681.75 |

**Itemization of Amount Due at Lease Signing or Delivery**

| 8. Amount Due at Lease Signing or Delivery | 9. How the Amount Due at Lease Signing or Delivery will be paid: |
|---|---|
| (a) Capitalized cost reduction $4289.75 | (a) Net trade-in allowance $ N/A |
| (b) First monthly payment $1322.25 | (b) Rebates and noncash credits $3500.00 |
| (c) Refundable security deposit $ N/A | (c) Amount to be paid in cash $12525.00 |
| (d) Initial title fees $ N/A | |
| (e) Initial registration fees $34.00 | |
| (f) Sales or use tax $ N/A | |
| (g) Acquisition fee $ N/A | |
| (h) Extended warranty agreement $ N/A | |
| (i) DOC FEE $179.00 | |
| (j) Other N/A $ N/A | |
| (k) Other N/A $ N/A | |
| (l) Other N/A $ N/A | |
| (m) Total $16825.00 | (d) Total $16025.00 |

**10. Your Monthly payment is determined as shown below:**

(a) Gross capitalized cost. The agreed upon value of the vehicle ($60845.00) and any items you pay for over the Lease term (such as taxes, fees, service contracts, insurance, and any outstanding prior credit or lease balance). (See item 14 below for an itemization of this amount) ............ (a) $63815.31

(b) Capitalized cost reduction. The amount of any rebate, net trade-in allowance, noncash credit or cash you pay that reduces the gross capitalized cost ............ (b) $14289.75

(c) Adjusted capitalized cost. The amount used in calculating your base monthly payment ............ (c) $49525.56

(d) Residual value. The value of the vehicle at the end of the Lease used in calculating your base monthly payment ............ (d) $44238.85

(e) Depreciation and any amortized amounts. The amount charged for the vehicle's decline in value through normal use and for other items paid over the Lease term ............ (e) $36395.51

(f) Rent charge. The amount charged in addition to the depreciation and any amortized amounts ............ (f) $12295.49

(g) Total of base monthly payments. The depreciation and any amortized amounts plus the rent charge ............ (g) $47681.00

(h) Lease payments. The number of payments in your Lease ............ (h) 36

(i) Base monthly payment ............ (i) $1322.25

(j) Monthly sales/use tax ............ (j) $ N/A

(k) Other N/A ............ (k) $ N/A

(l) Total monthly payment ............ (l) $1322.25

**11. Early Termination.** You may have to pay a substantial charge if you end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier you end the Lease, the greater this charge is likely to be.

**12. Excessive Wear and Use.** You may be charged for excessive wear based on our standards for normal use and for mileage in excess of 10000 miles per year at the rate of (b) 30 cents per mile.

**13. Purchase Option at End of Lease Term.** You have an option to purchase the vehicle at the end of this Lease term for (d) $44238.85 with a purchase option fee of (b) $150.00. The purchase option price does not include fees for tags, taxes or registration.

Other Important Terms. See your Lease documents for additional information on early termination, purchase option and maintenance responsibilities, warranties, late and return charges, insurance, and any security interest, if applicable.

**14. ITEMIZATION OF GROSS CAPITALIZED COST**

| (a) Agreed upon value of the vehicle | (a) $59845.00 |
| (b) Sales/use tax | (b) $2829.37 |
| (c) Federal luxury tax | (c) $ N/A |
| (d) Initial title, license and registration fees | (d) $139.00 |
| (e) Acquisition fee | (e) $795.00 |
| (f) Prior credit or lease balance | (f) $2006.24 |
| (g) Extended warranty agreement | (g) $ N/A |
| (h) Other | (h) $ N/A |
| (i) Other N/A | (i) $ N/A |
| (j) Other N/A | (j) $ N/A |
| (k) Other N/A | (k) $ N/A |
| (m) Gross capitalized cost (same as item 10(a)) | (m) $63815.31 |

**15. OFFICIAL FEES AND TAXES.** The total amount you will pay for official and license fees, registration, title, and taxes over the term of your Lease, whether included in [illegible] or assessed otherwise $ [illegible]. This amount is an estimate. The actual total of fees and taxes may be higher or lower depending on the tax rates in effect or the value of the leased property at the time a fee or tax is assessed.

If we pay any required government fees and taxes (other than tax on capitalized cost reduction) when assessed on you, us or the vehicle, you will pay us the amount we have paid. If any required government fees and taxes, including personal property taxes (if applicable) are assessed for any period of [illegible] of a period, prior to Lease termination, even such amounts are billed to you after Lease termination.

**16. LATE PAYMENTS.** The charge for late payments is the lesser of $25 or 5% of the unpaid amount of any payment not received within 10 days of its due date.

**17. WARRANTIES.** Unless this box is checked [ ] the vehicle is subject to a manufacturer's standard new car warranty. The vehicle is also subject to any other express warranties or guarantees disclosed here.  N/A  There are no warranties, guarantees or other rights provided to you by us or the manufacturer of the vehicle other than those disclosed in this Lease. UNLESS PROHIBITED BY LAW, IF THE DEALER HAS NOT PROVIDED A WRITTEN WARRANTY, WE DISCLAIM ALL IMPLIED WARRANTIES, INCLUDING THE WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

**18. REQUIRED INSURANCE.** You must maintain the insurance coverage described in item 27. You affirm that such insurance is in force on the date of this Lease through the following agent:

Insurance Agent's Name: CSIDS  
Agency Name: GREAT NORTHERN INS. CO  
Agency Address: 15 MOUNTAIN VIEW RD WARREN NJ 07059  
Agency Phone Number: (361) 417-0801  
INSURANCE COVERAGE VERIFIED BY: [signature]  
Employee Name: BUCH  
Verification Date: 04/27/12  Verification No: 3614137888  

NO PHYSICAL DAMAGE OR LIABILITY INSURANCE COVERAGE FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS IS INCLUDED IN THIS LEASE.

**19. Options: Insurance Products.**

You are not required to buy any of the optional insurance products listed below. You should carefully review the contracts that describe the details of any optional insurance products you choose to buy. By signing this Lease, you have elected to purchase from the original Lessor the following optional insurance products.

| Product Name - Provider Name | Coverage Type | Coverage Amount | Cost |
|---|---|---|---|
| N/A | N/A | N/A | $ N/A |
| N/A | N/A | N/A | $ N/A |
| N/A | N/A | N/A | $ N/A |
| N/A | N/A | N/A | $ N/A |

You have purchased the optional insurance products listed above for a total cost of:  $ N/A

A portion of the charges for the optional insurance products listed above may be retained or received by the original Lessor.

**LESSEES' NOTICES AND SIGNATURES**

BY SIGNING THIS LEASE, YOU ACKNOWLEDGE THAT THIS LEASE CONTAINS AN "AGREEMENT TO ARBITRATE DISPUTES" ON THE REVERSE SIDE, THAT YOU HAVE READ THE AGREEMENT TO ARBITRATE DISPUTES AND AGREE TO ITS TERMS.

BY SIGNING THIS LEASE BELOW YOU ACKNOWLEDGE THAT: (1) EACH LESSEE ACCEPTS AND IS SEPARATELY LIABLE UNDER THE TERMS AND CONDITIONS OF THIS LEASE, AND (2) YOU ACKNOWLEDGE THAT YOU HAVE READ BOTH SIDES OF THIS LEASE, UNDERSTAND ALL OF ITS TERMS AND CONDITIONS AND RECEIVED A COMPLETELY FILLED IN COPY BEFORE SIGNING BELOW.

X [signature Kathleen B. Manafort]   Date 04/25/2012   X [signature]   Date 04/25/2012  
Lessee Signs   Title (if applicable)   (if applicable)

**LESSOR'S ACCEPTANCE AND ASSIGNMENT**

By signing below, Lessor accepts this Lease. Lessor assigns all rights under this Lease and title and interest in and to the vehicle and this Lease to the assignee listed in item 1 above, pursuant to the applicable dealer agreement between the Lessor and assignee.

X [signature]   [signature]   Date 04/25/2012  
Lessor-Dealer Signs

* Land Rover, the Land Rover logo, and Land Rover Financial Group are trademarks of Land Rover and any use by JPMorgan Chase Bank, N.A. ("Chase") is under license. Lease accounts are owned by Chase.

FORM NO. LRFG-MASTER (REV 10/11)   Pg 10/11-1   DEALER:

## VEHICLE MAINTENANCE [illegible]

**20. MAINTENANCE.** You will [illegible] the vehicle [illegible] in the [illegible] good operating condition. You will also keep the vehicle free from physical damage. You will pay all operating expenses for the vehicle during the Lease term, including the cost of oil, gas, lubrication, parts, labor, storage, parking, towing, tolls and all other costs associated with operating the vehicle. You will maintain records of all repairs and maintenance. You will pay any fine, penalty, traffic ticket, parking ticket, or court costs (all referred to in this Lease as "fines") issued in connection with the use of the vehicle. We have no responsibility for any fines relating to the use of the vehicle. If we receive any court process, we will tell the court that you must pay the fine. If you fail to pay or settle any such fine, we may pay it for you and you will reimburse us for any sum paid, plus a $15.00 administrative fee. You agree that we may inspect the vehicle from time to time at any reasonable time and upon our request.

**21. MODIFICATIONS.** You will not modify the vehicle (such as adding, removing or modifying any accessories, equipment or parts or painting or lettering the vehicle) without our prior written consent. Any accessories, equipment or parts installed in or on the vehicle with or without our permission become our property and part of the vehicle.

**22. TITLE, REGISTRATION AND LICENSING.** You are responsible for maintaining our and registration and licensing of the vehicle with the appropriate department of motor vehicle office. The vehicle will be titled as we direct. You will pay all title, registration and license costs.

**23. USE OF THE VEHICLE.** You agree not to use or permit use of the vehicle: (a) for any unlawful or wrongful purpose or in violation of any law (b) to transport goods or persons for hire; (c) by an unlicensed driver; (d) by anyone other than an authorized driver, which shall be the Lessee(s) to this Lease; (e) outside the United States, without our prior written consent; or (f) unless the vehicle is covered by the insurance required in item 27.

**24. LEASE TERM.** The number of months in the term of this Lease is equal to the number of Lease payments disclosed in item 10(h) on the reverse side of the Lease. The Lease term begins when this Lease is signed by you and us and ends 30 days after the last monthly payment is scheduled to be paid under this Lease.

**25. DAMAGE, LOSS OR DANGER TO THE VEHICLE.** You must keep this Lease and the vehicle free from any liens, encumbrances or claims. Except as noted in item 26, you are responsible for the risk of loss, damage or destruction of the vehicle until you either return the vehicle to us or purchase the vehicle. If the vehicle is damaged, destroyed, stolen, lost, confiscated by any government authority, abandoned, or subject to undue peril, you will notify us as soon as possible and we will have the right to terminate this Lease. If we terminate this Lease, except as otherwise provided in item 26, the amount of your liability will be determined by item 29. You agree to pay us this amount less any insurance loss proceeds we receive.

**26. WAIVER OF GAP AMOUNT.** If you are in compliance with your insurance obligations under this Lease and there is a total loss, destruction or theft of the vehicle, you will not be obligated to pay us the gap amount (the difference between the Adjusted Lease Balance and the actual cash value of the vehicle at the date of the loss) if the claim for total loss of the vehicle is actually paid to us by your insurance company. You must, however, pay us (1) any amounts which were due prior to the date of loss, plus (2) the deductible amount under your insurance policy plus (3) any amounts deducted from the actual cash value of the vehicle by the insurance carrier. If as of the date of the total loss, you do not have in effect a physical damage insurance policy which complies with the insurance requirements set forth in this Lease, there will be no gap waiver and the amount of your liability will be determined by item 29.

**27. INSURANCE.** You must maintain in full force and effect at least the following insurance during the Lease Term: (a) $100,000/$300,000 for bodily injury and $50,000 for property damage listing us as Additional Insured, and (b) collision, fire, theft and comprehensive coverage in an amount equal to the fair market value of the vehicle (with a maximum deductible of $500) listing us as Loss Payee and Additional Insured. You shall not operate the vehicle if the insurance coverage has lapsed or been cancelled. The insurance policy must state that we will be given at least 10 days notice of any cancellation, reduction or other material change in coverage. You may provide the insurance through any existing policies owned or controlled by you and issued by a carrier reasonably acceptable to us, or by purchasing the required coverage separately through any insurer reasonably acceptable to us. You will furnish whatever written proof of required coverage we may request. Any dishonor of your insurance policy or of any claim made under your policy due to your misrepresentations or other acts or omissions will mean that you have not maintained the insurance required by this item 27, and you will be responsible for any loss that may result from the insurer's dishonor of your policy or claim. You give us the right to make any settlement with the insurance company and collect directly from the insurance company any insurance proceeds. You agree to cooperate with us in collecting insurance proceeds, including executing any appropriate papers. You grant us a security interest in the loss proceeds and any returned premiums of each of the insurance coverages described in this Lease and in the proceeds and any returned charges for any optional extended warranty agreement as security for your obligations to us under this Lease. You authorize us to apply these amounts to your obligations under this Lease. No credit or refund is required if the amount thereof would be less than $1.00.

## DEFAULT AND EARLY TERMINATION OF YOUR LEASE

**28. DEFAULT.** You will be in default if: (a) you fail to make a monthly payment when due or fail to pay us any other amounts you owe under the Lease when it is due or when demand is made; (b) you provided any false or misleading information in your Lease application; (c) you fail to maintain during the Lease term the insurance required by item 27; (d) you lose possession of the vehicle by confiscation, forfeiture or other involuntary transfer regardless of whether the vehicle is the subject of judicial or administrative proceedings; (e) you become insolvent or die; (f) the vehicle is lost, stolen or damaged beyond repair; (g) you assign the Lease or transfer the vehicle; or (h) you otherwise fail to keep any other promise or obligation under the Lease. If you default, we can then do any of the following after giving you any advance notice required by applicable law: (i) take any reasonable measures to correct the default or to save ourselves from loss, in which case you will pay us immediately for our costs and expenses; (ii) terminate the Lease and your rights to possess and use the vehicle; (iii) take possession of the vehicle by any peaceable method or manner permitted by law, with or without court action, and/or (iv) charge you the Default Charges stated below, which you agree to pay immediately.

Default Charges. If you are in default, you may be charged all collection and court costs and, where the Lease is referred for collection to any attorney not our salaried employee, reasonable attorneys' fees plus: (a) if we terminate the Lease early, the amount due on early termination as stated in item 29; (b) if the vehicle is not returned to us by the end of the Lease term, the amounts due at the end of the term shown in Section 31 plus any monthly payments that accrue or other payments that may become due after the end of the Lease term; and (c) if the vehicle has been repossessed or we accepted its voluntary surrender, our actual and reasonable costs of repossessing, storing and transporting the vehicle.

**29. EARLY TERMINATION.** (a) You may terminate this Lease at any time before the end of the Lease term if you are not in default, you return the vehicle to a place we specify and you pay us upon demand the early termination liability described below. (b) We may terminate this Lease before the end of the Lease term if you are in default as defined in item 28 or one of the events in item 25 occurs. If we terminate this Lease, you agree to pay us upon demand the early termination liability described below.

Early Termination Liability. If you do not purchase the vehicle as allowed under the purchase option in item 30, you must return it to a place we specify. In addition, unless the waiver of the gap amount provision in item 26 applies, you will owe us at early termination the sum of: (i) all amounts you owe under this Lease that are not included in items (ii) through (iv); (ii) the actual and reasonable costs of transporting, reconditioning, preparing for sale and selling the vehicle; (iii) any official fees and taxes imposed in connection with Lease termination; and (iv) the amount by which the Adjusted Lease Balance exceeds the vehicle's realized value at the date of termination.

Determination of the Adjusted Lease Balance. The Adjusted Lease Balance is the amount we show on our books as the unpaid balance on this Lease. The Adjusted Lease Balance does not include amounts you owe for default charges, late charges, taxes, and other charges, such as fines. When you pay base monthly payments (item 10(i)), we credit those payments either to rent charge (item 10(f)) or to depreciation and any amortized amounts (item 10(e)). To compute the Adjusted Lease Balance, we subtract from the adjusted capitalized cost (item 10(c)) the part of the base monthly payments already made that were actually credited to depreciation. The actual depreciation credited each month varies. The actual depreciation is the part of the base monthly payment not applied to the rent charge. We compute the rent charge over the Lease term using the Constant Yield Method. The Constant Yield Method means the method of determining the rent charge portion of each base monthly payment under which the rent charge for each month is earned in advance by multiplying the constant rate implicit in the Lease times the balance subject to rent charge as it declines during the Lease term. At any given time during the Lease term, the balance subject to rent charge is the difference between the adjusted capitalized cost and the sum of (i) all depreciation amounts accrued during the previous monthly periods and (ii) the first base monthly payment.

Determination of the Realized Value. You and we agree in writing on the realized value amount referenced in this item 29. If we can't agree, we will determine the realized value of the vehicle in the first of the following ways to occur: (a) within 10 days after the termination of the Lease, we receive, from a qualified independent appraiser acceptable to us, but obtained by you at your expense, a written appraisal of the vehicle's wholesale value; or (b) after 10 days from the termination of the Lease, we auction the vehicle or obtain at least three wholesale bids from bidders ready, willing and able to buy it for the amounts they bid. If we auction the vehicle, the amount we receive upon the sale of the vehicle at wholesale will be the realized value. If we obtain bids, the highest bid (including any written cash bid which you submit), will be the realized value.

## PURCHASE OPTION AND END OF LEASE TERM OBLIGATIONS

**30. PURCHASE OPTION.** You acknowledge that this is a true lease and you will not own or have any equity in the vehicle or its replacement parts unless you exercise the purchase option. You have the option to purchase the vehicle from us on an AS-IS WHERE-IS basis at early or scheduled Lease termination. The purchase price will be the sum of: (a) all amounts you owe under this Lease that are not included in items (b) through (d); (b) the purchase option fee disclosed in item 13(b); (c) any official fees for tags, taxes and registration imposed in connection with the purchase of the vehicle; plus either (d) if the purchase is at early termination, the Adjusted Lease Balance as calculated in item 29 or, if the purchase is at the end of the Lease term, the purchase option price disclosed in item 13(a). Subject to item 36, if you direct us to apply the security deposit against the purchase price, you also authorize us to transfer the security deposit to Chase Vehicle Exchange Inc., our qualified intermediary, on your behalf.

**31. END OF LEASE TERM LIABILITY.** If you do not purchase the vehicle at the end of the Lease term, you must return the vehicle to the place we specify and your end of Lease term liability will be the sum of: (a) all amounts you owe under this Lease that are not included in items (b) through (e); (b) the disposition fee disclosed in item 8(e); (c) any official fees and taxes imposed in connection with Lease termination; (d) the excess mileage fee disclosed in item 12(b) for each mile that the vehicle has been driven over the mileage disclosed in item 12(a); and (e) any excess wear and use as defined in item 32.

**32. EXCESS WEAR AND USE.** You will not subject the vehicle to more than normal wear and use. If you return the vehicle at the end of the Lease term, subject to the excess wear and use standards in (a) through (d) below, we will determine whether it costs us or would cost us more than $1,000 to restore the vehicle. If so, you will only be liable for the amount in excess of $1,000 needed to restore the vehicle (the "$1,000 Threshold"). Standards that we apply in determining that the vehicle has been subject to excess wear and use are: (a) there are rips, tears, burns, soiling or excessive wear to the carpet, seats, doors, consoles, headliner, convertible top or dashboard or in the trunk area; (b) there are scratches, dents, pits, rust areas, cracks in the exterior surfaces, wheels, fenders, bumpers, grill, roof, hood, trunk, doors, moldings, trim, windshield and other glass surfaces, bright metal or chrome; (c) the windows, lenses, head lamps, tail lamps, sealed beams, light bulbs, mirrors, door handles and antennae are cracked or broken; or (d) paint damage.

Exclusions from $1,000 Threshold. Not all excess wear and use will be subject to the $1,000 Threshold. You will be liable for the entire amount it costs or would cost us to restore the vehicle if we determine that the vehicle has been subject to excess wear and use because: (e) of damage that would be covered by a service agreement, warranty or manufacturer's guarantee or warranty; (f) of damage that would be covered by a standard automobile insurance policy, whether or not you actually have a policy in force that provides at least comprehensive coverage (which includes fire, theft, flood, windstorm and hail) and collision, unless the total cost to repair damage from any single event is or would be less than $500; (g) the vehicle does not have 4 undamaged matching tires (no retreads) plus a spare tire, all comparable in quality to original equipment with at least 1/8" inch tread on each tire at its lowest point; (h) of damage resulting from intentional or willful abuse or misuse; (i) of damage due to improper repairs, missing parts, replacement parts that do not meet the manufacturer's specifications, mismatched parts to a set, poor or incomplete body work or damage to the vehicle's frame or alignment; (j) the vehicle has been repainted in other than its original color; or (k) of charges resulting from mechanical or electrical breakdown, except for the parts listed in item (c) above.

## ADDITIONAL TERMS AND CONDITIONS

**33. INDEMNITY.** Except as expressly provided in the Lease, you will hold us harmless and indemnify us from any and all liability, loss and expense including court costs and attorneys' fees arising from the use, maintenance, condition or possession of the vehicle, including a claim made under the strict liability doctrine, except that in the case of a claim for bodily injury, such indemnity shall be limited to damages in excess of your primary coverage.

**34. ODOMETER (and other required) STATEMENTS.** Whether or not you purchase the vehicle, when the Lease terminates you must give us a written statement regarding the odometer reading as required by federal and/or state law. You will also give us such a statement if we transfer part or all of our interest in the vehicle to another party. Failure to complete this statement upon our request or giving false information may result in fines and/or imprisonment. You promise to provide or complete any other document necessary to comply with any applicable federal, state or local law or regulation regarding the vehicle or this Lease, or which we reasonably request you provide or complete.

**35. ASSIGNMENT.** You may not assign or transfer any of your rights or obligations under this Lease, including a security interest, or sublet the vehicle without our prior written consent. If we consent to such an assignment, you will remain liable for the performance of this Lease. We may assign or transfer any interest in and/or our rights under this Lease or the vehicle without notifying you. After we notify you, you will make further payments as we have directed. Unless otherwise provided by applicable law, the rights of our assignee (or transferee) will be free of any claims you have against us, and no assignee (or transferee) is responsible for the performance of any of our duties under this Lease.

**36. SECURITY DEPOSITS AND SECURITY INTERESTS. You agree that you will not earn any interest, benefit, increase or profits on your security deposit disclosed in item 8(c) or in any property in which we have a security interest. You further agree that we may retain any interest, benefit, increase or profits we earn on your security deposit or other property in which we have a security interest. We may commingle your security deposit with our other funds. We have no fiduciary duty to you with regard to the security deposit.**

We may use your security deposit to pay or satisfy any amount or obligation you fail to pay or satisfy under this Lease. Upon termination of this Lease, any portion of your security deposit not applied to amounts you owe us will be refunded to you; provided, however, that if any government fees or taxes, including personal property taxes (if applicable), are assessed for any period (or portion of a period) prior to Lease termination, your security deposit may either be used to satisfy such liability or be kept by us until you have satisfied such liability.

**37. RETURN CHECK CHARGE.** If any check, draft or other item you send in payment of your obligation on this Lease is returned unpaid for any reason, we will charge you and you agree to pay a return check charge of $20.

**38. USE OF AUTOMATED TELEPHONE DIALING EQUIPMENT, EMAILS AND TEXT MESSAGES.** By signing this Lease you hereby agree that for servicing your account and/or collecting amounts you may owe, we, our agents and subsequent assignees of your Lease, may contact you using automated telephone dialing equipment or an artificial/pre-recorded voice or text message at any telephone number you provide to us, including any cell phone number, or at any number we obtain from another source. In addition, you agree that we may monitor and record telephone calls regarding your account. You agree that we may contact you at any email address you supply us regarding the origination, servicing and collection of your Lease. Additionally, we may also send you text messages at any phone or email address you provide.

**39. CREDIT REPORTING.** You agree that we may obtain a consumer credit report periodically from consumer reporting agencies (credit bureaus) in connection with your application and any update, renewal, refinancing, modification or extension of this Lease. You also agree that we or any affiliate of ours may obtain one or more consumer credit reports on you, from time to time, for any purpose whatsoever. If you ask, you will be told whether a credit report was requested, and if so, the name and address of any credit bureau from which we or our affiliate obtained your credit report. You agree that we may also verify your employment, pay, assets and debts, and that anyone receiving a copy of this is authorized to give us such information. We may share account and credit information about you, including information on credit reports, with Chase affiliates for the purpose of marketing to you and considering your eligibility for their products and services, including banking, insurance and investment products. Additional information regarding Chase's rights to share information about you will be provided to you after an account is established.

**~~40. OPTIONAL PRODUCTS AND SERVICES. If you have agreed to purchase any optional products, insurance, and/or services itemized either in items 5 or~~ 14 on the reverse side of this Lease, you understand and agree that the original Lessor may retain or receive all or part of the purchase price shown for such optional products, insurance, and/or services in items 5 or 14, whether such optional products, insurance, and/or services are purchased or offered to you by the original Lessor from a third party or provided directly to you by the original Lessor.**

**41. GENERAL.** You will pay all amounts owed under this Lease. If we waive or delay enforcing any of our rights, it will not affect our ability to enforce any of our rights afterwards. Notices under this Lease must be in writing, properly addressed, and mailed by U.S. Mail first class postage prepaid. You will notify us of any change in your address or the address where the vehicle is kept. You acknowledge that we have not given you any tax information or advice about this Lease and that we are not passing to you any tax credit or benefit on the vehicle. This Lease will be governed by and interpreted according to the laws of the original Lessor's state unless preempted by the laws of the United States. If any provision of this Lease conflicts with applicable law, it will be considered to be modified to comply with that law and the other provisions of this Lease will remain in effect. Any modifications to this Lease must be in writing and signed by you (or either of you if there is more than one lessee) and us or any assignee. Notwithstanding any other provision in this Lease, neither party will be entitled to recover punitive damages for any claim arising from or relating to this Lease and/or the leased vehicle.

### AGREEMENT TO ARBITRATE DISPUTES

**The following Arbitration Agreement can significantly affect your rights in any dispute with us. Please read it carefully before signing this Lease.**

1. IF EITHER OF US CHOOSES, ANY CLAIM OR DISPUTE BETWEEN US (AS DEFINED BELOW) WILL BE DECIDED BY ARBITRATION AND NOT IN COURT OR BY A JURY TRIAL.
2. IF EITHER OF US CHOOSES TO ARBITRATE, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS OR OTHER REPRESENTATIVE ON BEHALF OF OTHER PERSONS OR AS A CLASS MEMBER OR OTHER REPRESENTED PERSON ON ANY CLASS CLAIM OR OTHER REPRESENTATIVE TYPE OF CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS OR OTHER REPRESENTATIVE ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this clause, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, this Lease or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Lease) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class or other representative type of action. You expressly waive any right you may have to arbitrate a class or other representative type of action. You may choose any one of the following arbitration organizations: the American Arbitration Association, 1633 Broadway, 10th Floor, New York, NY 10019 (www.adr.org) or the National Arbitration Forum, Box 50191, Minneapolis, MN 55405-0191 (www.adrforum.com). The arbitration shall be conducted in accordance with this Agreement to Arbitrate Disputes and, unless otherwise provided for in this Agreement to Arbitrate Disputes, the rules of the arbitration organization you chose (the "Arbitration Rules"). You may get a copy of the Arbitration Rules by contacting the arbitration organization or visiting its website. The arbitrator shall be an attorney or retired judge selected in accordance with the Arbitration Rules. The arbitrator shall apply governing substantive law in making an award. The arbitration hearing shall be conducted in the federal district in which you reside. The arbitrator's decision shall be in writing and either party may appeal the arbitrator's decision through the arbitration organization you chose. We will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $1,500. We will also pay any additional amount of such fees that the arbitrator determines we must pay in order to make this Agreement to Arbitrate Disputes enforceable. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. The arbitrator's award shall be final and binding on all parties, except that the losing party may request a new arbitration if allowed by the Arbitration Rules. This Agreement to Arbitrate Disputes, and any arbitration conducted hereunder shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration.

You and we retain any rights to self-help remedies, such as repossession. You and we retain the right to seek individual remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies or filing suit. Any court having jurisdiction may enter judgment on the arbitrator's award. This agreement shall survive any termination, payoff or transfer of this Lease. If any part of this Agreement to Arbitrate Disputes, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable.

© 2011 JPMorgan Chase Bank, N.A.
LEXGL-MASTER (REV. 10/11)

Case 1:18-cr-00083-TSE   Document 161-2   Filed 07/26/18   Page 4 of 5 PageID# 2831
Land Rover Alexandria - Sales Worksheet                                               Page 1 of 1

# LAND ROVER ALEXANDRIA
## SALES WORKSHEET

04/27/2012
DATE

Amanda Haight
SALESPERSON

### CUSTOMER INFORMATION

Paul Manafort + Kathleen Manafort
NAME

MOUNT VERNON CIRCLE
ADDRESS

ALEXANDRIA   VA   22309
CITY   STATE   ZIP

HOME PHONE   WORK PHONE

CELL PHONE   EMAIL ADDRESS

SS#   DATE OF BIRTH

SS#   DATE OF BIRTH

### TRADE INFORMATION

YEAR   MAKE   MODEL

COLOR   MILEAGE

ACCOUNT NUMBER   CURRENT PAYMENT

LIENHOLDER   PHONE NUMBER

PAYOFF   GOOD THRU

GIVEN BY   VERIFIED

### VEHICLE OF INTEREST

Stock # 12036L   Year 2012   Make Land Rover   Model Range Rover

Miles ____   VIN ____   X ____
Customer Approval

**Trade-In** $ <payoff>

2010 SPORT LUX LEASE
977.24 month

Lease end promotion

**Selling Price** $ 88,045.00

**Cash Down** $ 11,200
+ 1325
$ 12,525
+ FIRST PAYMENT

**Monthly Payment** $ ____

36 month 10K miles

SALES MANAGER   FINANCE MANAGER

743: BrdId: 63047 / EvtId: 728430   Generated by DealerSocket®   4/27/2012 6:12:36 AM

https://my.dealersocket.com/CRM/Sockets/Site743/Forms/cd_sales_print_4square.aspx??S...   4/27/2012

0.7.4249.397954.pdf                                                       DOJSCO-400011535

## Contact Overview

**Name:** manafort paul
**Location:** Land Rover Alexandria
**Original Source:** Finance - Dealer.Com Website
**Created:** 04/11/2012
**Home Phone:** [redacted]
**Email:** [redacted]
**Birthday:** [redacted]

## History

### Finance Lead

Source: Finance - Dealer.Com Website
Email: [redacted]
IP: 24.249.249.220
Subcategory: 04/11/2012
Share Public Info:

| Applicant: | Co-Applicant: |
|---|---|
| Name: manafort amanda paul | Name: |
| Email: [redacted] | Email: |
| Home Phone: [redacted] | Home Phone: |
| Work Phone: | Work Phone: |
| SSN: [redacted] | SSN: |
| Date of Birth: [redacted] | Date of Birth: |
| Bankruptcy: | Bankruptcy: |
| Net Salary: $1.00  *millionplus* (handwritten) | Net Salary: |
| Gross Salary: $0.00 | Gross Salary: |
| Other Salary: $0.00 | Other Salary: |
| Child Support: | Child Support: |
| Child Support Monthly Payment: $0.00 | Child Support Monthly Payment: |

**Current Residence Information:**
Address: [redacted] Mt Vernon Cir alexandria VA 22309
Type: own
Holder:
Time at Residence: 10 years, 0 months
Monthly Payment: $0.00

**Previous Residence Information:**
Address:
Type: rent
Holder:
Time at Residence:
Monthly Payment: $0.00

**Current Employment Information:**
Occupation: attorney
Employer: DMP
Employer Telephone: [redacted]
Time Employed: 10 years, 0 months

**Current Residence Information:**
Address:
Type:
Holder:
Time at Residence:
Monthly Payment:

**Previous Residence Information:**
Address:
Type:
Holder:
Time at Residence:
Monthly Payment:

**Current Employment Information:**
Occupation:
Employer:
Employer Telephone:
Time Employed:

Comments:

Page 1 of 1

0.7.4249.397954.pdf

DOJSCO-400011526