**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**PAUL J. MANAFORT, JR.,**<br><br><br>**Defendant.** | **Crim. No. 1:18-cr-83 (TSE)** |

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S SECOND SUPPLEMENTAL MOTION IN LIMINE

The United States of America, by and through Special Counsel Robert S. Mueller, III, files this response in opposition to the second supplemental motion *in limine* by defendant Paul J. Manafort, Jr. (Manafort) (Doc. 153).  Manafort seeks to exclude more than 50 trial exhibits that relate to his political consulting work in Ukraine between 2005 and 2014.  As is explained further below, Manafort's second supplemental motion should be denied.[1]

First, Manafort's filing does not address why each exhibit should be precluded under Federal Rules of Evidence 401, 402, and 403.  As a result, the supplemental filing fails to respond to the Court's directive at the July 23, 2018 hearing that Manafort explain why each of the exhibits that he challenges is either not relevant under Rules 401 and 402 or unduly prejudicial under Rule 403.  *See* 7/23/2018 Tr. 52-53 (stating that "the right way" is for the defense to explain "why"

---

[1]   As in any trial, the government will continue to evaluate the need to admit these and other exhibits as the trial proceeds and as is appropriate in light of Manafort's defense.  It bears noting, however, Manafort was on notice from the opening paragraphs of the Superseding Indictment about the very issues that he now belatedly seeks to preclude—namely, that Manafort made money working in Ukraine for President Victor Yanukovch, the Party of Regions, and the Opposition Bloc.  Doc. 9 ¶¶ 1-2.

individual exhibits are irrelevant or prejudicial, so that the Court can evaluate "a specific document" in "a specific context").

Manafort also does not address any of the key issues outlined in the government's July 22, 2018 brief and orally at the July 23 hearing—namely, that the exhibits are relevant to multiple aspects of the tax, bank-fraud, and FBAR charges in the Superseding Indictment, including to prove that Manafort earned income through his Ukraine work, how he earned that money, how much he earned, and how he received the funds. *See* Doc. 144 at 1-5; 7/23/2018 Tr. 49-51. Of note, Manafort's motion seeks to preclude documents simply because they reference the names of various Ukrainian officials. It would also exclude virtually every exhibit containing the name of several key government witnesses, thereby preventing the jury from hearing evidence that corroborates the witness's expected testimony and demonstrates the witness's credibility.

Because the exhibits are relevant, and because Manafort has not established that any risk of prejudice substantially outweighs their probative value, his motion should be denied. In the alternative, the Court could deny the motion but address individually tailored objections to an exhibit as it is offered. *See* 7/23/2018 Tr. 48.

## DISCUSSION

### A.     Evidence That Proves The Source And Amount of Manafort's Income, Shows Payment Through Foreign Accounts, Or Provides Pertinent Context Is Relevant To The Charged Offenses

The trial exhibits that Manafort challenges readily qualify as "relevant" under the Federal Rules of Evidence. *See Huddleston v. United States*, 485 U.S. 681, 687 (1988) ("Rules 401 and 402 establish the broad principle that relevant evidence—evidence that makes the existence of any fact at issue more or less probable—is admissible unless the Rules provide otherwise."). Specifically, the Ukraine-related emails and memoranda are relevant in at least four ways.

First, to prove one important prong of the charged tax offenses, the government must establish that Manafort earned income and failed to report it on his tax returns for the pertinent years. *See* 7/23/2018 Tr. 46 (colloquy with defense counsel in which the Court notes "that there might be a need for evidence as to what [Manafort] did for this money if there's a dispute about how much he received or why he received it"). And courts have long held that, to prove the source and amount of income, the government is entitled to put on evidence of the work that the defendant was paid to perform. That is true even when, unlike in this case, the defendant's work consists of illegal activities or activities that a factfinder is likely to perceive as illegal. *See, e.g.*, *United States v. Martin*, 773 F.2d 579, 582-83 (4th Cir. 1985) (bookmaking); *United States v. Tafoya*, 757 F.2d 1522, 1527 & n.6 (5th Cir. 1985) (work as paid assassin). Nowhere in Manafort's second motion *in limine* does he address this issue.

Second, the challenged emails and memoranda prove the precise manner in which Manafort worked for Ukraine. They show that he worked on multiple elections over an extended period of time, such as the 2010 Presidential election, 2012 parliamentary elections, and local elections, and that he did political consulting and lobbying work for Victor Yanukovych, the President of Ukraine, that was not tethered to any particular election. *See* pp. 5-7 & nn.3-8, *infra* (providing specific examples). Further, the documents establish the breadth of the work that Manafort performed, including commissioning televisions ads, writing speeches, and carrying on campaign-related activities—the very issues covered in the memos. *Id.* There is nothing prejudicial about documents setting forth how the ads were made, how consultants were paid, and who approved their work.

Third, the Ukraine-related emails and memoranda at issue contain evidence about the identity of Manafort's sources of income in Ukraine, and in particular the oligarchs who instituted

the practice of paying Manafort via foreign accounts.  Doc. 144 at 2; 7/23/2018 Tr. 49.  Such information—*i.e.*, that Manafort was paid for work in one foreign country (Ukraine) ultimately through accounts he controlled in another (Cyprus)—is relevant to establish unreported income and to show the level of knowledge required to prove that Manafort willfully failed to (a) report the income he received; (b) disclose his foreign accounts on his tax return forms and (c) file the required FBAR forms for each of his foreign accounts.  *See* Superseding Indictment (Doc. 9) ¶¶ 19-24, 46, 50.  Nowhere in Manafort's second motion *in limine* does he address this issue.

Fourth, the limited amount of Ukraine-focused evidence that predates the specific periods of charged conduct provides relevant background and context for the charges.  Doc. 144 at 3.  That includes establishing Manafort's relationships with the political party and politician that hired him to work during the charged time period at issue, his relationships with the Party of Regions oligarchs who paid him, and his relationships with the media and political consultants who worked under Manafort during the period charged in the Superseding Indictment.  This too Manafort fails to rebut or even address.

In sum, Manafort's second supplemental motion does not present substantive responses to any of the government's relevance arguments.  Nor does it perform in any way the task that the Court directed at the July 23, 2018 hearing, namely, describing why each challenged exhibit is not relevant and "implicate[s]" prejudice concerns under Rule 403.  7/23/2018 Tr. 53.  Instead, Manafort simply provides one-sentence descriptions of the more than 50 exhibits that he seeks to exclude.  For that reason alone, Manafort's motion should be denied.  But as is explained further below, all of the challenged exhibits are relevant and probative for the reasons stated above and in the government's prior response.

**B.    The Challenged Exhibits Are Relevant To Proving The Source And Amount of Manafort's Income, Showing Payments Through Foreign Accounts, And Providing Necessary Context For The Charged Conduct**

1.   *Source, Amount, and Extent of Ukraine Work.*   Many of the exhibits are relevant specifically to prove the source and amount of Manafort's income.[2]   As explained at the hearing, the government expects to prove that Manafort earned more than $60 million dollars from his Ukraine work during the period at issue and failed to report a significant percentage of it on his tax returns.  7/23/2018 Tr. 48.  No "pay stub[s]" or "paychecks" reflect that income, *id.* at 46, 49; rather, the invoices and bills submitted by various consultants provide proof on that issue. Accordingly, to prove that Manafort earned that much income, the government must be able to show the extent of the work that he performed for Ukraine.   And the challenged exhibits— memoranda, emails, and photos reflecting tasks performed—are relevant to establishing the extent of that work.

Several exhibits establish that Manafort performed paid work for Ukraine through the entire period of the charged tax offenses (tax years 2010-2014).[3]  Many of those exhibits, and others, reflect that Manafort's work encompassed all aspects of election consulting, including

_____

[2] Rather than proceed exhibit-by-exhibit, the government groups challenged exhibits by category and by at least one reason that each exhibit is relevant and probative.  Exhibits are cited by the letter used in Manafort's motion (*e.g.*, Exh. A or XX), with the number from the government's exhibit list (Proposed Exhibit, or PE) in parentheses.

[3] *See, e.g.*, Exh. C (PE No. 8) (Feb. 2010 email from T. Devine congratulating team on Yanukovych's victory in presidential election and giving Manafort "enormous credit for pulling everything together" and for his "leadership"); Exh. E (PE No. 11) (memo to Manafort re: talking points); Exh. F (PE No. 12) (Manafort's Sept. 2011 email to team regarding polling survey); Exh. G (PE No. 13) (Apr. 2012 email from Gates to team asking them to put "aside all US political work in favor of . . . Ukraine"); Exh. J (PE No. 16) (March 2014 re: hiring consultant for upcoming Ukraine election); Exhs. Q & R (PE Nos. 25 & 26) (Apr. 2012 email and memo to Manafort "outlin[ing] the initial stages of the media campaign for the 2012 Ukrainian Parliamentary elections").

coordination of polling, media and advertising, the hiring of consultants, preparation of talking points, and speechwriting.[4]  As the government explained at the hearing (7/23/2018 Tr. 50), the challenged photographs of former President Yanukovych are among this group:  they depict a photo session organized by Manafort as part of a campaign and include images of Manafort's associates (such as Dan Rabin and Phil Griffin) who worked on the Ukraine projects.[5]  The photos thus reflect, in a not unduly prejudicial way, the very type of work that Manafort was hired to do.

The exhibits further demonstrate that Manafort's Ukraine work was not limited to the months that preceded specific elections and instead involved a continuous relationship with the party (and President) in power from 2010 to 2014.[6]  For example, some exhibits are periodic reports that Manafort prepared for President Yanukovych during the period of the charged offenses and for which he was paid millions of dollars.[7]  Still other exhibits reveal that Manafort engaged

---

[4] *See, e.g.*, Exh. B (PE No. 7) (Feb. 2010 email to Manafort transmitting Yanukovych election night speech); Exhs. J & K (PE Nos. 16 & 17) (2014 emails and draft consultancy agreement reflecting the fees charged by outside consultants for Ukraine work); Exh. M, PE No. 19 (Oct. 6, 2012 "State of Campaign" memo from Manafort); Exh. O (PE No. 21) (media strategy memo referencing monthly "retainer" and "success bonus" paid to media firm); Exh. S & T (PE Nos. 27 & 28) (memo and email chain regarding media strategy and campaign ads); Exh. JJ (PE No. 343) (June 2012 memo on Ukraine polling project, including Manafort's edits); Exh. II (PE No. 342) (June 2012 Manafort edit to stump speech); Exh. LL (PE No. 345) (July 2012 Party of Regions document sent to Manafort).

[5] Exh. V (PE Nos. 33A-33C) (photographs); *see also, e.g.*, Exh. U (PE No. 29) (additional memoranda reflecting Rabin's media and advertising work); Exh. GG (PE No. 339) (Griffin listed on Davis Manafort's 2007 Ukraine Team Contact List).

[6] *See, e.g.*, Exh. W (PE No. 40) (Jan. 2013 agenda for meeting with Yanukovych); Exh. VV (PE No. 414) (June 2010 email and memorandum re: Q&A for press conference on Yanukovych's first 100 days as President); *see also* Exhs. AA-CC (PE Nos. 45-47) (memos chronicling Manafort's work for Opposition Block after Yanukovych lost power).

[7] *See* Exh. Y (PE No. 42) (Apr. 2013 Quarterly Report to Yanukovych re: Ukraine's relationship with the U.S. government); Exh. OO (PE No. 348) (Feb. 2013 "US Government Update" from Manafort to Yanukovych).

in or oversaw lobbying and media efforts directed at improving the image of Ukraine among foreign governments.[8]

In sum, by demonstrating the full sweep of Manafort's Ukraine work, these exhibits make it "more . . . probable," *see* Fed. R. Evid. 401(a), that Manafort was paid tens of millions of dollars in income, as the government will be required to establish to prove the tax and related offenses charged in the Superseding Indictment.  Indeed, because Manafort is charged with substantive offenses for specific tax years rather than an overarching tax and FBAR conspiracy, these exhibits are particularly important to proving the relevant elements of the offenses for each year.

Further, government witnesses will testify about the nature of this Ukraine work and payment scheme.  It would be fundamentally unfair to permit Manafort to keep such corroborative evidence from the jury, while he simultaneously attacks the credibility of the witnesses or other-wise challenges the tax and FBAR charges.  *See United States v. Jefferson*, No. 3:09-cr-45, 2009 WL 10702306, at *1 (E.D. Va. May 4, 2009) (admitting prior statements as "relevant" in part because they "help to corroborate the Government's witnesses' planned testimony"), *vacated on sentencing grounds*, 379 F. App'x 292 (4th Cir. 2010); *see also, e.g.*, *United States v. Day*, 269 F. App'x 326, 328 (4th Cir. 2008) (unpublished) (even evidence of other bad acts is admissible when "necessary to corroborate other testimony that ha[s] been challenged on credibility grounds").

2. *Payments*:  Other exhibits are relevant for the related reason that they reveal Manafort's relationship with, and the involvement of, the group of oligarchs who paid Manafort for his Ukraine work and who did so by transferring money to the foreign accounts that Manafort is charged with failing to report.  Those oligarchs appear as recipients of multiple memoranda among

---

[8] *See, e.g.*, Exh. HH (PE No. 341) (Apr. 2012 memo from Manafort to Yanukovych re: public affairs activity); Exh. PP (PE No. 349) (Feb. 2013 update on activities of group designed "to drive specific and positive messaging for the" Ukraine government).

the challenged exhibits,[9] as well as on emails discussing payment of expenses related to Manafort's work.[10]

3. *Background and Context*:  Finally, the challenged exhibits reflecting Manafort's work in Ukraine prior to 2010 provide context and background relevant to the charged offenses. *See* Doc. 144 at 3.  In particular, documents showing Manafort's Ukraine work in 2005 and 2006 reveal the origins of his relationships with the oligarchs who paid him through foreign accounts during the period of the charged offenses.[11]  Others demonstrate that, as early as 2006, Manafort worked with some of the same political consultants he would again use (and pay) in the election cycles that occurred during the pertinent period and that generated the income at issue.[12]

## C. The Probative Value of The Challenged Exhibits is Not Substantially Outweighed by The Risk of Prejudice

Because the challenged exhibits easily clear the clear the "low barrier to admissibility" set by Rule 401's relevance standard, *United States v. Smallwood*, 306 F. Supp. 2d 582, 586 (E.D. Va. 2004) (internal quotation marks omitted), the only question is whether exclusion is warranted under Rule 403 on the ground that the probative value of individual exhibits is substantially

---

[9] *See, e.g.*, Exh. D (PE No. 10) (Aug. 2010 memo from Manafort to Yanukovych, copying Sergei Lyovochkin, or SL; Andriy Klyuyev, or AK; and Borys Kolesnikov, or BVK); Exh. X (PE No. 41) (Apr. 2013 memo to Lyovochkin re: public relations efforts in Kyiv); Exh. JJ (PE No. 343) (June 2012 memo to Klyuyev re: Ukraine polling project); Exh. KK (PE No. 344) (July 2012 email reflecting that election-related memo was given to Lyovochkin and Klyuyev, among others); Exh. RR (PE No. 352) (Oct. 2014 memo from Manafort to Lyovochkin and RA, Rinat Akhmetov, re: Opposition Bloc roadmap for next two months); Exh. SS (PE No. 354) (Jan. 2010 memo from Manafort to Yanukovych, copying Lyovochkin, Kolesnikov, and Akhmetov).

[10] *E.g.*, Exh. QQ (PE No. 351) (email from Manafort to Lyovochkin and Kolesnikov regarding media budget and stating, "[i]f we cut this budget, we lose").

[11] *E.g.*, Exh. FF (PE No. 60E) (June 2005 memo from Manafort to Akhmetov).

[12] *E.g.*, Exh. A (PE No. 5) (Jan. 2006 memo from Manafort and Tad Devine to Yanukovych and Akhmetov).

outweighed by the risk of undue prejudice.  Manafort, however, does not explain in his second supplemental motion how any particular exhibit risks undue prejudice.  Rather, he incorporates by reference the broad-brush prejudice assertions presented in his previous motion (Doc. 143 at 4).

Those assertions lack merit.  There is nothing inherently or unfairly prejudicial about performing political-consulting work in a foreign country; indeed, other witnesses will testify to their involvement in the very same conduct, which is neither criminal nor prejudicial standing alone.[13]  And, as the government has previously explained (Doc. 144 at 5), the jury questionnaire and remainder of the Court's *voir dire* process will ensure that prospective jurors who are predisposed to view working in Ukraine negatively and who cannot put aside those views will not be seated on the jury.

Further, while Yanukovych's presidency may have engendered (and ended in) controversy, the government does not plan to elicit information about his flight to Russia or any other controversial aspect of his presidency.  *See* 7/23/2018 Tr. 52 (explaining that the government "will elicit" in an innocuous way" the fact that Yanukovych "lost power").[14]  Nor does Manafort identify any *particular* exhibit that mentions such matters.  Any risk that jurors will be confused by the nature of Manafort's Ukraine work or concerned by the identity of his client can be suitably addressed through an instruction from the Court that the evidence is admitted for the specific purposes discussed above and that jurors may not consider it for other purposes.  Indeed, courts

---

[13]  One of the first exhibits challenged by Manafort—an email chain offering congratulations for Yanukovych's 2010 electoral victory—illustrates the point. Ex. C (PE No. 8). It is routine, not prejudicial, for colleagues who worked together on a common venture to offer praise for a "[j]ob [w]ell [d]one." *Id.*

[14]  As explained in the government's previous response, Yanukovych's fall from power itself has evidentiary value because it explains Manafort's work for a different political party (the Opposition Bloc) and why his income later drops dramatically, which is relevant to the bank frauds that he later committed.  Doc. 144 at 2.

have found a limiting instruction of that nature sufficient to guard against the risk of prejudice even when relevant evidence implicates public figures who are likely to be far more familiar to jurors than is Yanukovych.  *See, e.g.*, *United States v. Kemp*, 500 F.3d 257, 295-96 (3d Cir. 2007) (concluding that the district court's instruction "minimized the possibility of prejudice" arising from associating a bribery defendant with the Reverend Al Sharpton, and rejecting the "novel position" that Sharpton's name alone was unduly prejudicial).

Finally, Manafort's previous motion (Doc. 143 at 4) raised concerns about "delay and waste of time."  Yet, despite the Court's guidance at the July 23 hearing, *see* 7/23/2018 Tr. 53, Manafort has not developed any argument as to why "a specific document" that he challenges would unduly delay the trial or waste the jury's time.  And to the extent that Manafort means to suggest that any proposed exhibit (or group of exhibits) is cumulative, he should raise that objection at trial so that the Court can evaluate it in light of the evidence admitted by that point, the government's need for the evidence, and the risk of undue delay existing at the time.  *See* Doc. 144 at 4 n.1; *cf.* Fed. R. Evid. 403 adv. comm. note.  Like his other claims, this one is at best cursory and without merit.

## CONCLUSION

For the foregoing reasons, Manafort's second supplemental motion *in limine* should be denied.

10

Respectfully submitted,

ROBERT S. MUELLER, III
Special Counsel

Dated: July 30, 2018                   _/s/_____

Uzo Asonye                             Andrew Weissmann
Assistant United States Attorney       Greg D. Andres
Eastern District of Virginia           Brandon L. Van Grack
                                       Special Counsel's Office
                                       U.S. Department of Justice
                                       950 Pennsylvania Avenue NW
                                       Washington, D.C. 20530
                                       Telephone: (202) 616-0800

                                       *Attorneys for United States of America*

11

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of July, 2018, I will cause to be filed electronically the

foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification

of such filing (NEF) to the following:

Thomas E. Zehnle (VA Bar No. 27755)
Law Office of Thomas E. Zehnle
601 New Jersey Avenue, N.W., Suite 620
Washington, D.C. 20001
tezehnle@gmail.com

Jay R. Nanavati (VA Bar No. 44391)
Kostelanetz & Fink LLP
601 New Jersey Avenue, N.W., Suite 620
Washington, D.C. 20001
jnanavati@kflaw.com

                                         _____/s/_____
                                         Uzo Asonye
                                         Assistant United States Attorney
                                         U.S. Attorney's Office
                                         Eastern District of Virginia
                                         2100 Jamieson Avenue
                                         Alexandria, VA 22314
                                         uzo.asonye@usdoj.gov
                                         Phone: (703) 299-3700
                                         Fax: (703) 299-3981

                                         *Attorney for the United States of America*