**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Crim. No. 1:18-cr-83 (TSE)** |
| **PAUL J. MANAFORT, JR.,** | |
| **Defendant.** | |

**GOVERNMENT'S TRIAL BRIEF REGARDING
EVIDENCE OF ITEMS AND SERVICES PURCHASED BY THE DEFENDANT**

The United States of America, by and through Special Counsel Robert S. Mueller, III, hereby files this trial brief concerning evidence related to the expenditures of defendant Paul J. Manafort, Jr. (Manafort) from untaxed income, to wit: wire transfers out of Manafort's foreign bank accounts. The government seeks this opportunity to further explain why such evidence is directly relevant to the elements of the charged offenses and its probative value is not substantially outweighed by the danger of unfair prejudice.

**A.      Background**

On February 22, 2018, a grand jury in this district returned a superseding indictment charging Manafort with tax and bank fraud crimes. *See* Doc. 9. Specifically, the superseding indictment charges Manafort with subscribing to false income tax returns, in violation of 26 U.S.C. § 7206(1) (Counts 1-5); failing to file reports of foreign bank accounts, in violation of 31 U.S.C. §§ 5314, 5322(a) (Counts 11-14); and bank fraud conspiracy and bank fraud, in violation of 18 U.S.C. §§ 1344, 1349 (Counts 24-32). The tax and bank fraud offenses with which Manafort is charged require proof of a willful or knowing scienter. *See* 26 U.S.C. § 7206(1); 18 U.S.C. § 1344.

As alleged in the superseding indictment, Manafort failed to pay taxes on millions of dollars in unreported income from payments that he received into foreign bank accounts he controlled.  He used that unreported income in those foreign accounts to pay for goods and services, purchase United States real estate and make improvements to and refinance United States properties. Further, Manafort, after his income dropped precipitously in 2014, resorted to taking out bank loans through fraud, in order to maintain his expensive lifestyle.  Manafort fraudulently secured more than $20 million in loans by falsely inflating his and his company's income and by failing to disclose existing debt in order to qualify for the loans.

**B.     Argument**

Evidence regarding Manafort's expenditures on goods, services, and property, through wire transfers from foreign bank accounts he controlled and to United States vendors, is directly relevant to the elements of the offenses with which he is charged and to the motive for committing those crimes.

1.     Courts have consistently held in tax and bank fraud cases that evidence of a defendant's spending and lifestyle is relevant to his intent and is not unduly prejudicial.  *See, e.g.*, *United States v. Fattah*, 858 F.3d 801, 818 (3d Cir. 2017) (evidence of $15,000 restaurant bill, massive gambling losses, and condominium at Ritz Carlton "provide circumstantial illustration of Fattah's motive, opportunity, intent, and knowledge regarding the [bank fraud] crimes charged"); *United States v. Wanland*, 657 Fed. Appx. 631, 635 (9th Cir. 2016) ("the district court did not abuse its discretion in admitting evidence related to Wanland's wealth and lifestyle because it was relevant to prove Wanland's intent and motive to evade taxes"); *United States v. Hazelrigg*, 654 Fed. Appx. 341, 343 (9th Cir. 2016) (district court did not abuse discretion in admitting photos of condominium; evidence of lavish living was relevant to willful evasion); *United States v. DeMuro*,

677 F.3d 550, 559 (3d Cir. 2012) ("evidence of personal spending was relevant proof that the DeMuros' failure to pay TAD's taxes was willful"); *id.* ("the evidence that they did live a relatively lavish lifestyle, and how much money they spent on that lifestyle, was relevant"); *United States v. Ellis*, 548 F.3d 539, 543 (7th Cir. 2008) (evidence of personal expenditures relevant to rebut defenses that defendant was too busy to notice her tax obligations and forgot to pay taxes); *United States v. Blanchard*, 618 F.3d 562, 569-70 (6th Cir. 2010) (holding that evidence of defendant's personal spending on automobiles, gambling, and firearms "is pertinent to whether an offense has been committed under § 7202, since it bears on the willfulness of the defendant's failure to pay over withheld tax to the government"); *United States v. Bishop*, 264 F.3d 535, 550 (5th Cir. 2001) ("spending large amounts of cash that cannot be reconciled with the amount of reported income" is evidence of willfulness in tax evasion case); *United States v. Simonelli*, 237 F.3d 19, 30 (1st Cir. 2001) (describing as "strong evidence" of tax fraud "the expenditures of considerable sums of money for his personal benefit: homes, country clubs, cars and other accoutrements of wealth, with little of the sums to pay for these things reported to tax authorities as his income or as a loan to him"); *United States v. Kim*, 884 F.2d 189, 192-93 (5th Cir. 1989) (citing the defendants' "extensive real estate purchases [that] were well out of line with their reported income" as support for the inference that the defendants "were aware of the extent of their earnings and willfully underreported their income").

The evidence of the vendor payments is relevant in several ways. The manner in which the expenditures occurred is relevant to proving that Manafort acted willfully. The funds used to pay the vendors came directly from the unreported foreign bank accounts where Manafort deposited his foreign consulting income. Thus, Manafort's practice of paying his vendors directly with his offshore funds was designed to hide the underlying income from his bookkeepers and

return preparers, and ultimately the IRS.  *See Bishop*, 264 F.3d at 552 (providing "incomplete and inaccurate information to [defendant's] return preparer" is evidence of willfulness).

Further, that Manafort was personally dealing with the vendor payments, directing what personal items would be purchased and paid for from untaxed income, tends to negate one of the defense's central arguments – that the vendor payments were made by Gates.  *See* 7.31.18 Tr. at 55-56 ("Rick was handling the financial operations"; "there is no dispute that Rick Gates also sent money from these accounts to pay for Paul's personal expenses").

In addition, the evidence of personal expenditures tends to establish that the tax returns at issue were materially false, which is one of the elements of 26 U.S.C. § 7206(1).  The vendor evidence tends to establish that Manafort knew he had overseas accounts at the time that he filed his personal tax returns in which he stated that he did not have any such accounts.  The fact that the foreign accounts were being used to pay for millions of dollars in personal items plainly makes it less likely that he forgot or made a mistake when he did not report the accounts.  This evidence is thus also relevant to Manafort's failure to report his foreign bank accounts on FBARs.

The government must also show that the Manafort's personal tax returns were false by failing to report personal income.  *See United States v. Aramony*, 88 F.3d 1369, 1382 (4th Cir. 1996) (listing elements of 26 U.S.C. § 7206(1)); *Simonelli*, 237 F.3d at 30 (noting that evidence of lavish expenditures inconsistent with income reported on tax return supported Section 7206(1) conviction).  Evidence showing that Manafort directed the money toward his own purchases establishes the status of the money as income to Manafort as opposed to business expenses or benefits to some other third party.  *See United States v. Shrum*, 655 F.3d 782, 786 (8th Cir. 2011) (evidence of defendant's expenditures at a casino "were clear evidence that he personally spent a

substantial portion of [his business's] reported income on expenditures that were not reportable as [the business's] costs of goods sold" and was not unfairly prejudicial).

Finally, that Manafort had an expensive lifestyle that required lots of money to maintain is important proof as to why he would commit the bank frauds. When Manafort's income declined in 2014, he resorted to bank fraud as a means to maintain his lifestyle. Indeed, the government is entitled to refute the common argument that a wealthy person has no need to commit bank fraud, by demonstrating that Manafort had grown accustomed to his material wealth. Accordingly, evidence of Manafort's purchases, real estate, and real estate improvements is relevant under Fed. R. Evid. 401.

2.      While the government will endeavor to limit this evidence, limited photographs of and invoices for Manafort's purchases are not unduly prejudicial under Fed. R. Evid. 403 simply because they reveal extensive spending. The photographs and invoices make clear that the expenditures were for personal purposes and assist the government in telling the jury a "comprehensible story." *Hazelrigg*, 654 Fed. Appx. at 344 ("The government properly used photographs of the residence to help the jury keep the properties straight and to tell a comprehensible story."). *See also United States v. Conley*, 826 F.2d 551, 560 (7th Cir. 1987) (upholding, on plain-error review, the admission of a photograph of the defendant's "lovely home in a country setting" in an evasion of payment case); *Old Chief v. United States*, 519 U.S. 172, 187-89 (1997) (government is entitled to "tell[ ] a colorful story with descriptive richness"; "a piece of evidence may address any number of separate elements, striking hard just because it shows so much at once"; the "persuasive power of the concrete and particular is often essential to the capacity of jurors to satisfy the obligations that the law places on them"; "a naked proposition in a courtroom may be no match for the robust evidence that would be used to prove it"); *United States*

*v. Cross*, 308 F.3d 308, 325 (3d Cir. 2002) (Rule 403 "does not generally require the government to sanitize its case, to deflate its witnesses' testimony, or to tell its story in a monotone") (internal quotation marks omitted).

Indeed, here, presenting evidence of Manafort's transactions entirely through witness testimony could expose the government to appellate risk. *Cf. Greenberg v. United States*, 280 F.2d 472, 476 (1st Cir. 1960) (where "whose bills it was that were paid, that is to say the purpose of the checks . . . was essentially the whole of the government's case on the personal counts," evidence consisting solely of agent witness testimony was insufficient).

Respectfully submitted,

ROBERT S. MUELLER, III
Special Counsel

Dated: August 2, 2018                     */s/*_____
Uzo Asonye                                Greg D. Andres
Assistant United States Attorney          Brandon L. Van Grack
Eastern District of Virginia              Special Counsel's Office
                                          U.S. Department of Justice
                                          950 Pennsylvania Avenue NW
                                          Washington, D.C. 20530
                                          Telephone: (202) 616-0800

                                          *Attorneys for United States of America*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 2nd day of August, 2018, I will cause to be filed electronically the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Thomas E. Zehnle (VA Bar No. 27755)
Law Office of Thomas E. Zehnle
601 New Jersey Avenue, N.W., Suite 620
Washington, D.C. 20001
tezehnle@gmail.com

Jay R. Nanavati (VA Bar No. 44391)
Kostelanetz & Fink LLP
601 New Jersey Avenue, N.W., Suite 620
Washington, D.C. 20001
jnanavati@kflaw.com


_____/s/_____
Brandon L. Van Grack
Special Assistant United States Attorney
Special Counsel's Office
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, D.C. 20530
Telephone: (202) 616-0800

*Attorney for the United States of America*