**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**PAUL J. MANAFORT, JR.,**<br><br>**Defendant.** | **Crim. No. 1:18-cr-83 (TSE)** |

**GOVERNMENT'S TRIAL BRIEF REGARDING MATERIALITY OF
FALSE AND FRAUDULENT REPRESENTATIONS IN CONNECTION WITH
FEDERAL SAVINGS BANK LOANS CHARGED IN COUNTS 29 TO 32**

The United States of America, by and through Special Counsel Robert S. Mueller, III, hereby files this trial brief regarding the materiality of false and fraudulent representations made by defendant Paul J. Manafort, Jr. ("Manafort") in connection with $9.5 and $6.5 million loans he received from The Federal Savings Bank ("TFSB"). The indictment alleges, and the evidence has shown, that Manafort conspired with Richard Gates ("Gates") to provide false representations and information to TFSB to obtain the loans. The evidence has also shown that the false representations were material because they were capable of influencing TFSB's consideration of the loans. Notably, Stephen Calk, the chairman and CEO of TFSB and a substantial shareholder of the bank's holding company, pushed for Manafort to receive the loans, because Calk expected to receive a position in the Trump presidential campaign and ultimately in the Trump administration. Contrary to the suggestion advanced during a sidebar conference on August 10, 2018, however, even if Calk intended to approve Manafort's loans for reasons relating to his personal interests, that would have no bearing on the materiality of Manafort's false and fraudulent representations to the bank.

1

A.      **Background**

Manafort is charged in Counts 29 through 32 with knowingly and intentionally conspiring with Gates to execute, and executing, a scheme and artifice to defraud TFSB and to obtain $9.5 million and $6.5 million under the custody and control of the bank by means of materially false and fraudulent pretenses, representations, and promises, in violation of 18 U.S.C. §§ 1344 and 1349.  Among the false representations Manafort made to TFSB were his submission of false DMP International Profit and Loss statements from 2015 and 2016, and a false letter indicating his over $200,000 credit card debt for Yankees tickets was attributable to Gates.

The evidence has shown that Manafort conspired with Gates to execute, and executed, the fraud scheme by directing Gates to create false documents to submit to various banks.  For example, Gates testified that Manafort requested "certain things" be changed in documents submitted to banks, including altering "profit and loss documents." Tr. 8/6/18 at 1278-79. More specifically, Gates testified that he altered DMP International's 2015 Profit and Loss Statement. *See* Tr. 8/6/18 at 1318-22.  Gates also testified he converted DMP International's 2016 Profit and Loss Statement from a pdf to a Word document, in order to allow Manafort to alter the document. *See* Tr. 8/6/18 at 1337 ("Q. When Mr. Manafort said, 'How do I convert into non-PDF Word document,' what did you understand that to mean?" "A. That he wanted me to convert it from PDF to a Word format for his use.").  Gates later saw Manafort's changes to the 2016 Profit and Loss Statements and testified that those changes were not accurate.  *See* Tr. 8/6/18 at 1343 ("Q. Okay. And is that an accurate statement of DMP International's P&L as of September 2016?" "A. It is not.").  Gates also testified that Manafort asked him to sign a letter that falsely attributed the cost of Yankees tickets in 2016 to Gates. *See* Tr. 8/6/18 at 1352-53.

2

These misrepresentations were material because, the evidence has shown, they were capable of influencing the lender.   Indeed, TFSB employees relied on Manafort's false representations in processing the loan.   Dennis Raico, a former Senior Vice President at TFSB, testified that "among the important factors in the bank determining whether Mr. Manafort quaifie[d] for" the first TFSB loans was "[i]ncome." Tr. 8/9/18 at 2062.   Raico related that Manafort sent him DMP International's Profit and Loss Statement for 2016, which Raico forwarded to the bank's underwriters in Chicago for review.   Tr. 8/9/18 at 2063-66.   Raico also testified that Manafort's credit card debt was an issue to TFSB because it represented "a large outstanding balance" that impacted Manafort's "ability to make payments on the loan." *See* Tr. 8/9/18 at 2035-36.   In addition, the government expects another TFSB official to testify that he reviewed and relied upon the altered DMP International 2015 Profit and Loss Statement as well as the falsified letter regarding Yankees tickets charges.

The evidence showed that, ultimately, Manafort's loans were approved by TFSB because Calk, who had been speaking to Manafort about a position in the Trump campaign and administration during the processing of the loan, overruled the loan officers and underwriters and personally approved the loans.   Tr. 8/10/18 at 2008-77.

During a sidebar conference to discuss the admissibility of Calk's statements under Fed. R. Evid. 801(d)(2)(E) (an issue that is not pertinent here), the Court expressed concern about the notion that TFSB could be defrauded when Calk, who ultimately approved these loans for TFSB, was going to approve the loans for personal reasons.   Tr. 8/10/18 at 2041-43.[1]   The Court

---

[1]  The Court had made similar remarks at the July 23, 2018 hearing on the parties' motions *in limine*, asking whether it would present "a problem of fraud" if Calk knew "that the information [Manafort] submitted was not accurate."  Tr. 7/23/2018 at 42.  Consistent with the long line of precedent cited below, p. 5, *infra*, the government responded that it posed no problem, "because the fraud was on the bank and not just the individual."  *Id.* at 42-43.

questioned whether Manafort's fraudulent representations could be material if the bank's chairman and CEO, and a significant shareholder of the bank's holding company, intended to grant Manafort the loans regardless.[2]  Tr. 8/10/18 at 2041-43.  Picking up on the Court's comments, the defense suggested that Manafort could not have defrauded the bank if Calk knew Manafort's representations were false.  Tr. 8/10/18 at 2042.  The Court agreed that it did not "see the materiality," Tr. 8/10/18 at 2043, and it indicated that the defense could file a Rule 29 motion to argue that "there can't be a conspiracy to commit a fraud if the elements of the fraud are not met, and materiality is one of the elements of the fraud, and . . . the government will not be able to show evidence of materiality sufficient to warrant the jury to consider that," Tr. 8/10/18 at 2047.

### B.  Discussion

Manafort's conspiracy and fraud scheme were complete when Manafort and Gates agreed to and submitted false and fraudulent representations and materials in support of Manafort's loan applications to TFSB, which were pertinent to TFSB employees' review of the loans.  That Calk apparently intended to approve the loans for personal reasons has no bearing on the materiality of Manafort's misrepresentations.  That is true for four reasons.

First, in a fraud prosecution with a financial institution victim, the materiality test is objective, and the recipient whose behavior the jury should assess in its materiality inquiry is a reasonable lender in the financial institution's position, not the specific financial institution itself.  *See United States v. Raza*, 876 F.3d 604, 620-21 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 2679 (2018).  In a statement that is remarkably apt here, the Fourth Circuit in *Raza* recently stated that "the correct test for materiality . . . is an objective one, which measures a misrepresentation's

---

[2]  The sole shareholder of TFSB is National Bancorp Holdings, Inc.  Calk owns 67% of the shares of National Bancorp Holdings, with the remaining 33% of the shares owned by four other individuals.

capacity to influence an objective 'reasonable lender,' *not a renegade lender* with a demonstrated habit of disregarding materially false information." *Id*. at 621 (emphasis added). *See Neder v. United States*, 527 U.S. 1, 16 (1999) ("a false statement is material if it has a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it was addressed") (internal quotation marks omitted; alteration in *Neder*); *United States v. Wolf*, 860 F.3d 175, 193 (4th Cir. 2017) (affirming the admittance of an expert's testimony about mortgage banking practices and whether certain categories of information would have been material to lenders even though the expert had no personal knowledge of the specific lenders involved because "the test for whether a false statement to a bank is material is an objective one; it does not change from bank to bank"); *United States v. Betts-Gaston*, 860 F.3d 525, 532-33 (7th Cir. 2017) (explaining that whether a particular lender or group of lenders "routinely behaved unreasonably— that, as a matter of policy, they ignored information that a reasonable lender would consider" was irrelevant to materiality).[3]   The testimony from multiple lenders in this trial has made clear that false information about a borrower's income or liabilities is capable of influencing an objective reasonable bank because the information is important to bank's analysis of whether the borrower can repay the loan. *See*, *e.g.* Tr. 8/9/18 at 1854-83, 1950-88.

Second, even if Calk was the decision-maker with respect to the loans, "a finding of materiality is not depend[e]nt upon whether the fact finder was actually influenced by a

---

[3] As the Fourth Circuit has said, however, the objective materiality test "is unquestionably satisfied when . . . the defendant's falsehoods *did in fact* influence" the decision-maker's actions. *United States v. Garcia-Ochoa*, 607 F.3d 371, 378 (4th Cir. 2010) (emphasis in original).   Thus, the testimony in this case that Manafort's falsehoods did in fact influence the banks' decisions is sufficient but not necessary to establish that those falsehoods were capable of influencing such decisions.   With respect to the TFSB loans specifically at issue here, testimony that bank employees recommended denying the loans (even though they were overridden by Calk) shows that Manafort's misrepresentations were capable of influencing the bank's decision.

defendant's false statements." *United States v. Sarihifard*, 155 F.3d 301, 307 (4th Cir. 1998). *See United States v. Williams*, 865 F.3d 1302, 1310 (10th Cir.) ("Materiality . . . does not turn on whether the misrepresentation actually influenced the bank or whether the decision maker actually relied on the misrepresentation; the pertinent inquiry is instead whether [the defendant's] representations had the *capability* to so influence the[ ] decision[ ].") (internal quotation marks omitted; emphasis and alterations in *Williams*), *cert. denied*, 138 S. Ct. 567 (2017). Thus, even if Calk intended to approve Manafort's loans regardless of his false representations and did not rely on those representations, the representations can be material.

Third, even if Calk was complicit in Manafort's fraud or knew of Manafort's falsehoods, that would not be relevant to the materiality of Manafort's misrepresentations because Calk is not TFSB and the funds that were the subject of the fraud were not Calk's. *See United States v. Vinson*, 852 F.3d 333, 351 (4th Cir. 2017) ("That [three bank officials] were aware of all the loan terms is not a valid defense for [the defendant] on the bank fraud conspiracy charge, in that such bank officers were part and parcel of the conspiracy to both defraud the banks and obtain bank funds by false and fraudulent pretenses."); *see also United States v. Jimenez*, 513 F.3d 62, 74 (3d Cir. 2008) ("[I]t is not a defense to the charge that an [account holder] colluded with [a bank officer] to commit bank fraud. It is the financial institution itself—not its officers or agents—that is the victim of the fraud [§ 1344] proscribes.") (quoting *United States v. Waldroop*, 431 F.3d 736, 742 (10th Cir. 2005) (internal quotations omitted)); *United States v. Gallant*, 537 F.3d 1202, 1225 (10th Cir. 2008) (explaining that the defendants were "not absolved from bank fraud by having successfully recruiting BestBank officers and directors to participate in their scheme"); *United States v. Abboud*, 438 F.3d 554, 593 (6th Cir. 2006) ("Finally, even if bank officials did approve of the check kiting scheme, . . . this approval would not relieve Defendants of criminal liability,

because the victim is the bank as an entity."); *United States v. Molinaro*, 11 F.3d 853, 857 (9th Cir. 1993) ("'[i]t is the financial institution itself—not its officers or agents—that is the victim of the fraud the statute proscribes'") (quoting *United States v. Saks*, 964 F.2d 1514, 1518 (5th Cir. 1992) (rejecting defendants' claim that failure to disclose a third party would be the beneficiary of a loan was not bank fraud because the banks' financial officers were aware of the fact)).

That Calk was not just an officer and director of the bank but also owned 67% of TFSB's holding company, National Bancorp Holdings, Inc., does not change the analysis.  Thirty-three percent of National Bancorp Holdings was owned by others.  And even if Calk had owned 100% of the holding company, he would not have been one and the same as the corporation.  "A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003).  *See id.* at 475 ("An individual shareholder, by virtue of his ownership of shares, does not own the corporation's assets and, as a result, does not own subsidiary corporations in which the corporation holds an interest.").

Fourth, Manafort is charged with conspiring with Gates in connection with these loans, and it is well settled that the government is not required to prove that the parties to or members of an alleged agreement or conspiracy were successful in achieving any or all of the objects of the agreement or conspiracy.  *See United States v. Tucker*, 376 F.3d 236, 238 (4th Cir. 2004) ("Proof of a conspiracy does not require proof that the object of the conspiracy was achieved or could have been achieved, only that the parties agreed to achieve it.").  Thus, even if Calk had not ended up approving the loans, Manafort would still have conspired to commit bank fraud—further

demonstrating that it is the objective, not subjective, materiality of the misrepresentations that matters.[4]

Accordingly, even if Calk intended to approve Manafort's loans no matter what, that does not, as a matter of law, preclude a finding that Manafort's misrepresentations were material under the bank fraud statute.  A Rule 29 motion on that basis would therefore be meritless.

## CONCLUSION

For the foregoing reasons, the government requests that the Court recognize the lack of merit in any defense argument that Stephen Calk's complicity in or awareness of Manafort's fraud on TFSB renders immaterial as a matter of law Manafort's false and fraudulent representations to TFSB for purposes of obtaining loans.

Respectfully submitted,

ROBERT S. MUELLER, III
Special Counsel

Dated: August 13, 2018

Uzo Asonye
Assistant United States Attorney
Eastern District of Virginia

/s/
Andrew Weissmann
Greg D. Andres
Brandon L. Van Grack
Special Counsel's Office
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, D.C. 20530
Telephone: (202) 616-0800

*Attorneys for United States of America*

---

[4]  This logic applies equally to the substantive bank fraud charges in Counts 30 and 32—that is, Manafort could be convicted of "execut[ing], or "attempt[ing] execute, a scheme" to defraud TFSB, 18 U.S.C. § 1344, even if that scheme did not succeed.  *See Loughrin v. United States*, 134 S. Ct. 2384, 2395 n.9 (2014) (noting that "the gravamen of § 1344 is the 'scheme,' rather than 'the completed fraud'") (quoting *Neder v. United States*, 527 U.S. 1, 25 (1999)).

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of August, 2018, I will cause to be filed electronically the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Thomas E. Zehnle (VA Bar No. 27755)
Law Office of Thomas E. Zehnle
601 New Jersey Avenue, N.W., Suite 620
Washington, D.C. 20001
tezehnle@gmail.com

Jay R. Nanavati (VA Bar No. 44391)
Kostelanetz & Fink LLP
601 New Jersey Avenue, N.W., Suite 620
Washington, D.C. 20001
jnanavati@kflaw.com


　　　　　　/s/
Uzo Asonye
Assistant United States Attorney
U.S. Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314
uzo.asonye@usdoj.gov
Phone: (703) 299-3700
Fax: (703) 299-3981

*Attorney for the United States of America*