┌─────────────────────U.S. v. Manafort─────────────────────┐

2321

1                  UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF VIRGINIA
2                       ALEXANDRIA DIVISION

3    -----------------------------x
                                  :
4    UNITED STATES OF AMERICA,     : Criminal Action No.
                                  : 1:18-CR-83
5              versus             :
                                  :
6    PAUL J. MANAFORT, JR.,        :
                                  : August 14, 2018
7                   Defendant.  : Volume XI - P.M.
     -----------------------------x
8
                     TRANSCRIPT OF JURY TRIAL
9          BEFORE THE HONORABLE T.S. ELLIS, III
                  UNITED STATES DISTRICT JUDGE
10
     APPEARANCES:
11
     FOR THE GOVERNMENT:        UZO ASONYE, AUSA
12                              United States Attorney's Office
                                2100 Jamieson Avenue
13                              Alexandria, VA 22314
                                     and
14                              GREG ANDRES, SAUSA
                                BRANDON LANG VAN GRACK, SAUSA
15                              Special Counsel's Office
                                U.S. Department of Justice
16                              950 Pennsylvania Avenue NW
                                Washington, D.C. 20530
17
     FOR THE DEFENDANT:        JAY ROHIT NANAVATI, ESQ.
18                             BRIAN KETCHAM, ESQ.
                               Kostelanetz & Fink LLP
19                             601 New Jersey Avenue NW
                               Suite 620
20                             Washington, DC 20001
                                    and
21                             THOMAS E. ZEHNLE, ESQ.
                               Law Office of Thomas E. Zehnle
22                             601 New Jersey Avenue NW
                               Suite 620
23                             Washington, DC 20001
                                    and
24

25

─────────Tonia M. Harris OCR-USDC/EDVA 703-646-1438─────────

EASTERN DISTRICT OF VIRGINIA

─U.S. v. Manafort─

2322

1    Appearances continued:

2                              KEVIN DOWNING, ESQ.
                              Law Office of Kevin Downing
                              601 New Jersey Avenue NW
3                             Suite 620
                              Washington, DC 20001
4                                and
                              RICHARD WILLIAM WESTLING, ESQ.
5                             Epstein, Becker, & Green, PC
                              1227 25th Street NW
6                             Washington, DC 20037

7    OFFICIAL COURT REPORTER:    TONIA M. HARRIS, RPR
                              U.S. District Court, Ninth Floor
8                             401 Courthouse Square
                              Alexandria, VA 22314

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

─Tonia M. Harris OCR-USDC/EDVA 703-646-1438─
EASTERN DISTRICT OF VIRGINIA

U.S. v. Manafort

2323

TABLE OF CONTENTS

MISCELLANY

Preliminary matters...................................... 2324
Argument on instructions................................ 2327
Certificate of Court Reporter........................... 2357

U.S. v. Manafort

2324

1          **P R O C E E D I N G S**

2          **A F T E R N O O N   S E S S I O N**

3          (Afternoon session commenced at 1:22 p.m.)

4          THE COURT:  All right.  The record will reflect that

5    the parties and counsel are present and prepared to proceed.

6    I'm going to convene the jury, allow the defendant -- when I

7    ask you if you have any evidence you wish to present,

8    presumably you would say -- and I'll tell the jury you're not

9    required to present any evidence, but you do have the

10   opportunity to do so.  And you'll indicate that you have no

11   evidence you wish to offer, and then I'll tell the jury, of

12   course, that they've now heard all of the evidence in the case

13   and what remains are closing arguments and the Court's final

14   instructions and I'll give them a schedule as to how I think

15   that will proceed.

16          In essence, I'm going to excuse them after this and

17   they'll go home and come back tomorrow morning and begin with

18   closing arguments.

19          And then they'll deliberate when they are finished

20   after I've given them instructions.

21          And we'll devote the rest of the afternoon -- you

22   need more time, Mr. Andres?

23          MR. DOWNING:  Your Honor, we've spoken with the

24   Government, and if we can reconvene at 3:30 we think that

25   would be an adequate amount of time.

U.S. v. Manafort

2325

1           THE COURT:  All right.  I'll give you until 3:30.

2           MR. DOWNING:  Thank you.

3           THE COURT:  And we'll proceed then for the

4    instructions conference and then begin tomorrow morning at

5    9:30.  Any questions?

6           MR. ANDRES:  No, Your Honor.  Thank you, and thanks

7    for the extra time.

8           MR. DOWNING:  No, Your Honor.

9           THE COURT:  All right.  Mr. Flood, you may bring the

10   jury in.

11           (Jury present.)

12           THE COURT:  All right.  You may be seated.

13   Ladies and gentlemen, let me confirm that your lunches were

14   adequate.

15           THE JURORS:  Yes, Your Honor.

16           THE COURT:  Good.  We are now going to proceed.  We

17   have heard the Government's evidence.  And as you heard, the

18   Government rested.  Let me ask Mr. Downing now, the defendant

19   is not required to present any evidence at all, but he does

20   have the opportunity to do so.

21           Mr. Downing, does the defendant wish to offer any

22   evidence?

23           MR. DOWNING:  No, Your Honor.  The defense rests.

24           THE COURT:  All right.  Now, we've heard all the

25   evidence in the case, ladies and gentlemen.  What remains are

—U.S. v. Manafort—

2326

1    the counsel's final arguments and the Court's instructions.

2              The final arguments will be no more than two hours

3    in length, perhaps less.  And the Court's instructions will

4    take about a hour and a half.  So I hope to accomplish all of

5    that tomorrow.  We won't begin today, because I have one other

6    matter to deal with.

7              So we'll begin at 9:30 tomorrow, at which time

8    you'll hear closing arguments by counsel and then you will

9    hear the Court's instructions applicable to the case and then

10   you'll be permitted to retire and deliberate on your verdict.

11             So that's the schedule for tomorrow.

12             Make sure you fill out your -- your menus for

13   tomorrow, but you may have the afternoon off.

14             THE JURORS:  Thank you, Your Honor.

15             THE COURT:  And we'll start tomorrow morning at

16   9:30.

17             Pass your books to the right.  Mr. Flood will

18   collect them, maintain their security.  Remember, when you get

19   home, as I told you every night, you need to resist the

20   temptation to answer the questions or talk about the case.

21   Don't speak to anybody about the case.  Don't look at TV or

22   anything else.  And put it out of your mind entirely.  We'll

23   get back to it at 9:30 tomorrow morning.  Thank you.

24   Thank you for your patience today.

25             (Jury dismissed.)

U.S. v. Manafort

2327

1          THE COURT:  All right.  You may be seated.  Let me

2     tell you how the conference should proceed.  You each received

3     a packet of drafts.  It's lengthy, but that's necessary.  I'm

4     going to divide it into three sections.  The standard opening

5     and closing instructions, the standard opening instructions,

6     and the substantive instructions and the closing.  And I'll

7     take each package.

8          I'll ask first whether there are any agreed-upon

9     changes in Pages 1 through whatever the opening instructions

10    are, and you can tell me whether there are any agreed-upon

11    changes.  The -- if there's a misspelled word or verb, you can

12    call that to my attention, if you wish, but I assure you when

13    I read it, I will correct that.

14         Now, when we get to the substantive instructions,

15    I'll do the same, are there any agreed-upon changes.

16         After I do that, as I did with the opening, I'll ask

17    is there any objection that is not agreed to.  Then I'll hear

18    argument on that, resolve it, and do that same process with

19    the substantive instructions, the same process with the

20    closing instructions.

21         And I will also, by that time, give you a sketch of

22    the jury verdict form for you to review and to give me

23    suggestions or register objections and I'll rule on those.

24         Any questions?

25         MR. ANDRES:  Not from the Government.

U.S. v. Manafort

2328

1          MR. DOWNING:  No, Your Honor.

2          THE COURT:  Court stands in recess until -- what did

3   I give you?

4          MR. DOWNING:  3:30.

5          THE COURT:  3:30.

6          (Recess.)

7          THE COURT:  All right.  I gave the parties some

8   additional time.  Is that sufficient?

9          MR. DOWNING:  It is, Your Honor.

10          THE COURT:  All right.  The first thing -- is it,

11  Mr. --

12          MR. ANDRES:  Yes, Your Honor.  I just wanted to make

13  sure Your Honor was aware Scott Meisler, who is another lawyer

14  with the Special Counsel's office and who's actually argued in

15  this case, is just sitting with us in the well.  He's filed a

16  notice of appearance previously.  He's right over there in the

17  red tie.  You want to raise your hand?

18          THE COURT:  Oh, there he is.  That's fine.

19          MR. ANDRES:  He's outside the line of fire, but he's

20  going to help us.

21          THE COURT:  All right.  But, first, I'm going to

22  deal with the motion relating to judicial notice.  And I think

23  that's Mr. Westling, isn't it?

24          MR. WESTLING:  It is, Your Honor.

25          THE COURT:  You may be seated.  I'm going to tell

─────U.S. v. Manafort─────

2329

1    you where I stand.

2           You both submitted briefs, albeit today.  I've read

3    them.  They're not long.

4           Rule 201 of the Federal Rules of Evidence provide

5    that a district court may take judicial notice of a fact that

6    is not subject to reasonable dispute when it is generally

7    known within the district court's jurisdiction or readily

8    determined from an indisputably accurate source.

9           That's Rule 201.  The defendant has requested that

10   the Court take judicial notice that on October 27, 2017, the

11   Special Counsel sought an indictment against Mr. Manafort

12   charging him with various offenses and seeking forfeiture of

13   the property known as 377 Union Street and the property known

14   as Bridgehampton property in Water Mill, New York.

15          I think that October 27 date refers to the case in

16   the District of Columbia.  Is that correct?

17          MR. WESTLING:  It does, Your Honor.

18          THE COURT:  All right.  So, essentially, what the

19   defendant has asked for is that I take judicial notice of

20   this -- of an aspect of the case in D.C.  And it is undisputed

21   if that's what the case says, but that's by far not the end of

22   the analysis, because in order for the Court to take judicial

23   notice of something, it has to be relevant to the case.

24          Now, for that we need to understand what gave birth

25   to this.  What gave birth to it was testimony about -- I think

─────Tonia M. Harris OCR-USDC/EDVA 703-646-1438─────

EASTERN DISTRICT OF VIRGINIA

U.S. v. Manafort

2330

1  from The Federal Savings Bank that Mr. Manafort had not kept

2  his loans up and that the bank -- that he was in default.  He

3  hadn't kept the loans up.

4         I think there was some effort by the defendant to

5  say, well, they still have the collateral and the witness

6  said, I don't know, maybe.

7         Anyway, let me tell you what the problem is,

8  Mr. Westling.  First of all, this stipulation -- or not

9  stipulation -- this request for judicial notice I don't think

10 is relevant.  It just says something was filed seeking

11 forfeiture of the properties.  I don't know that that counters

12 that he's in default on the notes, that he didn't keep his

13 payments up.

14        The Government points out that he committed to keep

15 his payments up.  Is that right, Mr. Andres?

16        MR. ANDRES:  In the bail of process or proceedings

17 before Judge Jackson, the defense proffered these properties

18 as part of the bail package and Judge Jackson ordered that

19 that they -- that in order to keep the properties as part of

20 the bail package, that the mortgage payments would have to be

21 kept up.  Sorry to be long-winded, but the answer is yes.

22        THE COURT:  That's all right.  But the bottom line

23 is, that's no longer relevant because -- or operative because

24 his bond was ended by Judge Jackson.

25        MR. ANDRES:  Understood.  But the premise is that

U.S. v. Manafort

2331

1  Mr. Manafort couldn't keep up with those payments because of

2  the forfeiture, and after the -- after the indictment, after

3  the forfeiture in the indictment, he pledged to keep up the

4  payments.  So --

5           THE COURT:  Yes, I understand that.

6           All right.  So, Mr. Westling, I don't see the

7  relevance of this.  Yes, I can take judicial notice of a

8  pleading filed, but I don't see that it counters or responds

9  to what you want it to respond to, namely, you want to say,

10 well, wait a minute, I didn't make those payments because my

11 money was restrained.  And there's a further complication

12 raised by the Government, the testimony by the witness whose

13 name escapes me now even though it was yesterday --

14           MR. WESTLING:  Mr. Brennan, Your Honor.

15           MR. ANDRES:  James Brennan.

16           THE COURT:  Mr. Brennan.  I think he ultimately

17 testified that there were two accounts.  One was restrained

18 and we -- I don't think we ever heard what the other was.  But

19 the Government has represented that the $90,000 bank account

20 was restrained, but the $2.5 million one was not.

21           Is that correct?

22           MR. ANDRES:  That's correct, Your Honor.

23           THE COURT:  And those are facts which are not in

24 evidence.  Now, that doesn't matter because that could be that

25 you or the other party didn't think to put them in evidence.

—————U.S. v. Manafort—————

2332

1          What is in evidence, Mr. Andres, about the -- what's

2     restrained and what's available?

3          MR. ANDRES:  I don't think there's anything in

4     evidence.  Mr. Brennan didn't know those facts and wasn't able

5     to answer those questions.

6          THE COURT:  So the facts that you've presented to me

7     are facts that you know but aren't in the record in this case,

8     that is, the 90,000 and the 2.5 million.

9          MR. ANDRES:  Correct.

10         THE COURT:  Well, but before we even get to that,

11    Mr. Andres, I take it your position is this particular fact

12    doesn't do anything to rebut the sting of you didn't keep your

13    payments up.

14         MR. ANDRES:  That's correct.  And, secondly, it's

15    the Government's position that that violates -- the entry of

16    that information violates Your Honor's in limine motion that

17    none of the -- made by the defense that none of the facts from

18    the D.C. indictment would be admitted at this trial absent --

19    I think absent what Rick Gates pled to.

20         It was a specific motion by the defense.  We

21    consented to that in large part with that caveat.

22         So if these -- if this stipulation or this judicial

23    notice were to be taken, it would effectively violate Your

24    Honor's own order.

25         THE COURT:  Well, I'm less moved by that.  Thank you

—————U.S. v. Manafort————

2333

1    for that argument.  But, you know, if -- if the rule allows

2    it, and fairness requires it, then I would do it.  But,

3    Mr. Westling, I'm far from there.

4              MR. WESTLING:  If I may, Your Honor.

5              THE COURT:  I don't see how it's relevant --

6              MR. WESTLING:  So --

7              THE COURT:  -- specifically what you've asked to

8    have judicial notice taken of.

9              MR. WESTLING:  So, Your Honor, I think the challenge

10   here is that that Mr. Brennan testified that the bank wrote

11   off the loans.  There was no issue here of any evidence that

12   Mr. Manafort hadn't paid.

13             But when the Government asked did the bank make

14   money, Mr. Brennan said, "No, we wrote off the loans."  Now,

15   as a practical matter, he indicated they still have the

16   collateral.  In fact, they may well still collect on these

17   loans.

18             THE COURT:  Well, my recollection is he said,

19   "That's not my job.  I don't know anything about that."

20             MR. WESTLING:  I think that's right.  I think that's

21   correct.  But the difficulty here is that the reasons behind

22   the bank's writing off the loans, you know, is clearly the

23   effect on these properties and the impact of the Government's

24   action.

25             And without the ability to put that evidence in, it

─U.S. v. Manafort─

2334

1  appears to this jury at this point that Mr. Manafort caused

2  this loss.  These loans were current until his indictment,

3  until the Special Counsel acted in this matter.

4          And as a result, he's put in the position of then

5  being able to argue there has been a major loss that they know

6  was not in effect until they acted.  And that's the dilemma of

7  what I'm trying to deal with with this judicial notice.

8          THE COURT:  All right.  Mr. Andres.

9          MR. ANDRES:  To be clear -- to be clear, the issue

10 was raised by Mr. Westling, who asked Mr. Brennan if the bank

11 made money on the loans.  That was a question on

12 cross-examination, and that was the question I was responding

13 to, the question that the bank -- whether or not they --

14 whether they made money would be affected by the fact that

15 ultimately they had to write off the loans.

16         But, again, we just don't see the relevance and the

17 causal effect that Mr. Westling is trying to make that the --

18 that either the seizure or the restraints of the assets --

19         THE COURT:  Well, this judicial notice doesn't get

20 there.  It doesn't say that they are restrained.  All it says

21 is that the Government was seeking forfeiture of certain

22 property.

23         MR. ANDRES:  But Mr. Westling has just said that's

24 the argument he wants to make.  He wants to say that the

25 restraint of those assets is what led to Mr. Manafort not

┌─────────────────── U.S. v. Manafort ───────────────────┐

2335

1    being able to pay for those mortgage loans to keep up --

2              THE COURT:  Well, the fact that the Government is

3    seeking forfeiture does not mean the property is restrained.

4              MR. ANDRES:  Absolutely true.  And to allow this

5    argument at least would certainly be inconsistent with what

6    defense counsel represented to Judge Jackson and what she

7    ordered.

8              MR. WESTLING:  Well, I guess I'm not clear.  There's

9    a footnote in the Government's brief and this is just what

10   I --

11             THE COURT:  Come to the podium, if you would.  I

12   need a chance to hear from you.

13             MR. WESTLING:  I'm not sure I'm following, but I

14   think there's a footnote at the bottom of Page 2 that suggests

15   lis pendens were filed at least on some properties.  I am not

16   clear whether these two properties were lis pendens by the

17   Government.

18             But if that had, in fact, happened, it would be a

19   cloud on title that would create all kinds of problems in

20   keeping all of this current, at least as far as the bank's

21   desire to protect its interest.

22             So I don't know the answer to the question, but I

23   wonder if the Government does.

24             THE COURT:  Well, what you-all could have done is

25   introduce a lot more evidence about it.

─────────U.S. v. Manafort─────────

2336

1          MR. WESTLING:  True.

2          THE COURT:  And that did not occur.  The journalists

3    ran with it and put a big headline, I'm told, I didn't see it

4    because I don't read it, about a loss of a certain amount.

5          Well I'm not sure that's accurate either, because we

6    don't know what the loss is.  But, clearly, what you elicited,

7    Mr. Andres, is that he was in default and the bank put the

8    loans in a loss situation.

9          Is that right?

10          MR. ANDRES:  Yes.

11          THE COURT:  All right.

12          MR. ANDRES:  But, Your Honor, if I might, the lis

13    pendens is just a notice.

14          THE COURT:  Yes, I understand.  I understand.  It

15    doesn't necessarily prevent the use of the property as a

16    notice.  It doesn't restrain funds, so that wouldn't be a

17    correct argument.

18          Let me be clear.  The request for lis -- or for

19    judicial notice is for the Court to take judicial notice, in

20    effect, of the filing of the complaint in the District of

21    Columbia -- or filing of the indictment in the District of

22    Columbia that sought forfeiture on the basis of allegations of

23    a crime.  It sought forfeiture of 377 Union Street, Brooklyn,

24    and the Bridgehampton property, which is -- I think was the

25    property Mr. Brennan was talking about.

U.S. v. Manafort

2337

1          MR. ANDRES:  Actually to the extent both loans, one

2    loan was for Bridgehampton and the other loan was for the

3    Union Street property.

4          THE COURT:  All right.  So he was talking about both

5    of them.  And what the defendant wants me to take judicial

6    notice of is that the Government sought forfeiture of that.  I

7    think that doesn't really reach the level of relevance.

8          And, in addition, it would be confusing and

9    prejudicial because it isn't the whole story.  It would be

10   unfairly prejudicial.  I don't know what the Government

11   intends -- what does the Government intend to argue on the

12   basis of what you elicited from Mr. Brennan?

13         MR. ANDRES:  Nothing.  I was just trying to clear up

14   what I thought was a misimpression that was left with the

15   jury.

16         THE COURT:  So you don't intend to tell the jury

17   tomorrow, look, he cost them millions of dollars?

18         MR. ANDRES:  Only in rebuttal to some argument that

19   the defense made.  In my summation I don't intend -- I don't

20   have enough time, Your Honor, to reach that issue.

21         (Laughter.)

22         THE COURT:  All right.  Well, I don't see a basis

23   for taking judicial notice, so I'll deny it at this time for

24   the reasons I've stated.

25         It's not relevant.  It only shows what is alleged in

─────────────────────U.S. v. Manafort─────────────────

2338

1  an indictment by the Government that was filed.  It doesn't

2  say anything about whether funds are restrained.  As

3  Mr. Asonye notes, that happens in a lot of cases and sometimes

4  I do restrain the funds; is that right, Mr. Asonye?

5          MR. ASONYE:  Yes, Your Honor.

6          THE COURT:  I'm referring to the Miller matter.

7          And if that were the case, and an order issued,

8  saying these funds are restrained, yes, you could get judicial

9  notice of that if it was relevant.  But what you've asked for

10  judicial notice of, I don't see as relevant.  I think it would

11  be confusing and unfairly prejudicial.  So I'll deny the

12  request.

13          Let's turn now to the instructions.

14          Now, let me be clear, though, in what I just said.

15  I didn't restrain you, Mr. Westling, or whoever is going to

16  make the closing arguments.  All right?

17          MR. WESTLING:  Understood, Your Honor.

18          THE COURT:  I'm not restraining you in an argument

19  you can make, but I'm certainly going to allow, if you come to

20  the bench, I'll probably allow Mr. Andres to respond to it by

21  using evidence that he adduced from Mr. Brennan at trial.

22  That means you can't talk about the 90,000 or the two- --

23  because he didn't know about those.

24          All right.  And you also can't use the newspapers.

25          MR. ANDRES:  I haven't been reading them either,

U.S. v. Manafort

2339

1   Your Honor.

2           THE COURT:  Good for you.  Good for you.

3           (Laughter.)

4           THE COURT:  Now, let's turn to the draft

5   instructions that I gave you.  And the standard opening

6   instructions go from Page 1 to Page -- roughly to Page 26 or

7   so.  I think that's right, yes.  Let me ask, first of all:

8   Are there any agreed-upon changes or suggestions to that first

9   group?

10          MR. ASONYE:  Your Honor, we are largely in agreement

11  on the entire package.

12          THE COURT:  Good.

13          MR. ASONYE:  I think I have eight or nine issues.  I

14  think the vast majority of them, we're in agreement on.  And

15  if Your Honor wouldn't mind, if we could -- if I could run

16  through them.

17          THE COURT:  Yes, but I'm still going to take it

18  category by category.  But you -- do as you wish.

19          MR. ASONYE:  Okay.  In terms of -- Your Honor, there

20  are -- there is one instruction -- two instructions that the

21  parties agreed should be added.  And I can -- if I could hand

22  up a copy to the court security officer to give to the Court.

23          THE COURT:  All right.

24          MR. ASONYE:  The first, Your Honor, is there was one

25  expert witness who testified.

U.S. v. Manafort

2340

 1          THE COURT:  Yes, and these do go in the first

 2    20-some pages.

 3          MR. ASONYE:  Okay.

 4          THE COURT:  All right.  I agree with both of these.

 5    In fact, they were in my package originally.  And I did --

 6    ultimately, when I made the package, I started to -- there was

 7    no evidence admitted for a limited purpose, but I did admit

 8    evidence for a limited purpose and so I will give this.

 9          Where do you propose it should go?

10          Well, obviously --

11          MR. ASONYE:  Your Honor, I believe evidence for a

12    limited purpose --

13          (A pause in the proceedings.)

14          MR. ASONYE:  Your Honor actually may have already

15    included it.  I see --

16          THE COURT:  I thought I included it.  In fact, I

17    thought I said --

18          MR. ASONYE:  I believe it's Your Honor's Instruction

19    No. 12.

20          THE COURT:  All right.  Let me --

21          MR. ASONYE:  I'm just seeing it now.  It looks like

22    it was already in there.  We missed it.  That was our error,

23    Your Honor.  So that's Your Honor's Instruction No. 12.  So

24    that is unnecessary.

25          THE COURT:  All right.  So what's the other one?

─U.S. v. Manafort─

2341

1   The other one is the opinion evidence and, yes, that's

2   appropriate to give.

3           MR. ASONYE:  Yes.

4           THE COURT:  I'm not going to do anything with your

5   submission on the evidence for a limited purpose.

6           MR. ASONYE:  Yes.

7           THE COURT:  Because I had already attended to that.

8           MR. ASONYE:  Yes.

9           THE COURT:  Now, what about the -- where do you

10  think this opinion evidence should go?

11          MR. ASONYE:  Honestly --

12          THE COURT:  I think I gave it orally to the jury,

13  but it needs to be given again.  You're quite right.

14          MR. ASONYE:  There is a -- there's a category where

15  Your Honor goes through witnesses and --

16          THE COURT:  Yes.

17          MR. ASONYE:  I think around that area when you're --

18  I think there was one on credibility of witnesses.  I'm trying

19  to see where that is.  That is around 17 through 19, Your

20  Honor goes through --

21          THE COURT:  All right.

22          MR. ASONYE:  Actually 15 starts --

23          THE COURT:  I'll give it at -- I'll make it 16A.

24          Any objection to 16A?

25          MR. ZEHNLE:  No, Your Honor.

─Tonia M. Harris OCR-USDC/EDVA 703-646-1438─

EASTERN DISTRICT OF VIRGINIA

U.S. v. Manafort

2342

1          THE COURT:  All right.  It will be 16A.

2          What else do you have?

3          MR. ASONYE:  Okay.  I have one other new

4  instruction.  But, Your Honor, if I wouldn't mind coming back

5  to that one last, that I can go through the other agreed-upon

6  changes.

7          THE COURT:  Yes, you can do that.

8          MR. ASONYE:  Okay.  On Your Honor's Instruction

9  No. 13.

10          THE COURT:  Yes.

11          MR. ASONYE:  This is about charts.

12          THE COURT:  Yes.

13          MR. ASONYE:  And the first change, apparently

14  defense counsel has also submitted charts.  So rather than say

15  prepared by the Government, the parties submit "prepared by

16  the parties."

17          THE COURT:  All right.  I'll make that change.

18          MR. ASONYE:  And in the second category, admitted

19  into evidence, Your Honor noted in handwriting, "some have

20  been admitted."

21          THE COURT:  Yes.

22          MR. ASONYE:  There were also some that were

23  demonstratives in the first half that were not admitted.  So

24  we think the first sentence should start "some charts or

25  summaries have been prepared by the parties and shown to you."

─────────────────────── U.S. v. Manafort ───────────────────────

2343

1    It's just to be clear that "some" applies to both categories.

2            THE COURT:  All right.  So it should now read "some

3    charts or summaries have been prepared by the parties and the

4    Government -- or by the defendant and the Government"?

5            MR. ASONYE:  That's fine, or "by the parties."

6            MR. ZEHNLE:  Or "by the parties," Your Honor.

7            THE COURT:  All right.  Or by the parties have been

8    admitted --

9            MR. ASONYE:  The first part -- the first paragraph,

10   "some charts have been prepared by the parties and shown to

11   you during the trial for purposes of explaining facts."

12           THE COURT:  All right.

13           MR. ASONYE:  Such charts are not evidence.

14           And then in the second -- the third paragraph under

15   admitted into evidence, "charts or summaries have been

16   prepared by the parties.  Some have been admitted," just as

17   Your Honor already noted.

18           THE COURT:  Where should I put the new "some"?

19           MR. ASONYE:  It's already actually in for the

20   Government for 13.  I think Your Honor already has it.  It's

21   handwritten in there on the -- on the first sentence of the

22   third paragraph.  I believe it says "some" handwritten into

23   the first sentence.

24           THE COURT:  Well, let me go back for a moment.

25           I've changed the front part to say "parties," charts

─────────── U.S. v. Manafort ───────────

2344

1  or summaries have been prepared by the parties and shown to

2  you, right?

3          MR. ASONYE:  And it should say, "some charts and

4  summaries," in that first sentence.

5          THE COURT:  The first sentence, you think, should

6  say "some"?

7          MR. ASONYE:  Yes, because some were demonstratives

8  and were not admitted into evidence.

9          THE COURT:  All right.

10          MR. ASONYE:  And some were admitted into evidence.

11          THE COURT:  All right.  I see.

12          All right.  So the first paragraph relates to charts

13  and summaries not admitted into evidence, right?

14          MR. ASONYE:  Yes, Your Honor.

15          THE COURT:  And the word "some" should begin that

16  paragraph?

17          MR. ASONYE:  Yes.

18          THE COURT:  Then the second -- or the third

19  paragraph begins, "the charts or summaries admitted into

20  evidence."

21          MR. ASONYE:  Correct.

22          THE COURT:  And that should begin with the word

23  "some."

24          MR. ASONYE:  Yes, somewhere -- yes, "some charts

25  have been prepared by the parties" --

─U.S. v. Manafort─

2345

1          THE COURT:  Have been admitted.

2          MR. ASONYE:  -- "and have been admitted into

3    evidence and have been shown to you," yes.

4          THE COURT:  All right.  Have I now made all the

5    changes that you want on Page 13?

6          MR. ASONYE:  Yes, Your Honor.

7          THE COURT:  All right.  Next.

8          MR. ASONYE:  The parties agree, Your Honor, that

9    Instruction 30 on "deliberate ignorance" can be deleted.

10          THE COURT:  All right.  It's gone by agreement by

11    the parties.

12          Next.

13          MR. ASONYE:  And Instruction No. 31 on "mere

14    presence" can be deleted as well, Your Honor.

15          THE COURT:  All right.  Because it's redundant?

16          MR. ASONYE:  Yes.

17          THE COURT:  All right.  It's gone.

18          MR. ASONYE:  One moment, Your Honor.

19          THE COURT:  Yes.

20          (A pause in the proceedings.)

21          MR. ASONYE:  Your Honor, this is jumping ahead.  66

22    can also be deleted.  This is --

23          THE COURT:  66?

24          MR. ASONYE:  Yes.

25          THE COURT:  Hang on.  Let me get there.

U.S. v. Manafort

2346

1          (A pause in the proceedings.)

2          THE COURT:  Is 66 -- it may be misnumbered.  Is that

3    also have the number 97 at the bottom?

4          MR. ASONYE:  Yes, and it spills on to the next page.

5    It's responsibility for --

6          THE COURT:  Right, and that's the "responsibility

7    for substantive offenses."  That's gone.

8          Next.

9          MR. ASONYE:  And then, Your Honor, 87, which is the

10   final instruction.

11         THE COURT:  87.  Yes, that's wrong.

12         MR. ASONYE:  Okay.

13         THE COURT:  I am going to roll them all back there.

14         MR. ASONYE:  Okay.  So we'll -- however that's --

15   needs to be stated that they will have the exhibits.

16         THE COURT:  How -- yes, I'm going to tell the jury

17   that they'll have all the exhibits back there with them.  I'll

18   tell them that they're not required to read every one of them,

19   but they may if they wish to.  I'll tell them that they may

20   deliberate as long or as little as they like, but it's

21   entirely up to them.

22         MR. ASONYE:  Yes, Your Honor.

23         And then the final change, this is the Government's

24   requesting it.  I think my understanding is that the defense

25   doesn't vigorously object to it.  It deals with -- it's

─────────────U.S. v. Manafort─────────────

2347

1    Instruction No. 11, and if I could hand up --

2              THE COURT:  You want it eliminated?

3              MR. ASONYE:  Well, we want it revised, Your Honor.

4    And we're handing up --

5              THE COURT:  You're giving me a brief now?

6              MR. ASONYE:  I am.  But, Your Honor, it's actually

7    attached to it, to the brief at the very back of it.  It

8    should be the proposed instruction.

9              THE COURT:  Did you submit this brief prior to

10   today?

11             MR. ASONYE:  No, we have not, Your Honor.

12             THE COURT:  So I can just look at the back and --

13             MR. ASONYE:  Correct.  If there was -- if there's

14   argument over it, we would submit the brief.  But we think

15   that -- as the brief would actually suggest, that this

16   proposed instruction is actually a more accurate statement of

17   Fourth Circuit law on court's comments of questioning of

18   witnesses.

19             THE COURT:  It leaves out the fact that the law of

20   the United States permits a federal judge to comment to the

21   jury on the evidence in the case.  That's still the law of the

22   land.  But in any event, I don't need to say that.  I don't

23   care that much.

24             And what's your objection to this one?  The only

25   thing it leaves out is that I have the right, as the judge, to

U.S. v. Manafort

2348

1   comment on the evidence, and then I was going to say such

2   comments are only expressions of my opinion and you may

3   disregard them entirely.  That's the law.

4        Now, there's no doubt that appellate courts don't

5   like that very much, but it's still the law.  I don't see

6   anything wrong with what the Government has submitted.

7        MR. ZEHNLE:  Well, Your Honor, just to be clear, the

8   reason that Mr. Asonye said what he said at the beginning was

9   I noticed that the Court already had its own instruction that

10  it used for the Court's comments on certain evidence as

11  No. 11.  And my only point was, you know, we'll defer to the

12  Court in terms of how you wish to instruct the jury on your

13  comments on certain evidence.

14       THE COURT:  Well, there's too much in here.  You

15  know, you talk about I ask questions of certain witnesses.

16  That's redundant.  I already reviewed that; isn't that right,

17  Mr. Asonye?

18       MR. ASONYE:  I think what we're proposing, Your

19  Honor, is to --

20       THE COURT:  Oh, so you think it'll get rid of others

21  that I --

22       MR. ASONYE:  It would -- it would -- we would use it

23  in replace of -- replace No. 11, not in addition to 11, but

24  this would -- the Government's proposed instruction would

25  replace --

U.S. v. Manafort

2349

1          THE COURT:  No, no, no.  You haven't got that right.

2   All 11 does is deal with comments.  It -- but your new 11 also

3   refers to whether or not I ask questions and what those

4   questions related to, and that is referred to in No. --

5          MR. ASONYE:  10.

6          THE COURT:  -- 10.

7          MR. ASONYE:  Yes.

8          THE COURT:  So it's redundant.

9          MR. ASONYE:  Yes, so it would -- I think, in the

10  Government's review, is it would replace 10 and 11.

11         THE COURT:  All right.  Well, is this verbatim

12  from --

13         MR. ASONYE:  Yes, from Sands, Your Honor.

14         THE COURT:  Verbatim?

15         MR. ASONYE:  Yes.

16         THE COURT:  No changes?

17         (A pause in the proceedings.)

18         MR. ASONYE:  I'm understanding that it is.  We will

19  check for sure, Your Honor.  I don't believe there were any

20  changes.  I didn't -- I didn't personally review it word by

21  word.  My understanding is there are not.  We will -- if there

22  are any changes, we'll absolutely immediately notify the

23  Court.

24         THE COURT:  All right.  What's your view,

25  Mr. Zehnle?

U.S. v. Manafort

2350

1          MR. ZEHNLE:  Your Honor, as I said before, I mean,

2    the defense was perfectly -- you know, the -- you know, 10 and

3    11 that the Court proposed were perfectly acceptable.

4          But if the Court believes that the Government's new

5    one in combining the two, there's no objection as long as it's

6    directly from Sands, Your Honor.

7          (A pause in the proceedings.)

8          THE COURT:  Well, I'll tell you another reason I

9    don't like it, Mr. Asonye, the diction is wrong.  You are

10   expressly to understand, at least it didn't split the

11   infinitive.  That's not the way I speak or anybody speaks.

12         MR. ASONYE:  And I'm sure Your Honor will say it

13   however Your Honor feels.  I think --

14         THE COURT:  Well, the way I say it is 10 and 11.

15         (Laughter.)

16         MR. ASONYE:  Yeah.  Your Honor, here is, I think,

17   the issue.  10 and 11 make clear that Your Honor has opinions

18   and has --

19         THE COURT:  No, I don't --

20         MR. ASONYE:  And has expressed them potentially,

21   "such comments are an expression of my opinion as to the

22   facts."  And I just don't think that's where the Court wants

23   to be.  My understanding is the Court doesn't have opinions,

24   well, that he's expressed to the jury.

25         THE COURT:  All right.  Suppose I change 11 to say,

U.S. v. Manafort

2351

1    that "such comments" -- let's see.  "Permits a federal judge

2    to comment to the jury on the evidence in the case."

3              Do you think I made any such comments.

4              (Laughter.)

5              MR. ANDRES:  Yes, you did.

6              (Laughter.)

7              THE COURT:  Do you remember one?

8              MR. ANDRES:  Yes, I can remember several.  I know

9    that when Mr. Gates was testifying, he testified that

10   Mr. Manafort was very careful about his money and Your Honor

11   said, "well, obviously not when you stole money from him."

12             That was one that was particularly noteworthy.

13             But there are others, Your Honor.

14             THE COURT:  That really hurt the Government, didn't

15   it?

16             MR. ANDRES:  Well, I --

17             THE COURT:  Never mind.  Never mind.

18             (A pause in the proceedings.)

19             THE COURT:  I might marry the two and I'll let you

20   know how I marry them.

21             MR. ASONYE:  Thank you, Your Honor.

22             THE COURT:  Next.

23             MR. ZEHNLE:  Nothing from the defense.

24             MR. ASONYE:  Nothing further, Your Honor.

25             THE COURT:  How about all the substantive

—U.S. v. Manafort—

2352

1    instructions?

2            MR. ASONYE:  They were fine, Your Honor.

3            THE COURT:  All right.  Now, you have the jury

4    verdict form.

5            MR. ZEHNLE:  We do, Your Honor.

6            THE COURT:  Any problems with that on behalf of the

7    Government?

8            MR. ASONYE:  One moment?

9            (A pause in the proceedings.)

10           MR. ASONYE:  It's fine from the Government's

11   perspective, Your Honor.

12           MR. ZEHNLE:  And from the defense, Your Honor.

13           THE COURT:  All right.  So the only outstanding

14   issue is what I'm going to do with 10 and 11 and your

15   submission.  And, Mr. Zehnle, as I understand it, you don't

16   object to the Government's submission, but you were more

17   satisfied with the Court's original submission?

18           MR. ZEHNLE:  I think that's fair to say, Your Honor.

19           THE COURT:  All right.  I'll look at it.  I will

20   probably marry the two and I have in mind, Mr. Asonye, that

21   what you are particularly focused on in the instruction you

22   submitted is you want to make clear --

23           (A pause in the proceedings.)

24           MR. ASONYE:  Your Honor --

25           THE COURT:  Just -- just a moment.  I'll be right

U.S. v. Manafort

2353

1    with you.

2              (A pause in the proceedings.)

3              THE COURT:  I'm going to take a minute and give you

4    my language.  Do you have anything else I should know right

5    now?  Because once I do this we'll recess for the afternoon.

6              MR. ANDRES:  Your Honor, we just have to confer with

7    the defense about the forfeiture instructions.  Again, I'm not

8    being presumptuous but I think that is an issue that may have

9    to be resolved before the instructions are given.  Not -- I

10   understand that's a separate proceeding, only if there's a

11   conviction, but that's the only other outstanding issue that I

12   can think of.  And we'll consult now.

13             THE COURT:  All right.  And you can let me know.

14   I'll be back -- I will recess for 15 minutes.

15             MR. ANDRES:  Thank you, Your Honor.

16             (Recess.)

17             THE COURT:  All right.  I put it in my words.  I've

18   covered everything.  Take a look at it and tell me whether you

19   have any objection.  I think it correctly states the law.

20             (A pause in the proceedings.)

21             THE COURT:  This will become new 11.

22             (A pause in the proceedings.)

23             THE COURT:  All right.  Any objection?

24             MR. ZEHNLE:  None from the defense, Your Honor.

25             MR. ANDRES:  No, Your Honor.

U.S. v. Manafort

2354

1    THE COURT:  All right.  It will be the new 11.  Is

2  there anything else that needs to be accomplished today,

3  Mr. Asonye?

4    MR. ASONYE:  Your Honor, are you keeping -- is Your

5  Honor keeping No. 10?  Is this 10 and 11 or is this replacing

6  just 11?

7    THE COURT:  No, this is replacing, I thought, 10 and

8  11.  Have I omitted anything?

9    MR. ASONYE:  I don't believe so.  I just wanted to

10  clarify.

11    THE COURT:  No, I'm going to get rid of 10 and 11.

12  This will be the new 10 and 11.  Is that what you understood?

13    MR. ASONYE:  Yes, Your Honor.

14    THE COURT:  All right.  That's -- that's what I

15  intended.

16    Anything else we need to accomplish today?

17    MR. VAN GRACK:  Yes, Your Honor.  Under Rule 32.2,

18  the Government is requesting that the jury be retained to

19  determine the forfeitability of the specific property listed

20  in the indictment.  That's in Paragraph 76 of the indictment.

21  And the Government will submit later this evening proposed

22  jury instructions and a special verdict form.

23    THE COURT:  All right.  And what is it that you

24  expect this special verdict form and the instructions to say,

25  in general?

U.S. v. Manafort

2355

1      MR. VAN GRACK:  Limited -- the verdict form would be

2  limited only to the specific property listed in this -- in the

3  superseding indictment.  And it would only relate to Counts 29

4  and Counts 30 in the indictment.  And the proposed jury

5  instructions would be the Government intends probably nine or

6  ten instructions just explaining terms, such as proceeds and

7  traceability.

8      THE COURT:  Have you submitted those to the

9  defendant?

10      MR. VAN GRACK:  We will do so this evening, Your

11  Honor.

12      MR. WESTLING:  Your Honor, we have conferred about

13  this matter and we are working together to get it handled.

14      THE COURT:  All right.  Anything further?

15      MR. VAN GRACK:  No, Your Honor.

16      MR. ZEHNLE:  No, Your Honor.

17      THE COURT:  All right.  I thank counsel for your

18  cooperation.  I will see you tomorrow morning at 9:30.

19      MR. VAN GRACK:  Thank you, Your Honor.

20      THE COURT:  The exhibits are all ready to go; is

21  that correct?

22      MR. VAN GRACK:  Yes, Your Honor.

23      THE COURT:  All right.  The deputy clerk advises me

24  that the parties are in agreement as to all of the exhibits.

25      Oh, that's right.  I'll convene at 8:30 on another

U.S. v. Manafort

2356

1    case.  And we should have people out of here.

2           Court stands in recess.

3                 **(Proceedings adjourned at 4:49 p.m.)**

1                    CERTIFICATE OF REPORTER

2

3              I, Tonia Harris, an Official Court Reporter for

4    the Eastern District of Virginia, do hereby certify that I

5    reported by machine shorthand, in my official capacity, the

6    proceedings had and testimony adduced upon the Jury Trial

7    in the case of the **UNITED STATES OF AMERICA versus PAUL J.**

8    **MANAFORT, JR.,** Criminal Action No. 1:18-CR-83, in said

9    court on the 14th day of August, 2018.

10             I further certify that the foregoing 37 pages

11   constitute the official transcript of said proceedings, as

12   taken from my machine shorthand notes, my computer realtime

13   display, together with the backup tape recording of said

14   proceedings to the best of my ability.

15             In witness whereof, I have hereto subscribed my

16   name, this August 14, 2018.

17

18

19

20

21   _____

22   Tonia M. Harris, RPR
     Official Court Reporter

23

24

25