```
                   UNITED STATES DISTRICT COURT
                FOR THE EASTERN DISTRICT OF VIRGINIA
                        ALEXANDRIA DIVISION

-------------------------------x
UNITED STATES OF AMERICA,      .  Criminal Action No.
                               .  1:18-CR-83
         versus                .
                               .
PAUL J. MANAFORT, JR.,         .
                               .  August 14, 2018
              Defendant.       .  Volume XI-A.M.
-------------------------------x

                       TRANSCRIPT OF JURY TRIAL
                 BEFORE THE HONORABLE T. S. ELLIS, III
                     UNITED STATES DISTRICT JUDGE
```

APPEARANCES:

FOR THE GOVERNMENT:          UZO ASONYE, AUSA
                             United States Attorney's Office
                             2100 Jamieson Avenue
                             Alexandria, VA 22314
                               and
                             GREG D. ANDRES, SAUSA
                             BRANDON L. VAN GRACK, SAUSA
                             Special Counsel's Office
                             U.S. Department of Justice
                             950 Pennsylvania Avenue, N.W.
                             Washington, D.C. 20530

FOR THE DEFENDANT:           JAY ROHIT NANAVATI, ESQ.
                             BRIAN P. KETCHAM, ESQ.
                             Kostelanetz & Fink LLP
                             601 New Jersey Avenue, N.W.
                             Suite 620
                             Washington, D.C. 20001
                               and
                             THOMAS E. ZEHNLE, ESQ.
                             Law Office of Thomas E. Zehnle
                             601 New Jersey Avenue, N.W.
                             Suite 620
                             Washington, D.C. 20001

              (APPEARANCES CONT'D. ON FOLLOWING PAGE)

                      (Pages 2302 - 2320)

           COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

1 APPEARANCES: (Cont'd.)

2 FOR THE DEFENDANT: KEVIN M. DOWNING, ESQ.
Law Office of Kevin M. Downing
3 601 New Jersey Avenue, N.W.
Suite 620
4 Washington, D.C. 20001
and
5 RICHARD W. WESTLING, ESQ.
Epstein, Becker & Green, P.C.
6 1227 25th Street, N.W.
Washington, D.C. 20037

7
OFFICIAL COURT REPORTER: ANNELIESE J. THOMSON, RDR, CRR
8 U.S. District Court, Fifth Floor
401 Courthouse Square
9 Alexandria, VA 22314
(703)299-8595

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                      P R O C E E D I N G S
2                      (Defendant present, Jury out.)
3            THE COURT:  All right.  I will hear argument now on
4   the Rule 29 motion on which I have received briefs from both
5   sides, so you should have that in mind in your argument.
6            MR. WESTLING:  Good afternoon -- good morning, Your
7   Honor.
8            THE COURT:  All right.  Good morning to you.  I'm as
9   surprised as you are.
10                            (Laughter.)
11           THE COURT:  Go ahead.  You may proceed.
12           MR. WESTLING:  Your Honor, we obviously have made a
13  motion to dismiss -- well, a Rule 29 motion as to all the
14  counts in the indictment, but specifically have briefed the
15  counts in the indictment that relate to the lending arrangement
16  entered into with The Federal Savings Bank.  And we've
17  highlighted that, Your Honor, because we think the evidence at
18  this point has not demonstrated that any statements made to the
19  bank were material to its decision to lend, and that is an
20  element of the offense that the Government must prove beyond a
21  reasonable doubt.
22           In particular, Your Honor, we would suggest that we
23  believe the evidence at this point has shown that The Federal
24  Savings Bank was aware of the status of Mr. Manafort's assets
25  and future income at the time it made the decision to lend;

1  that they structured the loans in a manner to accommodate any
2  issues they found in terms of the amount of collateral assigned
3  and money set aside to ensure there would be a stream of
4  payments; and that they came to the loans with an interest in
5  doing business with Mr. Manafort due to Mr. Calk's position in
6  the bank as both the CEO and a majority shareholder.
7          And for all those reasons, we believe that any of the
8  evidence that has come in was not material to the bank's
9  decision, nor were they in a position where they were acting
10 without knowledge of the true status of the affairs at the
11 time.
12         THE COURT: All right. Thank you.
13         Mr. Asonye?
14         MR. ASONYE: Your Honor, on the factual issue, both
15 Mr. Raico and Mr. Brennan testified quite clearly that income
16 information matters, that they rely on that information,
17 regardless of the collateralization, because cash flow is one
18 of the sources of repayment on a loan.
19         They also indicated that fake documents goes to an
20 issue of character and that if a borrower is supplying
21 fraudulent documents to the bank, that's the end of the story.
22 You're not going to get a loan whether you qualify or not.
23         So as a factual matter, at a Rule 29 standard, the
24 Court has to take the evidence in the best light of the
25 Government. That's enough.

1      Also, in our brief, we get to the legal issue about
2 whether these were material, and they're material for four
3 reasons, Your Honor, that's pretty clear, I think, black letter
4 Fourth Circuit law.
5      The first is that materiality does not depend on
6 whether the finder, the decision-maker was actually influenced
7 by the false statement. There are two Fourth Circuit cases on
8 that, the *Sarihifard* case and the *Williams* case.
9      So even if Mr. Calk intended to approve the loans no
10 matter what, the representations can still be material if they
11 were capable of influencing the bank.
12      The second issue is that Steve Calk is not the bank.
13 He owns -- he's a 67 percent shareholder, but there are four
14 other victims who were not involved, who were unaware of the
15 misrepresentations, and so --
16      THE COURT: Well, we don't know whether they were
17 aware or not, but the proof in this case is that he was the
18 only one who might have known.
19      MR. ASONYE: The only evidence here is he -- correct.
20 And I'm not even sure, Your Honor, if the proof is that he knew
21 the statements were false. I think there -- the evidence is
22 that he had a different motive as to why -- to approve the loan
23 for Mr. Manafort, but I'm not really sure that there's evidence
24 that he knew that there was a fake P&L or that the Gates letter
25 regarding the AmEx bill was fraudulent.

1                The third issue, and this is right on point, and this
2    is a case from last year in the Fourth Circuit, *United States*
3    *v. Raza*, makes it very clear that it doesn't matter.  It's --
4    the standard for materiality when it comes to a financial
5    institution as a victim is an objective, reasonable test, what
6    a reasonable lender would do in the case, not a renegade
7    lender.
8                And so putting aside the testimony from TFSB, from
9    The Federal Savings Bank, you already have in the record --
10               THE COURT:  And what's the case you cited, I think
11   it's the Reza -- what is it?
12               MR. ASONYE:  It's *Raza*, Your Honor.
13               THE COURT:  I beg your pardon?
14               MR. ASONYE:  *Raza*, R-a-z-a.
15               THE COURT:  Yes.  Now, the defendant seeks to
16   distinguish it, so that might be helpful if you address that.
17   You've seen the defendant's reply.
18               MR. ASONYE:  I had an opportunity to glance at it,
19   Your Honor.
20               THE COURT:  All you need to do is address their
21   attempt to distinguish it.
22               MR. ASONYE:  I think, Your Honor, they're
23   distinguishing between whether the bank in the -- in the *Raza*
24   case, these were loans that were being resold to -- they're not
25   portfolio loans; they're bank -- they were loans being resold

1  to Fannie and Freddie.  I'm not really sure of the import that
2  that would -- why that's even applicable here.
3         Here, these statements would be more material because
4  the bank is going to hold on to these loans.  It stands on
5  their balance sheet, and the *Raza* case is probably -- those
6  statements would be even less material because they're
7  reselling them.
8         I'm not really sure how they -- how that
9  distinguishes the issue, which is the core holding of *Raza*,
10 that again, when you look at misrepresentations to a bank, what
11 matters is not whether you have a renegade bank.  It's whether
12 an objective, reasonable bank could be influenced by the
13 misrepresentations.
14        So again, for -- and then finally, Your Honor, on
15 materialities, we've also charged, obviously, conspiracy and
16 attempts, which the crime is complete upon the agreement to
17 defraud the bank.  So I just think, Your Honor, there are so
18 many different legal bases in addition to factual bases, this
19 is not even a close call, that it should go to the jury.
20        THE COURT:  All right.
21        MR. ASONYE:  Thank you, Your Honor.
22        THE COURT:  Anything further?
23        MR. WESTLING:  Just very briefly on *Raza*, Your Honor.
24 I think from our perspective, that case dealt with a renegade
25 banker inside a bank.  The comment about the Freddie and Fannie


2309

1  issue is one in which you would expect it to be far more
2  important that certain things were truthful if you were going
3  to market those loans through another process.  This is being
4  held on the portfolio, which means Mr. Calk continues to follow
5  the loan.  He's the one actually making the loan and keeping
6  the loan.
7         And so for all those reasons, we believe it is
8  distinguishable.
9         THE COURT:  The matter is before the Court on a
10 motion for judgment of acquittal pursuant to Rule 29 of the
11 Federal Rules of Criminal Procedure.  The standard on -- the
12 standard for the Court to apply at this stage on that motion is
13 too well settled to be disputed and not worthy of much
14 explanation.
15         It's clear, the Court is required to take the facts
16 in the light most favorable to the Government and determine
17 whether taking the facts that have been presented in the light
18 most favorable to the Government, in other words, if they are
19 disputed facts, the Court takes the facts in the light most
20 favorable to the Government and then determines whether the
21 Government has presented evidence which would enable a
22 reasonable jury to conclude beyond a reasonable doubt that each
23 of the elements of the offense has been shown.  That's the
24 standard.
25         No one here disagrees, do you, Mr. Asonye or

1  Mr. Westling?
2           MR. WESTLING:  No, Your Honor.
3           MR. ASONYE:  No, Your Honor.
4           THE COURT:  Now, applying that standard to this
5  record is what the Court must do, and what I think has occurred
6  is that the defendant has made -- or has made an effort to
7  present evidence that shows that it really wasn't material to
8  this loan.
9           I'm not going to review all of the evidence or even
10 the arguments made.  They're a matter of public record now
11 because these briefs have been filed, is that correct, yours
12 for the Government, Mr. Asonye?
13          MR. ASONYE:  Yes, Your Honor.
14          THE COURT:  And yours for the defendant?
15          MR. WESTLING:  Yes, Your Honor.
16          THE COURT:  All right.  And I've reviewed that.
17          In the end, I think the defendant makes a significant
18 argument about materiality, but in the end, I think materiality
19 is an issue for the jury.  The jury isn't going to hear
20 anything about your views on the Fourth Circuit cases,
21 Mr. Asonye.  They're going to decide whether on the evidence
22 they think it was material.  That's the way it should be.  It's
23 a jury issue.
24          And that is true for all of the other counts, not
25 just the counts that we're discussing, which is The Federal

1  Savings Bank, but also the other counts beyond 29 through 32,
2  the tax counts and everything else, those are all jury issues.
3  They -- the jury will be instructed, and they'll have to make a
4  determination.
5          So the motion for judgment of acquittal pursuant to
6  Rule 29 is denied.
7          Now, let me confirm that the -- anyone else need to
8  leave the courtroom?
9                    (Laughter.)
10         THE COURT:  The answer was yes.
11                   (Laughter.)
12         THE COURT:  Now, we turn to the fact that the
13 Government has rested, and it now is my obligation to ask the
14 defendant, Mr. Downing, does the defendant wish to offer any
15 evidence?
16         MR. DOWNING:  The defendant rests, Your Honor.
17         THE COURT:  All right.  Now, the defendant is not
18 required to present any evidence.  All this is being done out
19 of the hearing of the jury, but I do --
20                   (Laughter.)
21         THE COURT:  Is that everybody?  Good.
22         But I do have to question, voir dire the defendant to
23 ensure that it is his decision that he does not wish to
24 testify.
25         Does he wish to testify?

2312

1        MR. DOWNING:  He does not.
2        THE COURT:  Mr. Manafort, would you come to the
3    podium, please, sir?
4        I need to confirm, Mr. Manafort, that you understand
5    that you have an absolute right to testify before this jury.
6    You also have an absolute right to remain silent before this
7    jury.  If you remain silent, then the Court will instruct the
8    jury that the jury may draw no inference from your silence.
9    Indeed, if you elect to remain silent, I will instruct the jury
10   that when the jury retires to deliberate on its verdict, the
11   jury cannot even discuss the fact that you have not testified
12   because your right to remain silent is absolute under the
13   Constitution, and you may not be penalized for exercising that
14   right.
15       Now, I'll end by saying again, you do have the right
16   to testify.  Have you discussed this matter with your counsel?
17       THE DEFENDANT:  I have, Your Honor.
18       THE COURT:  And are you fully satisfied with the
19   advice and counsel you've received from your lawyers?
20       THE DEFENDANT:  I am, Your Honor.
21       THE COURT:  And have you decided whether you wish to
22   testify?
23       THE DEFENDANT:  I have decided.
24       THE COURT:  Do you wish to testify?
25       THE DEFENDANT:  No, sir.

1            THE COURT:  You may be seated.

2            THE DEFENDANT:  Thank you.

3            THE COURT:  All right.  That brings us to the end of
4   the evidence in this case with the exception of the judicial
5   notice issue.

6            Is there any other evidentiary issue outstanding,
7   Mr. Andres?

8            MR. ANDRES:  No, Your Honor.

9            THE COURT:  Mr. Downing?

10           MR. DOWNING:  No.

11           THE COURT:  So once I decide that issue, the case
12  will be ready to go to the jury following instructions by the
13  Court and the parties' arguments -- the other way around -- and
14  I will decide -- I told you I would wait for your brief, but I
15  need it pretty quickly, Mr. Asonye.

16           Now, we don't -- what I -- you may be seated.

17           What I'm anticipating is I'm going to give you a
18  package of instructions for you to review.  I want you to
19  confer with one another as to any objections you may have to
20  the instructions I intend to give to see if you can reach an
21  accommodation and an agreement as to how the objection can be
22  dealt with.  If there's an agreement by counsel and it's
23  correct under the law, I'm inclined to agree with you, and that
24  will take some time, because the instructions are still being
25  cobbled together.

2314

1            Now, you will have those before the luncheon hour
2   begins, which is 12:30, and then we'll have the instructions
3   conference.  That's -- for those of you in the courtroom, that
4   is the part of the trial in which the parties can raise
5   objections as to the instructions, and I have to resolve the
6   objections, and that's done in open court.  You will all be
7   present, if you wish, for that.
8            Following that, we will have -- and I'll resolve that
9   one evidentiary issue.
10           Following that, we, of course, go to final arguments
11  and the Court's instructions, so that the lawyers will have
12  before they make their arguments the instructions.  They'll
13  know what I'm going to tell the jurors.
14           Now, the jury will not be given a package of
15  instructions.  They won't because they're not in a condition
16  suitable for that.  They will have a tape recording that
17  Ms. Pham will make of my giving the instructions, and they will
18  be told that they may listen to the instructions again if they
19  wish or they may not.  They can decide whether they want to
20  listen to anything.  I don't typically have instructions in a
21  form that I can give them, and so I think this is an adequate
22  way to deal with it.
23           Now, there is a further issue about the indictment.
24  I'm inclined to allow a portion of the indictment, but I want
25  the parties to discuss this and see if you can reach agreement.

2315

1   The problem with the indictment, as I see it, is that it is, in
2   essence, an argument, and there is even material in the
3   indictment that was not part of the record in this case, but
4   there are three groupings of allegations, and if we give the
5   jury the actual counts, it may help them.
6          The three counts, of course, as you will point out in
7   your arguments, are the tax counts, the FBAR counts, and the
8   bank fraud counts.  Now, in the bank fraud, there is conspiracy
9   and there is a substantive count, but they're all bank fraud
10  counts.
11         And one of the challenges, which I hope I will have
12  come close to meeting, is giving the jury instructions that are
13  understandable to them about those three.
14         So my sense is -- and I'm prepared to hear from you
15  on it -- my sense is that they should have the indictment.  Of
16  course, I will tell them it's not proof or evidence of guilt of
17  any kind whatsoever, and it isn't.  But they may use it for
18  purposes of understanding what the counts are, and that's why I
19  would propose to give them only the portions of the indictment
20  that actually allege the counts.  And, of course, at all times,
21  I'm talking about the superseding indictment.
22         Now, so I think what makes sense to do is that I need
23  to resolve this one judicial notice issue and then to have the
24  instructions conference after you've had a chance to look and
25  then perhaps recessing for the day.  I don't want to break up

2316

1 arguments, but I do want to come back to the length of the
2 arguments. And then beginning tomorrow morning with the
3 arguments and instructions, to have it all happen in one day.
4     Now, counsel have told me that you'd like to have two
5 hours. I understand why you've made that request. It comes --
6 seems a little excessive, if we could put it down a bit or tamp
7 it down a bit? This case is by far not the longest I've ever
8 heard in 31 years by far, and I've never had two hours in
9 closing arguments. I have an open mind about it still, but I'd
10 like to ask you to reflect on that and see if you can compress
11 it to an hour and a half. It's very, very hard for anybody,
12 any juror to pay attention for two straight hours and --
13     Yes?
14     MR. DOWNING: We have no objection to that, Your
15 Honor.
16     THE COURT: Well, you and Mr. Andres talk about it.
17 I'd like to get it to an hour and a half. That too is
18 excessive; but by excessive, I don't mean that it's unwarranted
19 or unjustified; I mean it's a lot of time. But I do take what
20 would be your point, Mr. Andres, that a lot of evidence has
21 been heard. There may be, I don't know, how many total
22 exhibits?
23     MR. ANDRES: There are a lot, Judge. There's also 18
24 counts, so, you know --
25     THE COURT: Yes, but they all kind of come together.

1  I asked you how many exhibits.  You don't know the total
2  number?
3              MR. ANDRES:  I don't.  I know we put together a list,
4  so I can get you the number, but I don't know the total.
5              THE COURT:  Well, I don't need the number.  There are
6  a lot of them, probably several hundred.
7              MR. ANDRES:  And certainly a substantial number that
8  have never either been published or shown to the jury either
9  way.  I'm not saying I'm going to rely on all of those, but
10 there are certainly some that --
11             THE COURT:  I told you at the outset of this case
12 that I didn't want to send exhibits back to the jury that had
13 never been used in the trial.  Do you recall that?
14             MR. ANDRES:  No, I -- what I remember, Judge, is that
15 you wouldn't allow us to have certain defendant's statements,
16 his e-mails read to the jury, and what you said repeatedly
17 throughout the jury is you can use those in your closing and
18 you don't need to publish them and you don't need to put them
19 in otherwise.  That's why --
20             THE COURT:  All right.  I did say that, but I think I
21 also said, if you look at the transcript, I also said, you
22 know, it doesn't make sense to send exhibits back to the jury
23 that have never been referred to, never mentioned.
24             Do you recall that, Mr. Downing?
25             MR. DOWNING:  I do, Your Honor.

1  THE COURT: I did. But you're right, Mr. Andres, to
2 point out that I also made this other statement that you've
3 just recounted.
4  All right. Think about whether you can reduce it to
5 an hour and a half, and if you can't, tell me you can't.
6  So just to recapitulate, I'll give you an
7 opportunity -- or have we already told the jury that you have
8 no evidence? I don't think so.
9  MR. DOWNING: We have not.
10  THE COURT: So I'll give you an opportunity to say
11 that you rest in front of the jury, and then we won't need the
12 jury anymore today, and I'll excuse the jury. They won't get
13 their lunches for another 20 minutes, so I'll wait until after
14 they've had their lunch. And they'll come back at 9:30, at
15 which time we will begin with closing arguments and the Court's
16 final instruction.
17  In the interim, I will resolve the judicial notice
18 issue, and I will have an instructions conference, which will
19 be open to the public. And you should receive the package of
20 instructions, which you'll have to review and then to discuss
21 with each other and see if you can make suggestions that you
22 can agree to.
23  And so those will be to you probably in 30 or 40
24 minutes, and they'll be given to you here in open court by the
25 court security officer. Mr. Flood will give those to you or

2319

1   Ms. Pham.
2             Anything further at this point?
3             MR. ANDRES:  I think we just need to figure out a
4   time when the charge conference will start, Your Honor.
5             THE COURT:  Yes, I'll give that to you.  I'm going to
6   convene the jury sometime around 1:30, and so you can count on
7   2:00.
8             MR. ANDRES:  I just wonder if we might need a little
9   more time, particularly if --
10            THE COURT:  Well, if you do, ask for it.
11            MR. ANDRES:  Okay.  Thank you, Your Honor.
12            THE COURT:  But I think this will help focus your
13  mind.  You remember what Sam Johnson said about the man who was
14  about to be hanged:  It wonderfully concentrates the mind.
15  2:00 will wonderfully concentrate your mind on the
16  instructions.
17            MR. ANDRES:  Provided I'm not going to be hanged.
18                      (Laughter.)
19            THE COURT:  Well, the hanging is merely a metaphor.
20  What might happen to you could be worse.  Your imagination
21  controls that.
22                      (Laughter.)
23            MR. ANDRES:  As in not being hanged.
24            THE COURT:  All right.  Let's proceed in that
25  fashion.  We'll try to get this package of instructions to you

1  as soon as possible.  Anything further at this time?
2           MR. ANDRES:  No, thank you, Your Honor.
3           THE COURT:  And as soon as you do have that brief on
4  judicial notice, give it to Mr. Flood or Ms. Pham here so that
5  it can be promptly provided to the Court.
6           MR. ANDRES:  Yes, Your Honor.
7           THE COURT:  And if I need oral argument on that, I'll
8  ask for it.
9           MR. ANDRES:  Thank you, Your Honor.
10          THE COURT:  All right.  I thank counsel.  Let's
11 proceed.  We're in recess for now.
12          (Recess from 12:06 p.m., until 1:30 p.m.)
13
14                    CERTIFICATE OF THE REPORTER
15    I certify that the foregoing is a correct transcript of
16 the record of proceedings in the above-entitled matter.
17
18
19                                 _____/s/_____
                                        Anneliese J. Thomson
20
21
22
23
24
25