┌─────────────────────────────U.S. v. Manafort─────────────────────────────┐

1

```
 1                    UNITED STATES DISTRICT COURT
                  FOR THE EASTERN DISTRICT OF VIRGINIA
 2                        ALEXANDRIA DIVISION

 3   ------------------------------x
                                   :
 4   UNITED STATES OF AMERICA,      : Criminal Action No.
                                   : 1:18-CR-83
 5              versus             :
                                   : COURT CONFERENCE - REDACTED
 6   PAUL J. MANAFORT, JR.,        :
                                   : August 10, 2018
 7                    Defendant. : Volume IX - A.M.
     ------------------------------x

 8

          TRANSCRIPT OF JURY TRIAL - REDACTED COURT CONFERENCE
 9            BEFORE THE HONORABLE T.S. ELLIS, III
                  UNITED STATES DISTRICT JUDGE
10

     APPEARANCES:
11

     FOR THE GOVERNMENT:        UZO ASONYE, AUSA
12                              United States Attorney's Office
                                2100 Jamieson Avenue
13                              Alexandria, VA 22314
                                     and
14                              GREG ANDRES, SAUSA
                                BRANDON LANG VAN GRACK, SAUSA
15                              Special Counsel's Office
                                U.S. Department of Justice
16                              950 Pennsylvania Avenue NW
                                Washington, D.C. 20530
17

     FOR THE DEFENDANT:         JAY ROHIT NANAVATI, ESQ.
18                              BRIAN KETCHAM, ESQ.
                                Kostelanetz & Fink LLP
19                              601 New Jersey Avenue NW
                                Suite 620
20                              Washington, DC 20001
                                     and
21                              THOMAS E. ZEHNLE, ESQ.
                                Law Office of Thomas E. Zehnle
22                              601 New Jersey Avenue NW
                                Suite 620
23                              Washington, DC 20001
                                     and

24

25
```

─────────────────Tonia M. Harris OCR-USDC/EDVA 703-646-1438─────

─────────────────────────────U.S. v. Manafort─────────────────────────────

2

1   Appearances continued:

2                                 KEVIN DOWNING, ESQ.
                                  Law Office of Kevin Downing
                                  601 New Jersey Avenue NW
3                                 Suite 620
                                  Washington, DC 20001
4                                     and
                                  RICHARD WILLIAM WESTLING, ESQ.
5                                 Epstein, Becker, & Green, PC
                                  1227 25th Street NW
6                                 Washington, DC 20037

7   OFFICIAL COURT REPORTER:      TONIA M. HARRIS, RPR
                                  U.S. District Court, Ninth Floor
8                                 401 Courthouse Square
                                  Alexandria, VA 22314

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

U.S. v. Manafort

3

# P R O C E E D I N G S

1

2          (Court proceedings commenced at 9:47 a.m.)

3          (Jury not present.)

4          (Bench Conference.)

5          THE COURT:  Two matters.  Let me take up one matter

6  first.  I just received a copy of this motion for a curative

7  instruction.

8          I'll consider something perhaps in my general

9  instructions, but this motion is denied.

10          Now, with respect to the other information, I am

11  advised by the court security officer that a juror approached

12  him and asked if he would pass on to the Court a request that

13  jurors be instructed not to discuss or make comments about

14  this case, because he was -- heard from this juror that

15  another juror had said that Mr. Manafort has not presented any

16  evidence to prove his innocence.

17          Now, of course, I'll cover that in the instructions,

18  but this could be a serious matter.

19          What's the Government's view on what further steps I

20  should take, apart from an instruction at the end when I'll

21  emphasize that the defendant has no burden of proof to prove

22  his innocence?  Do you propose I do anything further?

23          MR. ANDRES:  Can I understand better the

24  circumstances?  So a juror approached one of the court

25  security officers --

U.S. v. Manafort

4

1          THE COURT:  The court security officer, Mr. Flood.

2          MR. ANDRES:  -- and said that he wanted the jurors

3    to be instructed that the other jurors be told that they can't

4    discuss the case.

5          THE COURT:  No.  I think the comment was he wanted

6    the jury to be told to refrain from comments about the case to

7    each other, which is the same thing.

8          MR. ANDRES:  Okay.

9          MR. WESTLING:  If I may, because he had overheard

10   another juror expressing the view that Mr. Manafort had not

11   presented any evidence to demonstrate his innocence --

12         THE COURT:  That's correct.  That's correct.

13         MR. ANDRES:  May I have a moment to confer, Your

14   Honor?

15         THE COURT:  You may.

16         MR. ZEHNLE:  May we, Your Honor?

17         THE COURT:  You may do the same.

18         MR. ZEHNLE:  Thank you.

19         (Discussion off the record.)

20         THE COURT:  Let me have counsel back for a moment,

21   please.  I'll let you confer in a moment.

22         I think what was reported to me was that the juror

23   said to the court security officer that he overheard another

24   juror say that the defendant has not presented any evidence as

25   of yet and he was unimpressed.  I think that's the essence of

———————U.S. v. Manafort———————

5

1   what he was told.  I don't think I said he wasn't impressed

2   before.  But the juror said --

3           MR. WESTLING:  Thank you, Your Honor.

4           THE COURT:  -- a comment, which may well have been

5   heard by other jurors.

6           He said the defendant has not presented any evidence

7   of his innocence and went on to say that he was unimpressed.

8           All right.  You need to confer?

9           MR. ANDRES:  Judge, we'll be satisfied if Your Honor

10  is going to give the instructions that the defendant doesn't

11  have any burden.

12          THE COURT:  At the end of the case?

13          MR. ANDRES:  Sure.

14          MR. WESTLING:  We would like to confer, Your Honor,

15  if that's okay.

16          THE COURT:  Yes, you may.

17          (A pause in the proceedings.)

18          THE COURT:  And you-all may return to your seats.

19          (Open court.)

20          I'm going to take a five-minute recess.  Court

21  stands in recess for five minutes.

22          (Recess.)

23          (Court resumes at 10:02 a.m.  Jury not present.)

24          THE COURT:  Counsel, come to the bench.

25          (Bench Conference.)

———————U.S. v. Manafort———————

6

1          THE COURT:  All right.  I have disclosed to counsel

2    here at the bench a request made by one juror to the court

3    security officer that the Court admonish the jurors not to

4    discuss the case, because this juror who reported it also

5    reported that a juror had made a comment that she was -- that

6    the defendant had not presented any evidence and she was

7    unimpressed.  The inference was that she had made up her mind,

8    perhaps.  Perhaps not.  We don't know.

9          Now, of course, one thing I can do is simply rely on

10   the curative instruction at the end where I tell jurors.

11         Another thing I can do is to voir dire the person

12   who made the report, have that person identify who made the

13   comment, and then voir dire the person who made the comment.

14         Now, voir diring the person who made the report is

15   easy.  Voir diring the person who is reported to have made

16   this comment is more delicate because I will have to ask

17   whether they've made up their mind and what did they mean by

18   that comment and so forth.

19         And then I ask the Government first whether -- what

20   they would propose to do, and I think the Government said, "We

21   want to talk about it."

22         And I -- and then you-all asked for an opportunity

23   to confer, which I did.

24         So let me return to the Government.  What's the

25   Government's view on what ought to occur now given this report

─────────────────────U.S. v. Manafort─────────────────────

7

1    from the court security officer?

2         MR. ANDRES:  Thank you, Your Honor.

3         The Government would request that the Court provide

4    an instruction now, as opposed to at the end of the case,

5    which covers the issues that you mentioned that no one should

6    have made up their mind.  They shouldn't discuss it by way of

7    types of instructions that Your Honor has given over the

8    course of the trial.

9         So we would ask that you do that now and we think

10   that would be sufficient.

11        THE COURT:  What's the defendant's proposal?

12        MR. WESTLING:  Your Honor, we would ask that the

13   Court make an inquiry by voir diring both the reporting juror

14   and the juror that's involved in the alleged conduct.  We

15   would note that every day the Court has asked the jury whether

16   they are doing anything that is inconsistent with the

17   instructions the Court has given every day.

18        This clearly is crossing the line if it, in fact,

19   happened.  It suggests someone who has left beside -- behind

20   the presumption of innocence the defendant is entitled to

21   until the evidence is all in.

22        So we think it's appropriate for the Court to

23   inquire.

24        THE COURT:  Well, I don't have any doubt that it's

25   appropriate.  The question is whether it's necessary.

U.S. v. Manafort

8

1        The Government says it isn't necessary, that the

2   instruction at the end is sufficient.

3        And are you saying that that isn't sufficient?  We

4   really don't have enough information?

5        MR. WESTLING:  We are saying that, Your Honor.  We

6   would further note that what is also missing from the

7   information we have is whether that was a statement made to

8   other jurors, how many other jurors.  We just can't have any

9   sense of what the taint may be without further inquiry.

10        THE COURT:  Well, I'm certainly not eager to make

11   any inquiry of jurors, but I think in the circumstances it's

12   appropriate.

13        What I propose to do is I will have the juror who is

14   identified, who made the request of the court security

15   officer, come forward and I will elicit from that juror

16   whether he or she made that request of the court security

17   officer and that she did or he did overhear this remark.

18        I will ask who that other person was who made the

19   remark and I will ask this juror whether they heard the remark

20   and how many people heard it.

21        And then, if necessary, which it may well be, I will

22   have the second juror who made the remark come forward.  And I

23   will ask that juror, he or she, whether she made the remark.

24   And if she did, I will confirm that she hasn't or he hasn't

25   made up his or her mind and that is prepared to hear the case

─────────────────U.S. v. Manafort─────────────────

1    with an open mind.

2            And in any event, I probably will instruct the jury

3    that they need to be cautious about making comments on the

4    evidence before they retire and deliberate.

5            So that I will do no matter what we do.  I think

6    what the defendant is entitled to is a more complete set of

7    facts because they may request that this particular juror be

8    excused.  And we'll see.  So that's what I intend to do.

9            Any legal objection to it on behalf of the

10   Government?

11           MR. ANDRES:  No, Your Honor.

12           MR. WESTLING:  No, Your Honor.

13           THE COURT:  Now, I also intend to do it at the bench

14   here, and I do that for obvious reasons.  I will point out,

15   however, that this transcript will ultimately be in the public

16   record so the newspapers will have it, and there's no reason

17   why they shouldn't.  But I don't want to create pandemonium in

18   the media today.

19           Any problem with that?

20           MR. ANDRES:  I just want to understand one thing,

21   Judge.

22           The juror that will come in, we'll all know that

23   person's number.  Is the person's name, is that public?  I'm

24   not familiar --

25           THE COURT:  No, I'm not going to make the name

─────────────────────────Tonia M. Harris OCR-USDC/EDVA 703-646-1438─
EASTERN DISTRICT OF VIRGINIA

───────U.S. v. Manafort───────

10

1    public at all.

2           MR. ANDRES:  And it's not otherwise public, it's

3    never been public throughout the process?

4           THE COURT:  Not to my knowledge.  But there -- you

5    were given a list of jurors.  I do not, at this second, know

6    precisely how that list was handled before I determined that

7    we would proceed on the basis of numbers and not names.

8           So I can't say for certain that there isn't somebody

9    that doesn't have a list.  I have a list.

10          But, Ms. Pham, I don't think the list is at all

11   public.

12          THE DEPUTY CLERK:  I don't think so, but I would

13   have to check with the jury clerk.

14          THE COURT:  That's the best answer.

15          MR. ANDRES:  Thank you, Your Honor.

16          THE COURT:  Anything further?

17          MR. WESTLING:  No, Your Honor.

18          THE COURT:  Mr. Flood.

19          (Court security officer approaches the bench.)

20          MR. WESTLING:  Your Honor, if we could raise one

21   other issue.  Obviously in the interest of not wanting this to

22   be a bigger issue than it needs to be and to allow Court's

23   inquiry, I'm a little concerned about the process taking place

24   in front of the gallery of the courtroom with jurors being

25   brought in and the optics that may create both for the juror

───Tonia M. Harris OCR-USDC/EDVA 703-646-1438───
EASTERN DISTRICT OF VIRGINIA

─────────────────────────U.S. v. Manafort─────────────────────────

11

1    and for everyone else.

2            THE COURT:  Well, that's understandable.

3            I prefer not to do it anywhere else but here.

4            MR. WESTLING:  Understood.

5            THE COURT:  I do have one other option.  I can

6    recess, and we can do it in a small library I have here.  We

7    can do it that way.  Any objection?

8            MR. ANDRES:  No, Your Honor.

9            MR. WESTLING:  We would prefer that.

10           THE COURT:  We will do that.  It violates one of my

11   rules, but that's what happens to rules when it's appropriate.

12           So we'll do it that way.

13           MR. WESTLING:  Thank you, Your Honor.

14           THE COURT:  So I'll recess the Court, and then

15   Mr. Flood will bring you in -- we'll go to the library here.

16   And following that, we'll get the juror who made the request

17   of you, I want him or her brought in.  Remember, only use

18   numbers.

19           THE CSO:  Okay.

20           THE COURT:  And then we may have more for you.

21           THE CSO:  During the recess, so I'm clear, the Court

22   says this is not being observed --

23           THE COURT:  This is the juror who came to you.

24           THE CSO:  Yes.

25           THE COURT:  And asked you to ask the Court, as I

─────────────────U.S. v. Manafort─────────────────
12

1    recall, to give an instruction that jurors should not make

2    comments about the case during a recess.

3              Is that right?

4              THE CSO:  In general, yes.  Back there during the --

5              THE COURT:  Back, right.

6              THE CSO:  Correct.

7              THE COURT:  And then this person who made the

8    request made the request or he made the request because a

9    comment had been made by another juror, who you don't know --

10             THE CSO:  Correct.

11             THE COURT:  -- another juror that the defendant had

12   presented no evidence to show his innocence and he or she was

13   unimpressed, therefore --

14             THE CSO:  In general, yes.

15             THE DEPUTY CLERK:  You don't need to clear the

16   courtroom.

17             THE CSO:  During the recess when we bring that juror

18   back here --

19             THE COURT:  Another logistical problem.

20             THE CSO:  -- out of the view of the gallery.

21             THE LAW CLERK:  If we use the judge's conference

22   room, we can bring --

23             THE COURT:  If we do what?

24             THE LAW CLERK:  If we use the judge's conference

25   room in this chambers, we can bring the juror through the side

─────U.S. v. Manafort─────
13

1  door.

2        THE COURT:  All right.  That's a good suggestion.

3        My permanent law clerk has suggested that we use the

4  conference room on this side, the judge's conference room.

5  And so we can do that.

6        (Discussion off the record.)

7        THE COURT:  So to recapitulate, I will take a

8  recess.  It doesn't matter what people do in the courtroom.

9  And then -- well, how am I going to get across?

10        THE LAW CLERK:  Recess to that door.

11        THE COURT:  I'll recess through that door as well.

12  That's a good idea.  And we'll go to a conference room.  It's

13  a large conference room.  And then once we're all in there,

14  Mr. Flood, I will ask you to go and collect the juror and

15  bring that juror into the conference room.

16        Can you do that without passing through the

17  courtroom?

18        THE CSO:  Absolutely.  I can take her through the

19  jury break room and come back in that way.

20        THE COURT:  All right.  And that's a single person,

21  and you are going to do it all by number.

22        THE CSO:  Yes.

23        THE COURT:  And then we will see from -- that person

24  will identify the juror who made the comment through this

25  juror.  We'll also identify through the first juror that the

1   comment was made, how many -- in what context was it made, how

2   many people were around and may have heard it.

3          And then we'll have the other person brought in.

4   And I will -- the chief -- the point there is I want to be --

5   ask her questions or him questions that -- to establish

6   whether or not he has made up his mind or still has an open

7   mind or has violated any of the Court's orders in that regard.

8          And I will probably give you each an opportunity to

9   suggest to me if I have not asked the question with sufficient

10  precision or scope so as to get the information that you-all

11  need to make your objections or suggestions.  All right?

12         We'll now go back on the record.  You can stay here.

13  I'll recess.  I'll go out that way and we'll proceed.

14         MR. WESTLING:  Thank you, Your Honor.

15         (Bench conference ends.)

16         (Open court.)

17         THE COURT:  All right.  I'm going to recess this

18  matter to consider an issue.  And I want to remind the ladies

19  and gentlemen here in the courtroom that when I recess, please

20  do not come forward and try to glimpse what's on counsel's

21  table.  That's happened.  I have had that reported to me.

22  Don't do that.  I won't permit it.  If it happens, and it's

23  confirmed, you'll be expelled from the courtroom.

24         You cannot look and see what's on counsel's tables

25  without their permission.  Of course, if they want to show you

─────────────U.S. v. Manafort─────────────
                                                        15

1   something, that's their situation.  All right.

2           The Court stands in recess.

3           It will be at least 15 minutes.  I'll have the court

4   security officer advise you if it should be longer.

5           (Recess.)

6           (Jury conference held at 10:17 a.m.)

7   (Present:  Judge, Law Clerk, Deputy Clerk, CSO, Court Reporter

8   and attorneys - Andres, Asonye, Van Grack, Downing, Zehnle,

9   and Westling.)

10          THE COURT:  Now, I told you that if you -- I would

11  give you an opportunity to tell me if there was something more

12  you thought I should ask.  I may or may not ask it, but I do

13  want to give you the opportunity to tell me.

14          For that, I will come down there and do it from down

15  there, because I don't want this person who's seated up

16  here -- and I don't want to shuffle that person in and out.

17          So let me repeat what I have in mind in the first

18  place.  I have in mind, having the juror come in.  The juror

19  will be identified only by number.  But, of course, you have

20  the numbers and the names.  I've asked the deputy clerk to

21  confirm that the list has been kept confidential and she has

22  confirmed that.  So these names are not out there.  And when

23  the person is brought in -- I'm not going to place the person

24  under oath -- I'm simply going to ask them some questions.

25  I'm going to ask this first person a question telling them

─U.S. v. Manafort─

16

1  that I understand that you have asked the court security

2  officer to request that the Court instruct the jury -- jurors

3  not to make comments about the case during recesses or at

4  other times.

5        And that you told the court security officer that

6  you were making that request because one juror had made the

7  remark that she was unimpressed or that the defendant has not

8  presented any evidence and she was unimpressed.

9        And I think I have that about right, Mr. Flood?

10       THE CSO:  Correct.

11       THE COURT:  And then I'll ask her:  Is that what you

12  heard?  Was it overheard?  Where did it happen?  To get a

13  sense of how broad was the audience of this statement.

14       And then, I'm not going to ask this person anything

15  about what the statement meant to this person.  I'd prefer to

16  start on that inquiry with the other person.  But I think

17  that's all I intend to ask the first person.

18       Any suggestions or requests?

19       MR. ASONYE:  One moment, Your Honor.

20       (A pause in the proceeding.)

21       MR. ASONYE:  Your Honor, the Government had a little

22  bit of a concern about sort of leading the witness as to

23  what --

24       THE COURT:  I'm going to ask the questions my way.

25  I'm sorry that you have that concern that I may lead them, but

─Tonia M. Harris OCR-USDC/EDVA 703-646-1438─

EASTERN DISTRICT OF VIRGINIA

—————U.S. v. Manafort—————

1   I'm perfectly capable of getting the information that I think

2   should be gotten.  And leading is not going to be a problem.

3   But, thank you.

4          All right.

5          MR. WESTLING:  Your Honor, just for the record, I

6   wanted to note that your court clerk did let us know Mr.

7   Manafort could be present here.

8          THE COURT:  Absolutely.

9          MR. WESTLING:  And we conferred with him and we

10  wanted to make on the record his waiver.

11         THE COURT:  All right.  He has the right to be

12  present at all proceedings against him, including bench

13  conference, but he can waive.  And I understand he's waived.

14         MR. WESTLING:  That's correct, Your Honor.  Thank

15  you.

16         THE COURT:  All right.  Mr. -- well, let me think a

17  minute here.  Yes, bring in the jury who made the report to

18  you, please.

19         (A pause in the proceedings.)

20         THE COURT:  Mr. Asonye, when you're appointed in the

21  future, you can ask the questions you want to ask.

22         MR. ASONYE:  I will -- I have no doubt I will never

23  sit in your position, Your Honor.

24         THE COURT:  I don't have that doubt.  I do have no

25  doubt that I will not be in this vale of tears.  I will be

─────────────U.S. v. Manafort─────────────

18

1   elsewhere or nowhere.

2           My mother said, she was 93 when she died, she told

3   me, she said, "You know there's no empirical evidence at all

4   of an afterlife."  But she said to me, "I'm prepared to be

5   pleasantly surprised."

6           (Juror ▮▮▮▮ present.)

7           THE COURT:  Yes, ma'am, would you come forward,

8   please and have a seat here?

9           This is number?

10          THE CSO:  ▮▮▮▮.

11          THE COURT:  Right here, if you would, please.  Yes,

12  ma'am.  We're not going to use your name.  We're going to

13  continue with that.

14          THE JUROR:  Okay.

15          THE COURT:  The reason that I've asked you to --

16  here, let me sit down too.

17          The reason I've asked you to come out is I have just

18  a couple of questions relating to a report you made to the

19  court security officer.

20          THE JUROR:  Yes, sir.

21          THE COURT:  I believe you asked the court security

22  officer to ask me to remind the jurors not to discuss this

23  case.

24          THE JUROR:  Yes, sir.

25          THE COURT:  And that -- and I think you made a

U.S. v. Manafort

19

1   statement that he remembers -- if it's wrong, you tell me --

2   he remembers that you said something like:  "A juror said that

3   the defendant hadn't presented any evidence and I'm

4   unimpressed."

5            THE JUROR:  Not exactly.

6            THE COURT:  Tell me exactly.

7            THE JUROR:  What was said was, "I don't believe that

8   the defense has --" let me word this properly "not has much of

9   a case, but that they don't have much to present.  Or, to

10   refute what's already occurred."

11            Does that make sense?

12            THE COURT:  So what did you understand this other

13   juror to say?  And I am going to ask you to identify, by

14   number, this other person.

15            THE JUROR:  Okay.  Basically my understanding was

16   that she had essentially made up her mind regarding the case

17   based on the information presented to her thus far.  And I did

18   remind her that we have not heard from -- what she said was,

19   "They didn't -- they couldn't have much to present."

20            And I reminded her that we have not heard from

21   everyone in this case.  That we need, of course, keep an open

22   mind.  It is our responsibility as a jury to hear everything

23   and then reach our own conclusion.

24            THE COURT:  Have you heard this juror or any other

25   juror make similar statements?

─U.S. v. Manafort─

20

1          THE JUROR:  Yes, sir.

2          THE COURT:  You have?

3          THE JUROR:  Yes, sir.

4          THE COURT:  More than one?

5          THE JUROR:  Yes, sir.  Not necessarily for one side

6   or the other, but just talking too much about the case.  Let's

7   put it that way.

8          THE COURT:  All right.  Who, by number, if you know,

9   if you know by name -- everyone here knows the name -- but

10  we're proceeding publically by number.

11         Who was the juror you overheard make the remark that

12  caused you to report or to ask the court security officer to

13  have the court reinstruct the jury?

14         THE JUROR:  I believe it's ███.

15         THE COURT:  ███ [sic.]

16         THE JUROR:  And we were alone in the room.  After

17  all was said and done, it was just she and I at that

18  particular point.

19         THE COURT:  I see.  So no one else heard that

20  particular --

21         THE JUROR:  Not that particular remark.

22         THE COURT:  Have other jurors -- have other jurors

23  made similar remarks?

24         THE JUROR:  Similar, but not as -- not as clear as

25  that was made to me.

U.S. v. Manafort

21

1        THE COURT:  By "clear," what do you mean?

2        THE JUROR:  She made it very clear that she didn't

3   feel that the defense really had anything to offer -- upcoming

4   in -- for the rest of the trial.  Like I said, I reminded her

5   that, "Well, we haven't heard from --" I said, "Of course,

6   they have a lot to present.  This is what a trial is all

7   about.  And it's our responsibility to listen to everybody and

8   then when we're in deliberations, then we decide to form our

9   judgments and use all the information given to us."

10       THE COURT:  All right.  Do I need to come down

11  there?

12       MR. WESTLING:  Yes, Your Honor.

13       (Juror ███ not present.)

14       (Discussion between the Court and counsel.)

15       MR. WESTLING:  Your Honor, I think our concern is

16  just that she --

17       Our concern is that she's indicated that this is not

18  an isolated issue with this one juror and we'd like the Court

19  to inquire further about those other conversations.

20       THE COURT:  All right.  Any problem with that?

21       MR. ANDRES:  No, Your Honor.

22       THE COURT:  I'll do it.

23       (Open conference.)

24       (Juror ███ present.)

25       THE COURT:  Just a bit more questioning.  I dislike

U.S. v. Manafort

22

1   having to refer to you as ▮▮▮ [sic].

2              THE JUROR:  That's all right.

3              THE DEPUTY CLERK:  ▮▮▮, Judge.

4              THE COURT:  ▮▮▮.

5              THE JUROR:  Yes, I'm ▮▮▮.

6              THE COURT:  Thank you, Ms. Pham.  What will I do

7   without her?  I know I would not do well.

8              I'm interested in whether there were other remarks

9   of similar nature at any time during the course of the case.

10             THE JUROR:  They're talking.  I mean they're just

11  making general remarks of, I mean -- I don't feel that anybody

12  is taking sides per se.  Someone mentioned, you know, well,

13  and this was a couple of days ago of how they thought that

14  the -- the defense was weak.  And, of course, I said, "Well,

15  you really can't say things like that.  I don't think that's

16  appropriate."  So -- but it's small things like that.  And --

17             THE COURT:  All right.

18             THE JUROR:  But --

19             THE COURT:  So there have been other comments --

20             THE JUROR:  Yes.

21             THE COURT:  -- about the evidence in the case?

22             THE JUROR:  Yes.

23             THE COURT:  And over what period of time have you

24  heard these comments?

25             The case has now gone on for seven, eight, nine

U.S. v. Manafort

23

1 days, is that right?  Let me think.  Four -- eight days.

2          THE DEPUTY CLERK:  Today is the ninth day.

3          THE COURT:  Ninth day.

4          THE JUROR:  I would say probably the last four or

5 five days.

6          THE COURT:  Has -- have the remarks come from one or

7 more jurors?

8          THE JUROR:  More.

9          THE COURT:  How many more?

10          THE JUROR:  I don't know.  Probably like three

11 total.

12          THE COURT:  All right.

13          THE JUROR:  I just can't tell you who they are,

14 because I'm --

15          THE COURT:  You're working with numbers too.

16          THE JUROR:  I'm working with numbers too.

17          THE COURT:  Can you identify by number or name the

18 person who made the comment that you've told me about today?

19          THE JUROR:  Yes.  Her name is ███████.

20          THE COURT:  Do you know a number?  You don't know

21 the number.

22          THE JUROR:  ██████, I believe.

23          THE DEPUTY CLERK:  You want me to confirm?

24          THE COURT:  Yes, confirm, please.

25          THE JUROR:  I did write it down this morning.  I

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

1  believe she's ███.

2        THE COURT:  Thank you.  She's just gone to confirm

3  that.

4        THE JUROR:  And I just -- you know the other ones

5  were just kind of like, you know, you shut them down and you

6  say to people, "We're not discussing the case.  Do not do

7  this.  We're not doing this."  And pretty much they listen.

8  They're -- they are okay.  They're fine.  They don't pursue

9  it.

10        And yesterday we had -- when we were in -- and

11  somebody brought up something political.  And I said, "We're

12  not doing this."  And they said, "Well, this is not a

13  political case."  I said, "It doesn't matter.  Just stop,

14  because I said so.  Because, we're not doing this.  It's not

15  appropriate."

16        But yesterday, I felt that crossed the line.  The

17  others, I felt were at least, you know, they hadn't made a

18  judgment per se.  But this -- this I felt like someone had

19  made a judgment.  And whether that's true or not, I don't

20  know.  But I felt compelled enough to speak with Mr. Flood

21  about it, because I felt that -- that was inappropriate.

22        THE COURT:  Thank you.  Thank you very much.  You --

23  Mr. Flood, we need to exchange people.  You may return to the

24  jury room.  But actually if you would just -- is there another

25  area over here perhaps?

U.S. v. Manafort

25

1        THE CSO:  If I bring the other jurors in, she'll be

2   seen.  There's some empty rooms up here.

3        THE COURT:  I don't think we need to ask any further

4   questions.  So this juror, ▮▮▮▮▮, good.  Well, they all

5   know the names.  But the names are not known outside of

6   anybody in this room.  I just felt more comfortable addressing

7   you by your name.

8        You may return now.  Mr. Flood will take you to the

9   jury room.

10        THE JUROR:  Can I just say one thing?

11        THE COURT:  Yes, you can.

12        THE JUROR:  I just felt it was my duty and my

13   responsibility as a juror.

14        THE COURT:  I think you have done your duty.

15        THE JUROR:  Okay.  I came to this jury with an open

16   mind and I intended to keep it and I -- and I want everybody

17   else to have the same truth and justice about them and to hear

18   everything and to -- we're suppose to just -- that's what

19   we're suppose to do.

20        THE COURT:  And, yes, and that's what you were

21   instructed to do.  And it's apparent to me that you have

22   followed the instruction.  Thank you.  You may return to the

23   jury room.  Thank you.

24        Mr. Flood, would you take her back and bring in

25   here, please, ▮▮▮▮?

U.S. v. Manafort

26

1          THE CSO:  Okay.  Thank you.

2          (Juror ▮ was dismissed.)

3          THE COURT:  Just a moment, Mr. Flood.  After you

4    take her back, come back in.

5          Now --

6          (Court reporter clarification. )

7          THE COURT:  -- let me tell you what I intend to ask

8    this juror.  I intend to ask this juror, I think it's fair to

9    tell her what -- that -- I think I'll begin by -- well, just a

10   moment.

11         (A pause in the proceedings.)

12         THE COURT:  I think I will begin by asking this

13   juror whether she has -- I think I'll ask her directly whether

14   she's made this statement that's been reported.  If she says,

15   yes, I will then ask her further questions to ascertain

16   whether she has made up her mind about the case, whether she

17   remains -- has an open mind, and I will ask her whether she

18   recalls that the defendant has the presumption of innocence

19   and can she give effect, which means that she is not to decide

20   the case until she's heard all of the evidence in the case.

21   And see what she says.  I think there's a possibility that she

22   may not have meant what she said or intended what she said.

23   There's a possibility she may deny that she said it.  And

24   we'll just have to see.

25         All right.  Bring ▮ in.

U.S. v. Manafort

27

1        MR. DOWNING:  Your Honor, one suggestion.  If you

2   get to the point where she admits to making the statement, ask

3   her why it was made.  I think that's relatively important for

4   us to understand.

5        THE COURT:  Yes, of course, I would ask that.

6        MR. DOWNING:  Thank you, Your Honor.

7        MR. ANDRES:  Thank you, Your Honor.  And, Your

8   Honor, I appreciate what Your Honor has just said.  I think it

9   does make sense to do it in a way Your Honor suggested that

10  we're not exposing the juror here as the person that's

11  reported that to the Court.  I think that's what Your Honor

12  had in mind.  And we would agree with that.

13       THE COURT:  All right.  I think we're of the same

14  mind.  But tell me more explicitly, Mr. Andres, what you mean.

15       MR. ANDRES:  What I mean is that I don't think it's

16  appropriate that you say to this juror, "Juror No. █ has told

17  me. . ."

18       THE COURT:  Of course not.

19       MR. ANDRES:  Okay.  Thank you.

20       THE COURT:  But tell me how you would suggest that

21  it be put to this person.

22       MR. ANDRES:  Right.  I think what Your Honor said

23  was right.  Have you made any comments?  And if you have, have

24  you made a decision?  Are you able to follow --

25       THE COURT:  Yes.  If I ask her whether she's made

U.S. v. Manafort

28

1  any comments about the case, I can predict with certainty --

2  certain as the Pope is Catholic, the next one -- that she's

3  going to say, "No."

4       At that point I'm going to say, well, it's --

5  there's some information, been provided to the Court, that you

6  made a statement along the following lines, is that true?

7       And if she says, "no," that presents us all with a

8  conundrum.  If she says, "yes," then I'll explore what she

9  meant by it.

10      MR. ANDRES:  That's perfectly acceptable to the

11 Government, Judge.  I think we're on the same page.  What I

12 was trying to avoid --

13      THE COURT:  Setting one juror against another.  I

14 quite agree with you.

15      MR. ANDRES:  Thank you.

16      THE COURT:  Whether I succeed in that or not -- well

17 I'll try.

18      THE CSO:  For the record, when I brought Juror No. ▮

19 back, when she went back into the jury room, she said, "Now,

20 they're all going to know it's me."

21      THE COURT:  That's right.  There are certain things

22 we can't help and that's one of them.  It probably could have

23 been done another way, but we didn't.  And I probably could

24 have recessed, including recessing the jurors, and done it

25 in -- in a less -- a more unobtrusive way.  But bring ▮ in,

─────────────U.S. v. Manafort─────────────
29

 1    please.

 2            THE CSO:  Okay.

 3            THE COURT:  The perfect cannot be the enemy of the

 4    acceptable, reasonable.

 5            MR. ANDRES:  I think we've proved that over and

 6    over.  I mean "we" the Government.

 7            THE COURT:  There was a moment there, Mr. Andres,

 8    where I didn't know what you meant.

 9            (Juror ███ present.)

10            THE COURT:  Have a seat, please.  I'm going to refer

11    to you as ██, if I can.

12            We all know your name, but I have made a point of

13    keeping these names under seal for your privacy.

14            And now, have you made -- made any comments that

15    would suggest that you've made up your mind in this case or --

16            THE JUROR:  No, I don't think so.

17            THE COURT:  Or any comments about the nature or

18    weight of the evidence?

19            THE JUROR:  No.

20            THE COURT:  The reason I ask is, that there is some

21    indication that -- coming from the court security officer --

22            THE JUROR:  That I made such a comment?

23            THE COURT:  No.  That the comment that you may have

24    made is that the defendant has not presented any evidence and

25    that you were unimpressed by the defendant's --

─Tonia M. Harris OCR-USDC/EDVA 703-646-1438─

U.S. v. Manafort

30

1          THE JUROR:  No, I just said it would be -- I think I

2  said, "It would be a tough job" is all I said.

3          THE COURT:  All right.  Tell me what you said.

4          THE JUROR:  I was just saying it would be tough to

5  be a defense lawyer.  That's all.

6          THE COURT:  All right.  And anything other than

7  that?

8          THE JUROR:  No.

9          THE COURT:  Now, at the beginning of the case, of

10  course, I told you to keep an open mind until the end of the

11  case.

12          THE JUROR:  I am trying to do that, sir.

13          THE COURT:  Are you succeeding?

14          THE JUROR:  Yes, I think so.

15          THE COURT:  Do you understand that the defendant has

16  the benefit of the presumption of innocence?

17          THE JUROR:  Yes, sir.

18          THE COURT:  And that applies to the defendant all

19  the way up until a jury makes a decision one way or the other?

20          THE JUROR:  Yes, sir.

21          THE COURT:  Are you -- do you feel you're able to

22  give effect to the presumption of innocence?

23          THE JUROR:  Yes, sir.

24          THE COURT:  All right.  Wait right here, if you

25  would, please.  And I will -- I'll be right back.

┌─────────────────────U.S. v. Manafort─────────────────┐

31

1          Do you have anything, a glass of water or anything;

2    would you like something?

3          THE JUROR:  No, I'm okay.

4          THE COURT:  You're sure?

5          THE JUROR:  Yeah.

6          THE COURT:  Because I want you to relax entirely.

7          THE JUROR:  Thank you, sir.

8          (Juror ███ not present.)

9          (Discussion between the Court and counsel.)

10          THE COURT:  It's entirely predictable that she has

11    essentially made only a statement about the difficulty of the

12    defendant proving the case.  I have not put to her the word --

13    the statement and the words that were reported.  I'm prepared

14    to do that.  But if she says, "no," and if she is prepared to

15    give effect to the presumption of innocence, and if she's

16    prepared to follow the instructions that I've already given, I

17    don't know what else can be done.

18          The Government feel otherwise?

19          MR. ANDRES:  No, Your Honor.

20          MR. WESTLING:  Your Honor, I think -- we would ask

21    Your Honor is that you ask the question --

22          THE COURT:  Ask what question?

23          MR. WESTLING:  That you ask the question you intend

24    to ask, which is to follow-up about the specific statement.

25          THE COURT:  Yes.

└──────────────Tonia M. Harris OCR-USDC/EDVA 703-646-1438─┘

EASTERN DISTRICT OF VIRGINIA

U.S. v. Manafort

32

1          MR. WESTLING:  And that in addition to those

2     instructions, we'd ask that you ask her if she understands

3     that the defendant has no burden whatsoever to put up any

4     evidence.  And that we would like to briefly confer with you

5     once those questions has been answered, if that's okay.

6          THE COURT:  Yes.  I'll consult with all of you about

7     that, because you want to hear the answers before you decide

8     whether anything else.

9          MR. WESTLING:  That's correct, Your Honor.

10          THE COURT:  All right.

11          (Open conference.)

12          (Juror ███████ present.)

13          THE COURT:  ████████████, I prefer to use your name.

14          THE JUROR:  Okay.  Thank you.

15          THE COURT:  In the remark that you made, you've told

16     me something about the difficulty that the defense has, am I

17     right?

18          THE JUROR:  Yes.

19          THE COURT:  Did you make a remark or in words like

20     this or close to it that "The defendant has not presented any

21     evidence and I am unimpressed"?

22          THE JUROR:  I don't recall, but I mean -- what I

23     meant was that it would be really hard to have to defend

24     against that.

25          THE COURT:  All right.  You understand that the

─────────U.S. v. Manafort─────────

33

1    defendant is not required to present any evidence to prove his

2    innocence?

3            THE JUROR:  Yes, sir.

4            THE COURT:  He has the right to do so, but he's not

5    required to do so.  Do you understand that?

6            THE JUROR:  Yes, sir.

7            THE COURT:  And do you understand that he has the

8    presumption of innocence that accompanies him?

9            In other words --

10           THE JUROR:  Yes.

11           THE COURT:  In other words, you cannot make up your

12   mind until all the evidence is in.

13           Are you prepared to do that?

14           THE JUROR:  Yes, sir.

15           ██████████████████████████.  I mean your job is

16   to wait until all the evidence is in to try to analyze it.

17           THE COURT:  All right.  All right.

18           All right.  Let me come down to see if there's

19   anything further.

20           (Juror ████ not present.)

21           (Discussion between the Court and counsel.)

22           THE COURT:  Just a moment.  Anything further?

23           MR. ANDRES:  No, Your Honor.

24           THE COURT:  Anything further from you?

25           MR. WESTLING:  The only follow-up we would ask, Your

─────Tonia M. Harris OCR-USDC/EDVA 703-646-1438─────

─U.S. v. Manafort─

34

 1   Honor, is that we inquire to the other juror about other

 2   comments being made in the room.  We ask that you inquire the

 3   same thing of her.

 4          THE COURT:  All right.  I can do that.  And then I'm

 5   going to be -- you can be thinking about it, because I intend

 6   either now or at the luncheon recess to remind the jurors

 7   forcefully that they can't make up their minds, they can't

 8   discuss it among themselves or with anyone and they should

 9   avoid any comments that could be misconstrued as -- well, they

10   should avoid any comments on the evidence, period.  And, yes?

11          MR. WESTLING:  Your Honor.  Just specifically

12   recalling what the other witness or juror had said was about

13   similar comments and ones that related to politics, we would

14   like that inquired.

15          (Open conference.)

16          (Juror ███████ present.)

17          THE COURT:  Yes, ████████████, let me assure you by

18   the way that the jury list is maintained confidential.  We're

19   only using numbers.  Nobody is going to find out who ██████ is.

20   I'm just using your name here, because I'm more comfortable

21   referring to you as a person, not a number.

22          THE JUROR:  I'm okay with numbers.

23          THE COURT:  Now, yes, you're a scientist.

24          Now, have there been other comments by other jurors

25   about the strength or weakness or anything about the evidence

─U.S. v. Manafort─

35

1   in the case that you're aware of?

2          THE JUROR:  Not that I'm aware of.

3          THE COURT:  Has there been any comment or any

4   statement by any member of the jury about the relationship

5   between this case and politics?

6          THE JUROR:  No, I don't believe so.

7          THE COURT:  All right.  Let me confirm.  You know

8   when I instructed you at the outset, I told you that the

9   defendant had the presumption of innocence and that he was

10  entitled to that and that the Government had the burden of

11  proving guilt beyond a reasonable doubt, and that the

12  defendant had no burden to prove his innocence.

13         Are you able to give effect to those instructions?

14         THE JUROR:  I believe so, sir.

15         THE COURT:  And I also instructed you not to discuss

16  the matter with anyone or allow anyone to discuss it with you.

17  Can you give effect to that?

18         THE JUROR:  Yes, sir, I did.

19         THE COURT:  And I want to confirm once again, have

20  you formed any opinion about this case?

21         THE JUROR:  No, sir.

22         THE COURT:  All right.  Thank you.  I think Mr.

23  Flood you can return ████ to the jury room.

24         What I'm going to do is to instruct the jury again

25  of the importance of refraining from discussing the matter

─Tonia M. Harris OCR-USDC/EDVA 703-646-1438─

EASTERN DISTRICT OF VIRGINIA

—U.S. v. Manafort—

36

1    among themselves or with anyone.  That includes fellow jurors.

2    I'm going to be very specific that they may not discuss it or

3    make comments or do anything of that sort and that they should

4    not make up -- they cannot make up their minds until they've

5    heard all the evidence and been instructed by the Court, and

6    they retire and deliberate on the verdict.  That's when you

7    make up your mind.

8           I'm going to tell all the jurors that.

9           THE JUROR:  Yes, sir.

10          THE COURT:  Now, you will be asked by other jurors

11   what happened during this conference.  Tell them that I've

12   told you that you can't discuss it with them.

13          THE JUROR:  Okay.

14          THE COURT:  That make it easier for you?

15          THE JUROR:  Yes, sir.

16          THE COURT:  Good.

17          All right.  Mr. Flood, you may return ▇▇▇ to the

18   jury room and we'll give you a few minutes for a soft drink.

19   There should be some here.  Thank you.

20          THE JUROR:  Thank you, sir.

21          (Juror ▇▇▇ dismissed.)

22          THE COURT:  All right.  Now, whether I do it at the

23   luncheon recess or whether I do it now is a matter of some

24   indifference to me.  I don't think it makes much difference

25   one way or the other.

─────U.S. v. Manafort─────

37

1    But I've sort of changed my view, I think I'll do it

2  -- if I do it now, it telegraphs to the audience what this was

3  all about.

4    The public will know, at some point, because I'm

5  going to -- I'm going to make this transcript a part of the

6  public record, but I'm going to require the deputy or the

7  court reporter not to transcribe it until we're done with the

8  case.  And then anybody can see it who wants to see it.

9    But for now, more grist for the wild media mill.  I

10  usually have a pretty thick skin about these things.  And I

11  never read the newspapers.  I gave up reading the newspapers

12  years ago.

13    But when I have friends and family members reporting

14  to me derogatory things said about me in the press, I'm -- I'm

15  not totally impervious to it because it's family members.

16    And so the less hoopla we make about this the

17  better.  In the end, I don't care.

18    All right.  Anything else to be accomplished in this

19  bench [sic] conference?

20    MR. ASONYE:  One quick question, Your Honor.

21    When the transcript is transcribed from this

22  session, there were a couple of times when the first name of

23  the juror was used, will there be --

24    THE COURT:  Yes.  Thank you for reminding me.  That

25  should be blacked out.  Entirely.  And that's my mistake for

─────U.S. v. Manafort─────

38

1    using it.  Yes, sir.

2            MR. DOWNING:  One other issue.  We would like to

3    confer with our client to tell them what has transpired.

4            THE COURT:  Of course.

5            MR. DOWNING:  And, Your Honor, we would also like a

6    little time to talk amongst ourselves as to whether or not we

7    want to brief something to the Court.  And I think it would be

8    a really good idea if we were to have a little time, because

9    we don't want to unnecessarily delay any of this.  But, we

10   also I think there's a -- it's a pretty serious issue when one

11   juror is saying that these conversations are going on and the

12   other juror said none of them are going on.  And that -- that

13   raises a big concern for us, but we'd like a little time to

14   think about it instead of just blurting out argument.

15           THE COURT:  It's 11 o'clock.  We may not finish the

16   Government's case today.  No fault of the Government.

17           But we may not now finish the Government's case.  We

18   weren't going to finish the case anyway.

19           What would you suggest?

20           MR. DOWNING:  I suggest if we can take a recess now

21   and reconvene when we would ordinarily reconvene at 1:30, and

22   I think we'll be in a very good position to tell the Court

23   what it is we think should or doesn't need to happen.

24           THE COURT:  Mr. Andres.

25           MR. ANDRES:  I don't want to interfere with the

─U.S. v. Manafort─

39

1   defense's request.  I'm happy to put on evidence now.  We have

2   two witnesses.  I think that we have two witnesses that will

3   take two hours tops.  Obviously only on direct.  We have two

4   other witnesses that will take 15 minutes each tops.  So we

5   have about -- we have about two-and-a-half hours if.  If we

6   could at least get through all that evidence today, we

7   wouldn't have to have these two witnesses that are from out of

8   town and wouldn't have to stay.  I would like to do that at

9   some point.  I don't care what the order is.

10          The only other point I would make, Your Honor, is --

11          THE COURT:  Well, if you're forecasting two hours

12  and 30 minutes, is what you're forecasting, that can easily be

13  accomplished in the afternoon session.

14          MR. ANDRES:  That's just direct, but I agree.

15          THE COURT:  There hasn't been lengthy

16  cross-examination.

17          MR. ANDRES:  No and --

18          THE COURT:  And I'm sure you're going to make an

19  effort, as I always encourage you to do, not to put on

20  cumulative evidence.  Now, of course, reasonable people might

21  differ as to whether something is cumulative.  I haven't heard

22  any objections really very much.  I have heard some cumulative

23  evidence.  But I think you are making an effort not to present

24  cumulative evidence.  Whether you've succeeded perfectly or

25  not is open to argument.

─────U.S. v. Manafort─────

40

1          But I ask you to focus hard on that in this

2    afternoon's session.

3          All right.  So what I'll do is recess now to return

4    at 1:30 and then I will hear at 1:30 -- you're not going to

5    present something in writing by 1:30.  The Government might,

6    but you-all don't have that facility.

7          MR. DOWNING:  We're just going to aim to present

8    something, Your Honor.  But we take it as a serious issue.

9          THE COURT:  Of course you do.

10          MR. DOWNING:  So whatever we come back with, we're

11    going to try to have a very cogent discussion with the Court.

12    So we are prepared to do that.

13          THE COURT:  All right.  And then you'll be prepared,

14    Mr. Andres, to put on your evidence in the most expeditious

15    way.

16          MR. ANDRES:  Your Honor, just one -- and we can talk

17    to our colleagues about this.  But if there are going to be

18    discussions or issues about the specifics of what these jurors

19    said, which I understand Mr. Downing --

20          THE COURT:  We're going to do that in here.

21          MR. ANDRES:  No, I understand.  My only point is if

22    Your Honor would consider having the transcript made, but

23    having it sealed, because again I think to the extent there

24    are issues of what they said, we would like to have a record

25    available to us at some point as opposed to us all relying on

─────U.S. v. Manafort─────

41

1   a recollection.

2          THE COURT:  Any problem with that?  I mean the

3   only -- my only goal was not to have a side circus while the

4   case is going on.  And you-all agree with that I'm sure.

5          MR. ANDRES:  Absolutely.

6          MR. DOWNING:  We do.

7          THE COURT:  But I think you-all would also agree

8   that it must ultimately be in the public record and all I'm

9   doing is delaying that while we get through this thing.

10          And Mr. Andres request that we at least put it under

11   seal and at least give the parties transcripts of it, I don't

12   have a problem with.

13          MR. DOWNING:  We agree, Your Honor.

14          THE COURT:  We will do that then, Tonia.  It will be

15   under seal in the further order of the Court.

16          Anything further?  I'm going to go in.  I'm going

17   to -- we're going to call the case again and I'll -- and then

18   I'll tell people we're recessing until 1:30 and I suppose I

19   can tell them truthfully that I need the time to consider --

20   well, I don't think I need to say anything but I am

21   considering your instructions now.  I think I'll say nothing.

22          Thank you.

23          MR. DOWNING:  Thank you, Your Honor.

24          THE COURT:  Be back in this room at 1 -- make it

25   1:30 I'll recess until.  I don't think it will take long for

─────────────── U.S. v. Manafort ───────────────

42

1    me to hear what you have to say.  So we'll -- we'll recess

2    until 1:45.  We'll recess here until 1:30 and come back here

3    at 1:30.  All right.  Thank you.

4             THE CSO:  Just one logistical thing.  So at 12:30

5    the jurors' lunches will be brought in right outside here.

6    They'll be having lunch right out here.

7             And they usually have from 12:30 to --

8             THE COURT:  All right.  Let's change the venue for

9    this to my little library in chambers.

10            But, there's a death penalty if you go beyond that

11   area.  In 31 years I don't allow counsel in my chambers.  It's

12   irrational.  I admit that.

13            The reason for it is that I practiced law for many

14   years.  I did what you-all did.

15            And I was victimized and again and again and again

16   by chamber practice.  I grew to hate it.  And I bear grudges.

17   So I'm not giving that one up.

18            Now, when the case is over and you want to come and

19   say what a pleasure it was and how much fun you had, by all

20   means, come and say hello to me.

21            MR. ASONYE:  Are we allowed?  I understood we were

22   not allowed to do that.  It would be a pleasure to visit.

23            THE COURT:  When you leave the U.S. Attorney's

24   office.  All right.  Thank you.

25            (Court resumes in open court.)

─U.S. v. Manafort─

43

1          THE COURT:  All right.  Bring the jury in, please.

2          (Jury present.)

3          THE COURT:  All right.  You may be seated.

4          Well, a belated good morning to you ladies and

5  gentlemen.  We will begin as always with the calling of the

6  roll, but I'm going to tell you now that I'm going to give you

7  the usual instructions and then recess the matter, because I

8  have some matters that I must attend to, but we are going to

9  continue with the evidence in this case in the afternoon and I

10  expect that we will make progress in that regard.

11          All right.  Ms. Pham.

12          THE DEPUTY CLERK:  Ladies and gentlemen, as I call

13  your number, please answer "present" or "here."

14          Juror 00008.

15          THE JUROR:  Present.

16          THE DEPUTY CLERK:  Juror 0037.

17          THE JUROR:  Here.

18          THE DEPUTY CLERK:  Juror 0276.

19          THE JUROR:  Present.

20          THE DEPUTY CLERK:  Juror 0017.

21          THE JUROR:  Present.

22          THE DEPUTY CLERK:  Juror 0145.

23          THE JUROR:  Present.

24          THE DEPUTY CLERK:  Juror 0115.

25          THE JUROR:  Present.

U.S. v. Manafort

44

1          THE DEPUTY CLERK:  Juror 0082.

2          THE JUROR:  Present.

3          THE DEPUTY CLERK:  Juror 0009.

4          THE JUROR:  Present.

5          THE DEPUTY CLERK:  Juror 0299.

6          THE JUROR:  Present.

7          THE DEPUTY CLERK:  Juror 0091.

8          THE JUROR:  Present.

9          THE DEPUTY CLERK:  Juror 0302.

10          THE JUROR:  Present.

11          THE DEPUTY CLERK:  Juror 0060.

12          THE JUROR:  Present.

13          THE DEPUTY CLERK:  Juror 0296.

14          THE JUROR:  Present.

15          THE DEPUTY CLERK:  Juror 0054.

16          THE JUROR:  Present.

17          THE DEPUTY CLERK:  Juror 0127.

18          THE JUROR:  Present.

19          THE DEPUTY CLERK:  And Juror 0133.

20          THE JUROR:  Present.

21          THE DEPUTY CLERK:  Thank you.

22          THE COURT:  All right.  Again, good morning, ladies

23  and gentlemen, and thank you for your patience.  I assure you

24  this is all necessary.

25          Now, I want to confirm once again that you have been

─────U.S. v. Manafort─────

45

1   able to adhere to the Court's instructions to refrain from

2   discussing the matter with anyone or undertaking any

3   investigation?

4            THE JURY PANEL:  Yes, Your Honor.

5            THE COURT:  Good.  Thank you.

6            Now, let me underscore for a minute that it's very

7   important that you not discuss the case with anyone.  Among

8   yourselves or with anyone else.

9            It's also important, as I instructed you at the

10  outset, to keep an open mind until all the evidence is in.  I

11  also instructed you, as you recall, that the defendant has the

12  presumption of innocence and is not required to present any

13  evidence or to prove his innocence.  That's the Government's

14  burden to prove guilt beyond a reasonable doubt.

15           So keep an open mind until all the evidence is in

16  and you've heard my instructions.  And when you retire to the

17  jury room, that's when, of course, you are required to make up

18  your mind.  If you -- and to reach agreement, if you can do so

19  without violence to your individual judgment.

20           Now, what I'm going to do is take the luncheon

21  recess early.  And I'm going to do that because I have a lot

22  of other matters that have been -- I don't know if you-all

23  realized it or not, but I had two other matters this morning

24  of some significance.  A sentencing in another matter that was

25  under seal.

─U.S. v. Manafort─

46

1          This case requires all of us to focus sharply on one

2     case.  And I do.  But I don't forget that I have another 200,

3     300 cases that I have to keep moving.  So we will reconvene at

4     1:45.

5          So you don't even have to eat your lunch here if you

6     don't wish to.  But what you must do is to refrain from

7     discussing the case among yourselves or with anyone.  Don't

8     make or listen to any comments about the case at all.

9          Thank you for your continued adherence to the

10    Court's instructions and to your careful and close attention

11    to the evidence.

12          You may follow Mr. Flood out.

13          THE DEPUTY CLERK:  All rise.

14          (Jury dismissed.)

15          THE COURT:  Okay.  Anything else?  Court stands in

16    recess.

17          (Lunch recess at 11:12 a.m.)

18          (Jury conference resumes in chambers at 1:36 p.m.)

19    (Present:  Judge, Law Clerk, Deputy Clerk, CSO, Court Reporter

20    and attorneys - Andres, Asonye, Van Grack, Downing, Zehnle,

21    and Westling.)

22          (The judge enters the conference room.)

23          THE COURT:  Stay seated.

24          Yes, sir.  We're gathered here to add anything you

25    want to add on behalf of the defendant after hearing what

47

1    you've heard.

2         MR. WESTLING:  That's correct, Your Honor.  And

3    we've had a chance to talk amongst ourselves and talk with our

4    client.  Our concern, at this point, is that Juror No. ███

5    expressed a number of comments about not just the comments

6    made by the juror that we brought in to interview, but other

7    discussions that have been going on over the last three or

8    four days.  And our concern about those is that they seem to

9    be of a similar, although not qualitatively the same context,

10   and we believe it's appropriate to inquire of additional

11   jurors what has been happening in that regard.  To the extent

12   there are conversations, which have taken place that are in

13   contradiction -- contradiction of the Court's instructions,

14   and despite the fact that the jurors each day come in and tell

15   the Court they have not done anything in violation of those

16   instructions.  It's serious concerns for Mr. Manafort and his

17   right to a fair trial and we think additional inquiry is

18   required in order for us to better understand what's been

19   happening in this jury room.

20        THE COURT:  What kind of additional inquiry do you

21   propose?

22        MR. WESTLING:  Well, Your Honor, I believe that

23   Juror ███ indicated that there were some other jurors that

24   had been engaged in, what I would call, similar conduct.  I

25   don't know a better way to put it.  And so I -- the most

─────────U.S. v. Manafort─────────

48

1   narrow way to address that would be to try to figure out who

2   those people are and inquire of those specific jurors.

3           THE COURT:  Well, that's not a welcomed suggestion,

4   because that involves kind of detective work that I don't

5   think is appropriate or necessary.  But, I do take your point

6   that there was a statement today that we heard, I've forgotten

7   from which of the two that there had been other comments.

8           How do you propose that I -- that I pursue that to

9   get the information that you think may be there?

10          MR. WESTLING:  Well, I would propose, Your Honor

11  that we would probably bring Juror ███ back in and ask for

12  some additional details.  She may or may not have that.  I

13  can't answer that.  But it seems to me that --

14          THE COURT:  Why would she be the one to bring back?

15          MR. WESTLING:  Well, I only think that she was the

16  one who reported it in the first place.

17          THE COURT:  Oh, I'm getting them mixed up.  You mean

18  the first person?

19          MR. WESTLING:  The first person, Your Honor,

20  correct.  And so just to determine whether she can provide any

21  additional detail about those involved and about the comments

22  that were made.  And it might be, Your Honor, that based on

23  those additional questions there's no further inquiry.  I

24  can't answer that, but I think we --

25          THE COURT:  All right.  Suppose I do that and

─────────U.S. v. Manafort─────────

49

1    suppose I have her brought in and I ask her:  Apart from the

2    comment that prompted you to make the request to the court

3    security officer, have you heard any other comments on the

4    evidence in this case from any other juror?  And she says,

5    "no," we're done, aren't we?

6            MR. WESTLING:  I think that's right, Your Honor.

7            THE COURT:  And what we've heard thus far.

8            Let me ask you, you're not moving for a mistrial?

9            MR. WESTLING:  Well, I think at this point, Your

10   Honor, we'd like to have more information before we made that

11   decision.  If that information was not forthcoming, I suspect

12   that we --

13           THE COURT:  Well, you have to suit yourself about

14   that.  I would call a mistrial if I felt one was necessary.

15           MR. WESTLING:  Understood.

16           THE COURT:  So you may draw whatever inference you

17   want from that.  I certainly think it is necessary to remind

18   jurors of their obligation to give the defendant the benefit

19   of the presumption of innocence, to refrain from discussing

20   the matter among themselves or with anyone and to refrain from

21   making up their mind until they have heard the entire case.

22   Whatever that may be.

23           And that's about -- I've already done most of that.

24   That's about where I am.  I'm trying to think, you could help

25   me just a little bit more.  I'm reluctant to undertake a --

─────────────────────────── U.S. v. Manafort ───────────────────────────

50

1    you'll pardon this, I can't resist it -- a special counsel's

2    investigation of the --

3            MR. WESTLING:  Understood.

4            THE COURT:  -- of the jury's behavior in terms of

5    making comments.  I don't think that's really necessary or

6    appropriate.  But I should resist those temptations, but --

7            MR. ASONYE:  We're outside the presence of the jury,

8    Your Honor.

9            MR. DOWNING:  Your Honor, might we confer.  I don't

10   want to violate your two lawyers --

11           THE COURT:  Yes.

12           (A pause in the proceedings.)

13           THE COURT:  Yes, sir.

14           MR. WESTLING:  Your Honor, I guess to focus a little

15   more.  What we had taken down in our notes was that she

16   indicated that other jurors have made similar, but not as

17   clear, comments as Juror ███.

18           The jurors have been talking about the case, which

19   they're not suppose to be doing.  And they're not taking sides

20   per se, but there have been generalized comments indicating

21   that the defense was weak.

22           There have been other comments over the last four or

23   five days and those remarks have come from around three other

24   jurors.  I don't know whether she can identify those folks by

25   number, but I suspect she knows who they are.  And based on

─U.S. v. Manafort─

1    all of that, Your Honor, we think it's really important to

2    better understand what's happening, because if there are

3    people who have already reached an opinion who have made

4    comments about what the evidence is amounting to at this

5    stage, they have clearly violated the Court's orders.  And I

6    don't think a curative instruction can necessarily solve that

7    problem.

8              THE COURT:  Well, that's for you to decide what your

9    position is.

10             MR. WESTLING:  Understood.

11             THE COURT:  I'm satisfied at the moment that we're

12   all right.  But I do think your request to seek additional

13   information, I should consider carefully.

14             But let me hear what the Government has to say about

15   it.

16             MR. ANDRES:  Your Honor, it's the Government's

17   position that these issues can be resolved by additional

18   instructions to the entire jury whether that's right now,

19   which we don't have an objection to.

20             THE COURT:  I did it right before lunch.

21             MR. ANDRES:  Understood.  And I -- two things:  One,

22   the first juror seemed already somewhat startled by the fact

23   that she, in her comments to the court security officer, that

24   now everybody is going to know that it's her.  Which is, I

25   don't want to cause any other pressure on her.

─U.S. v. Manafort─

 1          The second thing is that, at least as it related to

 2   the second juror that came in, the comments or the concerns

 3   that the first juror had didn't really bear out.  That is to

 4   say that she didn't -- whether she admitted to what she said

 5   or not.  She clearly said that she hadn't formed an opinion

 6   and that she was going to follow the Court's instructions and

 7   the like.

 8          So, the Government is satisfied with the process

 9   that Your Honor has conducted so far and it's -- it would be

10   our position that we shouldn't do any further inquiry of the

11   jury.

12          THE COURT:  All right.  But there was -- there was

13   some statement by the second juror that there had been other

14   comments.

15          MR. ASONYE:  The first juror, Your Honor.

16          THE COURT:  The first juror, I'm sorry, you're

17   correct.  The first juror.

18          And the only thing I'm focussed on right now is:  Do

19   those comments warrant any further inquiry?  That's what --

20   what the defense is asking for.  That's all I'm interested in

21   at the moment.

22          Do you see any reason why I shouldn't do that?

23          MR. ANDRES:  I don't think you should do it for the

24   reason Your Honor suggested, which is we then have to

25   investigate who those other jurors are.  It wasn't clear that

─U.S. v. Manafort─

53

1    the -- that the first juror knew who they were.

2              And what she also said was that the comments were

3    not of the same ilk, if you will, of Juror ██ that she clearly

4    identified Juror ██ as the one who had made the comment that

5    was most concerning to her.  And even that, haven spoken to

6    her, doesn't appear to rise to the level of a concern or

7    shouldn't.  So, it's the Government's position there's really

8    not a basis to do this inquiry and that Your Honor's

9    instruction prior to lunch was sufficient to -- to satisfy

10   that.

11             I will say that this other issue about whether the

12   jurors are on a wholesale violating the Court's order.  I

13   think what Your Honor said, I may be wrong, but as I hear it,

14   at the end of the day Your Honor, it talks about whether the

15   jurors are talking to other people.  That is, their family and

16   the instructions not to deal with anyone and forget about the

17   case.  I don't think that each day when they come in they --

18   they've complied with each -- it's not my understanding that

19   Your Honor is asking whether they've complied with each and

20   every instruction that the Court gave, but rather whether

21   overnight they've not talked about the case with anyone

22   outside the courthouse.

23             THE COURT:  I instruct them that they're not to

24   discuss the matter with anyone, put it out of their minds, and

25   that they're not to undertake any investigation.  And I think

—————U.S. v. Manafort—————
54

1    clearly that means they're not to talk to anybody.

2          I don't -- I'm not sure that I say on each occasion

3    you can't talk among yourselves or with anyone.  I do that

4    during the day because they're together.  And when they appear

5    the next morning, they all confirm, so far unanimously, that

6    they have adhered to that instruction.

7          Do you see a problem with that?

8          MR. ANDRES:  Not at all.

9          THE COURT:  Let's focus on what's before me, which

10   is whether one juror, the first one who came, said that there

11   had been other comments, whether I should pursue that or not

12   by calling that juror back and asking her what other comments.

13   I think at the time I may have asked something close to that.

14         Tonia, can you find that?

15         (A pause in the proceedings.)

16         THE COURT:  All right.

17         (As read): "I think you made a statement that he

18   remembers --

19         "He" referring to the court security officer.

20         (As read):  "If it's wrong, you tell me.  He

21   remembers that you said something like:  'A juror said that

22   the defendant hadn't presented any evidence and I'm

23   unimpressed.'"

24         The juror then says, "Not exactly."

25         And then I say, "Tell me exactly."

U.S. v. Manafort

1     The juror answered (as read):  "What was said was,

2 'I don't believe that the defense has' -- let me word this

3 properly -- not has much of a case, but that they don't have

4 much to present or to refute what's already occurred.'  Does

5 that make sense?"

6     Then I ask (as read): "So what did you understand

7 this other juror to say?  And I'm going to ask you to identify

8 by number this other juror.

9     "Okay.  Basically my understanding was that she had

10 essentially made up her mind regarding the case based on the

11 information presented to her thus far and I did remind her

12 that we have not heard from or what she said was they

13 didn't -- they couldn't have much to present.  And I reminded

14 her that we have not heard from everyone in this case and that

15 we needed, of course, to keep an open mind."

16     We needed, of course, keep an open mind.  I'm sure

17 she meant the infinitive "to keep an open mind."

18     (As read):  "It is our responsibility as a jury to

19 hear everything and then reach our conclusion."

20     And then I said (as read):  "Have you heard this

21 juror or any other jurors make similar statements?

22     "Yes, sir.

23     "You have?

24     "Yes, sir.

25     "More than one?

─U.S. v. Manafort─

56

1      "Yes, sir.  Not necessarily for one side or the

2  other, but just talking too much about the case.  Let's put it

3  that way.

4      "All right.  Who, by number, if you know, if you

5  know by name, everyone here knows the name, but we're

6  proceeding publically by number.

7      Who was the juror you overheard make the remark that

8  caused you to report or to ask the court security officer to

9  have the Court reinstruct the jury?

10      "That was ██████."

11      And then a little further down, and he [sic] says:

12      (As read): "We were alone in the room.  So no one

13  else heard that remark."

14      And she says (as read):  "No one else heard. . . Not

15  that particular remark.

16      "Have other jurors made similar remarks?

17      "ANSWER: Similar, but not as -- not as clear as that

18  was made to me.

19      "By "clear" what do you mean?

20      "She. . ."

21      Meaning the one that did make the statement.

22      (As read): ". . . made it very clear that she didn't

23  feel the defense really had anything to offer upcoming for the

24  rest of the trial.  Like I said, I reminded her that, 'Well,

25  we haven't heard from --' I said, 'Of course they have a lot

─────────────────U.S. v. Manafort─────────────────

57

1  to present.  This is what a trial is all about.  And it's our

2  responsibility to listen to everybody.  And then, when we're

3  in deliberations then we decide to form our judgments and use

4  all the information given to us.'"

5          That seems to be all.

6          MR. WESTLING:  Your Honor, I think after you

7  conferred with counsel you did ask her some additional

8  questions about the other comments.

9          THE COURT:  All right.  Yes.  That's correct.

10         (As read): "I'm interested in whether there were

11 other remarks of similar nature at any time during the course

12 of the case?

13         "JUROR:  They're talking.  I mean they're just

14 making general remarks of -- I mean I don't feel anybody -- I

15 don't feel that anybody is taking sides per se.  Some

16 mentioned, you know, well, and this was a couple of days ago,

17 how they thought that the defense was weak.  And, of course, I

18 said, 'Well, you really can't say things like that.  I don't

19 think that's appropriate.' So it's small things like that.

20         "So there have been other comments?

21         "Yes.

22         "About the evidence in the case?

23         "Yes."

24         And she then said that would be over the last four

25 or five days.  And she said that -- I asked her, "How many

U.S. v. Manafort

58

1    jurors?"  And she said, "Like three total."

2              I think that's it.

3              MR. WESTLING:  Your Honor, I think our request that

4    we find out who those three are and find out what's been said.

5              MR. ANDRES:  We don't think that's necessary, Judge,

6    in light of the comments.

7              (A pause in the proceedings.)

8              THE COURT:  I think what I might do is to have this

9    juror return, to remind her what she said, namely that the

10   three jurors have made other comments about the evidence, and

11   ask her to tell me what those other comments have been.  And

12   that's it.  That will give you information.  You can do as you

13   wish on the basis of that.  Of course, I have the power,

14   indeed the responsibility, to declare a mistrial if I believe

15   there is a fundamental flaw in the proceedings.

16             I don't.

17             But I'm prepared to be educated to the contrary if

18   you -- if this further inquiry discloses any facts or if you

19   think I'm wrong.

20             I'm inclined to have that one juror, the first one

21   back and to ask her about these three others what she

22   remembers their saying.

23             Now, this isn't going to be an interrogation where I

24   put the thumb screwers to her and water board her or anything

25   like that.  I'm going to ask her gently about these other

─U.S. v. Manafort─

59

1    three she said she heard and what, if anything, she can

2    remember they said.  And I think we will proceed on that

3    basis.

4              MR. VAN GRACK:  Your Honor, may I violate your rule?

5              THE COURT:  Yes.

6              MR. VAN GRACK:  I had a recollection that after she

7    said "three total" she may have provided an additional detail

8    or two.  And I wanted to inquire if you could just review

9    after she says "three total."

10             THE COURT:  Yes, I can do that.

11             (A pause in the proceedings.)

12             (As read):  "Can you identify by number the name of

13   the person who made the comment that you told me about today?

14             "Yes.  Her name is. . ."

15             And you're getting rid of that number entirely.

16             (Court reporter clarification.)

17             THE COURT:  (As read):  "Do you know a number?

18             "████, I believe."

19             The juror goes on to say:  (As read):  "And I just,

20   you know, the other ones. . ."

21             Which is what you were asking about.

22             (As read):  "The other ones were just like or were

23   just kind of like, you know, shut them down and you say to

24   people we're not discussing the case.  Do not do this.  We're

25   not doing this.  And pretty much they listened.  They're okay.

─Tonia M. Harris OCR-USDC/EDVA 703-646-1438─

EASTERN DISTRICT OF VIRGINIA

60

1   They're fine.  They don't pursue it.  And yesterday we had --

2   when we were in and somebody brought up something political,

3   and I said 'we're not doing this.'

4           "And they said, 'Well this is not a political case.'

5           "I said, it doesn't matter.  Just stop, because I

6   said so.  We're not doing this.  It's not appropriate.

7           "But yesterday I felt that crossed the line.  The

8   others I felt were at least, you know, they hadn't made a

9   judgment per se, but this. . ."

10          And she's now talking about the comment that

11  prompted all of this.

12          (As read):  "But this, this I felt like someone had

13  made a judgment and whether that's true or not I don't know,

14  but I felt compelled enough to speak with Mr. Flood about it

15  because I felt that -- that was inappropriate."

16          I think that's what you're recalling.

17          MR. VAN GRACK:  I think that's correct, Your Honor.

18          THE COURT:  All right.  Did you want --

19          MR. VAN GRACK:  I just wanted you to have all the

20  information in terms of what that juror said before you make

21  the decision as to whether to call that juror back.  That's

22  all.

23          THE COURT:  Well, does that -- how do you think that

24  reflects on whether I should call the juror back?

25          MR. VAN GRACK:  Yes, Your Honor, two things.  I also

─U.S. v. Manafort─

61

1  thought I had a recollection that the individual wasn't able

2  to identify those jurors by number.

3             THE COURT:  That's right.

4             MR. VAN GRACK:  And so I thought that in part of her

5  answer to you she had indicated I know juror ████, but she

6  didn't have a specific recollection and if she had said that.

7             THE COURT:  So what you're saying is don't call her

8  back because it's futile?

9             MR. VAN GRACK:  She's already answered your

10 question, Your Honor.

11            THE COURT:  Well, she hasn't, but you're suggesting

12 that if I ask her -- ask her further questions, it will be

13 futile?

14            MR. VAN GRACK:  Yes, Your Honor.

15            THE COURT:  What's your view?

16            MR. WESTLING:  Well, I don't think we know until we

17 ask, Your Honor.  And I think given the record it begs

18 inquiry.

19            THE COURT:  What he's saying is futile is where she

20 says --

21            (A pause in the proceedings.)

22            THE COURT:  I think there's something to the

23 futility of this.  She said that they said -- that she said

24 it's not a political case -- she and I were both wrong about

25 that.  Of course it has political ramifications.  But it isn't

──────────────── U.S. v. Manafort ────────────────

62

1    a political case.  It's a bank fraud and tax evasion.  Like so

2    many others.  Does it have implications for the political

3    world?  Obviously far more than I anticipated.  It does.  But

4    it isn't a political case.  And I'm sure you-all -- well, I

5    will not permit it to become more of one than it is.

6            I've precluded the Government -- I don't think the

7    Government ever seriously intended to ask about Russian

8    collusion, but I've precluded it anyway.  And it's none of my

9    business in this case.

10           All right.  She clearly said in her statement that

11   this -- this statement that has brought us here this morning

12   is the one that she thought crossed the line.  The others she

13   think did not cross the line.

14           Why isn't that make it likely that this is futile?

15           MR. WESTLING:  Because I think her judgment on that

16   isn't the issue.  The issue is we know they occurred so they

17   crossed line.  There's a specific instruction not to do what

18   the jurors are doing.  And so inquiring into those events it

19   seems to us is critical particularly given that qualitatively

20   they've included a general sense that the defense is weak.  So

21   that's more than a simple comment on a piece of evidence, but

22   on the whole case itself.  And if we've got a jury that's in

23   essence made up its mind in any way it seems to me we've got

24   to figure that out before we let them go out and deliberate.

25           THE COURT:  Well, you can figure that out.  I don't

───────U.S. v. Manafort───────

63

1   see convincing evidence of that at this time.

2         What I will do is I will ask her that further

3   question.  And I'll refresh her recollection by what she said

4   earlier.  That's only fair to her.

5         MR. WESTLING:  Understood.

6         THE COURT:  I will tell her that she said she heard

7   from three other people comments, but she didn't think those

8   comments crossed the line.  And I'll ask her if she remembers

9   what those comments were.  And if she does, fine, if she

10  doesn't, I'm done.

11        MR. WESTLING:  The only other thing we'd ask, Your

12  Honor, is we find out what this political discussion was.

13        THE COURT:  I don't think she said -- let me see.

14  Maybe she did.  Where is 21?

15        (A pause in the proceedings.)

16        THE COURT:  (As read):  "And yesterday, when we were

17  in, and somebody brought up something political."

18        Not a political discussion.  "Something political."

19  And what is it you want to know?

20        MR. WESTLING:  We want to know what it was.

21        THE COURT:  No.  I'm not going to do that.  I am

22  simply going to ask whether -- what these other comments were.

23        I'm not going to do anything that really exacerbates

24  the political aspect of this.

25        MR. WESTLING:  Understood, Your Honor.

───Tonia M. Harris OCR-USDC/EDVA 703-646-1438───

─────────────── U.S. v. Manafort ───────────────

64

1        THE COURT:  All right.  Scott, would you ask Mr.

2   Flood -- I guess we can bring her -- that's pretty bad to

3   bring her -- I guess we've -- we haven't opened the court.

4        THE CSO:  Court is open, sir.  I opened it at 1:30.

5   I can bring her through your chamber door.

6        THE COURT:  Yes, but then you have to bring her

7   through the courtroom.

8        THE CSO:  No, no, no.  Through the lobby through the

9   front door of your chambers.

10        THE COURT:  All right.  And you can open

11   the chambers door.  Bring her in and we'll be just a few

12   minutes.  And then we'll get started.

13        THE CSO:  All right.

14        (Discussion off the record.)

15        (Juror ███ present.)

16        THE COURT:  Did you have enough time to have lunch?

17        THE JUROR:  Yes, sir.

18        THE COURT:  Come on in.  Have a seat right here.  I

19   don't want you to be the slightest bit nervous.

20        THE JUROR:  I'm very nervous, Your Honor.

21        THE COURT:  I know you are, but you shouldn't be

22   because you have done nothing wrong.  Am I clear?

23        THE JUROR:  Yes, sir.

24        THE COURT:  Now, I just wanted to ask you a further

25   question.

—U.S. v. Manafort—

65

1        THE JUROR:  Yes.

2        THE COURT:  In your remarks this morning I asked you

3   about other comments.  And in your responses you said over the

4   last few days there had been three.

5        THE JUROR:  Approximately.

6        THE COURT:  Approximately.  Can you remember at all

7   what those comments were?

8        THE JUROR:  The one was the -- responses that --

9   "the defense was weak" shall we say.  And the others it's just

10  been, you know, not necessarily for one side or the other, but

11  just generally talking about, you know, things that they've

12  heard and just -- just too much chatter about the case itself.

13       THE COURT:  Do you remember anything else specific?

14       THE JUROR:  No.  Off the top of my head.  I didn't

15  write things down.

16       THE COURT:  All right.  Just a moment.

17       (Juror ██ not present.)

18       (Discussion between the Court and counsel.)

19       THE COURT:  Anything else?

20       MR. WESTLING:  Your Honor, who was the one who made

21  the statement that it was weak, and if the --

22       THE COURT:  That's the same one we've heard.

23       MR. WESTLING:  I don't think it is, Your Honor.

24       THE COURT:  I think it is, but I'll confirm that.

25       (Open conference.)

—Tonia M. Harris OCR-USDC/EDVA 703-646-1438—

EASTERN DISTRICT OF VIRGINIA

U.S. v. Manafort

66

1          (Juror ▮▮▮ present.)

2          THE COURT:  Your reference to someone saying that --

3  something that the case was weak or what was it?

4          THE JUROR:  Yes, "the defense was weak."

5          THE COURT:  The defense was weak.  Is that the same

6  person that you've identified this morning?

7          THE JUROR:  It was not, but I was -- we were in a

8  group in the smaller room and I -- honest, I couldn't -- all I

9  know it was a male.  That's the only thing I can tell you.

10  I -- I just heard it and "no, we cannot -- we cannot make

11  these distinctions."

12          THE COURT:  All right.  I think that's sufficient.

13  All right.  Mr. Flood is -- Scott would you take her back,

14  please and hand her off to Mr. Flood?  Thank you.

15          THE JUROR:  Thank you so much.

16          THE COURT:  Don't be concerned.

17          THE JUROR:  Okay.  Thank you.

18          (Juror ▮▮▮ dismissed.)

19          THE COURT:  All right.  Anything further?

20          MR. WESTLING:  Well, Your Honor, I guess the first

21  thing I would say is I would like you to talk to the jurors to

22  determine who made that comment.  I know your answer, but I

23  need to say it for the record.

24          THE COURT:  All right.  And your forecast is

25  accurate.

─────────────────────────U.S. v. Manafort─────────────────────────

67

1          MR. WESTLING:  And I think based on the record that

2    we have before us, Your Honor, we would move for a mistrial.

3          THE COURT:  All right.  What I'll let you do is I'll

4    let you brief that, but I'm not going to declare a mistrial at

5    this time.  You may move for one, but you're going to have do

6    to do it with muscle.

7          MR. WESTLING:  Understood.

8          THE COURT:  And you-all should be prepared to reply.

9    Of course, I haven't decided the issue, but I can tell you, as

10   I've told you before, I have an independent responsibility to

11   declare a mistrial if I see facts and circumstances that arise

12   that warrant that.  I don't see those yet.  Or maybe at all.

13   That's up to you to persuade me.

14         MR. WESTLING:  Understood.

15         THE COURT:  Anything further from the Government?

16         MR. ANDRES:  No, Your Honor.

17         THE COURT:  Or from the defendant?

18         MR. WESTLING:  One other question, just the

19   procedure on that.

20         THE COURT:  Yes, sir.

21         MR. WESTLING:  Would you like us to just

22   electronically file those briefs?

23         THE COURT:  Sure.

24         MR. WESTLING:  I'm concerned about this in the mix

25   of all --

U.S. v. Manafort

68

1          THE COURT:  Oh.

2          MR. WESTLING:  -- that's going on.  So I just raise

3    it for the Court's consideration.

4          THE COURT:  Why don't you file it.  All of this must

5    be in the public record, ultimately.  It should be.  It's

6    important that it be.  Because the result reached here has to

7    be subject to public scrutiny and criticism.

8          I know about that.  I don't care about criticizing

9    me.  I have pretty thick skin.  Unfortunately, some of my

10   family members have less than thick skin.  But that's their

11   problem and mine.

12         But anyway, it will all be in the public record.

13   The issue is when it gets there.  And the reason I have put

14   this under seal thus far, is that it doesn't do any good to

15   have it disrupt the trial.  So I would propose that we keep

16   this under seal until the end of the case.  But I'll be happy

17   to listen further.  If you-all want it in the public record

18   now, I'll carefully consider that.

19         What's your view?

20         Now, you know, if you put it in the public record

21   everything goes in the public record, except for names, but

22   that includes what I've said.

23         MR. DOWNING:  Your Honor, just in terms of being

24   able to move this along.  We don't have any problem filing

25   under seal.  And if we think there's a reason it shouldn't be

─U.S. v. Manafort─

1 under seal, we can include that in our filing.

2 　　　　　THE COURT:  All right.  What's your view, Mr.

3 Andres?

4 　　　　　MR. ANDRES:  My initial view is that I don't have an

5 issue with it.  But I think I really have to consult with my

6 office about it.  And what I can do is be in touch with

7 defense counsel before the end of the day or certainly before

8 they file, to the extent we have a view other than, that it

9 should be filed under seal.  That is, if we oppose their

10 motion to file under seal, we'll let the defense know.

11 　　　　　THE COURT:  Well, as you know I've taken steps

12 during this whole aspect of this proceeding, during this whole

13 matter, to take pains to avoid having even the public

14 appearance of this dispute in this event, because I've put it

15 temporarily under seal.  I've done it in this room which --

16 well other lawyers have been in here, but I actually had a

17 child -- I actually had a child kidnapping case.  Not a --

18 where a husband and wife were fighting to take the child to

19 another country and keep it there.  And I had it all in here

20 because the child was terrified of the courtroom and I had to

21 hear from the child.

22 　　　　　But other than that, I don't do this.  And I did

23 this because I thought it was best for the progress of getting

24 this case done for the time being to keep it under seal, but

25 the public must know about it as quickly as we can and I would

─────U.S. v. Manafort─────

70

1    anticipate that, you know, after oral argument, probably I

2    will tell the court reporter she can docket all this.

3            Anybody have any problem with that?

4            MR. DOWNING:  No, again, I would just like to have

5    time if we do have a problem, we'll put it in our motion.  But

6    we'll file --

7            MR. ANDRES:  I don't anticipate an issue, but given

8    the sensitivities that I should really check with the office,

9    but I understand Your Honor's viewpoint and that this is rare

10   that we're here and that --

11           THE COURT:  Yes, but I wanted to be more specific.

12   I didn't state it well.

13           Do you have any objection to my keeping it under

14   wraps at this time and what I've done so far?

15           MR. ANDRES:  No, Your Honor.

16           MR. DOWNING:  No.

17           THE COURT:  That's what I was really aiming for.

18           All right.  Let's see if we can get more of this

19   case tried as promptly as possible.

20           And also, I'll be clear about this, I do not agree

21   with gag orders on lawyers.  If something is under seal, it's

22   under seal and that takes care of it.  But no lawyer here is

23   under any obligation not to speak about this case to the press

24   or anything like that.  I don't believe in gag orders for

25   lawyers.

─────U.S. v. Manafort─────
71

1        If that is something that the defendant or the

2   Government thinks is something I should consider, reconsider

3   in this case, let me know.  But lawyers have good judgment and

4   lawyers typically -- when I put something under seal, of

5   course, you can't talk about it.  But that wouldn't preclude

6   you from other things.  And I don't want there to be any

7   misunderstanding.  I'm not gagging any lawyers.

8        MR. ANDRES:  Thank you, Your Honor.

9        MR. WESTLING:  Thank you.

10        (Conference concluded at 2:20 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              CERTIFICATE OF REPORTER

2

3          I, Tonia Harris, an Official Court Reporter for

4    the Eastern District of Virginia, do hereby certify that I

5    reported by machine shorthand, in my official capacity, the

6    proceedings had and testimony adduced upon the Court

7    Conference in the case of the **UNITED STATES OF AMERICA**

8    **versus PAUL J. MANAFORT, JR.**, Criminal Action No.

9    1:18-CR-83, in said court on the 10th day of August, 2018.

10         I further certify that the foregoing 72 pages is

11   a true and correct transcript of the record of proceedings

12   and incorporating redactions of personal identifiers.

13   Redacted characters appear as a ███████ "blackout block"

14   in the transcript.

15         In witness whereof, I have hereto subscribed my

16   name, this August 22, 2018.

17

18

19

20

21   _____

22   Tonia M. Harris, RPR
     Official Court Reporter

23

24

25

                                                              72