┌─────────────────────────U.S. v. Manafort─────────────────────────┐

1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

2                      ALEXANDRIA DIVISION

3  ----------------------------x
                               :
4  UNITED STATES OF AMERICA,    : Criminal Action No.
                               : 1:18-CR-83
5          versus              :
                               : August 13, 2018
6  PAUL J. MANAFORT, JR.,       : Volume X
                               :
7              Defendant. : **COURT CONFERENCE - EXCERPT**
   ----------------------------x

8

          TRANSCRIPT OF JURY TRIAL - COURT CONFERENCE
9            BEFORE THE HONORABLE T.S. ELLIS, III
                UNITED STATES DISTRICT JUDGE
10

   APPEARANCES:
11

   FOR THE GOVERNMENT:        UZO ASONYE, AUSA
12                            United States Attorney's Office
                              2100 Jamieson Avenue
13                            Alexandria, VA 22314
                                   and
14                            GREG ANDRES, SAUSA
                              BRANDON LANG VAN GRACK, SAUSA
15                            Special Counsel's Office
                              U.S. Department of Justice
16                            950 Pennsylvania Avenue NW
                              Washington, D.C. 20530
17

   FOR THE DEFENDANT:         JAY ROHIT NANAVATI, ESQ.
18                            BRIAN KETCHAM, ESQ.
                              Kostelanetz & Fink LLP
19                            601 New Jersey Avenue NW
                              Suite 620
20                            Washington, DC 20001
                                   and
21                            THOMAS E. ZEHNLE, ESQ.
                              Law Office of Thomas E. Zehnle
22                            601 New Jersey Avenue NW
                              Suite 620
23                            Washington, DC 20001
                                   and
24

25

                        ─Tonia M. Harris OCR-USDC/EDVA 703-646-1438─

                     EASTERN DISTRICT OF VIRGINIA

```
                        ┌────────U.S. v. Manafort────────┐
                        │                               2 │
 1   Appearances continued:
 2                                   KEVIN DOWNING, ESQ.
                                     Law Office of Kevin Downing
                                     601 New Jersey Avenue NW
 3                                   Suite 620
                                     Washington, DC 20001
 4                                       and
                                     RICHARD WILLIAM WESTLING, ESQ.
 5                                   Epstein, Becker, & Green, PC
                                     1227 25th Street NW
 6                                   Washington, DC 20037

 7   OFFICIAL COURT REPORTER:        TONIA M. HARRIS, RPR
                                     U.S. District Court, Ninth Floor
 8                                   401 Courthouse Square
                                     Alexandria, VA 22314
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
                        │───Tonia M. Harris OCR-USDC/EDVA 703-646-1438─│
                              EASTERN DISTRICT OF VIRGINIA
```

─────────────U.S. v. Manafort─────────────

3

1   (Unsealed bench conference commenced at 5:02 p.m.)

2          THE COURT:  The reason I think -- and the reason I

3   put the bench conferences under seal is I wanted to lessen the

4   pressure on jurors.  Of course everything will be out of seal

5   at some point as it should be.

6          What I'm concerned about the that there will be a

7   day or two when there will be a lot of focus on what you-all

8   are going to argue.  One way to do this would be simply to

9   have Mr. Downing's argument and the Government's response to

10  it under seal or at the bench and I'm inclined to do that.

11  But I wanted to hear from the parties.  I don't know what the

12  substance of the motion is.

13         MR. DOWNING:  I think we'll defer to Your Honor on

14  that, Your Honor.

15         THE COURT:  What's the Government's view?

16         MR. ANDRES:  We don't -- the Government's view is it

17  should be sealed, Your Honor.

18         THE COURT: All right.  I think that's right.  And

19  that's what I will do.

20         I don't know the details of the argument that you

21  intend to make.  But you shouldn't be limited in any way.  And

22  you're very likely going to mention the jurors and so forth.

23  And I would prefer to have that under seal.  And so that's how

24  we'll do it.

25         MR. DOWNING:  To be clear, we have no objection.

─────────────────Tonia M. Harris OCR-USDC/EDVA 703-646-1438─

EASTERN DISTRICT OF VIRGINIA

U.S. v. Manafort

4

1        THE COURT:  Yes.  All right.  Let me go look at your

2   brief.

3        MR. ANDRES:  Your Honor, can I ask another

4   scheduling issue?

5        THE COURT:  Sure.

6        MR. ANDRES:  So we have this Rule 29.  We have the

7   mistrial motion.  Obviously, we're going to hear from the

8   defense about whether there will be a defense, hopefully

9   tonight.  Simply because --

10       THE COURT:  Yes, I will be asking you tonight

11   whether you wish to offer any evidence after I hear your

12   motion.  But the moment of truth is now.

13       MR. DOWNING:  Sure.  Just with respect to the filing

14   today on materiality, I think we'll be able to have something

15   filed on the morning on that issue.  We did want to have a

16   written brief in with you on that.

17       THE COURT:  All right.

18       MR. DOWNING:  Because we think it's a an important

19   issue and we didn't want to just do it on the fly in court

20   today.

21       THE COURT:  All right.  I'll permit that but I'm not

22   going to delay --

23       MR. WESTLING:  Understood.

24       THE COURT:  -- moving.  As you know the principle

25   that governs your Rule 29 motion is that I must take all of

─────────────U.S. v. Manafort─────────────

5

1    the facts in the light most favorable to the Government and

2    consider whether a reasonable jury on the basis of that could

3    find each and every element of the offenses charged beyond a

4    reasonable doubt.

5            So I will let you file something on it if you intend

6    to file something on it.  Not much point in my reading it now.

7    So what we'll do now, I think -- I think the public has to

8    know that I'm going to hear this under seal and I want to hear

9    it in the courtroom.  Not going to be a happy group.

10           MR. ANDRES:  So, Judge, I guess what's left then

11   between those issues are closings and the charging conference.

12           THE COURT:  Yes.

13           MR. ANDRES:  Do you have some sense when we would do

14   that?

15           THE COURT:  Yes.  Depending how long do you

16   anticipate your argument to be on the mistrial?

17           MR. DOWNING:  15 minutes.  And, Your Honor, that

18   would be my first argument and then I'm going to want to stand

19   up again and argue a little more but --

20           THE COURT:  Yes, I understand.

21           Probably tomorrow morning.  Tomorrow morning.

22           Okay.  So we will proceed now and I will clear the

23   courtroom, hear your argument.

24           Have you filed anything on this issue?

25           MR. DOWNING:  We did.

U.S. v. Manafort

6

1          THE COURT:  Have you filed anything on this issue?

2          MR. ANDRES:  Yes, we did, Your Honor.

3          THE COURT:  All right.  I think it would be helpful

4   if I read that beforehand.  And I will do so.  And in the

5   meantime, I will tell the people that I'm going to read the

6   sealed motion, the courtroom will be cleared and I'll hear

7   sealed argument.  But I'll make clear to them that of course

8   in the long run they'll have access to all of this.

9          All right.  Let's proceed.

10         (End of bench conference.)

11  (Unsealed closed court conference commenced at 5:35 p.m.)

12         THE COURT:  All right.  Mr. Andres, who are these

13  folks behind you?

14         MR. ANDRES:  They're agents and a lawyer from the

15  Special Counsel's office.

16         THE COURT:  All right.  No one else in the

17  courtroom?  Who is behind -- and the marshals are here.  And

18  have we taken steps to turn off the equipment to the overflow

19  courtroom.

20         THE CSO:  Taken care of and the courtroom is locked.

21         THE COURT:  All right.  Mr. Downing, you may

22  proceed, sir.

23         MR. DOWNING:  Thank you, Your Honor.  It was --

24  thanks for giving us a little extra time on this because it

25  was helpful to read through the transcript for your

U.S. v. Manafort

7

1  questioning the juror last week.

2          I mean, I think when we started out, we were looking

3  at an exchange between two of the jurors.  And questions came

4  up about that particular exchange, which I think we learned

5  was out of earshot of everybody else.

6          So it was just between the two jurors.

7          And we were a little taken by the fact that there

8  was the juror that supposedly blurted out, you know, something

9  about the weakness of the defense, completely denied it.

10          And it seems that we kind of have a battle of these

11  two as to what occurred.  But really what I focused our

12  attention on was this ████ talking about the activity of

13  the jury as a group over the last four to five days, and that

14  they were having discussions about the case, and people were

15  commenting on their thoughts about the strength or weaknesses

16  of the defense.  We didn't spend much time talking about that

17  last week.  We were concentrated, I think, on a different

18  issue, which was the particular juror that may have said

19  something unequivocal about their thoughts about the defense

20  being weak .

21          But really going back, where we have the concern is

22  that in direct violation of your instructions every day, that

23  apparently when they were having their breaks, they were

24  collectively talking as a group and they were talking about

25  evidence and people were voicing their opinions about the case

U.S. v. Manafort

8

1   at a pretty early time in the case.

2           So that's really the issue that we think this Court

3   needs to address.  We think with respect to the two individual

4   jurors, you made a reasonable inquiry on that.  We were a

5   little surprised with the answer that came out of the second

6   juror.  But I think with respect to the overall conduct of the

7   jury, looking like they're in some kind of premature

8   deliberation mode before you've ever instructed them, before

9   all the evidence has come in, and that's what we'd like the

10  Court to take a closer look at.

11          THE COURT:  All right.  Mr. Andres?

12          MR. ANDRES:  Just very briefly, Your Honor.  I say

13  this respectfully, but I think Mr. Downing's discussion of

14  what happened is a gross overstatement of what happened.

15  There was no question or no evidence whatsoever that people

16  were deliberating.  There were stray comments.  Whether ████

17  ██████████████████ were completely consistent, I don't know that

18  they were, but they weren't -- there was --

19          THE COURT:  No, they weren't.

20          MR. ANDRES:  Yeah.

21          THE COURT:  They clearly weren't.

22          MR. ANDRES:  Right.  But --

23          THE COURT:  I mean, she said it happened and ██ said

24  it didn't happen.

25          MR. ANDRES:  Well, I think ██ said that she said

U.S. v. Manafort

9

1   things about the defense, that it would be difficult to be a

2   defense lawyer, that it would be things like that.  And so I

3   don't think she completely denied that she said something that

4   may be viewed as a negative of the defense --

5           THE COURT:  Yes, but I don't think I put it to her

6   that way.  But she did deny that she had said anything about

7   the strength of the case.  But anyway, go on.

8           MR. ANDRES:  My point is that they -- that -- so

9   there was that issue and you interviewed that juror.

10          The rest of the comments, the juror who first

11  alerted the CSO about the issues, she said the other issues

12  were not nearly of the ilk of the ones of the first juror,

13  that there were random comments.  The comments related to

14  lawyers on both sides, that people didn't take a position

15  necessarily.  She referenced the -- a political discussion,

16  but nothing about the case and she repeatedly said that when

17  she told other jurors that she wasn't interested in

18  deliberating or talking about these issues, that the

19  conversation stopped.

20          So the gist is obviously the case law draws a line

21  when jurors start deliberating prematurely and when they start

22  talking about the case, and there was absolutely no evidence

23  in the record that there was any type of premature

24  deliberations.  And, yes, there were comments made, but the

25  Government's position is that those comments were cured by

─────────U.S. v. Manafort─────────
                                                                    10

1   Your Honor's instruction and that further instruction to the

2   jury can certainly resolve any reaming issues.

3           But the gist is that we don't believe that the --

4   any discussions among the jurors have risen to the level as

5   characterized by Mr. Downing.  And, of course, we rely, as we

6   all should, on the record for that.  I don't think the record

7   bears out the claim that Mr. Downing is making.

8           THE COURT:  Well, I think you will both -- all of

9   you, everyone, agree that the Sixth Amendment guarantee of a

10  right to a trial by an impartial jury is very, very important.

11  And that it's within the sound discretion of the trial judge

12  whether to order a mistrial.  And as I've indicated earlier to

13  you-all, I was unclear whether -- I didn't see at the time,

14  whether there was a need to declare a mistrial or I would have

15  done it.  I've studied the matter in greater detail now.

16          Let me tell you one thing that I want you to give me

17  your views on:  I think it's clear under the law that I needed

18  to give a curative instruction, and I did it.  And the Court

19  should always consider alternatives less drastic than a

20  mistrial in the face of circumstances like this.  I'll tell

21  you what I have in mind and let you address it.

22          I have in mind tomorrow morning, closing the

23  courtroom, and voir diring each juror individually.  Not a

24  thorough examination, but I would simply ask:  Have you heard

25  any of your fellow jurors discuss this case during recesses,

─────Tonia M. Harris OCR-USDC/EDVA 703-646-1438─────
EASTERN DISTRICT OF VIRGINIA

─────U.S. v. Manafort─────

11

1    and if you have, has an -- do you still have an open mind

2    about this case?  The defendant is presumed innocence, can

3    you -- innocent, can you give effect to the presumption of

4    innocence by keeping an open mind until you begin your

5    deliberations at the end of the case?  In other words, I'm

6    going to ask them:  Have you made up your mind?  Have other

7    jurors' statements affected you?

8              I would bring each one in, individually, into this

9    courtroom.  The courtroom would be locked, so the public and

10   the press would not have notion, unless they guess as to what

11   was going on.

12             Now, Mr. Downing, in your brief, you urged me to

13   make everything public.  I thought you expressed a different

14   view at the bench here recently, but I'm not going to make it

15   public yet.  Of course, at the end of the trial, I can't think

16   of much, if anything, that would remain under seal.

17   Everything will be on the public record, including what I am

18   saying right now.

19             But I think it is important to keep this under seal,

20   the fact that there is this information obtained from two

21   jurors that I voir dired.  And if I do it for the other

22   jurors, I think it's important to keep that under seal in

23   order to prevent the media circus that will clearly result

24   from publication of this information from reaching the ear of

25   any juror and influencing any juror.  So that's why I keep it

─────────────────────U.S. v. Manafort─────────────────────

12

1   under seal.

2          So let me repeat.  What I'd like to hear from each

3   of you is whether you think it would be appropriate for me to

4   voir dire the jurors, all 16 individually, I have one who

5   wants to go take her child to a school on Friday and I need to

6   address that.  She's asked Mr. Flood again this evening

7   whether I've decided that.

8          I think I mentioned it, Mr. Andres, you cautioned

9   that I ought not to let her go now because I might need her;

10  am I correct?

11         MR. ANDRES:  For the very issue we're discussing

12  right now, Your Honor.

13         THE COURT:  All right.  So I haven't let her go.  So

14  I want to know whether you object to what I might do.  I

15  haven't decided for sure yet, but I might do it, to ask very

16  few questions.  I would ask whether -- have you discussed this

17  case with your fellow jurors or heard any of your fellow

18  jurors discuss it, and has it influenced you in your thinking?

19  Do you still have an open mind?  Can you give effect to the

20  presumption of innocence?  I don't know what answers I will

21  get, so I can't really forecast what I might do.  But it seems

22  to me that that is the appropriate way to proceed.

23         Let me hear first from you, Mr. Downing.  You filed

24  this motion.  That seems to me to be an appropriate way to

25  proceed.  What's your view?

─────────────U.S. v. Manafort─────────────

13

1          MR. DOWNING:  I got your bad back, Your Honor.

2          THE COURT:  You don't have my age yet.

3          MR. DOWNING:  In terms of what you're proposing, we

4    think that would be appropriate.  And also just to comment

5    on --

6          THE COURT:  I'm not eager to do it, I can assure

7    you.

8          MR. DOWNING:  Well, we're not either, Your Honor.

9    But we do think that there was enough left unresolved, that

10   that type of inquiry done the way you've done the earlier

11   inquiry is appropriate.

12         And in terms of the sealing, I think our brief was

13   supposed to say "unseal as soon as practicable."  So we

14   understand the considerations why you want to keep that under

15   seal.  But we do think what you're proposing would adequately

16   address our concerns.

17         THE COURT:  And the reason I'm moved to that is the

18   reference by ███ is that right, █?

19         MR. DOWNING:  Yes.

20         THE COURT:  About political discussions and other

21   people saying something, I voir dired the two of them.  There

22   was a conflict between the two.  We're not going to resolve

23   that.

24         MR. DOWNING:  Understood.

25         THE COURT:  Mr. Andres, what's the Government's

U.S. v. Manafort

14

1   view?

2           MR. ANDRES:  I have discomfort on a number of

3   levels, Your Honor.

4           The first is:  It seems to me that this was the very

5   issue that was raised to Your Honor initially when these

6   issues arose, and Your Honor made a decision, which I think

7   was correct not to do a discovery or a full-blown

8   investigation to the jury because I don't think it's merited.

9   And, again, I rely on the transcript.

10          One of the things that Juror No. ██ said was that

11  there had been other comments -- she said she's not aware of

12  other comments.  Your Honor asked:  "Have there been other

13  comments by other jurors about the strength or weakness or

14  anything about the evidence in the case that you're aware of?"

15          She said:  "Not that I'm aware of."

16          And, again, I think when you go back on the record,

17  the record doesn't support the notion that there were

18  discussions among jurors, that there were deliberations.

19  There were some offhanded comments as described as being about

20  both sides about --

21          THE COURT:  Well, let's be clear about what they

22  were.  I take your point that I did ask her that question.

23  She did give that answer.  Let me see.  There was -- what's on

24  Page 23, Mr. Andres?  Because the allegation here is that

25  other jurors have been discussing the evidence in the case for

┌─────────────────── U.S. v. Manafort ───────────────────┐

15

1   four or five days approximately -- and it's in at 23.  I don't

2   have that transcript.

3           Do you see 23, Mr. Downing?  It's in your brief that

4   you made that remark.

5           MR. DOWNING:  Yes, Your Honor.

6           THE COURT:  And what happened on Page 23?

7           And then there's that Juror ▇ stated that another

8   juror brought up something political that Juror ▇ believed

9   crossed the line and was so concerned that she felt compelled

10  to bring the issues to the Court's attention, 24 and 25.

11          MR. DOWNING:  Yes.

12          THE COURT:  Refresh my recollection on what appears

13  at 23, 24, and 25.

14          MR. DOWNING:  Sure.

15          Starting at the bottom of 22, the Court was saying

16  this was the ninth day, the juror said, "I would say probably

17  the last four or five days."

18          "Have these remarks come from one or more jurors?

19  More than one?  How many more?"

20          "I don't know, probably like three total."

21          THE COURT:  What was the question I asked?

22          MR. DOWNING:  You were asking if there was anyone

23  who -- on 22, "so there have been other comments?"

24          "Yes."

25          "About the evidence in the case?"

U.S. v. Manafort

16

1          "Yes."

2          And on 23 she identifies about three different

3   jurors that she couldn't, I guess, identify, but "probably

4   like three total" is what she said.

5          THE COURT:  Did she -- is this her words on 22, "I

6   don't feel that anyone -- anybody is taking sides, per se.

7   Someone mentioned, do you know -- well, this was a couple of

8   days ago, how they thought the defense was weak."

9          MR. DOWNING:  Yes.

10          THE COURT:  That's at 22.

11          MR. DOWNING:  That is, Your Honor.

12          THE COURT:  Now, of course, that's not a reason to

13   voir dire every juror because I've voir dired her.  Well, I --

14   I didn't voir dire -- I don't know if we identified the juror

15   who said that.

16          MR. DOWNING:  She said she identified it as one of

17   the men on the jury, but she couldn't specifically say who it

18   was.

19          THE COURT:  That's why I didn't have the person

20   brought and voir dired.  The only person she identified was

21   the person I did voir dire.

22          MR. DOWNING:  Correct, Your Honor.  But she's

23   identifying ongoing discussions about the evidence by --

24   amongst at least three people.  Now, she's overhearing it,

25   which could mean all the other jurors could have been in the

─U.S. v. Manafort─

17

1  room, overhearing the same conversations.  But she said they

2  were in the room.

3          THE COURT:  There -- have you seen this jury room?

4  You haven't?  I have.  It's quite small as jury rooms go.

5          MR. DOWNING:  And, Your Honor, I think what you're

6  proposing is not an invasive voir dire --

7          THE COURT:  Yes, it is.  Of course, it is.

8          MR. DOWNING:  Well, I think it could be a lot more

9  invasive in terms of more of the detail that the Juror █

10  provided.  But all I'm saying is she put this in a setting in

11  the jury room where at least three people known to her are

12  commenting over time about the evidence.

13          Now, that would be premature deliberation.  I mean,

14  we've looked at the case law on that.  And that's all we're

15  asking for you to find out, whether or not this was really

16  going on.

17          (A pause in the proceedings.)

18          THE COURT:  She never identified -- Juror █ never

19  identified the other juror who brought some -- quote,

20  something up -- brought up something political, closed quotes,

21  and Juror █ believed that, quote, crossed the line, closed

22  quotes.

23          MR. DOWNING:  She did, Your Honor.

24          THE COURT:  And that's why she felt compelled to

25  bring those matters to my attention.

U.S. v. Manafort

18

1      MR. DOWNING:  And, Your Honor --

2      THE COURT:  I'm satisfied that I've voir dired both

3  of those jurors adequately, and I didn't foreclose either

4  party from moving to strike a particular juror, which is still

5  a remedy, but -- if it's necessary.  But I didn't take any

6  steps to go further into this question of:  "They're talking,

7  I mean, they're just making general remarks.  I mean, I don't

8  feel anybody is taking sides, per se.  Someone mentioned, you

9  know -- well, a couple of days ago, that they thought that the

10  defense was weak."

11      MR. DOWNING:  And, Your Honor, if I might point out

12  later on in the transcript at 66, she's referring to this:

13  "We were in a group in the smaller room," the jury room you're

14  referring to, and this is when she's saying that somebody was

15  saying that the defense was weak.

16      So I really do think in the context of this

17  particular juror, I think she is --

18      THE COURT:  That's the three other unidentified

19  jurors?

20      MR. DOWNING:  Yes.

21      THE COURT:  And she, I don't think, could identify

22  them.  See, that's what has led me to consider voir diring

23  individuals is because the others haven't been identified.

24      MR. DOWNING:  And also, Your Honor, one other point

25  is:  This is from one juror's vantage point.  I think you're

————————U.S. v. Manafort————————

19

1  right when you're asking the other jurors:  What, if anything,

2  did you hear?  I think it would be able to give us and this

3  Court a better idea to how much was going on in there and who

4  heard it and whether or not it impacted anybody.

5       THE COURT:  All right.

6       MR. DOWNING:  I mean, one particular person seemed

7  to be very straightforward on the defense is weak, and it

8  seemed to be a pretty unequivocal statement.  Figuring out if

9  others heard that, if others can identify who that juror is,

10  we'd like to --

11       THE COURT:  Well, it won't matter if I voir dire

12  them individually, because everyone is going to get asked the

13  questions.  So whether they heard it or not won't matter,

14  because after I ask the question, have you heard your fellow

15  jurors discuss this case, strength or weakness, or anything,

16  even if they say no, I'm going to go on and ask them the other

17  questions.

18       MR. DOWNING:  Although, certainly --

19       THE COURT:  Mr. Andres, did you run across any

20  authority -- I know you couldn't anticipate what I'm going

21  to -- what I've suggested, but in your research, did you run

22  across anything like this?

23       MR. ANDRES:  The authority that we ran across was

24  the distinction between comments.  That is, one-off comments,

25  which happen probably more frequently then we would all like,

————Tonia M. Harris OCR-USDC/EDVA 703-646-1438————

20

1    but happened; and discussion, much less discussion about the

2    evidence, which Mr. Downing now proffers, that does not exist

3    in this transcript.  There is nothing in this transcript that

4    says there was discussions about evidence.

5              All of the -- all of the references are to stray

6    comments that they overheard, somebody overheard the defense

7    say "weak."  They didn't hear --

8              THE COURT:  Should I ignore that?

9              MR. ANDRES:  I think that you've resolved that in

10   two ways.  You resolved that by talking to the jurors and by

11   giving them an instruction.  And, by the way, Judge, just for

12   what it's worth, when we talk to those 16 jurors, all 16 of

13   them are going to have different memories, the same way the 6

14   or 8 or 10 lawyers in this courtroom today have a different

15   memory of what happened in this courtroom.  It's human nature

16   that people are going to have different memories about what

17   was said, but particularly when there aren't things that

18   are --

19             THE COURT:  Shouldn't I take steps to ensure that,

20   whether they heard anything or not, they have an open mind,

21   they haven't decided the case, and that they're able to give

22   the presumption of innocence effect and not decide the case

23   until all the evidence is in.

24             MR. ANDRES:  That I'm much more comfortable with,

25   Your Honor.  That is the standard instruction that you've

─────U.S. v. Manafort─────

21

1    given to the jurors.  You're going to give it to them.

2            What I'm struggling with slightly more is the need

3    to do it individualized.  We know at least that the first

4    juror, Juror No. ▮, has already expressed some concern about

5    being called out based on her comments to Mr. Flood that

6    she -- everybody would know it was her.

7            We'll get over that, but it seems to me that -- that

8    there isn't a predicate in the record.

9            THE COURT:  But it may help her feel better if she

10   isn't the only one called out.

11           MR. ANDRES:  That's fine, but that can't be the

12   basis for deciding to go through this evasive process.  You've

13   already done somebody else as it is, so she's not the only

14   one.  But I worry that this process is invasive and that it's

15   unnecessary, and I start again with the transcript.  If, in

16   fact, there was something in the transcript that suggested

17   that there had been deliberations or discussions, which is --

18   as I understand the law of the line, there are straight

19   comments and there are deliberations.

20           THE COURT:  Do you have a case you can cite to me

21   that draws that distinction?

22           MR. ANDRES:  I -- it was cited in our brief, but

23   I -- if I could just have one moment, Your Honor.

24           THE COURT:  Yes.  What's the cite?  Mr. Andres,

25   what's the cite?

22

1        MR. ANDRES:  Yeah, that's what I'm looking for.

2        (A pause in the proceedings.)

3        MR. ANDRES:  Judge, I'm going to have to just take a

4    little more time to figure that out.  I can send something to

5    Your Honor tonight but --

6        THE COURT:  I have the Day case, the Burgos case.

7    What case are you looking at?

8        Hutto is the case that I looked at.  Hutto.  Gray

9    against Hutto.  But that didn't draw any such line.

10       (A pause in the proceedings.)

11       THE COURT:  I'll tell you what I'm going to do.

12   This will shock you, but I have other cases.  I even have a

13   motion for summary judgment tomorrow morning at 8:30.  I have

14   other matters.

15       You look, and we'll reconvene this matter --

16       At 9:15 we will reconvene, just the lawyers, in a

17   closed courtroom.  And you can look for authority that draws

18   that line.  You know, obviously if they sit down and

19   deliberate on the case, of course that's worse than what you

20   call stray comments.  But if you were on the losing end of

21   those stray comments, I can hear you making arguments that

22   they matter too because they reflect what a person is

23   thinking.  And everyone has to have, on that jury, an open

24   mind and cannot decide the case until all the evidence is in.

25       But I share with you, Mr. Andres, a lack of

U.S. v. Manafort

23

1  enthusiasm for doing it individually, but there is precedent

2  for it.  I don't mean published precedent, but I know other

3  judges have done it.

4        I don't want to do it, but I do want to ensure the

5  integrity of the decisionmaking process of this case.  And I

6  haven't decided yet whether I'll do it.  I'll give you-all the

7  evening to find either an argument or a case that you think,

8  because none of the authorities that I've looked at make it

9  clear.  And it is a discretionary thing.

10        And you both have made the arguments I expected that

11  you would make.  Yes, Mr. Andres, it is true that there isn't

12  evidence that they got together and deliberated on the case.

13        But, Mr. Downing, yes, you're correct there are

14  these other comments and political this and so forth, and it

15  does give me some concern.  So it put -- it put a case in the

16  hardest position for me to decide whether to do it.  But I'll

17  be interested in anything else you tell me at 8:15 [sic]

18  tomorrow morning.  I'll decide it tomorrow morning, and if we

19  do it, Mr. Flood, then we will keep the courtroom closed.  We

20  will put the jury -- of course, we'll be in the jury room and

21  they can come out one at the time.

22        Now, if they do that, obviously they're going to

23  know.  But I will tell them they can't discuss the matter that

24  they were -- what question -- in fact, I think I told that to

25  the others that they couldn't discuss it.  I'll do that as

─────────────── U.S. v. Manafort ───────────────

24

1  well.  And then we'll proceed.

2        Now, I have the Rule 29 motion that you're going to

3  submit.  When do you anticipate being able to do that?

4        MR. DOWNING:  Pretty late tonight, I think, Your

5  Honor.

6        THE COURT:  All right.  Now, assuming you do not

7  prevail on that.  You're not required to tell me now until I

8  rule on that.  But if you are able to tell me now, you may do

9  so if you wish to.  You're not required to.  If you want to

10  wait, you may wait.

11        MR. DOWNING:  Your Honor, I'd prefer to have a

12  little more time this evening to confer with my client.

13        THE COURT:  All right.  I'll allow that.  If he

14  decides to not testify, I will voir dire him.  That doesn't

15  mean he can't put on other evidence.

16        All right.  Mr. Andres.

17        MR. ANDRES:  We're just asking -- and obviously the

18  defense has no obligation to give us this -- but to the extent

19  that there are going to be any witnesses to testify, we've now

20  rested we have tried to give notice.

21        THE COURT:  Yes, that's appropriate.  Mr. Downing,

22  you can honor that.

23        MR. DOWNING:  Understood.

24        THE COURT:  Anything else this evening?

25        MR. ANDRES:  No.  Thank you, Your Honor.

———U.S. v. Manafort———

25

1          THE COURT:  All right.  Court stands in recess.

2              **(Proceedings adjourned at 6:10 p.m.)**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

─────────U.S. v. Manafort─────────

26

1          CERTIFICATE OF REPORTER

2

3          I, Tonia Harris, an Official Court Reporter for the

4  Eastern District of Virginia, do hereby certify that I

5  reported by machine shorthand, in my official capacity, the

6  proceedings had and testimony adduced upon the Jury Trial in

7  the case of the **UNITED STATES OF AMERICA versus PAUL J.**

8  **MANAFORT, JR.**, Criminal Action No. 1:18-CR-83, in said court

9  on the 13th day of August, 2018.

10         I further certify that the foregoing 26 pages is a

11  true and correct transcript of the record of proceedings and

12  incorporating redactions of personal identifiers.  Redacted

13  characters appear as a ███████ "blackout block" in the

14  transcript.

15         In witness whereof, I have hereto subscribed my

16  name, this August 28, 2018.

17

18

19

20

21              _____/s/_____
                Tonia M. Harris, RPR
22              Official Court Reporter

23

24

25

─────Tonia M. Harris OCR-USDC/EDVA 703-646-1438─────
EASTERN DISTRICT OF VIRGINIA