─────────────────────U.S. v. Manafort──────────────────────

1

1              UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF VIRGINIA
2                ALEXANDRIA DIVISION

3  ------------------------------x
                         :
4  UNITED STATES OF AMERICA,    : Criminal Action No.
                         : 1:18-CR-83
5         versus          :
                         :
6  PAUL J. MANAFORT, JR.,     :
                         : July 31, 2018
7            Defendant. :   VOIR DIRE
  ------------------------------x

8

             TRANSCRIPT OF JURY TRIAL
9        BEFORE THE HONORABLE T.S. ELLIS, III
           UNITED STATES DISTRICT JUDGE
10

  APPEARANCES:
11
  FOR THE GOVERNMENT:        UZO ASONYE, AUSA
12                   United States Attorney's Office
                   2100 Jamieson Avenue
13                   Alexandria, VA 22314
                     and
14                   GREG ANDRES, SAUSA
                   BRANDON LANG VAN GRACK, SAUSA
15                   Special Counsel's Office
                   U.S. Department of Justice
16                   950 Pennsylvania Avenue NW
                   Washington, DC 20530
17

  FOR THE DEFENDANT:         JAY ROHIT NANAVATI, ESQ.
18                   BRIAN KETCHAM, ESQ.
                   Kostelanetz & Fink LLP
19                   601 New Jersey Avenue NW
                   Suite 620
20                   Washington, DC 20001
                     and
21                   THOMAS ZEHNLE, ESQ.
                   Law Office of Thomas E. Zehnle
22                   601 New Jersey Avenue, NW
                   Suite 620
23                   Washington, DC 20001
                     and
24

25

U.S. v. Manafort

2

KEVIN DOWNING, ESQ.
Law Office of Kevin Downing
601 New Jersey Avenue NW
Suite 620
Washington, DC 20001
    and
RICHARD WILLIAM WESTLING, ESQ.
Epstein, Becker, & Green, PC
1227 25th St. NW
Washington, DC 20037

OFFICIAL COURT REPORTER:    TONIA M. HARRIS, RPR
U.S. District Court, Ninth Floor
401 Courthouse Square
Alexandria, VA 22314

U.S. v. Manafort

3

TABLE OF CONTENTS


MISCELLANY

Voir Dire........................................... 004
Jury selection..................................... 122
Jury sworn......................................... 128
Certificate of Court Reporter...................... 131

EASTERN DISTRICT OF VIRGINIA

─────U.S. v. Manafort─────

4

**<u>VOIR DIRE PROCEEDINGS</u>**

1

2  (Voir dire proceedings commenced at 10:05 a.m.)

3          THE COURT:  Good morning, ladies and gentlemen.  I'm

4  greeting I think many of you for the first time.  I greeted

5  some of you last week.

6          My name is Tim Ellis.  I'll be the judge presiding

7  over this case which is styled Paul Manafort, Jr. or United

8  States against Paul Manafort, Jr.

9          It is in the nature of a criminal case.  And

10  therefore I tell you at the outset, it's important that you

11  understand at the outset that the defendant has pled not

12  guilty and therefore must be presumed by you to be innocent of

13  any charges unless and until the jury find otherwise.

14          Now, I want to take this opportunity at the outset

15  to thank each of you for your service as jurors.  Nothing you

16  do, as an American citizen, is any more important than jury

17  service.  Together with voting, it is one of the two cardinal

18  duties each of us has as an American citizen and it is vitally

19  important that we fulfill those duties, that obligation.

20          I've had the occasion to observe the criminal

21  justice systems and the civil justice systems on the continent

22  of Europe and in Latin America, both places of which I've

23  lived.  And that experience has confirmed in me the strong

24  view that juries play a vital role in the preservation of our

25  rights and liberties as Americans.  That can continue to be

1    the case only as long as citizens are willing to work and to

2    devote their time conscientiously and diligently to their

3    service as jurors.  For that, we thank you.

4            Now we're going to proceed today with the jury

5    selection process.  Some of that process, has already

6    occurred, because you have all filled in extensive

7    questionnaires.  And that will, we hope, shorten the process

8    and enable us to move forward expeditiously.

9            Now, we're going to begin with the calling of the

10   roll.  Now, we are going to use only your numbers, the four

11   digits at the end, and you will all, I think, have been

12   forewarned that we're going to use numbers and you all have

13   written them down.  And if there's any confusion about that,

14   you can raise your hand and we'll see if we can resolve that.

15           But I'm going to have the deputy clerk, Ms. Pham,

16   now call the roll using numbers.  Now, when your number is

17   called, please stand and remain standing until the next number

18   is called.  And the reason for that is to give the attorneys

19   an opportunity to match a number with a face, so that they can

20   see you.  And it will help them in some way in exercising

21   their peremptory challenges.

22           All right.  You may proceed.

23           Following this, now once we do the -- the roll, we

24   will then have you placed under oath and I will ask you a

25   series of questions, easy to answer questions.  Questions

U.S. v. Manafort

6

1    designed to enable the Court to determine whether any of you

2    may be disabled by any rule of law from serving as a juror in

3    this case.

4              And also, your responses will aid the attorneys in

5    exercising their peremptory challenges.

6              Yes, sir.  The reason for having to move you is we

7    want all members of the public for the time being seated quite

8    separately from members of the prospective jury.

9              Does he know there's a courtroom on the 6th floor to

10   which he can go?

11             THE CSO:  Yes.

12             THE COURT:  All right.  You may proceed to call the

13   roll by number.

14             THE DEPUTY CLERK:  Ladies and gentlemen, as I call

15   your number, would you please stand, answer "present" and

16   remain standing until the next number is called.

17             Juror 0003.

18             THE JUROR:  Present.

19             THE DEPUTY CLERK:  Juror 0005.

20             THE JUROR:  Present.

21             THE DEPUTY CLERK:  Juror 0008.

22             THE JUROR:  Present.

23             THE COURT:  You may be seated once the next name is

24   called.  Thank you, sir.

25             THE DEPUTY CLERK:  Juror 0009.

1          THE JUROR:  Present.

2          THE DEPUTY CLERK:  Juror 0017.

3          THE JUROR:  Present.

4          THE DEPUTY CLERK:  Juror 0018.

5          THE JUROR:  Present.

6          THE DEPUTY CLERK:  Juror 0029.

7          THE JUROR:  Present.

8          THE DEPUTY CLERK:  Juror 0030.

9          THE JUROR:  Present.

10          THE DEPUTY CLERK:  Juror 0037.

11          THE JUROR:  Present.

12          THE DEPUTY CLERK:  Juror 0039.

13          THE JUROR:  Present.

14          THE DEPUTY CLERK:  Juror 0046.

15          THE JUROR:  Present.

16          THE COURT:  I'm sorry, I didn't hear you.

17          THE JUROR:  Oh, present.

18          THE COURT:  Thank you.

19          THE DEPUTY CLERK:  Juror 0047.

20          THE JUROR:  Present.

21          THE DEPUTY CLERK:  Juror 0048.

22          THE JUROR:  Present.

23          THE DEPUTY CLERK:  Juror 0054.

24          THE JUROR:  Present.

25          THE DEPUTY CLERK:  Juror 0055.

1          THE JUROR:  Present.

2          THE DEPUTY CLERK:  Juror 0058.

3          THE JUROR:  Present.

4          THE DEPUTY CLERK:  Juror 0060.

5          THE JUROR:  Present.

6          THE DEPUTY CLERK:  Juror 0063.

7          THE JUROR:  Present.

8          THE DEPUTY CLERK:  Juror 0072.

9          THE JUROR:  Present.

10          THE DEPUTY CLERK:  Juror 0082.

11          THE JUROR:  Present.

12          THE DEPUTY CLERK:  Juror 0084.

13          THE JUROR:  Present.

14          THE DEPUTY CLERK:  Juror 0085.

15          THE JUROR:  Present.

16          THE DEPUTY CLERK:  Juror 0090.

17          THE JUROR:  Present.

18          THE DEPUTY CLERK:  Juror 0091.

19          THE JUROR:  Present.

20          THE DEPUTY CLERK:  Juror 0094.

21          THE JUROR:  Present.

22          THE DEPUTY CLERK:  Juror 0096.

23          THE JUROR:  Present.

24          THE DEPUTY CLERK:  Juror 0097.

25          THE JUROR:  Present.

─────U.S. v. Manafort─────

9

1          THE DEPUTY CLERK:  Juror 0104.

2          THE JUROR:  Present.

3          THE DEPUTY CLERK:  Juror 0112.

4          THE JUROR:  Present.

5          THE DEPUTY CLERK:  Juror 0114.

6          THE JUROR:  Present.

7          THE DEPUTY CLERK:  Juror 0115.

8          THE JUROR:  Present.

9          THE DEPUTY CLERK:  Juror 0121.

10          THE JUROR:  Present.

11          THE DEPUTY CLERK:  Juror 0122.

12          THE JUROR:  Present.

13          THE DEPUTY CLERK:  Juror 0123.

14          THE JUROR:  Present.

15          THE DEPUTY CLERK:  Juror 0127.

16          THE JUROR:  Present.

17          THE DEPUTY CLERK:  Juror 0132.

18          THE JUROR:  Present.

19          THE DEPUTY CLERK:  Juror 0133.  Juror 0133.

20          THE JUROR:  Present.  I have 0133.

21          THE DEPUTY CLERK:  Thank you.

22          Juror 0141.

23          THE JUROR:  Present.

24          THE DEPUTY CLERK:  Juror 0142.

25          THE JUROR:  Present.

1            THE DEPUTY CLERK:  Juror 0143.

2            THE JUROR:  Present.

3            THE DEPUTY CLERK:  Juror 0145.

4            THE JUROR:  Present.

5            THE DEPUTY CLERK:  Juror 0153.

6            THE JUROR:  Present.

7            THE DEPUTY CLERK:  Juror 0154.

8            THE JUROR:  Present.

9            THE DEPUTY CLERK:  Juror 0155.

10           THE JUROR:  Present.

11           THE DEPUTY CLERK:  Juror 0156.

12           THE JUROR:  Present.

13           THE DEPUTY CLERK:  Juror 0159.

14           THE JUROR:  Present.

15           THE DEPUTY CLERK:  Juror 0261.

16           THE JUROR:  Present.

17           THE DEPUTY CLERK:  Juror 0265.

18           THE JUROR:  Present.

19           THE DEPUTY CLERK:  Juror 0269.

20           THE JUROR:  Present.

21           THE DEPUTY CLERK:  Juror 0271.

22           THE JUROR:  Present.

23           THE DEPUTY CLERK:  Juror 0275.

24           THE JUROR:  Present.

25           THE DEPUTY CLERK:  Juror 0276.

U.S. v. Manafort

11

1          THE JUROR:  Present.

2          THE DEPUTY CLERK:  Juror 0281.

3          THE JUROR:  Present.

4          THE DEPUTY CLERK:  Juror 0284.

5          THE JUROR:  Present.

6          THE DEPUTY CLERK:  Juror 0286.

7          THE JUROR:  Present.

8          THE DEPUTY CLERK:  Juror 0288.

9          THE JUROR:  Present.

10          THE DEPUTY CLERK:  Juror 0291.

11          THE JUROR:  Present.

12          THE DEPUTY CLERK:  Juror 0292.

13          THE JUROR:  Present.

14          THE DEPUTY CLERK:  Juror 0296.

15          THE JUROR:  Present.

16          THE DEPUTY CLERK:  Juror 0297.

17          THE JUROR:  Present.

18          THE DEPUTY CLERK:  Juror 0299.

19          THE JUROR:  Present.

20          THE DEPUTY CLERK:  Juror 0300.

21          THE JUROR:  Present.

22          THE DEPUTY CLERK:  Juror 0302.

23          THE JUROR:  Present.

24          THE DEPUTY CLERK:  Juror 0304.

25          THE JUROR:  Present.

U.S. v. Manafort

12

1          THE DEPUTY CLERK:  Juror 0310.

2          THE JUROR:  Present.

3          THE DEPUTY CLERK:  Is there any juror whose number I

4    have not called?

5          THE COURT:  All right.  You may administer the oath

6    to the panel.

7          THE DEPUTY CLERK:  Ladies and gentlemen, would you

8    please stand, raise your right hand and respond by stating "I

9    shall" after the oath is administered.

10                    (Jury panel sworn.)

11          THE DEPUTY CLERK:  Thank you.  You may be seated.

12          THE COURT:  All right.  Ladies and gentlemen, I'm

13   going to begin by giving you a brief thumbnail sketch of the

14   allegations by the Government in this case.

15          Again, I hasten to instruct you that the indictment

16   from which I will read portions, is not proof or evidence of

17   guilt of any kind whatsoever.  Rather, it is merely the

18   Government's formal means of accusing a defendant of a crime.

19          And I also hasten to instruct you, once again, that

20   the defendant has pled not guilty to these charges.  And

21   therefore, must be presumed by you to be innocent of those

22   charges unless and until the jury find otherwise.

23          To begin with, there are five charges of failure --

24   of subscribing to false United States income tax returns.

25          Now, on or about the dates specified below, and I'll

U.S. v. Manafort

13

1  give you those dates in a moment, in the Eastern District of

2  Virginia and elsewhere, the defendant Paul J. Manafort, Jr.

3  willfully and knowingly did make and subscribe, and aid and

4  abet and cause to be made and subscribed, United States

5  individual income tax return forms 1040 and schedule B for the

6  tax years set forth below, which returns contained and were

7  verified by the written declaration of Manafort, that they

8  were made under penalties of perjury and which returns

9  Manafort did not believe to be true and correct as to every

10 material matter.  In that the returns, A, claim that Manafort

11 did not have a financial interest in and signature and other

12 authority over a financial account in a foreign country, and

13 B, failed to report income whereas Manafort then and there

14 well knew and believed that he had a financial interest in and

15 signature and other authority over bank accounts in foreign --

16 in a foreign country and had earned total income in excess of

17 the reported amounts for the year 2010, 2011, 2012, 2013, and

18 2014.  Those are the first five counts.

19         Now, the next -- the next four counts or charges

20 against Mr. Manafort are failure to file reports of foreign

21 bank and financial accounts.  And they read as follows:  That

22 on the filing due dates listed below, and I'll read those

23 dates, in the Eastern District of Virginia and elsewhere,

24 defendant Paul J. Manafort, Jr. unlawfully, willfully, and

25 knowingly did fail to file with the Treasury an FBAR.  FBAR is

─────────────────────── U.S. v. Manafort ───────────────────────

14

1    a short term for failure --

2            Mr. -- Mr. Andres, what is the exact translation?

3            MR. ANDRES:  Failure to file a foreign bank account

4    record.

5            THE COURT:  FBAR, failure to file a foreign bank

6    account report.

7            MR. ANDRES:  Report, yes.  Thank you.

8            THE COURT:  All right.  So, beginning again, it says

9    that on the filing due dates listed below, and I'll read those

10   to you, in the Eastern District of Virginia, defendant Paul J.

11   Manafort unlawfully, willfully and knowingly did fail to file

12   with the Treasury an FBAR report disclosing that he had a

13   financial interest in and signature and other authority over a

14   bank, securities and other financial account in a foreign

15   country which had an aggregate value of more than $10,000 in a

16   12-month period during the following years:  2011, 2012, 2013,

17   and 2014.  So those are the next four counts.

18           Finally, there is a group of counts that consist

19   of a bank fraud and conspiracy to commit bank fraud.  There

20   are -- they come in pairs of two.

21           The first one reads that:  On or about -- or on or

22   about and between December 2015 and March 2016, both dates

23   being approximate and inclusive, in the Eastern District of

24   Virginia and elsewhere, defendant Paul J. Manafort did

25   knowingly and intentionally conspire to execute a scheme and

─────U.S. v. Manafort─────

15

1   artifice to defraud one or more financial institutions, to

2   wit, Lender B -- and Lender B will be identified in the course

3   of the evidence; is that correct, Mr. Andres?

4            MR. ANDRES:  Yes, Judge.

5            THE COURT:  All right.  A particular lender, the

6   deposits of which were insured by the FDIC, Federal Deposit

7   Insurance Corporation, and to obtain monies, funds, and

8   credits owned by and under the custody and control of such

9   financial institution, by means of materially false and

10  fraudulent pretenses, representations, and promises.  In

11  violation of sections -- of Title 18, sections 1344, 1349, and

12  3551.

13           That's an allegation of engaging in a conspiracy to

14  commit bank fraud.  And that one relates to December 2015 and

15  March 2016.

16           Now, let me say, I don't expect all of you to have

17  all of these in mind and to remember all of them.  If you are

18  selected as a juror, of course, there will be an opening

19  statement and counsel will have an opportunity to review those

20  with you.  And at that time, you will have a booklet and be

21  entitled to take as many or as few notes as you wish.

22           What I'm doing now is simply giving you an overview

23  of the charges, so that you will have those in mind as you

24  respond to questions that are asked of you.

25           So as I indicated, there is a series of eight counts

U.S. v. Manafort

16

1   or charges.  Each one being either a conspiracy to engage in

2   bank fraud and then the charge of bank fraud itself as a

3   separate one.  So for example, I read to you that there was a

4   conspiracy to engage in a scheme and artifice to defraud

5   Lender B, and that was from December 2015 to March 2016.  And

6   then, there is a charge that between those dates that Mr.

7   Manafort did knowingly and intentionally execute and attempt

8   to execute a scheme and artifice to defraud Lender B.

9          And each one has an allegation that the deposits of

10  the lender were insured by the Federal Deposit Insurance

11  Corporation.  And that the scheme and artifice to defraud was

12  to obtain those funds by means of materially false and

13  fraudulent pretenses, representations, and promises.

14         The next bank fraud conspiracy and bank fraud -- the

15  next two charges relate to between March 2016 and May 2016.

16  And relate to a Lender C, the identity of which will be

17  revealed in the course of the evidence.

18         And then, there's another one, another pair, between

19  December 2015 and March 2016.  And that's a Lender C -- that's

20  the same lender as before.  Lender C.  Then there are two more

21  relating to Lender B, once again.  And the final -- no, not

22  the final but two more involving Lender D.  And the final two

23  involving also Lender D.

24         Again, I tell you that the indictment from which I

25  read portions is merely a formal means of accusing a defendant

1  of a crime.  It is not itself evidence of guilt of any kind

2  whatsoever.  And the defendant has pled not guilty, and I tell

3  you yet once again, that he is presumed to be innocent and

4  unless and until the jury find otherwise.

5          Now, let me have Mr. Andres, Mr. Asonye and others,

6  if you'd stand, introduce yourself and any client

7  representative that you have there to the panel, please.

8          MR. ANDRES:  Good morning, Your Honor.  Good

9  morning.  Greg Andres for the United States.

10          MR. ASONYE:  Good morning.  My name is Uzo Asonye

11  representing the United States.

12          MR. VAN GRACK:  Brandon Van Grack on behalf of the

13  United States.

14          MS. EBADI:  Special Agent Sherine Ebadi on behalf of

15  the United States.

16          MR. BINDER:  Evan Binder on behalf of the United

17  States.

18          THE COURT:  All right.  Ladies and gentlemen, do you

19  or any member of your family, so far as you know, know any of

20  these individuals or have you had any business or social

21  dealings of any kind whatsoever with any of them?

22          All right.  The record will indicate none.

23          Now, these individuals, Mr. Asonye, is a member of

24  the U.S. Attorney's Office for the Eastern District of

25  Virginia.  Do you or any member of your family, so far as you

18

1   know, know any of the attorneys or employees of the U.S.

2   Attorney's Office for the Eastern District of Virginia or have

3   you had any business or social dealings with any of them?

4   Raise your hands, please.

5           All right.  The record will reflect none.

6           Now, Mr. Andres and the other individuals who were

7   introduced to you are all employees of the Department of

8   Justice.  And I want to know whether you or any member of your

9   family, so far as you know, know any of the employees or

10  attorneys at the Department of Justice or have you had any

11  business or social dealings of any kind whatsoever with any of

12  them?

13          Yes.  Would you stand please and give us your

14  number.  Yes, ma'am.

15          THE JUROR:  0269.

16          THE COURT:  I'm sorry.  Did you say 0269?

17          THE JUROR:  Yes, I did.

18          THE COURT:  And whom do you know in the Department

19  of Justice?

20          THE JUROR:  I spent two years working in the civil

21  division of the DOJ, so I know several of those attorneys.

22  And my goddaughter's mother is an attorney in the tax division

23  at the DOJ.

24          THE COURT:  All right.  Well, that's a fairly

25  thorough recitation.

U.S. v. Manafort

19

1            All right.  You worked in the civil division.  Were

2    you an attorney?

3            THE JUROR:  No, sir.

4            THE COURT:  And what -- what were your duties there?

5            THE JUROR:  I supported the office of litigation

6    support as a trainer and a help desk.

7            THE COURT:  All right.  I'll ask for hands again.

8    You don't need to remain standing but I'll come back.  You may

9    be seated.

10           No, I'm not done yet down there.  You all may be

11   seated for now.  I'll ask you in a moment.

12           Now, do you feel that your associations with the

13   civil division would prevent or hinder you in any way from

14   rendering a fair and an impartial verdict in this case based

15   only on the evidence presented and the Court's instructions on

16   the law?

17           THE JUROR:  No, sir.

18           THE COURT:  Thank you.  You may be seated.

19           Now, I saw a few more hands here from people who

20   were going to tell me that they knew or had business dealings

21   with people in the Department of Justice.  Would you raise

22   your hands again, please.

23           Oh, my heavens.  I'm not going to ask that question

24   again.  Get another flood of hands.

25           All right.  Let's begin up here, Mr. Flood, let's

U.S. v. Manafort

20

1    begin here and we'll work our way down.

2              What is your number, sir?

3              THE JUROR:  143.

4              THE COURT:  All right.  And whom do you know in the

5    Department of Justice?

6              THE JUROR:  I'm a member of an alumni association of

7    people who study at the University of Cambridge and live in

8    the D.C. area.  And the current president of that organization

9    I believe works in the Department of Justice.

10             THE COURT:  Do you know that person?

11             THE JUROR:  Yes, I know him.

12             THE COURT:  And have you had dealings or social

13   dealings with him other than in this Cambridge association?

14             THE JUROR:  No.

15             THE COURT:  Do you feel that that association would

16   prevent or hinder you in any way from rendering a fair and an

17   impartial verdict based only on the evidence and the Court's

18   instructions on the law?

19             THE JUROR:  I do not believe that would hinder.

20             THE COURT:  Thank you, sir, you may be seated.

21             Next.

22             THE JUROR:  Number 39.

23             THE COURT:  Yes, sir.

24             THE JUROR:  Yes, sir.  I have for the last five or

25   six years been involved in lita- -- with settlement under

U.S. v. Manafort

21

1   spent nuclear fuel.  Probably most people are familiar with

2   the Government --

3           THE COURT:  I'm sorry, I'm not being -- I'm not able

4   to hear you.  Would you speak up.  Start with your number once

5   again, please, sir.

6           THE JUROR:  39.

7           THE COURT:  All right.  0039.  Yes, sir.  Go ahead.

8           THE JUROR:  Okay.  For the last five or six years

9   I've been a person who has reviewed settlement for the Federal

10  Government with plaintiffs who sued the Government for failure

11  to take the spent nuclear fuel from nuclear power plants.  In

12  that capacity I have talked and interacted with various

13  lawyers from the Department of Justice in that litigation.

14          THE COURT:  All right.

15          THE JUROR:  No personal, no social contact.  Very

16  little contact really but I did have contact with those

17  people.

18          THE COURT:  And you're an employee of the Department

19  of Energy?

20          THE JUROR:  Yes, sir.

21          THE COURT:  And are you an attorney?

22          THE JUROR:  No, sir.

23          THE COURT:  And do you feel that that work that you

24  did in approving those settlements with members of the

25  Department of Justice would hinder or prevent you in any way

U.S. v. Manafort

22

1  from listening carefully to the evidence and rendering a fair

2  and an impartial verdict?

3           THE JUROR:  No, sir.  It had nothing to do with

4  this.

5           THE COURT:  All right, sir, thank you.  You may be

6  seated.

7           Next.

8           THE JUROR:  Number 0292.

9           THE COURT:  Yes, ma'am.

10          THE JUROR:  Yes.  I worked for the Federal

11 Communications Commission for 31 years as an attorney.  I

12 coordinated with attorneys in the Department of Justice on

13 particular issues of overlapping jurisdiction, having to do

14 with interception of radio signals, cellular phones.

15          THE COURT:  How many years?

16          THE JUROR:  31 years.

17          THE COURT:  You must have joined as a teenager.

18          THE JUROR:  Thank you, sir.

19          THE COURT:  All right.  Do you feel that that

20 association would prevent or hinder you in any way from

21 rendering a fair and an impartial verdict in this case based

22 only on the evidence and the Court's instructions?

23          THE JUROR:  No, sir.

24          THE COURT:  And are you an attorney?

25          THE JUROR:  I am a recovering attorney.  I've been

─────U.S. v. Manafort─────

23

1   retired for seven years.

2           THE COURT:  All right.  I know the occupation well.

3   My wife practiced law for 20 years and left, became a high

4   school English teacher.  She's been happy ever since and she

5   was never happy before.

6           THE JUROR:  We have a lot in common.

7           THE COURT:  All right.

8           Next.

9           THE JUROR:  Hello, Your Honor.  Number 0155.  I have

10  two acquaintances that both, I just remembered, work in the

11  DOJ.  Neither are attorneys.  I see them on the most maybe two

12  or three times a year.  We work together in a non-profit

13  organization and have never discussed anything at all relating

14  to Justice.

15          THE COURT:  All right.  And do you feel those

16  associations would in any way prevent or hinder you in any way

17  from rendering a fair and an impartial verdict in this case --

18          THE JUROR:  No, Your Honor.

19          THE COURT:  -- based only on the evidence and the

20  Court's instructions?

21          THE JUROR:  No, Your Honor.

22          THE COURT:  Thank you, you may be seated.

23          Next.

24          THE JUROR:  Morning.

25          THE COURT:  Good morning.

24

1          THE JUROR:  I am 0058.

2          THE COURT:  All right.

3          THE JUROR:  I work for a Silicon Valley software

4    company and various components of DOJ use our software.  And

5    I've viewed a lot of our business development for our civilian

6    clients.

7          THE COURT:  And you are an attorney.

8          THE JUROR:  I am.

9          THE COURT:  And tell me again --

10         THE JUROR:  A recovering attorney as well.

11         THE COURT:  I beg --

12         THE JUROR:  I'm no longer practicing.

13         THE COURT:  All right.  Tell me what your duties and

14   responsibilities are with this software company again.

15         THE JUROR:  Yeah, so I coordinate our business

16   strategy across our civilian business.  Our civilian business

17   includes many of the major federal agencies outside of the

18   Department of Defense and the intelligence community.  And

19   various components of the Department of Justice utilize that

20   software for cases, for data integration, data analysis, on

21   their cases.

22         And in that capacity I have worked with a number of

23   attorneys at the Department of Justice in various U.S.

24   Attorney's offices as well as the civil division and the

25   criminal division.  But I am not currently like a contractor

1    or anything for the Department of Justice.

2            THE COURT:  And I take it the contact you've had

3    with attorneys in the Department of Justice has been entirely

4    professional contact, not social.

5            THE JUROR:  Correct.

6            THE COURT:  Do you feel that that contact would

7    prevent or hinder you in any way from rendering a fair and an

8    impartial verdict in this case based only on the evidence

9    presented and the Court's instructions on the law?

10           THE JUROR:  No, sir.

11           THE COURT:  Thank you.  You may be seated.

12           Next.

13           THE JUROR:  Good morning.  0048.  My sister --

14           THE COURT:  Yes, ma'am.

15           THE JUROR:  My sister works for the Miami DOJ in the

16   paralegal pool.

17           THE COURT:  She works for what agency?

18           THE JUROR:  The DOJ of Miami.  U.S. District

19   Attorney's Office.

20           THE COURT:  I see.  The U.S. Attorney's Office in

21   Miami.

22           THE JUROR:  In Miami.

23           THE COURT:  Well, you're correct, they're part of

24   the Department of Justice.  Now, do you feel that that

25   association would prevent or hinder you in any way from

U.S. v. Manafort

26

1   rendering a fair and an impartial verdict in this case based

2   only on the evidence and the Court's instructions on the law?

3           THE JUROR:  I do not.

4           THE COURT:  Thank you.  You may be seated.

5   Next.

6           THE JUROR:  Hi.  0310.

7           THE COURT:  Yes, ma'am.

8           THE JUROR:  Basically in 1984 to 1986 I worked for

9   the Department of Justice in the NCJR, National Criminal

10  Justice Resources.

11          THE COURT:  All right.  That's some time ago.  Do

12  you feel that experience or --

13          THE JUROR:  I do not.  It's been a long time ago.

14          THE COURT:  I beg your pardon?

15          THE JUROR:  I do not.  It's been a long time.

16          THE COURT:  Yes, but let me complete the question --

17          THE JUROR:  Sure.

18          THE COURT:  -- for purposes of the record.  I know

19  I'm predictable.

20          THE JUROR:  Sorry.

21          THE COURT:  My wife says that's one of my only

22  virtues.

23          Do you feel that that association would prevent or

24  hinder you in any way from rendering a fair and an impartial

25  verdict in this case based only on the evidence and the

1    Court's instructions on the law?

2              THE JUROR:  No, I do not.

3              THE COURT:  Thank you.  You may be seated.

4              Next.

5              All right.  That completes that.

6              Now, let me ask Mr. -- oh, one more.

7              THE JUROR:  0003.  My uncle works in the research --

8              THE COURT:  I'm sorry, sir, I can't hear you.

9              THE JUROR:  I'm sorry.  Is that better, sir?

10             THE COURT:  Yes.  0003.  And go ahead, sir.

11             THE JUROR:  My uncle works for the federal

12   government in the federal judiciary and he does research for

13   court cases and for judges.

14             THE COURT:  And do you know what area he works in?

15   Does he work for the Federal Judicial Center?

16             THE JUROR:  Yes.

17             THE COURT:  All right.  Do you feel that that

18   relationship would prevent or hinder you in any way from

19   rendering a fair and an impartial verdict in this case based

20   only on the evidence and the Court's instructions on the law?

21             THE JUROR:  No.

22             THE COURT:  Thank you, sir.  You may be seated.

23             Anyone else?

24             All right.  Let's turn now, Mr. Ketcham and Mr.

25   Zehnle and Mr. Nanavati, all of you are here.  You may all

U.S. v. Manafort

28

1   stand and introduce yourselves to the jury, please.  And you

2   may introduce your client as well to the jury panel.

3          MR. WESTLING:  Good morning, ladies and gentlemen.

4   My name is Richard Westling.  I practice with the law firm of

5   Epstein, Becker & Green in Washington, D.C.  And Mr. Manafort,

6   our client, is with us here this morning.

7          MR. KETCHAM:  My name is Brian Ketcham.  I practice

8   with the law firm of Kostelanetz & Fink.  And I'm also here

9   for Mr. Manafort this morning.

10          MR. DOWNING:  Good morning.  My name is Kevin

11   Downing and I practice at the Law Firm of Kevin Downing.

12          MR. ZEHNLE:  Good morning.  My name is Thomas Zehnle

13   and I represent Mr. Manafort as well.

14          MR. NANAVATI:  My name is Jay Nanavati.  I also work

15   at Kostelanetz & Fink with Brian Ketcham.

16          THE COURT:  All right.  You may be seated.

17          Ladies and gentlemen, do you or any member of your

18   family, so far as you know, know any of these individuals or

19   have you had any business or social dealings of any kind

20   whatsoever with any of them?

21          And the record will reflect no hands.

22          Now, I missed, to some extent, the two law firms.  I

23   want to inquire whether they know any of the attorneys or

24   employees of that law firm.  So would you tell me what law

25   firms again.

1          MR. WESTLING:  Sure.  Epstein, Becker & Green and

2    Kostelanetz & Fink are the two law firms.

3          THE COURT:  All right.  Do you or any member of your

4    family, so far as you know, know any of the attorneys or

5    employees of those firms or have you had any business or

6    social dealings of any kind whatsoever with any of them?

7          All right.  The record will reflect no hands in that

8    respect either.

9          All right.  Next, I'm going to ask a number of

10   jurors to come to the bench individually where I will ask some

11   specific questions stemming from your answers to the

12   questionnaires.  And that will be done up here at the bench in

13   the relative privacy of bench and counsel.

14         I do that to preserve your privacy as to any

15   information you may have to provide.  And also to prevent any

16   information that may disable you from serving as a juror from

17   also disabling others.

18         And this device that I have here to use to mask the

19   conversations at the bench was first installed nearly 31 years

20   ago.  At my age, one does a lot of reminiscing.  The young

21   person who installed the device in the old courthouse on

22   Washington Street in the courtroom that I then used, assured

23   me that this device would sound like waves breaking gently on

24   some distant tropical romantic beach and that it would serve

25   to mask the conversations that occur here at the bench.

U.S. v. Manafort

30

1          I'll ask you in a few minutes whether it succeeds in

2    either respect.

3          All right.  Let's begin with jurors 281, 288, 154

4    and 143.  Now, you only need to come forward one at a time.

5    Mr. Flood, the court security officer, will line you up here

6    at the bench and have you come forward one at a time.

7          Now, counsel may come forward as well.

8          If you can do so, I'd ask that you keep the

9    population of lawyers to a dull roar, so that we can

10   accommodate everybody -- everyone here.

11         (Bench Conference.)

12         THE COURT:  Yes, let's put the Government here and

13   the defendant here.

14         Let me tell you that the four that I've called are

15   four that I thought the Government wanted returned on the

16   basis of their questionnaires.  Two of them anyway.  I added

17   two that seemed to fall in the same category.

18         And essentially what I'm going to ask them is -- I

19   don't have the questionnaire in front of me which is my

20   failing.  But they expressed a possible bias.  And I'm going

21   to ask them whether they have any bias based on what they've

22   heard.

23         And when they tell me, I will ask them questions to

24   ascertain whether they can put that aside and judge the case

25   fairly and impartially based only on the evidence and the

———U.S. v. Manafort———

1 Court's instructions.

2          I will not try to browbeat these people into

3 something that they have not said.  I've done that in the

4 past, and I'm not sure if I was right in doing so, but I'm

5 clear that I'm not right in doing so today.

6          I'll ask them questions here at the bench.  And then

7 I'll have them step aside and I'll give you all an opportunity

8 to suggest to me any additional questions you want me to ask

9 them on that subject.

10          I do that so that I ask all the questions.  In the

11 30 years plus of doing jury voir dire, I have asked a great

12 many jurors and they, typically all of them, resent lawyers

13 asking the questions.  But they seem to accept my asking the

14 questions.

15          So I'll relieve you of getting them to dislike you

16 and I'll let them focus their views on me.

17          MR. ANDRES:  Can we get the numbers?

18          THE COURT:  Yes, they're coming.

19          What's the number?

20          THE CSO:  281.

21          (Juror 281 present.)

22          THE COURT:  Yes, ma'am.  Good morning.

23          THE JUROR:  Good morning.

24          THE COURT:  In your questionnaire I think you

25 indicated that you might have a view about this case.  Tell --

U.S. v. Manafort

32

1          THE JUROR:  Based on -- based on media.

2          THE COURT:  Yes.

3          THE JUROR:  What the media has to say.

4          THE COURT:  And what is -- what view have you

5     formed?

6          THE JUROR:  Well, there's a possibility that he

7     might have done what he's being accused of doing.

8          THE COURT:  All right.

9          THE JUROR:  It's -- it's -- I'm somewhat jaded,

10    because of the manner in which this has come forward.

11         THE COURT:  What do you mean by that?

12         THE JUROR:  Well, as part of Mr. Mueller's

13    investigation, in that manner.  But, I mean innocent until

14    proven guilty, that's what I say.

15         THE COURT:  All right.  Are you prepared to put any

16    opinions that you have to one side --

17         THE JUROR:  Absolutely.

18         THE COURT:  -- and judge this case fairly and

19    impartially based only on the evidence and the Court's

20    instructions?

21         THE JUROR:  Yes.

22         THE COURT:  All right.  Thank you.  Would you step

23    over there about 20 feet or so and I'll see if I need to call

24    you back.

25              (Juror 281 not present.)

————————U.S. v. Manafort————————

33

1          THE COURT:  Any further questions of her?

2          MR. ASONYE:  Your Honor, she made some reference to

3     the manner of Mr. Mueller's investigation.  I'm trying to

4     understand what she -- what she has formed her opinions about

5     the Government's investigation about Mr. Manafort, what is she

6     referring to when she says that.

7          THE COURT:  All right.  Do you have any further

8     questions of this person?

9          MR. WESTLING:  In her questionnaire, Your Honor, she

10    said it's likely the defendant was involved and he

11    participated in the actions, if we could just follow up on

12    that a little more.

13         THE COURT:  Yes.  Hang on just a moment.  All right.

14    Which question are you referring to?

15         MR. WESTLING:  I believe it's following the media

16    question.  It should be in the middle of the page.

17         MR. ASONYE:  Your Honor, the reference to the

18    Mueller investigation is in 25B, as in boy.

19         THE COURT:  Yes, here it is.

20         MR. WESTLING:  I think her comments about that are

21    on the next page.

22         THE COURT:  All right.

23         THE DEPUTY CLERK:  281.

24         (Juror 281 present.)

25         THE COURT:  Yes, ma'am.  I had just a few more

U.S. v. Manafort

34

1  questions related to your responses to the form.  You

2  indicated that you said it is likely that defendant was

3  involved in and/or participated in the actions, events made

4  public.  However, I'm not sure I like the manner in which the

5  discovery was made, i.e., the Mueller investigation of Russian

6  interference, collusion.

7          Do you recall that?

8          THE JUROR:  Yes.

9          THE COURT:  Can you tell me a little bit more about

10 what you meant by that?

11         THE JUROR:  I feel that the Mueller investigation is

12 dragging on and dragging on.  And again, this is all based on

13 what I read or hear in the media.  And I feel at some point

14 that maybe -- I hate to use this term but for lack of a better

15 of term, you know, when they say "witch hunt."  I just feel,

16 I'm not sure that it's -- that the investigation has gone

17 beyond its scope.  And so that's my -- that's where I stand.

18 I'm not sure I like the way in which this situation has come

19 forth.

20         THE COURT:  All right.  Thank you.  Now, let me ask

21 you once again.  I understand what you've expressed.  Do you

22 think you can put those feelings entirely to one side and

23 judge this case fairly and impartially based only on the

24 evidence and the Court's instructions on the law?

25         THE JUROR:  I do believe I can based on my personal

U.S. v. Manafort

35

1   background.

2           THE COURT:  Yes, you've noted that.

3           THE JUROR:  I do believe I can.

4           THE COURT:  And you think you can be fair to the

5   defendant and to the Government in this case?

6           THE JUROR:  Yes, I believe I can.

7           THE COURT:  All right.  Thank you.  You may return

8   to your seat.

9           THE JUROR:  Thank you.

10          (Juror 281 not present.)

11          THE COURT:  All right.  Anything further?  I think

12  you have an adequate basis now to exercise your decisions

13  about whether you'd want to strike that person preemptively.

14          Let me have you come forward.  I sort of don't want

15  you behind me if you don't mind.

16          MR. ASONYE:  Your Honor, I think at this time the

17  Government would --

18          THE COURT:  Yes, I'll take motions to strike at the

19  end, but.

20          MR. ASONYE:  All right.

21          THE COURT:  Well, let's do it now when it's fresh in

22  my mind.

23          MR. ASONYE:  The Government would move to strike

24  this witness.  She's clearly indicated that she does not like

25  the circumstances of how the Government's investigation has

36

1    come about.  I know, Your Honor, she did indicate that she

2    could be fair but there definitely was a large amount of

3    hesitancy when she thought about it.

4              THE COURT:  She also said she thought that he's

5    probably involved.

6              MR. ASONYE:  Correct.  The defendant was likely

7    involved in the actions.

8              THE COURT:  Do you oppose or do you join?

9              MR. WESTLING:  I think we join, Your Honor.

10             THE COURT:  All right.  I will have her stricken by

11   agreement of counsel.

12             MR. WESTLING:  Thank you, Your Honor.

13             THE CSO:  154.

14             (Juror 154 present.)

15             THE COURT:  Good morning, sir.  If you'd stand right

16   here, please.  In your responses to the questionnaire, you

17   indicated that you had an opinion about or you had formed an

18   opinion.  Do you recall that?

19             THE JUROR:  Yes.  From some articles that I've read.

20             THE COURT:  All right.

21             THE JUROR:  Not necessarily formed one, but it

22   didn't paint a favorable light.

23             THE COURT:  Yes.  Have you formed any opinion about

24   this case?

25             THE JUROR:  No, I don't think I have.

U.S. v. Manafort

37

1          THE COURT:  Well --

2          THE JUROR:  No, I haven't.

3          THE COURT:  We have to be clear about that.

4          THE JUROR:  Okay.  Okay.

5          THE COURT:  Now, do you feel you can put to one side

6    everything you've read or seen or heard about this case and

7    judge this case fairly and impartially only on the evidence

8    you hear in the courtroom and the Court's instructions on the

9    law?

10          THE JUROR:  Yes, yes.

11          THE COURT:  All right.  Would you step over there

12   about 20 feet if you would, please, sir.

13          (Juror 154 not present.)

14          THE COURT:  Anything further for this person?

15          MR. ASONYE:  Yes, Your Honor, we did want to ask him

16   about, he said I try to keep an open mind but the National

17   Review exposé gives some doubt as to total innocence.  And the

18   Government had a question about what is it that he read in

19   this National Review exposé that causes him to have doubt

20   about his total innocence.

21          THE COURT:  What's you view?

22          MR. WESTLING:  I think we'd agree with that, Your

23   Honor.  We think it's also important either way just to be

24   sure that we specifically, if the Court would ask him whether

25   he can put that out of his mind, that specific article, since

U.S. v. Manafort

38

1    he did mention it.

2            THE COURT:  All right.  Return please.

3            (Juror 154 present.)

4            THE COURT:  Sir, you mentioned a specific article

5    that you had read in the National Review.

6            THE JUROR:  Yes.

7            THE COURT:  Do you recall what that article was?

8            THE JUROR:  It was more or less an exposé on Mr.

9    Manafort late -- late last year.

10           THE COURT:  All right.  And did that -- reading that

11   article cause you to form any opinion at all about this case?

12           THE JUROR:  Not on the case, no.

13           THE COURT:  And do you feel you can put to one side

14   what you've read in that article and judge this case fairly

15   and impartially based only on the evidence and the Court's

16   instructions on the law?

17           THE JUROR:  Yes.

18           THE COURT:  Thank you.  You may return to your seat.

19           (Juror 154 not present.)

20           THE COURT:  All right.  I think that's sufficient on

21   which you can exercise your peremptory.  Is there a peremptory

22   challenge as to him?  Is there a challenge for cause is what I

23   mean.

24           MR. ASONYE:  Not from the Government, Your Honor.

25           MR. WESTLING:  Your Honor, we would make a challenge

─────U.S. v. Manafort─────

39

1   for cause.  While he is indicating his ability to be fair, the

2   question didn't indicate that as for keeping doubt in his mind

3   about total innocence, which obviously is inappropriate at

4   this point in this proceeding.

5            THE COURT:  All right.  It comes as a little bit of

6   a surprise that somebody who reads the National Review -- of

7   course the National Review hasn't been entirely complimentary

8   of anybody in this matter, but I'm going to deny the motion to

9   strike for cause.  I don't think there's any basis to

10  disbelieve his statement to me.  I looked him straight in the

11  eye and he said he could put it to one side.  If we begin

12  getting rid of people because of certain magazines they read,

13  we have reached a dangerous situation.  Then we could only

14  seat people who didn't read.

15           MR. WESTLING:  True.

16           THE CSO:  288.

17           (Juror 288 present.)

18           THE COURT:  Good morning, sir.

19           THE JUROR:  Good morning.

20           THE COURT:  In your questionnaire I believe one of

21  your responses indicated that you had seen or read or heard

22  something about this case that maybe caused you to have some

23  view.  Do you recall that?

24           THE JUROR:  Not really.  I saw it on the news.

25           THE COURT:  Right.  Have you formed any opinion as

U.S. v. Manafort

40

1   to the -- as to the guilt or innocence of the defendant or any

2   view about this case?

3                THE JUROR:  No.

4                THE COURT:  Do you feel you can put to one side

5   anything you may have seen or read or heard and judge this

6   case fairly and impartially based only on the evidence and the

7   Court's instructions on the law?

8                THE JUROR:  Sure.

9                THE COURT:  Any hesitation?

10               THE JUROR:  I put some other stuff in there too,

11  that you're not talking about that.

12               THE COURT:  All right.  Tell me about that.

13               THE JUROR:  I work in sales and I get paid for

14  selling.  If I'm not at work for three to four weeks, I lose a

15  lot of income.

16               THE COURT:  I see.  What do you sell?

17               THE JUROR:  I'm in construction.  I sell materials,

18  services, labor services.

19               THE COURT:  So are you saying that if you had to

20  serve on the jury for three to four weeks, that that would

21  have a significant and serious impact?

22               THE JUROR:  On my family, yes, sir.

23               THE COURT:  Are you self employed?

24               THE JUROR:  I'm a salesman for a lumber company but

25  I work for a company.

1          THE COURT:  Are you paid on a commission basis?

2          THE JUROR:  Yes, sir.

3          THE COURT:  So if you don't sell, you don't earn?

4          THE JUROR:  That's correct.  I mean I have -- yeah.

5          THE COURT:  Well, thank you for calling that to my

6     attention.  Jury service is a sacrifice for everyone.

7          THE JUROR:  I've done it before.

8          THE COURT:  You may not be selected.  If you're not

9     selected, fine.  But if you're selected, I will ask that you

10    find a way to make arrangements.  Thank you, sir.

11         THE JUROR:  All right.

12         (Juror 288 not present.)

13         THE COURT:  I'm inclined on the Court's own motion

14    to strike him.  Unless there is an objection by either party.

15    A person who subsists chiefly for himself and his family on

16    the basis of commissions from sales that he would be unable to

17    make during the period of the trial, is asked to make a very,

18    very serious sacrifice.  And therefore, he would be resentful.

19         And any objection to striking this juror?

20         MR. ANDRES:  No, Judge.

21         MR. WESTLING:  None from the defense, Your Honor.

22         THE COURT:  All right.  288 is stricken.

23         THE CSO:  143.

24         (Juror 143 present.)

25         THE COURT:  Yes, sir, good morning.

U.S. v. Manafort

42

1          THE JUROR:  Good morning.

2          THE COURT:  In your responses to your questionnaire,

3     you indicated that you had seen or read or heard something

4     about the case and it had had some impact on you, is that

5     correct?

6          THE JUROR:  I believe that I had indicated that I

7     had seen something but I don't believe that I -- that I said

8     that it had impact.

9          THE COURT:  All right.  What have you seen or read

10    or heard about the case?

11         THE JUROR:  Mostly what I've read was from the basic

12    Daily News digest, I've read some of the basic stuff about

13    where the trial was, what the jury selection was.  Since I

14    work in a field where you have to leave your phone in your

15    car, I actually did some research at some point into how

16    others got around that problem, and I think at one point that

17    led me to some of the dealings with this case as well.

18         THE COURT:  And how is that?

19         THE JUROR:  How is?

20         THE COURT:  How is it that your research into how

21    you get a phone in somewhere --

22         THE JUROR:  Because how people deal with keeping

23    their phone from not running out of their battery when they're

24    in the car all day.

25         THE COURT:  I see.

─────────────U.S. v. Manafort─────────────

43

1          THE JUROR:  Because if you're not allowed to take

2    your phone in the building and your parking is -- and you're

3    parking in areas that are isolated, that are -- that are

4    exposed to the elements, and you -- it tends to be pretty bad

5    on batteries when your phone is in such a place for say eight

6    hours.

7          THE COURT:  Now, do you feel that anything you've

8    seen or read or heard or know about this case, do you feel you

9    can put that all to one side and judge this case fairly and

10   impartially based only on the evidence and the Court's

11   instructions?

12         THE JUROR:  I do believe so.

13         THE COURT:  All right.  Would you step over there

14   about 20 feet, please.

15         (Juror 143 not present.)

16         THE COURT:  Any further questions on behalf of the

17   Government?

18         MR. ANDRES:  I'm not sure that he understood the

19   questions or answered them responsively.  So to the extent

20   there is another question to ask but --

21         THE COURT:  Well, that comment is a comment that

22   might influence your decision on whether you strike him

23   preemptively.  It doesn't really indicate any bias.  But I saw

24   him and I saw what you observed as well.

25         Are there any further questions at this time?

─────────────────── U.S. v. Manafort ───────────────────

44

1            MR. ASONYE:  Not from the Government.

2            THE COURT:  All right.

3            MR. WESTLING:  Your Honor, I don't have any further

4    questions on the issue of bias.  I will note that Juror 143

5    indicated on his questionnaire that he had a borderline

6    auditory processing disorder that makes it very difficult for

7    him to learn some auditory information.  I don't know if we

8    should bring that up now but it seems to me that that may --

9            THE COURT:  Well, let me ask this:  Does either side

10   object to my striking him?

11           MR. WESTLING:  No, Your Honor.

12           MR. ANDRES:  No, Judge.

13           THE COURT:  All right.  He is stricken.  That's 143.

14           Thank you.  You may return to your seat.

15           (Juror 143 not present.)

16           THE COURT:  All right.  That's that group of jurors.

17   I'm now going to proceed to a group of jurors that has to do

18   with their vacation and other plans.  We'll get that resolved.

19           (Open court.)

20           THE COURT:  All right.  Ladies and gentlemen, I have

21   some additional questions, but let me inquire.  How many of

22   you were able to recognize that that sound is like waves

23   breaking gently?  Did it?  How many of you don't believe it

24   does sound like waves?

25           All right.  I'm glad to see that so many of you are

U.S. v. Manafort

45

1  so familiar with that sound that you can make that instant

2  judgment.  It's been so long since I've heard it, I doubt I

3  would know the difference.

4         But in any event, did it mask the conversations here

5  at the bench?

6         THE JURORS:  Yes.

7         THE COURT:  Good.  All right.  We'll proceed now.

8  I'm going to ask you a series of questions individually here

9  at the bench, and these turn on your indications in your

10  questionnaires about obligations, vacations and the like.

11         Let me have the following:  286, 300, 275, 291, 127,

12  153, 133, 60, 84, 97, 48, 94, and 121.

13         Now, you don't have to remember all those numbers.

14  You all don't have to stand there.  You can go sit down and

15  I'll call out the numbers as I need you.

16         But the first gentleman, are you 286?

17         THE JUROR:  Yes, Your Honor.

18         THE COURT:  All right.  We'll start with you then

19  please, sir.  And I'll call -- Mr. Flood, I'll call the other

20  numbers out as we need them.

21         All right.  Let's have the device on again.  Go back

22  to the beach.

23         (Bench Conference.)

24         (Juror 286 present.)

25         THE JUROR:  Good morning.

U.S. v. Manafort

46

1          THE COURT:  Good morning, sir.  You're an attorney?

2          THE JUROR:  Yes, I am.

3          THE COURT:  If you could come forward a little bit

4    more.  What is the nature of your practice?

5          THE JUROR:  I'm a real estate attorney, specifically

6    dealing in zoning and land use.  So I represent clients in --

7    zoning specialists in land use and town processes.

8          THE COURT:  Have you ever had any training in

9    criminal law other than that which you received in law school?

10          THE JUROR:  None whatsoever.

11          THE COURT:  And in fact, I could answer that

12    question even including, because they don't do much in law

13    school --

14          THE JUROR:  Not much.

15          THE COURT:  -- on criminal law.

16          THE JUROR:  Criminal procedure and criminal law,

17    that was about it.

18          THE COURT:  That's correct.  And have you ever

19    represented a defendant in a criminal case?

20          THE JUROR:  No.

21          THE COURT:  Now, you have indicated in here that you

22    have some obligations in August.

23          THE JUROR:  I do.

24          THE COURT:  Can you tell me about that?

25          THE JUROR:  I actually have a public hearing this

47

1   afternoon in Fairfax County.  I have made alternate

2   arrangements to have somebody else represent the client there

3   but it's kind of an ongoing basis I have meetings with local

4   government officials, county and city staff, so on and so

5   forth.

6           I'll say that it's nothing that's life or death.

7   There's no such thing as a zoning emergency.  So nothing

8   that's truly 100 percent exigent, but I'd be remiss if I

9   didn't answer the question that I do have those obligations on

10  an ongoing basis.

11          THE COURT:  I will remember what you just said in

12  the next zoning case I have where I can say that I've had it

13  authoritatively represented to me that there's no such thing

14  as a zoning emergency.

15          THE JUROR:  I try to tell that to my clients.  It

16  doesn't always work.

17          THE COURT:  All right.  Well, of course, jury

18  service imposes a significant inconvenience on everyone.  You

19  may not be selected, but if you are, I will ask that you make

20  other arrangements.

21          Do you have any other problems in August?

22          THE JUROR:  One other thing.  And again, I would be

23  remiss and my wife would give it to me if I didn't mention it.

24  We do have our anniversary coming up next weekend and we

25  planned to spend a long weekend in Cape Charles, Virginia,

U.S. v. Manafort

48

1  Saturday through Monday.  But again, if absolutely necessary,

2  I'd probably make it work.

3          THE COURT:  Thank you.  Step over there if you would

4  please about 20 feet.

5          (Juror 286 not present.)

6          THE COURT:  Anything further to ask?

7          MR. ASONYE:  No, Judge.

8          MR. WESTLING:  On a different topic, but I do note

9  in his questionnaire he said his opinion was not final but the

10 allegations against Mr. Manafort are somewhat founded, and

11 that he could probably be fair and impartial.  If the Court

12 would be willing to explore that with him.

13         THE COURT:  All right.  Any objections to that?

14         MR. ANDRES:  No, objection, Your Honor.

15         (Juror 286 present.)

16         THE COURT:  Yes, sir.  In your responses you've

17 indicated that -- that the evidence seemed to be significant

18 against Mr. Manafort.  Do you recall that?

19         THE JUROR:  I do.  I will say that, you know, up

20 until last week I had been reading occasional articles, things

21 like that.  Truth be told, I don't follow the news all that

22 closely, but this has received a lot of attention so I have

23 been reading about it.  But, after filling out the

24 questionnaire last week I put the blinders on.  I haven't read

25 anything else.  I haven't watched the news or anything like

U.S. v. Manafort

49

1   that, but I don't think you can read an article these days or

2   watch anything on TV without having at least formed an opinion

3   somewhat, so.

4          THE COURT:  Have you formed any opinion at all about

5   this case?

6          THE JUROR:  Other than, again, based upon what I've

7   read, it seems like there is some compelling evidence out

8   there.  I haven't heard formal evidence obviously.  The

9   Government has not introduced anything.  Other than the short

10  articles I read online, I haven't read a whole lot into this

11  matter.  But, you know, I -- I did want to at least mention

12  that it does seem there is some compelling evidence in this

13  case.

14         THE COURT:  Do you feel you can put your feelings

15  that there is some compelling evidence in this case to one

16  side?

17         THE JUROR:  I do.

18         THE COURT:  Do you feel you can judge this case

19  fairly and impartially based only on the evidence you see and

20  hear presented here, not on anything you may have read?

21         THE JUROR:  I do.  I do think that as an attorney I

22  think that I respect the justice system of the United States

23  to the point that I could adequately put my feelings aside,

24  personal biases aside, to the extent I have any, and do it

25  effectively .

U.S. v. Manafort

50

1          THE COURT:  All right.  Thank you.  You may step

2     down there for just a moment.

3               (Juror 286 not present.)

4          THE COURT:  Anything further?

5          MR. WESTLING:  No, Your Honor.

6          MR. ANDRES:  No, Judge.

7          THE LAW CLERK:  He had child care obligations.

8          THE COURT:  Okay.

9               (Juror 286 present.)

10         THE COURT:  I'm reminded that you also noted child

11    care responsibilities.  What are they?

12         THE JUROR:  So I have a 14-month-old son at home and

13    my wife and I kind of divvy up the day care pickup.  And

14    evening care duty, I try to do it once or twice a week.  She

15    does it the remainder of the week.  So again, if need be, we

16    can work something out for a couple of weeks.  I've already

17    talked to my wife a little bit about it and said if there's a

18    chance I'm on this jury, we could probably work something out.

19         THE COURT:  All right.  You may not be selected.  If

20    you are not selected, of course, that's fine.  But if you are,

21    I will ask that you make other arrangements.

22         THE JUROR:  I'm confident that I'll be able to do

23    that.

24         THE COURT:  Thank you.  You may return to your seat.

25         THE JUROR:  Thank you, Your Honor.

─────U.S. v. Manafort─────

1              (Juror 286 not present.)

2         THE COURT:  All right.  Any motions to strike this

3  particular person for cause on the basis of what you've heard?

4         MR. ANDRES:  Not from the Government.

5         MR. WESTLING:  I would only make one on behalf of

6  his wife.  I want to make sure he goes on that anniversary

7  trip.

8         THE COURT:  0300.  What is it?  Oh, yes.  Yes, sir,

9  come forward.

10             (Juror 300 present.)

11        THE COURT:  Good morning.

12        THE JUROR:  Good morning.

13        THE COURT:  Now, you have vacation plans with your

14  children during August?

15        THE JUROR:  Yes.

16        THE COURT:  When?

17        THE JUROR:  August 9th.

18        THE COURT:  And for how long?

19        THE JUROR:  I drop them off there.  They visit my

20  family in Jersey.  I bring them up there.

21        THE COURT:  All right.  Do you stay up there?

22        THE JUROR:  I can.  Usually for a week.

23        THE COURT:  All right.  And so if you are selected

24  to serve as a juror, of course, the case would last beyond

25  August 9th.  Would that present any inconvenience to you?

U.S. v. Manafort

52

1          THE WITNESS:  No.  I would just leave them up there

2    with my family.

3          THE COURT:  All right.  Thank you, sir.  Would you

4    step right over there, please.

5          (Juror 300 not present.)

6          THE COURT:  Any further questions of this particular

7    juror on behalf of the Government?

8          MR. ANDRES:  Judge, he did also indicate in question

9    25D that he had read the information and he said he tends not

10   to make a decision based on the media.

11         THE COURT:  And he said he can't remember what he

12   read.

13         MR. ANDRES:  I'd just be interested to know what

14   specifically he read and to ask him about that.

15         THE COURT:  What's your view?  Anything further?

16         MR. WESTLING:  I don't have anything further, Your

17   Honor.

18         (Juror 300 present.)

19         THE COURT:  It indicates here, sir, in your response

20   that you read something but you can't remember what you read

21   about the case.

22         THE JUROR:  Sure.

23         THE COURT:  Do you remember it now?

24         THE JUROR:  No, not at all.  I listen to the radio

25   when I go to work and when I come home, and I hear all sorts

─U.S. v. Manafort─

53

1    of things.  To be honest, it's all a blur right now.

2              THE COURT:  Yes.  I listen to books on tape.  And I

3    find that's the best thing to listen to.

4              THE JUROR:  I listen to sports and news on the radio

5    but maybe I should do that instead.

6              THE COURT:  All right.  Do you feel you can put to

7    one side anything you may have read and judge this case fairly

8    and impartially based only on the evidence and the Court's

9    instructions on the law?

10             THE JUROR:  The only thing I can remember is the

11   name being mentioned on the radio.  So that's -- so I can,

12   yes.

13             THE COURT:  Thank you.  You may return to your seat,

14   sir.

15             (Juror 300 not present.)

16             THE COURT:  Any reason to move to strike?

17             MR. ANDRES:  Not at this time, Judge.

18             MR. WESTLING:  No, Your Honor.

19             THE COURT:  There isn't going to be another time.

20             MR. ANDRES:  No, understood, Judge.

21             THE COURT:  Right.  275.

22             (Juror 275 present.)

23             THE COURT:  Yes, ma'am.  You indicated -- come

24   forward, please.  You indicated that you had vacation plans?

25             THE JUROR:  No.  It's a business trip.

U.S. v. Manafort

54

1          THE COURT:  And when is it?

2          THE JUROR:  It's August 15th and 16th.  In

3   Minneapolis.  I'm teaching a class on actually contract

4   negotiations.

5          THE COURT:  All right.  And are you an attorney?

6          THE JUROR:  I am not.

7          THE COURT:  And -- but you obviously are an expert

8   or have experience in contract negotiation.

9          THE JUROR:  I do events for a living, so we do 120

10  contracts a year.

11         THE COURT:  And is this event already set, been

12  contracted?

13         THE JUROR:  Yes, sir.

14         THE COURT:  And is your name already in a program?

15         THE JUROR:  I don't think the program has been

16  distributed, but I'm on as one of the facilitators.

17         THE COURT:  All right.  If you're selected to serve

18  as a juror, could you make alternate arrangements?

19         THE JUROR:  The difficulty would be I wrote the

20  curriculum, so I'd have to, over the course of the next two

21  weeks, bring somebody up to speed on the curriculum.

22         THE COURT:  All right.  Would you step over there

23  about 20 feet, please.

24         THE JUROR:  Yes.

25         (Juror 275 not present.)

U.S. v. Manafort

55

1        THE COURT:  Anything further for this particular

2   person?

3        MR. ANDRES:  No, Judge.

4        MR. WESTLING:  No, Your Honor.

5        THE COURT:  All right.  What's your view on whether

6   she should be stricken?

7        MR. ANDRES:  Judge, just based on what she

8   represented with respect to other people and things, she can't

9   be replaced, we move to strike.

10        MR. WESTLING:  Your Honor, we think that the

11   situation sounds like she's written a book she's going to be

12   teaching from.  So I think she'd have her mind elsewhere.

13        THE COURT:  Well, I'm not going to strike her unless

14   both sides agree.

15        MR. ASONYE:  No, we're fine, Your Honor.

16        THE COURT:  So you would resist.

17        MR. ASONYE:  We will -- we object to striking her.

18        THE COURT:  All right.  So she will not be stricken.

19   You may return to your seat.

20        291.

21        (Juror 291 present.)

22        THE COURT:  Yes, sir, come forward if you would,

23   please and stand there.

24        I'm looking.  I thought you had indicated you had

25   seen or read or heard or knew about this case from any source

—————————U.S. v. Manafort————————

1    whatever.  Have you?

2          THE JUROR:  No.  I haven't.  I think I wrote -- I

3    think I wrote no.

4          THE COURT:  Yes.  I think you said that you read

5    stuff shared on Facebook.  What was that?

6          THE JUROR:  Oh, I read -- let me think.  I read the

7    name but I don't really -- I don't even remember what it was

8    about actually.

9          THE COURT:  All right.  Do you feel you can put to

10   one side anything you may have read or seen about this case

11   and judge it -- judge this case fairly and impartially based

12   only on the evidence and the Court's instructions?

13         THE JUROR:  Yes.  Yeah, I can do that.

14         THE COURT:  All right.  Thank you.  Would you stand

15   over there, please.

16         (Juror 291 not present.)

17         THE COURT:  Do you have anything further for this

18   individual?

19         MR. ASONYE:  Your Honor, he said that he was a full

20   time student and we have a question about when school starts.

21         MR. WESTLING:  He also indicated, Your Honor, that

22   he's a laborer and would be missing three weeks of income.

23   Oh, I'm sorry, I may be reading the wrong chart, so I

24   apologize.  Strike that.

25         MR. ASONYE:  He had a DUI, if you can ask about that

─────U.S. v. Manafort─────

57

1    experience and experience with law enforcement.

2              THE COURT:  All right.

3              (Juror 291 present.)

4              THE COURT:  Are you a full time student?

5              THE JUROR:  Yeah.

6              THE COURT:  Where?

7              THE JUROR:  NOVA.

8              THE COURT:  And what do you study?

9              THE JUROR:  Computer science.

10             THE COURT:  When did you start?

11             THE JUROR:  I'm going to summer school right now but

12   I'll be starting, when is it?  Whenever the -- whenever the

13   fall semester starts for the next upcoming semester.  But I

14   take night classes because I work full time also.

15             THE COURT:  So you're currently attending night

16   school in addition to working during the day.

17             THE JUROR:  Yes.

18             THE COURT:  And if you were selected to serve as a

19   juror, would you continue going to night school?

20             THE JUROR:  Yeah.

21             THE COURT:  When do you start or finish night school

22   and start regular school?

23             THE JUROR:  Well, I'm always doing night school

24   because that's how my work schedule works.  So I've been doing

25   night school for like a year now.

─────────U.S. v. Manafort─────────

58

1          THE COURT:  And where do you work now?

2          THE JUROR:  A natural gas company called

3    InfraSource.

4          THE COURT:  And what do you do there?

5          THE JUROR:  I'm a laborer.

6          THE COURT:  All right.  Let me ask again, do you

7    feel you can put to one side anything you may have seen or

8    read or heard about this case to one side and judge it only on

9    the basis of what you see and hear presented in the courtroom?

10          THE JUROR:  Yes.  Yeah.

11          THE COURT:  All right, sir.  What was the other

12   matter?  Yes.

13          You indicated in your form that you had been charged

14   with DUI.

15          THE JUROR:  Yeah.

16          THE COURT:  What was the outcome?

17          THE JUROR:  I just took a -- they dropped the

18   charges and I got a reckless driving.

19          THE COURT:  Do you feel that you were treated fairly

20   by the criminal justice system?

21          THE JUROR:  Yeah.

22          THE COURT:  Do you understand that matter has

23   nothing to do with this case?

24          THE JUROR:  Yeah, yeah.

25          THE COURT:  Do you feel you can put your feelings

U.S. v. Manafort

59

1   about that case to one side and judge this case fairly and

2   impartially?

3            THE JUROR:  Umm-hmm.  Yeah.

4            THE COURT:  You may return to your seat.

5            (Juror 291 not present.)

6            THE COURT:  127.

7            MR. ASONYE:  Your Honor, I think the Government

8   would have a motion to strike that juror given his schedule.

9            THE COURT:  Just a minute.

10           Any objection to it?

11           MR. WESTLING:  No, Your Honor.

12           THE COURT:  All right.  He's stricken.

13           What's the number?

14           MR. ASONYE:  291.

15           THE COURT:  291.

16           (Juror 127 present.)

17           THE COURT:  Yes, ma'am.  Good morning.

18           THE JUROR:  Good morning.

19           THE COURT:  You had plans in August?

20           THE JUROR:  I'm going back to school August 22nd.

21           THE COURT:  And what do you study and where?

22           THE JUROR:  Nursing at the Alexandria campus,

23   Northern Virginia Community College.

24           THE COURT:  I see.  So are you currently doing that

25   too?

U.S. v. Manafort

60

1            THE JUROR:  Right now?

2            THE COURT:  Yes.

3            THE JUROR:  No.  Not until August 22nd.

4            THE COURT:  All right.

5            THE JUROR:  And then --

6            THE COURT:  And you're a full time student as a --

7            THE JUROR:  Yes.  This semester, yes.

8            THE COURT:  And you're trying to become an RN?

9            THE JUROR:  Yes, correct.

10            THE COURT:  All right.  You may not be selected and

11   if you're not, of course, that's all right.  You can then

12   proceed.  But if you're selected, I may ask you to make other

13   arrangements.  Do you understand that?

14            THE JUROR:  Yes.

15            THE COURT:  Thank you.  Stand over there if you

16   would, please.

17            (Juror 127 not present.)

18            THE COURT:  Any objection to striking her?

19            MR. ASONYE:  I think we would object.  I think Your

20   Honor has scheduled to do this for three weeks.  She doesn't

21   start school until August 22nd.  We should be done.

22            THE COURT:  All right.  Any problem with that?

23            MR. WESTLING:  We have no objection with that.

24            THE COURT:  All right.  Then she's not stricken.

25            THE DEPUTY CLERK:  127?

U.S. v. Manafort

61

1          THE COURT:  127 is not stricken.

2          153.

3          Yes, ma'am, if you'd come up here just a minute.

4          (Juror 153 present.)

5          THE COURT:  You've indicated that if you're selected

6     that would present a financial hardship for you, is that

7     right?

8          THE JUROR:  Yes.

9          THE COURT:  You say you wouldn't be able to pay your

10    rent.

11         THE JUROR:  I'm close right now.  I'm moving

12    apartments so I was worried.  I move with my girlfriend on the

13    4th.  So it's about the deposit and figuring that out, but I

14    know if I'm selected for jury duty I'd be paid everyday.  So I

15    guess it wouldn't be an issue.

16         THE COURT:  No.  I think it might be an issue.

17         THE JUROR:  Okay.  All right.

18         THE COURT:  You aren't really paid very much

19    everyday.

20         THE JUROR:  Okay.

21         THE COURT:  So it is an issue.  Can you make other

22    arrangements?

23         THE JUROR:  We've already put the deposit down, so

24    it's kind of cemented that it's August 4th that it's

25    happening.

U.S. v. Manafort

62

1          THE COURT:  Are you currently employed?

2          THE JUROR:  Yes, I am.  So is she.

3          THE COURT:  What do you do?

4          THE JUROR:  I work part-time in downtown

5    Fredericksburg in a local bookstore and my girlfriend is a

6    dental assistant full-time.

7          THE COURT:  All right.  Would you stand over there a

8    little ways, please.

9          (Juror 153 not present.)

10          THE COURT:  Any further questions of this person?

11          (No audible response.)

12          THE COURT:  All right.  None from the Government.

13    How about for the defendant?

14          MR. WESTLING:  She did indicate in her

15    questionnaire, Your Honor, that she has formed an opinion as

16    to guilt or innocence, but I'm not even sure what that was.

17    It seemed like she believed the evidence that shows Mr.

18    Manafort is guilty.  So I'd like to inquire about that.

19          THE COURT:  All right.  Anything else?

20          MR. WESTLING:  No, Your Honor.

21          THE COURT:  We can shorten this, is there any

22    objection to striking her?

23          MR. ASONYE:  I think the Government would object,

24    Your Honor.

25          THE COURT:  All right.  Let's have her come back.

U.S. v. Manafort

63

1          (Juror 153 present.)

2          THE COURT:  You indicated in your responses that you

3  have formed an opinion.

4          THE JUROR:  Yes.

5          THE COURT:  What is the opinion you formed?

6          THE JUROR:  Meaning like a guilty/not guilty kind of

7  thing?

8          THE COURT:  Yes.

9          THE JUROR:  I -- I think what I wrote is kind of

10  more set in stone in what I believe.  And I know that I'm not

11  the most informed person on everything possible, but I do

12  think I've listened to enough and I've read enough that I kind

13  of do think the verdict would become guilty.  But I -- I'm

14  unsure.  I think I need more information to make a more

15  educated --

16          THE COURT:  So have you read a good deal about the

17  case?

18          THE JUROR:  I've listened to podcasts and read

19  articles.  So kind of, yes.

20          THE COURT:  Do you feel you can put all of that to

21  one side and judge this case fairly and impartially?

22          THE JUROR:  No, I can judge it fair and impartially.

23  I can move that aside, yes.

24          THE COURT:  All right.  Would you stand over there

25  please.

U.S. v. Manafort

64

1          (Juror 153 not present.)

2          THE COURT:  Anything further?

3          MR. ANDRES:  Not from the Government.

4          MR. WESTLING:  No further questions, Your Honor.  We

5    would challenge for cause.

6          THE COURT:  All right.  What's your view about

7    cause?

8          MR. ANDRES:  Judge, you asked her if she could put

9    things aside and she said she could, so she answered the basic

10   question.

11         MR. WESTLING:  Your Honor, I think first she was

12   somewhat equivocal in her answers.  In addition, she has this

13   problem with regard to her rent and her working, and it seems

14   to me that combined makes it a strong case that she should be

15   excused for cause.

16         MR. ASONYE:  Your Honor, she's already put the

17   deposit down.

18         THE COURT:  I haven't gone back to you.

19         MR. ASONYE:  Oh, sorry.

20         THE COURT:  Return, please.

21         (Juror 153 present.)

22         THE COURT:  Let me ask you once again, because I

23   need to be clear about it.

24         THE JUROR:  Okay.

25         THE COURT:  You've said that you've read a good deal

──────U.S. v. Manafort──────

65

1  about this case.

2        THE JUROR:  Yes.

3        THE COURT:  And I think you indicated that you

4  were -- have you formed any opinion at all?

5        THE JUROR:  Yes.  I formed an opinion but it's

6  not -- but, yes, I've formed an opinion.

7        THE COURT:  And what is that opinion?

8        THE JUROR:  I believe he's guilty.

9        THE COURT:  And then I asked you whether you could

10  put that aside and judge this case fairly and impartially

11  based only on the evidence and the Court's instructions on the

12  law.

13        THE JUROR:  Yes.

14        THE COURT:  All right.  Thank you.  You may return

15  to your seat.

16        THE JUROR:  Thank you.

17        (Juror 153 not present.)

18        THE COURT:  I'll grant the motion to strike.  She

19  said she's clearly reached an opinion that he's guilty.  I

20  asked her whether she can put it to one side.  She said she

21  can.  I don't believe it.  It's human nature.

22        133.

23        So much for having questionnaires.

24        Just a moment, please.  Just a moment.

25        Let me be clear.  When I said I don't believe her, I

1  believe that she is sincere in her belief that she could do

2  it.  But human nature being what it is, I think that having

3  said that she's formed an opinion that he's guilty and she

4  says she can put it aside, that will invariably affect what

5  she does.

6          But I want to make it clear, it's not that I don't

7  believe her when she said she can put it to one side or that

8  she would put it to one side.  I don't believe that it's

9  humanly possible in the circumstances.

10         I looked her in the eye when she said she thought he

11 was guilty and it was a fairly firm statement.  I'm fairly

12 sure that if she had looked me in the eye and said he was not

13 guilty, that I would be hearing from you what I'm hearing over

14 here.

15         (Juror 133 present.)

16         THE COURT:  Yes, ma'am.  You said in your

17 questionnaire that you had some difficulty with August?

18         THE JUROR:  In August?

19         THE COURT:  August.

20         THE JUROR:  I don't remember that.  Which question

21 was that?  Oh, in August, I'm traveling and dropping my son to

22 Florida.

23         THE COURT:  Ah.  When in August are you doing that?

24         THE JUROR:  August 16th to 22nd.

25         THE COURT:  And where do you have to drop your son

U.S. v. Manafort

67

1  off?

2          THE JUROR:  Near Tampa in Sarasota, IMG Academy.

3          THE COURT:  All right.  And if you're selected as a

4  juror in this case, could you make alternate arrangements to

5  have your son dropped off?

6          THE JUROR:  My husband can do that.

7          THE COURT:  So if you're selected, you could serve

8  then and make other arrangements?

9          THE JUROR:  I believe so.

10         THE COURT:  Thank you.  You may return to your seat.

11         (Juror 133 not present.)

12         THE COURT:  Sixty.

13         MR. ASONYE:  Your Honor, we had one other question

14  for the Court.

15         THE COURT:  Yes.

16         MR. ASONYE:  I believe this juror said she can't be

17  impartial due to stress and anxiety.

18         THE COURT:  All right.  Just a moment.  Let me have

19  133 back again, please.

20         (Juror 133 present.)

21         THE COURT:  Yes.  You had indicated in your

22  questionnaire that this case would place you under great

23  stress, is that right?

24         THE JUROR:  Actually from January I'm going through

25  some stress with management, so that's why I put it there, at

─────U.S. v. Manafort─────

68

1   my work.

2           THE COURT:  All right.  Have you formed any opinion

3   about this case?

4           THE JUROR:  No.

5           THE COURT:  Do you feel you could be fair and

6   impartial both to the Government and the defendant?

7           THE JUROR:  Yes.

8           THE COURT:  So again, the stress that you've

9   indicated in your questionnaire is stress that originates from

10  your employment?

11          THE JUROR:  Yes.

12          THE COURT:  And I think the only thing I see in your

13  questionnaire that would interfere with your service in August

14  is that you have to drop your son off at an academy in Tampa.

15          THE JUROR:  Yes.

16          THE COURT:  What is IMG?

17          THE JUROR:  Oh, IMG is -- I think it's a private

18  academy boarding school.  My son plays basketball, so he's

19  going over there for one year.  Like basically they will prep

20  him for --

21          THE COURT:  All right.  So he's a pretty good

22  basketball player.

23          THE JUROR:  Yeah.  His plan is to go to NBA if he

24  make it.

25          THE COURT:  Is he tall?

U.S. v. Manafort

69

1          THE JUROR:  Yes.  He's 6'4".

2          THE COURT:  That's good.  All right.  If you are

3   selected, do you think you can -- you can handle listening

4   carefully to the evidence as it's presented and rendering a

5   fair and an impartial verdict in this case based only on the

6   evidence and the Court's instructions?

7          THE JUROR:  Yes.

8          THE COURT:  Thank you.  You may return to your seat.

9          (Juror 133 not present.)

10          THE COURT:  Any reason to strike her for cause?

11          MR. ANDRES:  No, Judge.

12          MR. WESTLING:  No, Your Honor.

13          THE COURT:  Sixty.

14          (Juror 60 present.)

15          THE COURT:  Good morning, sir.

16          THE JUROR:  Good morning.

17          THE COURT:  You indicated in your questionnaire that

18   you had plans for August, is that right?

19          THE JUROR:  Well, I'm a teacher, a physical

20   education teacher in Loudoun.  We go back to school August

21   15th as employees, and that's when we have training and stuff

22   that we do for the next weeks after that.  And then I've got a

23   CPR certification I think coming up for some things.  So we've

24   been off all summer but we go back on the 15th and that's

25   pretty important for going back to school.

─────────────────────────── U.S. v. Manafort ───────────────────────────

70

1          THE COURT:  All right.  Apart from your teaching

2    obligations, is there any other reason why you would be unable

3    to sit as a fair and impartial juror in this case?

4          THE JUROR:  No, sir.

5          THE COURT:  All right.  Would you stand over there

6    just a moment, please.

7          (Juror 60 not present.)

8          THE COURT:  Anything further from this person?

9          MR. ANDRES:  No, Judge.

10          MR. WESTLING:  No, Your Honor.

11          THE COURT:  All right.  You may return to your seat,

12    thank you.

13          84.

14          (Juror 84 present.)

15          THE COURT:  Good morning.

16          THE JUROR:  Good morning.

17          THE COURT:  Would you step up here, please.

18          You say in response to your questionnaire that you

19    have a vacation starting on August 17th.

20          THE JUROR:  Actually the 16th.

21          THE COURT:  16th.

22          THE JUROR:  Yes.

23          THE COURT:  I hope you're going somewhere sunny.

24          THE JUROR:  No.  Seattle.

25          THE COURT:  Seattle.

U.S. v. Manafort

71

```
1              THE JUROR:  Could be sunny.
2              THE COURT:  Well, if you drive west -- east about
3    100 miles, you'll see sun.  How long is the vacation?
4              THE JUROR:  Until the 20th, which is Monday.
5              THE COURT:  Is this a family vacation?
6              THE JUROR:  My daughter.
7              THE COURT:  And I take it travel arrangements have
8    already been made?
9              THE JUROR:  I've already booked the flight.
10             THE COURT:  All right.  Would you stand over there a
11   little bit, please.
12             (Juror 84 not present.)
13             THE COURT:  Any reason not to excuse her?
14             MR. ANDRES:  No, Judge.
15             MR. WESTLING:  No objection.
16             THE COURT:  She's excused.  84.
17             You may return to your seat.
18             48.
19             (Juror 48 present.)
20             THE COURT:  Good morning.  Would you step up here,
21   please.
22             And did you have any vacation or other plans for
23   August that might interfere with your sitting?
24             THE JUROR:  I don't have vacation.  I'm worried
25   about work but I don't have vacation.
```

1          THE COURT:  Does it interfere with your work?

2          THE JUROR:  I have a new client and I'm the senior

3    financial officer of the company.  Tomorrow is the 1st to

4    close.  And I've never taken the client through closing yet,

5    which is a little concerning.

6          THE COURT:  What is your position?

7          THE JUROR:  I'm the chief financial officer.

8          THE COURT:  And what are your duties and

9    responsibilities with respect to the client?

10          THE JUROR:  She's my client.  No one else in the

11    office has knowledge of her.  The rest of the team can close

12    the other businesses, but we haven't closed her.  I don't know

13    how much time it would take.  I might be able to do it over

14    the weekend.  Don't know.

15          THE COURT:  All right.  So would it be a hardship

16    for you to serve on the jury because of that?

17          THE JUROR:  It would be very difficult for me.

18          THE COURT:  All right.  Would you step over there,

19    please.  I may have further questions for you.

20          THE JUROR:  Yes, sir.

21          (Juror 48 not present.)

22          THE COURT:  Anything further?

23          MR. ASONYE:  Not from the Government.

24          THE WESTLING:  No, Your Honor.

25          THE COURT:  Any -- is there an agreement to strike

1  her?

2          MR. ANDRES:  I think we would object to excusing

3  her.  She has several clients.  She said she could work on

4  the --

5          THE COURT:  No.  She said she has several people who

6  would close other clients.  This client is important to her.

7  What's your view?

8          MR. WESTLING:  We have no objection to her being

9  excused, Your Honor.

10         THE COURT:  Remind me at the end.  I may well excuse

11 her if we have plenty of jurors.

12         97.

13         You may return to your seat.

14         97, please.  97.

15         THE JUROR:  Right here.

16         THE COURT:  Ah.  All right.

17         (Juror 97 present.)

18         THE COURT:  You've paid for a vacation already?

19         THE JUROR:  Yes, sir.

20         THE COURT:  All right.  And that vacation is from

21 when to when?

22         THE JUROR:  The 25th through the 1st.

23         THE COURT:  And where are you going?

24         THE JUROR:  Outer Banks.  We have paid for a house

25 there, a beach house.

U.S. v. Manafort

74

1          THE COURT:  All right.  Would you step over to one

2    side, please?

3               (Juror 97 not present.)

4          THE COURT:  Any reason not to excuse this person?

5          MR. ANDRES:  We certainly expect to be done before

6    August 25th.

7          THE COURT:  Well, your case perhaps.  And have you

8    ever rented a cottage at Nags Head?

9          MR. ANDRES:  I have not, Judge.

10         THE COURT:  All right.  If you default on that,

11   guess what happens?  I happen to know because in my previous

12   life I owned a cottage at Nags Head and rented it.  And the

13   provisions in my lease is that if you didn't show, you paid

14   anyway.

15         MR. ASONYE:  Your Honor, we will note that we will

16   have -- that's over three weeks from now.  We will have

17   alternates if in the worst case scenario.  I think you --

18         THE COURT:  I'm not going to seat somebody on the

19   assumption that we're going to have to use an alternate.

20         This person has also indicated he's formed an

21   opinion, is that correct?

22         MR. WESTLING:  That's correct, Your Honor.

23         MR. ASONYE:  I think he said he could still be

24   impartial, Your Honor.

25         THE COURT:  Come back, please, sir.

U.S. v. Manafort

1              (Juror 97 present.)

2              THE COURT:  Have you already paid for the cottage at

3    Nags Head?

4              THE JUROR:  Yes.

5              THE COURT:  Where in Nags Head?

6              THE JUROR:  Outer Banks.

7              THE COURT:  Yes, but where in the Outer Banks?

8              THE JUROR:  I couldn't tell you.  One of my buddies

9    booked it.  We just paid in with five different families.

10             THE COURT:  All right.

11             THE JUROR:  I know it's on the beach, that's it.

12             THE COURT:  All right.  Now, it also says in your

13   questionnaire that you have seen and read things about this

14   case, is that correct?

15             THE JUROR:  Yes, sir.

16             THE COURT:  And you formed an opinion.

17             THE JUROR:  I mean, the evidence seems to point

18   towards guilt, but I mean it's the court of law, so you have

19   to go off the facts.

20             THE COURT:  And you're an attorney?

21             THE JUROR:  I am not.  My wife went to law school,

22   so the law is a prominent part of our household.

23             THE COURT:  You said in your answer, the evidence

24   points to illegal dealings with ties to Russia and obvious

25   ties to the current administration.

U.S. v. Manafort

76

1          THE JUROR:  Yes, sir.

2          THE COURT:  Where did you read about illegal

3  dealings?

4          THE JUROR:  CNN, AP news, Washington Post.  Stuff

5  like that.

6          THE COURT:  And ties to Russia?

7          THE JUROR:  Well, through the administration, yes.

8          THE COURT:  All right.  You also said you could put

9  those feelings to one side, is that correct?

10          THE JUROR:  Yes, sir.

11          THE COURT:  Are you confident you can do that?

12          THE JUROR:  Yes, sir.

13          THE COURT:  All right.  Thank you.  You may return

14  to your seat.  Oh, tell me again when is the beginning date of

15  your vacation?

16          THE JUROR:  August 25th.  We can check in that

17  Saturday.  We're there for that whole week.  So as long as we

18  make it before the end of that week, I should be good to go.

19          THE COURT:  Thank you.

20          (Juror 97 not present.)

21          THE COURT:  Now, you indicated in the motions for

22  continuance, you assured me that the case would take three

23  weeks.  That's what you all said.  That, of course, is the

24  Government's case in chief.  And you would have no way to know

25  what the defense has planned for evidence, if any.  And

U.S. v. Manafort

77

1  they're not required to give the Court any indication at this

2  time as to whether they intend to present any evidence, so I

3  must assume that they may wish to present evidence.

4       I think on the indication I have that his vacation

5  begins on the 25th, I'm going to excuse this person because I

6  think we can't identify how long deliberations would take even

7  if it finished after three weeks.

8       So I will excuse this person.  There's no objection

9  by the defendant.

10      MR. WESTLING:  None, Your Honor.

11      THE COURT:  But there is by the Government.

12      MR. ASONYE:  Yes, Your Honor.

13      THE COURT:  I hope there will come a time when the

14  golden rule will become evident to you.

15      94, please.

16      (Juror 94 present.)

17      THE COURT:  Good morning, sir.  If you'd step up

18  here, please, sir.

19      I thought in your questionnaire you indicated that

20  you had vacation plans for August, is that right?

21      THE JUROR:  No, I do not.

22      THE COURT:  Is there anything about the schedule of

23  this case that would impose any hardship on you if you were

24  selected to serve as a juror?

25      THE JUROR:  As long as I get to go home every night,

U.S. v. Manafort

78

1    I'm fine.

2            THE COURT:  Yes.  You noted that as long as you're

3    not sequestered.

4            THE JUROR:  Yes.

5            THE COURT:  Why did you make that statement?

6            THE JUROR:  I care for my parents.  I cook and clean

7    for them.  So my sister is here, she can handle it, but it's

8    not fair for me to just disappear for three weeks and leave

9    her to do everything.

10           THE COURT:  All right.  If you are selected to serve

11   as a juror, can you make alternate arrangements involving the

12   care of your parents?

13           THE JUROR:  Yes, I can.

14           THE COURT:  All right.  Thank you.  You may step

15   over there, if you would, please.

16           (Juror 94 not present.)

17           THE COURT:  Anything further from the government on

18   this juror?

19           MR. ASONYE:  No, Judge.

20           MR. WESTLING:  You Honor, he did also indicate that

21   he formed an opinion as to guilt or innocence and noted the

22   news is currently slanted against Manafort and any facts

23   presented are rather bad.  He noted also that he's aware that

24   he allegedly violated the terms of his bail twice.

25           THE COURT:  All right.  So what do you want to know?

─────────────────────U.S. v. Manafort─────────────────────
79

1          MR. WESTLING:  I'd like to know whether that can be

2   put aside, Judge.

3          THE COURT:  All right.  I will ask him.  You

4   shouldn't be surprised at the answer.

5          (Juror 94 present.)

6          THE COURT:  Yes, sir.  You indicated in your

7   questionnaire that you had read and seen or heard things in

8   the media about this case.

9          THE JUROR:  Yes.

10          THE COURT:  And that the news media seemed to be

11   slanted against Mr. Manafort.

12          THE JUROR:  Yes.

13          THE COURT:  And that you had formed an opinion.

14          THE JUROR:  Yes.  But I know what it's like to have

15   stories told about you.  I have an opinion, but it's more

16   important to let the person being talked about tell their

17   story.

18          THE COURT:  All right.

19          THE JUROR:  That matters.

20          THE COURT:  Now, what is the opinion that you have

21   formed?

22          THE JUROR:  Mr. Manafort seems kind of slimy.

23   But -- the media basically says he's guilty, but it's hard to

24   judge how thorough the report is.  If you know something, if

25   you're an expert in a field and ever read a news article about

1  your field, you know even when they're right, they're not

2  necessarily right.

3          THE COURT:  Do you feel you can put aside your

4  opinions and everything you've read, put it entirely to one

5  side and judge this case fairly and impartially only on the

6  basis of the evidence presented and the Court's instructions

7  on the law?

8          THE JUROR:  Absolutely, sir.

9          THE COURT:  All right.  Thank you.  You may return

10  to your seat.

11          THE JUROR:  Thank you.

12          (Juror 94 not present.)

13          THE COURT:  Any further questions?

14          MR. WESTLING:  No, Your Honor.

15          MR. ANDRES:  No, Judge.

16          MR. WESTLING:  Just to be heard on the issue of

17  challenging for cause, obviously I'm concerned that describing

18  Mr. Manafort as appearing slimy, that's a pretty strong

19  opinion.  It may be very difficult to put that visceral kind

20  of reaction out of his mind.

21          THE COURT:  Would it surprise you to know that most

22  jurors in cases, particularly drug cases, firearms cases, they

23  regard the defendant that way.

24          MR. WESTLING:  That's a concern, isn't it?

25          THE COURT:  Yes, it is.  And that's why you have

U.S. v. Manafort

81

1    preemptory challenges.

2            MR. WESTLING:  Understood, Your Honor.

3            THE COURT:  121.

4            (Juror 121 present.)

5            THE COURT:  Good morning.  You've indicated that

6    there's a prearrangement, in person, CMMI appraisal.  I'm not

7    sure I know what that is.

8            THE JUROR:  That is I'm a federal government --

9            THE COURT:  Come forward a little bit more, please.

10           THE JUROR:  I'm working for a federal government

11   contracting company and in order to serve federal contracts,

12   cyber security, the company must be certified with the -- it's

13   called CMMI.  It's a total company operation.  Like a maturity

14   level.  So this company is able to serve federal government

15   contracts.  So we have to -- the company has to recertify for

16   that.  So it's scheduled August 1st to 20th.  It's in person.

17           THE COURT:  All right.  Are you one of a team doing

18   this?

19           THE JUROR:  Yes.  It's 27 people and then two people

20   called external and one appraiser is from outside company, the

21   other two to three team.

22           THE COURT:  So, if you're selected to serve as a

23   juror, then your company -- what is the company?

24           THE JUROR:  The name of the company is Business

25   Computers Management Consulting.

U.S. v. Manafort

82

1          THE COURT:  And I take it if you're selected, then

2     there are other persons in that company who can do this work.

3          THE JUROR:  No.  Because I'm the one who has the

4     quality assurance -- the internal auditor's certificate and

5     then this typical appraiser must get -- what's it called --

6     education to get a certificate.  So no other people has the --

7     in charge of my duties.

8          THE COURT:  Are you telling me that you are the only

9     person who can do this work?

10          THE JUROR:  There's several areas and I'm in charge

11     of four areas.  Quality assurance, quality management, and

12     like project process quality assurance.  Required management

13     support.  So those types of stuff I'm in charge of.  And no

14     other people has that certificate, internal auditor.  And then

15     training from the institution.  That's why this prearrangement

16     is from two years ago.  Scheduled two years ago.

17          THE COURT:  Are you an accountant?

18          THE JUROR:  I used to.  And I was in the banking

19     industry.  And then even now I'm working as finance director

20     in this company.

21          THE COURT:  All right.  Would you stand over there

22     please.

23          (Juror 121 not present.)

24          THE COURT:  Any further questions from the

25     Government?

U.S. v. Manafort

83

1          MR. ANDRES:  No, Your Honor.

2          THE COURT:  From the defendant?

3          MR. WESTLING:  A different issue, Your Honor, but

4   she did make a claim in her questionnaire that she thought

5   she'd be able to analyze the document to see if they are

6   counterfeit.

7          THE COURT:  Yes, I saw that.

8          MR. WESTLING:  -- the documents to see if they are

9   counterfeit.  Which concerns me.  I don't -- I don't think

10  that she has that skill, nor do I think it should be applied

11  in this case.

12         THE COURT:  Well, that does not disqualify her from

13  serving as a juror but it may move you to strike her for --

14  under your peremptory challenge.

15         What I'm interested in at this point is whether I

16  should excuse her because she says she is essential to this

17  function that her company has.  She's made a fairly clear and

18  strong claim to being essential.

19         Any objection to my excusing her for that reason?

20         MR. WESTLING:  None from the defense, Your Honor.

21         MR. ANDRES:  No objection, Your Honor.

22         THE COURT:  121 is excused.

23         You may return to your seat.

24         Now, that's the final person I had in this category.

25  I'm now going to switch to a new category.  Excuse me.

─────U.S. v. Manafort─────

84

1          (Discussion off the record.)

2          THE COURT:  I'm going to have three more jurors come

3  forward to talk about their affiliation with the Department of

4  Justice, given their responses:  261, 296, and 46.

5          And after that, I will be finished with the voir

6  dire that I intend to do.  And I'll ask you whether you have

7  any further jurors you want to be summoned to the bench here

8  to answer questions.

9          261.

10          (Juror 261 present.)

11          THE COURT:  Good morning.  If you'd step up here,

12  please.

13          Where are you employed?

14          THE JUROR:  The FBI.

15          THE COURT:  In what capacity?

16          THE JUROR:  I'm a management program analyst.

17          THE COURT:  What do you do as a management program

18  analyst?

19          THE JUROR:  I review FBI employee misconduct.  And

20  make a recommendation on what actions should be taken.

21          THE COURT:  And I am going to read a list of

22  witnesses shortly.  Do you know anybody in the FBI who has had

23  any roll or affiliated in any way with this case?

24          THE JUROR:  Not that I'm aware of.

25          THE COURT:  Now, there will be witnesses who testify

U.S. v. Manafort

85

1    in this case who are employed by the FBI.  Do you feel you

2    could judge their testimony fairly and impartially?

3              THE JUROR:  Yes.

4              THE COURT:  All right.  Would you stand over there,

5    please.

6              (Juror 261 not present.)

7              THE COURT:  In typical cases I don't allow FBI

8    employees to testify in prosecutions, because the appearance

9    is overwhelmingly adverse, as you can imagine.

10             Do you have any reason why I should allow her to sit

11   as a juror, given that she's an employee of the FBI, and that

12   there will be FBI agents who testify in this case?

13             MR. ANDRES:  No.

14             THE COURT:  Any objection to striking her?

15             MR. WESTLING:  No, Your Honor.

16             THE COURT:  261 is stricken.

17             296.

18             (Juror 296 present.)

19             THE COURT:  Good morning, sir.  Would you stand over

20   here, please?

21             For whom do you work?

22             THE JUROR:  Power Tech Corporation.

23             THE COURT:  And are you a contractor with the FBI?

24             THE JUROR:  I was up until May of this year.

25             THE COURT:  All right.  And what did you do as a

U.S. v. Manafort

86

1  contractor for the FBI?

2         THE JUROR:  For that 18 months before May of this

3  year, I worked at the -- at CyWatch developing a program to

4  track cyber incidences.  So if somebody hacks a computer or

5  takes down the national grid, they follow up and track it.

6         THE COURT:  All right.  You worked for the FBI as a

7  contractor on two occasions?

8         THE JUROR:  Yes.

9         THE COURT:  And was your work for the FBI on both

10  occasions essentially the same?

11         THE JUROR:  Yes.  As a programmer.

12         THE COURT:  All right.  Do you feel that you can

13  judge this case fairly and impartially, notwithstanding that

14  you've been a contractor for the FBI?

15         THE JUROR:  Yes, Your Honor.

16         THE COURT:  Do you feel you can put to one side

17  anything you may have seen or read or heard about this case

18  and judge it fairly and impartially based only on the evidence

19  and the Court's instructions on the law?

20         THE JUROR:  Yes, Your Honor.

21         THE COURT:  Would you stand over there, if you

22  would, please, sir, about 20 feet.

23         (Juror 296 not present.)

24         THE COURT:  Any further questions?

25         MR. ANDRES:  No, Judge.

U.S. v. Manafort

87

1          MR. WESTLING:  No, Your Honor.

2          THE COURT:  I don't -- I don't strike contractors

3  for the FBI.  That's one removed.

4          46.

5          Thank you.  You may return to your seat.

6          (Juror 46 present.)

7          THE COURT:  Yes.  Would you come and stand up here,

8  please.

9          THE JUROR:  Sure.

10          THE COURT:  For whom do you work?

11          THE JUROR:  I work for the Central Intelligence

12  Agency.

13          THE COURT:  Can you tell me what you do for the CIA?

14          THE JUROR:  I work in IT.  I'm a manager.  We -- my

15  organization, we buy commercial software for the agency.

16          THE COURT:  All right.  Do you feel there's anything

17  about your employment that would prevent or hinder you in any

18  way from rendering a fair and impartial verdict in this case

19  based only on the evidence and the Court's instructions?

20          THE JUROR:  I don't think so, no.

21          THE COURT:  You say your mother was employed by the

22  FBI for about 30 years?

23          THE JUROR:  She's getting ready to retire.

24          THE COURT:  What did she do for the FBI?

25          THE JUROR:  Right now she's in space planning and

─────────────── U.S. v. Manafort ───────────────

88

1  coordination.  So when people move around, renovations and

2  stuff like that, she coordinates the people moving.

3          THE COURT:  Is she an agent?

4          THE JUROR:  She is not.

5          THE COURT:  So she has no law enforcement

6  responsibilities?

7          THE JUROR:  She doesn't, no.

8          THE COURT:  And your father is a contractor with the

9  FBI?

10          THE JUROR:  Right.  He works in IT.

11          THE COURT:  All right.  Is he currently employed as

12  a contractor?

13          THE JUROR:  Yes.  They both work at Quantico.  They

14  are both getting ready to retire in January, on January 3rd.

15          THE COURT:  Do either you or your parents work

16  directly as an FBI employee?

17          THE JUROR:  My mom does.  My mom is an FBI staff

18  employee but she's not an agent.  She's a -- I don't know what

19  you call it, but...

20          THE COURT:  Do you feel that having parents so

21  employed and given your contractual relations with the FBI, do

22  you feel you can judge this case fairly and impartially based

23  only on the evidence and the Court's instructions?

24          THE JUROR:  I believe so.

25          THE COURT:  And have you formed any opinion about

U.S. v. Manafort

1    this case?

2              THE JUROR:  No.

3              THE COURT:  Would you step over there about 20 feet,

4    please.

5              (Juror 46 not present.)

6              THE COURT:  Any further questions?

7              MR. ANDRES:  No, Judge.  Just to be clear, I don't

8    think she has a contractual relationship with the FBI, she

9    works for the CIA.

10             THE COURT:  Oh, that's right.  You're quite right.

11   Anything further?

12             MR. WESTLING:  No, Your Honor.

13             THE COURT:  Do you see any basis for moving to

14   challenge her for cause?

15             MR. ANDRES:  No, Judge.

16             MR. WESTLING:  We would make a challenge for cause,

17   Your Honor.  The fact that her parents -- at least one parent

18   is currently employed by the bureau, in our view, is something

19   that could create some reason for her to think more highly of

20   the work they do in this case.

21             THE COURT:  Did I ask in the questionnaire whether

22   they would tend to believe or disbelieve a person simply

23   because they were a law enforcement person?

24             MR. ASONYE:  Yes, you did, Your Honor.

25             THE COURT:  All right.  So that's a question that's

─────U.S. v. Manafort─────

90

1  already been asked and answered.  And she apparently said,

2  "no."

3         I do excuse jurors who are employed -- I don't allow

4  jurors to serve if they are employed by the law enforcement

5  agency.

6         A parent about to retire who is not a law

7  enforcement agency is right at the edge of that.  So I will

8  deny the motion to strike and you can use your peremptory

9  challenge for that.

10         What number was that?

11         THE DEPUTY CLERK:  46.

12         THE COURT:  All right.  Now, that completes the

13  Court's questions on the basis of the questionnaires.

14         (Discussion off the record.)

15         THE COURT:  48.  That's fine.  Thank you.  I've

16  already spoken to 48.  And I deferred on her.  Refresh me on

17  what her situation was.

18         MR. ANDRES:  Is it a vacation?

19         MR. ASONYE:  48 was the new client -- it's a

20  question about whether she could --

21         THE COURT:  The new client.  It was a business

22  situation.

23         MR. ANDRES:  Yes.

24         THE COURT:  All right.  And your argument is that

25  you'll be done in three weeks and it won't be a problem for

─U.S. v. Manafort─

1    her.

2              MR. ANDRES:  I think that was for the vacation.  I

3    think she actually -- she has an immediate issue with respect

4    to whether other people at her firm could handle the work.

5              MR. ASONYE:  She was the one who indicated she might

6    be able to work weekends.  She had multiple clients.  There

7    was one new client and getting them through some sort of

8    closing.

9              THE COURT:  But she emphasized that it was her

10   client.

11             MR. WESTLING:  Correct.

12             THE COURT:  Anything else?

13             MR. WESTLING:  No, Your Honor.

14             THE COURT:  What's your position?

15             MR. WESTLING:  We think she should be let go, Your

16   Honor.

17             THE COURT:  Why?

18             MR. WESTLING:  We think the distraction of the

19   difficulty of having a new client that needs to be handled by

20   her firm is significant and it didn't sound like she was

21   confident she could do the work over the weekend.  I think

22   she'll be distracted by it.

23             THE COURT:  All right.  Do you all have other jurors

24   that you think should be called to the bench to answer

25   questions?

U.S. v. Manafort

92

1        MR. VAN GRACK:  Yes, Your Honor.  Juror number 132.

2        THE COURT:  How many other than 132?  Give them all

3   to me because I'm either going to take a recess now and

4   require you to submit the list and we'll do it.  But let's get

5   it done.

6        Anyone other than 132?

7        MR. VAN GRACK:  Can we take a moment, Your Honor?

8        THE COURT:  Yes.  Same question to you.

9        MR. WESTLING:  I think we're good, Your Honor.

10        THE COURT:  All right.  Mr. Asonye, I need a list of

11   your witnesses.  Have you got that?

12        MR. ASONYE:  Yes, Your Honor.

13        THE COURT:  May I have that, please.  Thank you.

14        All right.  While you are looking, I'm going to ask

15   -- you may remain up here -- I'm going to ask this further

16   question.

17        (Open court.)

18        THE COURT:  All right.  Ladies and gentlemen, thank

19   you for your patience.  It doesn't sound anymore like waves

20   breaking gently the longer you listen to it, does it?

21        I'm going now to read a list of names to you.

22   Listen carefully to this list, because at the conclusion I'm

23   going to ask you whether you know or have had any business or

24   social dealings of any kind whatsoever with any of them.  And

25   it is a list of 35 names, so listen carefully.

U.S. v. Manafort

93

1          Hesham Ali.

2          Philip Ayliff, A-y-l-i-f-f.

3          James Brennan.

4          John Day.

5          Douglas DeLuca.

6          Tad Devine.

7          Donna Duggan.

8          Darin Evenson.

9          Richard Gates.

10         Wayne Holland.

11         Stephen Jacobson.

12         Melinda James.

13         Maximillian Katzman.

14         Irfan Kirimca or Kirimca.

15         Cindy Laporta.

16         Kevin LaPorte.

17         Paula Liss.

18         Morgan Magionos.

19         Joel Maxwell.

20         Amanda Metzler.

21         Peggy Miceli.

22         Renee Michael.

23         Matthew Mikuska.

24         Connor O'Brien.

25         Daniel Opsut, O-p-s-u-t.

U.S. v. Manafort

94

1          Daniel Rabin, R-a-b-i-n.

2          Dennis Raico or Raico.

3          Michael Regolizio.

4          Taryn Rodriguez.

5          Gary Seferian.

6          Staci Sullivan.

7          Alex Trusko.

8          Ronald Wall.

9          Heather Washkuhn, W-a-s-h-k-u-h-n.

10          And Michael Welch.

11          Do you or any member of your family, so far as you

12   know, know any of those individuals or have you had any

13   business or social dealings of any kind whatsoever with any of

14   them?

15          If you need a clarification, as to whether a

16   particular name is a person you think it is, raise your hands

17   and we'll get that for you by ascertaining what the person

18   does or where that person lives.

19          All right.  In the back, would you stand and give us

20   your number, please.

21          THE JUROR:  0047.

22          THE COURT:  Yes, sir.

23          THE JUROR:  There's an employee with my firm named

24   Wayne Holland.

25          THE COURT:  All right.  And where does Wayne Holland

─────U.S. v. Manafort─────
95

1    live?

2           THE JUROR:  I'm not sure, Your Honor.  It would be

3    northern Virginia area.

4           THE COURT:  And what does this person at your

5    employer do and who is your employer?

6           THE JUROR:  He's a utility worker for the Upper

7    Occoquan Service Authority.

8           THE COURT:  All right.  Thank you, sir.  That's not

9    the same person.

10          THE JUROR:  One other, Your Honor.  Michael Welch is

11   a neighbor of mine a couple of doors down in Manassas,

12   Virginia.

13          THE COURT:  In Manassas.  Thank you.  That's not the

14   person either.

15          Anyone else?  Thank you.

16          (Bench Conference.)

17          THE COURT:  How many do you have now?

18          MR. ASONYE:  This is a list that the Government

19   would like to call up.

20          THE COURT:  And what is -- what is the purpose of

21   calling these people up?

22          MR. VAN GRACK:  A number of different bases.  One or

23   two individuals who are writers who work for the media and

24   based on how they answered questions.  We want an

25   understanding of what they've written about and whether

─────U.S. v. Manafort─────

96

1    they've written about this case or President Trump.  There are

2    also a number of individuals who in their response to what

3    information they have about the case, provided information

4    that --

5                THE COURT:  You're going to have to be more

6    specific.  Look, I did this questionnaire because you all

7    asked for it.  Answers were given.

8                Now, you write after each one of these -- I'm going

9    to take a recess so these people can use the men's room.

10               Write for each one what you think needs to be

11   elicited.  And if it's already in the questionnaire, don't

12   bother me.

13               MR. ASONYE:  Your Honor, may we also consult with

14   defense counsel?  We may be able to agree.

15               THE COURT:  Of course.

16               MR. ASONYE:  Thank you.

17               THE COURT:  Of course.  You may be able to agree.

18   Yes.  You may be able to agree on striking someone.  That's

19   fine with the Court.

20               MR. VAN GRACK:  Thank you.

21               MR. WESTLING:  Thank you, Your Honor.

22               (Open court.)

23               THE COURT:  All set, Tonia?  Without her, we can't

24   proceed.

25               All right.  We are nearly done but we're not quite

U.S. v. Manafort

97

1   done.

2          I have some additional matters to cover, but I

3   want -- we've been doing this for quite a while.  I want to

4   take a brief recess so that some of you can use the facilities

5   if you need to.  I need to.

6          So we will take a brief recess.  It will be 15

7   minutes.  We will reconvene and finish, and then we'll proceed

8   with the jury selection process, and I believe we will done --

9   we will be done by one o'clock and be able to proceed.  We're

10  going to select a number of you but not all of you.  So some

11  of you will be excused as soon as we finish.

12         Again, thank you for your patience.

13         Court stands in recess until 12:30.

14         (Recess.)

15         THE COURT:  All right.  Ladies and gentlemen, I

16  think we can adequately or accurately forecast that it will

17  only be another 30 or 45 minutes at the most.

18         Thank you for this list.  I take it both sides have

19  seen it?

20         MR. ANDRES:  It's the Government's list, Judge.  We

21  didn't have a chance to provide it to defense, although we

22  notified them that we had a few additional questions.

23         THE COURT:  All right.  Come to the bench.

24         (Bench Conference.)

25         THE COURT:  You're alone.  Oh, no.

1          MR. WESTLING:  I hope not.

2          THE COURT:  I'm alone.

3          All right.  Here is the list that I want you to see.

4     I asked the Government to tell me what they want --

5          Here is the list.  I thought you would have seen

6     this, but I understand that you have to look at it quickly,

7     because I wanted to have the list.  This was a much reduced

8     number and I thought that it was reduced in part because you

9     all agreed but this is it.

10         I'm going to have these jurors come to the bench and

11    I'm going to ask them questions about these matters and that's

12    it.  Eso es todo.  That's Spanish for "that's it."

13         MR. WESTLING:  Thank you.

14         THE COURT:  And I assume you all don't have

15    anything.

16         MR. WESTLING:  We do not.

17         THE COURT:  All right.  And then we'll proceed.

18    There's one juror that I have a motion to strike for cause

19    that I'm going to consider.  That's number --

20         THE DEPUTY CLERK:  48.

21         THE COURT:  -- 48.  And that will be it.  I will ask

22    you again if you have any motions to strike for cause and I

23    hope you can focus that very sharply, if there are any.

24         MR. WESTLING:  Sure.

25         THE COURT:  17, please.  17.

─────U.S. v. Manafort─────

99

1                (Juror 17 present.)

2           THE COURT:  Right here, sir.  Good afternoon.

3           THE JUROR:  Good afternoon, sir.

4           THE COURT:  You indicated, sir, in your

5      questionnaire that you had some knowledge of the case.  Do you

6      recall that?

7           THE JUROR:  No, sir.

8           THE COURT:  Do you have any knowledge of this case?

9           THE JUROR:  Only the name sounded familiar when I

10     heard it.

11          THE COURT:  All right.  Have you formed any opinion

12     about this case?

13          THE JUROR:  No, sir.

14          THE COURT:  Is there any reason why you could not

15     sit as a fair and an impartial juror in this case given what

16     you've heard about the case from me?

17          THE JUROR:  No, sir.

18          THE COURT:  Thank you.  You may return to your seat.

19          THE JUROR:  Thank you.

20               (Juror 17 not present.)

21          THE COURT:  18.

22          MR. ASONYE:  Maybe it's going so quickly, we should

23     add some more to that.

24          THE COURT:  You have a death wish?

25          MR. ASONYE:  No, Your Honor.

U.S. v. Manafort

100

1              (Juror 18 present.)

2              THE COURT:  Yes, sir.  You noted in your

3     questionnaire that you had been arrested for brandishing a

4     firearm.

5              THE JUROR:  Yes.

6              THE COURT:  Was there a trial?

7              THE JUROR:  No, sir.

8              THE COURT:  They dropped the charge?

9              THE JUROR:  Yes.  I went to court.  I was tried and

10    it was expunged.

11             THE COURT:  All right.  Do you feel you were treated

12    fairly by the legal system in that regard?

13             THE JUROR:  Yes, sir, I do.  Yes, Your Honor.

14             THE COURT:  Is there any reason that suggests itself

15    to you why you would not be able to sit as a fair and an

16    impartial juror in this case?

17             THE JUROR:  No, Your Honor.

18             THE COURT:  Thank you, sir.  You may return to your

19    seat.

20             THE JUROR:  Thank you, Your Honor.

21             (Juror 18 not present.)

22             MR. ASONYE:  Your Honor.

23             THE COURT:  Yes.

24             MR. ASONYE:  We just wanted to know whether it was

25    federal or local.  I was just wondering if the U.S. Attorney's

U.S. v. Manafort

1    office charged him.

2              THE COURT:  18.  I'm sorry, would you return, sir.

3              (Juror 18 present.)

4              THE JUROR:  Yes, Your Honor.

5              THE COURT:  I may have misunderstood you.  Were you

6    tried in that case?

7              THE JUROR:  No, sir.  I'm sorry.  I was not tried.

8    We went to court and basically me and the lawyer and the other

9    person's lawyer stood in front of the judge, and the judge

10   said, "Is everything taken care of?"  The lawyer says, "Yes,

11   Your Honor."  He said, "Okay, get out of here."

12             THE COURT:  Was that in state court?

13             THE JUROR:  It was in Fredericksburg.  I think it's

14   in the county, the city or county.

15             THE COURT:  All right.

16             THE JUROR:  Never went to trial or anything.

17   Basically both sides agreed to dismiss everything.

18             THE COURT:  All right.  And I asked you whether you

19   thought you were treated fairly.

20             THE JUROR:  Yes, Your Honor.  I believe I was.

21             THE COURT:  You may return to your seat.

22             THE JUROR:  Thank you, Your Honor.

23             (Juror 18 not present.)

24             THE COURT:  55.

25             THE CSO:  55.  55.  No 55 here.

U.S. v. Manafort

102

1          We found him.

2          (Juror 55 present.)

3          THE COURT:  Good afternoon, sir.  If you'd step over

4     here.

5          You indicated in your responses to the questionnaire

6     that there was political drama around the case.  Let me

7     confirm.  What -- whether you formed any opinion about this

8     case.

9          THE JUROR:  I don't know much detail, just stuff I

10    hear on the news or on the radio, just people debating about

11    it.  I haven't made up my mind one way or the other, if that

12    helps.

13         THE COURT:  Yes.  Do you feel you could put to one

14    side everything you may have seen or read or heard or know

15    about the case and judge this case fairly and impartially

16    based only on the evidence and the Court's instructions on the

17    law?

18         THE JUROR:  I believe I could.

19         THE COURT:  And you indicated that at one point you

20    had been run off the road by somebody?

21         THE JUROR:  Yeah, a few years back I was run off the

22    road.  One of the police that showed up wanted to hit me with

23    a losing control of the vehicle charge.  I went to court over

24    it.  The judge looked at it and threw the whole thing out in

25    like ten seconds.

U.S. v. Manafort

1          THE COURT:  All right.  Do you understand that

2    matter has nothing whatever to do with this case?

3          THE JUROR:  Yes.

4          THE COURT:  Do you feel you can put your feelings

5    about that matter to one side and judge this case fairly and

6    impartially based only on the evidence and the Court's

7    instructions?

8          THE JUROR:  Yes.  That had nothing to do with this.

9          THE COURT:  Thank you.  You may return to your seat.

10         (Juror 55 not present.)

11         THE COURT:  58.

12         (Juror 58 present.)

13         THE COURT:  Yes, ma'am.  Would you stand right here,

14   please.  Good afternoon.

15         THE JUROR:  Good afternoon.

16         THE COURT:  You indicated in your questionnaire that

17   your spouse works for the House of Representatives.

18         THE JUROR:  Yes.

19         THE COURT:  What does he do there?

20         THE JUROR:  He's chief of staff for a member of

21   congress.

22         THE COURT:  And who is the member of congress?

23         THE JUROR:  Congressman Steve Stivers.

24         THE COURT:  From where?

25         THE JUROR:  Ohio.

U.S. v. Manafort

104

1          THE COURT:  And what is your spouse's -- is your

2   spouse working on any committees or involved in any kinds of

3   investigations having to do with President Trump or the

4   election and Russia or anything of that sort?

5          THE JUROR:  No.  He works in the personnel office.

6   His boss is on the House Financial Services Committee, but

7   he's not involved in -- I don't believe there's an ongoing

8   investigation -- I don't believe he's involved or I at least

9   don't know about it.

10          THE COURT:  Thank you.  Would you step over there

11   for just a minute.

12          (Juror 58 not present.)

13          THE COURT:  Anything further?

14          MR. ANDRES:  No, Judge.

15          THE COURT:  Anything further?

16          MR. WESTLING:  No, Your Honor.

17          THE COURT:  You may return to your seat.

18          (Juror 58 not present.)

19          THE COURT:  96.

20          (Juror 96 present.)

21          THE COURT:  Yes, sir.  If you'd stand right here,

22   sir.  You're an author?

23          THE JUROR:  Yes, sir.

24          THE COURT:  And what sorts of things do you write?

25          THE JUROR:  Science fiction.

———U.S. v. Manafort———

105

1          THE COURT:  One of my favorite genres.  Ever since I

2    was a child I've enjoyed that.

3          Have you ever written anything at all about this

4    case or the Russia investigation or anything of that sort?

5          THE JUROR:  No, sir.

6          THE COURT:  I'm curious, what kinds of science

7    fiction?

8          THE JUROR:  Are you familiar with Edgar Rice

9    Burroughs?

10          THE COURT:  Oh, yes.

11          THE JUROR:  I write -- I have written two books

12    based on his previous works.  One is called *A Soldier of

13    Poloda* in which a man was teleported to another planet where

14    he finds he is called upon to settle a war that's been raging

15    for over 100 years.  And the second book, *Untamed Pellucidar*,

16    the hero visits a fictional land inside the earth and becomes

17    a leader of a prehistoric tribe and brings as much

18    civilization as he can to that.

19          THE COURT:  Interesting.  Thank you.  You may return

20    to your seat, sir.

21          THE JUROR:  Thank you, sir.

22          (Juror 96 not present.)

23          THE COURT:  Anything further?

24          MR. ASONYE:  No, Your Honor.

25          MR. WESTLING:  No, Your Honor.

U.S. v. Manafort

1          THE COURT:  132.

2          (Juror 132 present.)

3          THE COURT:  Yes, ma'am.  If you'd stand over here,

4    please.  Good afternoon.

5          THE JUROR:  Hello.

6          THE COURT:  You're a writer.

7          THE JUROR:  Umm-hmm.

8          THE COURT:  And you're a writer for an online

9    publication?

10         THE JUROR:  Yes.  WorldNetDaily.  WorldNetDaily.

11         THE COURT:  WorldNetDaily.  Have you written about

12   this case or the investigation in the Russia matter?

13         THE JUROR:  No.

14         THE COURT:  Not at all?  What sorts of things do you

15   write on?

16         THE JUROR:  Goofy things.  Funny things like

17   swimsuits.  I'm a diversion columnist, so anything that I find

18   humorous.

19         THE COURT:  I think I'd like that job.

20         THE JUROR:  Like the decline in American education

21   in a humorous way.

22         THE COURT:  I would like that.  I would like that

23   job.

24         THE JUROR:  It's fun.  You get to do a bunch of

25   different things and divert yourself.

1          THE COURT:  My older son went to a highly selective

2    college and named his children ultimately Jacob and Sarah

3    without the slightest idea who Jacob and Sarah were in the Old

4    Testament.

5          THE JUROR:  Oh, my goodness.

6          THE COURT:  How is that for education today.

7          THE JUROR:  Yeah.  Well, I home schooled mine.

8          THE COURT:  Good for you.  Thank you.

9          (Juror 132 not present.)

10         MR. ASONYE:  Your Honor --

11         MR. VAN GRACK:  It appears, based on our review of

12   the WorldNetDaily, she's written on a couple of things that

13   are not related to this information.  But there's one article

14   she wrote that actually concerned the then-candidate Trump in

15   the 2016 election.  It makes some comments of then-candidate

16   Clinton.  There's another where she's critical of the FBI.

17   And so I don't know if you want to simply follow up with that

18   clarifying in terms of --

19         THE COURT:  All right.  If you would request that.

20         MR. ASONYE:  Yes.

21         THE COURT:  All right.  I'll do that.

22         Do you have any objection?

23         MR. WESTLING:  No, Your Honor.

24         THE COURT:  May I have 132 back again, please.

25         (Juror 132 present.)

─────────U.S. v. Manafort─────────

108

1          THE COURT:  Yes.  My questions weren't adequately

2    focussed.

3          THE JUROR:  Okay.

4          THE COURT:  I should have asked you whether in your

5    writing whether you had ever written anything about candidate

6    Trump.

7          THE JUROR:  Oh, yes, I have.

8          THE COURT:  All right.  And can you summarize or

9    tell me in essence what you've said about him?

10          THE JUROR:  I did a comedic piece between him and

11   Ted Cruz where I made Ted Cruz out to be playing like he

12   was -- you know the old King Kong movie?  Well, when Heidi was

13   being attacked by the media, I said that Ted Cruz was baiting

14   Donald Trump like he was King Kong.  So that he could pretend

15   it was Heidi's figure on top of the Empire State Building, and

16   it was like a big orchestrated thing.  It was kind of funny.

17   I got more people on my column by that than anything else.

18          THE COURT:  All right.  And have you written

19   anything else you can recall about either the investigation

20   into Russian collusion or --

21          THE JUROR:  No, no.  I haven't written anything.

22          I actually got carte blanched.  My editor told me to

23   go ahead and stay in politics because the superior supported

24   Ted Cruz and didn't like my column.

25          THE COURT:  All right.  Would you stand over there

─────────────U.S. v. Manafort─────────────

1    for just a moment, please.

2            (Juror 132 not present.)

3            THE COURT:  Anything else?

4            MR. VAN GRACK:  No.

5            THE COURT:  By the way, let it be clear, Mr. Asonye,

6    for the future, I typically only allow one lawyer to talk to

7    me at the bench.  But I've been charitable.  Go ahead, sir.

8            MR. VAN GRACK:  Your Honor, we have the article that

9    she mentioned with respect to Trump and Cruz, is one of the

10   articles.  There's another article in there she writes about

11   the terms of the presidential campaign and referring to

12   Secretary Clinton as a leech.  There's another one sort of

13   making critical --

14           THE COURT:  What do you want to know about that?

15           MR. VAN GRACK:  Well --

16           THE COURT:  You know, that it happened.  If you have

17   a deep concern about it, strike her.  That's why you have

18   peremptory challenges.  I don't -- I am going to ask one more

19   question of the panel as a whole.  I'm going to tell them that

20   they've heard what the case is about from me.  And they've

21   heard all the questions that I have asked.  And I want to know

22   whether there's any reason to suggest itself to any of them,

23   why they could not sit, pay careful and close attention to the

24   evidence as it's presented and render a fair and impartial

25   verdict based only on the evidence and the Court's

─────U.S. v. Manafort─────

110

1    instructions.  That's the final question I'm going to ask.

2         Your brow is furrowed.  What's your problem?

3         MR. ASONYE:  Your Honor, I'm just concerned about

4    the fact that there is going to be some evidence about

5    candidate Trump in this trial related to the Federal Savings

6    Bank loans.  And that a juror has written what could be viewed

7    as an inflammatory article.

8         THE COURT:  The article isn't going to be admitted.

9    So you have to decide whether having read that article,

10   because she's already told me she can be a fair and an

11   impartial juror.  And you've got to decide whether you want to

12   strike her for that.

13        MR. ASONYE:  I think our concern is, Your Honor,

14   there was a prior juror where Your Honor was I think

15   appropriately concerned about whether the juror can truly put

16   aside her feelings.

17        THE COURT:  Yes, because I looked her in the eye and

18   I was satisfied that it wasn't genuine.

19        MR. ASONYE:  And I think the Government has a

20   similar view of this juror in light of the repeated articles.

21        THE COURT:  Then if I don't share that view, you

22   have a peremptory challenge.

23        MR. ANDRES:  Judge, just one other point.  When you

24   first asked her whether she wrote about the then-candidate

25   Trump, she didn't say, Yes.

U.S. v. Manafort

1        THE COURT:  All right.  You don't think she's being

2    honest?  Then strike her.

3        MR. ANDRES:  If she's not been being honest with the

4    Court, it's a basis to strike her for cause.

5        THE COURT:  I don't think it is at this time.  I'm

6    not going to strike her on that basis.  But I think it's ample

7    basis for you all to strike her if you wish on a peremptory

8    challenge.

9        Do you want me to ask her any other further

10   questions?

11       MR. ASONYE:  In light of what she's written about

12   then-candidate Trump and it is going to come up in this trial,

13   I would ask whether she can put that aside and in light of

14   what she's written.

15       THE COURT:  I will ask her that.

16       (Juror 132 present.)

17       THE COURT:  Come back, please.

18       In the light of what you've written about candidate

19   Trump, which you said was an attempt to be humorous, do you

20   feel you can put all of that to one side and judge this case

21   fairly and impartially based only on the evidence and the

22   Court's instructions on the law?

23       THE JUROR:  I think so.

24       THE COURT:  Did you also write about candidate

25   Clinton?

U.S. v. Manafort

112

1          THE JUROR:  Yes, I did.

2          THE COURT:  And was that favorable or unfavorable?

3          THE JUROR:  It was again humorous and not favorable.

4          THE COURT:  Was the stuff you wrote about Trump

5     favorable or unfavorable?

6          THE JUROR:  Well, if you think being called King

7     Kong favorable, I'm afraid so.  But actually in the piece, Ted

8     Cruz was the villain forbidding King Kong.

9          THE COURT:  Well, I want to know whether in light of

10    what you've told me you've written about, can you -- have you

11    formed any opinion or do you have any feelings about the guilt

12    or innocence of this defendant?

13         THE JUROR:  I don't really know much about him

14    except for when he was a part of the campaign, kind of fell

15    off the radar for me.  You know, I have my kids at home.  I'm

16    not home schooling them anymore.

17         THE COURT:  So what is the answer to my question?  I

18    asked you whether you have formed any opinion --

19         THE JUROR:  No.

20         THE COURT:  -- or have any feelings about the guilt

21    or innocence of this defendant?

22         THE JUROR:  No.

23         THE COURT:  Do you feel you can sit and pay careful

24    and close attention to the evidence and render a fair and an

25    impartial verdict in this case based only on the evidence and

U.S. v. Manafort

113

1   the Court's instructions?

2            THE JUROR:  Yes.

3            THE COURT:  All right.  Could you stand over there

4   for one more time, please.

5            (Juror 132 not present.)

6            THE COURT:  Anything else you want?

7            MR. ANDRES:  No, Judge.

8            MR. WESTLING:  Nothing, Your Honor.

9            THE COURT:  All right.  I'm going to ask this one

10  last question that I've told you what it is.  Is there any

11  further voir dire at all from either side?

12           MR. ASONYE:  No, Your Honor.  Do you want us to move

13  to strike now or after?

14           THE COURT:  There's only one juror that's open, is

15  that right?

16           MR. ASONYE:  This juror.  Right.

17           THE COURT:  This juror.

18           MR. ANDRES:  And 48.

19           THE COURT:  And 48.  Those are the two?

20           MR. ASONYE:  Yes.

21           THE COURT:  All right.  The motion to strike this

22  juror is denied.  I don't see any basis for striking her at

23  all.  I'll think about 48 in a minute.

24           MR. ASONYE:  Your Honor, to be clear, we're not

25  moving to strike 48.  I think, just to be clear, I believe

U.S. v. Manafort

114

1  that the Court wanted to reserve judgment, but the

2  Government --

3          THE COURT:  All right.  Do you wish 48 stricken?

4          MR. WESTLING:  Ah --

5          THE COURT:  As I recall, 48 was the juror who had a

6  very important client.  She was concerned about it.

7          MR. WESTLING:  I think I had said previously, Your

8  Honor, that based on her feelings about that important client,

9  we thought it was appropriate that she be stricken.

10         THE COURT:  All right.  Apart from that, are there

11 any motions to strike for cause?

12         MR. ANDRES:  No, Judge.

13         MR. WESTLING:  None from the defense, Your Honor.

14         THE COURT:  All right.  Is there any further voir

15 dire?

16         MR. WESTLING:  None from the defense.

17         MR. ANDRES:  No, Judge.

18         THE COURT:  All right.  Then once I rule on 48, we

19 will proceed to select by lot 12 jurors who will be called.

20 You'll have an opportunity to exercise as many strikes as you

21 wish against those 12.  And you may reserve some or many for

22 your alternates or none as you wish.

23         MR. WESTLING:  Your Honor, just a matter of

24 clarification.  Exercising those strikes, is that a one

25 opportunity for each side or is there a number?

1          THE COURT:  Yes.  What will happen is that the court

2   security officer -- step around here so you can hear me.  The

3   court security officer will take the board to you and on the

4   board will be listed 12 names on the left side.  If you want

5   to strike -- and it will be taken first to the government.

6   And then the government will have the opportunity to strike

7   any or as many of those 12 as it has strikes.  And it will put

8   those names, those slips on the right-hand side at the bottom.

9   And it will have noted on each one that it wants to strike,

10  each person, a number, one, two, three.

11          Then, the board will be taken to you on the defense

12  side.  And you'll have the same opportunity.

13          Then, the deputy clerk will excuse those jurors to

14  return to their seats in the courtroom and we'll call new

15  jurors.  Now, once a juror has survived a round, that juror is

16  permanent.  You may not go back and strike that juror.

17          Any questions?

18          MR. ANDRES:  No, Your Honor.

19          MR. WESTLING:  Thank you.

20          THE COURT:  All right.  I still have 48.

21          48.

22          (Juror 48 present.)

23          THE COURT:  Yes, thank you.

24          I know from what you've told me that you consider

25  this client that you have to work with important.

U.S. v. Manafort

116

1           THE JUROR:  Yes, sir.

2           THE COURT:  Let me ask you about whether if you're

3   selected to serve as a juror, can you put that obligation to

4   one side, let someone else do it, and serve as a juror in this

5   case?  Or, would that be a real hardship on you?

6           THE JUROR:  I would love to serve on this case.

7           THE COURT:  Would it be a hardship for you?

8           THE JUROR:  My financial team is young.

9           THE COURT:  You simply have to tell me yes or no.

10          (A pause in the proceedings.)

11          THE JUROR:  It would be difficult.  I don't know how

12  you define hardship.  I could work nights and weekends.

13          THE COURT:  All right.  Thank you.  You may stand

14  over there.

15          (Juror 48 not present.)

16          THE COURT:  Anything further?

17          MR. ANDRES:  No, Judge.

18          MR. WESTLING:  No, Your Honor.

19          THE COURT:  All right.  I'm persuaded that it would

20  be a significant hardship for her and I will excuse her.  I

21  will note that there are ample number of other eligible jurors

22  for the parties to exercise their peremptory challenges on.

23          I frankly was a little put off by her desire to

24  serve on this jury.

25          MR. WESTLING:  You're not alone, Judge.

1    THE COURT:  All right.  You may return to your seats

2    now because I'm going to -- well, I'll have one more question

3    and then I will proceed to have the clerk select by lot.

4         MR. ANDRES:  Judge, can I ask about that?

5         THE COURT:  Yes.

6         MR. ANDRES:  You mentioned earlier that the

7    courthouse may or may not be closing.  I'm just wondering to

8    make sure we have ample witnesses for this afternoon.

9         THE COURT:  Well, the courthouse will close but

10   we'll go on with the trial.  It's for reasons that are not

11   clear to me, they're going to lock the courthouse up at 5:00.

12   So that if you're outside at 5:00, you won't get back in is

13   what I'm told.  I don't think we know why.

14        MR. ANDRES:  That's fine.

15        THE COURT:  And you all don't need to be concerned

16   about that as long as your witnesses are in here.  All right.

17        MR. ANDRES:  Thank you.

18        THE COURT:  Let's proceed.

19        (Open court.)

20        THE COURT:  Again, thank you for your patience.

21   We're close to the end of the process.  Because I'm hungry.

22   As I'm sure all of you are.

23        All right.  I have one final question for all of

24   you.  I want you to raise your hand if there is anything I

25   have told you about this case or anything in any question that

U.S. v. Manafort

118

1   I have asked causes any of you to think that you cannot sit as

2   a fair and impartial juror in this case.

3           If there's any reason why you could not sit and pay

4   careful and close attention to the evidence as it's presented

5   and render a fair and an impartial verdict, based only on the

6   evidence and the Court's instructions, if your answer to that

7   is that there is something, I want you to raise your hand.

8           All right.  The record will reflect that no hands

9   are raised.

10          Now next, ladies and gentlemen, the deputy clerk,

11  Ms. Pham, is going to call 12 names, selected at random, and I

12  want you to come forward and sit in the jury box.

13          It is at this stage that the attorneys will have an

14  opportunity to exercise their peremptory challenges.  I don't

15  anticipate this will take longer than 10 or 15 minutes.  After

16  which the bulk of you will be excused.

17          All right.  Proceed, Ms. Pham.

18          THE DEPUTY CLERK:  Ladies and gentlemen, as I call

19  your number, would you please come forward and have a seat in

20  the jury box as instructed by the court security officer.

21          Juror 0008.

22          Juror 0037.

23          Juror 0300.

24          Juror 0141.

25          Juror 0292.

1              Juror 0005.

2              Juror 0003.

3              Juror 0039.

4              Juror 0299.

5              Juror 0091.

6              Juror 0046.

7              Juror 0060.

8              (Board passed.)

9              THE COURT:  Let me have counsel quickly at the bench

10   please.

11             (Bench Conference.)

12             THE COURT:  You can indicate to Mr. Manafort that he

13   can come as well if he wishes to.  He doesn't have to but he

14   may.  He has the right to be present at all proceedings

15   involving him including bench conferences.  So in the future

16   you should advise him, as I expect you already have, that he

17   has the right to be present at these conferences at the bench.

18   And if he doesn't appear, I'll assume he's waived.

19             MR. WESTLING:  That's fine, Your Honor.  I'll make

20   sure we double check on that.

21             THE COURT:  I think one error that I made in the

22   voir dire is that I did not identify victims B, C and D.  So

23   we don't know whether anybody out here is -- we think -- I

24   think we know that nobody here is employed by them.  But we

25   don't know whether anyone has any financial or pecuniary

1    interest in any of the victim banks.  And that was an error of

2    mine not to ask that.

3            I can ask -- I will ask it now and we'll take the

4    board back and we'll see if we get any hands raised.  Any

5    objection to that?

6            MR. WESTLING:  None, Your Honor.

7            MR. ASONYE:  No, Your Honor.

8            THE COURT:  Who are the victims?  I have no idea.

9            MR. ANDRES:  Bank A is not charged in one of the

10   counts.  Listed in the indictment is Genesis Capital.

11           THE COURT:  Can you write this down for me, please?

12   One is?

13           MR. ANDRES:  Genesis Capital.

14           THE COURT:  They don't have to be -- they have to be

15   a victim before it's relevant.

16           MR. ANDRES:  They are a victim in some regards.

17           The second one is Citizens Bank.

18           The third one is the Banc of California.

19           And the fourth one is the Federal Savings Bank.

20           THE COURT:  Of what?

21           MR. ANDRES:  That's just what it's called.

22           MR. WESTLING:  It's based in Chicago, Judge, but

23   it's called the Federal Savings Bank.

24           THE COURT:  All right.  Then it should say of

25   Chicago.  That would give it some --

U.S. v. Manafort

121

1           I should have asked these questions, but at the same

2   time I would note you-all should have reminded me that I

3   should have asked those questions.

4           But I think it's important.  I don't want to seat a

5   juror who has a financial or pecuniary interest in any of

6   those organizations.

7           MR. ANDRES:  Its headquarters are in Chicago, but in

8   different places.

9           THE COURT:  And you all may return to your seats.

10           MR. WESTLING:  Thank you, Your Honor.

11           (Open court.)

12           THE COURT:  All right.  Who has the board right now?

13   All right.  You may retain it for a moment.

14           Ladies and gentlemen, I omitted to ask a question

15   that I should have asked all of you.

16           When I read to you from portions of the indictment

17   about allegations of bank fraud and conspiracy to commit bank

18   fraud, I mentioned institutions B, C and D or something of

19   that sort.  I want to tell you who they are now.

20           And I want to ask whether any of you have any

21   financial or pecuniary interest at all in any of these

22   entities or whether any of you know any of the officers or

23   employees of it.

24           One is Genesis Capital.

25           The next is Citizens Bank -- of what?

U.S. v. Manafort

122

1          MR. ANDRES:  It's just Citizens Bank, Judge.

2          THE COURT:  Citizens Bank.

3          Banc of California.

4          The Federal Savings Bank headquartered in Chicago.

5          Again, do you or any member of your family, so far

6    as you know, have any financial or pecuniary interest in any

7    of those organizations or banks or do you know any of the

8    officers or employees of it.  If you'd raise your hands,

9    please.

10          All right.  The record will reflect that no hands

11   are raised.

12          Let's proceed now.  I think the board is now in the

13   hands of counsel for the defendant.

14          MR. WESTLING:  Correct, Your Honor.

15          THE COURT:  Let's expedite.  We're now I would say

16   10 to 15 minutes away from lunchtime.  And I might add, those

17   of you who end up being selected to serve as jurors, I hope

18   you will not hurry to slit your wrists, there is a positive

19   side to it.  The court will provide your lunches every day.

20   Don't, however, look for the baked Alaska on the menu.  You

21   won't find it.  But there will be palatable stuff on there.

22          (Board passed.)

23          THE DEPUTY CLERK:  The following jurors may return

24   to their seats in the courtroom:

25          Juror 0300.

U.S. v. Manafort

1            Juror 0039.

2            Juror 0141.

3            Juror 0292.

4            Juror 0003.

5            Juror 0005.

6            Juror 0046.

7            THE COURT:  Yes.  Would you move down to the front

8    row, please, all the way down to the left.  Thank you.

9            THE DEPUTY CLERK:  Again, ladies and gentlemen, as I

10   call your number, please come forward and have a seat in the

11   jury box as instructed by the court security officer.

12           Juror 0155.

13           Juror 0090.

14           Juror 0145.

15           Juror 0271.

16           Juror 0297.

17           Juror 0286.

18           Juror 0132.  Juror 0132.

19           (Board passed.)

20           MR. WESTLING:  If we could have the numbers read one

21   more time.  I apologize.  We didn't keep up very well.

22           THE COURT:  All right.  Yes, you may do so.

23   Ms. Pham, would you read the numbers again of the --

24           THE DEPUTY CLERK:  They're on the board now.

25           THE COURT:  All right.

─────U.S. v. Manafort─────

124

1          MR. WESTLING:  We can look at the board, Your Honor.

2          THE COURT:  Well, that's all right.  Let's -- let's

3   call them.  Hand the board back to Ms. Pham, please.

4          You haven't moved any yet, have you?

5          MR. ANDRES:  No.

6          THE COURT:  All right.  Thank you.

7          THE DEPUTY CLERK:  Again, the juror numbers that

8   were just called:

9          Juror 0155.

10          Juror 0090.

11          Juror 0145.

12          Juror 0271.

13          Juror 0297.

14          Juror 0286.

15          And juror 0132.

16          (Board passed.)

17          THE COURT:  Let's expedite, counsel, if we can.

18          (Pause in the proceedings.)

19          THE COURT:  Let's expedite, counsel, if we can.

20          THE DEPUTY CLERK:  The following jurors may return

21   to their seats in the courtroom:

22          Juror 30 -- I'm sorry.  Juror 0132.

23          Juror 0297.

24          Juror 0286.

25          Juror 0155.

U.S. v. Manafort

125

1          Juror 0090.

2          Juror 0271.

3          THE COURT:  Would you come and sit around in the

4   first row, please.

5          Thank you very much.

6          THE DEPUTY CLERK:  Again, ladies and gentlemen, as I

7   call your number, would you please come forward and have a

8   seat in the jury box as instructed by the court security

9   officer.

10         Juror 0094.

11         Juror 0058.

12         Juror 0115.

13         Juror 0122.

14         Juror 0009.

15         Juror 0302.

16         (Board passed.)

17         THE COURT:  Let's expedite, counsel.

18         (Continues.)

19         THE DEPUTY CLERK:  The following jurors may return

20   to their seats in the courtroom:

21         Juror 0058.

22         Juror 0094.

23         Juror 0122.

24         Again, ladies and gentlemen, as I call your number,

25   please come forward and have a seat in the jury box as

─U.S. v. Manafort─

126

1   instructed by the court security officer.

2           Juror 0310.

3           Juror 0018.

4           Juror 0082.

5           (Board passed.)

6           THE COURT:  Let's move it along, counsel.

7           (Continues.)

8           MR. DOWNING:  Your Honor, would you yell "bingo" at

9   the end of the next round?

10          THE COURT:  Say again?

11          MR. DOWNING:  Would you yell "bingo"?  We feel like

12  we're playing Bingo here.

13          THE COURT:  I'm looking forward to saying "recess"

14  for lunch.

15          THE DEPUTY CLERK:  The following jurors may return

16  to their seats in the courtroom:

17          Juror 0018.

18          Juror 0310.

19          Again, ladies and gentlemen, as I call your name or

20  your number, would you please come forward and have a seat in

21  the jury box as instructed by the court security officer.

22          Juror 0159.

23          Juror 0017.

24          (Board passed.)

25          THE DEPUTY CLERK:  The following juror may return to

U.S. v. Manafort

127

1  their seat in the courtroom:

2          Juror 0159.

3          Again, ladies and gentlemen, as I call your number,

4  would you please come forward and have a seat in the jury box

5  as instructed by the court security officer.

6          Juror 0096.

7          (Board passed.)

8          THE DEPUTY CLERK:  The following juror may return to

9  their seat in the courtroom:

10          Juror 0096.

11          Again, ladies and gentlemen, as I call your number,

12  would you please come forward and have a seat in the jury box

13  as instructed by the court security officer.

14          Juror 0276.

15          THE COURT:  The board will be available for you

16  later, if you want to look at it.

17          MR. ANDRES:  Thank you, Judge.

18          (Continues.)

19          THE COURT:  All right.  Now --

20              (Discussion off the record.)

21          THE DEPUTY CLERK:  Ladies and gentlemen, as I call

22  your number, would you please come forward and have a seat in

23  the jury box as instructed by the court security officer.

24          Juror 0296.

25          Juror 0054.

─────U.S. v. Manafort─────

128

1            Juror 0127.

2            Juror 0133.

3            (Board passed.)

4            THE COURT:  Mr. Flood, you may show them the board

5    once again.  Just show them the board.

6            All right.  You may now administer the oath to the

7    jury.

8            THE DEPUTY CLERK:  Would the defendant please rise

9    and face the jury.

10           Jurors, would you now stand and raise your right

11   hand.  After the oath is administered, respond by stating, "I

12   shall".

13           (Jury sworn.)

14           THE DEPUTY CLERK:  Thank you.  You may be seated.

15           THE COURT:  All right.  Ladies and gentlemen, I'm

16   now able to excuse the remainder of you.  I again want to

17   thank you for your patience.  Your presence today was

18   necessary.  We could not have proceeded without you.  And so

19   for that, we thank you.

20           You're free now to depart and I will ensure that

21   you're not soon called again.  Thank you for your service

22   today.

23           (Jury panel members not seated excused.)

24           THE COURT:  Now, ladies and gentlemen, I'm not going

25   to give you the usual preliminary instructions, because it's

1  lunchtime.  We're going to have lunch first.

2         When you return from lunch, you'll be given booklets

3  to take notes.  You may take as many or as few notes as you

4  wish.  It's entirely up to you.

5         And importantly, no one will look at these books but

6  you.  At each recess, the court security officer, Mr. Flood,

7  will take custody of them and maintain their security.  And I

8  assure you he can do that.

9         At the end of the case, you'll have the books to

10 take home with you and to do with you as you wish.  But again,

11 no one is going to look at these books in the interim.  I

12 won't, I will not, and neither will Mr. Flood or anyone else.

13 And again, you may take as many or as few notes as you wish.

14         During this luncheon recess you are not to discuss

15 this case with anyone or to allow anyone to discuss it with

16 you.

17         If anyone tries to speak to you about the case, stop

18 them, and call that to the Court's attention promptly.  You

19 may not discuss the matter with anyone.

20         Don't undertake any research on your own.  I used to

21 be able to say don't look up anything in books but no one does

22 that anymore.  I'm probably the only one in the courtroom who

23 does that.  But don't use any electronic device to look up

24 anything.  Don't look up any of the lawyers, the defendant, or

25 myself or any court personnel.

U.S. v. Manafort

130

 1          You're not to do any research at all because you're

 2    to decide this case solely based on the evidence presented

 3    here and the Court's instructions on the law.

 4          Now not today, but tomorrow and the days after, your

 5    lunch will be supplied.  Mr. Flood will give you a menu.  And

 6    as I've said, don't look for the baked Alaska, but I think you

 7    will find other choices that will be entirely suitable and

 8    palatable.

 9          All right.  You may now -- and, Mr. Flood, take them

10    out that way.  It is now -- I have 1:57, is that correct?

11          All right.  We will reconvene at 2:45 at which time

12    there will be preliminary instructions, then there will be

13    opening statements by counsel, and we'll proceed with taking

14    the evidence in the case.

15          Thank you again for your patience and your

16    participation thus far.  You may follow Mr. Flood out.

17          Mr. Flood, see if you can take them down, convene --

18    see if you can accompany them and get them down stairs.

19    There's a crowd out there.  Find another elevator or do

20    something if you would, please, to facilitate their going

21    downstairs .

22          (Voir dire ended.)

23

24

25

1                    <u>CERTIFICATE OF REPORTER</u>

2

3          I, Tonia Harris, an Official Court Reporter for the

4    Eastern District of Virginia, do hereby certify that I

5    reported by machine shorthand, in my official capacity, the

6    proceedings had and testimony adduced upon the Jury trial -

7    Voir Dire in the case of the **UNITED STATES OF AMERICA versus**

8    **PAUL J. MANAFORT, JR.**, Criminal Action No. 1:18-CR-83, in said

9    court on the 31st day of August, 2018.

10         I further certify that the foregoing 131 pages

11   constitute the official transcript of said proceedings, as

12   taken from my machine shorthand notes, my computer realtime

13   display, together with the backup tape recording of said

14   proceedings to the best of my ability.

15         In witness whereof, I have hereto subscribed my

16   name, the 5th of August, 2018.

17

18

19

20

21                        _____

22                        Tonia M. Harris, RPR
                           Official Court Reporter

23

24

25