# <u>EXHIBIT 1</u>

```
 1                   BEFORE THE UNITED STATES DISTRICT COURT
                        FOR THE DISTRICT OF COLUMBIA
 2


 3       UNITED STATES OF AMERICA,          .
                                            .  Case Number 17-CR-201
 4                Plaintiff,                 .
                                            .
 5           vs.                             .
                                            .  Washington, D.C.
 6       PAUL J. MANAFORT, JR.,             .  January 25, 2019
                                            .  9:37 a.m.
 7                Defendant.                 .
         - - - - - - - - - - - - - - - - -

 8


 9                          TRANSCRIPT OF HEARING
                           (SEALED PORTION REDACTED)
10               BEFORE THE HONORABLE AMY BERMAN JACKSON
                        UNITED STATES DISTRICT JUDGE

11


12       APPEARANCES:


13       For the Government:      ANDREW WEISSMANN, AUSA
                                  GREG ANDRES, AUSA
14                                United States Department of Justice
                                  Office of Special Counsel
15                                950 Pennsylvania Avenue Northwest
                                  Washington, D.C. 20530

16
         For the Defendant:       RICHARD WESTLING, ESQ.
17                                Epstein Becker & Green, P.C.
                                  1227 25th Street Northwest
18                                Suite 700
                                  Washington, D.C. 20037

19
                                  KEVIN M. DOWNING, ESQ.
20                                Law Office of Kevin M. Downing
                                  601 New Jersey Avenue Northwest
21                                Suite 620
                                  Washington, D.C. 20001

22


23                                -- continued --


24


25
```

```
 1      APPEARANCES (CONTINUED):

 2                                    THOMAS ZEHNLE, ESQ.
                                      Law Office of Thomas E. Zehnle
 3                                    601 New Jersey Avenue Northwest
                                      Suite 620
 4                                    Washington, D.C. 20001

 5

 6      Official Court Reporter:      SARA A. WICK, RPR, CRR
                                      U.S. Courthouse, Room 4704-B
 7                                    333 Constitution Avenue Northwest
                                      Washington, D.C. 20001
 8                                    202-354-3284

 9

10      Proceedings recorded by stenotype shorthand.
        Transcript produced by computer-aided transcription.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                      P R O C E E D I N G S

 2          (Call to order of the court.)

 3              THE COURTROOM DEPUTY:  Good morning, your Honor.  This

 4      morning, we have criminal case number 17-201-1, the United

 5      States of America v. Paul J. Manafort, Junior.  Mr. Manafort is

 6      present in the courtroom.

 7          Will counsel for the parties please approach the lectern

 8      and identify yourselves for the record and the party you

 9      represent.

10              MR. WEISSMANN:  Good morning, your Honor.  For the

11      government, Andrew Weissmann and Greg Andres, and from the FBI,

12      Jeff Weiland, Mike Ficht, and Renee Michael.

13              THE COURT:  All right.  Good morning.

14              MR. WESTLING:  Good morning, your Honor.  Richard

15      Westling, Kevin Downing, and Thomas Zehnle for the defendant.

16              THE COURT:  Good morning.

17          I note Mr. Manafort is present.

18          Before I hear from the parties or ask the parties any

19      questions, I wanted to just review the procedural history that

20      brought us here to let you know what the issues are that

21      concerned me this morning.

22          On the eve of trial on September 14, 2018, this defendant

23      pled guilty to two counts of conspiracy that could give rise to

24      a maximum five-year sentence on each.  The plea agreement

25      required his cooperation with the government.  He had already
```

1    met with them for some proffer sessions, and the sentencing date

2    was left open for that process to continue to unfold.

3        The parties were supposed to update me periodically about

4    the status of what was going on, and a status report was filed

5    on November 26, 2018, asking that a sentencing date go ahead and

6    be set, as well as dates for filing of sentencing submissions.

7        The parties informed me that it was the Office of Special

8    Counsel's position that the defendant had breached his

9    obligation to cooperate fully, truthfully, completely, and

10   forthrightly, and that after he had entered the plea, he had,

11   quote, committed federal crimes by lying to the FBI and the

12   Office of Special Counsel.

13       The status report also set out the Office of Special

14   Counsel's position that the breach relieved the government of

15   any obligations it had under the agreement, including its

16   agreement to a reduction in the recommended sentencing guideline

17   for acceptance of responsibility.

18       So faced with that representation, I held a status

19   conference on November 30th.  To me, the report raised a number

20   of questions about what the consequences of the alleged breach

21   and the alleged criminal conduct could be and what would be the

22   most appropriate and efficient way to deal with the allegations.

23       With everyone's agreement, we set a sentencing date,

24   because that's necessary to initiate the process of the

25   preparation of the presentence report.  But we also established

1    a separate schedule for the Office of Special Counsel to file a

2    submission that would particularize its allegations, and we set

3    a tentative date for the defendant to respond in the interim.

4    We didn't set a hearing date, because the defense really

5    couldn't anticipate how long it would take it to respond to the

6    allegations until it saw what they were.

7        But everyone agreed at that time that I should be the one

8    who decided whether the defendant breached the agreement and

9    that I should decide before the Probation Department calculated

10    the guidelines in the presentence report.

11        So on December 7th, the government submitted its submission

12    in support of the breach determination, docket 461.  There was a

13    redacted version and a sealed version.  I'm only going to be

14    talking about what's on the public record at this time.

15        The submission invoked the provision in the plea agreement

16    that said, "Should it be judged by the government in its sole

17    discretion that the defendant violated the plea agreement in

18    that he had failed to cooperate fully and intentionally gave

19    false or misleading testimony or committed or attempted to

20    commit further crimes or violated any other provision of this

21    agreement, the government would be released from its

22    obligations, including its promise not to oppose the downward

23    adjustment in the guidelines calculation for acceptance of

24    responsibility."

25        The pleading identified five areas of concern, some

involving more than one alleged false statement.  But I was a
little surprised at the time at the absence of any exhibits
setting out what he had said and what's the evidence that they
are relying on to say that it was false.  And I wasn't sure how
the defendant could meaningfully respond or what I was supposed
to do with the information in that state.

So we had another status conference, and that was on
December 11th.  Again, there was considerable discussion, as we
were all really thinking out loud together, but ultimately, we
reached an agreement, and there was an agreement among the
parties, which everyone was surprised and pleased by, and that
was that there was already an informal process ongoing where the
Office of Special Counsel was giving the defense the information
that led it to believe he had testified falsely.  It was going
to continue to detail its allegations and the grounds for them
to the defense.

The defense would then inform me in a pleading which, if
any, of the five categories of statements were disputed.  If
they were disputed, then the Office of Special Counsel was going
to supply the detailed backup information to me under seal as
necessary, and there would be a hearing today at which I would
rule -- or after which I would rule on the breach allegations.

Again, the parties were in complete agreement that this
should take place, not only before the defendant's sentencing
before me, but before his sentencing in the Eastern District of

1    Virginia, though the defense also told me that the parties were

2    working collectively to determine if a hearing was necessary.

3        And I believe it was Mr. Westling who said if we reach a

4    place where the effect of the decision is not something that we

5    have a problem with happening, then maybe we don't have to go

6    through the procedure.

7        So information was provided, and then on January 8th, the

8    defendant filed his response to the Special Counsel's

9    submission.  It asserts that the defendant did not make

10   intentional misstatements with respect to any of the five issues

11   or subissues, but it also stated he is not requesting a hearing.

12   It didn't say whether that was a joint recommendation or just a

13   defense recommendation.

14       The defendant acknowledged that the plea agreement provides

15   that the determination of whether he is in violation of the plea

16   agreement can be made in the government's sole discretion, and

17   this means that to get me to reject the government's decision

18   and to deny the Office of Special Counsel the right to invoke

19   its rights under that provision, the defendant would have had to

20   establish that the government made its discretionary call in bad

21   faith.

22       So the defendant said, "Given the highly deferential

23   standard that applies to the governmental determination of a

24   breach and the government's stated intention to limit the effect

25   of the breach determination to its advocacy at sentencing,

1   factual disputes should be resolved in the course of the

2   standard presentence report process.  Waiting until after that

3   process is complete will allow the parties to determine those

4   factual issues, if any, that remain in dispute."

5       Well, this again took me by surprise, since I thought the

6   whole point of the process that we had established was to give

7   the defendant the opportunity to review the government, the

8   information it was going to provide, and to file its pleading,

9   which was to determine those factual issues that remain in

10  dispute.  And the pleading plainly indicated that all of the

11  allegations concerning intentional misrepresentations were in

12  dispute.

13      So I declined to cancel today's hearing and called for the

14  Office of Special Counsel to go ahead and submit the information

15  underlying its allegations to me.  So that's been done.  On

16  January 15th, 2019, the Office of Special Counsel filed a

17  lengthy declaration supported by 800 or so pages of exhibits,

18  and the defendant has filed its response.  I've read it all.

19      And this history leaves me, leaves us, with several sets of

20  questions or issues to be resolved.  The first set of issues I

21  would call the procedural issues.  We need to nail down the

22  parties' evolving positions and resolve any disputes, if there

23  are any, about what the consequences could be or will be that

24  will flow from the Office of Special Counsel's determination

25  that Mr. Manafort breached his plea agreement.  We need to

1    figure out what it is I have to decide, when I'm supposed to

2    decide it, and utilizing what procedure.

3        And then we also have what I will call loosely substantive

4    issues, which is, did he make intentionally false statements in

5    the course of his cooperation.  Whether or not an evidentiary

6    hearing would be involved -- and the parties appear to be in

7    agreement that the presentation of additional evidence is not

8    necessary -- I can say based on my review of the material that I

9    have questions that would at least require argument.

10        I have not made any decisions yet.  There's some aspects of

11   the government's submission that are confusing or lack context.

12   There's several places where the defense submissions are a

13   little conclusory and short on specifics.

14        At this point I do think that what the defense has put

15   forward concerning any witness's ability to recall details of

16   distant specific events and situations where he revised his

17   account during this same interview once he was provided with

18   contemporaneous records or situations where the questions or the

19   answers may have been ambiguous in the first place, those

20   arguments have some force.

21        And so with respect to some of the allegations, I may

22   conclude that while the investigators shouldn't have to pull

23   teeth -- and they fairly decided that what they got is not what

24   was meant by full cooperation -- not all of the instances rise

25   to the level of actionable false statements within the meaning

1    of the Criminal Code.

2        But that being said, I also have some serious concerns that

3    in other instances where he didn't simply deny something first

4    and then admit it later but he affirmatively advanced a version

5    of events that has been shown to be false, that he may have

6    lied, pure and simple.

7        So I want to ask some questions, and I think that it's

8    likely that those questions, related to the five areas of

9    concern and even some of the defendant's more general arguments,

10   can only be fully and properly addressed in a proceeding that's

11   sealed.  Otherwise, we're going to be walking back and forth

12   from the bench, depending on what I'm asking and what the

13   answers are.

14       So I'm going to put aside the substance for now and talk

15   about the procedural issues.  Under the plea agreement, the

16   Office of Special Counsel's assessment of the defendant's

17   cooperation bears upon the calculation of the advisory

18   sentencing guideline ranges for these offenses.  I recognize

19   that whether the offense level for guidelines purposes goes up

20   or down a few levels based upon the availability of various

21   adjustments may be of little moment.  Even if he gets full

22   credit for acceptance of responsibility and a full three-level

23   reduction, the applicable guideline range already far exceeds

24   the statutory maximums here.  And that's true even if you run

25   the two sentences consecutively.

1    So where the guidelines are concerned, this dispute might

2    be purely academic, and that may be a part of what's fueling the

3    suggestion that I don't need to have a hearing.

4    But as I think you all know, sentencing is not an exercise

5    in algebra, and the guidelines are not the end of the

6    conversation.  I have to decide where in the guideline range the

7    sentence should fall and whether it should be more or less

8    severe than what the guidelines recommend.  To do that, I have

9    to look at all the statutory factors to be considered when you

10    sentence someone, including the assessment of the history and

11    characteristics of the defendant, which would plainly include

12    his candor, particularly during the pendency of this case and

13    particularly when dealing with the Office of Special Counsel.

14    Also, I'm going to have to decide whether to run the two

15    sentences for the two counts consecutively or concurrently and

16    whether to run my sentence consecutive or concurrent to whatever

17    he gets in the Eastern District of Virginia.

18    And at bottom, as everyone knows, because you all know the

19    statute quite well, I'm going to have to decide what sentence is

20    sufficient but not greater than necessary to fulfill a number of

21    purposes, and they may all point in different directions.  I

22    have to reflect the seriousness of the offense and to promote

23    respect for the law, to impose just punishment.  I have to think

24    about deterrence, and I have to think about his sentence being

25    in parity with sentences meted out to defendants who also do not

1    have prior criminal convictions and were involved in similar

2    offenses.

3        So -- and I recognize this has been a very long

4    introduction, and I do actually want to hear your answers to the

5    questions I'm about to ask.  As background, you should know

6    before you stand up, what strikes me at this point is that even

7    if we all agree that the Office of Special Counsel's decision as

8    to whether he breached the agreement was within its discretion

9    to make, and he's not challenging that, and even if we all agree

10   that the adjustments to the guidelines don't matter, at bottom,

11   their decision is disputed.  And so we have a fundamental

12   dispute about something that, to me, is fundamental to the

13   sentence he's ultimately going to receive.

14       And it's hard for me to envision how I could proceed with

15   sentencing or, frankly, even prepare for sentencing without

16   making my own independent determination of whether he actually

17   intentionally lied to law enforcement or to the grand jury,

18   which is a slightly different question from whether the Office

19   of Special Counsel had the right to say he did.

20       So I would actually like to start with the defense and ask

21   you some questions about your submission.

22             MR. WESTLING:  Good morning, your Honor.

23             THE COURT:  After I ask you questions, I might

24   actually let you talk, too.

25             MR. WESTLING:  That's fine.

 1          THE COURT:  All right.  You've said in your pleading,

 2     quote, it is the defendant's position that a hearing on the

 3     specific issue of whether the Office of Special Counsel made its

 4     determination regarding what you call the purported breach is

 5     not required, because parties can and regularly do disagree upon

 6     their interpretation of the facts without accusing each other of

 7     improper motivation.

 8          I want to tell you that I appreciate the professionalism

 9     and civility involved in your decision to resist making those

10     sorts of accusations, particularly in this climate where people

11     outside the courthouse do not feel so constrained.

12          So it's clear to me what you're not saying, but it is not

13     clear to me what you are saying.  Are you conceding that the

14     Special Counsel did, in fact, make its determination in good

15     faith?

16          MR. WESTLING:  We are, your Honor.

17          THE COURT:  Okay.  Now, you're telling me, then, I

18     don't need a hearing on the question of whether they acted in

19     good faith in deciding whether there was a breach, but what

20     about the question of whether there was a breach?

21          MR. WESTLING:  So I think what we've tried to lay out

22     in all of our pleadings is our sense that there are, obviously,

23     facts that the Court is aware of now, sort of all the

24     background.  And we believe that the question of whether there

25     was a breach turns on whether Mr. Manafort intentionally lied,

1    and we contend he did not intentionally lie.

2         However, the issue becomes one of, in determining whether

3    that occurred, back to the standard, isn't it within the

4    discretion of the Office of Special Counsel under the plea

5    agreement to make a determination.  So long as we can't say that

6    determination is in bad faith, I think we don't see that there's

7    more that has to happen there.

8         THE COURT:  Well, for all the other reasons that --

9    putting aside whether it's a breach or not, whether he accepted

10   responsibility, what his history and characteristics are, all

11   those things, don't I have to decide whether he breached the

12   agreement or not or at least whether he intentionally lied or

13   not?

14        MR. WESTLING:  I think the latter and not the former

15   would be my answer.  I do think it's appropriate for the Court

16   to determine what its decision is regarding the facts and

17   circumstances of what was said, what was meant, and what

18   occurred.  But it's in the context of the sentencing question

19   and not as much the breach issue, which is, I think, how we got

20   all teed up to begin with, understanding that those are related

21   exercises.

22        THE COURT:  Okay.  So you said to the extent the facts

23   underlying these issues must be determined in connection with

24   the sentencing hearing.  You basically agree they do need to be

25   determined in connection with the sentencing hearing.

1          MR. WESTLING:  That's correct.

2          THE COURT:  Then you said the decision about whether

3    to hold a hearing, I should wait until after the presentence

4    report has been prepared, because then we can figure out --

5    narrow the dispute.

6       And I guess my question is, don't we already know what's in

7    dispute?  What else is going to happen?

8          MR. WESTLING:  I think we understand what's in

9    dispute, but the context of the alleged false statements in the

10   sentencing process is not something we know as well today as we

11   will after there's a presentence report.  So we don't know

12   whether this will become a part of the report.  We don't know

13   how it will be treated in that process.

14      And so the thought was simply, if there's more that's going

15   to happen procedurally in the normal course of preparing for

16   sentencing, it may be better to determine those issues once

17   that's occurred rather than in advance.  I'm not saying it has

18   to be one way or another, but I think that's what we were sort

19   of drawing out, that if it's not the breach issue, then it could

20   wait until we sort of have a more fulsome exercise of all the

21   process that goes on in sentencing.

22         THE COURT:  I think it's fair to assume that the

23   government will tell the Probation Office what it's told you and

24   what it's already told me, and the Probation Office will either

25   say he's entitled to this reduction or he's not entitled to this

1    reduction, and whichever way it goes, the other one's going to

2    dispute it.

3         MR. WESTLING:  There's no doubt, at the end of the

4    day, you will be the decisionmaker.  It's just a question of

5    timing.

6         THE COURT:  That's what I think, too.  Actually, I

7    have to be.  And the last time you were here, you were of the

8    view that I should decide this case before sentencing and even

9    before Judge Ellis's sentencing so --

10        MR. WESTLING:  So I think what we were still

11   struggling with at the time -- and again, maybe we've done too

12   much in terms of separating sentencing from breach.  But you

13   know, to the extent that there was still a question about where

14   we would be on the need for a hearing on the breach issue, we

15   felt it was important to get that resolved, at least from a

16   defense perspective.  The government, I know, had a similar

17   view.  It may have had it for different reasons.  From our

18   perspective, at this point, I think we were taking the position

19   that we would prefer it to happen at a time when it is really

20   all about sentencing, if we don't need to have a hearing on the

21   breach today.

22        THE COURT:  All right.  Do you have any thoughts about

23   whether Rule 32 requires me to await the outcome of a

24   presentence report to start fleshing out these issues, either to

25   hear them or to rule on them?

```
1              MR. WESTLING:  I don't know that it does control the

2     Court in any way that I'm aware of.  I've seen these issues

3     handled both ways.  I don't think there's a mandate in Rule 32

4     that suggests a course.

5              THE COURT:  All right.  Well, whether or not we decide

6     that we need a presentence report before I hear things

7     further -- and I really think the presentence report is just

8     going to recapitulate everything that we have already fleshed

9     out in a lot of detail -- am I correct that you do agree that

10    whenever the issue does end up in my lap, we're not going to

11    need a further evidentiary presentation?  There's not going to

12    be witnesses' testimony, but that I can base my decision on the

13    record before me right now?

14             MR. WESTLING:  We believe the record is complete and

15    is sufficient for the Court to make a determination, yes.

16             THE COURT:  I think it would be helpful to me to have

17    the issue nailed down before we engage in what I expect will be

18    a lengthy allocution about what's going to be the appropriate

19    sentence in this case, for all the other reasons.

20        So is there any reason why I shouldn't hear argument before

21    the presentence report is prepared, even if I don't have to

22    decide until after I get it?

23             MR. WESTLING:  I think that's in the discretion of the

24    Court.  We felt there was some benefit to having the presentence

25    report, but obviously, if you feel the decision -- and I
```

1    agree -- is going to be made by you at some point in the

2    process, it's really when would you prefer to do it.  So we will

3    be prepared whenever the Court needs us to be.

4         THE COURT:  Assuming that I do want to hear argument

5    about the merits of these allegations, as I've indicated that I

6    do, either now or at a later date, do you think there are

7    aspects of the discussion we can have in open court?

8         MR. WESTLING:  I suspect -- I'm going to leave that to

9    the government, your Honor.  They have a better feel for the

10   materials that have been submitted under seal.  We've tried our

11   best to match what we've done with what they were doing.  So I'm

12   going to defer to them on that.

13        THE COURT:  All right.  You made references to the

14   state of the defendant's physical and mental health in the

15   public portions of your pleading.  But what is your position

16   about whether that can or should be discussed in more detail on

17   the public record?

18        MR. WESTLING:  I think it can be.

19        THE COURT:  And what's your view about when I should

20   make findings?  Would it be necessary, preferable for you to

21   know how I feel about these allegations before you write your

22   sentencing memo, so you don't have to make the same arguments in

23   the sentencing memos before we actually show up for sentencing?

24        MR. WESTLING:  I think to the extent the Court is

25   inclined to hear the matter, as it appears to be, prior to the

1    sentencing, then yes, having findings in advance, in advance of

2    a sentencing memo would be helpful.

3              THE COURT:  All right.  Is there anything else you

4    want to say about how you think we should proceed, talking about

5    the procedural aspects of things and not the substantive

6    question of whether he intentionally lied?

7              MR. WESTLING:  Not at this time, your Honor.

8              THE COURT:  All right.  Thank you.

9        Mr. Weissmann?  All right.  The defendant's January

10   response to your initial memo makes reference to your, quote,

11   stated intention to limit the effect of the breach determination

12   to advocacy at sentencing.

13        As yet, that has not been stated to me.  On November 30th,

14   you reserved your right, as you had every right to, to continue

15   to evaluate, among other things, whether you were going to

16   re-bring charges.

17        In December, Mr. Westling told me you were still trying to

18   work collaboratively on what the effect of a breach might be,

19   and the declaration on the 15th doesn't actually respond to this

20   assertion in the defense response.

21        So is it, in fact, your position that you're not going to

22   be seeking to unwind the plea agreement and try him on all of

23   the charges in the superseding indictment?

24             MR. WEISSMANN:  One, that's not exactly what the

25   defense said in their submission.  I think they were careful to

1     embody what we had said to them and which I'm now going to

2     repeat to the Court is our position, which is that we don't

3     currently intend to do that.  So there was no reason, in light

4     of our current intention, to delay sentencing.  But we weren't

5     going to commit that we would -- that the government, whether

6     the Special Counsel's Office or other parts of the Department of

7     Justice, were to bring charges in the future, but there is no

8     current intention to do that.

9          THE COURT:  I know that if you're -- if he's charged

10    with something else in the future, being sentenced in this case

11    would not bear on it one way or the other.  But you're

12    actually -- you're still reserving the right to charge him in

13    the future for other counts in the superseding indictment after

14    he's been sentenced on the counts that he's pled to?  Doesn't

15    the plea agreement require the dismissal of those counts at

16    sentencing?

17         MR. WEISSMANN:  Well, our position is that the plea

18    agreement has been breached.  Our obligations under the

19    agreement don't exist now.  He is bound, but the whole point of

20    saying there's a breach is that there are a lot of promises that

21    we had made, absent there being a breach, that we would, of

22    course, adhere to.  So we are not prepared to say in the future

23    that that wouldn't be the case.

24     I can think of a situation, again a hypothetical situation,

25    where that could be something that the government would want to

1    do.  I'm not in any way saying that's a current intention,

2    there's a plan that it will happen, but there is -- we do want

3    to reserve that ability.

4        THE COURT:  Okay.  And obviously, you do maintain that

5    your decision that he breached does have consequences for what

6    you can argue at sentencing?

7        MR. WEISSMANN:  We do.  If I could just address the

8    way that the government's looking at the -- what I think of as

9    two separate issues, as well as I just wanted to address one

10   issue involving the standard that applies.

11      The government views this as two separate issues before the

12   Court.  One is the issue of whether the government has

13   determined that there was a breach in good faith, and that's one

14   set of issues.

15       THE COURT:  And I believe they have conceded that

16   issue --

17       MR. WEISSMANN:  I agree.

18       THE COURT:  -- on the record.  Okay.

19       MR. WEISSMANN:  One issue that I want to raise there

20   is the standard that I understand that applies to the

21   government, is that it would actually be our burden under the

22   plea agreement to show that we acted in good faith, as opposed

23   to the defense having the burden of showing we acted in bad

24   faith.  And that is in paragraph 13 of the plea agreement.  So I

25   just want to make sure that -- our position is that that is

something we would be required to show.  I understand that that

is conceded, but I just want to make that clear.

The second issue is, putting aside the breach issue, the

other issues are really for the Court at sentencing, and that

really has nothing to do with whether there was a breach or not.

I mean, there's an overlap factually whether there's issues, but

the issue for the Court is one which is, has the defendant in

some way engaged in conduct in connection with his plea

agreement that is pertinent to the Court in some fashion at

sentencing.  And we understand that the standard that would

apply to that is that we would bear the burden of showing by a

preponderance those facts.

But that is really -- from our view, it's not an issue

of --

THE COURT:  But that's if I take them into

consideration for guidelines.  In terms of thinking just more

generally about the statutory factors, it is not exactly clear

what the standard would be.  But I agree with you, if it bears

on acceptance of responsibility or some of these other things

that you had in the plea agreement that we're going to talk

about, that would be our burden.

MR. WEISSMANN:  That's a much more precise way of

speaking about it.  We agree with that.

So I think that -- I'm not sure I've answered all of your

questions on that.

1          THE COURT:  Not yet.  I have more written down.

2          MR. WEISSMANN:  Sure.

3          THE COURT:  What a surprise.

4      Obviously, you're not going to be showing up at sentencing

5  and asking that he receive credit for his cooperation.  But do

6  you still think it's important to let me know, because the

7  defense, I'm sure, will want me to know, the nature and extent

8  of cooperation that you didn't find problematical for me to

9  consider in the mix of all the facts that I'm going to be

10 considering?

11         MR. WEISSMANN:  So is the question -- the defense may

12 take that position, and then we will respond to it.

13         THE COURT:  Your point of view is, cooperation is just

14 not a factor anymore?

15         MR. WEISSMANN:  Exactly.

16         THE COURT:  Okay.  Have you decided whether it's going

17 to be your position that he's not entitled to the adjustment for

18 acceptance of responsibility?

19         MR. WEISSMANN:  We haven't decided that, that issue

20 just yet.  It's complicated, because there are two separate

21 counts to which he pled to.  There, obviously, is an issue with

22 respect to the second count.  That is one which -- just to jump

23 ahead, one of the questions you asked was about what could be

24 done under seal and what could be done on the public record.  Of

25 the five subject areas, that's the one that we think could be

1    done on the public record.  As the Court can see from the

2    redacted versus unredacted version, there are minimal redactions

3    in that section.

4         What we would propose, to the extent that the Court either

5    today or at some point has argument on the other four, our

6    proposal is that that be done initially under seal, because it

7    would be so hard to argue that and get into the facts and the

8    details and not make a mistake.  So that in the first instance,

9    the parties would argue that, we would propose, under seal, but

10   then in short order a transcript be prepared and that we

11   propose, "we" meaning the defense and the government, propose

12   redactions to the Court to see if there is something that could

13   be unredacted.

14        THE COURT:  That was really where I was headed.  I

15   think that's going to be the most efficient way to proceed.

16        Going back to what the impact of these findings could

17   possibly be, you told me back in November that denying him the

18   adjustment on the -- for acceptance of responsibility would

19   require a factual finding that he did, in fact, breach the plea

20   agreement.  But I think what you're saying is that's not really

21   the finding.  The finding would be that he did, in fact, lie.

22        MR. WEISSMANN:  I think that's right.  If I said that,

23   then I misspoke.  I agree with the Court.

24        THE COURT:  Okay.  Back then, you said you didn't

25   think we needed to await the preparation of a presentence report

1    for me to make that finding.  Do you still feel that way?

2         MR. WEISSMANN:  I do.  I think it would be beneficial

3    to the government and, I think, actually beneficial to the

4    parties in general for the parties to know in advance the

5    Court's determination.  It actually gives us more notice in

6    terms of addressing those issues at sentencing, and knowing

7    where the Court has determined the facts lie will help us in

8    making arguments and proposing what facts we think are relevant.

9         THE COURT:  There were some other consequences listed

10   in the plea agreement:  The right to seek an upward adjustment

11   for obstruction of justice, the right to seek an increase in the

12   base level based on post-agreement conduct.  And what you told

13   me initially is that it was unlikely you were going to pursue

14   those remedies because of where the guidelines are anyway in

15   light of the statutory maximum.

16       Is that still what your thinking is?

17         MR. WEISSMANN:  It is.  The way in which -- under the

18   current posture of two counts with a 10-year maximum cap if they

19   were stacked, our view is that the relevance to the Court is

20   going to be very much about the 3553 factors.  In particular, I

21   think specific deterrence becomes -- is quite relevant to -- if

22   the Court were to agree with the government that there has been

23   continuous misconduct after the plea agreement was signed, and

24   we think that's the principal way in which this will be relevant

25   to the Court.  I'm not trying to get ahead of ourselves in terms

of making arguments in terms of sentencing, but I think that will be the main factor.

THE COURT:  Do you think Rule 32 has any bearing on what order I am supposed to do things in and whether I have to wait for the presentence report to be written, telling me that you've told the Probation Office what you've already told me, or whether we can start talking about these issues before then?

MR. WEISSMANN:  I believe we can start talking about the issues.  I don't see any prejudice at all.  Again, as I said, I think there's an advantage to the parties to have this decided beforehand.  I would also think there's an advantage to the Probation Department, since at the end of the day the Court is going to make the decision.  I don't see how Probation would actually make that decision.  To me, it would basically list out the agreements and disagreements of the parties, but ultimately, it would be a judicial function.

THE COURT:  All right.  And whenever I do this, I think you have also now agreed that my determination is going to be based on the record that's before me now, and you're not seeking to put in additional witness testimony, you don't think it's necessary?

MR. WEISSMANN:  We don't think it's necessary, but as we indicated in our last filing, if the Court has questions, particularly of a factual nature, we, of course, are happy to put in additional evidence, either through live testimony or

1    additional declaration.  In other words, we're not against

2    having a hearing in any way.  So if there is an omission that we

3    have made or something we haven't anticipated, we are happy to

4    supplement the record in whatever way would be most beneficial

5    for the Court.

6           THE COURT:  Okay.  Are you still -- does it still

7    matter to you -- no one quite knew why it did last time, but

8    everyone said it did, that I should decide this before the

9    Virginia sentencing?

10          MR. WEISSMANN:  I think the parties' view was that it

11   was hard to, and it's still my view that it's hard to anticipate

12   what could or could not be relevant in the sentencing in

13   Virginia.  There is, as the Court could see from the plea

14   agreement, some overlap in terms of certain agreements that were

15   made in the plea agreement here with respect to what the defense

16   will or will not do in the Eastern District of Virginia.  There

17   also was a part of the plea agreement that had a statement of

18   the offenses and other acts where the defendant admitted

19   allegations that are pertinent to the hung counts in that case.

20   And so there have been arguments made in that case, and it's

21   hard to anticipate where that will go, but there are arguments

22   made that that shows an acceptance of responsibility.

23          So given that they're not completely separate, the concern

24   was, let's try and have this resolved so we are not sort of in a

25   situation where we now have to litigate the same issues twice.

1          So having said that, I completely understand, these are

2    complicated issues.  We are not in any way -- of course, we

3    can't control -- the Court, obviously, will take as much time as

4    it believes it needs to decide these issues.

5          THE COURT:  I feel that the bearing on the Virginia

6    sentencing is somewhat remote, given the volume of material the

7    judge already has upon which to base his sentence, and I doubt

8    he is going to base it on a finding made by another judge in

9    another court, but I could be wrong.

10         You have used the word "crime" in talking about the alleged

11   false statements here.  And we talked about this once before,

12   but if you are contemplating bringing 1001 charges, perjury

13   charges or charges arising out of alleged falsehoods to you or

14   to the grand jury, would it be problematic to have a Court weigh

15   in on whether it happened or not before it was presented to a

16   jury?

17         MR. WEISSMANN:  So when we talked about -- you asked

18   the question about what the consequences could be.  It is true

19   that one of the consequences could be the issue of, was there a

20   1001 violation in connection with the interviews with the FBI

21   and was there perjury in the grand jury, both of which -- the

22   reason we used the word "crime" is because if those were

23   intentional, those would both be crimes.

24         But there is also another aspect, which is that the

25   defendant received substantial benefit through the plea

agreement, which is that he pled to two counts when there were

multiple counts here, and there's a statutory cap in place now.

I was mostly focusing on the issue of the extant charges

now.  We understand the risks with respect to the issue of if

the Court were to disagree with us, that there would be a

finding and that there could be a difference in terms of what we

think and what the Court thinks.  We are prepared for that.

THE COURT:  Is there some prejudice to the

defendant -- if I agree with you and we've had a factual hearing

and I have found by a preponderance of the evidence that he

intentionally lied about X and you decide to charge him with

making a false statement or perjury related to X, should we know

before we go through this exercise and I weigh in and there's a

national announcement about what I found whether this is going

to be something that's going to be put to a jury?

MR. WEISSMANN:  I tried to assure the defense and you

that there's no current intention of doing that.  And I think

that if, down the road, something like that were to happen,

there are a host of remedies that could come up.  One simple one

is that, of course, a finding by a preponderance does not in

any way reach the government's burden with respect to proving a

case to a jury beyond a reasonable doubt.

And second, to the extent that there was any pretrial

publicity concern --

THE COURT:  In the unlikely event that there would be

1    pretrial publicity?

2          MR. WEISSMANN:  Yes, exactly.  Since this is all very

3    hypothetical, this could be a long time from now, and if that

4    were to happen, the Court has already dealt with that issue in

5    connection with this case, as has the Eastern District of

6    Virginia.  The courts, I think, are very capable of dealing with

7    those issues.

8          THE COURT:  All right.  I guess one question I didn't

9    ask the defense but I did mean to ask both of you, in terms of

10   what needs to be sealed and what is unsealed, do you have a

11   position about the portion of the hearing related to the

12   information that was inadvertently disclosed, whether that still

13   should be sealed?

14         MR. WEISSMANN:  We think that should be sealed.  And I

15   could address that in -- later as to why I think it should be.

16         THE COURT:  Is there anything else you want to say

17   about how you think we should proceed?

18         MR. WEISSMANN:  Could I have a moment?

19         THE COURT:  Okay.

20      (Government counsel conferred.)

21         MR. WEISSMANN:  In terms of timing, Judge, if the

22   Court wants argument, we are prepared to proceed today.

23         THE COURT:  Okay.  I don't know if I am.

24      All right.  I need to take all that in for a minute or two.

25      Do you want to respond?  Please, go right ahead.

1          MR. WESTLING:  I think we are on the same page.  We

2    would like a break, if we could, just to make sure we could

3    confer with Mr. Manafort about some of what was said up here so

4    we can make sure we are all on the same page.

5          THE COURT:  That's one of the reasons I asked him to

6    be here.  It wasn't out of any disrespect for his willingness to

7    waive it.  I think at this hearing and, frankly, the hearing

8    that we are all talking about that we need to have, his ability

9    to communicate in realtime with you is going to be essential.

10   And so I doubt that I would want his appearance waived for that

11   event either.

12         MR. WESTLING:  Understood.

13         THE COURT:  So everybody can remain seated, but I'm

14   going to step out and come back at 10:30.

15         (Recess taken from 10:21 a.m. to 10:37 a.m.)

16         THE COURT:  All right.  Mr. Westling, do you have

17   anything further?

18         MR. WESTLING:  No, your Honor.

19         THE COURT:  Okay.  I am pretty persuaded that I don't

20   need to await the preparation of the final presentence report to

21   hear argument from you about these issues.  I also think it

22   would be advantageous to schedule the argument sooner rather

23   than later because it's fresh in my mind, it's fresh in your

24   minds, everybody's been thinking about these issues in the past

25   week.

1          I do think that the procedure to be followed is the one

2     Mr. Weissmann was discussing, which is we will have a hearing.

3     We will talk about everything we want to talk about.  And then

4     we will have a transcript prepared immediately and release as

5     much of it as possible, but that we won't be hampered during the

6     hearing with coming back and forth to the bench, turning off the

7     microphones, making sure everybody has to think three times

8     before they say anything.  I want to have a full and fair

9     hearing, and I want to release as much of it as we can as soon

10    as we can.

11         So in connection with that, even though there are some

12    little pieces of it that we think we might be able to discuss in

13    open court, I think it's better to just have it all in one

14    hearing.  Everybody can have their thoughts together.  You've

15    heard some of the things I'm concerned about already.  And so

16    you know what you're going to have to address.

17         And so I would like to do it next week.  It is possible

18    that it could produce a ruling prior to the Virginia sentencing.

19    I don't know.  I just don't know how hard it's going to be to

20    make up my mind at the end of the day.  So I was thinking about

21    next Tuesday or Wednesday, the 29th or the 30th, but Thursday or

22    Friday are also possible.  And you will have the draft PSR by

23    Tuesday.  So you will have some inclination of what the

24    Probation Office thinks.

25         Does anybody have any preferences or problems with any of

1    that?

2             MR. WEISSMANN:  From the government, Tuesday or

3    Wednesday, either day, would be fine.  We do have some conflicts

4    on Thursday and Friday.  So if it's possible to avoid those

5    dates, we would appreciate it.

6             THE COURT:  All right.  Mr. Westling or Mr. Downing?

7             MR. WESTLING:  Your Honor, I think we're going to ask

8    the Court's indulgence and see if we can push it to the

9    following week.  We have a couple members of our team that

10   already have some international travel planned next week.  We

11   have some filings due at the end of the week in preparation for

12   the Virginia sentencing, which is the following week.  So I

13   think it's going to be very difficult for us to make next week

14   work.

15            THE COURT:  I was trying to not have it be right on

16   top of your sentencing.  But if your memos are due --

17            MR. WESTLING:  Typically the Friday before, I think.

18            THE COURT:  Let me pull up my calendar and see.  Can

19   we do it Monday, the 4th?  The rest of the week is a little bit

20   problematical for me.

21            MR. WESTLING:  That can work for us, your Honor.

22            MR. WEISSMANN:  That's fine.

23            THE COURT:  Okay.  Mr. Haley, we will talk about

24   moving all the rest of the stuff around.

25            THE COURTROOM DEPUTY:  That's fine.

THE COURT:  Let's set it for 10:00 a.m. on
February 4th.  It will be a sealed proceeding, and I know that
everyone in the courtroom who is here does not want that to be
the case, and we will do our best to get the transcript, as much
of the transcript as possible released as soon as possible.

All right.  Is there anything further I need to take up
right now on behalf of the government?

MR. WEISSMANN:  Your Honor, there is one matter we
would like to address at the bench.

THE COURT:  Okay.

(Sealed bench conference follows.)







1

2          (End of sealed bench conference.)

3               THE COURT:  Is there anything further for either side?

4               MR. WEISSMANN:  No, your Honor.

5               MR. WESTLING:  No, your Honor.

6               THE COURT:  I will see you on February 4th, then.

7     Thank you.

8          (Proceedings concluded at 10:50 a.m.)

```
 1                    CERTIFICATE OF OFFICIAL COURT REPORTER

 2

 3          I, Sara A. Wick, certify that the foregoing is a

 4    correct transcript from the record of proceedings in the

 5    above-entitled matter.

 6

 7

 8

 9    /s/ Sara A. Wick                    January 25, 2019

10    SIGNATURE OF COURT REPORTER         DATE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```